MR. BARRETT: Tell me about –

DR. GUERRERO: I treat patients that have conditions –

MR. BARRETT: – the studies – tell me about a study that you've done with – with chronic disease.

DR. GUERRERO: Well, based on acid alkaline principles we wanted to take groups of people that had degenerative conditions – and, to me, it didn't really matter what their degenerative condition was and I preferred them to have a variety of conditions. So I certainly just didn't want to have a base of liver cancer or bone cancer or prostate cancer or breast cancer. I wanted to, you know, lump them into a group and see what the response would be over time.

Well, now it's been – you know, now we're going into, you know, eight years and within a five year period of time we took 200 people that had a variety of degenerative conditions. They weren't all the same conditions, they –

MR. BARRETT: Were they terminal?

DR. GUERRERO: They were diagnosed as terminal.

MR. BARRETT: Two hundred people – now, eight years later, how many of them are still alive?

DR. GUERRERO: Well, I've got – out of that – out of those 200 people that were terminal we lost eight. Eight passed away.

    Ex. 6 at p. 11, line 6 through p. 12, line 19.

D. MR. BARRETT: What is grapefruit pectin?

DR. GUERRERO: Grapefruit pectin actually is a substance that – I'll give you a study that they did with grapefruit pectin. They took – over a 12 month period of time they took, you know, pigs and they gave them high lard diets. And what they did is they tested their arterial plaque before they started the study.

And they gave one group grapefruit pectin and they gave another group nothing, but they both ate the same high lard diet. After 12 months the group that received the grapefruit pectin actually had an 88 percent

decrease in arterial plaque than from when they started. That's significant.

MR. BARRETT: And doctors don't –

DR. GUERRERO: It's incredible.

MR. BARRETT: – tell their patients about grapefruit pectin?

DR. GUERRERO: Doctors don't know about grapefruit pectin. Again, remember, their education is acute care and pharmacology based. So not that your doctor doesn't care, but your doctor just doesn't know about it.

MR. BARRETT: So if you're taking this product and you're healthy now, your arteries are less likely to clog up, you're saying?

DR. GUERRERO: Oh, absolutely.

Ex. 6 at p.17, line 18 through p.18, line 18.

E.  MR. BARRETT: * * * Now, we have a caller on the line from Oregon. Her name is Kerry. Kerry, are you with us?

KERRY: Yes, I am.

MR. BARRETT: Now, what is your experience been on this Supreme Greens product?

KERRY: Well, you know, I've been overweight for many years and I tried, oh, every diet on the market. I tried Atkins, I tried The Zone, I tried the soup diet, I even tried the popcorn diet and none of them worked. I'd lose some weight and then I'd just gain it back and then some.
And so after so many years of trying all these different diets I just gave up because I was just so discouraged, you know. And then a friend of mine recommended that I take the Supreme Greens with MSM, not as a weight loss product, but you know what? As a way to improve my health and my energy because she noticed I was just so tired all the time.

Of course, you know, my energy and my health improved, but what was really amazing was that the first week that I was on Supreme Greens with MSM I lost four pounds. And the second week I lost four-and-a-half pounds.
And I've been on Supreme Greens now for eight months and I have lost a total of 81 pounds. And –

22

MR. BARRETT: Eighty-one pounds?

KERRY: Eighty-one. Yes.

MR. BARRETT: That – that's tremendous. Now, have you seen health as a by-product also?

KERRY: Well, I have. You know, in addition to that you know my knees and my ankles don't ache any more, I can pick up my children and play with them, which I have not been able to do in years. And I just – you know what, I just wanted to thank Dr. Guerrero for Supreme Greens with MSM, it's given me my life back.

\* \* \*

MR. BARRETT: Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a by-product. How come?

DR. GUERRERO: They lose weight as a by-product because, again remember, weight is the – fat is your body's way of protecting itself from the acidic fluids. And so when you alkalize your –

MR. BARRETT: So when your body's acid – \* \* \* when you have a high acid system your body needs a layer of protection which is called fat.

DR. GUERRERO: It's called fat.

MR. BARRETT: So when you alkalize your body you don't need that fat?

DR. GUERRERO: You don't need that fat. Your body burns it actually for fuel.

    Ex. 6 at p.19, line 9 through p. 22, line 3.

F. DR. GUERRERO: It's great for women that are pregnant because it certainly applies –

MR. BARRETT: So she can take it when she's pregnant?

DR. GUERRERO: No question. My wife took it, my wife took it through all of her pregnancies.

23

MR. BARRETT: And you have five children?

DR. GUERRERO: We have five children.

MR. BARRETT: Okay.

> Ex. 6 at p. 22, lines 9 through 17.

G.  DR. GUERRERO: * * * And, you know, think about arthritis. Let's talk about arthritis for a minute. Arthritis is an inflammation in the joint. What happens because it's so acidic that when a cell receives nourishment and it breaks it down, the mucosal lining again is so hard that it can't excrete the waste out. So the cell accumulates and just gets bigger and bigger and bigger and bigger so we get inflamed joints.
So the MSM really is a great anti-inflammatory.

MR. BARRETT: It acts as –

DR. GUERRERO: Because as a super conductor it makes the cell wall more permeable. So now the cell can actually release all of its metabolic waste.

MR. BARRETT: It takes down swelling.

> Ex. 6 at p. 28, line 14 through p. 29, line 2.

H.  MR. BARRETT: * * * What are the other nutrients in there and does it interfere with any medication?

DR. GUERRERO: Because I have, you know, a wide range of patients in different conditions, I needed to ensure that the formula was synergistic with all medications.
And so, you know, the Supreme Greens with MSM is synergistic with medication. There is no contra-indication.

MR. BARRETT: So anybody out – anybody –

DR. GUERRERO: (Inaudible).

MR. BARRETT: – anybody out there basically on any type of medication, they can take the Supreme Greens product?

DR. GUERRERO: Yes.

24

Ex. 6 at p. 29, line 18 through p. 30, line 7.

I. MR. BARRETT: Tell me about diabetes. I heard you talking to one of the producers before the show about diabetes.

DR. GUERRERO: Well, diabetes really is something that's becoming epidemic.

MR. BARRETT: I heard a lot of people out there have diabetes and don't even know it.

DR. GUERRERO: Sure. Well, you know before – years ago, you'd just go to your doctor and they used to say, Well, yeah, you have hypoglycemia, you know, just eat – you know, six, seven, eight small meals a day and you'll be fine. Because they constantly needed that sugar. And what happened was that those people that were hypoglycemic years to come, when they became adults developed diabetes. And so what the medical community learned is that, hey, you know, where we didn't take hypoglycemia serious before, we now need to take it serious because those are the same people that are getting diabetes today. So now we're not going to call it hypoglycemia anymore, we're going to call it insulin resistance or we're going to label it and call it Syndrome X. So you now have Syndrome X. So now they're coming up with medications to help you deal with Syndrome X when the reality is all you really need to do is if you can nourish the cell, maintain more permeability, your body will metabolize insulin.

Ex. 6 at p. 33, line 6 through p. 34, line 7.

J. MR. BARRETT: What age should someone go on Supreme Greens?

DR. GUERRERO: My children take it.

MR. BARRETT: And how old?

DR. GUERRERO: Well, my daughter, when she was one, she was on a bottle and weaning and, you know, she's in her formula I would take a quarter teaspoon and mix it right in her formula and she would drink it once a day.

MR. BARRETT: Really?

DR. GUERRERO: Children take it.

                Ex. 6 at p. 34, lines 8 through 17.

K.    If you or someone you love is suffering from Cancer, Arthritis, Osteoporosis, Fibromyalgia, Heart Disease, Diabetes, Heartburn, Fatigue, Excess Weight, or simply the everyday ravages of aging - **it's time to start down the path to a healthier lifestyle ...**

                Ex. 7 (excerpt from Internet website www.todayshealth.com/supremegreens) at p. 1.

L.    A number of health problems and degenerative conditions have been **linked to highly acidic cell pH:**

- Cancer
- Arthritis
  *   *   *
- High Blood Pressure
- High Cholesterol
  *   *   *
- Diabetes
  *   *   *
- Endometriosis
  *   *   *
- Overweight
- Heart Disease

So How Do You Rebalance Your Cells pH Levels and Get the Minerals and Nutrients You Need?

According to Health professionals, supplements are needed to give the body what it needs. But where most supplements either provide vitamins or proteins, Supreme Greens works to help rebalance your cell pH.

*   *   *

Supreme Greens was formulated by Dr. Alex Guerrero, a renowned physician who has focused his career on working with people with various degenerative and chronic ailments. His breakthrough supplement has already helped thousands of people with cancer, diabetes, arthritis, lupus, fibromyalgia, chronic fatigue syndrome, and many others.

                Ex. 7 at pp. 2-3.

> M.    I have been overweight for several years. Like many others, I tried every diet on the market from the Atkins Diet to the Soup Diet to the Popcorn Diet. Of course, I achieved short spurts of weight loss with these diets, but the weight continued to come back after a short period of time.
>
> After becoming completely discouraged, a friend recommended I try Supreme Greens with MSM*, not as a weight loss product, but as a way to help improve my general health. Although I did begin to enjoy better health and an increase in energy, I also began to lose weight from the product. In the first week I lost 4 lbs. During the second week I lost 4.5 lbs. This spark of success lit a fire and I have now lost an amazing 81 lbs. over the past 8 months.
>
>    *     *     *
>
> Carrie J., OR (consumer testimonial)
>
> Ex. 7 at p. 4.

27.    At least twice during the infomercial, a toll-free telephone number is displayed on the screen and viewers are urged to call the number for more information about, or to order, the Supreme Greens product. During and around these portions of the infomercial, there is no indication to viewers that the program they are watching is a paid advertisement for Supreme Greens.

28.    When consumers call the toll-free number displayed during the Supreme Greens infomercial and mention that they saw the "Today's Health" program about Supreme Greens, company representatives inform them that, having watched the show, they are eligible for a special discount. The consumer is told that although a bottle of Supreme Greens (a one-month supply) normally costs $49.99, the consumer can receive three bottles for $99, as well as two free bottles of Vitamin E8 Daily, a vitamin E supplement. When consumers agree to order the $99 special, some consumers are unknowingly and without their consent signed up for a monthly automatic shipment of two bottles of E8 Daily (a two-month supply) at a cost of $25 plus $7.95

27

in shipping. Those consumers must then contact the company after receiving their first unauthorized shipment to cancel the automatic shipment program and return the unwanted bottles at their own expense.

## SECTIONS 5 AND 12 OF THE FTC ACT

29. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce. Section 12(a) of the FTC Act, 15 U.S.C. § 52(a), prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, Coral Calcium Daily and Supreme Greens are either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b) and (c). As set forth below, the Defendants have engaged in such unlawful practices in connection with the marketing and sale of coral calcium products and other dietary supplement products such as Supreme Greens.

## DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF THE FTC ACT

## COUNT I

### Unlawful Claims Regarding the Health Benefits of Coral Calcium Daily

30. Through the means described in Paragraph 21, including, but not limited to, through the statements contained in the advertisements attached as Exhibits 1 through 4, Defendants DMC, Barrett, Triad, King Media, and Stern have represented, expressly or by implication, that the coral calcium ingredient contained in Coral Calcium Daily is an effective treatment or cure for:

28

  A. Cancer;

  B. Autoimmune diseases including multiple sclerosis and lupus;

  C. Parkinson's disease; and

  D. Heart disease.

31. The representations set forth in Paragraph 30 are false and/or were not substantiated at the time the representations were made. Therefore, the making of the representations set forth in Paragraph 30 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT II

### Unlawful Claims Regarding the Bioavailability and Superiority of Coral Calcium Daily

32. Through the means described in Paragraph 21, including, but not limited to, the statements contained in Paragraphs 21(C), (F), and (I), Defendants DMC, Barrett, Triad, King Media, and Stern have represented, expressly or by implication, that:

  A. The body absorbs significantly more – in some cases up to fifty (50) times as much – of the calcium contained in Coral Calcium Daily, and at a rate significantly faster – in some cases up to fifty (50) times faster – than the calcium contained in a commonly available antacid calcium product; and

  B. The body absorbs 100 percent of the calcium contained in Coral Calcium Daily.

33. The representations set forth in Paragraph 32 are false and/or were not substantiated

at the time the representations were made. Therefore, the making of the representations set forth in Paragraph 32 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT III

### Unlawful Claims Regarding Certain Scientific Studies on Calcium

34. Through the means described in Paragraph 21, including, but not limited to, the statements contained in Paragraphs 21(G) and (H), Defendants DMC, Barrett, Triad, King Media, and Stern have represented that scientific research published in the Journal of the American Medical Association and the New England Journal of Medicine proves that calcium supplements are able to prevent, reverse, or cure cancer in humans.

35. The representation set forth in Paragraph 34 is false. Therefore, the making of the representation set forth in Paragraph 34 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT IV

### Unlawful Claims Regarding the Health Benefits of Supreme Greens

36. Through the means described in Paragraph 26, including, but not limited to, the statements contained in the advertisements attached as Exhibits 5 through 7, Defendants DMC, ITV, Barrett, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented, expressly or by implication, that Supreme Greens is an effective treatment, cure, or preventative for:

      A.      Cancer;

      B.      Heart disease;

      C.      Diabetes; and

      D.      Arthritis.

37. The representations set forth in Paragraph 36 are false and/or were not substantiated at the time the representations were made. Therefore, the making of the representations set forth in Paragraph 36 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT V

### Unlawful Weight Loss Claim Regarding Supreme Greens

38. Through the means described in Paragraph 26, including, but not limited to, the statements contained in Paragraph 26(E) and (M), Defendants DMC, ITV, Barrett, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented, expressly or by implication, that Supreme Greens will cause significant weight loss of up to 4 pounds per week and up to 80 pounds in 8 months.

39. The representation set forth in Paragraph 38 is false and/or was not substantiated at the time the representation was made. Therefore, the making of the representation set forth in Paragraph 38 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT VI

### Unlawful Safety Claims Regarding Supreme Greens

40. Through the means described in Paragraph 26, including, but not limited to, the statements contained in Paragraphs 26(F), (H), and (J), Defendants DMC, ITV, Barrett, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented, expressly or by implication, that Supreme Greens can be taken safely by:

    A. Pregnant women;

    B. Children, including children as young as one year old;

    C. Any person taking any type of medication.

41. The representations set forth in Paragraph 40 are false and/or were not substantiated at the time the representation were made. Therefore, the making of the representations set forth in Paragraph 40 constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT VII

### Deceptive Format

42. Defendants DMC, ITV, and Barrett have represented, directly or by implication, that the program referenced in Exhibits 5 and 6 hereto is an independent television program and not paid commercial advertising.

43. In truth and in fact, the program is not an independent television program and is paid commercial advertising. Therefore, the making of the representation set forth in Paragraph 42 constitutes a deceptive practice, in or affecting commerce, in violation of Section 5(a) of the

32

FTC Act, 15 U.S.C. § 45(a).

## COUNT VIII

### Unfair Practice Regarding Unauthorized Credit and Debit Charges

44. In connection with the advertising, promotion, marketing, offering for sale, sale, and/or distribution of Supreme Greens, Defendants DMC, ITV, and Barrett have caused charges for automatic shipments of E-8 Daily dietary supplement to be billed to consumers' credit or debit cards without the consumers' authorization.

45. Defendants DMC, ITV, and Barrett's practice of causing charges to be billed to a consumers' credit or debit cards without the consumers' knowledge or authorization has caused or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or competition.

46. Therefore, the practice set forth in Paragraphs 28, 44, and 45 constitutes an unfair practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### CONSUMER INJURY

47. Consumers throughout the United States have suffered and continue to suffer substantial monetary loss and possible injury to their health because of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts and practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

48. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award ancillary or other relief, including, but not limited to, rescission of contacts and restitution, and the disgorgement of ill-gotten gains caused by Defendants' law violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

(A) Permanently enjoin Defendants from violating Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the offer, sale, advertising, or other promotion or distribution of any food, drugs, dietary supplements, devices, cosmetics, or other products, services, or programs;

(B) Award all temporary and preliminary injunctive and ancillary monetary relief that may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions;

(C) Award such equitable relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains; and

(D)   Award the Plaintiff the costs of bringing this action, and such other equitable relief as the Court may determine to be just and proper.

Dated: May 31, 2004

                                    Respectfully submitted,

                                    WILLIAM E. KOVACIC
                                    General Counsel

                                    DANIEL KAUFMAN
                                    KIAL S. YOUNG (Mass. Bar No. 633515)
                                    EDWARD GLENNON
                                    Federal Trade Commission
                                    600 Pennsylvania Avenue, N.W.
                                    Mail Drop NJ-3212
                                    Washington, DC  20580
                                    Tel: (202) 326-2675/3525/3126
                                    Fax: (202) 326-3259

                                    ATTORNEYS FOR PLAINTIFF