UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br>        v.<br><br>DIRECT MARKETING CONCEPTS, INC., d/b/a<br>TODAY'S HEALTH and DIRECT FULFILLMENT,<br>ITV DIRECT, INC., d/b/a DIRECT FULFILLMENT,<br>DONALD W. BARRETT,<br>HEALTHY SOLUTIONS, LLC d/b/a DIRECT<br>BUSINESS CONCEPTS,<br>HEALTH SOLUTIONS, INC.,<br>ALEJANDRO GUERRERO, a/k/a ALEX GUERRERO,<br>MICHAEL HOWELL, GREG GEREMESZ,<br>TRIAD ML MARKETING, INC., KING MEDIA, INC.,<br>and ALLEN STERN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No.

# 03 - 11136 GAO

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER WITH APPOINTMENT OF A TEMPORARY RECEIVER,
ASSET FREEZE AND ORDER TO SHOW CAUSE WHY A PRELIMINARY
INJUNCTION SHOULD NOT ISSUE AS TO DEFENDANTS DIRECT MARKETING
CONCEPTS, INC., ITV DIRECT, INC., DONALD W. BARRETT, HEALTH
SOLUTIONS, INC., HEALTHY SOLUTIONS, LLC, ALEJANDRO GUERRERO,
MICHAEL HOWELL AND GREG GEREMESZ**

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    DEFENDANTS' DECEPTIVE BUSINESS PRACTICES . . . . . . . . . . . . . . . . . . . . . 4

        A.      Defendants' Advertising and Marketing of Supreme Greens . . . . . . . . . . . . . . . 4

        B.      The TRO Defendants' Advertising Claims for Supreme Greens Are Not
                Supported By Competent and Reliable Scientific Evidence. . . . . . . . . . . . . . . . 5

                1.      The TRO Defendants Make the Claims Challenged in the
                        Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                2.      The Challenged Claims Are Not Supported by Competent and Reliable
                        Scientific Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.     LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      Section 13(b) Authorizes this Court to Grant the Requested Relief . . . . . . . . . . 15

        B.      This Case Meets the Standard for the Issuance of a TRO and a Preliminary
                Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      The Commission Is Likely to Prevail on the Merits. . . . . . . . . . . . . . . . 17

                2.      The Balance of Equities Favors the Commission's Position. . . . . . . . . . 21

                3.      Injunctive Relief is in the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . 22

        C.      Appointment of a Temporary Receiver, an Asset Freeze for the Barrett
                Defendants and Restrictions on the Dissipation of Assets for the
                Guerrero Defendants and Preservation of Records Are Necessary for Effective
                Final Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                1.      Appointment of Temporary Receiver . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                2.      Asset Freezes and Restrictions, Financial Information and Record
                        Preservation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

                3.      Expedited Discovery Is Also Necessary for Effective Final Relief.  . . . 26

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## <u>CASES</u>

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . 20, 21

*FTC v. American Inventors Corp.*, Civ. A. No. 95-30219-MAP, 1996 WL 641642
(D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*FTC v. Amy Travel Service, Inc.*, 875 F.2d 564 (7th Cir 1989) . . . . . . . . . . . . . . 16, 20

*FTC v. Arlington Press, Inc.*, No. 98 CV9620, 1999 WL 3356 2452
(C.D. Cal. Jan. 18, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FTC v. Beatrice Foods Co.*, 587 F.2d 1225 (D.C. Cir. 1978) . . . . . . . . . . . . . . . 17

*In re Cliffdale Assocs.*, 103 F.T.C. 110 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*FTC v. Dion,* Civ. No. 03-40005-NMG (D. Mass. 2003) . . . . . . . . . . . . . . . 16, 20, 26

*FTC v. Febre*, 1996 WL 396117 (N.D. Ill. July 3, 1996) . . . . . . . . . . . . . . . . . . 6, 23

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) . . . . . . . . . . . 24

*FTC v. Gem Merchandising Corp.*, 87 F.3d 466 (11th Cir. 1996) . . . . . . . . . . . . . 15, 16

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . 6, 17

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 17, 18

*FTC v. Patriot Alcohol Testers, Inc.*, No. 91-11812-C, 1992 WL 27334
(D. Mass. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 22

*FTC v. Pharmtech Research, Inc.*, 576 F. Supp. 294 (D.D.C. 1983) . . . . . . . . . . . . . 14

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1996) . . . . . . . . . . . 20

*FTC v. Sabal*, 32 F. Supp. 2d 1004 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . 18, 21

*FTC v. Seasilver USA, Inc.*, (CV-S-03-0676-RLH(LRL)) (D. Nev.2003) . . . . . . . . . . . 14, 24

*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999) . . . . . . . . . . . . . 18, 23

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984) . . . . . . . . . . . . . . . . 16, 24

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1989) . . . . . . . . . . 15, 21

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . 21, 22

*FTC. v. Rare Coin Galleries of America, Inc.*, 1986-2 Trade Cas. (CCH) ¶ 67,338
(D. Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Koch v. FTC*, 206 F.2d 311 (6ᵗʰ Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Credit Management Group*, 21 F. Supp. 2d 424 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . 24

*Novartis Corp. v. FTC*, 223 F.3d 783 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*SEC v. American Board of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987) . . . . . . . . . . . . . . . 23

*SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673 (D.D.C. 1995) . . . . . . . . . . . . . . . . . 26

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975) . . . . . . . . . . . . . . . 21

*Simeon Management Corp. v. FTC*, 579 F.2d 1137 (9ᵗʰ Cir. 1978) . . . . . . . . . . . . . . . 16

*Thompson Med. Co.*, 104 F.T.C. 648, 788 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985) . . . . . . . . . . . . . . . . 6

## STATUTES AND RULES

15 U.S.C. §53 (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

15 U.S.C. §§ 45(a) and 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 28

## I.    INTRODUCTION

This action targets blatantly false health claims that the dietary supplement "Supreme Greens with MSM" ("Supreme Greens") can cure, treat or prevent cancer, diabetes, arthritis and heart disease, and unsubstantiated advertising claims that Supreme Greens can be safely used by pregnant women, children and consumers taking other medications.[1]  Additionally, the Federal Trade Commission ("FTC" or "Commission") is challenging the unlawful practice of imposing unauthorized charges on consumers' credit and debit accounts.  Immediate injunctive relief is needed to halt the challenged practices and to prevent the further dissipation of assets, hiding of documents and improper use of corporate funds.  The temporary relief requested will also provide the Commission with the financial information required to evaluate the precise extent of consumer injury, allow for ultimate redress to consumers, and preserve assets for such redress. Because the defendants have previously reneged on promises to stop making the challenged disease cure claims, the Commission urges that injunctive relief is particularly essential.[2]

---

[1]  The Commission's complaint also contains allegations regarding similar false cancer-cure claims some of the defendants made for a "coral calcium" supplement.  The coral calcium claims (and defendants Allen Stern, Triad Marketing and King Media) are not part of this TRO motion because after the Commission obtained TROs in a different action involving virtually identical claims, the relevant defendants agreed to immediately withdraw their coral calcium infomercial.  Unfortunately, the fraudulent coral calcium infomercial was replaced by the equally fraudulent Supreme Greens infomercial.  Additionally, defendants Donald Barrett and his companies have recently started airing another infomercial for a product called Urocaps that makes highly suspect claims that the product prevents prostate cancer.  Declaration of Christina E. Turner (PX A) ¶ 30.

[2]  Following discussions with FTC staff in the fall of 2003, defendants Donald Barrett ("Barrett") and Direct Marketing Concepts ("DMC") promised to remove the Supreme Greens infomercial at issue from the air and replace it with a version that made less egregious claims. Decl. of Kial Young (PX G) ¶ 8.  In fact, the Commission recently learned that although revised versions of the infomercial were briefly aired on some channels, the original infomercial continued (and possibly continues) to air nationally and regionally without interruption through at least the latter part of April 2004.  PX D ¶¶ 7, 10, 11; PX G ¶¶ 15-16, Att. 1; Decl. of Scott Stanwood, PX F ¶ 4-6, Att. A; PX A ¶ 23, Att. 18.  As explained in the declaration of a former

The Commission has moved for a noticed temporary restraining order against four

corporate and four individual defendants. The Commission's TRO would prohibit those

defendants – Donald Barrett, Direct Marketing Concepts, Inc., and ITV Direct, Inc. ("Barrett

defendants") as well as Alejandro Guerrero, Health Solutions, Inc., Healthy Solutions LLC,

Michael Howell and Greg Geremesz ("Guerrero defendants") (collectively, "the TRO

defendants") – from making false claims about Supreme Greens' efficacy in preventing, treating

and curing cancer and other serious diseases and about its safety for pregnant women, children

and people taking other medications.

Using a widely-aired 30-minute infomercial and the Internet, the TRO defendants are

falsely representing that Supreme Greens – a blend of 39 ingredients, including alfalfa leaf,

parsley leaf, and shave grass – treats, cures, and prevents cancer, heart disease, diabetes, and

arthritis, and is safe to take in conjunction with any other medication or during pregnancy as a

multi-vitamin. Declaration of Christina E. Turner (PX A), Att. 5; Compl. Exs. 5, 6. As set forth

in the Commission's complaint, these representations are deceptive acts or practices and false

advertising in violation of Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. §§ 45(a) and 52. Accordingly, the FTC files this motion to immediately enjoin

the TRO defendants from engaging in the deceptive sale of Supreme Greens and to enjoin the

Barrett defendants from imposing unauthorized charges on consumers' accounts and ordering

---

DMC employee, Barrett – the president of DMC – made it clear that in spite of his agreement
with the FTC, he wanted the original infomercial – which resulted in more sales – to run under
the radar. PX D ¶ 10. Although DMC, Barrett and ITV Direct, Inc. ("ITV") have recently stated
again that they have stopped airing the Supreme Greens infomercial, because of their prior
deceptions on this issue, the Commission cannot take such representations at face value.
Moreover, Guerrero, Howell, Geremesz and their companies continue to make claims on their
website, www.hsnow.com, that Supreme Greens helps your body and "prevent[s] and fight[s]
disease." PX A, Att. 11.

ancillary equitable relief, including: (1) the appointment of a temporary receiver over defendants DMC and ITV; (2) an asset freeze for the Barrett defendants and a restriction on asset dissipation for the Guerrero defendants; (3) the preservation of sales and financial records and a right of immediate access for the FTC to TRO defendants' office premises; (4) specified financial disclosures; (5) expedited discovery with respect to financial issues and the TRO defendants' assets; (6) an order to show cause why a preliminary injunction should not issue; and (7) other related equitable relief.[3]

## II.    PARTIES

### A.    Plaintiff

The FTC is an independent agency of the United States Government created by the FTC Act, 15 U.S.C. §§ 41-58. The Commission is charged, *inter alia*, with enforcement of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, which respectively prohibit deceptive acts or practices in or affecting commerce, and false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce. Section 13(b) of the Act, 15 U.S.C. § 53(b), authorizes the Commission to initiate federal district court proceedings to enjoin violations of the FTC Act and to secure such equitable relief, including consumer redress, as may be appropriate.

### B.    Defendants

---

[3] As set forth in the accompanying Notice of Motion and Declaration of Daniel Kaufman, the FTC will serve this motion on the defendants as soon as the Complaint and motion papers are filed. The Commission has had numerous discussions with counsel for all of the TRO defendants and has attempted to negotiate stipulated preliminary injunctions, but no such agreements have been reached. On Wednesday, May 26, the Commission informed counsel for the Barrett defendants that because of the additional information the Commission has obtained regarding pervasive fraud at DMC and ITV, we could no longer stipulate to an injunction that contained less relief than what is set forth in the current proposed TRO.

Direct Marketing Concepts, Inc. ("DMC") and ITV Direct, Inc. ("ITV") are both Massachusetts corporations with their principal places of business in Saugus and Beverly Massachusetts respectively. PX A ¶¶ 3, 5. Donald W. Barrett ("Barrett") is the President and a Director of both DMC and ITV, and he directs, controls, formulates, or participates in the acts and practices of both entities. PX A ¶ 10. Since at least August 2003, Barrett, DMC and ITV have advertised, promoted, offered for sale, and/or distributed Supreme Greens.

Healthy Solutions, LLC ("Healthy Solutions") and Health Solutions, Inc. ("Health Solutions") are California corporations. PX A ¶¶ 11, 12. Healthy Solutions is the marketing company for Supreme Greens; Health Solutions has applied for the Supreme Greens trademark, and is the corporate entity listed on the website www.hsnow.com, through which consumers can order Supreme Greens. PX A ¶¶ 12-14, Att. 10, 11.

Alejandro Guerrero ("Guerrero") a/k/a Alex Guerrero developed and owns the formula marketed under the Supreme Greens trademark. PX A, Att. 12, 16. Acting individually, or in concert with others, he has advertised, promoted, offered for sale, and/or distributed Supreme Greens since at least August 2003, by appearing in one or more infomercials for the product, as well as by other means, such as his website, www.hsnow.com. PX A, Att. 11. Guerrero purports to be a "doctor" of Eastern Medicine and runs a clinical practice. Some evidence suggests that this may not be the case. PX A, Att. 13 at 4. Guerrero is also President and a director of Health Solutions. Michael Howell and Greg Geremesz are officers of Health Solutions and members of Healthy Solutions. PX A ¶¶ 18-21, Att. 14, 16.

## III.    DEFENDANTS' DECEPTIVE BUSINESS PRACTICES

### A.    Defendants' Advertising and Marketing of Supreme Greens

The TRO defendants are advertising Supreme Greens primarily through a nationally-

disseminated television infomercial featuring Barrett and Guerrero. (Transcript and videotape attached as Complaint Exhibits 5 and 6). The infomercial was among the ten most frequently aired infomercials in September through early January 2004 and has continued to air nationally. PX A ¶ 22, Att. 17; *see also* note 2, *supra*. A one-month supply of Supreme Greens costs between $32.98 and $49.99, plus shipping and handling. PX A, Att. 19. Healthy Solutions sold ITV more than 486,000 bottles in 2003 alone. PX A, Att. 16 at 4. According to a declaration filed by defendant Geremesz, the co-owner of DMC stated that sales of Supreme Greens averaged 20,000 bottles per week in 2004. PX A, Att. 16 at 5.

The Barrett defendants have also caused consumers to incur unauthorized charges on their credit and debit cards, by enrolling them in an automatic shipment program for a supplement called E-8 Daily – without their prior approval – when they order Supreme Greens. Indeed, when the Commission's investigator, Christina Turner, ordered Supreme Greens, she was also charged for the autoship program without authorization and received unrequested product from DMC and ITV. PX A ¶¶ 24-28, Att. 19, 21 (transcript of FTC call ordering Supreme Greens and similar consumer complaints). Former DMC employees have confirmed that such unauthorized charging occurred routinely. *See* PX E ¶¶ 6-11; PX D ¶¶ 12, 14. Moreover, the financial injury here is substantial – a former employee has stated that in April 2004, DMC was bringing in more than $2 million per month through its autoship program. PX D ¶¶ 4, 18.

## B.    The TRO Defendants' Advertising Claims for Supreme Greens Are Not Supported By Competent and Reliable Scientific Evidence.

### 1.    The TRO Defendants Make the Claims Challenged in the Complaint.

The TRO defendants make outrageous claims about Supreme Greens' ability to prevent,

treat and cure serious diseases, such as cancer and diabetes.[4] Indeed, their infomercial begins

with Barrett stating that Guerrero knows of cures for "most chronic degenerative diseases -- such

as cancer, arthritis, diabetes, even the number one killer out there, heart disease." (Compl., Ex. 6

at 3-4). Guerrero then explains that the underlying cause of all disease is "acidification" of the

body, and that by returning the body to its naturally alkaline state, Supreme Greens creates an

environment in which disease cannot exist. Throughout the remainder of the infomercial, Barrett

and Guerrero tout Supreme Greens' efficacy in preventing and curing cancer and other diseases,

and treating arthritis. They also assure consumers that Supreme Greens is safe for children and

safe to take in conjunction with any medications and that it can be used in lieu of prenatal

vitamins. The FTC's Complaint alleges that these claims about Supreme Greens' efficacy and

safety are false or unsubstantiated, and violate the FTC Act.

The following excerpts from the TRO defendants' infomercial and website demonstrate

that they are making the above challenged claims:[5]

---

[4] The Commission's Complaint also challenges the TRO defendants' claims about Supreme Greens' efficacy as a weight loss product, and about the ability of the coral calcium products marketed by Barrett, DMC and ITV and three additional defendants to treat or cure cancer, and other diseases. The instant motion for a TRO does not address those allegations because the weight loss claims do not, to the Commission's knowledge, raise the same health and safety concerns as the defendants' cancer and other disease claims and the coral calcium claims have not been disseminated recently.

[5] The claims are made either expressly or are implied strong enough as to be "virtually synonymous with an express claim." *See Thompson Medical*, 104 F.T.C. 648, 789 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986). Trial courts, as finders of fact, may draw reasonable inferences and make factual determinations as to both the express claims and the implied claims that are conveyed by the face of an advertisement. *See FTC v. Febre*, 1996 WL 396117 at *4 (N.D. Ill. July 3, 1996) (magistrate judge recommendation), *adopted by* 1996 WL 556957 (N.D. Ill. Sept. 27, 1996), *aff'd* 128 F.3d 530 (7th Cir. 1997). *See also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 652 (1985); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1043 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001); *FTC v. Arlington Press, Inc.*, No. 98 CV9620, 1999 WL 33562452, *11 (C.D. Cal. Jan. 18, 1999).

- MR. BARRETT: Dr. Guerrero claims that most chronic degenerative diseases – such as cancer, arthritis, diabetes, even the number one killer out there, heart disease – can and are being cured and there are natural healing techniques being suppressed in this country. We have a very controversial show, so stay with us.

Complaint Ex. 6 at 3-4.

- DR. GUERRERO: Well, from, you know, in -- in biology we've learned that you've got disorders like yeast, fungus, bacterias, viruses, molds, all those are living organisms that need an environment in which to thrive and proliferate and grow. And they can only survive in an acid base.

So if we can change the body's fluids and tissues to a more alkaline base, now you have an environment that is no longer conducive for the proliferation or growth of a degenerative condition.

MR. BARRETT: And when you alkalize the body, these -- a lot of these symptoms, a lot of these diseases are going to --

DR. GUERRERO: Well, they --

MR. BARRETT: -- fall by the wayside.

DR. GUERRERO: Well, they all do, because they're a result of over acidification of the blood and tissues. And so when the blood and tissue are in an acid base -- it's like what acid rain would do to a paint job on a car.

MR. BARRETT: Yeah, it would ruin it.

DR. GUERRERO: That's what -- that's what your body fluids, your acidic body fluids are doing to your internal organs.

Complaint Ex. 6 at 8-9.

- MR. BARRETT: And now here's the question: If I alkalize my body, am I going to come up with one of these chronic degenerative diseases?

DR. GUERRERO: No.

MR. BARRETT: Such as cancer, arthritis --

DR. GUERRERO: No.

MR. BARRETT: How can you say that so confidently?

7

DR. GUERRERO: I'm very confident in saying that, primarily because of the clinical studies we've done. I've seen it in my -- in my -- in my clinical practice. I've seen it every day in my clinical practice.

MR. BARRETT: Tell me about --

DR. GUERRERO: I treat patients that have conditions --

MR. BARRETT: -- the studies -- tell me about a study that you've done with -- with chronic disease.

DR. GUERRERO: Well, based on acid alkaline principles we wanted to take groups of people that had degenerative conditions -- and, to me, it didn't really matter what their degenerative condition was and I preferred them to have a variety of conditions. So I certainly just didn't want to have a base of liver cancer or bone cancer or prostate cancer or breast cancer. I wanted to, you know, lump them into a group and see what the response would be over time.

Well, now it's been -- you know, now we're going into, you know, eight years and within a five year period of time we took 200 people that had a variety of degenerative conditions. They weren't all the same conditions, they --

MR. BARRETT: Were they terminal?

DR. GUERRERO: They were diagnosed as terminal.

MR. BARRETT: Two hundred people -- now, eight years later, how many of them are still alive?

DR. GUERRERO: Well, I've got -- out of that -- out of those 200 people that were terminal we lost eight. Eight passed away.

MR. BARRETT: And that's amazing. People must have been amazed by those studies.

DR. GUERRERO: Yeah. I mean, it was -- it was really exciting to see at the time. And that's really what solidified, for me, this -- you know, the concepts of acid and alkaline balance. And so, now, over the years I've just been afraid to deviate from what has worked for me in my clinic.

Complaint Ex. 6 at 11-13.

- MR. BARRETT: Now, explain. When a patient comes to your office -- whether they have cancer or arthritis, diabetes, you start them on a few standard supplements.

DR. GUERRERO: Right.

MR. BARRETT: One being a product called Supreme Greens, the other one being a coral calcium type product.

DR. GUERRERO: Yes.

Complaint Ex. 6 at 15.

- MR. BARRETT: Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a by-product. How come?

  Complaint Ex. 6 at 22.

- DR. GUERRERO: It's great for women that are pregnant because it certainly applies –

  MR. BARRETT: So she can take it when she's pregnant?

  DR. GUERRERO: No question. My wife took it, my wife took it through all of her pregnancies.

  MR. BARRETT: And you have five children?

  DR. GUERRERO: We have five children.

  MR. BARRETT: Okay.

  DR. GUERRERO: And she took it through all of her pregnancies, never had to deal with, you know, prenatal vitamins, never got morning sickness.

  Complaint Ex. 6 at 22.

- DR. GUERRERO: * * * And, you know, think about arthritis. Let's talk about arthritis for a minute. Arthritis is an inflammation in the joint. What happens because it's so acidic that when a cell receives nourishment and it breaks it down, the mucosal lining again is so hard that it can't excrete the waste out. So the cell accumulates and just gets bigger and bigger and bigger and bigger so we get inflamed joints.

  So the MSM really is a great anti-inflammatory.

  MR. BARRETT: It acts as –

9

DR. GUERRERO:  Because as a super conductor it makes the cell wall more permeable.  So now the cell can actually release all of its metabolic waste.

MR. BARRETT:  It takes down swelling.

Complaint Ex. 6 at 28-29.

- MR. BARRETT: * * *  What are the other nutrients in there and does it interfere with any medication?

    DR. GUERRERO:  Because I have, you know, a wide range of patients in different conditions, I needed to ensure that the formula was synergistic with all medications.  And so, you know, the Supreme Greens with MSM is synergistic with medication.  There is no contra-indication.

    MR. BARRETT:  So anybody out – anybody –

    DR. GUERRERO:  (Inaudible).

    MR. BARRETT:  – anybody out there basically on any type of medication, they can take the Supreme Greens product?

    DR. GUERRERO:  Yes.

    Complaint Ex. 6 at 29-30.

- If you or someone you love is suffering from Cancer, Arthritis, Osteoporosis, Fibromyalgia, Heart Disease, Diabetes, Heartburn, Fatigue, Excess Weight, or simply the everyday ravages of aging - **it's time to start down the path to a healthier lifestyle ...**

    > Ex. 7 (excerpt from Internet website
    > www.todayshealth.com/supremegreens) at p. 1.[6]

- A number of health problems and degenerative conditions have been **linked to highly acidic cell pH:**

    - Cancer
    - Arthritis

_____

[6] It appears that the Barrett defendants have recently taken down this website.  In light of their past behavior, however, a court order is necessary to make sure that the Barrett defendants do not bring back the website.  Additionally, a similar website run by the Guerrero defendants still remains up and is claiming that Supreme Greens helps your body and "prevent[s] and fight[s] disease."  PX A, Att. 11.  A TRO is needed to stop these ongoing deceptions.

<pre>
        *       *       *
</pre>
- High Blood Pressure
- High Cholesterol
<pre>
      *       *       *
</pre>
- Diabetes
<pre>
      *       *       *
</pre>
- Endometriosis
<pre>
      *       *       *
</pre>
- Overweight
- Heart Disease

So How Do You Rebalance Your Cells pH Levels and Get the Minerals and Nutrients You Need?

According to Health professionals, supplements are needed to give the body what it needs. But where most supplements either provide vitamins or proteins, Supreme Greens works to help rebalance your cell pH.

<pre>
        *       *       *
</pre>

Supreme Greens was formulated by Dr. Alex Guerrero, a renowned physician who has focused his career on working with people with various degenerative and chronic ailments. His breakthrough supplement has already helped thousands of people with cancer, diabetes, arthritis, lupus, fibromyalgia, chronic fatigue syndrome, and many others.

Compl., Ex. 7 at pp. 2-3.

## 2.  The Challenged Claims Are Not Supported by Competent and Reliable Scientific Evidence.

The strongest evidence that the TRO defendants' claims for Supreme Greens are false comes from a surprising source: so-called "Dr." Alex Guerrero. In April 2004, he conceded on the television program "20/20" that – contrary to his own statements in the infomercial – there was "no scientific support" for or clinical studies demonstrating the efficacy of Supreme Greens:

- JAMI FLOYD (voice over): . . . in the infomercial, Guerrero says he has a clinical study of 200 terminal patients to prove it.

  JAMI FLOYD (voice over): But even more amazing was what Guerrero told us when we showed up and asked him to see those studies. So what kind of study do you have that supports this product?

11

ALEX GUERRERO, Supreme Greens:  Well, there is no study.

JAMI FLOYD (off camera):  So when you say your clinical experience, what are you referring to?

ALEX GUERRERO:  Just the -my clients that I see.

JAMI FLOYD (off camera):  So we have only your word, there's nothing published?

ALEX GUERRERO:  Nothing published.

JAMI FLOYD (off camera):  There's nothing written.

ALEX GUERRERO:  No.

JAMI FLOYD (off camera):  So you have no scientific support for Supreme Greens?

ALEX GUERRERO:  No, there is no scientific support for Supreme Greens.

PX A, Att. 23 at 5-6.  Additionally, a former DMC employee has stated that Donald Barrett knew that there was no such clinical study, yet nevertheless insisted that a clinical study be discussed in the infomercial.  PX D ¶ 6.

Although no further evidence should be necessary to assist the Court in assessing the falsity of the TRO defendants' outrageous claims, the Commission also provides the declarations of two experts:  Barrie Cassileth, Ph.D, Chief of the Integrative Medicine Service of the Memorial Sloan-Kettering Cancer Center (PX C) and Landon King, M.D., Associate Professor of Medicine and Biological Chemistry at the John Hopkins University School of Medicine (PX B).  Dr. Cassileth is an expert in complementary and alternative therapies, particularly as they relate to cancer; Dr. King is an expert in pulmonary and critical care medicine and the body's acid-alkaline balance.

Dr. Cassileth and Dr. King were both asked for their opinions concerning the challenged claims.  Together, their declarations demonstrate that: (1) the TRO defendants' claims that disease

12

is the result of the body becoming overly acidic, and can be prevented or treated by restoring the body to an alkaline state, have no scientific support; (2) there is no sound scientific evidence that Supreme Greens prevents, treats or cures cancer, heart disease, diabetes and arthritis; and (3) several of the ingredients in Supreme Greens raise safety concerns for pregnant women and consumers taking prescription medications. PX B; PX C.

As Dr. King explains in his Declaration, "the body uses multiple systems to keep its pH level as stable as possible." PX B ¶11. The basic method of action set forth in the Supreme Greens infomercial – that changing the body's pH level can cure, treat or prevent disease – is false. There is no scientific evidence that disease is caused by too much acidity in the blood or that increasing the alkalinity of the body will prevent, cure, or treat cancer, heart disease, arthritis, or diabetes. PX B ¶¶ 16, 19-25.

According to Dr. Cassileth, in order to determine whether a product treats a particular disease a reasonable scientist or physician would expect that product to have been the subject of at least one rigorous, controlled clinical trial. PX C ¶¶ 23, 24. There is no such scientific evidence showing that Supreme Greens, or any of its constituent ingredients, prevents, treats of cures cancer, heart disease, arthritis or diabetes. PX C ¶¶ 23, 24, 30. Additionally, some safety issues are raised with respect to promoting this product for use by pregnant women and children. Some of the ingredients should not be taken by pregnant women and other ingredients may affect the absorbability of prescription drugs. PX C ¶¶ 28, 29, Att. 2. Finally, promoting Supreme Greens as a replacement for prenatal vitamins also raises notable safety issues, as it is unclear whether Supreme Greens contains sufficient folic acid to prevent fetal neural tube defects. PX C ¶ 28.

In addition, on April 19, 2004, the Food & Drug Administration sent a warning letter to DMC, ITV and Barrett alleging that defendants were making illegal and unsubstantiated labeling

13

claims for Supreme Greens, including many of the claims challenged herein by the FTC.  PX A, Att. 25.

Finally, as of mid-October 2003, all of the TRO defendants were on notice that the FTC had substantial concerns regarding the Supreme Greens infomercial, yet not a single one of the TRO defendants took any steps to halt the dissemination of the infomercial.  PX A, Att. 26, 27; PX G ¶ 7.  Even more tellingly, all of these defendants had seen a transcript of the infomercial that contained comments from DMC's counsel raising numerous direct questions about many of the claims in the infomercial.  *See* PX A, Att. 26 at 6, 7, 10 (October 14, 2003 email from DMC to Geremesz attaching a transcript of the Supreme Greens infomercial that contains handwritten comments from DMC's attorney such as "sounds like BS," "need scientific support for this" and "the study says it worked for pigs").

## IV.    LEGAL ANALYSIS

For more than 50 years, the FTC has brought actions to halt bogus cancer-cure schemes such as the one challenged here.  *See Koch v. FTC*, 206 F.2d 311 (6th Cir. 1953) (upholding Commission findings concerning substance that purportedly cured cancer and other diseases); *see also FTC v. Pharmtech Research, Inc.*, 576 F. Supp. 294 (D.D.C. 1983) (preliminary injunction issued in connection with sale of dietary supplement promoted for cancer risk-reduction); *See also FTC v. Seasilver USA, Inc.*, (CV-S-03-0676-RLH(LRL)) (D. Nev.) (Ex. 1) (TRO granted with receivership and asset freeze for fraudulent dietary supplement).  The TRO defendants have defrauded vulnerable consumers by claiming that Supreme Greens not only cures, but also treats and prevents, cancer and other major diseases.  In addition, the Barrett defendants reel in consumers through a phony health-show format in order to add an air of legitimacy to their erstwhile commercial enterprise.  And if that wasn't enough, the Barrett defendants then make

14

unauthorized charges on these consumers' credit cards.

### A.    Section 13(b) Authorizes this Court to Grant the Requested Relief.

The Commission seeks a temporary restraining order: (1) prohibiting the TRO defendants

from making the challenged representations in connection with the advertising, promotion,

offering for sale, distribution, or sale of Supreme Greens or any product containing one or more of

the ingredients in Supreme Greens' proprietary blend; (2) prohibiting the Barrett defendants from

imposing unauthorized charges on consumers' accounts; (3) appointing a temporary receiver over

DMC and ITV; (4) freezing the assets of the Barrett defendants and restricting the ability of the

Guerrero defendants to dissipate assets; (5) requiring the TRO defendants to preserve their sales

and financial records and other related evidence and providing a right for immediate access for the

FTC to the TRO defendants' office premises; (6) requiring the TRO defendants to provide

completed financial disclosure forms; (7) granting expedited discovery to the Commission; and (8)

requiring the TRO defendants to show cause, if there is any, why this Court should not enter a

preliminary injunction, pending final ruling on the Complaint. The relief requested is authorized

by Section 13(b) of the FTC Act in conjunction with Fed. R. Civ. P. 65, and is necessary and

appropriate in this case.

"Section 13(b) . . . authorizes the FTC to seek, and the district courts to grant, preliminary

and permanent injunctions against practices that violate any of the laws enforced by the

Commission." *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468 (11th Cir. 1996); *FTC v.*

*World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1026 (7th Cir. 1988) ("We have no reason to

disagree with . . . the Ninth and Eleventh Circuits that the authority to grant permanent injunctive

relief also includes the authority to grant interlocutory relief"). The district court "may order

preliminary relief, including an asset freeze, that may be needed to make permanent relief

15

possible." *Gem Merchandising*, 87 F.3d at 469; *FTC v. Dion,* Civ. No. 03-40005-NMG, slip op. at 4 (D. Mass. 2003) (converting previously issued TRO with asset freeze into preliminary injunction) (copy attached as Exhibit 2); *FTC v. American Inventors Corp.*, Civ. A. No. 95-30219-MAP, 1996 WL 641642 (D. Mass. Mar. 13, 1996) (noting prior issuance of TRO and preliminary injunction, court issues revised preliminary injunction with asset freeze).[7]

**B.    This Case Meets the Standard for the Issuance of a TRO and a Preliminary Injunction.**

The evidence submitted by the FTC meets the standard for issuance of a TRO and a preliminary injunction.[8]  When the Commission moves for preliminary injunctive relief, it needs only to demonstrate that "(1) there is a substantial likelihood of success on the merits, (2) the equities favor its position and (3) the injunctive relief is in the public interest." *Dion* (Ex. 2), slip op. at 2, (citing *FTC. v. Rare Coin Galleries of America, Inc.*, 1986-2 Trade Cas. (CCH) ¶ 67,338 at 61,473 (D. Mass. 1986); *Patriot Alcohol Testers,* 1992 WL 27334 at \*3 (applying the same three criteria and also citing *Rare Coin Galleries*).[9]

---

[7]  *See also FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433 (11th Cir. 1984); *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 572 (7th Cir. 1989) ("under section 13(b), the statutory grant of authority to the district court to issue permanent injunctions includes the power to order any ancillary equitable relief necessary to effectuate the exercise of the granted powers"); *FTC v. Patriot Alcohol Testers, Inc.*, No. 91-11812-C, 1992 WL 27334 \*3 (D. Mass. 1992) ("the Court is authorized to issue a preliminary injunction as well as an order freezing assets when the attendant facts and circumstances so warrant as an exercise of its broad equitable powers.").

[8]  Because the Commission is seeking a noticed TRO, the same standards should apply for the TRO and for the preliminary injunction. *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2951 (1995).

[9]  *See also American Inventors Corp.*, 1996 WL 641642 \* 1 (granting preliminary injunction and asset freeze upon court's finding of substantial likelihood that Commission will ultimately succeed on the merits and that defendants will conceal or dissipate assets absent freeze, and that "weighing the equities and considering the Commission's likelihood of ultimate success, a preliminary injunction with asset freeze and an order to preserve documents is in the public interest.")

In this case, the evidence demonstrates a strong likelihood that the Commission will ultimately prevail; the public interest in halting deceptive advertising that risks serious injury to consumer's physical and economic health outweighs the TRO defendants' private business interests; and the public interest in ceasing the dissemination of false and/or unsubstantiated advertising claims relating to serious health conditions is substantial.

### 1.    The Commission Is Likely to Prevail on the Merits.

Generally, the Commission "'meets its burden on the likelihood of success issue if it shows preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits.'" *FTC v. Beatrice Foods Co.*, 587 F.2d 1225, 1229 (D.C. Cir. 1978) (citation omitted). As discussed herein, the Commission meets this burden.

Section 5(a) of the FTC Act prohibits deceptive acts and practices in or affecting commerce; Section 12 prohibits the dissemination of false advertising in order to induce the purchase of foods, drugs, devices, or cosmetics.[10] To prevail under Sections 5(a) and 12, the FTC must demonstrate that "first, there is a representation, omission, or practice that second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994), *citing Cliffdale Associates, Inc.*, 103 F.T.C. 110, 164-65 (1984); *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). As set forth below, the FTC has established all three of these sufficiently for the Court to grant a temporary restraining order and preliminary injunction.

First, as discussed above and detailed in the declarations of Drs. Cassileth and King – and

---

[10] Supreme Greens is either a food or a drug for purposes of the FTC Act. Section 15(c) of the Act defines a drug, in part, as any article, other than a food, "intended to affect the structure or function" of the human body and Section 15(a) defines food as an article used as a food. For purposes of this action, it is not necessary to determine whether Supreme Greens is a food or a drug because Section 12 applies equally to both.

now publicly confirmed by Guerrero – the TRO defendants' advertising represents, falsely and without adequate substantiation,[11] that Supreme Greens is an effective treatment, cure, or preventative for cancer, heart disease, arthritis, and diabetes.

Second, the TRO defendants' misrepresentations are likely to mislead reasonable consumers. Consumers have no obligation to doubt the veracity of express claims, and false or unsubstantiated claims are inherently "likely to mislead." *Thompson Med. Co.*, 104 F.T.C. 648, 788, 818-19 (1984) (discussing with approval FTC's Policy Statement on Deception (Oct. 14, 1983)), *aff'd* 791 F.2d 189 (D.C. Cir. 1986).

Third, given the express nature and importance of the challenged claims, and the fact that they go to the core reasons why consumers buy Supreme Greens, they are presumed to be material. It is well-established that "[e]xpress claims or deliberately-made implied claims used to induce the purchase of a particular product or service are presumed to be material." *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999) (*citing Pantron*, 33 F.3d at 1096). Moreover, because the claims here involve "health, safety, or other areas with which the reasonable consumer would be concerned, [such as] . . . the purpose, safety, efficacy, or cost of the product . . . [or its] durability, performance, warranties or quality," they are presumed material as a matter of law. *In re Cliffdale Assocs.*, 103 F.T.C. at 182-83 (FTC's Policy Statement on Deception); *see also Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000), *citing Cliffdale Assocs.*; *Pantron.*, 33 F.3d at 1095-96 (same); *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998) ("A misrepresentation is material if it contains information that is important to consumers and is likely

---

[11] Mere anecdotal evidence or testimonials are insufficient to support claims that a product cures a disease. *Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1143 (9th Cir. 1978) ("Anecdotal evidence, such as testimonials by satisfied patients or statements by doctors that, based on their experience, they 'believe' a drug is effective do not constitute adequate and well-controlled investigations and cannot, therefore, provide substantial evidence of effectiveness.").

to affect their decision about whether to purchase a product.").

Thus, there is substantial evidence that the TRO defendants have made false and unsubstantiated claims, that those claims are likely to mislead, and that they are material to consumers. Accordingly, the Commission has demonstrated a likelihood of success on the merits.

The FTC is also likely to succeed in holding all of the TRO defendants jointly and severally liable for these violations of the FTC Act. First, with respect to the corporate defendants, DMC and ITV produced and disseminated the infomercial; Healthy Solutions designated Dr. Guerrero as the expert spokesman who would appear in the infomercial; and Health Solutions, Dr. Guerrero's company, has applied for the Supreme Greens trademark. PX A, Att. 4, 10, 13, 16. Health Solutions is also the corporate entity behind www.hsnow.com, which makes disease and weight-loss claims. PX A, Att. 11.[12]

As far as the individual defendants are concerned, Barrett and Guerrero are liable because they actively participated in making the challenged claims. Similarly, as active principals of Healthy Solutions, Howell and Geremesz are individually liable.[13] Barrett is also liable for the imposition by his companies of unauthorized charges on consumers' credit and debit accounts because he is the President and a Director of both corporations and was involved in the maintenance of the fraudulent autoship practices. PX D ¶¶ 12-16; PX E ¶ 8, 11.

All individuals fall squarely within the law that holds such individuals liable. Barrett, Guerrero, Howell and Geremesz are liable for corporate practices if they have "participated

---

[12] Consumers who go to the websites www.supremegreens.com or www.supreme-greens.com are immediately linked directly to the Guerreo defendants' primary website, www.hsnow.com. PX A ¶ 14.

[13] For example, as President of Healthy Solutions, Howell signed the Distribution Agreement under which Healthy Solutions authorized ITV to distribute Supreme Greens and designated Guerrero as the expert spokesman in a Supreme Greens infomercial. Px A, Att. 4.