## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>Plaintiff, )<br>v. )<br>DIRECT MARKETING CONCEPTS, INC., et )<br>al., )<br>Defendants. ) | CIVIL ACTION NO. 04-CV-11136GAO |

### AFFIDAVIT OF CATHERINE RATCLIFFE

I Catherine Ratcliffe, under oath declare as follows:

1.    I am the Vice President of Customer Service for Direct Marketing Concepts, Inc. ("DMC") and ITV Direct ("ITV") and have personal knowledge of the facts contained herein.

2.    I have been employed by Direct Marketing Concepts and its affiliates since May of 2002. I was a supervisor of Customer Service and eventually promoted to Vice President of Customer Service on or about April, 1 2003.

3.    My duties as Vice President include managing a staff of about twenty Customer Service Representatives.

4.    The duties of the Customer Service Representatives include working with customers and their orders. Customer Service Representatives handle all incoming calls from customers. Representatives handle issues ranging from delay in shipment, explanation of the continuity program, crediting back the

customer for returned product, and explanation of the uses of the products we sell.

5.    Our department also has two floor supervisors that work closely with the representatives as well as the customers. Pamela Welch primarily works with the credit card companies and Kathleen Badore ("Sunni") handles all customer services issues.

6.    I personally work with the Sales Managers on a daily basis. One of my main duties is monitoring Sales Representatives and ensuring compliance. Sales Managers, on a daily basis listen to random phone calls of representatives and document the phone calls in our database. (see attachment A). The Sales Managers also record individual representatives for both compliance and training issues. The Sales Managers then sit with the individual representative and go over the tape and critique the calls that were recorded.

7.    On or about January 1, 2004 we initiated a recording system for all of our calls. When a customer calls in they are put on notice that their calls may be monitored for quality control issues or training purposes.

8.    We distributed a script that Sales Representatives must follow when recording a call. (see attachment B). That script is posted on our intranet and at all desks on the sales floor. When a customer calls in and orders a product that is put on a continuity program or over a certain dollar amount we have mandated that all calls are recorded. The customer must give their express

2

consent. The customers are also made aware that they can cancel or modify the continuity program at any time.

9.    If a representative on the sales floor fails to mention the continuity program or puts the customer on the program without their consent, then that is grounds for termination. We have on occasion terminated Sales Representatives for not properly explaining the continuity program.

10.    I understand that certain former employees have stated that sales representatives are pressured to mislead or deceive customers into joining the continuity program. That is not true and makes no sense. Sales representatives are encouraged to explain in detail the program and answer any questions that a customer might have. Also, because a customer can cancel at any time, forcing a customer into the program through deception would provide no benefit whatsoever.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of June, 2004 in Beverly, Massachusetts.

CATHERINE RATCLIFFE

JUN-04-2004 13:05 FROM:

TO:617946896801

P.4/21