## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-11136GAO<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF WAYNE CALLAHAN

I, WAYNE CALLAHAN, under oath, declare as follows:

1. I have been employed as an accountant at the firm of Leo H. Bonarrigo, CPA for the past thirteen (13) years, and have over twenty (20) years experience practicing as an accountant and preparing financial statements and related documentation. I and Leo H. Bonarrigo, CPA were retained by the defendants Direct Marketing Concepts ("DMC") and ITV Direct, Inc. ("ITV Direct") (collectively, "DMC"), located in Beverly, Massachusetts, to serve as their outside tax accountants, and we continue in that capacity. I have served as DMC's outside accountant since its inception in 2001. I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2. As the outside accountant for DMC, I have access to all of DMC's financial books and records provided to me by management, and the related supporting bank documentation concerning all transactions in which DMC has engaged since 2001. In performing my duties, I have reviewed all of these books, records and documents, and I have applied accepted accounting procedures and standards in preparing the company's financial statements, without reports therein.

3. Based on my review of the financial records, receipts and supporting bank documentation of the company, DMC keeps accurate and complete financial records of all of its bank business transactions. DMC's records are kept in the ordinary course of business and

accurately reflect all transactions by the company. These financial records include DMC's general ledger, in which all of DMC's banking transactions have been properly recorded each year. DMC has also accurately recorded from the banking records all payments to its employees and principals, whether in the form of salary or other distributions, since the inception of the company. I am not aware of any transaction that has not been accurately reflected in the books and records of the company.

       4.      According to my review of the banking and financial records of DMC, all of the cash flow into the company comes in through the ordinary course of DMC's business and loans from shareholders. Because DMC is organized as an S-Corporation, the corporation itself does not pay tax; net income of the corporation flows-through to the shareholders. Thus, most of the profit of DMC is distributed to the shareholders of the business. While it might appear to a third party that company assets were used by the principals to purchase personal items, in fact any such purchase has been properly recorded in DMC's books as a distribution of profits, and thus not as a corporate expense. The principals are then responsible for the personal income taxes on these distributions.

       5.      I prepared the tax returns for DMC for the tax years 2001 and 2002. DMC has not filed a return for 2003, but has received a valid extension. Each principal of DMC has paid his respective estimated tax obligations for 2003. Similar to Item 4 above, the use of corporate funds used to pay a personal income tax obligation of a shareholder is not a corporate deduction but rather a property distribution.

       6.      DMC currently has one hundred and forty one (141) employees, who work out of its location in Beverly, Massachusetts.

       7.      I have processed DMC's financial books and bank records since its inception, and I am not aware of any fraudulent transfers of DMC's assets, any secretion of its assets, or any destruction of any financial record of DMC. I am not aware of any off-shore or secret bank accounts in the name of DMC or ITV or either of its principals, nor am I aware of any other account or mechanism for concealing the assets of DMC.

8. Since the FTC first began its investigation of DMC and Mr. Barrett, I have been prepared to disclose detailed financial statements without reports therein for DMC. I did prepare one set of financial statements for the FTC in 2003, which included statements of the Company's and Mr. Barrett's assets, and I am ready to prepare updated financial statements if requested. All of the records of DMC's business transactions and banking information are available for review and I am not aware of any transactions, including revenues received and deposited in any bank account and/or any expenses paid out of these bank accounts, which are not accurately reflected in the accounting records of DMC.

9. DMC currently has profitable business operations unrelated to the infomercials it produced for dietary/nutritional supplements that are the subject of the current FTC investigation and action. This business includes non-ingestible non-supplement products on which it has been generating profit for the past several months.

10. At the FTC's prior request, I have been in contact with another independent accounting firm regarding conducting a comprehensive independent audit or review of the operations and business of DMC and the products currently under review. This firm is willing to conduct an independent audit or review of DMC and provide financial statements with reports thereon to the FTC in connection with this matter.

11. I understand that the FTC contends that there have been improper transfers of assets or improper alterations of documentation concerning the business and operations of DMC. I have daily access and control over the books and records of DMC, as well as daily contact with DMC's principals. I am not aware of any facts whatsoever that would support these allegations by the FTC concerning the assets and records of DMC.

12. I also understand that an FTC investigator claims that in 2003 product arrived from DMC without her approval. I am unaware of any widespread practice of shipping product or charging for product that has not been expressly approved by a customer. In addition, since the time of the FTC investigator's purchase, the Company has installed and utilized a service which records the voice conversation of the sales representative on each and every customer call.

The sales representatives are also required to explain clearly the continuity program, including future credit-card charges, and obtain the customer's verbal acceptance of the program. This recorded confirmation of contract acceptance has helped DMC immeasurably in assuring the continuity/auto-ship program complies with all consumer protection laws. Thus, contrary to the FTC's claim, the Company is not engaged in any deceptive practices in its auto-ship practice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of June, 2004 at Boston, Massachusetts.


　　　　　　　　　　　　　　　　　　　　　　　/s/Wayne Callahan
　　　　　　　　　　　　　　　　　　　　　　　WAYNE CALLAHAN

BO1 15647762.1