UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) ) |
| DIRECT MARKETING CONCEPTS, INC., d/b/a TODAY'S HEALTH and DIRECT FULFILLMENT, ITV DIRECT, INC., d/b/a DIRECT FULFILLMENT, DONALD W. BARRETT, HEALTHY SOLUTIONS, LLC d/b/a DIRECT BUSINESS CONCEPTS, HEALTH SOLUTIONS, INC., ALEJANDRO GUERRERO, a/k/a ALEX GUERRERO, MICHAEL HOWELL, GREG GEREMESZ, TRIAD ML MARKETING, INC., KING MEDIA, INC., and ALLEN STERN, | ) ) ) ) ) ) ) ) ) ) ) )   Civ. No. |
|     Defendants. | ) ) |

(Proposed)

**TEMPORARY RESTRAINING ORDER WITH APPOINTMENT OF TEMPORARY RECEIVER, ASSET FREEZE, RETENTION OF RECORDS, EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AS TO DEFENDANTS DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., AND DONALD W. BARRETT,**

Plaintiff Federal Trade Commission ("Commission" or "FTC"), having filed its Complaint for Injunctive and Other Equitable Relief, including redress to consumers, and having moved for a noticed temporary restraining order with other equitable relief against defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett pursuant to Fed. R. Civ. P. 65, and the Court having considered the pleadings, declarations and exhibits filed in support of and opposing said motion, finds:

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all the parties hereto;

2. Venue lies properly with this Court;

3. There is good cause to believe that defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett have engaged in and are likely to engage in acts and practices that violate Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act"), as amended, 15 U.S.C. §§ 45(a) and 52, and that the Commission is therefore likely to prevail on the merits of this action;

4. There is good cause to believe that immediate and irreparable harm to consumers will result from ongoing violations of Section 5(a) and 12 of the FTC Act by defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett unless these defendants are enjoined by order of this Court;

5. Good cause exists for appointing a temporary receiver over corporate defendants Direct Marketing Concepts, Inc. and ITV Direct, Inc;

6. Good cause exists for imposing an asset freeze on defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett, and for requiring said defendants to preserve business records and to produce sworn financial statements and profit-and-loss statements; and for limited expedited discovery;

7. Weighing the equities and considering the Commission's likelihood of ultimate success, a temporary restraining order and other equitable relief is in the public interest; and

8. No security is required of any agency of the United States for issuance of a restraining order. Fed. R. Civ. P. 65©).

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

1. "DMC" means Direct Marketing Concepts, Inc., d/b/a/ "Today's Health" and "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 20 Oakpoint Ext., Saugus, MA 01906. DMC also does business at 100 Cummings Center, Suite 139F, Beverly, MA 01915.

2. "ITV" means ITV Direct, Inc., d/b/a "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 100 Cummings Center, Suite 506E, Beverly, MA.

3. "Barrett" means Donald W. Barrett, individually and as an officer and director of DMC, and as an officer and director of ITV.

4. "Advertising" means any written or verbal statement, illustration or depiction that is designed to effect a sale or create interest in the purchasing of goods or services, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, or in any other medium.

5. "Promotion" shall mean any written or verbal statement, illustration, or depiction that is designed to effect a sale or create interest in the purchasing of goods or services that is not "advertising," including but not limited to video news releases and press releases.

6. "Substantially similar product" means any dietary supplement containing one or more of the ingredients contained in the proprietary blend of Supreme Greens with MSM.

7. "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

8. "Receivership Defendants" means, collectively, DMC and ITV, and their respective subsidiaries, divisions, affiliates, successors, and assigns; and "Receivership Defendant" means any of the Receivership Defendants;

9. "TRO Defendants" shall mean DMC, ITV, and Barrett, individually or collectively.

10. "Continuity program" shall mean any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product.

## PROHIBITED BUSINESS ACTIVITIES

### I.

**IT IS THEREFORE ORDERED** that the TRO Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in

or affecting commerce, are hereby enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or trade names, any representation that such product:

    A.    Is an effective treatment, cure, or preventative for cancer;

    B.    Is an effective treatment, cure, or preventative for heart disease;

    C.    Is an effective treatment, cure, or preventative for diabetes;

    D.    Is an effective treatment, cure, or preventative for arthritis; or

    E.    Can be taken safely by pregnant women, by infants and children, or by any person taking any type of medication.

## II.

**IT IS FURTHER ORDERED** that the TRO Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program or service, in or affecting commerce, are hereby enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that such product, program, or service can prevent, treat, or cure any disease.

## FORMATTING FOR BROADCAST ADVERTISING

### III.

**IT IS FURTHER ORDERED** that the TRO Defendants, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, do forthwith cease and desist from creating, producing, selling, or disseminating:

> A. Any advertisement that misrepresents, expressly or by implication, that it is not a paid advertisement; and
>
> B. Any commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and for a length of time sufficient for an ordinary consumer to read, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product or service, the following disclosure:
>
>> "THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."
>
> Provided that, for the purposes of this provision, the oral or visual presentation of a telephone number or address through which viewers may obtain more

   information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the display of the disclosure provided herein; and

C. Any radio advertisement fifteen (15) minutes in length or longer or intended to fill a time slot of fifteen (15) minutes in length or longer that does not state in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and in a volume and cadence sufficient for an ordinary consumer to hear, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product, program, or service, the following disclosure:

> "THE PROGRAM YOU ARE LISTENING TO IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."

Provided that, for the purposes of this provision, the presentation of a telephone number or address through which listeners may obtain more information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the stating of the disclosure provided herein.

## CONTINUITY PROGRAM

### IV.

**IT IS FURTHER ORDERED** that:

A. The TRO Defendants, directly or through any corporation, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all

persons and entities in active concert with them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, are hereby enjoined from:

1. Selling or distributing or causing to be sold or distributed products programs, or services, by means of a Continuity Program without first obtaining the express, informed consent of consumers to participate in that program before any shipment is made; *Provided*, that the consumer's consent will be deemed to be informed for the purpose of this Part IV only if the TRO Defendants clearly and conspicuously disclose, before the consumer consents to any purchase, all material terms and conditions of the Continuity Program, including but not limited to:

    a. the fact that periodic shipments will occur without further action by the consumer;

    b. a description of each good or type of good to be included in each shipment;

    c. the approximate interval between each shipment;

    d. a description of the billing procedure to be employed, including the total cost to be charged to the subscriber's credit or debit card, or otherwise billed to the subscriber, for each shipment;

    e. the minimum number of purchases required under the program, if any;

   f. all material terms and conditions of a guarantee, refund, or return policy if any representation is made about such a policy, or, if the TRO Defendants have a policy of not making refunds or accepting returns, a statement that this is the policy of defendants DMC, ITV, and Barrett; and

   g. a description of the terms and conditions under which, and the procedures by which, a subscriber may cancel further shipments, as set forth in Part IV.C below.

*Provided further*, that the consumer's consent will be deemed to be express for the purpose of this Part IV only if the TRO Defendants obtained the informed consent in a manner which clearly evidences that the consumer is consenting to the terms of the Continuity Program.

  2. Making any representation, in any manner, expressly or by implication, that consumers owe money for Continuity Program merchandise shipped to consumers, unless the TRO Defendants have obtained consumers' express, informed consent to receive and pay for the merchandise.

B. The TRO Defendants shall convey the terms and conditions of the Continuity Program to the consumer in the following manner:

  1. For any solicitation initiated or completed by telephone, the terms and conditions set forth in Part IV.A above shall be disclosed during that conversation in clear and understandable language;

  2. For any solicitation by a print advertisement, direct mail, electronic mail, or by the Internet, the terms and conditions set forth in Part IV.A above

9

shall be disclosed in a clear and prominent manner in close proximity to the ordering instructions, *provided that*, if the advertisement or mailing contains an order form or coupon on a separate page or document from the advertising material, the disclosure shall be made both in the advertising materials and on the order form or coupon.

  C. The TRO Defendants shall provide, in conjunction with each shipment made pursuant to any Continuity Program, a clear and conspicuous description of the terms and conditions under which, and the procedures by which, the subscriber may cancel future shipments. Such description shall include either a toll-free telephone number the subscriber may call or a postage-paid mailing the subscriber may return to notify the TRO Defendants of the subscriber's cancellation of further shipments. *Provided, however*, that for purposes of this Part, if cancellation is by mail, the TRO Defendants shall be deemed to be notified on the date the subscriber mails the postage-paid mailing or other communication canceling further shipments.

  D. The TRO Defendants shall not ship any product, program, or service to, or mail any bill or dunning communication to, or bill the credit or debit card of any subscriber who, having once subscribed to a Continuity Program and having fulfilled any minimum purchase requirement to which the subscriber has given express informed consent, notifies the TRO Defendants by the means described in Part IV.C above, or by any other reasonable means, of the subscriber's cancellation of further shipments.

## ASSET FREEZE

## V.

**IT IS FURTHER ORDERED** that the defendants Barrett, Direct Marketing Concepts and ITV Direct, and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with any of them, including but not limited to Robert Maihos, who receive actual notice of this Order by personal service or otherwise, including by facsimile, are hereby enjoined from:

    A.    Selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, intellectual property or other assets or any interest therein, wherever located, including any assets outside the territorial United States, that are:

        1.    owned or controlled by Barrett, DMC or ITV, in whole or in part; or

        2.    in the actual or constructive possession of Barrett, DMC or ITV; or

        3.    owned, controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of Barrett, DMC or ITV or, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by Barrett, DMC or ITV;

    B.    Opening or causing to be opened any safe deposit boxed titled in the name of Barrett, DMC or ITV, or subject to access by Barrett, DMC or ITV;

    C.    Incurring charges or cash advances on any credit or debit card issued in the name, singly or jointly, of Barrett, DMC or ITV, or any corporation, partnership or other entity directly or indirectly owned, managed, or controlled by Barrett, DMC or ITV;

    D.    Transferring any funds or other assets subject to this Order for attorneys' fees,

11

living expenses, or ordinary and customary business expenses, except from accounts or other assets identified by prior written notice to the Commission and where the Court has approved such transfers; provided that no attorneys' fees, living expenses, or ordinary and customary business expenses, other than those set forth in Part V.E below, and only in accordance with the procedures set forth in Part V.E below, shall be paid from funds or other assets subject to this Order until the financial statements required by Part XV, below, are provided to counsel for the Commission.

E.    Notwithstanding the above, Barrett, DMC and ITV may pay from their funds reasonable and necessary living expenses and attorney's fees, not to exceed $5,000, prior to the submission of the financial statements required by Part XVI, below. No such expenses, however, shall be paid from funds subject to this Order except, directly or indirectly, from an account designated by prior written notice to counsel for the Commission.

**IT IS FURTHER ORDERED THAT** the funds, property and assets affected by this section shall include both existing assets and assets acquired after the effective date of this Order, including without limitation, those acquired by loan or gift. Barrett, DMC and ITV, or any third party holding assets for the benefit of Barrett, DMC or ITV (including but not limited to Robert Maihos and anyone related to Barrett by marriage or otherwise), shall hold all assets, including without limitation, payments, loans, and gifts received after having received notice of this Order by personal service or otherwise, including by facsimile.

## RETENTION OF ASSETS BY THIRD PARTIES

### VI.

**IT IS FURTHER ORDERED** that, pending determination of the Commission's request

for a preliminary injunction, any bank, savings and loan, financial or brokerage institution, fund, escrow agent, trustee, mail receipt facility, or other person (including but not limited to Robert Maihos and anyone related to Barrett by marriage or otherwise) or entity who receives actual notice of this Order by personal service or otherwise, including by facsimile, that has possession, custody, or control of any account, asset, or document held on behalf of, or relating or belonging to, Donald Barrett, DMC, d/b/a/ "Today's Health" and "Direct Fulfillment," or ITV, d/b/a/ "Direct Fulfillment," shall:

    A.    Hold and retain within such entity's or person's control, and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any funds, documents, property, or other assets held by or under such entity's or person's control:

        1.    on behalf of, or for the benefit of, Barrett, DMC or ITV, or any other person or entity subject to Part V above;

        2.    in any account maintained in the name of, or subject to withdrawal by Barrett, DMC or ITV, or any other person or entity subject to Part V above; or

        3.    that are subject to access or use by, or under the signatory power of, Barrett, DMC or ITV, or any other person or entity subject to Part V above.

    B.    Deny access to any safe deposit boxes that are either:

        1.    titled in the name, individually or jointly, of Barrett, DMC or ITV, or any other person or entity subject to Part V above; or

        2.    subject to access by Barrett, DMC or ITV, or any other person or entity

The receiver shall be the agent of this Court and solely the agent of this Court in acting as receiver under this Order. The receiver shall be accountable directly to this Court. The receiver shall comply with all Local Rules of this Court governing receivers. The receiver has the directions and authority to:

- A. Assume full control of the Receivership Defendants and all power of the Receivership Defendants' directors, officers, and managers, and remove defendant Donald W. Barrett, Robert Maihos, and any other officer, independent contractor, employee, attorney, or agent of the Receivership Defendants, from control or management of, or participation in, the affairs of the Receivership Defendants as the receiver deems necessary and advisable;

- B. Take immediate and exclusive custody, control, and possession of all properties, premises, assets, and documents of, in the possession of, or under the control of, any Receivership Defendant, wherever situated, including, but not limited, to 100 Cummings Center, Beverly, MA, 01915 and 20 Oakpoint Ext., Saugus, MA 01906. The receiver shall have full power to divert mail and to sue for, collect, receive, and take possession of:

    1. all assets and documents of the Receivership Defendants and members of the public whose interests are now held by or are under the direction, possession, custody, or control of any Receivership Defendant; and

    2. all sums of money now or hereafter due and owing to any Receivership Defendant. *Provided, however*, that the receiver shall not attempt to collect any amount from a consumer if the receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the

        Complaint in this matter;

C. Perform all acts necessary to conserve, hold, manage, and preserve the value of all such assets;

D. Hold, preserve, and administer the business of the Receivership Defendants until further order of this Court, with full authority to perform all acts necessary or incidental thereto, including retaining, hiring, or dismissing any employees, independent contractors, or agents;

E. Take such actions and enter into such agreements in connection with the administration of the Receivership Defendants as the Temporary Receiver deems necessary;

F. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors, and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

G. Make payments and disbursements from the receivership estate that the Temporary Receiver deems necessary to secure or preserve the Receivership Defendants' assets or to carry out the Temporary Receiver's mandate under this Order;

H. Institute, prosecute and defend, compromise, intervene in, or become party to such actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary to collect, recover, protect, maintain, or preserve the value of the assets of the Receivership Defendants or to carry out the Temporary Receiver's mandate under this Order;

I.  Defend, compromise, or otherwise dispose of any actions or proceedings instituted against the Temporary Receiver in his role as temporary receiver or the Receivership Defendants, whether now pending or hereinafter filed, that the Temporary Receiver deems necessary to preserve the assets of the Receivership Defendants or to carry out the Temporary Receiver's mandate under this Order;

J.  Take all steps the Temporary Receiver deems necessary to secure the business premises of the Receivership Defendants, including, but not limited to:

   1.  completing a written inventory of all receivership assets;

   2.  obtaining pertinent information from all employees and other agents of the Receivership Defendants, such as the name, home address, social security number, job description, method of compensation, accrued and unpaid commission and compensation of each employee or agent;

   3.  changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or

   4.  requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receiver with proof of identification, and to demonstrate to the Temporary Receiver's satisfaction that such persons are not removing from the premises any of the Receivership Defendants' documents or assets;

K.  Obtain, by presentation of this Order, tangible and intangible assets as well as information in the custody or control of any person, firm, or entity sufficient to identify the accounts, employees, properties, or other assets or obligations of the

Receivership Defendants;

L. Issue subpoenas to obtain documents pertaining to the receivership, conduct discovery in this action on behalf of the receivership estate, attend any deposition noticed by any party to this action, and ask any question of any deponent which, in the receiver's opinion, is pertinent to the receivership estate;

M. Allow representatives of the Commission and the defendants reasonable access to inspect the Receivership Defendants' books, records, accounts, premises, and other property, wherever located;

N. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

O. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate; and

P. Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Temporary Receiver shall deposit all funds of the Receivership Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.

## COMPENSATION FOR RECEIVER

### VIII.

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver, including but not limited to attorneys retained by the Temporary Receiver, shall be entitled to reasonable compensation for the services they render to the receivership estate and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by the Receivership Defendants. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for payment, outlining the services rendered and the related fees and expenses, with the first such request filed no more than sixty (60) days after the entry of this Order and payment of such fees and costs to be made upon Court approval. The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## TEMPORARY RECEIVER'S BOND AND HOLD HARMLESS PROVISION

### IX.

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk of this Court a bond in the sum of _____ with sureties to be approved by the Court, conditioned that the receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. Without limiting any other rights or immunities the Temporary Receiver may have at law or in equity, the Temporary Receiver shall have no liability for acts or omissions made by or on behalf of him in his capacity as the receiver of DMC and ITV, so long as such acts and omissions are made in good faith, without gross negligence, and in