UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DIRECT MARKETING CONCEPTS, INC., et )<br>al., )<br>)<br>Defendants. )<br>)<br>) | CIVIL ACTION NO. 04-CV-11136GAO |

(Proposed)
**PRELIMINARY INJUNCTION ORDER
AS TO DEFENDANTS DIRECT MARKETING CONCEPTS, INC.,
d/b/a TODAY'S HEALTH, ITV DIRECT, INC.,
AND DONALD W. BARRETT**

Plaintiff Federal Trade Commission ("Commission" or "Plaintiff") filed a complaint against all defendants on June 1, 2004 pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and moved for a preliminary injunction with other equitable relief against defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett (collectively, the "Defendants") pursuant to Fed. R. Civ. P. 65. The Court having considered the pleadings, declarations and exhibits filed in support of and opposing said motion, and after hearing on the motion on June 7, 2004, enters the following order:

**FINDINGS**

1. This Court has jurisdiction over the subject matter of this case and over these Defendants.

2. The complaint states a claim upon which relief may be granted against the Defendants under 15 U.S.C. §§ 45(a) and 52.

3. Venue as to the Defendants in the District of Massachusetts is proper.

**DEFINITIONS**

For the purposes of this Order, the following definitions shall apply:

1. "DMC" means Direct Marketing Concepts, Inc., sometimes d/b/a Today's Health Inc., a corporation, its divisions and subsidiaries, its successors and assigns, and its officers, agents, representatives, and employees.

2. "ITV" means ITV Direct, Inc., a corporation, its divisions and subsidiaries, its successors and assigns, and its officers, agents, representatives, and employees.

3. "Barrett" means Donald W. Barrett, individually and as an officer and director of DMC and ITV.

4. "Defendants" means Barrett, DMC, and ITV, whether acting individually or through any corporation, subsidiary, division, or other entity.

5. "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, and intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

6. "Assisting others" means knowingly providing any of the following services to any person or entity: (a) performing customer service functions for any person or entity, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other advertising or marketing material for any person or entity; or (c) performing advertising or marketing services of any kind for any person or entity.

7. "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

8.      "Competent and reliable scientific evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

9.      "Continuity Program" means any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product.

10.     "Advertising" means any written or verbal statement, illustration or depiction that is designed to effect a sale or create interest in the purchasing of goods or services, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, or in any other medium.

11.     "Promotion" shall mean any written or verbal statement, illustration, or depiction that is designed to effect a sale or create interest in the purchasing of goods or services that is not "advertising," including but not limited to video news releases and press releases.

12.     "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

13.     "FTC" or "Commission" means the Federal Trade Commission.

## PROHIBITED BUSINESS ACTIVITIES

**I.**

That the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in or affecting commerce, are hereby preliminarily enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that such product:

    A.    Is an effective treatment, cure, or preventative for cancer;

    B.    Is an effective treatment, cure, or preventative for heart disease;

    C.    Is an effective treatment, cure, or preventative for diabetes;

    D.    Is an effective treatment, cure, or preventative for arthritis;

    E.    Can be taken safely by pregnant women, by infants and children, or by any person taking any type of medication.

**II.**

That the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in or affecting commerce, are hereby preliminarily

enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that such product can prevent, treat, or cure any disease unless, at the time the representation is made, the Defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## CONTINUITY PROGRAM

## III.

1.      That the Defendants, directly or through any corporation, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert with them who receive actual notice of this Order by personal service or otherwise, in connection with the manufacturing, labeling, promotion, offering for sale, sale, or distribution of any product, in or affecting commerce, are hereby preliminarily restrained from:

    A.    Selling or distributing or causing to be sold or distributed products by means of a Continuity Program without first obtaining the express, informed consent of consumers to participate in that program before any shipment of product is made; *Provided*, that the consumer's consent will be deemed to be informed for the purpose of this Part III only if the Defendants clearly and conspicuously disclose, before the consumer consents to any purchase, all material terms and conditions of the Continuity Program, including but not limited to:

        i.    the fact that periodic shipments of products will occur without further action by the consumer;

        ii.    a description of each good or type of good to be included in each shipment;

      iii.    the approximate interval between each shipment;

      iv.    a description of the billing procedure to be employed, including the total cost to be charged to the subscriber's credit or debit card, or otherwise billed to the subscriber, for each shipment;

      v.    the minimum number of purchases required under the program, if any;

      vi    all material terms and conditions of a guarantee, refund, or return policy if any representation is made about such a policy, or, if the Defendants have a policy of not making refunds or accepting returns, a statement that this is the Defendants' policy; and

      vii.    a description of the terms and conditions under which, and the procedures by which, a subscriber may cancel further shipments, as set forth in Part III.3. below.

*Provided further*, that the consumer's consent will be deemed to be express for the purpose of this Part III only if the Defendants obtained the informed consent in a manner which clearly evidences that the consumer is consenting to the terms of the Continuity Program.

2.    The Defendants shall convey the terms and conditions of the Continuity Program to the consumer in the following manner:

    A.    For any solicitation initiated or completed by telephone, the terms and conditions set forth in Part III.1. above shall be disclosed during that conversation in clear and understandable language;

    B.    For any solicitation by a print advertisement, direct mail, electronic mail, or by the Internet, the terms and conditions set forth in Part III.1. above shall be

        disclosed in a clear and prominent manner in close proximity to the ordering instructions.

3.      The Defendants shall provide, in conjunction with each shipment made pursuant to any Continuity Program, a clear and conspicuous description of the terms and conditions under which, and the procedures by which, the subscriber may cancel future shipments.

4.      The Defendants shall not ship any product to, or mail any bill to, or bill the credit or debit card of any subscriber who, having once subscribed to a Continuity Program and having fulfilled any minimum purchase requirement to which the subscriber has given express informed consent, notifies the Defendants by the mean described in Part III.3. above, or by any other reasonable means, of the subscriber's cancellation of further shipments.

## PACKAGING AND LABELING RECALL

### IV.

That the Defendants shall immediately, upon entry of this order, recall from any person, partnership, corporation, or other entity that is offering for sale, selling, or distributing to consumers Supreme Greens with MSM or any substantially similar product, all packaging, product inserts, and labeling for any product containing, expressly or by implication, any of the representations set forth in Part I or II above, *provided, however*, that in lieu of a recall, the Defendants may immediately repackage and relabel all offending packages, inserts, and labels of such products in such a manner as to ensure that no representations prohibited by this Order are disseminated.

## PROVISO

## V.

That nothing in this order shall prohibit Defendants from making any representation for

1. any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990; or

2. any drug that is permitted in labeling for such drug under any tentative final or final standard promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration.

## ACCOUNTING RELATING TO CORPORATE DEFENDANTS

## VI.

1. That for the purpose of conducting an accounting relating to the Defendants' sale and marketing of Supreme Greens with MSM, and the assets of DMC and ITV and related and affiliated corporate entities, the Defendants shall retain an accountant and/or accounting firm (hereinafter "accounting firm") to be mutually selected by Plaintiff and the Defendants. If the parties have not agreed upon and retained such an accounting firm within 30 days of entry of this Order, Plaintiff may request that the Court appoint an accounting firm to perform such an accounting.

2. That the Defendants shall bear the costs and fees incurred by the accounting firm (whether mutually selected or whether court-appointed) in conducting this accounting.

3. That in this accounting, the accounting firm shall attempt to ascertain, within 90 days from the date of entry of this Order, the following information, whether the information is

located in the United States or outside the territorial United States, and shall prepare a report for Plaintiff and the Defendants describing:

 A. All revenues collected and obtained by DMC and ITV, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale in the United States of Supreme Greens with MSM, and the location and/or transfer of all such revenues;

 B. The amount of all refunds provided by DMC and ITV to consumers, directly or through any corporation, partnership, limited liability corporation, or other entity, in connection with the sale of Supreme Greens with MSM;

 C. Information sufficient to show the flows of all monies received by DMC and ITV, directly or indirectly, from the sale of Supreme Greens with MSM in the United States;

 D. All costs and expenses incurred by the Defendants, directly or through any corporation, partnership, limited liability corporation, or other entity, in connection with the sale and marketing of Supreme Greens with MSM in the United States;

 E. All transfers of assets between DMC and ITV and any related or affiliated corporate entities or individuals in excess of $10,000 since January 2003; and

 F The location and amount of all assets of DMC and ITV, including all assets held either (1) by any Defendant; (2) for DMC's or ITV's benefit; or (3) under any Defendants' direct or indirect control, jointly or severally.

4.      That all such information gathered by and reports prepared by the accounting firm shall be designated as confidential information and shall be provided to the Defendants and the Commission.

5.      That the Defendants, and any other person or entity served with a copy of this Order, by personal service, facsimile, or otherwise, shall not interfere with the accounting firm's functions and shall fully cooperate and assist the accounting firm in accomplishing the purposes set forth in this Section, including providing access to documents and information located outside the territorial United States and including the gathering and preserving of documents relating to the Defendants' assets.

## FINANCIAL STATEMENTS

## VII.

1.      That the Defendants shall each prepare and provide to the Commission, within 45 days of entry of this Order, a complete and accurate financial statement, signed under penalty of perjury, on the form attached to this Order as Attachment A (for Barrett) or Attachment B (for DMC and ITV).  Barrett also shall include a list of all corporate entities that he has controlled, directly or indirectly, at any point since January 2002 until the present.

2.      That the Defendants shall each provide the Commission with access to records and documents pertaining to assets of each Defendant that are held by financial institutions outside the territory of the United States, by signing a document entitled "Consent to Release of Financial Records" in the form attached to this Order as Attachment C.

## MAINTENANCE OF RECORDS

## VIII.

That the Defendants, and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, trade name, or other entity, are hereby preliminarily enjoined from:

1. Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, and any other data which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of DMC and ITV;

2. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, brochures, manuals, electronically stored data, banking records, customer lists, customer files, invoices, telephone records, ledgers, payroll records, or other documents of any kind, including information stored in computer-maintained form (such as electronic mail), in their possession, and other documents or records of any kind that relate to the business practices or finances of DMC and ITV; and

3. Failing to maintain complete records of any consumer complaints and disputes, whether coming from the consumer or any intermediary, such as a government agency or Better Business Bureau, and any responses made to those complaints or disputes.

**RESTRICTION ON DISSIPATION OF CORPORATE ASSETS**

**IX.**

That DMC and ITV, and any of their officers, directors, agents, servants, employees, salespersons, distributors, corporations, subsidiaries, affiliates, successors, assigns, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, are hereby preliminarily enjoined form directly or indirectly selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real, personal, or intellectual property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, which are owned and controlled by, or held for the benefit of, in while or in part, or in the possession of DMC and ITV, or any other corporation owned or controlled by DMC and ITV, other than those transfers for actual and necessary business operations and expenses that such corporations will reasonably incur, including but not limited to legal fees associated with ITV Direct, Inc. v. Healthy Solutions, LLC, 04-CV-10421-JLT (D. Mass.); Trudeau v. Direct Marketing Concepts, Inc., Case No. CV 02-02707 (C.D. Cal.);  Triad ML Marketing, Inc. v. Direct Marketing Concepts, Inc., C.A. No. 03-CV-4321 (E.D. Pa.); HBA Marketing v. Marine Coral Calcium, C.A. No. 03-5995 (E.D. Pa.), Triad ML Marketing v. MXM Essential Formulas, C.A. No. 03-6047 (E.D. Pa.), and the instant action, FTC v. Direct Marketing Concepts, Inc., 04-CV-11136-GAO (D. Mass.). DMC and ITV shall not purchase or acquire, in whole or in part, directly or indirectly, any real property without prior permission from the Commission.

That DMC and ITV shall maintain copies of documents reflecting such transfers or expenditures for actual and necessary business operations and business and personal expenses,

including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, and bank records (including monthly statements, canceled checks, records of wire transfers, and check registers).  The funds, property and assets affected by this Paragraph shall include both existing assets and assets acquired after the date of entry of this Order, including without limitation, those acquired by loan or gift.

## DISTRIBUTION OF ORDER BY THE DEFENDANTS

### X.

That each Defendant shall, no later than five (5) business days following entry of this Order, provide a copy of this Order to each affiliate, partner, subsidiary, division, sales entity, distributor, successor, assign, officer, director, employee, independent contractor, agent, attorney, fulfillment house, call center, and representative of the Defendant, and within fifteen (15) business days following entry of this Order, shall provide the Commission with an affidavit confirming the Order was provided to all employees, and identifying the names, titles, addresses, and telephone numbers of all other persons and entities that each Defendant has served with a copy of this Order in compliance with this provision.

## SERVICE OF THIS ORDER BY PLAINTIFF

### XI.

That copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Mail, by agents and employees of the Commission or any state or federal law enforcement agency, on (1) any Defendant, or (2) any other person or entity that may be subject to any provision of this Order, including but not limited to defendants Alex Guerrero, Healthy

Solutions, LLC, Triad ML Marketing, Inc., King Media, Inc., and Alan Stern.  Service upon any branch or office of any entity shall effect service upon the entire entity.

## EXPEDITED DISCOVERY

### XII.

That the Commission is granted leave at any time after service of this Order to depose or demand the production of non-privileged documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to the Defendants' assets, income, personal or business financial records, or the location of any defendant or potential defendant.  Two weeks shall be deemed sufficient time for any such production of documents from the Defendants.  The production of documents submitted pursuant to this provision shall not in any way waive Plaintiff's rights to seek the production of additional documents.

## CONSUMER REPORTS

### XIII.

That the Commission may obtain consumer reports concerning any of the Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

## RIGHT TO INVESTIGATE AND ADD ADDITIONAL PARTIES AND CLAIMS

### XIV.

That nothing in this Order shall be construed as limiting or restricting the Commission's right or ability to investigate, take discovery from, add to this action, or bring further actions against, any persons or entities not specifically named herein as a defendant who may be in active concert or participation with any Defendant.

## RETENTION OF JURISDICTION

## XV.

That this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED,** this ___ day of _____, 2004

_____
UNITED STATES DISTRICT JUDGE