name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert with them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, are hereby enjoined from:

1.    Selling or distributing or causing to be sold or distributed products programs, or services, by means of a Continuity Program without first obtaining the express, informed consent of consumers to participate in that program before any shipment is made; *Provided*, that the consumer's consent will be deemed to be informed for the purpose of this Part IV only if the Defendants clearly and conspicuously disclose, before the consumer consents to any purchase, all material terms and conditions of the Continuity Program, including but not limited to:

   a.    the fact that periodic shipments will occur without further action by the consumer;

   b.    a description of each good or type of good to be included in each shipment;

   c.    the approximate interval between each shipment;

   d.    a description of the billing procedure to be employed, including the total cost to be charged to the subscriber's credit or debit card, or otherwise billed to the subscriber, for each shipment;

   e.    the minimum number of purchases required under the program, if

any;

f.    all material terms and conditions of a guarantee, refund, or return policy if any representation is made about such a policy, or, if the Defendants have a policy of not making refunds or accepting returns, a statement that this is the policy of defendants DMC, ITV, and Barrett; and

g.    a description of the terms and conditions under which, and the procedures by which, a subscriber may cancel further shipments, as set forth in Part IV.C below.

*Provided further*, that the consumer's consent will be deemed to be express for the purpose of this Part IV only if the Defendants obtained the informed consent in a manner which clearly evidences that the consumer is consenting to the terms of the Continuity Program.

2.    Making any representation, in any manner, expressly or by implication, that consumers owe money for Continuity Program merchandise shipped to consumers, unless the Defendants have obtained consumers' express, informed consent to receive and pay for the merchandise.

B.    The Defendants shall convey the terms and conditions of the Continuity Program to the consumer in the following manner:

1.    For any solicitation initiated or completed by telephone, the terms and conditions set forth in Part IV.A above shall be disclosed during that conversation in clear and understandable language;

2.    For any solicitation by a print advertisement, direct mail, electronic mail,

22

or by the Internet, the terms and conditions set forth in Part IV.A above shall be disclosed in a clear and prominent manner in close proximity to the ordering instructions, *provided that*, if the advertisement or mailing contains an order form or coupon on a separate page or document from the advertising material, the disclosure shall be made both in the advertising materials and on the order form or coupon.

C.     The Defendants shall provide, in conjunction with each shipment made pursuant to any Continuity Program, a clear and conspicuous description of the terms and conditions under which, and the procedures by which, the subscriber may cancel future shipments. Such description shall include either a toll-free telephone number the subscriber may call or a postage-paid mailing the subscriber may return to notify the Defendants of the subscriber's cancellation of further shipments. *Provided, however*, that for purposes of this Part, if cancellation is by mail, the Defendants shall be deemed to be notified on the date the subscriber mails the postage-paid mailing or other communication canceling further shipments.

D.     The Defendants shall not ship any product, program, or service to, or mail any bill or dunning communication to, or bill the credit or debit card of any subscriber who, having once subscribed to a Continuity Program and having fulfilled any minimum purchase requirement to which the subscriber has given express informed consent, notifies the Defendants by the means described in Part IV.C above, or by any other reasonable means, of the subscriber's cancellation of further shipments.

## ASSET FREEZE

## V.

**IT IS FURTHER ORDERED** that the defendants Donald W. Barrett, Direct Marketing Concepts, Inc. and ITV Direct, Inc. and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with any of them, including but not limited to Robert Maihos, who receive actual notice of this Order by personal service or otherwise, including by facsimile, are hereby enjoined from:

A.      Selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, intellectual property or other assets or any interest therein, wherever located, including any assets outside the territorial United States, that are:

1.      owned or controlled by Barrett, DMC or ITV, in whole or in part; or

2.      in the actual or constructive possession of Barrett, DMC or ITV; or

3.      owned, controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of Barrett, DMC or ITV or, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by Barrett, DMC or ITV;

B.      Opening or causing to be opened any safe deposit boxed titled in the name of Barrett, DMC or ITV, or subject to access by Barrett, DMC or ITV;

C.      Incurring charges or cash advances on any credit or debit card issued in the name, singly or jointly, of Barrett, DMC or ITV, or any corporation, partnership or other entity directly or indirectly owned, managed, or controlled by Barrett, DMC or ITV;

D.      Transferring any funds or other assets subject to this Order for attorneys' fees,

living expenses, or ordinary and customary business expenses, except from accounts or other

assets identified by prior written notice to the Commission and where the Court has approved

such transfers; provided that no attorneys' fees, living expenses, or ordinary and customary

business expenses, other than those set forth in Part V.E below, and only in accordance with the

procedures set forth in Part V.E below, shall be paid from funds or other assets subject to this

Order until the financial statements required by Part XV, below, are provided to counsel for the

Commission.

      E.      Notwithstanding the above, Barrett, DMC and ITV may pay from their funds

reasonable and necessary living expenses and attorney's fees, not to exceed $5,000, prior to the

submission of the financial statements required by Part XV, below.  No such expenses, however,

shall be paid from funds subject to this Order except, directly or indirectly, from an account

designated by prior written notice to counsel for the Commission.

     **IT IS FURTHER ORDERED THAT** the funds, property and assets affected by this

section shall include both existing assets and assets acquired after the effective date of this Order,

including without limitation, those acquired by loan or gift.  Barrett, DMC and ITV, or any third

party holding assets for the benefit of Barrett, DMC or ITV (including but not limited to Robert

Maihos and anyone related to Barrett by marriage or otherwise), shall hold all assets, including

without limitation, payments, loans, and gifts received after having received notice of this Order

by personal service or otherwise, including by facsimile.

## RETENTION OF ASSETS BY THIRD PARTIES

### VI.

     **IT IS FURTHER ORDERED** that, pending determination of the Commission's request

for a preliminary injunction, any bank, savings and loan, financial or brokerage institution, fund,

escrow agent, trustee, mail receipt facility, or other person (including but not limited to Robert

Maihos and anyone related to Barrett by marriage or otherwise) or entity who receives actual

notice of this Order by personal service or otherwise, including by facsimile, that has possession,

custody, or control of any account, asset, or document held on behalf of, or relating or belonging

to, Donald Barrett, DMC, d/b/a/ "Today's Health" and "Direct Fulfillment," or ITV, d/b/a/

"Direct Fulfillment," shall:

      A.      Hold and retain within such entity's or person's control, and prohibit the

withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement,

dissipation, conversion, sale, liquidation, or other disposal of any funds, documents, property, or

other assets held by or under such entity's or person's control:

            1.      on behalf of, or for the benefit of, Barrett, DMC or ITV, or any other

                    person or entity subject to Part V above;

            2.      in any account maintained in the name of, or subject to withdrawal by

                    Barrett, DMC or ITV, or any other person or entity subject to Part V

                    above; or

            3.      that are subject to access or use by, or under the signatory power of,

                    Barrett, DMC or ITV, or any other person or entity subject to Part V

                    above.

      B.      Deny access to any safe deposit boxes that are either:

            1.      titled in the name, individually or jointly, of Barrett, DMC or ITV, or any

                    other person or entity subject to Part V above; or

             2.      subject to access by Barrett, DMC or ITV, or any other person or entity

26

subject to Part V above.

C.    Provide to counsel for the Commission, within three (3) days, a statement setting forth:

1.    the identification of each account or asset titled in the name, individually or jointly, or held on behalf of, or for the benefit of, or controlled by, Barrett, DMC or ITV, or any other person or entity subject to Part V above, whether in whole or in part;

2.    the balance of each such account, or a description of the nature and value of such asset;

3.    the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, Barrett, DMC or ITV, or any other person or entity subject to Part V above, whether in whole or in part; and

4.    if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed and the balance on said date.

The accounts subject to this provision include existing assets and assets deposited after the effective date of this Order.  This Part shall not prohibit transfers in accordance with any provision of this Order, including Part XII (Transfer of Funds to the Receiver), or any further order of the Court.

## APPOINTMENT OF RECEIVER

### VII.

**IT IS FURTHER ORDERED** that _____ is hereby appointed

27

Receiver, with the full power of an equity receiver, for the Receivership Defendants. The receiver shall be the agent of this Court and solely the agent of this Court in acting as receiver under this Order. The receiver shall be accountable directly to this Court. The receiver shall comply with all Local Rules of this Court governing receivers. The receiver has the directions and authority to:

1.  Assume full control of the Receivership Defendants and all power of the Receivership Defendants' directors, officers, and managers, and remove defendant Donald W. Barrett, Robert Maihos, and any other officer, independent contractor, employee, attorney, or agent of the Receivership Defendants, from control or management of, or participation in, the affairs of the Receivership Defendants as the receiver deems necessary and advisable;

2.  Take immediate and exclusive custody, control, and possession of all properties, premises, assets, and documents of, in the possession of, or under the control of, any Receivership Defendant, wherever situated, including, but not limited, to 100 Cummings Center, Beverly, MA, 01915 and 20 Oakpoint Ext., Saugus, MA 01906. The receiver shall have full power to divert mail and to sue for, collect, receive, and take possession of:

    1.  all assets and documents of the Receivership Defendants and members of the public whose interests are now held by or are under the direction, possession, custody, or control of any Receivership Defendant; and

    2.  all sums of money now or hereafter due and owing to any Receivership Defendant. *Provided, however*, that the receiver shall not attempt to collect any amount from a consumer if the receiver believes the consumer

was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

3.  Perform all acts necessary to conserve, hold, manage, and preserve the value of all such assets;

4.  Hold, preserve, and administer the business of the Receivership Defendants until further order of this Court, with full authority to perform all acts necessary or incidental thereto, including retaining, hiring, or dismissing any employees, independent contractors, or agents;

5.  Take such actions and enter into such agreements in connection with the administration of the Receivership Defendants as the Receiver deems necessary;

6.  Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors, and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

7.  Make payments and disbursements from the receivership estate that the Receiver deems necessary to secure or preserve the Receivership Defendants' assets or to carry out the Receiver's mandate under this Order;

8.  Institute, prosecute and defend, compromise, intervene in, or become party to such actions or proceedings in state, federal, or foreign court that the Receiver deems necessary to collect, recover, protect, maintain, or preserve the value of the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order;

9.  Defend, compromise, or otherwise dispose of any actions or proceedings

instituted against the Receiver in his role as receiver or the Receivership Defendants, whether now pending or hereinafter filed, that the Receiver deems necessary to preserve the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order;

10. Take all steps the Receiver deems necessary to secure the business premises of the Receivership Defendants, including, but not limited to:

    1. completing a written inventory of all receivership assets;

    2. obtaining pertinent information from all employees and other agents of the Receivership Defendants, such as the name, home address, social security number, job description, method of compensation, accrued and unpaid commission and compensation of each employee or agent;

    3. changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or

    4. requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and to demonstrate to the Receiver's satisfaction that such persons are not removing from the premises any of the Receivership Defendants' documents or assets;

11. Obtain, by presentation of this Order, tangible and intangible assets as well as information in the custody or control of any person, firm, or entity sufficient to identify the accounts, employees, properties, or other assets or obligations of the Receivership Defendants;

12. Issue subpoenas to obtain documents pertaining to the receivership, conduct discovery in this action on behalf of the receivership estate, attend any deposition noticed by any party to this action, and ask any question of any deponent which, in the receiver's opinion, is pertinent to the receivership estate;

13. Allow representatives of the Commission and the Defendants reasonable access to inspect the Receivership Defendants' books, records, accounts, premises, and other property, wherever located;

14. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

15. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate; and

16. Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.

## COMPENSATION FOR RECEIVER

### VIII.

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including but not limited to attorneys retained by the Receiver, shall be entitled to reasonable compensation for the services they render to the receivership estate and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for payment, outlining the services rendered and the related fees and expenses, with the first such request filed no more than sixty (60) days after the entry of this Order and payment of such fees and costs to be made upon Court approval. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## RECEIVER'S BOND AND HOLD HARMLESS PROVISION

### IX.

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of _____ with sureties to be approved by the Court, conditioned that the receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. Without limiting any other rights or immunities the Receiver may have at law or in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of him in his capacity as the receiver of DMC and ITV, so long as such acts and omissions are made in good faith, without gross negligence, and in a manner that the Receiver

32

believes is in the best interests of the receivership. The Receiver shall not be personally liable for the debts of DMC, ITV, or its receivership.

## DELIVERY OF RECEIVERSHIP PROPERTY

## X.

**IT IS FURTHER ORDERED** that DMC and ITV and any other person (including but not limited to Robert Maihos and anyone related to Barrett by marriage or otherwise) or entity who receives actual notice of this Order by personal service or otherwise, including by facsimile, shall immediately deliver or transfer possession, custody, and control of the following to the Receiver:

a.    All assets of the Receivership Defendants;

b.    All documents and records relating to the assets of the Receivership Defendants, including, but not limited to, financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), distributor lists, and title documents;

c.    All keys, lock combinations, passwords, or codes required to open, gain access to, or secure any of the Receivership Defendants' assets or documents, including, but not limited to, access to their business premises, computer systems or files, telephone or other communication systems, and bank accounts; and

d.    Information identifying the assets, employees, or obligations of the Receivership Defendants.

**IT IS FURTHER ORDERED** that in the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Part, the Receiver may

file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)), or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the receiver.

## COOPERATION WITH THE RECEIVER

### XI.

**IT IS FURTHER ORDERED** that all Defendants, and their agents, servants, employees, and attorneys, and all persons or entities directly or indirectly under the control of any of them, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, and each such person, shall cooperate fully with and assist the Receiver. Such cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files in any medium; or advising all persons who owe money to any of the Receivership Defendants (other than customers) that all debts should be paid directly to the Receiver. All Defendants are hereby enjoined from directly or indirectly:

a.    Transacting any of the business of the Receivership Defendants, or transacting business under the names DMC, ITV, Today's Health, Direct Fulfillment, or any substantially similar names;

34

b.   Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of any of the Receivership Defendants, including, but not limited to, books, records, accounts, or any other papers of any kind or nature;

c.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, any of the Receivership Defendants, or the Receiver;

d.   Excusing debts owed to any Receivership Defendant;

e.   Failing to notify the Receiver of any asset, including accounts, of any Receivership Defendant held in the name of any Receivership Defendant or in any name other than the name of any Receivership Defendant, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; or

f.   Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of any Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## TRANSFER OF FUNDS TO THE RECEIVER

## XII.

**IT IS FURTHER ORDERED** that, upon receiving actual notice of this Order by personal service or otherwise, including by facsimile, all banks, broker-dealers, savings and loan associations, escrow agents, title companies, commodity trading companies, and other financial institutions shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his direction and producing records related to the assets of any of the Receivership Defendants.  These transfers at the request of the Receiver do not conflict with Part VI of this Order (Retention of Assets by Third Parties).

## STAY OF ACTIONS

## XIII.

**IT IS FURTHER ORDERED** that, except by leave of this Court and except for any federal, state, or local law enforcement or regulatory authority action against the Receivership Defendants, during the pendency of the receivership,  Defendants and all other persons seeking to establish or enforce any claim, right, or interest against or on behalf of any Receivership Defendant, be and hereby are stayed from:

    a.    Commencing, prosecuting, continuing, or enforcing any suit against any Receivership Defendant, except that such actions may be filed to toll any applicable statute of limitations;

    b.    Commencing, prosecuting, continuing, or enforcing any suit or proceeding in the name of or on behalf of any Receivership Defendant;

    c.    Accelerating the due date of any Receivership Defendant's obligation or claimed

36

obligation; enforcing any lien upon, or taking, attempting to take, or retaining

possession of any Receivership Defendant's assets; attempting to foreclose,

forfeit, alter, or terminate any interests of any Receivership Defendant, whether

such acts are part of a judicial proceeding or otherwise;

d.     Using self-help or executing or issuing any process to impound, take possession

of, interfere with, create, or enforce a lien upon any asset owned by or in the

possession of any Receivership Defendant, the Receiver, or any agent appointed

by the Receiver; and

e.     Committing any act to interfere with the Receiver's taking control, possession, or

management of the Receivership Defendants and their assets and documents, or to

interfere with the exclusive jurisdiction of this Court over the property and assets

of the Receivership Defendants.


## MAINTENANCE OF RECORDS

## XIV.

**IT IS FURTHER ORDERED** that the Defendants, and their officers, agents, directors,

employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and

all other persons or entities in active concert or participation with any of them who receive actual

notice of this Order by personal service or otherwise, including by facsimile, whether acting

directly or through any corporation, subsidiary, division or other device, are hereby enjoined

from:

1.     failing to create and maintain books, records, accounts, bank statements, current

accountants' reports, and any other data which, in reasonable detail, accurately and fairly reflect

37

the transactions and dispositions of the assets of the Defendants;

2.      destroying, erasing, mutilating, concealing, altering, transferring, or otherwise

disposing of, in any manner, directly or indirectly, any books, records, tapes, discs, accounting

data, checks (fronts and backs), correspondence, forms, advertisements, brochures, manuals,

electronically stored data, banking records, customer lists, customer files, invoices, telephone

records, ledgers, payroll records, or other documents of any kind, including information stored in

computer-maintained form (such as electronic mail), in their possession, and other documents or

records of any kind that relate to the business practices or finances of the Defendants; and

3.      failing to maintain complete records of any consumer complaints and disputes,

whether coming from the consumer or any intermediary, such as a government agency or Better

Business Bureau, and any responses made to those complaints or disputes.

## FINANCIAL STATEMENTS

## XV.

**IT IS FURTHER ORDERED** that, within three (3) days after entry of this Order:

A.      The Defendants shall serve on the Commission a detailed accounting of:

      3.      the names and amounts of all active ingredients in Supreme Greens with
MSM;

      2.      all gross revenues obtained from the sale of Supreme Greens with MSM
from inception of sales through the date of the issuance of this Order;

      3.      all net profits obtained from the sale of Supreme Greens with MSM from
inception of sales through the date of the issuance of this Order; and

      4.      the total amount of Supreme Greens with MSM sold.

B.    The Defendants each shall prepare and provide to the Commission a complete and accurate financial statement, signed under penalty of perjury, on the form attached to this Order as Attachment A (for individual defendant) or Attachment B (for corporate defendants).

C.    The Defendants each shall provide the Commission with access to records and documents pertaining to assets of each Defendant that are held by financial institutions outside the territory of the United States, by signing a document entitled "Consent to Release of Financial Records" in the form attached to this Order as Attachment C.

## EXPEDITED DISCOVERY

### XVI.

**IT IS FURTHER ORDERED** that the Commission is granted leave at any time after providing notice of this Order by personal service or otherwise, including by facsimile, to depose or demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to any assets, income, personal or business financial records of any of the Defendants, or to the location of any potential defendant.  Forty-eight (48) hours notice shall be deemed sufficient for any such production of documents from the Defendants, and three (3) business days notice shall be deemed sufficient for any such production of documents from any other person or entity, including but not limited to any bank, savings and loan, financial or brokerage institution, fund, escrow agent, or trustee.  The production of documents submitted pursuant to this provision shall not in any way waive Plaintiff's rights to seek the production of additional documents.

39

## RIGHT OF IMMEDIATE ACCESS

## XVII.

**IT IS FURTHER ORDERED** that the Defendants and any other person who receives actual notice of this Order by personal service or otherwise, including by facsimile, shall permit the Commission's employees, agents, and assistants immediate access to any business premises and storage facilities, whether owned, controlled or used by the Defendants, in whole or in part, including but not limited to the offices located at 100 Cummings Center, Beverly, MA, 01915 or at 20 Oakpoint Ext., Saugus, MA 01906. The purpose of this access shall be to inspect, copy and inventory documents referring or relating to:

A.     advertising or marketing, including issues relating to safety, of Supreme Greens with MSM;

B.     any business relationship between any of the Defendants and any other business entity;

C.     the financial status of the Defendants, including but not limited to the nature or location of any bank account, safe deposit box, or other asset of the Defendants;

D.     any transaction, correspondence or other communication by or between any consumer and any of the Defendants or any representatives, employees, agents, officers, servants, or assistants of the Defendants; and

E.     any action, correspondence or other communication by or between any law enforcement agency, consumer group, or Better Business Bureau and the Defendants, or any representatives, employees, agents, officers, servants, or assistants of the Defendants.

The Commission's representatives may remove original documents from the business premises of the Defendants to make photocopies, provided that the originals are returned within

40

a reasonable period of time. The Defendants shall provide Commission employees, agents and assistants with any necessary means of access to these documents, including but not limited to keys and lock combinations, computer access codes, and storage access information. The Defendants, and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, are hereby enjoined from interfering with the Commission's right of access described herein.

## CONSUMER REPORTS

### XVIII.

**IT IS FURTHER ORDERED** that the Commission may obtain consumer reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

**IT IS FURTHER ORDERED** that the Commission may provide to the Receiver copies of any consumer reports it receives pursuant to this Part.

## DISTRIBUTION OF ORDER BY DEFENDANTS

### XIX.

**IT IS FURTHER ORDERED** that the Defendants shall immediately provide a copy of this Order to each affiliate, partner, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, fulfillment house, call center, and

representative of the Defendants, and within ten (10) calendar days following service of this Order by the Commission, shall provide the Commission with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons and entities that the Defendants have served with a copy of this Order in compliance with this provision.

## SERVICE OF THIS ORDER BY PLAINTIFF

### XX.

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Mail, by agents and employees of the Commission or any state or federal law enforcement agency, on (1) the Defendants, (2) any financial or brokerage institution, entity or person that holds, controls, or maintains custody of any account or asset of the Defendants, or (3) any other person or entity that may be subject to any provision of this Order.  Service upon any branch or office of any entity shall effect service upon the entire entity.

## RIGHT TO INVESTIGATE AND ADD ADDITIONAL PARTIES AND CLAIMS

### XXI.

Nothing in this Preliminary Injunction should be construed as limiting or restricting the Commission's right or ability to investigate, take discovery from, add to this action or bring further actions against any persons or entities not specifically named herein as a defendant who may be in active concert or participation with any of the Defendants.

42

## RETENTION OF JURISDICTION

## XXII.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED,** this ___ day of _____, 2004, at ___.m.

_____
UNITED STATES DISTRICT JUDGE

Presented by:

_____
DANIEL KAUFMAN
KIAL S. YOUNG  (BBO # 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW
NJ-3212
Washington, DC  20580
(202) 326-2675, - 3525, -3126 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov, kyoung@ftc.gov or eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF