UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.,<br><br>Defendants. | CIVIL ACTION NO. 04-CV-11136GAO |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
FIVE OF THE AFFIRMATIVE DEFENSES OF DIRECT MARKETING
CONCEPTS, INC., ITV DIRECT, INC., AND DONALD BARRETT**

Defendants, Direct Marketing Concepts, Inc. d/b/a Today's Health ("DMC"), ITV Direct, Inc. d/b/a Direct Fulfillment ("ITV Direct"), and Donald W. Barrett ("Barrett") (collectively "DMC Defendants"), submit this opposition to the Federal Trade Commission's ("FTC" or "Plaintiff"), Motion to Strike Five Of the Affirmative Defenses of the DMC Defendants. For the reasons set forth below, the FTC has failed to show that the challenged defenses are clearly unrelated to its claims, and that it will be prejudiced by the inclusion of those defenses in this action, and its motion must be denied.

### I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

DMC and ITV Direct, located in Beverly, Massachusetts, are media and marketing companies whose business includes the production of infomercials for television and radio. Neither DMC nor ITV itself manufactures any products. (Affidavit of Donald Barrett ("Barrett Aff."), ¶2, filed in support of the DMC Defendants' Opposition to the FTC's Motion for Temporary Restraining Order.) In connection with any agreement entered into by the DMC Defendants to produce an infomercial for a third party, DMC and ITV Direct make clear that the individual advertising the product is responsible for each and every representation he makes

about a product, including confirming that he has competent and reliable scientific support for any claims made about the product. (Barrett Aff., ¶4.)

### A. Coral Calcium

In 2001, DMC agreed to produce an infomercial featuring Robert Barefoot, who had written a book claiming that a dietary supplement known as coral calcium had substantial health benefits. In his book and in other conversations, Barefoot claimed that he possessed significant research, studies, documentation, testimonials and other scientific information, to support his claims concerning the health benefits of coral calcium. (Barrett Aff., ¶5.) Barefoot and another party, Kevin Trudeau, appeared in DMC's thirty minute infomercial, where they discussed Barefoot's book and the benefits of coral calcium. (Id., ¶6.) The taping of the infomercial was entirely unscripted, and neither DMC nor Barrett appeared in the infomercial or controlled any of its content. In addition, the infomercial did not mention any specific product, but only discussed Mr. Barefoot's books.

The FTC first received a tape of the infomercial in or about April 2002. Despite possessing the tape for over a year, the FTC never notified the DMC Defendants that it had any issues or concerns over the content of the infomercial until June 2003. (Barrett Aff., ¶9.) At that time, in response to the FTC's concerns the DMC Defendants requested that Barefoot provide copies of the studies and supporting documentation that claimed existed, which he did. (Id., ¶11 and Exhibit C.) Notwithstanding that there did appear to be support for the claims made in the infomercial, DMC nonetheless agreed to immediately pull the infomercial and cease any future airings. (Id., ¶12.) The FTC then filed an action against Barefoot and Trudeau in June 2003, which Barefoot eventually settled in January 2004. Recently, the FTC also settled its claims with Trudeau for a monetary judgment against him of $2 million, as well as other relief.

### B. Supreme Greens

In late 2002, ITV Direct was contacted by defendant Gregory Geremesz ("Geremesz"), who stated that he knew a "Dr. Alejandro Guerrero" ("Guerrero"), who had developed a greens product named Supreme Greens. Geremesz stated to ITV Direct that he believed this product

2

would be successful if marketed through an infomercial. (Barrett Aff., ¶13.) ITV Direct reviewed the materials regarding the product provided by Geremesz, and then met with Geremesz and defendant Guerrero, who represented that he was a doctor and OMD (doctor of oriental medicine). Guerrero also stated that he operated a clinic in California with regular patients. Geremesz and Guerrero also represented on numerous occasions that the greens product developed by Guerrero had been clinically tested on over 200 patients in California and had shown tremendous results, including on patients with cancer, AIDS, MS, diabetes and Parkinson's disease. (Id. ¶¶ 13 &14, and Ex. F; Affidavit of Robert Maihos ("Maihos Aff."), ¶4 and Ex. B, filed in support of DMC Defendants' Opposition to FTC's Motion for TRO.)

On April 4, 2003, ITV Direct entered into a "Distribution Agreement" with Guerrero's company, defendant Healthy Solutions, LLC ("Healthy Solutions"), for the production of an infomercial for Supreme Greens. Relying on Guerrero's credentials, ITV Direct then produced an infomercial for the product at its own expense. The infomercial was unscripted, and ITV Direct did not dictate any of the statements by Guerrero in the infomercial, including his statements regarding his credentials, his clinical practice or the scientific support for Supreme Greens. (Barrett Aff., ¶¶14,16; Maihos Aff., ¶5.)

The infomercials and all promotional materials for Supreme Greens had express disclaimers, clearly stating that results could vary and that the product was not a cure for any disease. (Maihos Aff., ¶5.) The infomercial also disclosed that ITV Direct was not confirming or attesting that there existed any scientific support for the claims made by Guerrero. (Id.) These disclaimers ran throughout the infomercials, and were also required by the networks who ran them. (Id.; Affidavit of Luke Goljan ("Goljan Aff."), ¶¶12, 13 and Exhibits A & B, filed in support of the DMC Defendants' Opposition to the FTC's Motion for TRO.)

During September and October 2003, the DMC Defendants' counsel was contacted by the FTC concerning the Supreme Greens infomercial. In those conversations, the FTC identified several concerns with the content of the infomercial. (Barrett Aff., ¶18.) In response to these concerns, ITV Direct both sought additional scientific evidence from Guerrero and Healthy

3

Solutions, and edited the program to address the FTC's concerns. (Id.; Goljan Aff., ¶7.) In October 2003, the edited tape was sent to the FTC, and the FTC concluded that the edited tape was a "substantial improvement." (Barrett Aff., ¶18.) ITV Direct then rolled the edited tape out to national markets, and then to the local markets. (Id., ¶19; Goljan Aff., ¶7.) As the FTC acknowledges, ITV Direct also received additional materials from Guerrero to provide some support for the claims he made in the infomercials. (Barrett Aff., ¶19 and Exhibit F.)

Between December 2003 and April 2004, the FTC had no communications with the DMC Defendants or its counsel regarding either the coral calcium or Supreme Greens infomercials. Then, beginning in March 2004, ITV Direct began voluntarily reducing its media purchases for Supreme Greens, with the intention of pulling the infomercial completely by Summer 2004. (Barrett Aff., ¶24.)

      **C.**    **The FTC Action**

Over two years after it first received a copy of the coral calcium infomercial, and several months after its review of Supreme Greens, the FTC resurfaced. On April 7, 2004, the FTC informed the DMC Defendants that it continued to have concerns over Guerrero's credentials and the health claims he made about the Supreme Greens product. After the DMC Defendants investigated the matter and concluded that Guerrero's credentials might be suspect, they immediately notified all media outlets to cease running any Supreme Greens infomercials. (Id.) ITV Direct halted all media for Supreme Greens, and has not run the infomercial since it pulled the media several months ago. (Id.) Thus, at present, there are currently no infomercials for either coral calcium or Supreme Greens being run by the DMC Defendants and they have agreed to not run the infomercials in the future.

On June 1, 2004, the FTC filed the instant action seeking a permanent injunction against the DMC Defendants and others as a result of the coral calcium and Supreme Greens infomercials, as well as equitable relief to redress the injury to consumers it claims resulted from the defendants' alleged violations of the FTC Act. After a hearing, this Court denied the FTC's request to appoint a receiver to take over the DMC Defendants' business and freeze their assets,

4

but entered a preliminary injunction restricting the DMC Defendants' use of their assets. The DMC Defendants then filed an answer to the FTC's Complaint and asserted several affirmative defenses, five of which the FTC is seeking to strike on this motion.

## II.    LEGAL ARGUMENT

### A.    Standard Under Fed. R. Civ. P. 12(f)

Motions to strike defenses under Rule 12(f) are generally disfavored by the courts and are rarely granted. Honeywell Consumer Products, Inc. v. Windmere Corporation, 993 F.Supp. 22, 23 (D. Mass. 1998). Pursuant to Fed. R. Civ. P. 12(f), a court may strike an affirmative defense if it is legally insufficient, redundant, immaterial, impertinent, or scandalous. Id. A motion to strike a defense as legally insufficient should be granted only where, after deeming as admitted all of the non-moving party's well-pleaded facts and drawing all reasonable inferences in its favor: "(1) it appears with certainty that the plaintiff will succeed regardless of what facts could be proved in support of the defense; (2) the affirmative defense sought to be struck does not present disputed and substantial questions of law that could be resolved in such a way as to support the defense; and (3) the plaintiff shows it will be prejudiced by inclusion of an affirmative defense." Tompkins v. R.J. Reynolds Tobacco Co., 92 F.Supp.2d 70, 80 (N.D.N.Y. 2000); Oneida Indian Nation of New York v. New York, 194 F.Supp. 2d. 104, 117 (N.D.N.Y. 2002.)

Thus, a court will not grant a motion to strike if the insufficiency of the affirmative defense is not clearly apparent, or if it raises factual issues that should be determined by a hearing on the merits. 5A C. Wright & A.Miller, Federal Practice and Procedure, Civil 2d § 1381 at 678. Courts generally do not decide disputed or substantial questions of law on a motion to strike. Id. See Carter-Wallace, Inc. v. Riverton Lab., 47 F.R.D. 366, 368 (S.D.N.Y. 1969)

("The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed.").

Where a plaintiff moves to strike an affirmative defense, the court must treat the defendant's pleadings liberally so as to give the defendant a full opportunity to support his contentions at trial. Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 39 (D. Mass. 1991). Affirmative defenses will be stricken "only when it is 'beyond cavil that the defendant could not prevail on them.'" Honeywell Consumer Products, Inc., 993 F. Supp. at 23 (quoting Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 893 (D. Me. 1992)). Applying that policy here, the FTC has failed to sustain its burden and its Motion to Strike must be denied.

### B. The DMC Defendants' Second Affirmative Defense Is Legally Sufficient And Should Not Be Stricken.

The FTC first challenges the DMC Defendants' second affirmative defense alleging that "Plaintiff has not been damaged by any acts of the DMC Defendants." (See DMC's Answer.) The FTC misconstrues this defense and argues that whether the FTC, as an agency, has been damaged is not at issue and that the defense is therefore legally deficient. (FTC's Memorandum in Support of Motion to Strike ("Memorandum"), p. 3.) In support of its contention, the FTC cites to several cases and asserts that "[i]n none of these cases was the Commission itself injured by the challenged practices; rather, as here, it was acting on behalf of American consumers *who had been harmed* by those practices." (Id., p. 4.) (emphasis added).

In asserting their second affirmative defense, the DMC Defendants are well aware that the FTC brought this complaint in a representative capacity on behalf of consumers pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (2003). The FTC has not, however, offered one affidavit from a consumer complaining that he or she was misled by the claims in the Supreme Greens infomercials or coral calcium infomercials at issue, or otherwise shown that any of the

6

consumers it is charged to protect were actually harmed by the conduct of the DMC Defendants. As the FTC itself asserts, it acts on behalf of consumers "who ha[ve] been harmed," and it should be required to offer *some* evidence of the consumer injury it is asking the Court to redress.  Such a minimum factual requirement is necessary in order to justify the equitable relief the FTC is seeking, including the rescission of the DMC Defendants' contracts with consumers and restitution.  (See Complaint, Prayer for Relief.)

Also supporting this affirmative defense is the undisputed fact that any consumers who might have complained about coral calcium or Supreme Greens for any reason were given the right to return the product for a full refund.  (Barrett Aff., ¶21.)  As the FTC is well aware from its audit of DMC's facilities in Beverly, thousands of consumers have received refunds in connection with their purchases.  These consumers, who have been completely compensated for any injury that they may have believed they may have suffered, cannot form the basis of any claim by the FTC in its representative capacity acting for consumers.

Here, acting in its admitted representative capacity, the FTC has not shown that the defense that consumers were not actually injured, or that any consumer actually suffered harm, is entirely invalid or not subject to some factual dispute.  Certainly, given the presumption of validity of affirmative defenses under Rule 12(f), a defense that consumers were not actually harmed must be deemed sufficient to survive dismissal at this early stage of the proceedings. Consequently, the DMC Defendants second affirmative defense should not be stricken. Tompkins., 92 F.Supp.2d at 80.

### C. The DMC Defendants' Third Affirmative Defense Is Legally Sufficient And Should Not be Stricken.

Next, the FTC moves to strike the DMC Defendants' third affirmative defense as legally insufficient, which asserts that: "[t]he allegedly deceptive statements were not made by the DMC Defendants, but were made by others over which the DMC Defendants exerted no authority or control and for which DMC Defendants have never had responsibility. All of the Plaintiff's claims against the DMC Defendants, therefore, are derivative of claims against other parties or third parties." (DMC Defendants' Answer, Third Affirmative Defense.) The FTC claims that this affirmative defense is an attempt by the DMC Defendants to shift blame to their co-defendants and is invalid. (Memorandum, p. 4.) Under the facts of this case, however, this defense is legally sufficient and should not be stricken.

Courts have upheld this affirmative defense in other FTC actions, as it directly challenges causation, which cannot be established at an early stage in the proceedings before discovery has been completed. FTC v. Hang-Ups Art Enterprises, Inc., 1995 WL 914179, *4 (C.D.Cal., September 27, 1995.) (motion to strike affirmative defense denied where court is unable to determine whether similar causation defense fails as a matter of law), citing Simpson v. Alaska State Comm'n for Human Rights, 423 F. Supp. 552, 554 (D. Alaska 1976), aff'd, 608 F.2d 1171 (1979)("defendant should be given the opportunity to prove his allegations if . . . [there is] any possibility that the defense might succeed on the merits.") Most recently, the Ninth Circuit has found that an individual may not be subject to injunctive relief or restitution at all where the FTC cannot show, *inter alia*, that the individual had authority to control the acts in question, or that he had knowledge of material misrepresentations made by other parties. FTC v. Garvey, 2004 WL 1936508 (9th Cir., September 1, 2004) (to hold an individual liable for restitution, the FTC must show he had "actual knowledge of the material misrepresentations, was recklessly indifferent to

8

the try or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.)  The DMC Defendants clearly should not be precluded from asserting this defense to liability before any discovery has been taken in this case.

Here, the evidence in the record establishes that the taping of the two infomercials was unscripted and that the DMC Defendants did not themselves make any of the allegedly false or misleading statements challenged by the FTC.  Moreover, the FTC does not dispute that the infomercials included disclaimers to inform consumers that the opinions expressed on the show were those of the speaker and not DMC or ITV, that the infomercial was a paid advertisement, and that the advertised books and products were not a cure for any disease.  These disclaimers must be taken into account in determining the DMC Defendants' responsibility for the statements of others and their good faith in connection with airing those opinions.  See Whitaker v. Thompson, 248 F. Supp. 2d 1 (D. D.C. 2002); see also Pearson v. Thompson, 141 F. Supp. 2d 105 (D. D.C. 2001) ("Pearson III").  Because the FTC will have to prove causation as part of its *prima facie* case, and this defense directly challenges causation and the DMC Defendants' liability for the FTC's claims, the DMC Defendants are entitled to offer evidence on this defense after discovery has been taken and it should not be stricken.

Furthermore, for the court to grant the requested permanent injunction against the DMC Defendants in this action requires that "'there exists some cognizable danger of recurrent violation.'"  Hang-Ups Art Enterprises, 1995 WL 914179, *3 citing United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).  To determine whether an alleged violation is likely to recur, courts consider the "deliberateness and seriousness of the present violation," as well as the defendants' past record with respect to such violations.  Hang-Ups Art Enterprises, 1995 WL

9

914179, *3. Courts have found that a good faith defense, including the good faith of the defendants' reliance upon others, is determinative of whether the violation was deliberate, and should be upheld as an affirmative defense to a claim for injunctive relief. Id.; FTC v. Medicor, LLC, 2001 WL 765628, *3 (C.D. Cal., June 26, 2001) (good faith can be considered in evaluating the deliberateness of the violation). If the DMC Defendants can establish that they acted in good faith in relying on the representations of Barefoot and Guerrero, that they were unaware of any misrepresentations in the infomercials, which were unscripted, and that once they were aware of the FTC's concerns, they immediately took the infomercials off the air, the court could find that there is no likelihood of recurrence and deny the requested injunctive relief against the DMC Defendants. Thus, this factual issue mandates a denial of the FTC's request to strike this defense, as the DMC Defendants should not be prevented from offering evidence on the issue of their good faith reliance on others at trial. See FTC v. Medicor, LLC, 2001 WL 765628, *3 (motion to strike affirmative defense denied, as good faith is relevant to determine whether to issue a permanent injunction).

### D.    Accord and Satisfaction Are Legally Valid Affirmative Defenses

In moving to strike the DMC Defendants' fourth affirmative defense of accord and satisfaction, the FTC concedes that this can be a legitimate affirmative defense, although it argues that it is irrelevant in this litigation. Under Massachusetts law, an accord and satisfaction exists when:

> (1) [ ] there has arisen between the parties a bona fide dispute as to the existence or extent of liability;  (2)[ ] subsequent to the arising of that dispute the parties entered into an agreement under the terms of which the dispute is compromised by the payment by one party of a sum in excess of that which he admits he owed and the receipt by the other party of a sum less in amount than he claims is due him, all for the purpose of settling the dispute; and (3) a performance by the parties of that agreement.

Rust Engineering Co. v. Lawrence Pumps, Inc., 401 F.Supp. 328, 333 (D. Mass. 1975).

Here, the FTC brought an action in Illinois in 2003 against Barefoot and Trudeau, seeking relief for allegedly misleading claims about coral calcium made by Barefoot. <u>See</u> <u>FTC v. Kevin Trudeau, et al.</u>, Civ. No. 03-C-3904 (N.D. IL.)  Although the FTC was well aware of the existence of the DMC Defendants and their involvement in the original coral calcium infomercial, they chose not to name any of them as defendants in the Illinois action.  The FTC has since entered into settlements with Barefoot and Trudeau.  Specifically, on September 7, 2004, the FTC announced a settlement of its claims against Kevin Trudeau in the amount of a $2 million judgment that will be used by the FTC to compensate consumers who were allegedly misled by Barefoot's coral calcium claims.  (<u>See</u> Stipulated Final Order for Permanent Injunction and Settlement of Claims For Monetary Relief, Civ. No. 03-C-3904 and 98-C-0168 (N.D. IL.), available at www.ftc.gov.)  To the extent that this consumer remedy overlaps with the remedy sought in this case, there is potentially an accord and satisfaction of these claims, and the affirmative defense should stand.

In addition, the DMC Defendants are aware of ongoing settlement discussions between the Guerrero defendants and the Stern defendants to resolve the FTC's claims against them in this case.  In the event that settlements are reached by these co-defendants with the FTC, the DMC Defendants should not be prohibited from asserting that these settlements constitute an off-set or defense to the FTC's claims that consumer injury from these infomercials has not been redressed, and they must raise this affirmative defense now or it is deemed waived.[1]

---

[1] In addition, ITV Direct has a stated return policy, pursuant to which its customers have the right to receive a full refund at any time if they are not satisfied with their purchases of Supreme Greens. (Barrett Aff., ¶21.)  As the FTC is well aware from its audit of DMC, thousands of consumers have received refunds in connection with their purchases under this policy.  These consumers, who have been completely compensated for any injury that the FTC may prove they have suffered, cannot form the basis of any claim by the FTC in its representative capacity.  Thus, the DMC Defendants should be allowed to present evidence on this defense.

Accordingly, the FTC has failed to demonstrate that the DMC Defendants' defense of accord and satisfaction is completely legally insufficient or immaterial at this early stage of the proceedings.

### E. The Expressions of Opinion Are Protected by the First Amendment.

Next, the FTC moves to strike the DMC Defendants' sixth affirmative defense alleging that the FTC's claims are barred by the First Amendment. The FTC again misconstrues this affirmative defense and fails to establish that it is legally invalid. Although the FTC presents its arguments concerning the coral calcium and Supreme Greens infomercials as unassailable, the DMC Defendants should not be precluded from offering evidence to support this defense to liability.

First, the FTC fails to explain to the Court that the coral calcium infomercial did not sell any specific product, but sold *books and tapes*. The selling of books is the epitome of protected First Amendment speech, as those books contain the opinions of its author Robert Barefoot. See Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 67 (1989) (books and expressive materials are presumptively protected by the First Amendment); Broadway Distributors, Inc. v. White, 307 F.Supp. 1180, 1182 (D. Mass. 1970) (regulation of sale or distribution of books and similar materials cannot impose an impermissible prior restraint infringing on First Amendment rights of free expression). Although the FTC may vehemently disagree with Barefoots' conclusions, the First Amendment does not allow the FTC to unilaterally make the decision to ban that speech. In fact, in its recent settlement with Trudeau, which sought to ban Trudeau from the infomercial business, the FTC recognized that it cannot ban Trudeau, or anyone else for that matter, from advertising and selling books, which contain the opinions of its authors. (See Stipulated Final Order for Permanent Injunction and Settlement of Claims, Civ. No. 03-C-3904 and 98-C-0168

(N.D. IL.) On this basis alone, the FTC's attempt to prevent the assertion of a First Amendment defense in this case must fail.

In addition, it is firmly established that commercial speech is given protection under the First Amendment, and the government does not have the complete unilateral power to suppress or regulate such speech, even if it is deemed controversial. Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 562 (1980). In particular, First Amendment considerations will not permit a remedy, such as halting all allegedly offending advertising by the DMC Defendants, broader than necessary to correct the effects of any past deception. National Comm'n on Egg Nutrition, 570 F.2d at 164; Standard Oil Co., 577 F.2d at 662; Pearson v. Shalala, 164 F.3d 650, 655 (D.D.C. 1999) ("Pearson I") ("It is undisputed that the FDA's restrictions of appellants' health claims are evaluated under the commercial speech doctrine."). Lesser considerations, such as disclaimers and editing of the speech, must be considered in advance of a complete ban.

First Amendment considerations also require that the FTC and this Court consider the disclaimers in challenged commercial speech, both substantively and in connection with any equitable remedy. Pearson v. Thompson, 141 F. Supp. 2d 105 (D.D.C. 2001) ("Pearson III") ("[E]ven if the FDA's criticism of the sub-claim is valid, this criticism does not make the Claim inherently misleading; rather, it suggests the need for a well-drafted disclaimer, which the FDA has steadfastly refused to even consider.") See Pearson III, 141 F. Supp. 2d at 112 (the Government "*must* demonstrate with empirical evidence that disclaimers similar to [those] suggested . . . would bewilder consumers and fail to correct for deceptiveness."); Whitaker v. Thompson, 248 F. Supp.2d 1, 9 (D.D.C. 2002) ("[t]he First Amendment does not allow the FDA

to simply assert that Plaintiffs' Claim is misleading in order to 'supplant [its] burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'").

Here, the FTC contends that the disclaimers in the subject infomercials are not sufficient. This issue, however, which falls squarely under the First Amendment authority cited above, is one for the *trier of fact* after trial, and cannot be decided and stricken as a matter of law now. What is undisputed is that the DMC Defendants included disclaimers throughout the infomercial, which alerted consumers to the fact that, *inter alia*, it was a paid advertisement, that the views expressed on the infomercial are solely the opinion of the guest, that the product does not claim to heal or cure any illness, and that individual results may vary. (Goljan Aff., ¶¶12, 13 and Ex. A & B.) The disclaimers even informed consumers that the opinions expressed may not be supported by scientific evidence, and that no representation or warranty as to any specific result is intended. (Id.) Because parties are generally required under Fed. R. Civ. P. 8(c) to plead as an affirmative defense any new factual matter that is not included in the complaint, the DMC Defendants' should not be precluded from pleading this affirmative defense.

Accordingly, based on First Amendment considerations, which do apply to commercial speech, the Court cannot grant a permanent injunction without considering whether the infomercial, when accompanied by disclaimers, would be deceptive or unlawful.[2]  Whitaker, 248 F. Supp. 2d at 9.  See, e.g., Bioganic Safety Brands, Inc. v. Ament, 174 . Supp. 2d 1168, 1182 (D. Col. 2001) (holding that even if claim is inherently misleading, "any misleading

---

[2] Even if the current disclaimers did not go far enough, in light of Pearson I and its progeny, the FTC should have considered requiring additional disclaimers rather than seeking an outright prior restraint on speech. As noted in Whitaker, "[t]he case law makes it very clear that plaintiffs are harmed by the FDA's suppression of the [cancer cure] claims because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury." 248 F. Supp. 2d at 15, citing Elrod v. Burns, 427 U.S. 347, 373 (1976); New York Times Co. v. United States, 403 U.S. 713 (1971); Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758 (1988).

impression can be cured by a disclaimer"); Symes v. Bahama Joes, Inc., 1988 WL 92462 (D. Mass. Aug. 12, 1988) (Zobel, J.) ("The specific disclaimers bar plaintiffs' claims of misrepresentation"); cf. American Home Prods. Corp. v. FTC, 695 F.2d 681 (3d Cir. 1983) (recognizing curative effect of disclaimers on otherwise potentially misleading commercial speech). The DMC Defendants' sixth affirmative defense is legally sufficient and should not be stricken.

### F. Laches is a Proper Defense To This FTC Action

Lastly, the FTC moves to strike the DMC Defendants' affirmative defense of laches, claiming that it is not a defense to a civil suit brought by a government agency. (Memorandum, p. 9.) Contrary to the FTC's assertion, laches has been upheld as a valid defense to an action by the government if "affirmative misconduct" by the government is shown. Hang-Ups Art Enterprises, 1995 WL 914179, *4, citing U.S. v. Ruby Co., 588 F.2d 697, 705 n. 10 (9th Cir. 1978); see also RTC v. Vanderweele, 833 F.Supp. 1383 (N.D.Ind. 1993) (citing cases showing that the Seventh Circuit, following Supreme Court dicta, has found that the doctrine of laches is applicable to suits by government agencies). In Hang-Ups Art Enterprises, the court denied the FTC's motion to strike the affirmative defense of laches, finding that "[t]he facts of the case should decide whether there has been affirmative misconduct by the government such that laches might apply." Id. at *4. The facts here demonstrate that such misconduct may exist.

A party asserting the defense of laches must establish that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." Ikelionwu v. U.S., 150 F.3d 233, 237 (2nd Cir. 1998). Here, the FTC received a tape of the coral calcium infomercial in or about *April 2002*, and never notified the DMC Defendants that it had any issues or concerns over the content of the

15

infomercial until over a year later, in June 2003. (Barrett Aff., ¶9.)  The FTC then filed an action against Barefoot and Trudeau *over a year ago,* which it eventually settled, but again took no action against the DMC Defendants.  During this entire period, the DMC Defendants were actively growing their business, building assets in connection with the business, expanding their facilities and hiring employees.  The DMC Defendants also continued to operate under the assumption that the format and content of the original coral calcium infomercial was acceptable commercial speech, and was an appropriate model for future shows.  The FTC's contention now that this is not the case is clearly prejudicial to the DMC Defendants.

      The FTC's admitted delay in bringing an action against the DMC Defendants – for more than two years – could also effect the ability of the DMC Defendants to obtain discovery on, and defend against, the claims based on coral calcium in this action.  It is certainly possible that the FTC's delay was designed to provide them an advantage, by allowing the FTC to conduct discovery, unhindered by the protections provided to the DMC Defendants under the Federal Rules of Civil Procedure, or their right to be notified of material witnesses and cross-examine those witnesses.  Based on the witnesses advanced by the FTC in support of the motion for preliminary relief, this tactic seems quite plausible.  Regardless, the DMC Defendants clearly have a legitimate basis for asserting prejudice from the FTC's delay and from pursuing discovery in connection with the FTC's potential misconduct, in support of a laches defense, under the facts of this case.[3]

---

[3] The cases cited by the FTC to argue that laches is not a defense to a civil suit to enforce a public right or interest all involve cases where, unlike the present action, the alleged wrongful conduct had continued up through the time the government brought the enforcement action, or are inapposite and do not support such an assertion in this case. See Nevada v. United States, 463 U.S. 110, 141 (1983)(suit by the government to seek additional water rights); Costello v. United States, 365 U.S. 265, 281 (1961)(court considered laches defense against the government in a denaturalization proceeding, but found petitioner had failed to prove the elements necessary for the defense); United States v. Summerlin, 310 U.S. 414, 416 (1940)(United States was enforcing its own rights in a claim against an estate).

Where a defense is not clearly inadequate as a matter of law, it would be inappropriate to strike it.  See FDIC v. Pelletrue & Pelletreau, 965 F.Supp. 381, 390 (E.D.N.Y. 1997 (refusing to strike various affirmative defenses, including laches, given the uncertainty in the law).  At this early stage in the litigation, based on the facts in this case, it would inappropriate to strike the DMC Defendants' affirmative defense of laches before any discovery has been conducted.

## CONCLUSION

For all of the foregoing reasons, the FTC has not established that the DMC Defendants five affirmative defenses discussed above are legally insufficient or immaterial to this action.  Accordingly, the FTC's Motion to Strike must be denied in its entirety.

        Respectfully submitted,

        DIRECT MARKETING CONCEPTS, INC., ITV
        DIRECT, INC., AND DONALD W. BARRETT

        By their attorney(s),


        /s/ Peter S. Brooks
        Peter S. Brooks, BBO #058980
        Christopher F. Robertson, BBO #642094
        Susan W. Gelwick, BBO #567115
        SEYFARTH SHAW LLP
        Two Seaport Lane, Suite 300
        Boston, MA 02210-2028

Dated: September 13, 2004        Telephone:   (617) 946-4800
        Telecopier:   (617) 946-4801