UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEDERAL TRADE COMMISSION, )
)
Plaintiff, ) Civ. No. 04-CV-11136-GAO
)
v. )
)
DIRECT MARKETING CONCEPTS, INC., et al. )
)
Defendants. )
)

**PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT A REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF THE FEDERAL TRADE COMMISSION'S MOTION TO STRIKE FIVE OF THE AFFIRMATIVE DEFENSES OF DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., AND DONALD BARRETT**

Plaintiff the Federal Trade Commission ("FTC" or the "Commission") respectfully moves this Court for leave to file the attached Reply Memorandum of Law in Support of Plaintiff the Federal Trade Commission's Motion to Strike Five of the Affirmative Defenses of Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald Barrett (Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald Barrett collectively, "Defendants"). The Commission requests the opportunity to address the manner in which Defendants have characterized certain vaguely worded affirmative defenses and to address various factual misrepresentations contained in Defendants' response to the Commission's motion. The Commission believes that consideration of the attached memorandum will assist the Court in analyzing the legal sufficiency of the affirmative defenses at issue and in understanding the factual circumstances of the case.

The FTC has conferred with Defendants in a good faith effort to resolve this dispute by

agreement but has been unable to do so. Defendants have assented to the Commission's filing of this motion.

Dated: September 24, 2004

Respectfully submitted,

DANIEL KAUFMAN
KIAL S. YOUNG (Mass. Bar No. 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop NJ-3212
Washington, DC  20580
Tel: (202) 326-2675/3126
Fax: (202) 326-3259

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.<br><br>Defendants. | Civ. No. 04-CV-11136-GAO |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
THE FEDERAL TRADE COMMISSION'S MOTION TO STRIKE FIVE
OF THE AFFIRMATIVE DEFENSES OF DIRECT MARKETING
CONCEPTS, INC., ITV DIRECT, INC., AND DONALD BARRETT**

The Federal Trade Commission ("FTC" or "Commission") respectfully submits this memorandum of law in response to Defendants' Opposition to Plaintiff's Motion to Strike Five of the Affirmative Defenses of Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald Barrett ("Defendants"). Despite having creatively characterized certain vaguely worded affirmative defenses and made various misleading statements regarding the challenged advertisements and the Commission's prosecution of this matter, Defendants have failed to refute the Commission's arguments that the affirmative defenses at issue are without basis in law. The Court, therefore, should strike these defenses pursuant to Rule 12(f).

**I. ARGUMENT**

**A. The Defense that Plaintiff has not been Damaged is Invalid and Should be Stricken**

Defendants' second affirmative defense is that "Plaintiff has not been damaged by any acts of the DMC Defendants." Despite the literal wording of this defense, Defendants now state

that they in fact argue that the Commission has failed to demonstrate that any consumer actually suffered harm.[1] Even accepting Defendants's characterization, however, the defense is without legal merit and should be stricken.

It is well-established that when enforcing the FTC Act, the Commission need not show reliance and injury to individual consumers. *See, e.g., FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993); *FTC v. SlimAmerica, Inc.*, 77 F. Supp.2d 1263, 1275-76 (S.D. Fla. 1999); *FTC v. American Stand. Credit Systems, Inc.*, 874 F. Supp. 1080, 1089-90 (C.D. Cal. 1994); *FTC v. Wilcox*, 926 F. Supp. 1091, 1105 (S.D. Fla. 1995) (rejecting defendants' argument that the FTC could obtain restitution only on behalf of consumers submitting sworn affidavits establishing their individual loss). Rather, a "presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *Figgie*, 994 F.2d at 605-06 (finding consumer injury established upon the Commission's proof of the above elements and the presumption of reliance). Requiring the Commission to show "proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section." *Id.* at 605 (quoting *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1293 (D. Minn. 1985)).

In this case, the Commission has pleaded that the Defendants widely disseminated material misrepresentations concerning both Coral Calcium Daily and Supreme Greens with

---

[1] Defendants apparently acknowledge that the FTC as an agency need not show that it suffered harm from Defendants' actions. They state in their opposition that they "are well aware that the FTC brought this complaint in a representative capacity on behalf of consumers pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (2003)." Def. Opp. at 6 (Docket Number 44).

2

MSM, and that consumers suffered economic harm (and possible injury to their health) as a result of Defendants' actions. The Commission's decision whether to include declarations from individual consumers establishing their economic harm from Defendants' actions has no bearing on whether Defendants are liable for violating the FTC Act as charged.[2]

Defendants' argument that their offer of a money-back guarantee supports this affirmative defense also is without merit. The presence of such a guarantee, or the fact that Defendants may have provided refunds to some consumers, does not insulate defendants from liability under the FTC Act. *See FTC v. Think Achievement Corp.*, 312 F.3d 259, 261-62 (7th Cir. 2002) (holding, in a case where the defendants had provided refunds in some instances, that "a money-back guarantee does not sanitize a fraud"); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994); *SlimAmerica, Inc.*, 77 F. Supp.2d at 1272-73. At most, any refunds provided by Defendants would merely be used to calculate the amount of redress due consumers. *See SlimAmerica, Inc.*, 77 F. Supp.2d at 1276 ("The appropriate measure for redress is the aggregate amount paid by consumers, less refunds made by defendants.") Such refunds, however, would have no affect on the Defendants' underlying liability.

Defendants' second affirmative defense thus has no basis in law and should be stricken.[3]

---

[2] The Commission notes as well that it has filed with the court multiple complaints from consumers who alleged that Defendants billed them without authorization. *See* Attachment 22 to Exhibit A to the Plaintiff's motion for a temporary restraining order (Docket Number 6.)

[3] The Court also may strike this defense on the grounds that it not a proper affirmative defense at all, but is rather a general denial. The issue of consumer reliance and harm is part of the Commission's prima facie case and a "defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In Re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case; as such, they are derived from the common law plea of 'confession and avoidance.' . . . On the other hand, some defenses negate an element of the plaintiff's *prima facie* case; these defenses are excluded from the definition of affirmative defense in Fed.R.Civ.P. 8(c)."). The

3

### B. Defendants' Attempt to Shift Blame to their Co-defendants Should be Stricken

Defendants' third affirmative defense states:

> The allegedly deceptive statements were not made by the DMC defendants, but were made by others over which the DMC Defendants exerted no authority or control and for which DMC Defendants have never had responsibility. All of Plaintiff's claims against the DMC Defendants, therefore, are derivative of claims against other parties or third-parties.

Defendants' defense either misconstrues the scope of Sections 5 and 12 of the FTC Act or attempts to assign legal responsibility for their actions on their co-defendants. Under either construction, the defense is legally insufficient.

To the extent Defendants claim they cannot be held liable under the FTC Act because they did not actually utter the claims the Commission alleges are false or unsubstantiated, their argument must fail. Sections 5 and 12 of the FTC Act prohibit more than the literal utterance of false statements in advertisements. These provisions prohibit parties from *disseminating*, or *causing the dissemination* of, false or deceptive advertising. *See* 15 U.S.C. §§ 45, 52. Any claim by the Defendants that they did not literally "make" the deceptive statements therefore has no legal import.[4] *Cf. Mueller v. United States*, 262 F.2d 443, 445-47 (5th Cir. 1958) (rejecting

---

Court therefore may strike this defense on the grounds that it is not a valid defense under Rule 8(c). *See Texidor v. E.B. Aaby's Rederi*, 354 F. Supp. 306, 309 (D. P. R. 1972) (striking affirmative defense on grounds that it in fact constituted a negative denial).

[4] In arguing that the Defendants "themselves" did not make the statements at issue in this case, Defendants also mischaracterize the content of the disclaimers that appear infrequently in the infomercials. Defendants state that "the FTC does not dispute that the infomercials included disclaimers to inform consumers that the opinions expressed on the show were those of the speaker and not DMC or ITV, that the infomercial was a paid advertisement, and that the advertised books and products were not a cure for any disease." Def. Opp. at 9. In fact, the Commission does dispute this contention. The *only* disclaimer in the infomercials cited in the Commission's complaint appeared immediately before and after the programs, and stated only that the following/preceding program was a paid advertisement for "Coral Calcium" and

4

defendant's argument that he was not liable under the FTC Act because newspapers had actually disseminated the advertisements at issue, and holding that "[n]or is it necessary that the false advertising be directly disseminated by the respondents. The statute makes it unlawful for the respondents to cause such false advertising to be disseminated. Under these plain, unambiguous provisions of the statute, petitioners' contention[] that they . . . did not personally disseminate any false advertisement do[es] not constitute a defense to the action.") Moreover, Barrett himself actually did make some of the statements challenged in this action:

> MR. BARRETT:  Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a by-product. How come?

Transcript of Supreme Greens infomercial at 21, attached as Exhibit 6 to the Commission's Complaint.

Defendants do not contend here that they neither disseminated nor caused the dissemination of the advertisements at issue.[5]

To the extent Defendants instead argue that, despite their dissemination of the advertisements at issue, responsibility for the deceptive claims lies with their co-defendant Alex Guerrero, their position is without legal merit. As demonstrated by the case law cited in the Commission's motion to strike, courts consistently have rejected defendants' attempts to avoid liability by blaming their co-defendants. *See* Memorandum of Law in support of the

---

"Supreme Greens," respectively. See Exhibit 2 to the Commission's Complaint, at 3, 36; Exhibit 6 to the Commission's Complaint at 3, 36.

[5] To the extent that Defendants did make such an argument, however, the argument would be both false and not a proper affirmative defense, as it goes to an element of the Commission's prima facie case: demonstrating the Defendants' connection to the dissemination of the advertising at issue.

5

Commission's motion to strike Defendants' affirmative defenses, at 6 ("Plaintiff's Memorandum") (Docket Number 41). This Court recognized the legal insufficiency of this argument in its Preliminary Injunction, stating that "[t]he Defendants' purported reliance upon co-defendant Alex Guerrero's representations – even if true – is not a valid defense to a violation of the FTC Act." Preliminary Injunction Order as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett, at ¶ 30.

Defendants also attempt to argue that this defense is relevant to the issue of whether they acted in good faith in airing the advertisements at issue. Good faith, however, is a separate affirmative defense that Defendants did not plead. *See FTC v. Medicor, LLC*, 2001 WL 765628 (C.D. Cal. June 26, 2001) (where defendants pled, and court addressed, good faith and the same defense that Defendants raise here as independent, distinct defenses). As Defendants failed to assert this defense in their answer, they are precluded from asserting it in this action.[6] *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505-06 (1st Cir. 1996).[7]

Under any conceivable construction, Defendants' third affirmative defense has no basis in law and should be stricken.

---

[6] In any case, good faith is not a defense to liability under the FTC Act. *See, e.g., FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. US Sales Corp.*, 785 F. Supp. 737, 748-49, 751 (N.D. Ill. 1992).

[7] Finally, the case of *FTC v. Garvey*, 2004 WL 1936508 (9th Cir. September 1, 2004) offers no support for the assertion of this defense. In that case, the appellate court affirmed the lower court's ruling that the Commission had failed to show that a hired celebrity spokesperson was liable for monetary relief because he lacked the requisite scienter. Defendants here can hardly claim to have the same level of participation and knowledge as a hired celebrity spokesperson. These Defendants, as, *inter alia*, the producers and disseminators of the two infomercials challenged in this case, were integrally involved in the marketing and promotion of the products at issue.

## C. The Defense of Accord and Satisfaction is Irrelevant in this Litigation

Defendants' fourth affirmative defense is that "Plaintiff's claims are barred by the doctrine of accord and satisfaction." Defendants, without citing any legal support for their position, claim that the settlement agreements the Commission reached with Kevin Trudeau and Robert Barefoot may somehow constitute an accord and satisfaction of the Commission's claims against Defendants. The plain language of the definition of "accord and satisfaction," however, which the Defendants accept, provides that the defense applies to an agreement reached *by the parties* involved in the dispute. *See Rust Engineering Co. v. Lawrence Pumps, Inc.*, 401 F. Supp. 328, 333 (D. Mass. 1975); Def. Opp. at 10. Agreements that the Commission reached with parties in other cases, therefore, would not constitute an accord and satisfaction between the Commission and Defendants. As the Trudeau and Barefoot agreements involved parties wholly independent from Defendants, as well as different infomercials and a different coral calcium product than the one at issue in the present litigation, the defense of accord and satisfaction is simply inapplicable to the instant case.

Defendants' argument regarding the effect of a future settlement with the other defendants also provides no support for this defense. Defendants' claim that any such agreement could constitute an offset to the alleged consumer injury is not a valid affirmative defense, as it has no bearing on Defendants' underlying *liability* for the violations alleged. The law is clear as well that Defendants could be held jointly and severally responsible with their codefendants for violating the FTC Act. *See FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 570 (7th Cir. 1989); *FTC v. Think Achievement Corp.*, 144 F. Supp.2d 1013, 1019 (N.D. Ind. 2000), *aff'd* 312 F.3d 259 (7th Cir. 2002); *SlimAmerica, Inc.*, 77 F. Supp.2d at 1276 (S.D. Fla. 1999).

7

The defense of accord and satisfaction thus is inapplicable to the instant case and should be stricken.

### D.  The First Amendment Defense Should be Stricken

Defendants' sixth affirmative defense is that "Plaintiff's claims are barred by the First Amendment to the United States Constitution." This affirmative defense, however, is without legal merit. As an initial matter, the Commission notes that a large part of the Defendants' argument in support of this defense involves the disclaimers contained in the advertisements. Defendants, however, asserted an entirely separate affirmative defense, which the Commission has not moved to strike, that the Commission's claims are barred because of the presence of these disclaimers. The Defendants' arguments regarding the legal effect of such disclaimers, therefore, are not applicable to their First Amendment defense.

Defendants' claim that the coral calcium infomercial–which Defendants disseminated–did not sell any specific product, but sold only books and tapes, is simply false. Although the infomercial hosts, Kevin Trudeau and Bob Barefoot, never mention a *specific name* of a coral calcium product, they indicate that the coral calcium substance they are discussing is available as a product about which consumers can call to obtain more information and order:

> KEVIN TRUDEAU:  But call the number on your screen if you want information on his books, The Calcium Factor and Death by Diet or if you want information on the coral calcium that he's mentioning, which Bob says is an excellent form of calcium that you can actually consume and it has a lot of other potential benefits as well, and try it for yourself.
>
> Mention A Closer Look and get a substantial discount off the books as well as the coral calcium, or we can send you some information if you have any questions. So, give us a call. . . .

Transcript of Coral Calcium Infomercial at 35-36, attached as Exhibit 2 to the Commission's

8

Complaint.

Defendants' claim that the coral calcium infomercial did not sell any specific product, but sold only books and tapes, also is undermined by Defendants' own admissions in this case and in separate litigation. In an affidavit submitted in federal court in private litigation involving coral calcium, Defendant Donald Barrett, after stating that he hired Kevin Trudeau and Robert Barefoot "to appear in an infomercial on the subject of coral calcium, a nutritional dietary supplement," goes on to state that "DMC hired various employees to receive telephone calls from interested viewers. When viewers called, DMC would offer the books *Death by Diet* and *The Calcium Factor* and also inquire whether the customer was interested in purchasing the coral calcium product. . . . DMC sells a product labeled Coral Calcium Daily to its customers and will sell, or oftentimes give away as a promotion, a copy of Barefoot's books." Affidavit of Donald Barrett, Jr., submitted in the case of *Barefoot v. King Media, Inc.*, Civil Action No. 02-9526 (E.D. Pa.), attached hereto as Exhibit 1.

Donald Barrett also admits in his deposition taken in the FTC's case against Kevin Trudeau that Defendants sold their coral calcium product, Coral Calcium Daily, pursuant to the infomercial:

> Q. The first sentence here in Exhibit No. 11 refers to Calcium Factor products. Do you know what was the actual name of the product being sold at that point?
>
> A. Well, the books, the Calcium Factor, Death by Diet, and the product, Coral Calcium. And I'm not sure at that time if it was Bob Barefoot's Coral Calcium or our Coral Calcium Daily. It was probably a combination of both which they shipped.
>
> Q. But at some point pursuant to what we have been calling the infomercial, the product that is shipped is known as Coral Calcium Daily?

> A.   My product, yes.
>
> Q.   Your product?
>
> A.   Yes, sir.

Excerpt of Transcript of Deposition of Donald Barrett taken in the case of *FTC v. Trudeau*, Civ. No. 03-3904, attached hereto as Exhibit 2.

Barrett makes a similar admission in an affidavit submitted in the instant case, stating that "[f]rom early 2002 through June 2003, 'A Closer Look' was aired on various media outlets. In connection with the airing of the infomercial, DMC agreed to sell Barefoot's books and coral calcium products to consumers." Affidavit of Donald Barrett submitted in opposition to the Commission's motion for a temporary restraining order, ¶ 7 (Docket Number 9).[8]

The infomercial claims challenged by the Commission thus constitute commercial speech, designed to promote the sale of products. As stated in the Commission's motion to strike, the First Amendment does not provide protection for false or deceptive commercial speech. *See* Plaintiff's Memorandum at 7-8. Accordingly, in the event the Commission establishes in its prima facie case that the advertisements at issue were false or deceptive, the First Amendment will not protect Defendants from liability.

The First Amendment therefore offers no protection for the speech challenged by the

---

[8] Putting aside the accuracy of Defendants' representation concerning what was sold through the coral calcium infomercial, the Commission has alleged that Defendants marketed the Coral Calcium Daily dietary supplement through a number of means, in addition to the infomercial. *See* Complaint at ¶¶ 21-22. Defendants also have specifically admitted that Defendant Direct Marketing Concepts, Inc. "advertised, offered for sale, sold, and/or distributed Coral Calcium Daily." Answer and Cross-Complaint of Direct Marketing Concepts, ITV Direct, Inc., and Donald W. Barrett to the Complaint, ¶ 18 (Docket Number 35). Defendants additionally have admitted "to selling Coral Calcium Daily through distributors and providing those distributors with information about Coral Calcium Daily." *Id.* at ¶ 22.

Commission, and this defense should be stricken.

### E. The Defense of Laches is Improper in an FTC action

The Barrett Defendants assert as their seventh affirmative defense that the causes of action asserted in the Complaint are "barred by the doctrine of laches."

Defendants assert that the doctrine of laches is applicable to suits brought by government agencies upon a showing of "affirmative misconduct" by the government. As demonstrated in the Commission's motion to strike, however, the weight of authority holds that laches is not applicable to a government agency enforcing a public right.[9] *See* Plaintiff's Memorandum, at 9-10; *see also FTC v. North East Telecomms., Ltd.*, No. 96-6081-CIV-LENARD,1997 WL 599357, at *3 & n.8 (S.D. Fla. June 23, 1997) ("Saffer cites *Federal Trade Comm'n v. Hang-Up Art Enters., Inc.*, No. CV-95-0027-RMT, 1995 WL 914179 (C.D. Cal. Sept. 27, 1995), for the proposition that laches may be a defense against the government if affirmative misconduct is shown. The *Summerlin* principle has not been so eroded in this Circuit, however."). Additionally, the First Circuit has ruled that a government agency need not take enforcement action immediately upon learning of possible illegality. *See United States v. Michael Schiavone & Sons, Inc.*, 430 F.2d 231, 233 (1st Cir. 1970) ("[I]t is not true that once a government agency smells a rat, the agency must exterminate it forthwith or allow it the run of the public's house in perpetuo.").

Even accepting Defendants' argument regarding the applicability of this defense,

---

[9] Notably, courts holding that the government may be equitably estopped upon a showing of affirmative misconduct also have ruled that laches is simply inapplicable to a government enforcement action. *See, e.g., United States v. Quality Built Construction, Inc.*, 309 F. Supp.2d 756, 761 (E.D.N.C. 2003); *FDIC v. European American Bank & Trust Co.*, 576 F. Supp. 950, 958 (S.D.N.Y. 1983).

11

Defendants notably fail to point to any facts constituting "affirmative misconduct" on the part of the Commission. Rather, Defendants state only that the Commission delayed inexcusably in taking action against them, and that they may have been prejudiced by this delay. These claims, however, mirror the definition of laches itself,[10] and do not suggest the additional "affirmative misconduct" necessary, under Defendants' analysis, to make laches applicable to this action.[11] *Cf. United States v. Government Development Bank*, 725 F. Supp. 96, 105 (D.P.R. 1989) (stating that, with regard to the "affirmative misconduct" that would have to be shown if the defense of equitable estoppel were even applicable to the government, "it suffices to note that although the First Circuit, like the Supreme Court, has not yet precisely defined its contours, it has made one point perfectly clear: *official silence or inaction cannot constitute 'affirmative misconduct'*") (emphasis added); *United States v. Arkwright, Inc.*, 690 F. Supp. 1133, 1143 (D.N.H. 1988) (holding, in assessing equitable estoppel argument, that "[f]ederal courts have refused to regard the Government's failure to act as affirmative misconduct."); *Newport Nat'l Bank v. United*

---

[10] *See Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (party asserting laches must show "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed taking action; and (3) the defendant was prejudiced by the delay").

[11] On a factual level, the Commission's "delay" in notifying the Defendants of its concerns regarding the content of the coral calcium infomercial is readily explainable. Although the Commission may have been put on notice of this infomercial in or around April 2002, it did not contact Defendants about the infomercial until June of 2003 because it was involved in the investigation and preparation of its case against the marketer of another coral calcium product, Kevin Trudeau. The Commission's decision to focus initially on Trudeau was a matter of prosecutorial discretion. The Commission notified Defendants' of its concerns in June 2003, immediately after filing suit against Trudeau. The fact that it did not bring the instant case until a year later is attributable not to a "delay" by the Commission, but to Defendants' own actions--Defendants' dissemination of the Supreme Greens infomercial and their repeated delays in settlement discussions with the Commission. The Commission became aware in August 2003 that Defendants were disseminating the Supreme Greens infomercial. The ensuing investigation and negotiation with Defendants prevented the Commission from proceeding immediately with an action regarding coral calcium.

*States*, 556 F. Supp. 94, 98 (D.R.I. 1983) ("Without more, mere inaction, delay or sloth on the part of the government in the conduct of a sovereign function will not support such an estoppel. . . . Sluggishness and torpor on the part of a government agency, standing alone, are, under the decided cases, in sufficient to portray affirmative misconduct."); *cf. also United States v. Ruby Co.*, 588 F.2d 697, 703-04 (9th Cir. 1978) ("affirmative misconduct" in equitable estoppel context required "an affirmative misrepresentation or affirmative concealment of a material fact by the government").[12]

The doctrine of laches thus is inapplicable to the instant action, and the Court should strike this defense in order to prevent the taking of unnecessary and time-consuming discovery.

## CONCLUSION

For all of the above stated reasons, the FTC respectfully requests that its motion to strike five of the Barrett Defendants' seven affirmative defenses be granted.

Respectfully Submitted,

*/s/*

DANIEL KAUFMAN
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-2675, -3126 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov, kyoung@ftc.gov or
eglennon@ftc.gov

---

[12] The First Circuit also has stated that "estoppel against the government, if it exists at all, is hen's-teeth rare," *Costa v. INS*, 233 F.3d 31, 38 (1st Cir. 2000), and that "[t]he possibility of harm to a private party inherent in denying equitable estoppel its wonted reach is often (if not always) grossly outweighed by the pressing public interest in the enforcement of congressionally mandated public policy." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985).

ATTORNEYS FOR PLAINTIFF

Dated September 24, 2004