## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    Plaintiff<br>        v.<br><br>DIRECT MARKETING CONCEPTS, INC., d/b/a<br>TODAY'S HEALTH and DIRECT FULFILLMENT,<br>ITV DIRECT, INC., d/b/a DIRECT FULFILLMENT,<br>DONALD W. BARRETT,<br>HEALTHY SOLUTIONS, LLC d/b/a DIRECT<br>BUSINESS CONCEPTS,<br>HEALTH SOLUTIONS, INC.,<br>ALEJANDRO GUERRERO, a/k/a ALEX GUERRERO,<br>MICHAEL HOWELL, GREG GEREMESZ,<br>TRIAD ML MARKETING, INC., KING MEDIA, INC.,<br>and ALLEN STERN, **and ROBERT MAIHOS**<br>    Defendants-**: and**<br><br>**LISA STERN, STEVEN RITCHEY and BP**<br>**INTERNATIONAL, INC.,**<br><br>    **Relief Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. **04-CV-11136-GAO**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER
## EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC or "Commission"), by its undersigned

attorneys, alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), to secure permanent injunctive relief, restitution,

disgorgement, and other equitable relief against Defendants for their deceptive acts or practices

and false advertisements in connection with the advertising, promotion, and sale of purported

"coral calcium" supplements and a dietary supplement called "Supreme Greens with MSM," in

violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C.

§§ 45(a), 52, and 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.      Venue in this District is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b)

and (c).

## THE PARTIES

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United

States Government created by the FTC Act. 15 U.S.C. §§ 41-58. The Commission enforces

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or

practices in or affecting commerce. The Commission also enforces Section 12 of the FTC Act,

15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or

cosmetics in or affecting commerce. The Commission, through its own attorneys, may initiate

federal district court proceedings to enjoin violations of the FTC Act and to secure such equitable

relief, including rescission and restitution, as may be appropriate in each case. 15 U.S.C. § 53(b).

5.      Defendant Direct Marketing Concepts ("DMC"), sometimes doing business as

"Today's Health" and "Direct Fulfillment," is a Massachusetts corporation with its principal

place of business at 20 Oakpoint Ext., Saugus, MA, 01906 and also does business at 100

Cummings Center, Suite 139F, Beverly, MA, 01915. For more than two years, DMC, at times

with its business partners Triad ML Marketing, Inc. and King Media, Inc., has promoted,

marketed, offered for sale, and/or distributed coral calcium products through the use of an

2

infomercial, print advertisements and other printed promotional materials, distributors, and retail outlets to consumers throughout the United States. From at least January 2002, and continuing into 2003, DMC marketed "Coral Calcium Daily" and other coral calcium products to consumers throughout the United States through a variety of means, including a nationally disseminated infomercial in which Kevin Trudeau and Robert Barefoot appear as promoters of Coral Calcium Daily. In addition, since at least August 2003, DMC has promoted, marketed, offered for sale, and/or distributed a dietary supplement called "Supreme Greens with MSM" ("Supreme Greens") to consumers throughout the United States through the use of one or more nationally disseminated infomercials, an Internet website –www.todayshealth.com/supremegreens–and printed promotional materials. Defendants Donald Barrett and Alejandro Guerrero appear in the Supreme Greens infomercial(s) promoting the product. DMC transacts or has transacted business in the District of Massachusetts.

6.      Defendant ITV Direct, Inc. ("ITV"), sometimes doing business as "Direct Fulfillment," is a Massachusetts corporation with its principal place of business at 100 Cummings Center, Suite 506E, Beverly, Massachusetts. Since at least August 2003, ITV has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, printed promotional materials, and Internet advertisements. ITV transacts or has transacted business in the District of Massachusetts.

7.      Defendant Donald W. Barrett ("Barrett") is the President and a Director of DMC, and the President and a Director of ITV. Since January 2002, Barrett, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed the product

3

Coral Calcium Daily and other coral calcium products to consumers throughout the United States through a variety of means, including a nationally disseminated infomercial featuring Kevin Trudeau and Robert Barefoot as promoters of Coral Calcium Daily, as well as through print advertisements and other printed promotional materials. In addition, since at least August 2003, Barrett, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, printed promotional materials, and Internet advertisements, as well as through other means. Barrett appears in the Supreme Greens infomercial(s) promoting the product. Barrett directs, controls, formulates, or participates in the acts and practices of DMC and ITV, including the acts and practices complained of below. Barrett resides and transacts or has transacted business in the District of Massachusetts.

**8.    Defendant Robert Maihos ("Maihos") owns 50% of DMC and ITV and is an officer and director of both companies. Since January 2002, Maihos, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed the product Coral Calcium Daily and other coral calcium products to consumers throughout the United States through a variety of means, including a nationally disseminated infomercial featuring Kevin Trudeau and Robert Barefoot as promoters of Coral Calcium Daily, as well as through print advertisements and other printed promotional materials. In addition, since at least August 2003, Maihos, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, printed promotional materials, and Internet advertisements, as well as**

4

**through other means. Maihos directs, controls, formulates, or participates in the acts and practices of DMC and ITV, including the acts and practices complained of below. Maihos resides and transacts or has transacted business in the District of Massachusetts.**

9.    Defendant Healthy Solutions, LLC ("Healthy Solutions"), sometimes doing business as Direct Business Concepts, is a California limited liability company with its principal place of business at 9528 Miramar Rd., # 100, San Diego, CA 92126. Since at least August 2003, Healthy Solutions, acting alone or in concert with others, has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, as well as through other means. In April 2003, Healthy Solutions entered into an exclusive distribution agreement with defendant ITV in which Healthy Solutions, in addition to agreeing to supply ITV with the Supreme Greens product, granted ITV the right to promote Supreme Greens through the use of infomercial, print, radio, or any other media, and granted ITV permission to use Healthy Solutions' trademarks and trade names in marketing Supreme Greens. Healthy Solutions also agreed to provide ITV with an "expert spokesperson," designated as defendant Alejandro ("Alex") Guerrero, for ITV's use in producing the Supreme Greens infomercial. Healthy Solutions agreed as well to provide written testimonials, marketing reference materials and other representations and assistance concerning Supreme Greens. Healthy Solutions transacts or has transacted business in the District of Massachusetts.

10.    Defendant Health Solutions, Inc. is a California corporation with a principal place of business at 16843 Valley Boulevard, Suite 540 E, Fontana, California. Since at least August 2003, Health Solutions, Inc., acting alone or in concert with others, has promoted, marketed,

offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, as well as through other means. Health Solutions, Inc. has applied for the trademark rights to the Supreme Greens name and holds itself out on the website www.hsnow.com as the entity through which consumers can order Supreme Greens. Health Solutions, Inc. transacts or has transacted business in the District of Massachusetts.

11.     Defendant Alejandro Guerrero, also known as Alex Guerrero ("Guerrero"), is a California resident and President and director of Health Solutions, Inc. Guerrero, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States since at least August 2003, through the use of one or more nationally disseminated infomercials, as well as through other means. Guerrero is the owner of the trade secret formula for Supreme Greens and appears in the Supreme Greens infomercial(s) promoting the product. Guerrero directs, controls, formulates, or participates in the acts and practices of Health Solutions, Inc. and has engaged in the acts and practices alleged in this complaint. Guerrero transacts or has transacted business in the District of Massachusetts.

12.     Defendant Michael Howell ("Howell") is a California resident, President of Healthy Solutions, and an officer of Health Solutions, Inc. Since at least August 2003, Howell, acting individually, or in concert with others, has promoted, marketed, offered for sale, and/or distributed Supreme Greens to consumers throughout the United States through the use of one or more nationally disseminated infomercials, as well as through other means. In April 2003, Howell, as President of Healthy Solutions, entered into an exclusive distribution agreement with

6

ITV for Supreme Greens. Howell directs, controls, formulates, or participates in the acts and

practices of Healthy Solutions and Health Solutions, Inc., including the acts and practices

complained of below. Howell transacts or has transacted business in the District of

Massachusetts.

13.    Defendant Greg Geremesz ("Geremesz") is a California resident, a member and

the registered agent of Healthy Solutions, and an officer of Health Solutions, Inc. Since at least

August 2003, Geremesz, acting individually, or in concert with others, has promoted, marketed,

offered for sale, and/or distributed Supreme Greens to consumers throughout the United States

through the use of one or more nationally disseminated infomercials as well as other means.

Geremesz directs, controls, formulates, or participates in the acts and practices of Healthy

Solutions and Health Solutions, Inc., including the acts and practices complained of below.

Geremesz transacts or has transacted business in the District of Massachusetts.

14.    Defendant Triad ML Marketing, Inc. ("Triad"), is a Pennsylvania corporation with

its principal place of business at 656 E. Swedesford Road, Suite 330, Wayne, PA, 19087. For

more than two years, Triad, at times with its business partners DMC and King Media, Inc., has

promoted, marketed, offered for sale, and/or distributed coral calcium products through the use

of an infomercial, television advertisement, distributors, and retail outlets to consumers

throughout the United States. Triad has marketed the product Coral Calcium Daily since at least

January 2002, and until at least November 2002, through a nationally disseminated infomercial,

in which Kevin Trudeau and Robert Barefoot appear as promoters of the product. In addition,

Triad contracted for and oversaw procurement of, and fulfillment of consumer orders for, the

Coral Calcium Daily product. Triad's merchant account was used to process credit card

7

transactions for consumer orders for Coral Calcium Daily and to administer customer refunds.

Triad also applied for the trademark for Coral Calcium Daily. Subsequently, Triad has marketed

Coral Calcium Daily through a 30-second television advertisement and retail outlets. Triad

transacts or has transacted business in the District of Massachusetts.

15.    Defendant King Media, Inc. ("King Media") is a Pennsylvania corporation with

its principal place of business at 656 E. Swedesford Road, Suite 325, Wayne, PA, 19087. For

more than two years, King Media, at times with its business partners DMC and Triad, has

promoted, marketed, offered for sale, and/or distributed coral calcium products through the use

of infomercials and a television advertisement to consumers throughout the United States. Since

at least January 2002, and continuing thereafter through at least November 2002, King Media

marketed "Coral Calcium Daily" by purchasing media time for the nationally disseminated

infomercial, in which Kevin Trudeau and Robert Barefoot appear as promoters of the product.

King Media also financed the dissemination of the infomercial for some time on behalf of

Defendant DMC. King Media also has been involved in marketing Coral Calcium Daily by

purchasing media time for the 30-second television advertisement. King Media transacts or has

transacted business in the District of Massachusetts.

16.    Defendant Allen Stern ("Stern") is President of Triad and King Media. Since at

least January 2002, Stern, acting individually, or in concert with others, has promoted, marketed,

offered for sale, and/or distributed coral calcium products to consumers throughout the United

States through a nationally disseminated infomercial, a television commercial, and retail outlets.

He directs, controls, formulates, or participates in the acts and practices of Triad and King Media,

including the acts and practices complained of below. Stern transacts or has transacted business

in the District of Massachusetts.

17.    Defendants Triad, King Media, and Stern have operated a common business enterprise while engaging in the deceptive acts and practices alleged below and are therefore jointly and severally liable for said acts and practices.

**18.    Relief Defendant Lisa Stern is a former owner of Triad and King Media.  In 2002 and 2003, Lisa Stern received funds and/or other assets, including corporate distributions, from Triad, King Media and/or Stern that were obtained unlawfully from consumers as a consequence of the acts and practices complained of herein.  Lisa Stern resides in Devon, Pennsylvania and has transacted or transacts business in the United States.**

**19.    Relief Defendant Steven Ritchey owns 33% of both King Media and Triad. In 2002 and 2003, Steven Ritchey received funds and/or other assets, including corporate distributions from Triad and/or King Media that were obtained unlawfully from consumers as a consequence of the acts and practices complained of herein.  Steven Ritchey resides in West Chester, Pennsylvania and has transacted or transacts business in the United States.**

**20.    Relief Defendant BP International, Inc., is a Nevada corporation with its principal place of business in Reno, Nevada.  The Director of BP International is Steven Paris, a relative of defendant Barrett.  In 2002 and/or 2003, BP International received funds and/or other assets, including wire transfers made from defendant Triad at the request of defendant Barrett, that were obtained unlawfully from consumers as a consequence of the acts and practices complained of herein.**

## COMMERCE

21.     The acts and practices of DMC, ITV, Barrett, **Maihos,** Healthy Solutions, Health

Solutions, Inc., Howell, Geremesz, Guerrero, Triad, King Media, and Stern (collectively,

"Defendants") alleged in this Complaint are or have been in or affecting commerce, as

"commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. §§ 44.

## DEFENDANTS' COURSE OF CONDUCT

### Coral Calcium Daily

22.     Since at least January 2002, Defendants DMC, Barrett, **Maihos,** Triad, King

Media, and Stern (collectively, the "Coral Calcium Defendants") have manufactured, labeled,

advertised, offered for sale, sold, and/or distributed Coral Calcium Daily to the public throughout

the United States.  Coral Calcium Daily is a dietary supplement that purportedly contains a form

of calcium derived from marine coral.  Through their business venture, the Coral Calcium

Defendants have promoted Coral Calcium Daily as an effective means to prevent, treat, and cure

cancer, heart disease, and various degenerative and autoimmune diseases.

23.     The cost to consumers for a one-month supply of Coral Calcium Daily, which

consists of a 90-capsule bottle, ranges from $14.95 to $39.95, plus shipping and handling.

According to the bottle's label, a daily serving size of Coral Calcium Daily is three capsules,

which in total contains 530 milligrams of calcium.

24.     The Coral Calcium Defendants have primarily advertised Coral Calcium Daily

through two means: (1) a nationally disseminated, 30-minute television infomercial; and (2) print

advertisements appearing in free-standing newspaper inserts ("FSIs"), which are inserted in local

Sunday newspapers. *See* Exhibit 1 (copy of 30-minute infomercial); Exhibit 2 (transcript of

10

infomercial); and Exhibit 3 (copy of print advertisement that appeared in an FSI inserted in a San

Francisco-based newspaper). The infomercial has aired on national cable networks such as PAX

Television, Women's Entertainment, TV Food Network, E! Entertainment Television, the

Outdoor Channel, the Travel Channel, Access Television, and Bravo. During the course of the

infomercial, the Coral Calcium Defendants supplied viewers with a toll-free telephone number to

call to purchase Coral Calcium Daily. The Coral Calcium Defendants also have included product

brochures along with the Coral Calcium Daily product shipped to consumers. *See* Exhibit 4 (a

promotional letter signed by defendant Barrett). Coral Calcium Daily also is or has been

available for purchase through retail outlets such as CVS, Rite Aid, Walgreen's, and General

Nutrition Centers (GNC), and via the Internet. Finally, Defendants Triad, King Media, and Stern

also have advertised Coral Calcium Daily through a 30-second television advertisement.

      25.    To induce consumers to purchase Coral Calcium Daily, the Coral Calcium

Defendants have widely disseminated advertisements and promotional materials, including, but

not limited to, Exhibits 1 through 4, containing, among others, the following statements:

        A.    KEVIN TRUDEAU: Okay. So here's the question. I asked myself, will I
get cancer? Can I know?

ROBERT BAREFOOT: Yes.

KEVIN TRUDEAU: I mean, people out there watching right now are all
wondering, I hope I don't get cancer or I wonder if I am going to get
cancer.

ROBERT BAREFOOT: Yes.

KEVIN TRUDEAU: Is there a way for us to know whether we will or
won't?

ROBERT BAREFOOT: Yes, there is, and it's very simple. First off, we

11

just review what you're eating. Are you getting the minerals? And if you're not, you will become acidic and you will get one of the major diseases. You can have heart disease, cancer, lupus, fibromyalgia, multiple sclerosis. Name the disease, they're all caused by acidosis.

* * *

KEVIN TRUDEAU: Okay. Now, here's the question. So, if that's the case, is there a way to change the body pH from being acidic to being more alkaline?

ROBERT BAREFOOT: Yes, you need to enrich the body with minerals and there are all kinds of minerals and all kinds of ways of doing that, some vastly superior to others.

KEVIN TRUDEAU: Okay. What's a good way, in your opinion, that a person can get rid of that acidity?

ROBERT BAREFOOT: Well, they have to consume a lot more calcium. You see, just like you've heard in the past, there are cultures all over the world that never get sick and they live to be 100, and all these cultures have one thing in common and it doesn't matter whether the Hunzas in Pakistan or the Titicaca Indians – in China, there's a band of millions of them, or the Okinawans over in Japan, on the Oprah Winfrey Show talked about how they live long and they never get sick. * * * They all have one thing in common. They all consume over 100,000 milligrams of calcium a day * * * They eat 100 times as much as you and I.

KEVIN TRUDEAU: Is that the only common denominator, consuming more calcium?

ROBERT BAREFOOT: No, the other common denominator is they're all in the sun for several hours a day.

> Ex. 2 (transcript of infomercial) at p. 5, line 20 through p. 6 line 10; p. 8, line 3 through p. 9 line 9.

B.    KEVIN TRUDEAU: Okay. Now, so, are you saying the simplest thing a person can do to increase their health is consume more calcium?

ROBERT BAREFOOT: That's the case, and that's why all these cultures all over the world, who eat 10 to 100 times as much as we do, virtually never have heart disease or cancer.

KEVIN TRUDEAU: Okay. But I can't go to a store, a drug store or a health food store, and just get calcium in a bottle, in a pill and take it.

ROBERT BAREFOOT: No.

KEVIN TRUDEAU: Because you're saying that's not going to have as good of an effect.

ROBERT BAREFOOT: No, no, no, and it's really the wrong thing to do. I tell people who drink milk, you can drink more, but I never tell you to drink milk if you don't because, you see, the milk contains a lactic acid which will aggravate your acid problem. So, it's not necessarily the thing to do. When we discovered back in '82, when we knew that the calcium factor was the key to these people staying healthy, we discovered that in Okinawa, that they were eating this coral sand called coral calcium. Well, boy, since 1982, we've been studying the coral calcium and I can tell you there are tens of millions of people, millions of testimonials. I've had 1,000 people tell me how they've cured their cancer. I've witnessed people get out of wheelchairs with multiple sclerosis just by getting on the coral.

Ex. 2 at p. 19, line 12 through p. 20, line 15.

C.    ROBERT BAREFOOT: There's no such thing as a bad nutrient. Some are much better than others. The real key with calcium is it does not want to absorb in the human body. If you, for example, take a calcium antacid, it will absorb 2 percent. If you take milk, you absorb 17 percent. If you take some of these citrates, you absorb 10 percent.

KEVIN TRUDEAU: Um-hum.

ROBERT BAREFOOT: But you know, there is a substance out there where you get 100 percent absorption.

KEVIN TRUDEAU: Hmm.

ROBERT BAREFOOT: And America hasn't heard about it. And that's strange because, you know, for hundreds of years, tens of millions of people around the world have taken it. Today, there are tens of millions of people around the world that are taking this substance with 100 percent absorption.

KEVIN TRUDEAU: And this is the coral from –

13

ROBERT BAREFOOT: Yes.

KEVIN TRUDEAU: – Okinawa, Japan that people add in water.

ROBERT BAREFOOT: Yeah.

Ex. 2 at p. 11, line 14 through p. 12, line 10.

D.    [ON SCREEN: 1-800-870-4122]

* * *

KEVIN TRUDEAU: * * * If you want information on these books or the coral calcium, just call the number on your screen for some more information.

Ex. 2 at p. 17, line 22 through p. 18, line 11.

E.    KEVIN TRUDEAU: You're saying if a person wants to be healthier, to live longer –

ROBERT BAREFOOT: Yes.

KEVIN TRUDEAU: – disease-free in your opinion, they do two simple things, stay in the sun two hours a day, get sunlight on their face –

ROBERT BAREFOOT: And take coral calcium.

KEVIN TRUDEAU: And that's it?

ROBERT BAREFOOT: That's it. And, boy, I can introduce you to thousands that do and you won't believe their stories.

KEVIN TRUDEAU: But will people feel a difference if they're –

ROBERT BAREFOOT: Oh, yes. Oh, yes. Especially those that were sick. People don't come to me, you know, with a disease, they come to me dying and they don't die.

KEVIN TRUDEAU: But taking –

ROBERT BAREFOOT: And all they do is change their lives.

14

KEVIN TRUDEAU: But taking calcium is not a cure for anything.

ROBERT BAREFOOT: No, no. What the calcium does is it gives the body what it needs to cure itself. You know, with your DNA, you can grow a whole new brain? Now, they're discovering this. You can grow whole new body parts. But your DNA only will work when smothered in calcium. So, you've got to give it a chance. Look at these people like Michael Fox who got Parkinson's, which we know is caused by free radicals chewing up his brain.

KEVIN TRUDEAU: Um-hum.

ROBERT BAREFOOT: Free radical, by definition, is starved for electrons and it's positively charged. Now, if you smother it in electrons, you destroy it. So, if you make your body alkaline by taking calcium, the free radicals are destroyed on entry, you can't get Parkinson's. In other words, every disease can be explained.

KEVIN TRUDEAU: Then why doesn't – why isn't he taking calcium?

ROBERT BAREFOOT: You can't get to Michael J. Fox. I've tried and –

KEVIN TRUDEAU: Michael J. Fox, if you're watching right now or if somebody's watching that knows, get some calcium. That's what you're telling him?

ROBERT BAREFOOT: Oh, yes. The first thing we can do is arrest the disease and stop it from happening further. Then what we want is for his DNA to kick in and help him grow a new brain.

Ex. 2 at p. 32, line 1 through p. 33, line 25.

F.    ROBERT BAREFOOT: * * * But the best way, of course, is to consume it whole.

KEVIN TRUDEAU: The actual coral itself?

ROBERT BAREFOOT: Yes. In capsule form.

KEVIN TRUDEAU: Oh, really? And so, this actually is adding calcium into your system.

ROBERT BAREFOOT: Yes. As a matter of fact, since within about 20

15

minutes you get 100 percent absorption, you're literally getting 50 times as much calcium, 50 times as fast if you take the coral calcium versus, say, an antacid calcium.

Ex. 2 at p. 13, line 18 through p. 14, line 3.

G.    KEVIN TRUDEAU:  Now, the medical community would say to say that calcium is a cure for cancer is ridiculous.

ROBERT BAREFOOT:  Then why did the Journal of the AMA this year quote the Strang Cancer Research Institute and said that calcium supplements reverse cancer. That's a quote from the Journal of the AMA and they quoted how much. They said 1,500 milligrams a day is enough to reverse colon cancer and they said other cancers will grow back to normal. They don't use the "cure" word, they say grow back to normal. But the Journal of the AMA is quoting medical researchers now that say, calcium reverses cancer.

Ex. 2 at p. 20, line 16 through p. 21, line 3.

H.    KEVIN TRUDEAU: * * * I was just watching TV yesterday. There was a doctor on and the question was, what – how do we know if you're going to have cancer? And the doctor said, if your genetic make-up is for cancer, like, you know, there was cancer in your mother's side of the family and there was cancer in your father's side, you have a high chance of having cancer.

ROBERT BAREFOOT:  Not if you're on calcium.

KEVIN TRUDEAU:  And – but there's got to be somebody – a doctor would say, that has to be just your opinion, there's no scientific basis for that statement.

ROBERT BAREFOOT:  Oh, yeah. But then I go to the Strang Cancer Research Institute, I quote the Journal of the AMA. Doctors are too busy to read their own journals. How many doctors read the article that calcium supplements prevent cancer?

KEVIN TRUDEAU:  That's what the article said?

ROBERT BAREFOOT:  In their own journal. Yes. And it – that's a quote. And it said it from, also, the New England Journal of Medicine also carried the same story with the same quote.

16

Ex. 2 at p. 27, line 16 through p. 28, line 11.

I.     **The Scientific Secret of Health and Youth Finally Revealed...**
       **THE CALCIUM FACTOR**

       **Coral Calcium's miraculous age-defying power** has been reported to
       have been used for centuries by the people of Okinawa, Japan to prevent
       and even reverse **Heart Disease, Cancer, Parkinson's Disease, Arthritis,**
       **Alzheimer's, Diabetes, and more.**

                              * * *

       An intriguing culture in Okinawa, Japan lives an average life span of over
       100 years without doctors and without disease! It was discovered that
       their calcium rich waters act as an elixir of life which perfectly balances
       their body's pH level to alkaline rather than acid, allowing their bodies to
       naturally fight and even reverse life-threatening diseases such as diabetes,
       arthritis, Alzheimer's disease, heart disease, and even cancer!

                              * * *

       [Y]ou too can join the millions of people who have unlocked their bodies'
       self-curing potential with all natural **100% pure Coral Calcium Daily!**
       This amazing nutrient, with over 70 additional trace minerals, digests
       easily with **100% absorption in just 20 minutes.**

                    Ex. 3 (print advertisement) (emphasis in original).

J.     **To:**      Our Valued Customer
       **From:**    Donald Barrett
                    President
                    Today's Health

My name is Donald Barrett and I am the President of Today's Health in
Beverly, Massachusetts. We are the largest distributor of marine-grade
coral calcium in the United States.

I was raised in the town of Saugus, just a few miles north of Boston. In
February 1997 my father, who is my best friend, was diagnosed with a
severe Carcenoid liver cancer. Our physician's prognosis was grim. My
family was willing to try anything to find a solution.

In searching for an alternative therapy, a friend introduced us to marine-

17

grade coral calcium from Okinawa, Japan. The island's inhabitants, whose rate of affliction with cancer and other degenerative diseases is less than 10%, get coral calcium daily through the water they drink. We gave the coral calcium to my father and within a few months the tumors started to shrink. Within a year no traces of cancer remained.

### *"I thank God first...and coral calcium second."*

In short, coral calcium added years to my father's life...and it inspires me now to bring it to the world.

* * *

Donald Barrett

Ex. 4 (product insert, promotional letter) (emphasis in original).

2~~2~~6.    The Coral Calcium Defendants also marketed Coral Calcium Daily through distributors, by selling "Starter" kits to distributors containing multiple bottles of Coral Calcium Daily as well as videotape copies of the infomercial, audio tapes promoting the product, and other materials. The "Starter" kits cost approximately $299.00, plus shipping and handling.

27.    **When consumers called the toll-free number displayed during the Coral Calcium Daily infomercial, company representatives sometimes offered consumers the option of enrolling in a continuity program in which Coral Calcium Daily would be automatically shipped on a regular basis – either monthly or every three months – and their credit or debit cards would be automatically charged. Many consumers who were invited to join the continuity program declined, but were nevertheless charged for automatic shipments. Other customers who were never offered the option of enrolling in the continuity program were nevertheless enrolled and charged without their prior consent or knowledge.**

18

**Supreme Greens with MSM**

2**3**8. Since at least August 2003, Defendants DMC, ITV, Barrett, **Maihos**, Healthy

Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz (collectively, the "Supreme

Greens Defendants") have manufactured, labeled, advertised, offered for sale, sold, and/or

distributed Supreme Greens to the public throughout the United States. Supreme Greens is a

dietary supplement purportedly comprised of numerous organically grown grasses, vegetables,

sprouted grains, blood-purifying and immune-enhancing herbs, and antioxidants. The Supreme

Greens Defendants have promoted the product as, among other things, an effective treatment,

cure and preventative for cancer, heart disease, arthritis, and diabetes, and as a means of

achieving substantial weight loss of up to 80 pounds in 8 months. In addition, Defendants have

claimed that Supreme Greens can be taken safely by pregnant women, children – including

children as young as one year old – and any person taking any type of medication.

2**4**9. The cost to consumers for a one-month supply of Supreme Greens – a 180-capsule

bottle of the product – ranges between $32.98 and $49.99, plus shipping and handling.

According to the product label, a daily dose – 3 capsules taken twice daily – contains a

"proprietary blend" of 39 different ingredients, including wheat grass, grapefruit pectin, MSM,

barley grass, and alfalfa sprouts, plus rice powder and gelatin.

25**30**. The Supreme Greens Defendants have primarily advertised Supreme Greens

through one or more nationally disseminated, 30-minute television infomercials. *See* Exhibit 5

(copy of one 30-minute version of the Supreme Greens infomercial); Exhibit 6 (transcript of

same version of the infomercial). In addition, the Supreme Greens defendants have promoted the

product through the Internet websites www.todayshealth.com/supremegreens,

19

www.supremegreens.com, www.supreme-greens.com, and www.hsnow.com. *See* Exhibit 7
(printout of www.todayshealth.com/supremegreens). The infomercial has aired on national cable
networks such as SpikeTV, the Outdoor Channel, WE (Women's Entertainment), and PAX
Television. During the course of the infomercial, the Supreme Greens Defendants supply
viewers with a toll-free telephone number to call to obtain more information about, or purchase,
the Supreme Greens product. The Supreme Greens Defendants also market Supreme Greens to
consumers via the Internet.

~~26~~**31**. To induce consumers to purchase Supreme Greens, the Supreme Greens
Defendants have widely disseminated advertisements and promotional materials, including, but
not limited to, Exhibits 5 through 7, containing, among others, the following statements:

A.    MR. BARRETT: My name is Donald Barrett and on our show today we
have one of the leading experts and researchers in alternative health care,
Dr. Alex Guerrero.

**ON SCREEN:**
**ITV**
**ARE ALL HEALTH PROBLEMS**
**CAUSED BY AN ACIDIC BODY?**

MR. BARRETT: Dr. Guerrero claims that most chronic degenerative
diseases – such as cancer, arthritis, diabetes, even the number one killer
out there, heart disease – can and are being cured and there are natural
healing techniques being suppressed in this country. We have a very
controversial show, so stay with us.

Ex. 6 (transcript of infomercial) at p. 3, line 15 through p.
4, line 4.

B.    MR. BARRETT: You treat all types of people from pro athletes in their
prime of life?

DR. GUERRERO: Yes.

MR. BARRETT: All the way to people that, you know, have chronic disease that their doctors have told them to really get their affairs in order and go home.

DR. GUERRERO: Yeah. I mean, our primary concern – at least in my clinic, anyway, is to make sure that the body, you know, stays in an environment that's conducive for cell regeneration. You know, we do a lot of weight loss, we do a lot of anti-aging, we do a lot of, you know, making sure professional athletes can stay at their peak performance all the time. And we also see people that have chronic conditions – like you mentioned before, we've got cancer patients, [AIDS] patients, people with MS, diabetes, Parkinson's. * * *

MR. BARRETT: But you're treating them with natural therapies.

DR. GUERRERO: We are.

MR. BARRETT: All natural?

DR. GUERRERO: All natural. The purpose really is to give them something that provides – that changes the environment, that makes the environment now conducive to cellular regeneration, rather than an environment that promotes degeneration.

Our cells regenerate on cycles. For example, you get new skin cells every 30 days, you're getting new bone cells every 120 days. So if the environment, your internal environment, Don, is now conducive to the regeneration of that cell – that's what it does, it regenerates – if the environment isn't, well, then you're going to degenerate. And that's what we call aging.

* * *

MR. BARRETT: You teach them of this acid alkaline balance in the body, because it's simple for people to understand and when they alkalize their body, as you say, they're in a better position to heal themselves?

DR. GUERRERO: Absolutely.

MR. BARRETT: Versus an acid body?

DR. GUERRERO: Well, from, you know, in – in biology we've learned that you've got disorders like yeast, fungus, bacterias, viruses, molds, all

those are living organisms that need an environment in which to thrive and proliferate and grow.  And they can only survive in an acid base.
So if we can change the body's fluids and tissues to a more alkaline base, now you have an environment that is no longer conducive for the proliferation or growth of a degenerative condition.

MR. BARRETT:  And when you alkalize the body, these – a lot of these symptoms, a lot of these diseases are going to –

DR. GUERRERO:  Well, they –

MR. BARRETT:  – fall by the wayside.

DR. GUERRERO:  Well, they all do, because they're a result of over acidification of the blood and tissues.  And so when the blood and tissue are in an acid base – it's like what acid rain would do to a paint job on a car.

MR. BARRETT:  Yeah, it would ruin it.

DR. GUERRERO:  That's what -- that's what your body fluids, your acidic body fluids are doing to your internal organs.

> Ex. 6 at p. 5, line 22 through p. 7, line 6; p. 8, line 10 through p. 9, line 15.

C.    MR. BARRETT:  And now here's the question:  If I alkalize my body, am I going to come up with one of these chronic degenerative diseases?

DR. GUERRERO:  No.

MR. BARRETT:  Such as cancer, arthritis –

DR. GUERRERO:  No.

MR. BARRETT:  How can you say that so confidently?

DR. GUERRERO:  I'm very confident in saying that, primarily because of the clinical studies we've done.  I've seen it in my – in my – in my clinical practice.  I've seen it every day in my clinical practice.

MR. BARRETT:  Tell me about –

22

DR. GUERRERO: I treat patients that have conditions –

MR. BARRETT: – the studies – tell me about a study that you've done with – with chronic disease.

DR. GUERRERO: Well, based on acid alkaline principles we wanted to take groups of people that had degenerative conditions – and, to me, it didn't really matter what their degenerative condition was and I preferred them to have a variety of conditions. So I certainly just didn't want to have a base of liver cancer or bone cancer or prostate cancer or breast cancer. I wanted to, you know, lump them into a group and see what the response would be over time.

Well, now it's been – you know, now we're going into, you know, eight years and within a five year period of time we took 200 people that had a variety of degenerative conditions. They weren't all the same conditions, they –

MR. BARRETT: Were they terminal?

DR. GUERRERO: They were diagnosed as terminal.

MR. BARRETT: Two hundred people – now, eight years later, how many of them are still alive?

DR. GUERRERO: Well, I've got – out of that – out of those 200 people that were terminal we lost eight. Eight passed away.

Ex. 6 at p. 11, line 6 through p. 12, line 19.

D.    MR. BARRETT: What is grapefruit pectin?

DR. GUERRERO: Grapefruit pectin actually is a substance that – I'll give you a study that they did with grapefruit pectin. They took – over a 12 month period of time they took, you know, pigs and they gave them high lard diets. And what they did is they tested their arterial plaque before they started the study.

And they gave one group grapefruit pectin and they gave another group nothing, but they both ate the same high lard diet. After 12 months the group that received the grapefruit pectin actually had an 88 percent decrease in arterial plaque than from when they started. That's significant.

23

MR. BARRETT:  And doctors don't –

DR. GUERRERO:  It's incredible.

MR. BARRETT:  – tell their patients about grapefruit pectin?

DR. GUERRERO:  Doctors don't know about grapefruit pectin.  Again, remember, their education is acute care and pharmacology based.  So not that your doctor doesn't care, but your doctor just doesn't know about it.

MR. BARRETT:  So if you're taking this product and you're healthy now, your arteries are less likely to clog up, you're saying?

DR. GUERRERO:  Oh, absolutely.

Ex. 6 at p.17, line 18 through p.18, line 18.

E.    MR. BARRETT: * * *  Now, we have a caller on the line from Oregon.  Her name is Kerry.  Kerry, are you with us?

KERRY:  Yes, I am.

MR. BARRETT:  Now, what is your experience been on this Supreme Greens product?

KERRY:  Well, you know, I've been overweight for many years and I tried, oh, every diet on the market.  I tried Atkins, I tried The Zone, I tried the soup diet, I even tried the popcorn diet and none of them worked.  I'd lose some weight and then I'd just gain it back and then some.
And so after so many years of trying all these different diets I just gave up because I was just so discouraged, you know.  And then a friend of mine recommended that I take the Supreme Greens with MSM, not as a weight loss product, but you know what?  As a way to improve my health and my energy because she noticed I was just so tired all the time.

Of course, you know, my energy and my health improved, but what was really amazing was that the first week that I was on Supreme Greens with MSM I lost four pounds.  And the second week I lost four and-a-half pounds.
And I've been on Supreme Greens now for eight months and I have lost a total of 81 pounds. And –

MR. BARRETT:  Eighty-one pounds?

24

KERRY: Eighty-one. Yes.

MR. BARRETT: That – that's tremendous. Now, have you seen health as a by-product also?

KERRY: Well, I have. You know, in addition to that you know my knees and my ankles don't ache any more, I can pick up my children and play with them, which I have not been able to do in years. And I just – you know what, I just wanted to thank Dr. Guerrero for Supreme Greens with MSM, it's given me my life back.

* * *

MR. BARRETT: Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a by-product. How come?

DR. GUERRERO: They lose weight as a by-product because, again remember, weight is the – fat is your body's way of protecting itself from the acidic fluids. And so when you alkalize your –

MR. BARRETT: So when your body's acid – * * * when you have a high acid system your body needs a layer of protection which is called fat.

DR. GUERRERO: It's called fat.

MR. BARRETT: So when you alkalize your body you don't need that fat?

DR. GUERRERO: You don't need that fat. Your body burns it actually for fuel.

Ex. 6 at p.19, line 9 through p. 22, line 3.

F.    DR. GUERRERO: It's great for women that are pregnant because it certainly applies –

MR. BARRETT: So she can take it when she's pregnant?

DR. GUERRERO: No question. My wife took it, my wife took it through all of her pregnancies.

MR. BARRETT: And you have five children?

25

DR. GUERRERO:  We have five children.

MR. BARRETT:  Okay.

Ex. 6 at p. 22, lines 9 through 17.

G.    DR. GUERRERO: * * * And, you know, think about arthritis.  Let's talk about arthritis for a minute.  Arthritis is an inflammation in the joint. What happens because it's so acidic that when a cell receives nourishment and it breaks it down, the mucosal lining again is so hard that it can't excrete the waste out.  So the cell accumulates and just gets bigger and bigger and bigger and bigger so we get inflamed joints.
So the MSM really is a great anti-inflammatory.

MR. BARRETT:  It acts as –

DR. GUERRERO:  Because as a super conductor it makes the cell wall more permeable.  So now the cell can actually release all of its metabolic waste.

MR. BARRETT:  It takes down swelling.

Ex. 6 at p. 28, line 14 through p. 29, line 2.

H.    MR. BARRETT:      * * *  What are the other nutrients in there and does it interfere with any medication?

DR. GUERRERO:  Because I have, you know, a wide range of patients in different conditions, I needed to ensure that the formula was synergistic with all medications.
And so, you know, the Supreme Greens with MSM is synergistic with medication.  There is no contra-indication.

MR. BARRETT:  So anybody out – anybody –

DR. GUERRERO:  (Inaudible).

MR. BARRETT:  – anybody out there basically on any type of medication, they can take the Supreme Greens product?

DR. GUERRERO:  Yes.

Ex. 6 at p. 29, line 18 through p. 30, line 7.

26

I.     MR. BARRETT: Tell me about diabetes. I heard you talking to one of the producers before the show about diabetes.

DR. GUERRERO: Well, diabetes really is something that's becoming epidemic.

MR. BARRETT: I heard a lot of people out there have diabetes and don't even know it.

DR. GUERRERO: Sure. Well, you know before – years ago, you'd just go to your doctor and they used to say, Well, yeah, you have hypoglycemia, you know, just eat – you know, six, seven, eight small meals a day and you'll be fine. Because they constantly needed that sugar. And what happened was that those people that were hypoglycemic years to come, when they became adults developed diabetes. And so what the medical community learned is that, hey, you know, where we didn't take hypoglycemia serious before, we now need to take it serious because those are the same people that are getting diabetes today. So now we're not going to call it hypoglycemia anymore, we're going to call it insulin resistance or we're going to label it and call it Syndrome X. So you now have Syndrome X. So now they're coming up with medications to help you deal with Syndrome X when the reality is all you really need to do is if you can nourish the cell, maintain more permeability, your body will metabolize insulin.

Ex. 6 at p. 33, line 6 through p. 34, line 7.

J.     MR. BARRETT: What age should someone go on Supreme Greens?

DR. GUERRERO: My children take it.

MR. BARRETT: And how old?

DR. GUERRERO: Well, my daughter, when she was one, she was on a bottle and weaning and, you know, she's in her formula I would take a quarter teaspoon and mix it right in her formula and she would drink it once a day.

MR. BARRETT: Really?

DR. GUERRERO: Children take it.

27

Ex. 6 at p. 34, lines 8 through 17.

K.     If you or someone you love is suffering from Cancer, Arthritis,
       Osteoporosis, Fibromyalgia, Heart Disease, Diabetes, Heartburn, Fatigue,
       Excess Weight, or simply the everyday ravages of aging - **it's time to start
       down the path to a healthier lifestyle ...**

Ex. 7 (excerpt from Internet website
www.todayshealth.com/supremegreens) at p. 1.

L.     A number of health problems and degenerative conditions have been
       **linked to highly acidic cell pH:**

- Cancer
- Arthritis
    *       *       *
- High Blood Pressure
- High Cholesterol
    *       *       *
- Diabetes
    *       *       *
- Endometriosis
    *       *       *
- Overweight
- Heart Disease

So How Do You Rebalance Your Cells pH Levels and Get the
Minerals and Nutrients You Need?

According to Health professionals, supplements are needed to give the
body what it needs.  But where most supplements either provide vitamins
or proteins, Supreme Greens works to help rebalance your cell pH.

*       *       *

Supreme Greens was formulated by Dr. Alex Guerrero, a renowned
physician who has focused his career on working with people with various
degenerative and chronic ailments.  His breakthrough supplement has
already helped thousands of people with cancer, diabetes, arthritis, lupus,
fibromyalgia, chronic fatigue syndrome, and many others.

Ex. 7 at pp. 2-3.

28

M.    I have been overweight for several years. Like many others, I tried every diet on the market from the Atkins Diet to the Soup Diet to the Popcorn Diet. Of course, I achieved short spurts of weight loss with these diets, but the weight continued to come back after a short period of time.

After becoming completely discouraged, a friend recommended I try Supreme Greens with MSM*, not as a weight loss product, but as a way to help improve my general health. Although I did begin to enjoy better health and an increase in energy, I also began to lose weight from the product. In the first week I lost 4 lbs. During the second week I lost 4.5 lbs. This spark of success lit a fire and I have now lost an amazing 81 lbs. over the past 8 months.

*        *        *

Carrie J., OR (consumer testimonial)

Ex. 7 at p. 4.

~~27~~**32**.    At least twice during the infomercial, a toll-free telephone number is displayed on the screen and viewers are urged to call the number for more information about, or to order, the Supreme Greens product. During and around these portions of the infomercial, there is no indication to viewers that the program they are watching is a paid advertisement for Supreme Greens.

~~28~~**33**.    When consumers call the toll-free number displayed during the Supreme Greens infomercial and mention that they saw the "Today's Health" program about Supreme Greens, company representatives inform them that, having watched the show, they are eligible for a special discount. The consumer is told that although a bottle of Supreme Greens (a one-month supply) normally costs $49.99, the consumer can receive three bottles for $99, as well as two free bottles of Vitamin E8 Daily, a vitamin E supplement. When consumers agree to order the $99 special, some consumers are unknowingly and without their consent signed up for a monthly automatic shipment of two bottles of E8 Daily (a two-month supply) at a cost of $25 plus $7.95

29

in shipping. Those consumers must then contact the company after receiving their first

unauthorized shipment to cancel the automatic shipment program and return the unwanted bottles

at their own expense.

## SECTIONS 5 AND 12 OF THE FTC ACT

~~29~~<u>34</u>.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts

or practices in or affecting commerce. Section 12(a) of the FTC Act, 15 U.S.C. § 52(a), prohibits

the dissemination of any false advertisement in or affecting commerce for the purpose of

inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or

cosmetics. For the purposes of Section 12 of the FTC Act, Coral Calcium Daily and Supreme

Greens are either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15

U.S.C. § 55(b) and (c). As set forth below, the Defendants have engaged in such unlawful

practices in connection with the marketing and sale of coral calcium products and other dietary

supplement products such as Supreme Greens.

## DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF THE FTC ACT

## COUNT I

### Unlawful Claims Regarding the Health Benefits of Coral Calcium Daily

~~30~~<u>5</u>.    Through the means described in Paragraph 2~~1~~<u>5</u>, including, but not limited to,

through the statements contained in the advertisements attached as Exhibits 1 through 4,

Defendants DMC, Barrett<u>, **Maihos**</u>, Triad, King Media, and Stern have represented, expressly or

by implication, that the coral calcium ingredient contained in Coral Calcium Daily is an effective

treatment or cure for:

30

      A.     Cancer;

      B.     Autoimmune diseases including multiple sclerosis and lupus;

      C.     Parkinson's disease; and

      D.     Heart disease.

3~~1~~**6**.  The representations set forth in Paragraph 3~~0~~**5** are false and/or were not substantiated at the time the representations were made.  Therefore, the making of the representations set forth in Paragraph 3~~0~~**5** constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT II

### Unlawful Claims Regarding the Bioavailability and Superiority of Coral Calcium Daily

3~~2~~**7**.  Through the means described in Paragraph 2~~1~~**5**, including, but not limited to, the statements contained in Paragraphs 2~~1~~**5**(C), (F), and (I), Defendants DMC, Barrett**, Maihos**, Triad, King Media, and Stern have represented, expressly or by implication, that:

      A.     The body absorbs significantly more – in some cases up to fifty (50) times as much – of the calcium contained in Coral Calcium Daily, and at a rate significantly faster – in some cases up to fifty (50) times faster – than the calcium contained in a commonly available antacid calcium product; and

      B.     The body absorbs 100 percent of the calcium contained in Coral Calcium Daily.

3~~3~~**8**.  The representations set forth in Paragraph 3~~2~~**7** are false and/or were not

substantiated at the time the representations were made. Therefore, the making of the representations set forth in Paragraph 32̲7̲ constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

### COUNT III

### Unlawful Claims Regarding Certain Scientific Studies on Calcium

34̲9̲. Through the means described in Paragraph 21̲5̲, including, but not limited to, the statements contained in Paragraphs 21̲5̲(G) and (H), Defendants DMC, Barrett, **Maihos**, Triad, King Media, and Stern have represented that scientific research published in the Journal of the American Medical Association and the New England Journal of Medicine proves that calcium supplements are able to prevent, reverse, or cure cancer in humans.

35̲4̲0̲. The representation set forth in Paragraph 34̲9̲ is false. Therefore, the making of the representation set forth in Paragraph 34̲9̲ constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

### COUNT IV

### Unlawful Claims Regarding the Health Benefits of Supreme Greens

36̲4̲1̲. Through the means described in Paragraph 26̲3̲1̲, including, but not limited to, the statements contained in the advertisements attached as Exhibits 5 through 7, Defendants DMC, ITV, Barrett, **Maihos**, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented, expressly or by implication, that Supreme Greens is an effective treatment, cure, or preventative for:

32

A.    Cancer;

B.    Heart disease;

C.    Diabetes; and

D.    Arthritis.

37~~41~~**42**.  The representations set forth in Paragraph 36~~41~~**41** are false and/or were not substantiated at the time the representations were made.  Therefore, the making of the representations set forth in Paragraph 36~~41~~**41** constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

### COUNT V

### Unlawful Weight Loss Claim Regarding Supreme Greens

38~~43~~**43**.    Through the means described in Paragraph 26~~31~~**31**, including, but not limited to, the statements contained in Paragraph 26~~31~~**31**(E) and (M), Defendants DMC, ITV, Barrett**, Maihos**, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented, expressly or by implication, that Supreme Greens will cause significant weight loss of up to 4 pounds per week and up to 80 pounds in 8 months.

39~~44~~**44**.  The representation set forth in Paragraph 38~~43~~**43** is false and/or was not substantiated at the time the representation was made.  Therefore, the making of the representation set forth in Paragraph 38~~43~~**43** constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

33

## COUNT VI

### Unlawful Safety Claims Regarding Supreme Greens

4~~0~~**5**.     Through the means described in Paragraph ~~26~~**31**, including, but not limited to, the

statements contained in Paragraphs ~~26~~**31**(F), (H), and (J), Defendants DMC, ITV, Barrett**,**

**Maihos**, Healthy Solutions, Health Solutions, Inc., Guerrero, Howell, and Geremesz represented,

expressly or by implication, that Supreme Greens can be taken safely by:

> A.     Pregnant women;
>
> B.     Children, including children as young as one year old;
>
> C.     Any person taking any type of medication.

4~~1~~**6**.     The representations set forth in Paragraph 4~~0~~**5** are false and/or were not

substantiated at the time the representation were made.  Therefore, the making of the

representations set forth in Paragraph 4~~0~~**5** constitutes a deceptive practice, and the making of

false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC

Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT VII

### Deceptive Format

4~~2~~**7**.     Defendants DMC, ITV, ~~and~~ Barrett**, and Maihos** have represented, directly or by

implication, that the program referenced in Exhibits 5 and 6 hereto is an independent television

program and not paid commercial advertising.

4~~3~~**8**.     In truth and in fact, the program is not an independent television program and is

paid commercial advertising.  Therefore, the making of the representation set forth in Paragraph

4~~2~~**7** constitutes a deceptive practice, in or affecting commerce, in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).

## COUNT VIII

### Unfair Practice Regarding Unauthorized Credit and Debit Charges

44~~9~~.    In connection with the advertising, promotion, marketing, offering for sale, sale, and/or distribution of Supreme Greens, Defendants DMC, ITV, ~~and~~ Barrett **and Maihos** have caused charges for automatic shipments of E-8 Daily dietary supplement **or other products** to be billed to consumers' credit or debit cards without the consumers' authorization.

**50.    In connection with the advertising, promotion, marketing, offering for sale, sale, and/or distribution of Coral Calcium Daily, Defendants DMC, ITV, Barrett and Maihos have caused charges for automatic shipments of Coral Calcium Daily to be billed to consumers' credit or debit cards without the consumers' authorization.**

45**51**.    Defendants DMC, ITV, ~~and Barrett's~~**Barrett and Maihos'** practice of causing charges to be billed to a consumers' credit or debit cards without the consumers' knowledge or authorization has caused or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or competition.

46**52**.    Therefore, the practice set forth in Paragraphs 28**27, 33**, 44**9**, and 45**50** constitutes an unfair practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IX

## DISGORGEMENT OF RELIEF DEFENDANTS'

## ILL-GOTTEN GAINS

**BENEFIT FROM FUNDS DIRECTLY TRACEABLE TO CONSUMERS**

**53.**    **Paragraphs 1 through 52 are incorporated herein by reference.**

**54.**    **Lisa Stern, Steven Ritchey and BP International, Inc. (collectively, "Relief Defendants") received funds and other assets directly or indirectly from one or more of the Defendants. Those funds and other assets are either proceeds of or are traceable to the proceeds of the unlawful acts and practices alleged herein. The Relief Defendants have no legitimate claim to these assets.**

**55.**    **The Relief Defendants obtained the funds and other assets described in Paragraph 54 as part of, and in furtherance of, the Defendants' violations of the Federal Trade Commission Act alleged above and under circumstances in which it is unjust, inequitable, or unconscionable for them to retain the assets, and they have been unjustly enriched.**

**56.**    **The Commission is entitled to an order requiring the Relief Defendants to disgorge the assets described in Paragraph 54 to the extent that the Defendants cannot or will not directly satisfy any order granting monetary relief.**

**CONSUMER INJURY**

4757. Consumers throughout the United States have suffered and continue to suffer substantial monetary loss and possible injury to their health because of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts and practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

36

## THIS COURT'S POWER TO GRANT RELIEF

~~48~~<u>58</u>.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act.  The Court, in the exercise of its equitable jurisdiction, may award ancillary or other relief, including, but not limited to, rescission of contacts and restitution, and the disgorgement of ill-gotten gains caused by Defendants' law violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

(A)   Permanently enjoin Defendants from violating Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the offer, sale, advertising, or other promotion or distribution of any food, drugs, dietary supplements, devices, cosmetics, or other products, services, or programs;

(B)   Award all temporary and preliminary injunctive and ancillary monetary relief that may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions;

(C)   Award such equitable relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains **from Defendants and, to the extent necessary, from Relief Defendants**; and

37

(D)    Award the Plaintiff the costs of bringing this action, and such other equitable

relief as the Court may determine to be just and proper.


Dated: _____, 2004

                              Respectfully submitted,

                              WILLIAM E. KOVACIC
                              General Counsel


                              _____

                              DANIEL KAUFMAN
                              KIAL S. YOUNG (Mass. Bar No. 633515)
                              EDWARD GLENNON
                              Federal Trade Commission
                              600 Pennsylvania Avenue, N.W.
                              Mail Drop NJ-3212
                              Washington, DC  20580
                              Tel: (202) 326-2675/3525/3126
                              Fax: (202) 326-3259

                              ATTORNEYS FOR PLAINTIFF