# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>         Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.,<br><br>         Defendants. | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-11136GAO<br>)<br>)<br>)<br>)<br>)<br>) |

## NON-PARTY ROBERT MAIHOS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO NAME HIM AS AN ADDITIONAL DEFENDANT

Non-party Robert Maihos submits this opposition to the Federal Trade Commission's ("FTC" or "Plaintiff") motion for leave to name him as an additional defendant in this action.[1] For the reasons set forth below, the FTC has unduly delayed seeking to add Mr. Maihos as a defendant, in violation of Local Rule 15.1(A). In addition, despite conducting an investigation that has lasted almost two years, the Plaintiff has not submitted sufficient facts to this Court to overcome the substantial prejudice to Mr. Maihos of allowing an amendment at this late date. The plaintiff has not demonstrated that Mr. Maihos made any of the allegedly misleading statements, nor is he alleged to have controlled the content or distribution of those statements. Rather, the FTC argues that they should be allowed to add Mr. Maihos as a defendant, who would be potentially responsible for the entire liability the FTC is seeking to recover in this case, solely because he "has authority over *some* corporate financial matters" of Direct Marketing and

---

[1] Non-party Robert Maihos is making a special appearance in this action solely for the purpose of opposing the FTC's motion for leave to amend. See, e.g., Data General Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 344 (D. Mass. 1993) (noting that non-party defendant made special appearance for purposes of the plaintiff's motion only).

ITV. FTC Brief, at 5 (emphasis added). For all of these reasons, justice requires that the FTC's motion to amend be denied.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

DMC and ITV Direct, located in Beverly, Massachusetts, are media and marketing companies whose business includes the production of infomercials for television and radio. Neither DMC nor ITV itself manufactures any products. (Affidavit of Donald Barrett ("Barrett Aff."), ¶2, filed in support of the DMC Defendants' Opposition to the FTC's Motion for Temporary Restraining Order.) In connection with any agreement to produce an infomercial for a third party, DMC and ITV Direct make clear that the individual advertising the product is responsible for each and every representation he or she makes about a product, including confirming that he or she has competent and reliable scientific support for any claims made about the product. (Barrett Aff., ¶4.)

### A. Coral Calcium

In 2001, DMC's President Donald Barrett agreed with Robert Barefoot to produce an infomercial featuring Mr. Barefoot, who had written a book claiming that a dietary supplement known as coral calcium had substantial health benefits. In his book and in other conversations, Barefoot claimed that he possessed significant research, studies, documentation, testimonials and other scientific information, to support his claims concerning the health benefits of coral calcium. (Barrett Aff., ¶5.) Barefoot and another party, Kevin Trudeau, appeared in DMC's thirty minute infomercial, where they discussed Barefoot's book and the benefits of coral calcium. (Id., ¶6.) The taping of the infomercial was entirely unscripted, and neither DMC nor Barrett appeared in the infomercial or controlled any of its content. In addition, the infomercial did not mention any specific product, but only discussed Mr. Barefoot's books. All agreements

with Mr. Barefoot were signed by Mr. Barrett.  Mr. Maihos had no involvement in the taping or production of the infomercial, nor did he sign any agreements with Mr. Barefoot.[2]

The FTC first received a tape of the infomercial in or about April 2002.  Despite possessing the tape for over a year, the FTC did not notify Mr. Barrett or DMC that it had any issues or concerns over the content of the infomercial until June 2003.  (Barrett Aff., ¶9.)  At that time, Barrett and DMC requested that Barefoot provide copies of the studies and supporting documentation that claimed existed, which he did.  (Id., ¶11 and Exhibit C.)  Notwithstanding that there did appear to be support for the claims made in the infomercial, DMC nonetheless agreed to immediately pull the infomercial and cease any future airings.  (Id., ¶12.)  The FTC then filed an action against Barefoot and Trudeau in June 2003, which Barefoot eventually settled in January 2004.  Recently, the FTC also settled its claims with Trudeau for a monetary judgment against him of $2 million, as well as other relief.

### B. Supreme Greens

In late 2002, Donald Barrett was contacted by defendant Gregory Geremesz ("Geremesz"), who stated that he knew a "Dr. Alejandro Guerrero" ("Guerrero"), who had developed a greens product named Supreme Greens.  Geremesz stated to ITV Direct that he believed this product would be successful if marketed through an infomercial.  (Barrett Aff., ¶13.)  ITV Direct reviewed the materials regarding the product provided by Geremesz, and then met with Geremesz and defendant Guerrero, who represented that he was a doctor and OMD (doctor of oriental medicine).  Guerrero also stated that he operated a clinic in California with regular patients.  Geremesz and Guerrero also represented on numerous occasions that the greens

---

[2] In connection with its motion, the FTC has not alleged that Mr. Maihos had any involvement with the Coral Calcium infomercial or any of the statements made in that infomercial.  The FTC does not allege that he produced the infomercial, edited the infomercial, purchased media for the infomercial or distributed the infomercial.

product developed by Guerrero had been clinically tested on over 200 patients in California and had shown tremendous results, including on patients with cancer, AIDS, MS, diabetes and Parkinson's disease. (Id. ¶¶ 13 &14, and Ex. F; Affidavit of Robert Maihos ("Maihos Aff."), ¶4 and Ex. B, filed in support of DMC Defendants' Opposition to FTC's Motion for TRO.)

On April 4, 2003, ITV Direct entered into a "Distribution Agreement" with Guerrero's company, defendant Healthy Solutions, LLC ("Healthy Solutions"), for the production of an infomercial for Supreme Greens. This agreement was signed by Barrett. Relying on Guerrero's credentials, ITV Direct then produced an infomercial for the product at its own expense. The infomercial was unscripted, and ITV Direct did not dictate any of the statements by Guerrero in the infomercial, including his statements regarding his credentials, his clinical practice or the scientific support for Supreme Greens. (Barrett Aff., ¶¶14,16; Maihos Aff., ¶5.) Robert Maihos does not appear in the infomercial, has made no public statements in connection with the infomercial, and was not responsible for producing the infomercial.

The infomercials and all promotional materials for Supreme Greens had express disclaimers, clearly stating that results could vary and that the product was not a cure for any disease. (Maihos Aff., ¶5.) The infomercial also disclosed that ITV Direct was not confirming or attesting that there existed any scientific support for the claims made by Guerrero. (Id.) These disclaimers ran throughout the infomercials, and were also required by the networks who ran them. (Id.; Affidavit of Luke Goljan ("Goljan Aff."), ¶¶12, 13 and Exhibits A & B, filed in support of the DMC Defendants' Opposition to the FTC's Motion for TRO.)

During September and October 2003, the DMC Defendants' counsel was contacted by the FTC concerning the Supreme Greens infomercial. In those conversations, the FTC identified several concerns with the content of the infomercial. (Barrett Aff., ¶18.) In response to these

4

concerns, ITV Direct both sought additional scientific evidence from Guerrero and Healthy Solutions, and edited the program to address the FTC's concerns. (Id.; Goljan Aff., ¶7.) In October 2003, the edited tape was sent to the FTC, and the FTC concluded that the edited tape was a "substantial improvement." (Barrett Aff., ¶18.) ITV Direct then rolled the edited tape out to national markets, and then to the local markets. (Id., ¶19; Goljan Aff., ¶7.) As the FTC acknowledges, ITV Direct also received additional materials from Guerrero to provide some support for the claims he made in the infomercials. (Barrett Aff., ¶19 and Exhibit F.)

Between December 2003 and April 2004, the FTC had no communications with DMC, ITV, Barrett or their counsel regarding either the coral calcium or Supreme Greens infomercials. Then, beginning in March 2004, ITV Direct began voluntarily reducing its media purchases for Supreme Greens, with the intention of pulling the infomercial completely by Summer 2004. (Barrett Aff., ¶24.)

      **C.**     **The FTC's Original Complaint**

Over two years after it first received a copy of the coral calcium infomercial, and several months after its review of Supreme Greens, the FTC resurfaced. On April 7, 2004, the FTC informed DMC, ITV and Barrett that it continued to have concerns over Guerrero's credentials and the health claims he made about the Supreme Greens product. (Id.) After investigating the matter and concluding that Guerrero's credentials might be suspect, they immediately notified all media outlets to cease running any Supreme Greens infomercials. ITV Direct halted all media for Supreme Greens, and has not run the infomercial since it pulled the media many months ago. (Id.) Thus, at present, there are currently no infomercials for either coral calcium or Supreme Greens being run by the DMC Defendants and they have agreed to not run the infomercials in the future.

5

On June 1, 2004, two years after its initial investigation into the coral calcium infomercial and months after the Supreme Greens infomercial had been pulled from the air, the FTC filed the instant action against DMC, ITV and Barrett, seeking a permanent injunction and equitable relief in the form of restitution to consumers in connection with each defendant's alleged violations of the FTC Act.  After a hearing, this Court denied the FTC's request to appoint a receiver to take over DMC's and ITV's business and freeze their assets, but entered a preliminary injunction restricting DMC's, ITV's and Barrett's use of their assets.

Tellingly, the FTC did not name Robert Maihos as an individual defendant in its original complaint filed on June 1, 2004.  Although the FTC now claims that it was unaware of Mr. Maihos' role and position at DMC and ITV, easily obtainable public records from the Massachusetts Secretary of State identify Mr. Maihos as an officer of DMC since its formation over three years ago on June 12, 2001, and also identify Mr. Maihos as an officer of ITV since its formation on January 8, 2003, almost two years ago.  See Exhibit A, Copies of Secretary of State Certificates.  Thus, these public records make clear what the FTC now claims to have just learned, namely that Mr. Maihos is an officer and director of both DMC and ITV.  In addition, in connection with public litigation between ITV and Guerrero regarding Supreme Greens, which is currently pending in this District,[3] Mr. Maihos identified himself as early as April 4, 2004 as a principal shareholder of ITV and noted that he had some responsibility for the day-to-day operations of ITV.  Thus, the facts that the FTC claims to have only recently learned regarding Mr. Maihos have been publicly available for many months, if not years.

---

[3] See ITV Direct, Inc. v. Healthy Solutions LLC, Civil Action No. 04-cv-10421-JLT (and consolidated cases including Healthy Solutions LLC v. ITV Direct, Inc., Case No. ED CV 04-00236-RT (SGLx) (C.D. Cal.)).

6

## II.    LEGAL ARGUMENT

### A.    Standard Under Fed. R. Civ. P. 15(a) and Local Rule 15.1(A)

Although it is completely ignored by the FTC in its motion and memorandum of law, Local Rule 15.1(A) of this Court states clearly that: "Amendments adding parties shall be sought *as soon as* an attorney reasonably can be expected to have become aware of the *identity* of the proposed new party." (emphasis added).  Here, there is no question that the FTC should have become aware, and likely was aware, of the identity of Mr. Maihos from the moment it first began investigating this case in 2002, over two years ago.  This information was publicly available to the FTC, and one can assume that an investigator for the FTC, a government agency charged with overseeing interstate commerce, would review the publicly available corporate records of an entity it is investigating to determine the identity of its officers, directors and principal shareholders.  If the FTC somehow failed to conduct this review, it should not excuse its compliance with Local Rule 15.1(A).  In addition, Mr. Maihos' role at ITV was further disclosed in publicly filed affidavits as early as April 2004, and in affidavits submitted *to the FTC* in June 2004.  Despite its undisputed awareness of Mr. Maihos' identity for months, if not years, the FTC is only now seeking to add him as a party in this case.  The FTC had an obligation to review and understand the local rules of this district when it filed its complaint.  If Local Rule 15.1(A) is to have any meaning at all, the FTC's motion must be denied.

In addition, as reflected in numerous decisions of the First Circuit affirming the denial of motions to amend on various grounds, Local Rule 15.1(A)'s requirement to promptly add parties

7

whose identities are known to a plaintiff is grounded in longstanding precedent.[4]  Specifically, it has long been held that "undue delay in seeking the amendment may be a sufficient basis for denying leave to amend."  Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998), quoting Foman v. Davis, 371 U.S. 178 (1962).  Likewise, "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting."  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (affirming denial of leave to amend).  That is, "regardless of the context the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  Id., citing Acosta-Mestre, 156 F.3d at 52-53.  See also Larocca v. Borden, Inc., 276 F.3d 22, 32 (1st Cir. 2002) (delay alone is sufficient to deny a motion to amend).

In addition to delay, a motion to amend may be denied where there is prejudice to the opposing party, bad faith on the part of the plaintiff or futility.  In re Stone & Webster Sec. Litig., 217 F.R.D. 96, 98 (D. Mass. 2003).  Here, the FTC is not simply seeking to add allegations to its complaint, but is seeking to add an entirely new party months after filing its original complaint, and years after knowing the identity of the party it is seeking to add.  Not only does the FTC's motion violate the clear terms of Local Rule 15.1(A), which it doesn't even address or mention in its moving brief, but allowing the motion would work a substantial prejudice upon Mr. Maihos.  Specifically, by seeking to add Mr. Maihos as an individual "liability" defendant at this stage of the case, the FTC's amended complaint would expose Mr. Maihos to all of the potential

---

[4] See, e.g., Data General Corp., 825 F. Supp. at 345 (denying motion to amend for failure to comply with Local Rule 15.1(A)), citing Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989) (parties seeking benefit of Rule 15(a) "have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment") and Hayes v. New England Millwork Distrib., Inc., 602 F.2d 15, 19 (1st Cir. 1979) (delay is grounds for denying motion to amend).

restitution the FTC is seeking in this case, which it asserts is in the millions of dollars.  See, e.g., Securities & Exchange Comm. v. Militano, 1994 WL 558040, at *1 (S.D.N.Y. Oct. 11, 1994) (rejecting Commission's motion to amend, where individual defendant's "exposure would be increased by the potential disgorgement exposure of all the other defendants").  Given the substantial prejudice to Mr. Maihos of allowing the FTC's motion, combined with the FTC's failure to comply with Local Rule 15.1(A), the FTC motion to add him as a party should be denied.

   **B.** **The FTC's Proposed Allegations as to Mr. Maihos**
     **Are Insufficient to Warrant Granting Leave to Amend**

   In light of the FTC's failure to comply with Local Rule 15.1(A) and the substantial prejudice that would inure to Mr. Maihos if the FTC is granted leave to add him to this case, the FTC's proposed allegations as to Mr. Maihos should be subject to particular scrutiny.  Steir, 383 F.3d at 12 (burden on plaintiff to amend increases as case progresses).  Here, the FTC's proposed allegations do not establish either that the FTC has learned any "new" facts warranting an exception to Local Rule 15.1(A), nor do they establish that the FTC has any basis for asserting that Mr. Maihos is subject to individual liability.

   In particular, the FTC alleges only that Mr. Maihos plays an "active role" in the operations of DMC and ITV, and that he has authority over "some" corporate financial matters.  FTC Brief at 5.  To begin, this information has been well known to the FTC for months, if not years, as Mr. Maihos' role at DMC and ITV is contained within numerous publicly available documents.  Moreover, although the FTC has been investigating this matter for two years and

9

has now been provided unfettered access to all of DMC's and ITV's files,[5] these limited allegations appear to concede that Mr. Maihos had no involvement whatsoever in the actual production of either infomercial, no control over the content of the infomercial at the time each was produced, and had no supervision over the editing of the infomercial prior to its dissemination publicly.  In addition, the FTC has not alleged any facts indicating that Mr. Maihos purchased any media for DMC or ITV, or had any control over which infomercials ran in which markets.   That is, despite its comprehensive investigation, the FTC has provided no evidence that Mr. Maihos actually made *any* statement to consumers, or controlled the content or distribution of the allegedly offending statements made by others.

Instead of providing facts demonstrating that Mr. Maihos individually controlled the creation, production or distribution of the challenged infomercials, the FTC argues only that *subsequent* to the production and distribution of the Supreme Greens infomercial,[6] and upon notification by the FTC that it had concerns over the infomercial, Mr. Maihos sought to obtain additional scientific support from Mr. Guerrero for the claims in the infomercial, and requested that the infomercial be reviewed by ITV's outside counsel.  FTC Brief, at 5-6.  It is undisputed that ITV, with the assistance of counsel, then edited the infomercial to address the concerns raised by the FTC, sent the tape to the FTC for its review, and rolled out the edited tape to its

---

[5] As the Court is aware, pursuant to a preliminary injunction order issued by the Court on June 23, 2004, the FTC Staff was granted the right to visit the offices of DMC and ITV and inspect all of the companies' records.  This review occurred over the course of several days in July 2004, when several members of the FTC Staff visited DMC's and ITV's offices in Beverly, Massachusetts and were provided unlimited access to all requested files.

[6] As noted above, the FTC has advanced no specific allegations connecting Mr. Maihos to the Coral Calcium infomercial.  Rather, the FTC's limited allegations and argument as to Mr. Maihos relate solely to his alleged review of the Supreme Greens infomercial after it was produced and the FTC raised its intitial concerns over some of the infomercial's content.

10

media outlets.[7]  Despite these facts, the FTC now seeks to add Mr. Maihos to its complaint, exposing him to liability for the entire remedy it is seeking, in the millions of dollars.  The unfairness of this request is manifest.

In <u>United States v. Building Inspector of America, Inc.</u>, 894 F. Supp. 507 (D. Mass. 1995), for example, an individual officer in a similar position to Mr. Maihos challenged the FTC's evidence that he was sufficiently in control of the offending statements to warrant individual liability.  Although, as here, the FTC provided some evidence that the defendant "had some knowledge of at least some of the misrepresentations," Judge Gertner, denying summary judgment, rejected the FTC's contention that this evidence established that he "participated directly in the practices or acts, or had the authority to control them."  <u>Id.</u>, at 520, quoting <u>FTC v. Amy Travel Service, Inc.</u>, 875 F.2d 564, 573 (7th Cir. 1989).[8]  Likewise, although the defendant was involved in reviewing and editing certain statements, there was no evidence provided by the FTC demonstrating whether that defendant "had actual authority in the company to determine the final content" of the statements that were distributed.  <u>Building Inspector of Amer.</u>, 894 F. Supp. At 520.  Finally, Judge Gertner described as "sketchy at best" the FTC's evidence that the defendant had any direct involvement in making the misleading statements.

---

[7] Notably, the FTC argues that Mr. Maihos communicated with Mr. Guerrero and counsel regarding the infomercial, but does not provide any facts indicating that subsequent to those conversations he controlled the purchase of media for the infomercial or its distribution to media outlets.

[8] In addition to the issue of control, the Court in <u>Building Inspector of America</u> noted that the FTC must also show that the defendant had either "actual knowledge" of material misrepresentations, reckless indifference to the truth or falsity of the misrepresentations, or an awareness of a "high probability" of fraud.  894 F. Supp. at 518 (citing cases).  Here, the facts submitted by the FTC, which show that Mr. Maihos sought additional support for the statements in the Supreme Greens infomercial from Mr. Guerrero, had the infomercial reviewed by counsel, and provided an edited copy to the FTC for review, all belie the contention that he had any actual awareness of misrepresentations or fraud.  To the contrary, these facts demonstrate that Mr. Maihos sought to comply in all respects with the law.

Similarly here, the FTC has provided no evidence beyond the fact that Mr. Maihos was an officer of DMC and ITV involved in some aspects of the companies' business. The FTC has provided no evidence that Mr. Maihos was involved in making any of the misleading statements, the production of those statements, or their distribution. The FTC has also failed to demonstrate that Mr. Maihos had the requisite control over these statements or their distribution to warrant the imposition of individual liability for the statements. Given the FTC's failure to comply with Local Rule 15.1(A), the FTC's unexplained delay, and the substantial prejudice to Mr. Maihos, the FTC's motion for leave to amend should be denied.

## **CONCLUSION**

For all of the foregoing reasons, the FTC's motion for leave to amend the complaint to add Mr. Maihos as a liability defendant should be denied.

Respectfully submitted,

DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., AND DONALD W. BARRETT

By their attorney(s),

 /s/ Christopher Robertson
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Dated: December 16, 2004

BO1 15685888.1