UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.<br><br>Defendants. | Civ. No. 04-CV-11136-GAO |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF
THE FEDERAL TRADE COMMISSION'S MOTION FOR LEAVE TO NAME
ADDITIONAL DEFENDANT AND RELIEF DEFENDANTS AND
TO FILE FIRST AMENDED COMPLAINT**

The Federal Trade Commission ("FTC" or "Commission") respectfully submits this memorandum of law in response to Robert Maihos' Opposition to Plaintiff's Motion for Leave to Name Him as an Additional Defendant ("Maihos Opposition"). As set forth herein, Mr. Maihos' opposition must fail for multiple reasons. First, the Commission's motion is timely. Second, Mr. Maihos' claim that potential significant liability under the FTC Act constitutes "unfair prejudice" is simply wrong, particularly at this early stage in a litigation. Third, Mr. Maihos' description of the cited case law is misleading at best. Additionally, although perhaps not relevant to the merits of Mr. Maihos' opposition, the Commission must nevertheless clarify Mr. Maihos' dubious portrait of Direct Marketing Concepts and ITV Direct as companies that engaged in ethical and proper conduct.

I. **ARGUMENT**

A. **The FTC Moved to Amend the Complaint Five Months After Filing its Initial Complaint**

The Commission filed its Complaint on June 1, 2004 and five months later filed this motion to amend the complaint. Mr. Maihos's primary argument is that the FTC was aware of Mr. Maihos at an earlier time and that the motion should be evaluated based upon this earlier knowledge. Mr. Maihos provides no case law, however, that supports this novel proposition; indeed, in multiple cases cited by Mr. Maihos, courts routinely analyze motions to amend by considering the length of time between filing the complaint and moving to amend the complaint. *See, e.g., Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 52 (1st Cir. 1998) (plaintiff sought to amend complaint 15 months "after the initial complaint had been filed, and over a year after the first amendment"); *SEC v. Militano*, No. 89 CIV. 572 (JFK), 1994 WL 558040, at *2 (S.D.N.Y. Oct 11, 1994) (plaintiff sought to amend complaint "five years after the commencement of the action").

Local Rule 15.1 does not alter this analysis or modify the overwhelming case law that liberally allows for the amendment of complaints.[1] Although the Commission was aware of the identity of Mr. Maihos on June 1, 2004 when it filed its Complaint, it did not have sufficient information to assess whether Mr. Maihos could be held jointly and severally liable under the FTC Act, and the Commission does not name defendants until it can confidently meet its

---

[1] *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be 'freely given.'")

2

obligations under Federal Rule 11(b).[2] It would be illogical for Local Rule 15.1 to be interpreted to require naming a defendant whose "identity" is revealed, before a party can intelligently and responsibly assess whether that party should in fact be named as a defendant. Further, such an inappropriate interpretation would lead to inevitable conflicts with Federal Rule 11(b). It was only through conducting discovery after filing the complaint that the Commission obtained some of the key documents establishing Mr. Maihos' potential liability under the FTC Act. *See* Kaufman Decl. [Dkt. 55], Exs. 2 and 4.[3]

### B. The Fact that Mr. Maihos May be Liable For A Large Sum of Money Does Not Constitute "Prejudice."

Mr. Maihos argues that he will be prejudiced by the amended complaint because it "would expose Mr. Maihos to all of the potential restitution the FTC is seeking in this case, which it asserts is in the millions of dollars."[4] It is very well-established, however, that the mere fact that one may potentially be liable for millions of dollars does not constitute prejudice. "A party may hardly resist an amendment curing a defectively stated claim on the ground that it will

---

[2] Federal Rule 11(b) requires, *inter alia*, that pleadings submitted to the court are "warranted by existing law" and that factual contentions "have evidentiary support."

[3] Shortly before filing the Complaint, the Commission did obtain copies of some of the documents that support naming Mr. Maihos as a defendant, such as the facsimile from counsel for DMC to Mr. Maihos that attached a transcript of the Supreme Greens infomercial containing handwritten comments from DMC's attorney such as "sounds like BS," "need scientific support for this" and "the study says it worked for pigs.") *See* Kaufman Decl., Ex. 3. At that time, however, the Commission's immediate concern was filing its TRO papers and getting Defendants to stop airing the deceptive Supreme Greens infomercial, rather than assessing and investigating the potential liability of Mr. Maihos.

[4] Assessing whether there is prejudice is "the key consideration" in determining whether a "motion to amend is allowed." *Nasson v. Van Winkle*, Civ. No. 91-11823-WF, 1994 WL 175049, at *1 (D. Mass. April 19, 1994) (J. Wolf) (finding that seven month delay did not cause prejudice to defendants).

expose him to a possible liability." *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976). *See also Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 678 (S.D.N.Y. 1996) ("an increase in defendants' exposure is not grounds for denying leave to amend"); *Monaco v. Lincoln Savings Bank, FSB*, No. 92 Civ. 7942 (LLS), 1995 WL 66643, at *2 (S.D.N.Y. Feb. 17, 1995) ("A defendant's exposure to additional liability does not constitute prejudice sufficient to deny a motion to amend the complaint."); *Adair v. Hunt Int'l Resources Corp.*, 526 F. Supp. 736, 739-40 (N.D. Ill. 1981) (increased exposure to potential liability is not undue prejudice); *Chamberlin v. United Engineers and Constructors, Inc.*, 194 F. Supp. 647, 649 (E.D. Pa. 1961) ("A plaintiff is not precluded from amending a faulty complaint so that it states a claim upon which relief can be granted simply because by so amending, the defendant may thereby be subsequently made liable to plaintiff.").

Mr. Maihos provides no case law to the contrary.[5] Indeed, if Maihos' position were the law, any defendant in an FTC suit could allege "prejudice" and avoid prosecution. And by extension, the amending of any complaint to add new defendants would be prejudicial since it presumably exposes those new defendants to liability. Maihos' reliance on *Militano* is misplaced because the facts are so different that those present here. In *Militano*, the SEC sought not only to amend a complaint "five *years* after the commencement of the action" 1994 WL 558040, at *2 (emphasis added), but also to change its theory of legal liability from "aiding and abetting liability" to "controlling person." *See id.*, at *1. The SEC's proposed amendment would have increased the defendant's potential exposure; moreover, unlike the instant case, the SEC motion

---

[5] Mr. Maihos, of course, fails to mention that from 2002 to 2004, he received large sums of income and Subchapter S distributions form DMC and ITV.

4

to amend came not just five years after filing but also three weeks before the "firm trial date set for this matter." *See id.*, at *2. Such an extreme factual scenario has absolutely no relevance to the instant case, where discovery is still pending, no trial date has been set and only five months have elapsed since the filing of the complaint.

Accordingly, Mr. Maihos has not demonstrated that he would be unfairly prejudiced if the Court allows the Commission to amend its complaint.

### C.    The Cases Cited By Maihos Are Wholly Irrelevant

Mr. Maihos has cited a number of cases in which courts have denied motions to amend complaints. Much like the advertising claims for Supreme Greens, however, his descriptions of the cases are misleading and conspicuously omit key underlying facts that led to the denial of those motions. Once the egregious facts of these cases are understood, it is quite clear that the cited cases have no bearing whatsoever on the instant case.

In *Data General Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 340, 343 (D. Mass. 1993), plaintiff moved to "amend its complaint to add a new claim against a new party" *after* a full trial on the merits – a very significant fact that Mr. Maihos did not disclose to the Court. In *Larocca v. Borden, Inc.*, 276 F.3d 22, 32 (1st Cir. 2002), the Court denied a motion to amend a complaint that was filed "after discovery had been completed and after the court had issued an all-but-dispositive ruling on cross-motions for summary judgment," another fact omitted by Mr. Maihos. He also failed to tell the Court that in *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004), the motion to amend was filed "a week after the agreed date for the close of discovery" which caused the "liberal default rule" for motions to amend to be "replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)." Similarly, no

5

mention is made that in *Acosta-Mestre*, 156 F.3d at 52, the motion to amend was filed 15 months after the complaint was filed [more than a year after the first amendment,], after "nearly all the case's pre-trial work was complete" and that the amendment would have resulted in at least "an additional four months of discovery and would have delayed trial by at least an additional twelve months." *See also In re Stone & Webster, Inc.*, 217 F.R.D. 96 (D. Mass. 2003) (motion denied because plaintiff delayed in filing its motion until after motion to dismiss was granted).

Finally, Mr. Maihos cites *United States v. Building Inspector of America, Inc.*, 894 F. Supp. 507 (D. Mass 1995) for the proposition that there is insufficient evidence to find Mr. Maihos liable under the FTC Act. *Building Inspector*, however, was a summary judgment case, and the court merely held that there were material issues of fact as to the defendant's liability, not that the defendant was not individually liable or that he should not have been named in the complaint.[6]

### D.    Mr. Maihos' Recitation of the Facts Omits Key Facts

Mr. Maihos' opposition sets forth a lengthy discussion of the facts that led to the filing of the Commission's complaint. He left out one particularly important fact: After telling the Commission in December 2003 that they would no longer air the original Supreme Greens infomercial, DMC and ITV reverted back to the original version of the infomercial. This issue was fully briefed in the Commission's TRO papers and has since been confirmed through documents produced by Defendants. *See* Ex. A hereto (February 23, 2004 email from Donald Barrett sent to "All Managers" states that "We should now be using the original version Supreme

---

[6] The defendant at issue in *Building Inspector* was a 25% owner of the corporate defendant. Mr. Maihos is a 50% owner of the corporate defendants who would logically be better able to control the actions of the corporate defendants.

Greens (SGRN)").[7] Indeed, as the Court noted in its Preliminary Injunction, DMC's and ITV's "business operations are permeated by deceptive practices" and as discovery proceeds, this assessment is being confirmed. Indeed, we will confirm through discovery the role of Mr. Maihos and his attendant liability. The FTC should not be denied its ability to seek full relief against all potentially culpable parties.

## II. CONCLUSION

For all of the above stated reasons, the FTC respectfully requests that its motion should be granted and the Commission should be permitted to file and serve the First Amended Complaint.

Respectfully Submitted,

*[signature]*

DANIEL KAUFMAN
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-2675, -3126 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov, kyoung@ftc.gov or
eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF

Dated December 27, 2004

---

[7] A copy of this email was found in Mr. Maihos' electronic mail box. Several weeks ago, the Commission issued Requests for Admission to DMC and ITV in order to verify that Mr. Maihos was on the distribution list for "All Managers." The response is not yet due.

## CERTIFICATE OF SERVICE

My name is Daniel Kaufman and I am an attorney with Federal Trade Commission. On December 27, 2004, copies of Plaintiff the Federal Trade Commission's Reply Memorandum in Support of Plaintiff the Federal Trade Commission's Motion for Leave to Name Additional Defendant and Relief Defendants and to File First Amended Complaint were served via FEDEX as follows:

Becky V. Christensen, Esq.   (for Michael Howell, Greg Geremesz, Health Solutions, LLC,
Levin & O'Connor             Alejandro Guerrero and Health Solutions, Inc)
384 Forest Avenue, Suite 13
Laguna Beach, CA 92651
Facsimile: (949) 497-7679

Dustin F. Hecker             (for Michael Howell, Greg Geremesz, Health Solutions,
Posternak Blankstein & Lund LLP   LLC, Alejandro Guerrero and Health Solutions, Inc)
The Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-8004
Facsimile: (617) 722-4927

Peter Brooks, Esq.   (for Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald Barrett
Seyfarth Shaw, LLP    and non-party Robewrt Maihos)
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Facsimile: (617) 946-4801

Joseph Ryan (for Triad ML Marketing, Inc., King Media, Inc., and Allen Stern)
Lync, Woodworth & Evarts LLP
600 Atlantic Avenue
Boston, MA 02210

I declare under penalty of perjury that the foregoing is true and correct. Executed this December 27, 2004 at Washington, D.C.

_____
Daniel Kaufman

**Exhibit A**

**Chris Robertson**

| | | |
|---|---|---|
| **From:** | Bob Maihos | **Sent:** Thu 12/9/2004 5:59 PM |
| **To:** | Chris Robertson | |
| **Cc:** | | |
| **Subject:** | FW: | |
| **Attachments:** | | |

**From:** Donald Barrett
**Sent:** Mon 2/23/2004 10:48 PM
**To:** All Managers; Eileen Barrett; Kim York
**Cc:** 'scotts@idealhealth.com'; Sarah Calland
**Subject:**

I wrote this to keep everyone updated. We have many different shows running and many more in the pipeline.

## Supreme Greens

We should now be using the original version Supreme Greens (SGRN).

I have a brand new version we will be testing in April or the beginning of next qtr. This show was shot the same day as SGRN and has the same backdrop. We usually shoot two shows in one day and take the best out of both shows. Our SGRN show was only edited down from the 1st show we did that day. I personally believe the 2nd show we did that day was more powerful and has brand new powerful information that has not been released.

## Dr. Day Show

The last version we tested DDVT seemed not do as well as the original. So let's go with the original. We should soon be capturing orders from her website drday.com. Brian is in the process of creating an order form. When people go to the site they will be asked if they heard about Dr. Day on TV. They have to click Yes or No. When they click yes the will go to our website, which is almost an exact replication of her site, except the orders come to us.

We're also looking into giving people who order Dr Day's videos a FREE 30 sleep trial on these very popular mattress toppers. There are made out of this space aged memory foam and people love them. Dr Day talks so much about the importance of rest. It happens to be one of the ten steps in her program. These toppers are guaranteed to give people the most restful sleep they ever had.

We are also considering starting a video of the month club for $14.99. Since Dr. Day has so many videos I think it may add tremendous value. Now that the show is proven and is pulling the great calls our job now turns towards maximizing those calls. Very exciting!!!

**Femerex**

First test did poorly. My feeling was the editing job was poor and could use some improvement.

I plan on spending the time while I'm in Florida to re edit the show.

We plan on testing Femerex only on target networks like WE, LIFETIME, B&F, OXYGEN. We will re test the last two week in March.

The re-edited show should be done by March 10 and will be ready to send to station. If stations need a viewing copy,

Please send the current show. We will also be cutting a 60 second and a 2minute adds for Femerex.

So when buying on these stations please ask for 1 and 2minute avails also.

The script we used seem to have some success With most buyers taking the 3+1 offer. Brian is also adding Femerex to our Database so we don't have to take orders by hand. We also plan on putting a backend brochure, on Femerex to enclose with all orders we ship. There are only two ways we offer this product currently the first is a 1month supply for $39.99. The second is to buy 3 @ $39.99 and get one bottle free. There is no autoship available thru ITV for Femerex.

**Custom Essentials (Dr. McCallen)**

This show will be testing this week. The quality of the show looks great. As with all tests originally we will be testing calls per thousand. The script during the test should be kept simple. If the test proves successful we will work upsells strategies to increase revenue per sale. The Priva Test will sell for $79.99. Custom essentials retails @ $55.95 which we give an ITV discount to $44.75. Brian will have to build that fields in the database for capturing the age and sex of the customer ordering the Priva test. I'm not sure if ITV or Ideal Health will be processing the cards whatever is easier. Let cross our fingers and count those calls.

### Custom Essentials ( Dr. Horiwitz)

Still in editing. Test schedule to follow finished show. Master and View copies to be in Beverly ASAP.

### Uro Caps (Mel)

View tape and master are on the way to Beverly from UIX. I would like to test both versions the same weekend. Let's plan on testing the weekend of March 6th and 7th

### Uro Caps (Donald)

Still in editing. Master and View copies to be in Beverly ASAP.

### Seratonin Plus & The Seratonin Diet

Be on your toes for the next big one. I believe this diet will explode across the country in the next two years.

It's been called the feel good diet because Seratonin Plus was originally designed for Depression and anxiety. Drugs like

Zoloft, Prozac, Paxil are all based on increasing seratonin levels which seratonin plus does naturally. Unlike those drugs

the only side effects they found with seratonin plus was weight loss.

This show will be filmed this Thursday Febuary 26th. I mention this now because we have to be prepared for diet season,

which runs from now until at least May. After shooting on Thursday the rush is on to TEST in March.

## Future shows in the works

Business Opportunity for Ideal Health

Digestive Enzymes    Ron Schneider

Cholesterol Formula by Dr. DeSilva