26. In determining what claims an advertisement makes, trial courts, as finders of fact, may draw reasonable inferences and make factual determinations as to both the express claims and the implied claims that are conveyed by the face of an advertisement. *See FTC v. Febre*, 1996 WL 396117 at *4 (N.D. Ill. July 3, 1996) (magistrate judge recommendation), *adopted by* 1996 WL 556957 (N.D. Ill. Sept. 27, 1996), *aff'd* 128 F.3d 530 (7th Cir. 1997). *See also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 652 (1985); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1043 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001).

27. As demonstrated by the infomercial excerpts above, and despite the use of infrequent and/or inconspicuous disclaimers, DMC, ITV and Barrett have made the claims that a) Sea Vegg can prevent or treat serious degenerative diseases, including cancer, arthritis, diabetes and fibromyalgia, and promote weight loss or weight gain as desired; and b) Renuva can stimulate the body's production of HGH and thereby provide benefits that include increased energy, and improved memory, skin and hair quality, and overall health. These claims are not supported by reliable scientific evidence.

28. Although a modification of the preliminary injunction does not require a showing that the Defendants are violating the FTC Act, it appears that the dissemination of the Sea Vegg and Renuva infomercials do violate Sections 5 and 12 of the FTC Act. To prevail under Sections 5(a) and 12, the FTC must demonstrate that "first, there is a representation, omission, or practice that second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994), *citing Cliffdale Associates, Inc.*, 103 F.T.C. 110, 164-65 (1984); *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). *See* Preliminary Injunction at 10-11.

29. This Court has authority to modify the terms of its preliminary injunction based

upon a consideration of: a) the events precipitating the request; and b) the purpose of the preliminary injunction. *See FTC v. Austin Galleries of Illinois, Inc.*, 1989-2 Trade Cas. ¶ 68, 340 at 59,920 (N.D. Ill. Oct. 24. 1988) ("[I]n deciding whether to grant the FTC's motion for modification of the injunction, we will consider the events that prompted its motion and will tailor our decision to protecting the public with the least disruption possible to defendants' business."); *B.R.G. Autoland Jeep-Eagle, Inc. v. Chrysler Credit Corp.*, 799 F. Supp. 1250, 1258 (D. Mass. 1992) (Nelson, J.) ( The court has "'complete power over interlocutory orders made therein and should be able to revise them when it is 'consonant with equity' to do so.'") (quoting 7 James W. Moore, *Moore's Federal Practice*, ¶ 60.15[4], pp. 60-124 - 60-125 (2d ed. 1992). *See also Movie Systems, Inc. v. MAD Minneapolis Audio Distributors*, 717 F.2d. 427, 430 (8th Cir. 1983); *Loudner v. United States*, 200 F. Supp.2d 1146, 1148 (D.S.D. 2002); *Basic Research, L.L.C. v. Cytodyne Technologies, Inc.*, No. 2:99-CV-343K, 2000 WL 33363261 *11 (D. Utah Dec. 20, 2000).

30.   There are four primary events that precipitated the FTC's request for this order modification: 1) DMC, ITV and Barrett started producing and/or airing four new infomercials for ingestible products, at least two of which make claims that appear to be either false or unsubstantiated; 2) Defendants continue to air infomercials that use a misleading talk-show format; 3) Defendants failed to ensure that their sales representatives comply with the Preliminary Injunction by providing the required disclosures to consumers before signing them up for continuity packages; and 4) Defendants have allowed distributors to establish websites for their products that make similar disease claims, and are actively seeking to expand these distributor networks.

31.   The primary purposes of the Preliminary Injunction entered against Barrett, ITV

and DMC were to prevent Defendants from harming consumers by disseminating false and deceptive advertising, enrolling consumers in continuity plans without their informed consent and engaging in other deceptive practices. The Preliminary Injunction has not been successful at preventing harm to consumers – as demonstrated by the four primary events discussed above – and the Commission has demonstrated that a modification of the preliminary injunction is appropriate and necessary under the circumstances.

32. There is good cause to believe that harm to consumers will continue from DMC, ITV and Barrett's actions unless these defendants are enjoined by further order of this Court.

33 Despite Barrett's assurance to the Court that he had no plans to advertise ingestibles, he has nevertheless done just that, and is advertising these products in a manner that evidences a disregard for the law. Advertising claims must be truthful and supported by reliable scientific evidence. As discussed herein, the claims made for at least two of those products are not.

34. As demonstrated by the findings of fact above and Barrett's failure to ensure that his companies cease disseminating false advertising, good cause exists for appointing a receiver over corporate defendants DMC and ITV in order to stop the false advertising practices and protect the purposes that underlie the Preliminary Injunction. Further, Mr. Barrett's lack of candor in his signed affidavits further supports the strong need to appoint a receiver and remove him from his position. *See, e.g., SEC v. S&P National Corp.*, 427 F.2d 190, 198 (Court of Appeals reverses district court's decision to not appoint receiver where "it is obvious, as here, that those who have inflicted serious detriment in the past must be ousted."); *SEC v. Bowler*, 360 F.2d 741 (2d Cir. 1966) ("[T]he primary purpose of the appointment [of a receiver] was promptly to install a responsible officer of the court who could bring the companies into compliance with

the law, 'ascertain the true state of affairs . . . and report thereon' to the court and public shareholders and preserve the corporate assets.").

35.     The appointment of a receiver is a well-established equitable remedy available to the FTC in law enforcement actions for injunctive relief. *See, e.g., FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431 (11th Cir. 1984); *see also FTC v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 533-34 (S.D.N.Y. 2000) (permanent injunction, ordering receiver to wind up the business affairs of corporate defendants); *FTC v. Seasilver USA, Inc.,* CV-S-03-0676-RLH(LRL) (D. Nev.) (appointing a temporary receiver in case involving dietary supplement product where receiver continued to operate business during pendency of receivership).

36.     Although the appointment of a receiver is an intrusive remedy; it is less intrusive than the other remedies the Court could consider to provide comparable protection to consumers and stop Defendants from spending corporate assets to air deceptive infomercials, which would be an absolute ban on any advertising of health benefits for any product, a ban on infomercials using the potentially deceptive talk-show format, and a prohibition on the enrollment of any new consumers onto continuity plans

It is hereby ordered that:

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

1.      "DMC" means Direct Marketing Concepts, Inc., d/b/a/ "Today's Health" and "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 100 Cummings Center, Suite 139F, Beverly, MA 01915.

2.      "ITV" means ITV Direct, Inc., d/b/a "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 100 Cummings Center, Suite 506E, Beverly,

19

MA.

3.  "Barrett" means Donald W. Barrett, individually and as an officer and director of DMC, and as an officer and director of ITV.

4.  "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

5.  "Receivership Defendants" means, collectively, DMC and ITV, and their respective subsidiaries, divisions, affiliates, successors, and assigns; and "Receivership Defendant" means any of the Receivership Defendants;

6.  "Defendants" shall mean DMC, ITV, and Barrett, individually or collectively.

## APPOINTMENT OF RECEIVER

### I.

**IT IS FURTHER ORDERED** that _____ is hereby appointed Receiver, with the full power of an equity receiver, for the Receivership Defendants. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as receiver under this Order. The receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules of this Court governing receivers. The Receiver has the directions and authority to:

  A.  Assume full control of the Receivership Defendants and all power of the Receivership Defendants' directors, officers, and managers, and remove

        defendants Donald W. Barrett, Robert Maihos, and any other officer, independent contractor, employee, attorney, or agent of the Receivership Defendants, from control or management of, or participation in, the affairs of the Receivership Defendants as the Receiver deems necessary and advisable;

B. Take immediate and exclusive custody, control, and possession of all properties, premises, assets, and documents of, in the possession of, or under the control of, any Receivership Defendant, wherever situated, including, but not limited, to 100 Cummings Center, Beverly, MA, 01915 and 20 Oakpoint Ext., Saugus, MA 01906. The Receiver shall have full power to divert mail and to sue for, collect, receive, and take possession of:

    1. all assets and documents of the Receivership Defendants and members of the public whose interests are now held by or are under the direction, possession, custody, or control of any Receivership Defendant; and

    2. all sums of money now or hereafter due and owing to any Receivership Defendant. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

C. Perform all acts necessary to conserve, hold, manage, and preserve the value of all such assets;

D. Hold, preserve, and administer the business of the Receivership Defendants until further order of this Court, with full authority to perform all acts necessary or incidental thereto, including retaining, hiring, or dismissing any employees,

independent contractors, or agents;

E. Take such actions and enter into such agreements in connection with the administration of the Receivership Defendants as the Receiver deems necessary;

F. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors, and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

G. Make payments and disbursements from the receivership estate that the Receiver deems necessary to secure or preserve the Receivership Defendants' assets or to carry out the Receiver's mandate under this Order;

H. Institute, prosecute and defend, compromise, intervene in, or become party to such actions or proceedings in state, federal, or foreign court that the Receiver deems necessary to collect, recover, protect, maintain, or preserve the value of the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order;

I. Defend, compromise, or otherwise dispose of any actions or proceedings instituted against the Receiver in his role as receiver or the Receivership Defendants, whether now pending or hereinafter filed, that the Receiver deems necessary to preserve the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order;

J. Take all steps the Receiver deems necessary to secure the business premises of the Receivership Defendants, including, but not limited to:

    1. completing a written inventory of all receivership assets;

    2.    obtaining pertinent information from all employees and other agents of the Receivership Defendants, such as the name, home address, social security number, job description, method of compensation, accrued and unpaid commission and compensation of each employee or agent;

    3.    changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or

    4.    requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and to demonstrate to the Receiver's satisfaction that such persons are not removing from the premises any of the Receivership Defendants' documents or assets;

K.    Obtain, by presentation of this Order, tangible and intangible assets as well as information in the custody or control of any person, firm, or entity sufficient to identify the accounts, employees, properties, or other assets or obligations of the Receivership Defendants;

L.    Issue subpoenas to obtain documents pertaining to the receivership, conduct discovery in this action on behalf of the receivership estate, attend any deposition noticed by any party to this action, and ask any question of any deponent which, in the Receiver's opinion, is pertinent to the receivership estate;

M.    Allow representatives of the Commission and the Defendants reasonable access to inspect the Receivership Defendants' books, records, accounts, premises, and other property, wherever located;

N.  Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

O.  Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate; and

P.  Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.

**COMPENSATION FOR RECEIVER**

**II.**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including but not limited to attorneys retained by the Receiver, shall be entitled to reasonable compensation for the services they render to the receivership estate and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the

Court and serve on the parties periodic requests for payment, outlining the services rendered and the related fees and expenses, with the first such request filed no more than sixty (60) days after the entry of this Order and payment of such fees and costs to be made upon Court approval. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## RECEIVER'S BOND AND HOLD HARMLESS PROVISION

### III.

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of _____ with sureties to be approved by the Court, conditioned that the receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. Without limiting any other rights or immunities the Receiver may have at law or in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of him in his capacity as the receiver of DMC and ITV, so long as such acts and omissions are made in good faith, without gross negligence, and in a manner that the Receiver believes is in the best interests of the receivership. The Receiver shall not be personally liable for the debts of DMC, ITV, or its receivership.

## DELIVERY OF RECEIVERSHIP PROPERTY

### IV.

**IT IS FURTHER ORDERED** that:

A.  DMC and ITV and any other person (including but not limited to Robert Maihos and anyone related to Barrett by marriage or otherwise) or entity who receives

25

actual notice of this Order by personal service or otherwise, including by facsimile, shall immediately deliver or transfer possession, custody, and control of the following to the Receiver:

1. All assets of the Receivership Defendants;

2. All documents and records relating to the assets of the Receivership Defendants, including, but not limited to, financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), distributor lists, and title documents;

3. All keys, lock combinations, passwords, or codes required to open, gain access to, or secure any of the Receivership Defendants' assets or documents, including, but not limited to, access to their business premises, computer systems or files, telephone or other communication systems, and bank accounts; and

4. Information identifying the assets, employees, or obligations of the Receivership Defendants.

B. In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Part, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)), or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the receiver.

## COOPERATION WITH THE RECEIVER

### V.

**IT IS FURTHER ORDERED** that Defendants, and their agents, servants, employees, and attorneys, and all persons or entities directly or indirectly under the control of any of them, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, and each such person, shall cooperate fully with and assist the Receiver. Such cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files in any medium; or advising all persons who owe money to any of the Receivership Defendants (other than customers) that all debts should be paid directly to the Receiver. All Defendants are hereby enjoined from directly or indirectly:

    a.    Transacting any of the business of the Receivership Defendants, or transacting business under the names DMC, ITV, Today's Health, Direct Fulfillment, or any substantially similar names;

    b.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of any of the Receivership Defendants, including, but not limited to, books, records, accounts, or any other papers of any kind or nature;

    c.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, any of the Receivership Defendants, or the Receiver;

d. Excusing debts owed to any Receivership Defendant;

e. Failing to notify the Receiver of any asset, including accounts, of any Receivership Defendant held in the name of any Receivership Defendant or in any name other than the name of any Receivership Defendant, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; or

f. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of any Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## TRANSFER OF FUNDS TO THE RECEIVER

## VI.

**IT IS FURTHER ORDERED** that, upon receiving actual notice of this Order by personal service or otherwise, including by facsimile, all banks, broker-dealers, savings and loan associations, escrow agents, title companies, commodity trading companies, and other financial institutions shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his direction and producing records related to the assets of any of the Receivership Defendants.

## DISTRIBUTION OF ORDER BY DEFENDANTS

## VII.

**IT IS FURTHER ORDERED** that the Defendants shall immediately provide a copy of this Order to each affiliate, partner, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, fulfillment house, call center, and representative of the Defendants, and within ten (10) calendar days following service of this Order by the Commission, shall provide the Commission with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons and entities that the Defendants have served with a copy of this Order in compliance with this provision.

## SERVICE OF THIS ORDER BY PLAINTIFF

## VIII.

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Mail, by agents and employees of the Commission or any state or federal law enforcement agency, on (1) the Defendants, (2) any financial or brokerage institution, entity or person that holds, controls, or maintains custody of any account or asset of the Defendants, or (3) any other person or entity that may be subject to any provision of this Order. Service upon any branch or office of any entity shall effect service upon the entire entity.

**SO ORDERED,** this ___ day of _____, 2005, at ___.m.



UNITED STATES DISTRICT JUDGE
GEORGE O'TOOLE

29

Presented by:

_____
DANIEL KAUFMAN
KIAL S. YOUNG  (BBO # 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW
NJ-3212
Washington, DC  20580
(202) 326-2675, - 3126 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov or eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF