UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

DIRECT MARKETING CONCEPTS, INC, et al,

        Defendants

CIVIL ACTION NO. 04-CV 11136GAO

## AFFIDAVIT OF MICHAEL SCIUCCO

I Michael Sciucco, under oath declare as follows:

1. I am a member in good standing of the Massachusetts Bar and General Counsel of Direct Marketing Concepts, Inc. and ITV Direct, Inc. (collectively "ITV") I have read the Federal Trade Commissions motion to modify the Preliminary Injunction entered on June 23, 2004 and have personal knowledge of the facts contained herein.

2. I have been employed by the company since October 17, 2002. I was promoted to Legal Counsel in June 2004 and General Counsel in April 2005. I was hired by Donald Barrett as counsel for the company to specifically address a number of the issues that had been raised by the Federal Trade Commission in 2003 and 2004 concerning ITV's production and promotion of infomercials, as well as to address issues concerning the operations of ITV's sales force.

3. My duties as General Counsel include working with all of the department managers in order to ensure compliance with the Telemarketing Sales Rule, the Federal

Trade Commission Act, the Dietary Supplement Health and Education Act and other relevant local and Federal laws.

4. Since June of 2004 I have been responsible for reviewing and editing sales scripts, marketing materials, direct response advertisements ("infomercials") and substantiation for any products marketed by ITV to the public.

5. On June 1, 2004, I was provided a copy of the FTC's complaint in this action, which alleges a number of practices that the FTC claims are in violation of law. On June 23, 2004, I was provided a copy of the Preliminary Injunction Order entered by the Court in this case.

6. In accordance with the requirements of the Preliminary Injunction Order, I personally distributed a copy of the order to every then-current employee, distributor and agent of ITV.

**INFOMERCIALS**

7. With respect to the products marketed in the infomercials produced by ITV, I work with our Vice President of Development Jason Bernabei.

8. I request substantiation and competent and reliable scientific evidence to support any possible claims about a particular product. If no such evidence exists then we will not move forward with that product.

9. In connection with any infomercial that is produced by ITV, I personally supervise production and advise the Company regarding the claims in the infomercial, format and related compliance issues.

10. Specifically, in accordance with the Court's Preliminary Injunction Order, each and every infomercial produced by ITV or associated with ITV must carry the

specific disclaimer language set forth in Section III of the Court's Order. That Section requires that ITV disclose "within the first thirty seconds of the commercial and immediately before each presentation of ordering information for the product, program or service, the following disclosure: 'THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM OR SERVICE].'" I have personally assured that these disclaimers are included with each infomercial, and I do not understand the FTC to be asserting that ITV has violated this provision of the Court's Order, which was designed to address the FTC's original "deceptive format" claim. In fact, the disclaimers that ITV puts into its infomercials *exceed* the Court's requirements, because ITV places both a written *and* verbal disclaimer, both before *and* after the infomercial. Thus, there is typically at least five or six different circumstances where consumers are notified that the infomercial is a paid advertisement.

11. As an example of ITV's aggressive compliance efforts, shortly after the Court's Order was issued, the FTC notified ITV that it believed it should include one additional disclaimer with an infomercial the Company was then running. Prior to receiving the letter from the FTC, ITV under my direction, immediately edited the subject infomercial and added the additional disclaimer. In addition we have additional voice and written disclaimers in the beginning and at the close of the show, which is not required by the Court's Order.

12. At no time prior to the filing of its present motion did the FTC contact me or any other representative of ITV to indicate that any aspect of any ITV infomercial was problematic or violated any provision of the Court's Order or FTC laws or regulations. The first time I or any ITV employee had any indication that the FTC believed there were

problems with any current ITV infomercial was a phone call from our outside counsel and receipt of the present motion.

13. During the period from June 2004 through November 2004, ITV produced over 15 infomercials for non-ingestible products and the focus of its business was on these products. ITV was in discussions with major electronics suppliers, motivational companies, financial services concerns and other entities. In addition, ITV's most significant infomercial during this period was a series of books and tapes by a medical doctor, and not an ingestible product in the exact same format as RegenaLife, Sea Vegg, Dr. Day Home Juice Bar and Aquasana. While it is true that ITV was still receiving many proposals from companies and individuals seeking to sell ingestible products, it was ITV's business plan during this period to market other products.

### I.   RENUVA

14. The Renuva infomercial was not produced by ITV and is owned by Anti-Aging-Formulas, LLC ("AAF"), a company located in California. On or about October 15, 2004, we entered into a business relationship with AAF in which ITV processes orders, answers the telephone, purchases media, fulfills orders and other related tasks.

15. Before we began this campaign I requested that AAF provide me with substantiation for the claims made in the infomercial. In response to my request, AAF provided me with hundreds pages of scientific documentation. This information included competent and reliable scientific data comprised of a combination of controlled clinical studies, scholarly journals, articles, research papers, consumer surveys and other materials. AAF also informed me that they had retained independent legal counsel in Washington, D.C. to evaluate the claims in the infomercial and the substantiation

provided to ITV. Based upon our detailed review of these materials, and the representation that counsel had reviewed the infomercial, we believed that there existed a reasonable basis for the infomercial's claims concerning the benefits of HGH and the ingredients of the Renuva product line. (Exhibit 1)

16. Even though ITV did not produce the infomercial and our production equipment was not compatible with the format of the Renuva infomercial we added additional disclaimers like the FDA disclaimer, and disclosures about the consumer testimonials.

17. On January 28, 2004 the National Advertising Review Council, in conjunction with the Electronic Retailers Self-Regulatory Program ("ERSP"), sent AAF an inquiry about the Renuva Infomercial. (Exhibit 2) This self regulatory program began in August of 2004 and the FTC played a significant role in developing its rules and regulations.

18. With my assistance, AAF participated in the self regulatory program. (See Exhibit's 3-7) AAF provided ERSP with their substantiation and related materials. ERSP recognized that there was in fact a plethora of documentation relating to HGH and the ingredients of the Renuva product line. Upon completion of the process, ERSP made certain recommendations about the infomercial. Although AAF disagreed with the findings of the ERSP, both AAF and ITV made the decision to pull the infomercial from the airwaves in an effort to comply with ERSP.

19. To my knowledge, no new media has been purchased for the Renuva infomercial. In my opinion, this voluntary process demonstrates ITV's commitment to compliance with all applicable regulations and laws, as well as the Court's prior Order.

The FTC has publicly stated that it supports the ERSP and encourages companies to participate. Nonetheless, the FTC never inquired of ITV regarding its participation in this program prior to filing its present motion alleging that ITV's compliance systems are deficient.

## II.   SEA VEGG

20.   In June 2004, Scott Kennedy approached several employees of ITV in an effort to secure a company to produce an infomercial for him about the dietary benefits of seaweed. In light of the present litigation and ITV's decision to produce infomercials in areas other than ingestible products, Mr. Kennedy's proposal was initially rejected by ITV.

21.   Later in 2004, Mr. Kennedy again approached ITV about producing an infomercial for seaweed. Although the product was intriguing and seemed to have promise, ITV again turned Mr. Kennedy down.

22.   Once again in 2004, Mr. Kennedy approached ITV and asserted that he had a wealth of scientific data and studies on the benefits of seaweed, and could substantiate his claims about seaweed. Although ITV rejected Mr. Kennedy again, the Company did indicate that if he could provide competent and reliable scientific evidence as he represented, the Company might consider producing a show with him. In response to this overture, he provided us with several binders of substantiation about the benefits of sea vegetation. These binders included dozens of clinical studies, publications and research, which all appeared to support his claims.

23.   In addition to reviewing the information provided by Mr. Kennedy, I personally researched the benefits of sea vegetation and concluded that there is a

significant amount of data within the scientific community that sea vegetation has significant health benefits. Coupled with my review of Mr. Kennedy's substantiation we decided to produce the infomercial in late November of 2004. (See <u>Exhibits</u> 8,9,10,11) At the time we produced the infomercial, however, no decision had been made as to whether ITV would ever actually air the show.

24. I was present on set the day the infomercial was shot and actively participated in the production of the finished infomercial.

25. I also worked with Luke Goljan, ITV's producer, in editing the infomercial and ensuring that we clearly and prominently displayed all of the disclaimers required by this Court in its June 23, 2004 Preliminary Injunction Order. We also added additional disclaimers at the end of the infomercial, as well as voice and print disclaimers both before and after the show clearly stating that the infomercial was a paid advertisement.

26. We painstakingly edited and modified the infomercial in order to ensure that no claims were made that were not supported by competent and reliable scientific evidence that we had reviewed prior to filming the infomercial.

27. In addition to carefully editing the infomercial, we added the following disclaimer (the "FDA Disclaimer") both before and after the infomercial: "THESE STATEMENTS HAVE NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE, OR PREVENT ANY DISEASE."

28. This disclaimer appears in the beginning of the infomercial and the end of the infomercial in print form with an additional voiceover reading the script.

29. In order to further inform the consumer, Donald Barrett also states in the infomercial: "the only thing in this country, according to the FDA, that can treat, prevent, or cure a disease is a drug." These disclaimers and Mr. Barrett's comments in the infomercial were requested and added at my direction to comply with the FTC and other relevant laws and regulations. I have reviewed these regulations in detail and attended several FTC compliance seminars in an effort to assure ITV's compliance with these laws and regulations.

30. Upon completion of the infomercial, I also sought a second opinion from our outside counsel before distributing the infomercial on a larger scale than simply a test market. I have reviewed the version submitted by the FTC with its motion and to the best of my knowledge, this version ran only in a very limited test market and is no longer running anywhere in the United States.

31. In my opinion, based upon the review of the scientific literature provided by Scott Kennedy and my own independent research, ITV has a reasonable basis, supported by competent and reliable scientific data, to make claims about the dietary and health benefits of sea vegetation.

32. The Sea Vegg infomercial has been running since January 2005. During the period from February to the present, the FTC has never informed ITV that the disclaimers in the Sea Vegg infomercial are not sufficient or in compliance with this Court's Preliminary Injunction Order. In addition, the FTC never contacted ITV to express any concerns whatsoever regarding the content of the infomercial.

33. On March 30, 2005, ERSP inquired about the Sea Vegg infomercial.

34.     I have responded with our substantiation and an explanation of such. (See Exhibits 12,13,14,15)

35.     Although the process has not been completed, ERSP has recognized and informed me that ITV has a significant amount of competent and reliable scientific data supporting the health benefits of seaweed.

36.     Prior to filing the present motion, the FTC never requested any substantiation for the claims made about the benefits of seaweed compiled by ITV prior to running the infomercial. When the FTC notified us that they intended to file the present motion and support that motion with allegations about Sea Vegg and Renuva, we offered to provide the FTC this scientific information, as well as our correspondence with ERSP for both Renuva and Sea Vegg. Rather than review this information before filing its motion, the FTC responded that such information would not be relevant to the FTC's decision to file the present motion seeking a receiver.

### III. AQUASANA

37.     In December of 2004 ITV produced an infomercial for the Aquasana filtration system. Aquasana is not an ingestible product.

38.     I reviewed the content of the infomercial and assured that all disclaimers and disclosures required by the FTC and this Court's order were included.

39.     I reviewed documentation directly from the Environmental Protection Agency's website citing the toxic chemicals in our water supply.

40.     I also compiled roughly one thousand pages of documentation relating to health risks and contaminants in the United States water supply. (See Exhibits 16,17)

Based upon this review, I believed that ITV had competent and reliable scientific evidence for the representations in the infomercial.

### IV. DR. DAY'S HOME JUICE BAR

41. In November of 2004 ITV produced an infomercial for all natural organic products that are promoted by Dr. Lorraine Day.

42. I have reviewed documentation provided by Dr. Day which speaks to the benefits of consuming fruits and vegetables. (See Exhibit 18) I believe this documentation supports the statements in the infomercial.

43. Dr. Day's message is very simple and supported by the United States Government: eat more fruits and vegetables, exercise, reduce alcohol intake, and your risk of disease will be substantially decreased.

44. In addition to the disclaimers required by the Preliminary Injunction, Donald Barrett orally states the FDA Disclaimer twice during the infomercial.

45. This infomercial is running on a limited basis.

### V. REGENALIFE

46. In December of 2004 we produced two infomercials for Alena, LLC.

47. ITV does not own either infomercial.

48. One infomercial was for a product called RegenaLife. This infomercial contains all required disclaimers and disclosures, including an FDA Disclaimer both before and after the infomercial.

49. The principals of Alena provided ITV with thousands of pages of documentation substantiating the benefits of the ingredients of the RegenaLife product. (See Exhibits 19,20) I reviewed these materials in connection with the production of the

infomercial, read the transcript of the infomercial and requested additional information from Jason Berabei, which was promptly provided by Alena. ITV is no longer airing the Regenalife infomercial.

**SALES SUPERVISION AND CONTINUITY**

50. The FTC claims that ITV has failed to supervise its sales staff and paints a picture of a "free for all" in the ITV sales room. This assertion could not be further from the truth.

51. When this court entered the Preliminary Injunction order on June 23, 2004 and required that the Order be distributed to all employees, I accompanied each copy of the Preliminary Injunction with a letter stressing the importance of future compliance by all ITV employees. (See Exhibit 21)

52. In addition, I personally have worked with the sales managers on a daily basis to ensure compliance. As part of this effort, I review and edit all sales scripts and accompanying literature before it is disseminated to the sales staff. (See Exhibit 22{Auto-Ship Script}) I also regularly monitor the sales floor to oversee both the sales managers and the sales staff to ensure compliance. It is ITV's clearly stated policy to require notice and customers consent to all continuity orders before any customer's credit card is charged. This policy is regularly communicated to each and every sales employee.

53. After several months of monitoring our sales process, on December 19, 2004 I officially implemented a policy to review contract genie recordings in order to ensure compliance with the Preliminary Injunction and FTC regulations. Over time, this policy has continued to evolve. We now seek to review every phone call that has been

recorded. We also notify each salesperson that we will be monitoring calls and inform them that violations of policy will not be tolerated.

54. Since December 19, 2004 we also have created an independent quality control department that randomly audits sales recordings. This department audits as many as several hundred calls per day in order to ensure compliance.

55. I receive a copy of the daily audit reports. If these audits disclose evidence of possible violations of policy, it is my job to follow up on the audit and determine if violations have occurred. If so, the sales representative is sanctioned appropriately.

56. On February 18, 2004, I held two mandatory training sessions with the sales staff, discussing this litigation, the FTC laws and regulations and all aspects of required compliance protocols in the direct response industry.

57. In that training I disseminated the Direct Marketing Associations Guidelines for Ethical Business Practices as it applies to our business. (See Exhibit 23)

58. ITV employs just under 200 employees. As part of my compliance responsibilities, and with support of ITV's management, I openly recognize and reward superior compliance with ITV's policies, as well as identifying and reprimanding violations, all in an effort to ensure compliance.

59. Based on the extraordinary efforts that ITV has undertaken in the area of compliance, I believe the FTC's accusation that our sales oversight is lax, and that ITV has not attempted to "clean up" is sales force and sales practices is without any genuine factual basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of June, 2005 in Beverly, Massachusetts.

*/s/ Michael Sciucco*
MICHAEL SCIUCCO