## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,        ) | |
|        ) | |
|     Plaintiff,       ) | |
|        ) | |
| v.        ) | CIVIL ACTION NO. 04-CV-11136GAO |
|        ) | |
| DIRECT MARKETING CONCEPTS, INC., et ) al.,        ) | |
|        ) | |
|     Defendants.       ) | |
|        ) | |
|        ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR A MODIFICATION OF THE JUNE 23, 2004 PRELIMINARY INJUNCTION AS TO DEFENDANTS DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC. AND DONALD W. BARRETT

DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., AND DONALD W. BARRETT

By their attorneys,

Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Telecopier:  (617) 946-4801

**DEFENDANTS' OPPOSITION TO PLAINTIFF FEDERAL TRADE
COMMISSION'S MOTION FOR A MODIFICATION OF THE JUNE 23, 2004
PRELIMINARY INJUNCTION AS TO DEFENDANTS DIRECT MARKETING
CONCEPTS, INC., ITV DIRECT, INC. AND DONALD W. BARRETT**

Defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV Direct"),

and Donald W. Barrett ("Barrett") (collectively "DMC Defendants"), submit this opposition to

the Motion of the Federal Trade Commission ("FTC" or "Plaintiff") to modify the Court's June

23, 2004 Preliminary Injunction as to the DMC Defendants.  For the reasons set forth below, the

FTC has failed to show that there are any exigent circumstances entitling them to the drastic

relief that they seek, and their motion must be denied.

## PRELIMINARY STATEMENT

On June 23, 2004, this Court, after extensive briefing and argument, entered a

Preliminary Injunction against the DMC Defendants that enjoined the DMC Defendants from

engaging in certain limited activities and required the DMC Defendants to take certain

prospective affirmative actions with regard to their business.  Since that time, the DMC

Defendants have met or exceeded every requirement of the Court's prior Order, ceasing the

airing of any of the subject infomercials, allowing the FTC unfettered access to DMC's facilities

for several days in 2004, preparing and providing the certified accounting report ordered by the

Court, providing monthly financial data regarding the expenses incurred by the DMC

Defendants, and hiring additional in-house legal and compliance personnel to assure that the

DMC Defendant's advertising and sales practices meet each and every requirement imposed by

the Court, the FTC Act and FTC regulations.  Tellingly, the FTC does not dispute that the DMC

Defendants have met these requirements or implemented these controls.

The Preliminary Injunction entered by the Court departed in significant ways from the

order proposed by the FTC.  Most importantly, the order proposed by the FTC would have

instituted a receiver and would have effectively shut down DMC's operations, putting hundreds

of Massachusetts-based employees out of work. This the Court refused to do. Nonetheless,

based upon an incomplete record that tells only half the story, the FTC now moves for the relief

it did not obtain previously, seeking again to appoint a receiver and effectively shut down

DMC's operations. Although it is seeking this extreme remedy a second time, prior to filing the

present motion the FTC did not once notify the DMC Defendants that it had any continuing

concerns regarding any of its current infomercials or sales representatives. Likewise, the FTC

did not contend, because it could not, that the DMC Defendants were violating any specific

provision of the Court's prior order. Had the FTC raised such concerns, the DMC Defendants

would have discussed the matter with the FTC, and corrected any problems to the extent they

existed.

    More troubling than the FTC's silence in advance of the motion, however, is the

misleading "evidence" submitted by the FTC in support of the motion. For example, based on

DMC's sales records alone, it is clear that the FTC's "investigator" ordered at least *seven*

different products from the DMC Defendants over the last several months, and possibly more. In

addition to these actual completed orders, it does not seem a stretch to assume that the FTC

investigators have been anonymously calling the DMC Defendants' sales floor on a regular basis

for the last year, maybe as much as once a week. If so, then there likely have been dozens of

such calls made in an effort to "catch" the DMC sales representatives engaged in conduct the

FTC deems improper. However, in connection with the present motion only three calls are

submitted to the Court and discussed by the FTC. Of these three calls, two of them appear to

meet the requirements of the Court's order by obtaining consent from the caller before any

charges are assessed. Nonetheless, these calls are submitted by the FTC as "evidence" of a some

2

pattern of improper behavior.  To the contrary this record demonstrates how seriously the DMC Defendants take compliance and assuring that all customer orders are handled properly.

Based upon its review of the credit card information submitted by the FTC, the DMC Defendants also have been able to trace the exact orders placed by the FTC's investigator.  As to each and every one of these orders, the FTC investigator was provided a complete refund upon request, notwithstanding that no refund authorization was obtained.  These refunds, which were made without any documentation whatsoever on the part of the customer, demonstrate conclusively that the FTC's arguments about alleged "harm" to consumers are built upon a nonexistent foundation.  This is amply demonstrated by the complete lack of a single customer complaint in connection with the motion.  Based upon conduct that it claims – but cannot prove – is occurring on a "widespread" basis, the FTC has raced into this Court claiming that there is an emergency necessitating immediate action to prevent irreparable harm, including the extreme relief of the appointment of a receiver that will effectively shut down the DMC Defendants' business.  There is simply no evidence of any fraudulent conduct on the part of the DMC Defendants warranting the drastic relief sought by the FTC.

Moreover, there is a substantial triable issue of fact as to whether the infomercials cited by the FTC are misleading and violative of the FTC Act, as the FTC alludes but does not actually allege.  First, contrary to the allegations made by the FTC, the infomercials do not promote any product as a treatment or cure for any disease.  Second, as demonstrated by the wealth of detailed scientific studies and testimony submitted in connection with the DMC Defendants' opposition, including the affidavits of several Ph.D.s, industry experts and a medical doctor, the claims that are made in the infomercials about the health benefits of the advertised products are supported by a wealth of competent and reliable scientific evidence.  Certainly, the DMC Defendants

3

possessed a reasonable basis for these claims before they were ever made publicly.  For example, even one of the FTC's own experts admits that seaweed and sea vegetation has been shown to substantially increase health, and may prevent certain forms of cancer.  Certainly, this striking admission by the FTC's own expert demonstrates that there are substantial triable issues in connection with the FTC's claim that there is no reasonable basis for the DMC Defendants' belief that the infomercial is substantiated.  Finally, the infomercials are accompanied by clear and prominently placed disclaimers stating that the products have not been evaluated by the FDA and are not being sold as a treatment or cure for any disease.  In its second overzealous attempt to shut down the operations of the DMC Defendants and put 200 employees out of work, the FTC has failed to even consider these disclaimers, which address the issues previously raised by the Court and meet the requirements of the Court's detailed Preliminary Injunction.  In seeking the extreme remedy of a receiver, the FTC cannot ignore the impact of these disclaimers (as well as the specific content of the infomercials themselves) in evaluating whether the infomercials are actually misleading to consumers.   Nonetheless, the FTC has simply rejected these infomercials outright, ignoring settled constitutional law that requires an analysis of disclaimers in connection with advertising that even admittedly is inherently misleading.

In short, since this Court entered its Preliminary Injunction in June 2004, the DMC Defendants have undertaken extraordinary efforts to ensure that its infomercials and business practices conform to the requirements imposed by the Court and do not run afoul of FTC law and regulations.  Far from demonstrating otherwise, the FTC's evidence makes clear that the DMC Defendants' efforts are working.  Tellingly, the FTC has not submitted *a single actual consumer complaint* in support of its motion.  Rather, the FTC's evidence is comprised of its own agents' misleading testimony and expert submissions that support rather than undermine the health

benefits of the products that are the subject of the relevant advertising.  The FTC has no basis for

its claims that emergency relief is necessary in this case, and its motion for the appointment of a

receiver must be denied.

### I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

DMC and ITV Direct, located in Beverly, Massachusetts, are media and marketing

companies that collectively employ approximately 200 individuals in Massachusetts.  (Barrett

Aff. at 2; Maihos Aff.).  DMC's and ITV Direct's business includes the production of

infomercials, in which an individual or company is provided the opportunity to discuss an

existing product to a larger audience through wider media, including television and radio.

Neither DMC nor ITV themselves manufacture any products.  Id.

On June 1, 2004, the FTC filed this action against DMC, ITV Direct and Barrett, among a

number of other defendants, alleging that two infomercials produced by DMC and ITV, both

featuring third parties and their products, were misleading.  The FTC also filed a motion for a

temporary restraining order, asset freeze and appointment of a receiver, arguing that they had

uncovered evidence that the DMC Defendants were diverting assets.  In support of the FTC's

motion, the FTC submitted several affidavits from disgruntled former DMC and ITV employees

that were demonstrated by the DMC Defendants to be less than credible.  In addition, in response

to the FTC's motion, the DMC Defendants submitted evidence that it financial and business

controls and compliance measures were far more stringent than asserted by the FTC.  The DMC

Defendants also confirmed that they would cooperate fully with the FTC, provide whatever

disclosures the Court deemed necessary, and would no longer run the infomercials that were the

basis for the FTC's complaint.

On June 23, 2004, after the Court heard argument on the FTC's motion and the parties

agreed to submit the motion on the affidavits and briefing previously provided, the Court issued

BO1 15719082.1

a Preliminary Injunction. The Preliminary Injunction included a number of affirmative obligations for the DMC Defendants, including the preparation and provision of a written certified accounting report to the Court, the distribution of the Court's order to all of DMC's and ITV's employees and agents, the provision of monthly financial information to the FTC, the preparation and provision of financial statements to the FTC, and the maintenance of records. The Court's order also provided the FTC with access to the DMC's and ITV's facilities in Beverly, Massachusetts. In addition, the Court ordered that the DMC Defendants inform customers regarding any continuity sales and obtain the customer's consent before charging the customer under this program. Finally, the Court required that all future infomercials produced or distributed by the DMC Defendants contain certain specific disclaimers noting that the infomercial was a paid advertisement. The requirements regarding disclaimers were in direct response to the FTC's claim that the infomercial's format might be deceptive to consumers.

As to each of the obligations outlined above, the DMC Defendants have complied with the Court's Order. Within the time frame provided, the DMC Defendants submitted the required audited report and provided the FTC with detailed financial statements. In addition, the FTC has been provided monthly financial information relating to all expenses in excess of the amounts stated in the Court's Order. The DMC Defendants also distributed the Court's Order to all employees and agents, and regularly inform new employees of the requirements and details of the Order. The DMC Defendants have also maintained all documents as required by the Order, and opened its offices to the FTC investigators for several days during 2004. As a result of this audit, thousands of documents were produced to the FTC at the Staff's request. (Sciucco Aff., passim).

6

In addition to meeting these requirements, DMC and ITV have taken significant steps to improve compliance and assure that all sales practices and interactions with customers meet the highest ethical and business standards. Specifically, since 2004 DMC and ITV have hired a new in-house legal counsel to oversee all legal and compliance aspects of the sales process, improved the effectiveness of its Contract Genie, which records all customer calls in which a continuity order is received, hired a dedicated compliance supervisor on its sales floor to review these recordings and monitor sales calls, improved communication of the company's strict policies regarding the continuity program, and increased discipline for those that violate the policy. (Sciucco Aff. ¶¶ 52, 57). It is DMC's and ITV's clearly stated policy to require all sales personnel to disclose to customers the terms of any of their programs, including the auto ship program, fully and clearly. (Ribaudo Aff., ¶ 19; J. Maihos Aff., ¶¶ 30-31.) It is also ITV Direct's stated policy to fully disclose, both orally and in written materials, its return policy and the right for a customer to receive a refund at any time. (Ribaudo Aff., ¶ 22.) If a sales representative is discovered violating these policies, it is the company's policy to discipline the employee, including termination if warranted. (Id.; Ratcliffe Aff. ¶¶6-10.)

In addition, through its in-house legal counsel, the DMC Defendants have ensured that all of its infomercials meet, if not exceed, the requirements of the Court's Preliminary Injunction addressing the Court's concern that ITV's talk show format might be deceptive without adequate disclaimers. (Sciucco Aff., passim) Specifically, all of the infomercials produced by or aired by ITV contain all of the disclaimers required by the Court's Order. In addition to these required disclaimers, the infomercials also contain additional disclaimers in large bold font making clear that the program is a paid advertisement. These disclaimers are provided both orally and in writing several times throughout the advertisement. (Goljan Aff. ¶¶ 12, 13, 39, 41, 43, 44).

7

At the time the FTC filed its motion in June 2004, the DMC Defendants had determined to focus the company on infomercials advertising non-ingestible products.  (Barrett Aff., ¶ 6). Consistent with this determination, ITV produced at least fifteen infomercials for non-ingestible products over the next several months, and its most significant infomercial – involving a medical doctor discussing her views on healthier living and the benefits of nature and a belief in the power of God – did not involve an ingestible product.  (Id.)  This infomercial is in the exact same format as three of the four infomercials that the FTC now challenges; however, the FTC fails to inform the Court that they never contended that the "format" of this show was somehow misleading.  ITV also discussed a number of proposals with large electronics, financial services and motivational companies regarding possible future programs.  In part because of the present litigation and the press releases issued by the FTC, many of these proposals were never finalized. In addition, because of the FTC's press releases and persistent efforts to contact ITV's clients, vendors, merchant accounts, business partners and other entities and discourage them from doing business with DMC and ITV, the FTC has already sought for months to accomplish what it could not though the judicial process, putting DMC and ITV out of business.[1]  (Barrett Aff. ¶ 8).

Although ITV had determined to focus on infomercials for non-ingestible products, numerous proposals continued to be submitted by third parties for various dietary supplements. ITV repeatedly rejected the majority of these proposals, because they were not accompanied by sufficient scientific support.  With the assistance of its in-house counsel, ITV made clear to third parties that they must provide specific scientific support for any claims made about the product, before the product would be considered for an infomercial.  (Sciucco Aff. ¶ 8).

---

[1] For example, subsequent to the filing of this action and Preliminary Injunction entered by the Court, two of the DMC Defendants' merchant accounts were shut down, and customer orders were no longer processed for any products.  Based upon information obtained in discovery, these notifications came only after the accounts were contacted by the FTC.

After several months of running infomercials for products other than dietary supplements, and after rejecting a number of proposals several times, ITV began to review some of the detailed scientific support submitted by certain dietary supplement manufacturers in connection with their proposals.  As to many of these products, the scientific support was substantial.  For example, as demonstrated by the affidavits submitted herewith from leading doctors and researchers in the field of marine nutrition, a significant number of journals, studies and papers had been written about the health benefits of seaweed and sea vegetation.  (Sciucco Aff. ¶ 23).  Similar authority existed for the other programs being considered by ITV, including the Renuva program produced in a different format by an unrelated California company.  In addition, in connection with the Renuva program, the producer informed ITV that it had consulted with its own outside attorney at a large Washington, D.C. law firm and had the show reviewed for content.  In light of these representations, ITV agreed to serve as a "call center" for the show, taking calls and processing orders, but not itself purchasing any media or selling any product.  After a period of time, as the show ran in wider release and there appeared to be substantial scientific support for the claims in the show, ITV took on a more active role.  (Sciucco Aff. ¶ 15).

As to the program featuring Scott Kennedy and his claims regarding the nutritional benefits of seaweed and sea vegetation, ITV initially was very skeptical concerning Mr. Kennedy's claims.  Because of this skepticism, his proposal to have ITV produce a show discussing seaweed and sea vegetation was considered and rejected a number of times.  Nonetheless, he persisted in his effort to have a show produced by ITV and provided more and more substantiation, including medical and research experts, as well as a wealth of scientific literature.  ITV also conducted its own independent research concerning sea vegetation and

9

seaweed, and confirmed virtually all of the citations and literature provided by Mr. Kennedy.

Without question, seaweed and sea vegetation have significant health benefits, and the scientific

and medical literature is in accord with this conclusion.  Only after reviewing this wealth of

scientific  literature and medical information did ITV determine to tape an infomercial featuring

Mr. Kennedy.  (Sciucco Aff. ¶ 23).

        In filming and producing the infomercial, ITV's counsel was present at all times to

review this process.  In addition, all of the disclaimers required by the FTC and this Court's

Order were placed throughout the infomercial to make clear that it was a paid advertisement.

ITV also included an FDA disclaimer both orally and in writing at the beginning and at the end

of the show that made clear that the advertised product was not intended to treat, cure or

diagnose any disease.  Subsequent to filming, the edited infomercial was further edited by in-

house counsel and reviewed by outside counsel to further assure that no misleading curative or

similar claims were made.  Only after all of these steps were taken was the infomercial

distributed in wide release.  Although the FTC has identified an early version of the infomercial,

it has not placed before the Court the edited version that is currently running, which is the

product of several additional edits for compliance.  (Sciucco Aff., ¶¶ 20-36).

        Each of ITV's other infomercials, particularly those advertising any dietary supplement,

are required to undergo a similar stringent process of review, as to content, claims, disclaimers

and scientific support.  Each and every infomercial produced by ITV or associated with ITV has

at least two separate oral and written FDA disclaimers, and has the required disclaimers

identifying the infomercial as a paid advertisement.  (Goljan Aff., passim).  In addition to the

significant steps taken by ITV to assure compliance with the FTC laws and regulations, as well

as this Court's prior Order, ITV has also agreed on several occasions voluntarily to participate in

10

the National Advertising Review Council's Electronic Retailers Self-Regulatory Program ("ERSP"), a program established in conjunction with and with the support of the FTC. As part of this program, ITV has provided the NARC with a wealth of scientific and medical substantiation for its programs. (Sciucco Aff., ¶¶ 17-19, 33, 35). This information has been reviewed in detail and comments have been issued. ITV has responded to the NARC accordingly.

Moreover, contrary to the FTC's concerns regarding the DMC Defendants' finances, the DMC Defendants still possess complete and accurate financial information regarding the operations of DMC and ITV Direct and they have not destroyed or altered any financial or other documents. (Callahan Aff., ¶¶ 3-4). DMC and ITV have responded to a myriad of requests from the FTC regarding its financial condition and have exceeded the requirements of the Court's Order on a number of occasions. (Id.) Once again, the DMC Defendants are prepared to provide financial statements in whatever form the FTC deems appropriate, as they have already done on two previous occasions. The DMC Defendants do not have any secret or offshore bank accounts, have not engaged in any fraudulent transfers, and continue to operate the business in the ordinary course, as required by the Court's Order. (Id.) DMC and ITV Direct have maintained accurate and complete financial records of their business transactions since their inception in 2001. All of their bank business transactions have been properly recorded in their financial records, including all payments to employees and principals, whether salaries or distributions. (Id.) Since June 23, 2004, all transactions in excess of $5,000 have been reported to the FTC, as required by this Court's order. No company could open itself up as DMC and ITV have done for the FTC over the last year. Nonetheless, the FTC, without any evidence that

the controls put in place by the Court are being violated, now seeks to inject a receiver into the business, with the mandate and power to shut the companies down.[2]

## II.    LEGAL ARGUMENT

"[T]he appointment of a receiver is an extraordinary remedy, which should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interest in the property." Lugosch v. Congel, 2001 WL 1217213, at *7 (N.D.N.Y. Aug. 30, 2001), quoting Republic of Philippines v. New York Land Co., 852 F.2d 33, 36 (2d Cir. 1988). See FTC v. Crescent Pub. Group, Inc., 129 F. Supp. 2d 311, 326 (S.D.N.Y. 2001) (appointment of a receiver is an "extraordinary" and "draconian" remedy to be employed only "when no lesser form of relief would be effective"). A plaintiff seeking a receiver must demonstrate "extreme circumstances" to justify appointment. Miller v. Fisco, Inc., 376 F. Supp. 468, 472 (E.D. Pa. 1974). This requires the plaintiff to "make a clear showing that appointment is necessary to prevent irreparable injury." People v. Financial Serv. Network, USA, 930 F. Supp. 865, 871 (W.D.N.Y. 1996) (denying appointment of receiver).

Here, the FTC has fallen far short of making a clear showing sufficient to warrant the extreme remedy it seeks. The FTC has failed to demonstrate that the Court's prior Order has been insufficient to accomplish the goals identified by the Court in connection with this case. The FTC admits that it has no evidence of any dissipation of assets in violation of the Court's

---

[2] Although the FTC argues that its proposed receivership order is the "least restrictive" measure, a plain reading of the order proposed by the FTC demonstrates that the receiver would effectively shut the company down. Under the order, the DMC Defendants' entire operation would be in the control of the receiver, an insolvency accountant proposed by the FTC. This accountant is the same accountant proposed by the FTC a year ago in connection with its motion for an asset freeze, and his clear mandate is to remove the companies' management, remove counsel, collect assets and freeze payments. The proposed receiver has no experience in sales, media or the infomercial business, and would act in no role other than winding up the affairs of the business, which is his stated expertise. In fact, the only case cited by the FTC in support of its argument that the proposed receiver would have a limited role demonstrates that an FTC receiver's true role is to simply wind up the affairs of the company. See FTC v. Seasilver USA, Inc., CV-S-03-0676-RLH(LRL) (receiver's powers are to "run the business" only so long as needed to wind up its affairs).

prior Order, nor can it show that the DMC Defendants have violated any of the specific mechanisms established by the Court to protect the FTC's interests during the pendency of this matter.  Because the FTC's proposed "modification" of the prior preliminary injunction is in effect the issuance of a new preliminary injunction, it must demonstrate some new irreparable harm that it contends the Court's prior order is insufficient to protect.  See FTC v. Enforma Natural Prods., Inc., 362 F.3d 1204, 1218 (9th Cir. 2004) (modification of injunction must be supported by specific findings of fact and conclusions of law); FTC v. Freeman Hosp., 69 F.3d 260, 267 (8th Cir. 1995) (upholding district court's denial of preliminary injunction where FTC failed to meet its burden); FTC v. Simeon Management Corp., 532 F.2d 708 (9th Cir. 1976) (upholding district court's denial of preliminary injunction where FTC was unlikely to establish falsity of advertising and equities weighed against granting injunction).

Where the FTC seeks to appoint a receiver that will take over management of an operating business, courts may also require the FTC to establish that the balance of the equities and the public interest favor granting that relief.  FTC v. Evans Prod. Co., 775 F.2d 1084, 1088-1089 (9th Cir. 1985).  Courts have recognized that a company's ability to continue its business is a factor that can tip the balance of the equities against a receiver.  Id. at 1089; FTC v. Crescent Pub. Group, Inc., 129 F. Supp. 2d at 326 (S.D.N.Y. 2001) (court denied FTC's motion for receiver, recognizing that profits earned during the pendency of litigation may create a fund from which the corporate defendants may pay any liability).   Because such relief is extraordinary and essentially shuts down the business of a defendant based on incomplete evidence, before a trial or the determination of any liability, courts should carefully assess the FTC's overall evidence to determine if it has met its burden.  See Evans Product Co., 775 F.2d 1084.  In this case, the FTC has not made a strong showing that Court's prior order is insufficient to protect against

13

irreparable injury, and the balance of hardships do not tip in its favor.  The FTC fails to meet the standard for this Court to award such extreme relief.

## A.     <u>THE REQUESTED EMERGENCY RELIEF IS NOT WARRANTED.</u>

The FTC's claim that there is an emergency warranting such extraordinary relief as an appointment of a receiver without an evidentiary hearing is predicated on an evidentiary record that is misleading and fails to inform the Court of facts that undermine the FTC's theory.  In its zeal to rectify what it clearly viewed as an injustice in connection with its original motion for a receiver, the FTC has misrepresented and selectively disclosed certain facts, while ignoring important considerations entirely.   Specifically, while the FTC asserts that there are continuing problems with the DMC Defendants' business practices, the actual evidence, including the evidence submitted by the FTC itself, paints quite a different picture.

### 1.     <u>The Evidence Does Not Warrant The Requested Extreme Measures.</u>

As reflected in the numerous affidavits submitted in opposition to the FTC's motion, the DMC Defendants have undertaken extraordinary efforts in the last year to improve their business practices and comply with all aspects of the Court's prior Preliminary Injunction.  The DMC Defendants have hired additional legal and compliance personnel, have provided additional training to all sales personnel and customer service representatives, and have improved the monitoring and discipline of employees for violations of policies.[3]  Moreover, contrary to the implication of the FTC, the DMC Defendants have continued to provide cancellations and refunds to customers without question, and have always placed its treatment of customers and customer satisfaction as its highest priority.  (Ratcliffe Aff. ¶ 11).  The FTC has not provided any

---

[3] The FTC also argues that the DMC Defendants are responsible for alleged claims made by third party distributors. The DMC Defendants do not have any control over these third parties.  In addition, the FTC has provided no evidence that before filing the present motion they contacted these distributors themselves to raise issues with the content of their websites, nor did they ask the DMC Defendants to contact these distributors to request changes.

14

evidence to the contrary.  For example, while claiming that consumers are being harmed, the FTC has failed to provide a single customer complaint that it received claiming that a cancellation or refund was not immediately and voluntarily provided.

Moreover, the FTC's "evidence" of alleged problems on the sales floor is insufficient to demonstrate any widespread problems with the continuity program.  The FTC does not dispute that all employees are educated about the correct procedures for informing customers regarding the continuity program, nor does the FTC provide evidence that the sales personnel are not monitored to assure compliance.  Rather, the FTC has provided a few random examples of sales calls that they claim did not exactly match the FTC's concept of perfection.  In asserting this claim, however, the FTC does not inform the Court that the FTC's investigator called the sales floor at least seven times over the last year and ordered product, and likely called the sales floor dozens of additional times where no product was ordered but the call was nonetheless recorded.  Of these dozens of calls, the FTC has identified just three calls that it claims are problematic.  Of the three calls actually identified, a close review of the transcripts of these calls demonstrates that even these calls provided disclosure of the continuity program, and in two of the instances, the FTC investigator confirmed the order after this disclosure.  This record is woefully deficient to warrant the extreme and draconian relief sought by the FTC, and in fact shows that the Court's prior Order has been taken very seriously by the DMC Defendants and is accomplishing its stated goals.

## 2.      The Cited Infomercials Comply With The Court's Order

In seeking to establish a basis for the extreme measure of appointing a receiver, the FTC argues that several infomercials produced by the DMC Defendants are misleading because they are presented in a "deceptive format."  The FTC argues that this format was previously cited by

the Court as one concern in connection with its issuance of the Preliminary Injunction on June 23, 2004.  The FTC, however, ignores the fact that the Court did not cite simply the format of the show as deceptive.  Rather, the Court noted that the format, *without adequate disclaimers*, could potentially be deceptive to consumers.  In noting this concern, the Court then specifically addressed this issue in the June 23, 2004 Preliminary Injunction, by requiring specific disclaimers at certain times and for certain durations in each and every infomercial produced by the DMC Defendants.  Subsequent to the Court's Order, the DMC Defendants have actually *exceeded* these required disclaimers, by placing them both before and after the program with voice overs, as well as throughout the program as required by the Court.  Tellingly, the FTC does not argue that the disclaimers do not comply with the Court's Order.  Rather, the FTC ignores the disclaimer issue altogether, concluding that even compliance with the Court's order is insufficient to address its belief that the infomercials are still somehow "deceptive."

As noted in opposing the FTC's original motion, any injunctive relief ordered by a Court must have a "reasonable relation to the unlawful practices found to exist."  Standard Oil Co. v. FTC, 577 F.2d 653, 662 (9th Cir. 1978) (citing FTC v. Colgate-Palmolive Co., 380 U.S. 374, 394-5 (1965).  The FTC's request for the appointment of a receiver was and remains an "extraordinary remedy, to be employed cautiously and usually when no lesser relief would be effective."  Crescent Pub. Group, 129 F. Supp. 2d at 326.  Such measures have been called "draconian," as they effectively put a defendant out of business.  Id.  Thus, on a preliminary injunction motion, "the Court should not grant relief beyond what is needed."  Id.  As the Court has already determined, there are less restrictive measures that will protect the public interest while the parties engage in discovery and this case is tried, measures that the DMC Defendants

16

have voluntarily implemented and have complied with for over a year.  See Crescent Pub. Group, 129 F. Supp. 2d at 326.

These less restrictive measures are even more appropriate where, as here, constitutional freedom of speech considerations are involved.  See, e.g., In re R.M.J., 455 U.S. 191, 203 (1982) ("the remedy [for potentially misleading advertising] in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation"); Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985)(warnings or disclaimers might be more appropriate to dissipate possibility of consumer confusion rather than flat prohibitions on speech).  It is well-established that "[t]he First Amendment does not permit a remedy broader than that which is necessary to prevent deception . . . or correct the effects of past deception."[4] National Comm'n on Egg Nutrition v. FTC, 570 F.2d 157, 164 (7th Cir. 1977); see also Standard Oil Co., 577 F.2d at 662 ("First Amendment considerations dictate that the Commission exercise restraint in formulating remedial orders which may amount to a prior restraint on protected commercial speech.")  Thus, in this case, the FTC has failed to demonstrate that the draconian remedy of a receiver is justified – particularly in light of the lack of any competent evidence to support their claims.

**3.    The Drastic Relief The FTC Seeks Will Prevent The DMC Defendants From Obtaining Assets Which Could Satisfy Potential Consumer Redress.**

Over the last year, the DMC Defendants have run profitable business operations unrelated to the infomercials that are the subject of the underlying action.  This business includes non-ingestible products as well as scientifically supported dietary supplements, advertised with

---

[4] The First Amendment considerations are particularly acute in this case, where the FTC proposes to institute an accountant as receiver, who will apparently have the unilateral ability to determine what speech is "appropriate" and which speech does not meet with the FTC's subjective approval.  The constitutional problems with this approach are obvious, and this argument appears to be simply an effort by the FTC to mask its true aim, which is to shut the companies down altogether.

numerous disclaimers making clear that they are not being promoted as a treatment or cure for any disease.[5]  The FTC's requested relief would essentially put the DMC Defendants out of business and prevent them from earning a profit that could be available for consumer redress should the DMC Defendants be found to have any liability.

Importantly, despite claiming in its present motion that it views these new infomercials as deceptive, the FTC never once contacted the DMC Defendants to raise any concerns about these infomercials before rushing into Court with the present motion.  Had the FTC done so, the DMC Defendants would have provided the FTC with the wealth of scientific support that was reviewed and considered before agreeing to produce these shows, as well as confirmation that the shows had been reviewed by counsel for content and disclaimers to address any concerns about FTC compliance.  FTC v. Garvey, 383 F.3d 891, 902 (9th Cir. 2004) (FTC failed to show that defendant lacked evidence and information presenting a scientific basis for the claims made in the advertising).   This evidence, which is submitted in connection with this opposition, would have demonstrated that the DMC Defendants had more than a reasonable belief that competent and reliable scientific evidence existed in connection with each infomercial, as required by the FTC own rules and regulations.[6]  The FTC also would have been advised that the DMC Defendants agreed to voluntarily participate in the ERSP, a compliance program initiated and supported in conjunction with the FTC.  Not surprisingly, the FTC's own experts agree in large

---

[5] In addition, the FTC recognizes that the DMC Defendants do not themselves make any claims about any of the subject products.  Rather, the claims are solely those of the guest on the show.  See FTC v. Garvey, 383 F.3d 891, 901-903 (9th Cir. 2004) (recognizing distinction between the person actually making the claim and participants).  Even so, before participating in this advertising, the DMC defendants acquired a wealth of scientific support.  Id. (refusing to impose liability where defendant had documented support for the alleged claims).

[6] The FTC's own guidelines for dietary supplement advertising make clear that all that is required is a "reasonable basis" to make certain claims, supported by competent and reliable scientific evidence.  See Dietary Supplements: An Advertising Guide for Industry, (the Guide can be found on the FTC's website at http://www.ftc.gov/bcp/conline/pubs/buspubs/dietsupp.htm#llb.)

18

part with many of the health benefits of seaweed and sea vegetation.  Moreover, he FTC does not

argue – because it cannot – that the DMC Defendants have not included all of the disclaimers

required by the Court and the FTC laws and regulations.  Rather than discuss these matters with

the DMC Defendants, the FTC simply filed the present motion without any prior notice or

warning.

      For all of these reasons, the appointment of a receiver, which will be fatal to the DMC

Defendants' business, is completely unnecessary in order to address the issues raised by the FTC

in the present motion.  The restrictive measures already imposed by the Court, with which the

DMC Defendants have complied and will continue to comply, are entirely sufficient.

**B.**      **THE FTC HAS NOT DEMONSTRATED THE**
      **MERITS OF ITS CLAIMS AGAINST THE DMC DEFENDANTS**

      As is often the case with government regulators, they assert that their view is correct

simply by the fact that they say so.[7]  Contrary to this view, however, there continue to be

significant triable issues of fact as to whether the DMC Defendants will have any liability for the

FTC's claims.  FTC v. Enforma Natural Prods., Inc., 362 F.3d at 1208 (reversing district court's

grant of injunction where FTC misapplied its own standard and a genuine dispute existed as to

the substantiation for the product).  First, the allegedly false and misleading health claims in the

challenged infomercials (if any claims are made at all) are the expressed opinions of other

individuals and were not made by the DMC Defendants.  FTC v. Garvey, 383 F.3d at 901-903

(recognizing distinctions between maker of statements and participants).  Nonetheless, the

opinions that were expressed in these infomercials, even if they were made by the DMC

---

[7] As recognized in FTC v. Garvey, 383 F.3d at 901, the FTC carries "the burden of proving that the express or
implied message conveyed by the advertising in question was actually false."  See Enforma, 362 F.3d at 1217 n. 14;
FTC v. Publishers Clearing House, Inc., 104 F.3d 1168, 1170 (9th Cir. 1997) (burden of proving falsity or deception
is upon the FTC).

Defendants, are protected by the First Amendment.  In any event, to further address the concerns previously raised by the FTC and the Court, the DMC Defendants, in an effort to confirm that they possessed a reasonable basis to make the claims in the infomercials as required by FTC guidelines, obtained a wealth of scientific literature to support the products advertised.  FTC v. Garvey, 383 F.3d at 902 (FTC failed to show that defendant lacked reasonable basis for advertising).  The DMC Defendants also included numerous disclaimers in these infomercials to inform consumers that the infomercial was a paid advertisement, as well as disclaimers as to any implied health claims that may or may not relate to the products.  According to settled law, the FTC is required to consider these disclaimers, which it failed to do, as they can render even scientifically controversial advertisements lawful.  Because the FTC continues to ignore its own regulations regarding a reasonable basis and the import of disclaimers, it has not demonstrated that it will be able to establish that the infomercials are in fact deceptive.  Based on these significant issues, which cannot be determined as a matter of law prior to trial, the FTC is not entitled to the extraordinary relief it seeks without an evidentiary hearing or finding as to the merits of its claims.

> ### 1.    The FTC's Assertion That The DMC Defendants Lack Scientific Substantiation Is Incorrect

The FTC's assertion that the DMC Defendants lack scientific substantiation in connection with the subject infomercials is incorrect and unsupported.  As set forth in the numerous expert affidavits submitted by the DMC Defendants herewith,[8] the FTC's arguments regarding and alleged lack of substantiation are significantly flawed and vigorously challenged

---

[8] See Affidavits of Frank I. Greenway, M.D., Jane Teas, Ph.D, Ronald J. Amen, Ph.D., Christine A. Maggs, Ph.D. and Larry Haase, and supporting materials attached thereto.

by other experts in the relevant fields.[9]  Moreover, the FTC's own experts admit that there is

significant debate regarding these issues, and conclusions might vary based upon the existing

research.  The Court need not answer the question now.  See FTC v. Enforma Natural Prods.,

Inc., 362 F.3d at 1208 (reversing grant of injunction where there were "genuine disputes" about

the scientific requirements underlying the substantiation claims, and the FTC's own expert

admitted to certain benefits of the product).[10]  Rather, this evidence makes clear that it would be

a manifest injustice at this stage to impose the extreme remedy of a receiver in this case based

solely upon heavily disputed assertions by the FTC and the FTC's alleged experts.[11]  Id.  Rather,

because of the genuine dispute over these issues, the proper forum for the resolution of this

debate is at trial, upon a properly developed record.  In essence, the FTC is asking this Court to

conclude definitively on a preliminary record that the substantiation does not exist and the DMC

defendants had no reasonable belief that the substantiation did exist.  The evidence submitted in

opposition makes clear that this request should be denied.

---

[9] In advancing its arguments regarding the DMC Defendants' alleged lack of substantiation, the FTC relies entirely on the affidavit testimony of two experts.  As the expert affidavits submitted by the DMC Defendants make clear, the opinions of the FTC's experts are far from settled and appear to be built upon a less than complete record.  In fact, Dr. Teas directly refutes several conclusions of Dr. Skibola, and questions her interpretation of certain scientific abstracts.  Whether ultimately the FTC's experts or the DMC Defendants' experts are correct, the simple fact is that this is a triable issue that undermines entirely the FTC's arguments that they have demonstrated that they are entitled to the extreme remedy of a receiver.

[10] As here, in the Enforma case the FTC took a very aggressive view of what was required for "substantiation" that exceeded the FTC's own guidelines.  The FTC maintained that only "double-blind, placebo-controlled clinical testing" could provide the required substantiation.  The Ninth Circuit rejected the FTC's position, holding that the proper test was "tests, analysis, research, studies or other evidence based on the expertise of professionals in the relevant area."  362 F.3d at 1208.  Noting that the FTC's own expert, as here, had recognized the benefits of the subject products, the Ninth Circuit reversed the district court's sweeping rejection of the defendants' scientific evidence.  Id. at 1217.

[11] Unlike the present motion, the Enforma case involved an allegation of contempt of the Court's prior order, due to the FTC's contention that the defendants' infomercials lacked scientific substantiation.  A similar motion has not been brought in this case, because it is clear that the Court's order is limited to products with the same formulation as Supreme Greens.  See June 23, 2004 Preliminary Injunction.  Thus, the FTC's motion is built upon even less of a foundation than in Enforma, in which the Ninth Circuit strongly disagreed with the district court's sweeping rejection of the defendants' experts and substantiation.

2.    **The Expressions of Opinion Are Protected by the First Amendment.**

Although the FTC presents its arguments concerning the DMC Defendants' infomercials as unassailable, there is a significant triable issue of fact as to whether the DMC Defendants have any liability for the expressions of opinion of another defendant. It is firmly established that the First Amendment protects commercial speech. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976). This is based on the principle that "such speech serves individual and societal interests in assuring informed and reliable decision making." Standard Oil Co., 577 F.2d at 662 (citations omitted). The government does not have complete power to suppress or regulate commercial speech, even if it deems such speech controversial. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 562 (1980). Thus, administrative agencies may not simply pursue rigorous enforcement to the extent of discouraging advertising. Standard Oil Co., 577 F.2d at 662.

In this case, the infomercials in question are protected commercial speech, which invites the viewers to consider the nutritional value of certain products for the overall health of an individual. The views expressed on the infomercial are that of the show's guests, who are required by the DMC Defendants to demonstrate to them that they have compiled significant scientific support for the benefits they discuss. The infomercials produced by ITV are not scripted; rather, Mr. Barrett simply poses questions to the guest and elicits responses based upon their studies and research. The DMC Defendants themselves make no claims about any specific product in the infomercials. Moreover, as attested to by the expert affidavits submitted herewith, the infomercials themselves do not make any actual curative claims. Nonetheless, the DMC Defendants require that the guest provide a substantial amount of scientific support and literature about the products and the product's ingredients, including medical studies, before they will

22

agree to air the show.  In each case, these materials are well documented and maintained by the

DMC Defendants.  All of these materials have been submitted in connection with this opposition.

Given the First Amendment protections on commercial speech, the FTC does not have

the right to halt all advertising by the DMC Defendants and shut down its business where it has

not demonstrated that the DMC Defendants made any false or deceptive claims to consumers.

There is a triable issue as to whether, in light of the First Amendment concerns, the FTC has any

basis for requesting the relief it seeks against the mere producer of an infomercial, who has

received a significant level of scientific support supplied in connection with the infomercials the

FTC now challenges.[12]  In any event, First Amendment considerations will not permit a remedy

broader than necessary, such as appointing a receiver that will effectively shut down the

operations of the business of the DMC Defendants.  <u>National Comm'n on Egg Nutrition</u>, 570

F.2d at 164; <u>Standard Oil Co.</u>, 577 F.2d at 662.  The extreme relief sought by the FTC must be

denied.

3.    **The FTC's Sweeping Rejection of the DMC Defendants'
       <u>Advertising Is Unconstitutional and Fails to Consider Disclaimers.</u>**

There is also a significant triable issue of fact as to whether the FTC can meet its prima

facie case and demonstrate that the claims made in the DMC Defendants' infomercials are false

or deceptive.  As required the Court's prior Order after consideration of this issue, the DMC

Defendants have included disclaimers throughout the infomercials regarding the claims made

about the products.  In order to establish a violation of Section 5 of the FTCA, the FTC must

---

[12] The FTC's approach in this motion is at best unusual.  Rather than seeking to amend its complaint to address directly these recent infomercials on the merits, they are instead using these infomercials indirectly to achieve relief that they originally were denied.  One conclusion from this approach is that the DMC Defendants' efforts to obtain significant scientific support for the infomercials, combined with the additional disclaimers provided in the infomercials themselves, render the issue of liability for these infomercials as far from clear.  <u>See Enforma</u>, 362 F.3d at 1217 (recognizing genuine dispute as to liability where there was competing expert testimony).  Because of these concerns, the FTC is apparently seeking to obtain indirectly what it fears it could not obtain directly.  The Court should reject this approach, particularly given the extreme remedy sought by the FTC.

23

demonstrate that the representations of the DMC Defendants would mislead consumers acting reasonably under the circumstances.  15 U.S.C. §§ 45, 52; see, e.g.,  FTC v. Marketing Response Group, Inc., 1996 WL 420865 (M.D. Fla.).  The FTC failed to offer any evidence to show that consumers were actually misled by the claims in the DMC Defendants' infomercials or that the infomercials were false and deceptive in light of these disclaimers specifically discussed and ordered by this Court in its June 23, 2004 Order.

In fact, the FTC seems to ignore the fact that, consistent with this Court's prior Order, the DMC Defendants include disclaimers throughout their infomercials, which alert consumers to the fact that, *inter alia*, they are paid advertisements, that the views expressed on the infomercials are solely the opinion of the guest, that the product does not claim to heal or cure any illness, and that individual results may vary.  In light of the substantial scientific support reviewed and considered by the DMC Defendants in connection with these infomercials, there is clearly a triable issue as to whether the FTC can meet its prima facie case and prove a Section 5 or Section 12 violation, especially in light of these Court ordered and additional prominently displayed disclaimers.  See Marketing Response Group, 1996 WL 420865 at *3 (district court denied FTC's motion for preliminary injunction as it failed to prove that defendant's promotional materials would be construed as material misrepresentations to the average consumer.)

As previously argued to this Court, the FTC's outright rejection of the DMC Defendants' infomercials without considering disclaimers goes against settled law and the previous ruling of this Court that requires an analysis of disclaimers in connection with advertising that is admittedly inherently misleading.  Specifically, in Pearson v. Shalala, 164 F.3d 650 (D.D.C. 1999) ("Pearson I"), a case also involving the labeling and advertising of dietary supplements and claims that such supplements could cure certain forms of cancer, the District of Columbia

24

Circuit rejected the FDA's sweeping rejection of the challenged claims.  In so doing, the Appeals

Court held as a preliminary matter that the speech was protected by the First Amendment.  Id. at

655 ("It is undisputed that the FDA's restrictions of appellants' health claims are evaluated under

the commercial speech doctrine.")  The Court of Appeals then recognized that disclaimers not

only could render otherwise potentially misleading claims lawful, but mandated that federal

agencies such as the FTC and FDA consider first whether disclaimers cure the offending speech.

Id. at 658.

        In this case, the FTC simply ignores the existence of disclaimers in the DMC Defendants'

infomercials.  In Pearson v. Thompson, 141 F. Supp. 2d  105 (D.D.C. 2001) ("Pearson III"), the

district court rejected similar conduct by the FDA in connection with claims by designers of

dietary supplements containing folic acid.  In particular, the FDA took the position that in no

circumstances could disclaimers cure the claims by the manufacturers that folic acid might

prevent neural tube defects.  Rejecting the FDA's argument, the court, citing Pearson v. Shalala,

130 F. Supp. 2d 105, 121 (D.D.C. 2001), stated:

> In short, even if the FDA's criticism of the sub-claim is valid, this criticism does
> not make the Claim inherently misleading; rather, it suggests the need for a well-
> drafted disclaimer, which the FDA has steadfastly refused to even consider.

See Pearson III, 141 F. Supp. 2d at 112 (the Government "*must* demonstrate with empirical

evidence that disclaimers similar to [those] suggested . . . would bewilder consumers and fail to

correct for deceptiveness.").

        Here, where the FTC has not offered one affidavit from a single consumer complaining

that he or she was misled by the claims in any of the DMC Defendants' infomercials produced or

aired since June 2004, or even considered whether the infomercials are misleading to consumers

in light of the actual claims made in the infomercial and the disclaimers, it has not made out a

prima facie case sufficient to warrant the extreme relief it seeks.  This action, therefore, is similar

to <u>Whitaker v. Thompson</u>, 248 F. Supp.2d 1 (D.D.C. 2002).  In <u>Whitaker</u>, as here, the promoters

of a dietary supplement claimed that "consumption of antioxidant vitamins may reduce the risk

of certain kinds of cancers."  The FDA, as the FTC has done here, determined that such claims

were "inherently misleading" and unsupported by competent and reliable scientific evidence, and

refused to even consider the effect of disclaimers on the plaintiffs' commercial speech.  The

court rejected the FDA's position under the framework established in <u>Central Hudson Gas &</u>

<u>Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557 (1980) and <u>Thompson v.</u>

<u>Western States Med. Ctr.</u>, 535 U.S. 357 (2002), holding that "[t]he First Amendment does not

allow the FDA to simply assert that Plaintiffs' Claim is misleading in order to 'supplant [its]

burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate

them to a material degree.'" <u>Whitaker</u>, 248 F. Supp. 2d at 9 (quoting <u>Ibanez v. Florida dep't of</u>

<u>Bus. & Prof'l Regulation</u>, 512 U.S. 136, 146 (1994).

       As in <u>Whitaker</u>, "[i]n this case, the Government has not satisfied its burden – there is no

evidence that the proposed [anti-cancer] claim, if accompanied by a disclaimer, would be

deceptive or unlawful."  248 F. Supp. 2d at 9.  Numerous other cases are in accord.  <u>See</u>, <u>e.g.</u>,

<u>Bioganic Safety Brands, Inc. v. Ament</u>, 174 . Supp. 2d 1168, 1182 (D. Col. 2001) (holding that

even if claim that pesticide is "Safe for Kids" is inherently misleading, "any misleading

impression can be cured by a disclaimer), citing <u>Zauderer v. Office of the Disciplinary Counsel</u>,

471 U.S. 626 (1985); <u>Symes v. Bahama Joes, Inc.</u>, 1988 WL 92462 (D. Mass. Aug. 12, 1988)

(Zobel, J.) ("The specific disclaimers bar plaintiffs' claims of misrepresentation"); <u>cf.</u> <u>American</u>

<u>Home Prods. Corp. v. FTC</u>, 695 F.2d 681 (3d Cir. 1983) (recognizing curative effect of

disclaimers on otherwise potentially misleading commercial speech).

<div align="center">26</div>

Where the proponent of constitutionally protected speech can demonstrate substantial support for the claims made in that speech, such as the DMC Defendants have done here, the importance of disclaimers is heightened. Without question, there is a significant question whether the FTC can demonstrate that the infomercials are misleading and deceptive to consumers in light of the disclaimers.[13] There is also a significant question whether the FTC can demonstrate that the scientific support reviewed by the DMC Defendants in connection with these infomercials is insufficient in light of these clear disclaimers that the products are not intended to treat or cure any disease. Thus, at a minimum, the FTC's complete rejection of the defendant's disclaimers raises a triable issue concerning whether the FTC will even be able to establish an element of its prima facie case.

**4.      A Balance of the Equities Does Not Favor
          Favor The Extreme Order Sought By The FTC.**

The FTC claims to have brought this motion to "prevent defendants from continuing to harm consumers by disseminating false and unsubstantiated advertising." (Memorandum, p. 1.) In doing so, the FTC has not submitted a *single actual consumer complaint*. Moreover, in asserting that the advertising is "unsubstantiated", the FTC never once asked the DMC Defendants to provide any scientific studies or literature supporting the advertising. The FTC also chose not to discuss these advertisements with the DMC Defendants and identify how the FTC believed the advertising is misleading and might be modified to address those concerns. The FTC also ignored the existence of disclaimers that strictly comply with or exceed the

---

[13] Even if the current disclaimers did not go far enough, in light of Pearson I and its progeny, the FTC should have considered seeking to amend the current Preliminary Injunction to require additional disclaimers rather than seeking the appointment of a receiver to effectively suppress this speech entirely. As noted in Whitaker, "[t]he case law makes it very clear that plaintiffs are harmed by the FDA's suppression of the [cancer cure] claims because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 248 F. Supp. 2d at 15, citing Elrod v. Burns, 427 U.S. 347, 373 (1976); New York Times Co. v. United States, 403 U.S. 713 (1971); Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758 (1988).

requirements of this Court's order after careful consideration of the constitutional issues and suppressions of speech sought by the FTC. In short, the FTC has proposed no alternative short of the most extreme and draconian measure it can seek.

The balance of the hardships clearly favors the DMC Defendants under the circumstances presented. Granting the FTC an order that would shut down DMC and ITV Direct and put 200 Massachusetts employees out of work would cause significant irreparable injury that cannot be remedied if the FTC's position is later overturned. The injury to the DMC Defendants is even more significant in view of the fact they are currently conducting a profitable business with strict controls and compliance measures that are addressing the concerns previously raised by the FTC. On the other hand, the Court's prior order and the DMC Defendants' agreement to abide by that order, will preserve the status quo in the event the FTC fails to succeed on the merits of its case. In light of the existing Preliminary Injunction, there is simply no need for the extreme additional remedy of the appointment of a receiver.[14]

As the DMC Defendants will suffer an incredible hardship if a receiver is appointed, which will essentially end their business regardless of the eventual outcome on the merits of the FTC's claims, the balance of hardships and the equities unambiguously favors denying the FTC's motion. Here, where there is no competent evidence of fraudulent conduct on the part of

---

[14] The FTC alludes, but does not allege, that some of the subject products "might" or "could" pose health risks. There is absolutely no evidence, however, that this is the case. To the contrary, the DMC Defendants require that its manufacturers provide a certificate of analysis on all products sold, which confirms that the product does not contain any heavy metals or toxins. The DMC Defendants are not aware of any claims of health problems in connection with the subject products, nor are any specific problems identified by the FTC. Moreover, the FTC does not allege that there is a significant threat of dissipation of assets, especially in light of the existing injunction and threat of contempt. Thus, the cases that the FTC had cited previously to support the extreme relief of a receiver are noticeably absent from its present motion. See In re National Credit Management Group, LLC, 21 F.Supp.2d 424, 462-63 (D. NJ 1998) (appointment of receiver appropriate where there existed a real threat assets would be dissipated); FTC v. Amy Travel Service, Inc., 875 F.2d 564(7th Cir. 1989) (same).

the DMC Defendants, the appointment of a receiver is completely unnecessary to protect the public interest.

### III.     CONCLUSION

Based on the foregoing reasons, this Court should deny the FTC's motion to modify the existing Preliminary Injunction to appoint a receiver.

<div style="margin-left:40%">

Respectfully submitted,
DIRECT MARKETING CONCEPTS, INC., ITV
DIRECT, INC., AND DONALD W. BARRETT

By their attorney(s),


 /s/ Christopher F. Robertson
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

</div>

Dated: June 9, 2005