## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civ. No. 04-11136-GAO |
| DIRECT MARKETING CONCEPTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR A MODIFICATION OF THE JUNE 23, 2004 PRELIMINARY INJUNCTION AS TO DEFENDANTS DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., AND DONALD W. BARRETT AND REQUEST FOR EXPEDITED TREATMENT

## I.    INTRODUCTION

Defendants have responded to the Commission's motion with a barrage of misleading

facts, mischarcterized case law, and rehashed legal arguments previously rejected by this Court.

Defendants, however, cannot obscure the simple fact that they continue to make deceptive and

unsubstantiated disease and health-related claims for multiple products.  Furthermore, the very

evidence that Defendants offered to show the adequacy of their efforts to discipline their sales

staff actually demonstrates that, nearly a year after this Court entered its Preliminary Injunction,

Defendants' sales representatives repeatedly fail to adequately inform consumers about the

company's autoship program.

Defendants' argument that their submitted materials create "triable" issues that must

await a trial to be resolved is without any legal basis.  The parties have now submitted evidence

and thoroughly briefed the order modification request, and the Court is completely capable of

ruling on the Commission's motion with or without an evidentiary hearing. This argument also ignores the fact that Defendants are continuing to harm the public by disseminating the deceptive ads at issue.

Additionally, although Defendants attempt to portray their participation in an industry self-regulatory program as evidence of their intent to comply with the law, Defendants' arguments that their claims for Sea Vegg and Renuva are substantiated have been soundly rejected in those proceedings. Despite that fact, Defendants have not pulled the Sea Vegg infomercial, and, contrary to their indications to the Court that they ceased airing the Renuva infomercial upon being informed of the self-regulating body's decision, their own correspondence demonstrates that as of late May, almost two full months after the issuance of the decision, Defendants were only "in the process" of pulling the Renuva ad. Defendants' misleading characterization of their response to the Renuva decision and failure to apprise the Court of the Sea Vegg decision demonstrate their inherent untrustworthiness and underscore the need for the need to remove current management in favor of an independent receiver.

In light of this ongoing harm and deceptive conduct, the Court should not defer action on the Commission's requested relief. While the Commission acknowledges the seriousness of its request to the Court to appoint a receiver, such a remedy is necessitated by Defendants' repeated violations of the law and demonstrated untrustworthiness.

## II. DEFENDANTS' CONTINUED DISSEMINATION OF UNSUBSTANTIATED CLAIMS FOR SEA VEGG AND RENUVA WARRANTS IMMEDIATE RELIEF

### A. Defendants' Health and Disease Claims for Sea Vegg are Unsubstantiated

#### 1. The Sea Vegg Infomercial Makes Strong Disease and Health Claims

This Court, as the finder of fact, may draw reasonable inferences and make factual

determinations as to both the express claims and the implied claims conveyed by the Sea Vegg

infomercial. *See FTC v. Febre*, No. 94 C 3625, 1996 WL 396117, at \*4 (N.D. Ill. July 3, 1996)

(magistrate judge recommendation), *adopted by* 1996 WL 556957 (N.D. Ill. Sept. 27, 1996),

*aff'd,* 128 F.3d 530 (7ᵗʰ Cir. 1997); *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S.

626, 652 (1985); *FTC v. Gill,* 71 F. Supp.2d 1030, 1043 (C.D. Cal. 1999), *aff'd*, 265 F. 3d 944

(9ᵗʰ Cir. 2001). When "deciding questions of ad interpretation, the Court looks at the 'overall net

impression made by the advertisement in determining what message may reasonably be ascribed

to it.'" *Gill*, 71 F. Supp.2d at 1043 (citing *FTC v. US Sales Corp.*, 785 F. Supp. 737, 745 (N.D.

Ill. 1992)).

As demonstrated in the Commission's memorandum in support of its motion, the Sea

Vegg infomercial[1] makes strong claims for the prevention and treatment of disease, as well as for

weight loss.[2] *See* Memorandum in Support of Plaintiff Federal Trade Commission's Motion for

---

[1] Despite Defendants' statement that there is a more recent, edited Sea Vegg infomercial, Defendants do not dispute that they disseminated the infomercial addressed in the Commission's motion. Moreover, despite Defendants' indications to the contrary, the version of the infomercial cited in the Commission's motion was still being aired as of June 22. *See* Supplemental Declaration of Christina Turner (Exhibit A hereto), ¶ 10, Att.3. Tellingly, Defendants also fail to provide the Court with a transcript of any edited infomercial, thus giving no assurance that any claims made therein are less problematic.

[2] Defendants' argument that they bear no responsibility for the claims made in their infomercials, as these constituted only the opinions of their "guests," has no basis in the law. Indeed, this Court recognized the inadequacy of such a defense when it stated in the Preliminary Injunction that "[t]he Defendants' purported reliance upon co-defendant Alex Guerrero's representations – even if true – is not a valid defense to a violation of the FTC Act." Preliminary Injunction Order as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett, at ¶ 30.

Additionally, the case of *FTC v. Garvey*, 383 F.3d 891 (9ᵗʰ Cir. 2004), despite Defendants' numerous citations to it, offers no support for Defendants' argument that they cannot be held liable for the opinions of another person offered via their infomercial. In *Garvey*, the appellate court affirmed the lower court's ruling that the Commission had failed to show that a hired celebrity spokesperson was liable for monetary relief because he lacked the requisite

a Modification of the June 23, 2004 Preliminary Injunction as to Defendants Direct Marketing,

Inc., ITV Direct, Inc., and Donald W. Barrett and Request for Expedited Treatment

("Commission's May 24, 2005 Memorandum"), at 8-11.[3]

The Commission's position that Defendants make strong, unsubstantiated health and

efficacy claims in their Sea Vegg infomercial[4] is supported in full by the recent decision of the

Electronic Retailing Self-Regulation Program ("ERSP").[5] The ERSP found that ITV had

---

scienter. Defendants' admitted involvement in these infomercials and as marketers of these products demonstrate that their participation and knowledge far exceeded that of a hired celebrity spokesperson.

[3] Defendants' argument that their claims are "cured" by the presence of disclaimers in the infomercials is without merit. "Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989). A review by the Court of both the Sea Vegg and Renuva infomercials will demonstrate that the disclaimers fail to detract from the strong health and performance claims conveyed by the programs.

Defendants' reliance on the case of *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) also provides no support for their argument. In *Pearson*, the Food and Drug Administration had prohibited all health claims for dietary supplements, except when the agency determined *a priori* that there was "significant scientific agreement" that evidence supported a particular claim. In the present case, the Commission is challenging advertising that has already been disseminated for specific products – not imposing a blanket ban on an entire category of claims – and the question is whether those challenged ads convey misleading messages to consumers. If they do, they are not entitled to protection under the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Public Service Comm. of New York*, 447 U.S. 557, 563, 564 (1980).

[4] The fact that the overall message conveyed by the Sea Vegg infomercial is one regarding benefit to disease is further demonstrated by the fact that the word "cancer" appears eighteen times, "arthritis" appears four times, "diabetes" appears seven times, "fibromyalgia" appears four times, and the word "disease" appears thirty times, including eleven times as part of the term "degenerative disease." *See* Supplemental Declaration of Christina Turner (Exhibit A hereto), ¶ 7.

[5] The ERSP is the industry self-regulatory program to which Defendants refer in their opposition to the Commission's memorandum. The ERSP was created by the Electronic Retailing Association in an effort to improve industry business practices. The program is administered by the National Advertising Review Council, the advertising industry's self-

communicated multiple express health benefits through the infomercial, including "weight loss,

preventing and reversing 'most degenerative diseases,' assisting with multiple sclerosis,

increasing strength and stamina, rebalancing the thyroid and inhibiting carcinogenesis." *See*

Supplemental Declaration of Christina Turner ("Suppl. Turner Decl.") (Exhibit A hereto), ¶ 13,

Att. 6, at 6 ("General Performance Claims"). The ERSP also rejected ITV's contention that the

infomercial's claims concerned the benefits of sea vegetation, generally, rather than Sea Vegg,

the product. The ERSP determined that

> there can be very little dispute that many of the claims for seaweed (which the
> marketer maintained were simply representations regarding the benefit of 'sea
> vegetation') will be reasonably understood by consumers as being attributable to
> Sea Vegg. In addition to the context in which the claims were presented in the
> advertisement, the fact that a bottle of Sea Vegg capsules are prominently
> displayed throughout the infomercial further contributed to ERSP's determination
> regarding a reasonable consumer take away.

*Id.*

## 2. Defendants Have Failed to Show that Their Disease and Health Claims for Sea Vegg are Substantiated

The affidavits of Defendants' "experts" do not substantiate Defendants' disease and

health claims for Sea Vegg.[6] At best, the affidavits show that there is some general evidence that

seaweed has some potential health benefits. This non-controversial proposition, however, does

regulatory body.

[6] It is the Commission's position that Larry Haase, one of Defendants' declarants regarding Sea Vegg, can in no way qualify as an expert. Mr. Haase is not a doctor, a scientist, a nutritionist, an attorney, or an expert in the field of advertising or claim interpretation. He offers no information about his educational background, and his work experience consists of working only in various marketing and business positions. Mr. Haase nonetheless sees fit to offer opinions on the health benefits of seaweed, the nature of the claims made in the infomercial, and whether ITV has complied with multiple federal laws concerning those claims. Given Mr. Haase's complete lack of relevant educational background and work experience, his opinions are entitled to no weight.

nothing to undermine the conclusions of the Commission's expert, Dr. Skibola, that, although there are some data indicating that seaweed may have some benefit to health, there is no sound scientific evidence that Sea Vegg is effective in treating or preventing cancer, fibromyalgia, diabetes, arthritis, or multiple sclerosis, or that it can cause weight normalization.

Defendants' declarant Christine Maggs states only that there exists some literature reporting "a potential anti-cancer activity of seaweeds."[7] This conclusion in no way contradicts Dr. Skibola, who in fact acknowledged that there have been *in vitro* and animal studies suggesting that "supplementation with seaweed or certain specific seaweed extracts may reduce certain tumor burdens."[8] Declaration of Dr. Skibola, ¶ 21.[9] The declaration of Dr. Jane Teas similarly addresses possible health benefits of "algae" generally, rather than the Sea Vegg product itself. As is the case with Dr. Maggs, such a general conclusion does not rebut or contradict the conclusion of Dr. Skibola. In addition, Dr. Teas actually supports the Commission's contention that cancer-related claims are not supported by competent and reliable scientific evidence. Dr. Teas states that "[e]vidence of cancer prevention or treatment potential are logical based on traditional medical systems and some scientific studies, *but probably are premature at this time.*" Teas Declaration, ¶ 11.

Dr. Teas also does not mention any possible benefit of seaweed with regard to weight

---

[7] Dr. Maggs cites and attaches a number of study abstracts, but does not demonstrate how the cited studies relate, if at all, to the Sea Vegg product.

[8] The findings of such studies, however, cannot be extrapolated to human beings. Declaration of Dr. Skibola, ¶ 21.

[9] Attached as Exhibit B to this memorandum is a revised declaration of Dr. Skibola, which differs from her original declaration only in its analysis of an epidemiological study in ¶ 21. Dr. Skibola mistakenly stated in her original declaration that the study had shown a higher rate of stomach cancers associated with a higher dietary seaweed intake. The change does not impact Dr. Skibola's conclusions regarding Sea Vegg.

normalization in her summary of findings, *see id.*, or conclusions, *see id.* at page 9, despite acknowledging that she had been asked to review the scientific literature for support for the weight normalization claim. See *id.*, ¶ 10. In fact, she states that her own study involving a daily dose of 5 grams of seaweed (far greater than the 1.5 gram daily dose of the Sea Vegg seaweed blend) failed to show weight changes. *See id.*, ¶ 12; Suppl. Turner Decl., ¶ 8, Att. 2.

With regard to the other diseases and conditions Dr. Teas researched, she concludes merely that "[a]lgae *may well* reduce symptoms of diabetes, fibromyalgia, [and] arthritis." *Id.* at 9. Such tepid conclusions, based on studies not demonstrated to correspond in any way to Defendants' actual product,[10] regarding the *possible* benefits of algae, generally, cannot serve as competent and reliable scientific evidence supporting the strong disease and health claims made in the infomercial. *See FTC v. SlimAmerica, Inc.*, 77 F. Supp.2d 1263, 1274 (S.D. Fla. 1999) ("Scientific validation of the defendant's product claims requires a double-blind study of the combination of ingredients used" in the marketer's product).

The ERSP also found that ITV's claims of health benefits from Sea Vegg were unsupportable. The ERSP stated that, as ITV "did not conduct any studies on the advertised product nor did it conduct testing on the ingredients at the same strength in which they are contained in the product," ITV "could not support the claims of general product performance, health and safety and weight loss." Suppl. Turner Decl., ¶ 13, Att. 6 at 8 ("Conclusion"). Accordingly, ERSP recommended that "ITV either make substantial and significant

---

[10] As was the case with Dr. Maggs, Dr. Teas fails to show how the findings of the studies cited in relation to arthritis, fibromyalgia and diabetes can be correlated, if at all, to the Sea Vegg product. Dr. Teas, for example, fails to show that the studies involved seaweed products similar in constitution or dosage amounts to Sea Vegg.

modifications to the advertising or discontinue the advertising completely." *Id.*[11]  ERSP's

findings are yet another indication that Defendants disseminated strong, unsubstantiated health

claims in violation of the law and despite the existence of the current Preliminary Injunction.

**B.     Defendants' Claims for Renuva are Unsubstantiated**

       **1.     The Renuva Infomercial Makes Strong Health and Performance Claims**

As articulated in the Commission's motion, the Renuva infomercial makes multiple

strong health and performance claims, including claims that the product will cause increased

energy and stamina, decreased weight and body fat, reduced aches and pains, improved memory

and increased sex drive. *See* Commission's May 24, 2005 Memorandum at 13-15. The

Commission's positions regarding the claims Defendants make in the Renuva infomercial are

again supported by the separate findings of the ERSP. The ERSP issued a copy of its final case

decision to Anti-Aging Formulas LLC ("AAF") on April 1, 2005,[12] in which the ERSP noted that

the "infomercial contained a number of very aggressive health and performance claims with

respect to the Renuva Anti-Aging Formula System." Affidavit of Michael Sciucco ("Sciucco

Aff."), Ex. 6, at 4. The ERSP found that the performance claims in the infomercial included

representations that Renuva could produce "improvements to energy, sex drive, memory, joint

---

[11] ITV responded to the ERSP decision by saying that, despite respectfully disagreeing with ERSP's findings, it would modify its website and "take ERSP's recommendations under consideration for all future modifications or edits of the advertisement." *Id.* at 12 ("Marketer's Statement").

[12] Although AAF is the named marketer of Renuva in the ERSP proceeding, Defendants' status as the principle marketer of the product is not in dispute. Defendants' involvement and authority to act with regard to Renuva is demonstrated by Donald Barrett's admission that he had the authority to pull the Renuva ad from the air and purchase media time for the program. *See* Affidavit of Donald Barrett, ¶ 16; *see also* Affidavit of Michael Sciucco, ¶¶ 18-19. Significantly, Michael Sciucco, ITV's General Counsel, handled the ERSP proceedings on behalf of Anti-Aging Formulas. *See* Affidavit of Michael Sciucco, Exs. 2-7.

pain, weight loss, hair thickness, back pain sickness, etc." *Id.* at 6.

## 2. Defendants' Health and Performance Claims Are Not Supported by Valid Scientific Evidence

The Commission's position that Defendants lack substantiation for their Renuva health and performance claims is echoed by the decision of the ERSP. That body concluded that, although AAF had submitted a number of studies on growth hormone in general and on individual ingredients in Renuva, "there was no confirmation that the HGH ingredient in Renuva would produce the same effect and, in light of the omission of this evidence on the HGH contained in Renuva, ERSP had little recourse but to determine that the health and performance claims disseminated in the infomercial were unsubstantiated." *Id.* at 5.[13] Accordingly, ERSP recommended that until AAF "conducts further testing on its product and documents the specific performance benefits it will provide to consumers," it discontinue "any performance claims based on individual ingredient testing or testing on injectible HGH." *Id.* at 9.[14]

Furthermore, the declarations of the experts Defendants now put forth are insufficient to substantiate their claims for Renuva. The conditional conclusion of Defendants' expert Frank Greenway is based on a series of inferences that rely on data that Dr. Greenway fails to show correlate to the Renuva product. Dr. Greenway asserts that both growth hormone releasing hormone (GHRH) and growth hormone releasing peptides (GHRP) are capable of causing

---

[13] ERSP also rejected the argument that the infomercial's disclaimers put consumers on notice of Renuva's performance limitations. ERSP found that one of Defendants' disclaimers–"*individual results may not be typical*"–rather than clarifying any limitations, actually would add to consumers' confusion. *Id.*

[14] Despite the ERSP's recommendation, there is no evidence that the Renuva ad has been pulled even as of today. The most recent IMS report indicated that the infomercial was being aired as of late May, and was ranked 75th among infomercials in terms of frequency of airing. *See* Suppl. Turner Decl., ¶¶ 4-5, Att. 1.

secretion of growth hormone (GH). He then states, based on information he acknowledges comes from AAF, that Renuva contains growth hormone releasing peptides 2 and 6. He goes on to state that acute doses of growth hormone releasing peptide 2 increase growth hormone significantly in man. Finally, he states that, based on the amount of peptides allegedly in Renuva, that a daily dose of the product would be the equivalent of an eight minute infusion of GHRH or GHRP in a 70 kg man.

Dr. Greenway's inferential steps, however, involve data not shown to correlate to the Renuva product,[15] and he fails to state whether an eight minute infusion of the type he describes would be sufficient to have any effect similar to the claims Defendants make in their infomercial. He also fails to conclude that such an infusion would have an impact on the amount of a body's IGF-1, which the Commission's expert testified was the most reliable indicator of overall GH production over time.

The declaration of Ronald Amen, Ph.D. also consists of inferential steps that involve data not tied to the Renuva product.[16]

_____

[15] For example, as it is unclear how much peptide 2 Renuva might contain, as opposed to peptide 6, the Pihoker study showing that peptide 2 caused secretion of GH does not provide support for the fact that the Renuva product would have a similar effect. *See* Greenway Declaration, ¶ 3. Furthermore, that study does not appear to have been blinded or controlled, and involved only 15 patients.

[16] Specifically, there is no indication that the study by Buttar, et al. that Dr. Amen cites to show that the administration of GHRH and GHRP increases GH production and secretion involved the peptide purportedly found in Renuva. The Buttar study also involved *trans-dermal*, as opposed to sublingual (or even injected), peptide. The declaration also cites positive results only for the first week after administration of the peptide, and the study does not appear to have been blinded or, possibly, controlled. The 2005 non-blinded study Dr. Amen cites to show the effects of GHRP also is problematic. The only results cited from the study were from measurements taken only *two hours* after administration of the peptide–hardly an indication of long-term effectiveness. Additionally, as with the Buttar study, there is no indication that the type of peptide involved corresponded to that purportedly contained in Renuva, or that the study showed an increase in IGF-1. These studies therefore provide no support for a crucial link in the

The conclusions of Defendants' experts thus are based on a series of inferences built on

data not demonstrated to correlate to the actual Reunva product or its specific ingredients.

Defendants, therefore, cannot rely on their purported experts to substantiate their claims.[17]

## III.   DEFENDANTS HAVE MISREPRESENTED THE STATUS AND OUTCOMES OF THE ERSP PROCEEDINGS CONCERNING THE SEA VEGG AND RENUVA INFOMERCIALS

Perhaps as important as the ERSP's findings that Defendants' Sea Vegg and Renuva

claims are unsupported by the science is the fact that Defendants misrepresented to the Court the

ERSP's position on Sea Vegg and their response to the ERSP's Renuva decision. Defendants'

mischaracterizations fit a pattern of deceptive representations to the Commission and this Court

and constitute further evidence that Defendants' management cannot be trusted.

### A.   Defendants Misled the Court Regarding the ERSP's Position with Regard to the Sea Vegg Infomercial

In their opposition to the present motion, Defendants brazenly misrepresented the ERSP's

position with regard to the Sea Vegg infomercial. DMC's General Counsel, Michael Sciucco,

stated in his June 6, 2005 affidavit that "[a]lthough the [ERSP] process has not been completed,

ERSP has recognized and informed me that ITV has a significant amount of competent and

reliable scientific data supporting the health benefits of seaweed." Sciucco Aff., ¶ 35. Mr.

Sciucco's statement conveys the impression that ERSP, as of the date of his declaration, had a

---

chain Dr. Amen attempts to build showing that results of studies involving subcutaneous GH
injections could reasonably provide support for Defendants' Renuva claims.

[17] Industry self-regulatory bodies have now found within the last nine months that the
claims made in three infomercials associated with Defendants were not substantiated. In October
2004, the National Advertising Division of the Better Business Bureau concluded that an ITV
infomercial featuring Barrett and Dr. Day promoting a videotape by Dr. Day entitled "Cancer
Doesn't Scare Me Anymore" made unsubstantiated claims, including the claim that
"chemotherapy doesn't work for anybody." Declaration of Christina E. Turner, Exhibit A to the
Commission's May 24, 2005 Memorandum, at Attachment 29.

favorable impression of the materials submitted by Defendants with regard to Sea Vegg. In fact,

ERSP had informed Defendants of its findings that their claims lacked substantiation on June 3,

2005, three days prior to Mr. Sciucco's declaration and six days before Defendants' filed their

opposition.[18] *See* Suppl. Turner Decl., ¶ 12, Att. 5.[19]

## B.    Defendants Have Misrepresented Their Response to the ERSP Decision on Renuva

In their response to the Commission's motion, Defendants misleadingly implied that they

had pulled the Renuva ad off the air upon receipt of the April 1, 2005 ERSP decision, or soon

thereafter. In his affidavit submitted in opposition to the Commission's motion, Donald Barrett

stated that "after participating in the voluntary compliance process established by our industry

group in conjunction with the FTC, we made the business decision to pull the current version of

Renuva from the airwaves in an effort to comply with the self regulatory process. We have not

purchased any new air time for the Renuva infomercial in question." Affidavit of Donald

---

[18] Not only does Mr. Sciucco's statement contradict ERSP's actual position, it also mischaracterizes ERSP's previous communication with Defendants. Mr. Sciucco's statement apparently refers to an April 26, 2005 letter from the ERSP administrator acknowledging receipt of Defendants submitted materials. *See* Sciucco Aff., at Ex. 14. Nowhere in this letter does ERSP characterize Defendants' materials as "competent and reliable scientific data." While the letter does say that ERSP did not dispute the validity of the science submitted "with respect to some of the ingredients in Sea Vegg," the letter goes on to point out that "without confirmation that the amount of the ingredient tested correlates with amount [sic] of that ingredient as it is contained in Sea Vegg, the relevancy of the data to the specific claims at issue is dubious." *Id.* at page 2. The letter also reminds Defendants that "this is not an advertisement for seaweed or sea vegetation, but pertains to the product Sea Vegg," and that general claims as to the benefits of sea vegetation are inadequate to support claims that *Sea Vegg* has the same effect. *Id.* at p. 3. Thus, contrary to Mr. Sciucco's representation to the Court, the letter in fact sets forth ERSP's multiple concerns with Defendants' submitted materials.

[19] June 3, 2005 letter from ERSP to Michael Sciucco, AAF (received from a confidential, non-ERSP source).

Barrett, ¶ 16. Mr. Sciucco stated the same thing.[20]

The statements of Messrs. Barrett and Sciucco strongly imply that AAF/ITV pulled the Renuva ad immediately upon, or at least relatively soon, after being informed of the ERSP decision. In fact, however, as evidenced by Mr. Sciucco's own May 23, 2005 letter to ERSP, AAF/ITV continued to air the Renuva ad almost two full months after the ERSP handed down its decision. Mr. Sciucco stated in that letter that "I have been informed that the show in question is *in the process of being pulled* from the airwaves and the media expenditures *have dropped* dramatically over the past thirty days." Sciucco Aff., Ex. 7 (emphases added). Indeed, Defendants' failure to take any timely action with regard to the Renuva ad led ERSP to refer the matter to the Commission. In its June 1 press release announcing the referral, ERSP noted that the same Renuva ad continued to air six weeks after the case had been closed and that the marketer "could not provide 'an exact time frame' when final modifications" would occur, "nor could it specify that the claims at issue in the original inquiry would be discontinued." Turner Suppl. Decl., ¶ 11, Att. 4, at 1. As noted above, there is no evidence that the Renuva ad has been pulled even as of today. *See supra* p. 9, n.14.

## C.    Defendants' Misleading Statements Regarding the ERSP Proceedings Are the Latest in a Series of Misrepresentations to the Commission and the Court

Defendants' misrepresentations regarding the ERSP proceedings are merely the latest in a series of misrepresentations to the Commission and this Court. First, Defendants falsely represented to the Commission in late 2003 that they would pull the original Supreme Greens

---

[20]  Mr. Sciucco stated that although AAF disagreed with the ERSP's Renuva decision, "both AAF and ITV made the decision to pull the infomercial from the airwaves in an effort to comply with ERSP. To my knowledge, no new media has been purchased for the Renuva infomercial." Sciucco Aff., ¶ 19.

infomercial from the air. *See* Declaration of Kial Young, attached as Exhibit G to the

Commission's memorandum in support of its motion for a temporary restraining order (filed

June 1, 2004), ¶ 8. Second, Donald Barrett misrepresented to the Court that he never purposely

ran the original Supreme Greens infomercial after replacing it with an edited version in response

to the Commission's concerns. *See* Commission's May 24, 2005 Memorandum at 29-30.

Tellingly, Defendants have not disputed the Commission's allegation that they began to re-air the

original Supreme Greens advertisement at least as early as February, 2004 despite their prior

representations to the Commission. Third, while Defendants represented at the time of the

Commission's motion for a preliminary injunction that they had no plans to market ingestibles,

they subsequently, and without notice to either the Commission or the Court, began to market

multiple ingestible products, including Sea Vegg and Renuva. These misrepresentations, along

with Defendants' mischaracterizations of ERSP's Sea Vegg proceeding and their response to

ERSP's Renuva decision, are proof that Defendants, in addition to being unable or unwilling to

comply with federal law regarding their advertising, are unworthy of trust and that a receiver

must be appointed to ensure true adherence to the law.

## IV. DEFENDANTS REMAIN UNWILLING OR UNABLE TO COMPLY WITH THE LAW AND THE ORDER OF THIS COURT REGARDING THEIR AUTOSHIP PROGRAM

Defendants' opposition makes much of the personnel they have hired and policies they

have instituted to ensure compliance with the law and with the direction of this Court in the

Preliminary Injunction. The very evidence Defendants have submitted to demonstrate such

compliance, however, in fact shows that nearly a year after this Court entered the Preliminary

Injunction, ITV is either unwilling or unable to ensure that its sales force adequately informs

consumers of the terms and conditions of its autoship program.

Specifically, Defendants submitted the affidavit of John Maihos, ITV's Vice President of

Human Resources, to which were attached numerous letters and memoranda constituting

disciplinary actions DMC/ITV had taken against its sales representatives for failing to adhere to

company policy. The sheer number of such actions, all taken within a very short time, however,

merely demonstrates the widespread scope and intractability of the company's inability to ensure

that its sales representatives comply with the Court's Preliminary Injunction. The Commission

charitably acknowledged in the instant motion that, based on the limited number of calls it made

to ITV, it could not judge how widespread the problems with Defendants' sales staff were.

Defendants themselves now have supplied that information. The fact that the company has sent

so many disciplinary letters to its own sales representatives[21] nearly one year after the entry of the

Preliminary Injunction shows that the current management cannot or will not adhere to the law.[22]

## VI. CONCLUSION

Defendants have shown that, despite being subject to this Court's order for the past year,

they continue to disseminate deceptive advertising, fail to inform consumers of the details of

their autoship program as required by the Preliminary Injunction, and mislead the Court and the

Commission regarding their advertising practices. Defendants' repeated conduct establishes

---

[21] It is perhaps indicative of Defendants' true attitude towards disciplining their sales force that none of the sales reps at issue appear to have been fired, despite the fact that some reps failed on multiple occasions to properly inform consumers about the autoship program.

[22] With regard to the Commission's investigation of Defendants' autoship program, Defendants have implied that the Commission somehow sought to improperly "trap" Defendants by having its investigator, Christina Turner, make "dozens" of calls, "perhaps as much as one a week," to ITV following the entry of the Preliminary Injunction. Ms. Turner in fact has made a total of only nine calls to Defendants to place orders since entry of the Preliminary Injunction. *See* Suppl. Turner Decl., ¶ 14. (Ms. Turner has placed additional, non-substantive calls, e.g., to cancel her autoship programs.) *See id.* Such calls represent reasonable and justifiable steps to determine whether Defendants were complying with the law and this Court's order.

without question the need for a receiver to prevent further illegal conduct. The Commission

therefore respectfully requests that the Court grant its motion to modify the Preliminary

Injunction and appoint a receiver over DMC and ITV.

Respectfully submitted,

DANIEL KAUFMAN
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
SHIRA MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-2675, -3126 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov or eglennon@ftc.gov
ATTORNEYS FOR PLAINTIFF

Dated June 23 , 2005