UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.,<br><br>Defendants. | CIVIL ACTION NO. 04-CV-11136GAO |

## DMC DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CONTINUANCE AND FOR SANCTIONS

### Introduction

Within the last week (and two months after the close of discovery), the FTC, without any prior notice, produced to the defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV"), and Donald W. Barrett ("Barrett") (collectively, "DMC Defendants") over 6,000 pages of documents called for under the automatic discovery procedures in the Rules and long-standing document requests.[1]  Although the DMC Defendants have not had a sufficient opportunity to fully review the documents produced, a limited review confirms that these documents are relevant and material not only to the FTC's original allegations and claims, but also to the FTC's new allegations and claims that form the basis for its May 25th motion to appoint a receiver.  Indeed, the transcripts of the FTC's investigative calls just produced (and only after the parties' "meet and confer" conference) clearly establishes the Commission's manipulation and selective disclosure of information to the Court in support of its contention that the DMC Defendants are not appropriately disclosing the terms of the autoship program to

---

[1] The DMC Defendants submit herewith the Affidavit of Christopher Robertson, cited herein as "Robertson Aff."

consumers.[2]  Robertson Aff., ¶¶7, 20.  It is therefore little wonder that the FTC did not acknowledge its inordinate delay or explain why it waited until a little more than a week before the then scheduled hearing on the receivership motion to produce these clearly relevant documents.  The FTC's delay does explain why it has insisted on an expedited hearing with the Court on the receivership motion, while resisting efforts to provide additional time to the DMC Defendants to respond to a motion intended to close down their businesses.  The intent to prejudice the DMC Defendants by withholding documents that support their defenses in this action could not be more apparent.[3]  A sanction against the FTC, including the dismissal of its receivership motion, would be warranted on this ground alone.

Upon receiving these 6,000 pages of additional documents, which are indisputably relevant, the DMC Defendants immediately raised their frustrations and objections to this late discovery with the FTC.  Among other issues discussed, the DMC Defendants sought the FTC's agreement to continue the receivership hearing and reopen discovery for sixty days.  This short delay would allow the DMC Defendants at least a minimal amount of time to fully review and evaluate the thousands of recently produced documents and to conduct further discovery, including potential depositions, needed to follow up on the information contained therein.  Robertson Aff., ¶18. For example, the production contains a number of communications between the FTC and former employees of DMC that are highly relevant.  In one instance, it appears that the FTC received documents from a witness that the FTC deposed, but the FTC did not produce these documents to the DMC Defendants prior to the employee's deposition.

---

[2] In its motion to appoint a receiver, the FTC presents transcripts of certain investigative calls to ITV in an effort to suggest to the Court that ITV's sales representatives are not disclosing the terms of the autoship program to consumers.  FTC Memorandum at 21.  The other transcripts just produced establish, however, that the sales representatives are complying with the Court's injunction to the letter.

[3] To further compound the problem, the FTC redacted numerous documents without any protective order in place and without any explanation as to the nature of the redactions.  Robertson Aff.,¶15.

*Id.*, ¶13.  Thus, the FTC was in possession of documents relevant to this witness's testimony but hid these documents from the DMC Defendants and deprived them of the opportunity to cross-examine this witness on these withheld documents.  *Id*.  Such conduct clearly violates fair rules of discovery, and the FTC should not be allowed to benefit from these sorts of tactics.  *Id*.

Similarly, the production includes emails and correspondence between the FTC and the other defendants in this case, some of whom who were also deposed by the FTC.  Robertson Aff., ¶14.  Again, the FTC had the benefit of these documents, but deprived the DMC Defendants the opportunity to review these documents and use them to cross examine relevant witnesses.  *Id*.  Most troubling, it appears that these defendants agreed to cooperate with the FTC and were provided advance warning of the present lawsuit, but none of this correspondence, or the documents provided by these defendants as part of this cooperation, were provided to the DMC Defendants until now.  *Id*.  Another category of documents only now produced relate to correspondence between the FTC and their expert witnesses.  *Id.*  Obviously, all of this new information is highly relevant and further discovery was and is needed to challenge the FTC's allegations and statements to this Court, which are in large part supported by these witnesses.  Much of this information appears to be heavily biased and untrue.  For example, it now appears that one informant told the FTC that the DMC Defendants had established foreign bank accounts, which the FTC then relayed to this Court.  *Id*.  That allegation is entirely and demonstrably untrue, but the DMC Defendants had no opportunity to depose this witness to underscore the weakness of the FTC's arguments.  The prejudice to the overall litigation and the FTC's present motion is manifest.  *Id*.

Even more specific to the FTC's present motion for the appointment of a receiver, three categories of documents have been produced that go the heart of the DMC Defendants' defenses

to the motion. First, the documents produced include correspondence with third party business partners of DMC related to industry autoship practices in general and the DMC Defendants' autoship practices in particular. None of this information, which is not helpful to the FTC, was produced previously. Robertson Aff., ¶23. Second, the FTC has produced a limited number of documents with consumer agencies, such as the Better Business Bureau. These documents are also not helpful to the FTC, as they show only minimal customer complaints. For example, one such document shows that only eight complaints were received over several months, despite the fact that DMC handles thousands of calls per day. Any argument that this information, which was never presented to the Court or the DMC Defendants, is not relevant, is simply not credible. *Id.*

Above all else, however, the most disturbing omission by the FTC is the recent production of the transcripts of undercover calls between the FTC's agents and the DMC sales staff. Robertson Aff., ¶16. In its motion for receiver, filled with claims of allegedly outrageous behavior by DMC and in an effort to paint the DMC sales floor as out of control, the FTC cites to select portions of transcripts of calls and characterizes those calls as representative of the regular practices of DMC. In light of the recently produced documents, this claim is nothing short of outrageous. The transcripts produced by the FTC, finally, actually demonstrate that the regular practices of the DMC sales force in calls with consumers exceed the requirements of the Court's order. *Id.*, ¶20. In one call, for example, the salesperson repeatedly explains the terms of each DMC program and confirms multiple times that the consumer understands the terms. *Id.* In another call, which was recorded as per DMC's practices, the salesperson again confirms the terms of a sale and expressly notes that the customer is *not* on autoship. The transcript reveals that rather than pressuring the customer to go on autoship, the salesperson explains that the

BO1 15737478.1

customer may want to try an introductory period before committing to a longer plan. *Id*. These facts are absolutely nowhere to be found in the FTC's submission to this Court, and were withheld from the DMC Defendants until last week. Nonetheless, the FTC urges this Court to appoint a receiver and shut down DMC based upon this incomplete and misleading record. Such conduct not only is in clear violation of the rules, it operates as a fraud on this Court. Some sanction is clearly appropriate.

Notwithstanding the palpable prejudice of this late discovery to the DMC Defendants and the need for further discovery, the FTC refused to agree to any such accommodation. On September 14, 2005, after receiving the newly produced documents, the DMC Defendants engaged in a lengthy dialogue with the FTC in an effort to resolve this issue. Robertson Aff., ¶18. The DMC Defendants simply requested that the FTC continue the case, including the pending motion for receivership, for another 60 days. The DMC Defendants also requested that the FTC agree to reopen discovery to allow additional discovery related to the newly-produced documents, including possibly revisiting the depositions of previous witnesses, and taking a limited number of new depositions. In particular, given the misleading state of the record regarding the calls to DMC's sales force, the DMC Defendants requested that the FTC agree to produce the investigator for a deposition on the nature and number of calls, and the content thereof. The FTC refused, unless the DMC Defendants would agree to halt all of its current advertising. Obviously, such a proposal amounted to no proposal at all. *Id*.

Unable to reach agreement, the DMC Defendants now move to reopen discovery for a reasonable period (which they suggest should be, at a minimum, ninety days), to dismiss the receivership motion or at a minimum to continue the hearing to a date at least thirty days after the close of discovery, and to adjust all other scheduling deadlines accordingly. In addition, the

DMC Defendants seeks sanctions against the FTC for its egregious failure to comply with its discovery obligations, including an award of their reasonable attorneys' fees incurred in bringing the instant motion.[4] The DMC Defendants also request an order requiring the FTC to preserve all documents in its possession related to this case, including all computer files and all tapes or other recordings of undercover calls, and order that all relevant and potentially exculpatory information be produced immediately.

## Background

Following the parties' initial Rule 26(a)(1) discovery disclosures,[5] the DMC Defendants issued its first set of document requests to the FTC in January 2005.[6] The documents requested were as follows:

    1.    All sworn statements, including but not limited to deposition transcripts and/or affidavits or declarations, by any Person, obtained by the FTC in connection with any investigation and/or litigation concerning coral calcium or Supreme Greens.

    2.    All documents obtained by the FTC from any Person other than DMC or ITV in connection with any investigation and/or litigation concerning Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald Barrett, coral calcium or Supreme Greens.

    3.    All correspondence between the FTC and Healthy Solutions or Health Solutions.

    4.    All correspondence between the FTC and Triad or King Media.

    5.    All correspondence between the FTC and Deonna Enterprises.

    6.    All correspondence between the FTC and Kevin Trudeau and/or any Person associated with Kevin Trudeau.

---

[4] The DMC Defendants reserve their right to seek more severe sanctions if the evidence reveals, as it appears it might, that the FTC deliberately misled this Court about its evidence related to DMC's sales practices.

[5] The FTC's initial disclosures are attached as Exhibit 1 to the Robertson Affidavit.

[6] Robertson Aff., ¶5, Ex. 3.

       7.    All expert reports submitted in any litigation commenced by the FTC concerning coral calcium or Supreme Greens, including but not limited to litigation commenced in the United States District Court for the Northern District of Illinois.

       8.    All investigative files in the possession of the FTC concerning coral calcium or Supreme Greens.

       9    All documents, including opinions and/or reports, prepared by any expert witness the FTC intends to call at trial.

       10.    All scientific or research materials in the possession of the FTC concerning coral calcium or Supreme Greens.

       11.    All documents or correspondence from consumers to the FTC regarding coral calcium or Supreme Greens.

       12.    Documents sufficient to identify all Persons with whom the FTC has obtained evidence in connection with its investigation of coral calcium or Supreme Greens, and this litigation. "Evidence" is defined to include oral or written statements, interviews, documents, data, media, financial information, scientific data, or any other means to ascertain the truth of any fact.

Over the course of the next several months, the FTC produced several thousand documents to the DMC Defendants pursuant to its automatic disclosure obligations and defendants' document request. Much of this information, however, consisted of the DMC Defendant's own documents, such as the DMC Defendants' own customer files. Robertson Aff., ¶6.

On or about May 25, 2005, the FTC moved to modify the Court's June 23, 2004 preliminary injunction to appoint a receiver to control the operations of the DMC Defendants. The basis for the FTC's motion was, in pertinent part, its claim (i) that two of five new advertisements (Sea Vegg and Renuva) aired by the DMC Defendants made unsubstantiated health claims; (ii) that the defendants continued to use a misleading talk show format (notwithstanding that the advertisements contained the disclosures required by the Court); (iii) that, based on activities of one of its investigators, Christina Turner, who made undercover calls to ITV, the defendants failed to ensure that sales representatives made appropriate disclosures

- 7 -

and obtained the consent of consumers before enrolling them in DMC's autoship program;[7] and (iv) that the DMC Defendants were allowing their distributors to market ITV's products using strong health and disease claims. *See* FTC Memorandum in Support, pp. 8-24. The FTC requested expedited consideration by the Court. *Id*.

In response to the FTC's motion, on June 3, 2005, the DMC Defendants issued a second request for documents, which included the following:[8]

> 1. All records of any telephone calls by any employee, agent or representative of the FTC to any sales representative of Direct Marketing Concepts and/or ITV Direct, Inc. from January 1, 2004 to the present. In the absence of telephone records identifying each such call, provide documents sufficient to identify each call made by any employee, agent or representative of the FTC during the relevant period.
>
> 2. All notes, recordings or transcripts of any calls by any employee, agent or representative of the FTC to any sales representative of Direct Marketing Concepts and/or ITV Direct, Inc. from June 1, 2004 to the present.
>
> 3. All documents concerning any correspondence, credit card charges, refunds or billing, concerning any products ordered by any employee, agent or representative of the FTC from Direct Marketing Concepts and/or ITV Direct, Inc. from June 1, 2004 to the present.
>
> 4. Documents sufficient to identify all Persons with whom the FTC has obtained evidence in connection with its investigation of any infomercial produced or distributed by Direct Marketing or ITV from June 1, 2004 to the present. "Evidence" is defined to include oral or written statements, interviews, documents, data, media, financial information, scientific data, or any other means to ascertain the truth of any fact.
>
> 5. All documents relied upon or prepared by any expert witness identified by the FTC in connection with this litigation, including all studies, scientific materials, notes, drafts of reports, and correspondence with the FTC.

---

[7] One of the major components of the FTC's argument for this relief is that Christina Turner, an FTC investigator acting undercover, had made calls to the DMC sales force and was misled about the autoship program and had not provided her consent to the program. Based on the submission of three selected transcripts of these calls, the FTC contended that these calls were representative of typical calls to the DMC sales force. Although Ms. Turner acknowledged making other calls, she did not disclose how many, nor were the transcripts of these calls produced to the DMC Defendants. The FTC also insinuated that funds were being misused, but did not supply the Court with any specific evidence of such misuse. Robertson Aff., ¶ 7.

[8] Robertson Aff., ¶ 8, Ex. 5.

- 8 -

  6. All manuals and/or guidelines utilized by the FTC in connection with investigations conducted by the FTC staff, including but not limited to the Federal Trade Commission's Operating Manual, any additional policies and procedures for conducting investigations, procedures for undercover operations, and procedures for recording of telephone calls.

  7. Any complaints sent directly to the FTC by any consumer concerning Direct Marketing or ITV from June 1, 2004 to the present.

The FTC responded to the Second Request on July 5, 2005 by stating that responsive documents would be produced.[9] Robertson Aff., ¶ 8, Ex. 6. Thereafter, the FTC continued to produce some additional documents, but none specifically responsive to the Second Request. Robertson Aff., ¶ 10.

Inexplicably, on September 12 and 13, 2005, at a time when the DMC Defendants were in the process of preparing additional responses to the FTC's receivership motion (then due to be heard on September 20), they received approximately 6,000 pages of additional documents from the FTC. Robertson Aff., ¶11. Although the volume of documents prevented a thorough review, a preliminary review disclosed that the documents produced were highly relevant to the present litigation and motion. *Id.*, ¶ 12-14. The documents contained the FTC's communications with former defendants in this litigation, including Healthy Solutions and the Triad parties, communications with former DMC employees, communications with former DMC business partners such as Ideal Health, and communications with the FTC's own experts. *Id*. The production also contained draft declarations from former employees that the FTC has had in its possession since May and June, 2004. *Id*. As noted, some of these documents are pertinent to witnesses that have already been deposed. *Id.* Finally, while the production contained portions

---

[9] On June 6, 2005, the parties had agreed to a stipulated joint motion to extend the Court's Scheduling Order. Under the revised order, all discovery was to be completed by July 21, 2005. Robertson Aff., ¶ 9, Ex. 7.

- 9 -

of what evidently is the FTC's policy manual for undercover investigations,[10] the FTC did not produce the transcripts of investigative calls made to ITV that it supposedly relied upon in seeking a receiver, claiming that the transcripts were somehow privileged. *Id*., ¶16.

After a brief review, on September 13, in an email to the FTC, the DMC Defendants, through counsel, raised its objections (and indignation) to the late production and notified the FTC that it would seek sanctions for the late production. Robertson Aff., ¶17, Ex. 10. The parties conferred by telephone on September 14th. *Id*., ¶18. In short, the DMC Defendants sought the FTC's agreement to continue the receivership hearing and reopen discovery for sixty days in order to allow the DMC Defendants time to fully review and evaluate the documents, to conduct further discovery, including depositions, needed to follow up on the new information, and to obtain and review the still withheld transcripts of investigative calls and whatever other remaining documents were being withheld. *Id*. Notwithstanding the palpable prejudice of the late discovery to the DMC Defendants and the need for further discovery, the FTC refused to agree to a continuance unless the DMC Defendants agreed to cease its current advertising, a condition wholly unacceptable to the DMC Defendants. *Id*.

In addition to discussing a continuance, counsel also discussed the production of all of the transcripts of calls by the FTC's undercover investigator to the DMC sales force, which still had not been produced. Robertson Aff., ¶19. Although the FTC had admitted to possessing some transcripts for several months, they informed counsel for the DMC Defendants for the first time in September 2005 that they would only produce them under an "attorneys eyes only" designation and refused to allow them to be shared with anyone from DMC. *Id.* The DMC

---

[10] The "Taping Cheat Sheet" produced by the FTC advises investigators to use a "dazed and confused" style when speaking with representatives of targeted businesses.

Defendants still did not know what these transcripts contained, but strongly believed they would contain highly relevant and exculpatory evidence. *Id.*

Finally, and only after agreeing to an attorneys eyes only designation, the transcripts were produced to counsel on September 15, 2005. Robertson Aff., ¶19. As noted above, the DMC Defendant's belief about these transcripts was confirmed, as they demonstrate that the majority of calls made by the FTC were handled extremely well by the DMC sales force and fully complied with this Court's prior order. For example, in one such call, the sales representative states on several occasions "I want you to feel comfortable" and "I want you to feel really comfortable with everything," while specifically stating in response to a leading question from the investigator, "I'm *not* putting you on the autoship so you don't have to worry about that, okay?" (emphasis added). *Id.*, ¶20 It is no wonder that the FTC did not want to produce them until after the Court heard the motion for receiver, and it is hard not to conclude that the delay and attempt to hide this evidence was deliberate.[11]

Not surprisingly, the FTC faxed a letter to the DMC Defendants at 9:00 p.m. on September 14, 2005, attempting to justify its late production. Robertson Aff., ¶24. For example, the FTC stated that the vast majority of the documents produced were documents it received from the Triad defendants in June 2005. *Id*. It did not explain the delay or acknowledge that it never informed the DMC Defendants earlier that such documents (or other documents ) would be produced. *Id*. Likewise, the FTC attempted belatedly to downplay any prejudice from its late production of documents, stating that such documents are not relevant to the FTC's motion for a receiver. *Id*. This argument, however, is belied by the documents themselves. As noted, the

---

[11] Moreover, just yesterday the FTC produced four additional transcripts of calls made to the defendants. Robertson Aff., ¶21. In short, the FTC only placed three of eleven calls before the Court. Because of the strict conditions under which the DMC Defendants agreed to receive and review the transcripts, they are not being submitted with Robertson's affidavit. Of course, if requested or ordered by the Court in connection with this motion, the DMC Defendants will immediately produce the documents. Robertson Aff., ¶22.

FTC bases its motion on the allegation that there has been a pattern of violative conduct by the DMC Defendants from 2003 through the present. Clearly, given the draconian relief sought by the FTC, the relevance of communications with third parties and former employees about DMC's alleged business practices, which form the heart of the FTC's motion, are relevant. The lack of production of such information is likewise extremely prejudicial.[12] Similarly, the relevance of the complete transcripts of calls between the FTC and DMC salespeople, as well as the policies and procedures followed in those calls, cannot be seriously questioned.[13]

## Argument

**A.    A Continuance And Further Discovery Is Required.**

As has been often recognized, the purpose of timely and full discovery is to make trials less a game of blindman's bluff than a fair contest with the basic issues and facts disclosed to the fullest practicable extent. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988). "Mutual knowledge of all of the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

---

[12] In addition to the late production of 6,000 pages of admittedly relevant documents, the FTC still has not confirmed that its production is complete. For example, the DMC Defendants requested all correspondence with experts and all materials relied upon by experts. When asked whether all of these documents have been produced, the FTC staff stated that they "believed" so, but could not confirm that belief. Likewise, the FTC has been unable to confirm that all correspondence with former employees, other defendants, business partners and third parties has been produced. The DMC Defendants have been provided no assurance that all of the FTC's emails and hard drives have been searched for relevant information. Robertson Aff., ¶ 25.

[13] The FTC has been unable to confirm or provide any information regarding the total calls made by the FTC staff to the DMC call center. On September 16, 2005, the FTC was contacted by email to confirm this information, which had been requested in June 2005. Robertson Aff., ¶ 26, Ex. 12. Obviously, this information, which provides the context of the calls and transcripts that were provided to the Court, is critical to the DMC Defendant's defense of the FTC's motion and allegations of widespread abuses in the DMC call center. Despite receiving other correspondence from the FTC on September 16, the FTC failed to respond to the request or produce any clarifying information. The only conclusion is that this information cannot be confirmed, does not exist or has been destroyed. Ms. Turner has since left the FTC and we have been provided no assurance that her files and notes of these calls have been maintained. It is quite possible that they have been destroyed, to the extreme prejudice of the DMC Defendants.

Here, in the first instance, it is evident that with respect to the receivership motion the FTC has not been forthcoming with the DMC Defendants or the Court. There is no question but that a primary argument made by the FTC in seeking a receiver is its contention that the DMC Defendants have ignored the Court's directive in the injunction to obtain the consent of consumers and to disclose the terms of the autoship program. In support of its motion, the FTC selectively submitted evidence from Christina Turner of investigative calls to ITV to foster the impression of rampant deception by the DMC Defendants without ever disclosing the number and content of other calls made by Turner or other investigators. The FTC has been unable to confirm or provide any information regarding the total calls made by the FTC staff to the DMC call center, but the FTC has now turned over eleven transcripts of calls. Robertson Aff., ¶¶ 21, 26. In addition, Ms. Turner has since left the FTC and there have been no assurances that her files and notes of these calls have been maintained.[14] *Id., ¶26.* Further discovery of the knowledge and activities of Ms. Turner and others and whether and to what extent they complied with FTC's policies in her investigation is imperative. In the interest of full and fair disclosure, all files related to investigative calls by Turner and others must be turned over to the DMC Defendants and they should have an opportunity to depose Turner or the other investigators who made calls to ITV before the extreme remedy of appointing a receiver is considered by the Court. Although, as shown below, the Court is authorized and under the circumstances would be justified to dismiss the receivership motion on the basis of the FTC's deception and failure to

---

[14] As a consequence, the DMC Defendants request the Court to order the FTC to preserve all documents in its possession related this case, including all computer files and all tapes or other recordings of undercover calls, and order that all relevant and potentially exculpatory information be produced immediately. *See Williams v. Massachusetts Mut. Life Ins., Co*., 226 F.R.D. 144, 146-47 (D. Mass. 2005) (order to preserve documents, hard drives and emails).

disclose, at a minimum the hearing on the motion should be continued to afford the DMC Defendants additional discovery on this issue.[15]

The need for a continuance to take additional discovery goes beyond the receivership motion and the defendants' autoship program. As noted, the production contains a number of communications between the FTC and former employees of DMC and contains emails and correspondence between the FTC and the other defendants in this case, all of which are highly relevant. Robertson Aff., ¶¶ 13-14. In several instances, these late-produced documents are material to witnesses already deposed by the FTC. Further, it appears that certain defendants agreed to cooperate with the FTC and were provided advance warning of the present lawsuit, but none of this correspondence, or the documents provided by these defendants as part of this cooperation, were provided to the DMC Defendants. Thus, the FTC was in possession of documents relevant to the testimony of witnesses but hid these documents from the DMC Defendants and deprived them of the opportunity to cross-examine on the withheld documents. Such conduct clearly violates fair rules of discovery, and the FTC should not be allowed to benefit from these sorts of tactics. Finally, the production also includes correspondence between the FTC and their expert witnesses. Obviously, all of this new information is highly relevant and certainly may lead to the discovery of additional relevant information.

B. **The FTC Should Be Sanctioned.**

Under Rule 37(c) a party may be sanctioned for failing to disclose information required by Rule 26(a) and (e) without the need to file a motion to compel.[16] *Wilson v. Bradlees of New*

---

[15] As noted, the production also includes documents reflecting communications between the FTC and counsel for Ideal Health, seeking information on ITV's autoship program..

[16] Rule 26(a) requires in pertinent part the automatic production of a copy of or a description of all documents that the disclosing party may use to support its claims. Rule 26(e) obligates the disclosing party to supplement its disclosures under Rule 26(a).


*England*, 250 F.3d 10, 20-21 (1st Cir. 2001) (trial court has the authority to exclude an exhibit that is untimely produced under the deadlines set by a case management order); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001); Wright, Miller & Marcus, 8A *Federal Practice and Procedure Civil 2d*, §2289.1 (1994) (sanction is automatic).[17]  Rule 37(c) provides in pertinent part:

> (c)  Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.
>
> (1)  A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) may include informing the jury of the failure to make the disclosures.

The powers under Rule 37(b)(2)(A), (B) and (C) include

> (A)  An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;
>
> (B)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence;
>
> (C)  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

---

[17] Moreover, courts have the inherent power to impose sanctions on the nonproduction of documents even where no order compelling production was obtained.  *See, e.g., Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co.*, 106 F.R.D. 59. 70 (D. Mass. 1985); *In re Williams*, 215 B.R. 289, 302 (D.R.I. (1997)) ("When confronted with conduct which is not sanctionable by particular discovery rules, courts have other means of redressing abusive or opprobrious discovery practices.").  Indeed, procedural gamesmanship and dilatory tactics have been found sufficient to waive a person's right to assert Fifth Amendment privilege protecting disclosure of tape.  *Day v. Boston Edison Co.*, 150 F.R.D. 16, 22-24 (D. Mass. 1993).

The sanctions available under Rule 37(c) apply not only at trial but also with respect to any motion or to a hearing. 8A *Federal Practice and Procedure Civil 2d*, §2289.1 at 704. They apply even as to the disclosure of evidence that a party does not intend to use. *Id.* at 705-06 *citing* Advisory Committee Notes, 146 F.R.D. at 691 ("Preclusion of evidence is not an effective incentive to compel disclosure of information, that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party."). Thus, beyond question, the Court has the authority to strike the FTC's motion for a receiver based on its failure to provide the transcripts of Ms. Turner's calls to the DMC Defendants, let alone its failure to candidly advise the Court that other available transcripts established a quite different picture of their sales office operations. *See* Rule 37(b)(2)(C).

The First Circuit has noted that Rule 37(c) requires the near automatic exclusion of Rule 26 information that is not timely disclosed, and to avoid the exclusion of evidence, "it is the obligation of the party facing sanctions for belated discovery to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction." *Wilson*, 250 F.3d at 20-21. In this case, there is no reasonable basis to conclude that the FTC's conduct was either justified or harmless.

The circumstances and context of the FTC's late production cannot be over emphasized. The FTC has been seeking since May to have a receiver appointed to close down defendants' business based on a host of new allegations and claims. The memorandum in support, the numerous supporting affidavits and its two supplemental briefs give abundant evidence of the substantial time and effort the FTC has put into its effort to close down defendants' business. Nor can it be seriously disputed that a major thrust of the FTC's motion was to suggest to the Court that the defendants were intentionally ignoring the Court's injunction. The FTC sought an

expedited hearing on the receiver, and consistently has resisted efforts by the defendants to provide themselves with a reasonable amount of time to respond adequately to the receivership motion.  The defendants received no documents responsive to the second request for documents until September 12 ( a week before the then scheduled hearing) and at a time when the defendants were in the process of gathering materials and further argument in response to the FTC's supplemental briefs.  The transcript of other investigative interviews were produced by the FTC on September 15 and then only after the conference call on September 14 when the defendants expressed their outrage at the late production and withholding of the transcripts.  Just yesterday four new transcripts were belatedly produced.  Clearly, the late production of 6,000 documents and the transcripts was not a mere oversight by the FTC and was intended to hamstring the defendants as much as possible in its opposition to the receivership motion.  Such gamesmanship by a government agency should not be countenanced, especially one with the power and authority of the FTC.  Even beyond the receivership motion, there is no justification for the FTC's withholding of relevant documents that could have been used by the DMC Defendants in the course of the depositions that were taken.  It certainly was not up to the FTC to determine which documents are relevant or have evidentiary value.  *See Day v. Boston Edison Co.*, 150 F.R.D. 16, 23 (D. Mass. 1993) (whether document is relevant is not determined by counsel for party of whom request is made).

In the event that the Court determines that dismissal of the receivership motion at this point is unwarranted, there is a compelling need for a continuance of the hearing and further discovery both into the general merits of the FTC's claims in light of the new information disclosed but also into the circumstances of the FTC's specific investigation that it has placed before the Court in its receivership motion.  Moreover, the Court should order the FTC to

- 18 -

reimburse the DMC Defendants for their costs in bringing this motion and further in taking such additional, reasonable follow-up discovery as the circumstances require. See *Petroleum Ins., supra,* where the court's sanctions included a continuance and an award of reasonable expenses, including attorneys' fees, incurred by defendants in having their counsel re-prepared their case during the continuance. 106 F.R.D. at 65.

### Conclusion

In conclusion, the DMC Defendants pray the Court to:

1. Dismiss the FTC's motion seeking the appointment of a receiver; or in the alternative,

2. Continue the hearing on the FTC's motion until 30 days after the DMC Defendants have completed supplemental discovery;

3. Allow the DMC Defendants a reasonable period to conduct additional discovery for a period of ninety (90) days;

4. Order that the FTC reimburse the DMC Defendants for their expenses in bringing the instant motion and in conducting any discovery that is reasonably required by the FTC's late disclosures; and

- 19 -

5.  Order that the FTC to preserve all documents in its possession related this case, including all computer files and all tapes or other recordings of undercover calls, and order that all relevant and potentially exculpatory information be produced immediately.

          Respectfully submitted,
          DIRECT MARKETING CONCEPTS, INC., ITV
          DIRECT, INC., AND DONALD W. BARRETT

          By their attorney(s),


          /s/ Christopher Robertson
          Peter S. Brooks, BBO #058980
          Christopher F. Robertson, BBO #642094
          Susan W. Gelwick, BBO #567115
          SEYFARTH SHAW LLP
          Two Seaport Lane, Suite 300
          Boston, MA 02210-2028
          Telephone:   (617) 946-4800
          Telecopier:   (617) 946-4801

Dated: September 20, 2005