# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CIVIL ACTION NO. 04-CV-11136GAO ) |
| DIRECT MARKETING CONCEPTS, INC., et al., | ) ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF CHRISTOPHER F. ROBERTSON

I, Christopher F. Robertson, being duly sworn, do hereby depose and state that:

1. I am an attorney admitted to practice law in the Commonwealth of Massachusetts and am associated with the law firm of Seyfarth Shaw LLP, counsel for Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald Barrett (the "DMC Defendants"). I submit this affidavit in support of the DMC Defendants' Motion for a Continuance and for Sanctions.

2. This action was filed on June 1, 2004, seeking a permanent injunction against the DMC Defendants and others as a result of two infomercials the FTC contended violated the FTC Act. After a hearing, on June 23, 2004 the Court denied the FTC's request to appoint a receiver to take over the DMC Defendants' business and freeze their assets, but entered a preliminary injunction restricting certain activities. The Court also allowed the FTC to physically visit the premises of DMC, review documents and copy any information it deemed relevant. That on-site inspection occurred in July 2004.

- 2 -

3. On August 27, 2004, the FTC served its Rule 26(a)(1) Initial Disclosures upon the DMC Defendants. A true and accurate copy of that document is attached hereto as Exhibit 1. No documents were produced by the FTC in connection with its initial disclosures.

4. On January 13, 2005, the parties submitted an amended joint statement pursuant to Local Rule 16.1, allowing the parties until June 21, 2005 to complete discovery. A true and accurate copy of that document is attached hereto as Exhibit 2.

5. On January 28, 2005, the DMC Defendants issued its first set of document requests to the FTC. A true and accurate copy of that document is attached hereto as Exhibit 3. On February 28, 2005, the FTC served its response to this request, a copy of which is attached hereto as Exhibit 4.

6. Over the course of the next several months, the FTC produced several thousand documents to the DMC Defendants in response to the first document request. Much of this information, however, consisted of the DMC Defendants' own documents collected by the FTC during its on-site review, such as the DMC Defendants' own customer files and correspondence. Other documents included pleadings and related materials from the coral calcium litigation instituted by the FTC in the Northern District of Illinois.

7. On May 25, 2005, the FTC moved to modify the Court's June 23, 2004 preliminary injunction. In the motion, the FTC once again sought the appointment of a receiver to control the operations of the DMC Defendants. Among other issues raised by the FTC, one of the major components of the FTC's argument for this relief was that Christina Turner, an FTC investigator acting undercover, had made calls to the DMC sales force and been misled about the autoship program and had not provided her consent to the program. Based on the submission of three selected transcripts of these calls, the FTC contended that these calls were representative of

typical calls to the DMC sales force. Although Ms. Turner acknowledged making other calls, she did not disclose how many, nor were the transcripts of these calls produced to the DMC Defendants. The FTC also insinuated that funds were being misused, but did not supply the Court with any specific evidence of such misuse.

8.      In response to the FTC's motion, on June 3, 2005 the DMC Defendants issued a second request for documents, a true and accurate copy of which is attached hereto as Exhibit 5. This request specifically requested records of all calls by any FTC agent or employee to the DMC sales representatives, as well as any recordings or transcripts of such calls. The request also sought all correspondence with any experts and all materials relied upon by any expert. On July 5, 2005, the FTC responded by stating that it would produce responsive information in response to these requests. A true and accurate copy of the FTC's response is attached hereto as Exhibit 6.

9.      On June 6, 2005, the parties agreed to a stipulated joint motion to extend the Court's Scheduling Order. Under the revised order, all discovery was to be completed by July 21, 2005. A true and accurate copy of the stipulated motion is attached hereto as Exhibit 7.

10.     Between July 5, 2005 and September 9, 2005, the FTC produced some additional documents in response the DMC Defendants' First Request for Documents, as well as additional customer files from DMC's own database. During this period, however, the FTC did not produce any information regarding the undercover calls to the DMC sales force, nor did it produce any policies or procedures regarding those calls.

11.     Without warning, and during the period that the DMC Defendants were preparing their responding papers to the FTC's motion for receiver, including the preparation of a supplemental brief and supplemental affidavits and scientific evidence, the FTC sent an

additional 6,000 pages of documents to the DMC Defendants, which were received over the course of the week of September 12, 2005 in a number of installments. This production was made only a week before the parties had been scheduled to appear before the Court for a hearing on the FTC's motion for a receiver.

12. Although the volume of documents and preparation for the pending motion hearing has prevented a thorough review of the thousands of documents produced by the FTC, a preliminary review of those documents demonstrates that the documents are highly relevant to the present litigation and motion. Among other things, the documents contain the FTC's communications with the other defendants in this litigation, including the Healthy Solutions and the Triad parties, communications with former DMC employees, communications with former DMC business partners such as Ideal Health, and communications with the FTC's own experts. Copies of certain documents from the production, including examples of the these various communications, are attached hereto as Exhibit 8. The production also contains draft declarations from former employees that the FTC has had in its possession since May and June 2004.

13. With respect to communications between the FTC and former employees of DMC, it appears at least in one instance that the FTC received documents from a witness that the FTC deposed, but the FTC did not produce these documents to the DMC Defendants prior to the employee's deposition. The FTC was in possession of documents relevant to this witness' testimony but failed to produce these documents to the DMC Defendants and thus deprived them of the opportunity to cross-examine this witness on these withheld documents.

14. Similarly, the production includes emails and correspondence between the FTC and the other defendants in this case, some of who were also deposed by the FTC. Again, the

FTC had the benefit of these documents, but deprived the DMC Defendants the opportunity to review these documents and use them to cross examine relevant witnesses. Most troubling, it appears that these defendants agreed to cooperate with the FTC and were provided advance warning of the present lawsuit, but this correspondence and the documents provided by these defendants as part of this cooperation was withheld from the DMC Defendants until now. Another category of documents only now produced relate to correspondence between the FTC and their expert witnesses. Much of this information appears to be heavily biased and untrue. For example, it now appears that one informant told the FTC that the DMC Defendants had established foreign bank accounts, which the FTC then relayed to this Court. That allegation is untrue, but the DMC Defendants had no opportunity to depose this witness to underscore the weakness of the FTC's arguments.

15. In addition to its late production, the FTC also selectively redacted without any explanation many of the produced documents, excluding what the FTC claimed was "proprietary" information. The FTC also redacted substantial information under an undefined "law enforcement privilege." When asked whether they could cite any authority for asserting these privileges, the FTC staff admitted that they could not. Although the FTC has since produced some of these documents with fewer redactions, many redactions still remain, preventing a complete review by the DMC Defendants.

16. While the production contained portions of what evidently is the FTC's policy manual for undercover investigations, including the FTC's policies relating to how calls must be made and recorded and other relevant guidelines, the FTC still did not produce the actual transcripts of the investigative calls made to DMC. In refusing to provide these documents, the FTC claimed – beginning with a letter to me dated August 31, 2005, a true and accurate copy of

- 5 -

which is attached hereto as Exhibit 9 – that the transcripts were somehow privileged, and stated that they would only be produced in redacted form if the parties would agree to limit review of the documents to outside counsel.  Prior to August 31, 2005, and certainly at no point before the close of discovery, the FTC had never made any such request, nor indicated that the transcripts even existed.

17.    On September 13, 2005, I sent an email to the FTC to express the DMC Defendants' objections to the late production.  A copy of this correspondence is attached hereto as Exhibit 10.  In response, the FTC requested a meeting by telephone to discuss the matter, which was scheduled for the following day.

18.    On September 14, 2005, the parties held a telephone conference to attempt to reach some accommodation regarding the FTC's late production.  After expressing its surprise and deep concerns over the FTC's conduct, we sought the FTC's agreement to continue the receivership hearing and reopen discovery for sixty days in order to allow the DMC Defendants time to fully review and evaluate the documents, to conduct further discovery, including depositions, needed to follow up on the new information, and to obtain and review the still withheld transcripts of investigative calls and whatever other remaining responsive documents existed that had yet to be produced.  Although the FTC agreed that we had every right to be concerned and upset over the late production, the FTC claimed there was no prejudice from the late production and refused to agree to any continuance whatsoever, unless the DMC Defendants agreed to cease their current advertising altogether.  Not surprisingly, we informed the FTC that the DMC Defendants would not agree to these terms.

19.    In addition to discussing a continuance, we also discussed the production of all of the transcripts of calls by the FTC's undercover investigator to the DMC sales force, which still

- 6 -

had not been produced.  The FTC informed us that they would only produce the transcripts under an "attorneys eyes only" designation.  The FTC specifically refused to produce any transcripts, even in redacted form, unless they were assured that the would not be seen by anyone from DMC.  Because we strongly believed the transcripts would contain highly relevant and exculpatory evidence, we ultimately agreed to such a designation, without prejudice to seeking later relief from the Court, if necessary in the defense of the FTC's motion and the case in general.  Only after confirming our agreement in writing did the FTC finally produce some of these documents on September 15, 2005.

20.     Based upon a review of these additional transcripts, it is clear that they are extremely helpful to the DMC Defendants' defense of the FTC's motion for receiver.  The transcripts demonstrate that DMC sales personnel are well-trained and provide ample and detailed notice to customers regarding the DMC autoship program, as well as the other available purchase programs.  For example, in one such call, the sales representative states on several occasions "I want you to feel comfortable" and "I want you to feel really comfortable with everything," while specifically stating in response to a leading question from the investigator, "I'm *not* putting you on the autoship so you don't have to worry about that, okay?"  (emphasis added).  This transcript completely undermines the FTC's argument that the DMC sales force has been instructed to force people on autoship, which is a key foundation of the FTC's motion for receiver. Other transcripts show a similar diligence on the part of DMC's salespersons.  Nonetheless, this highly relevant and exculpatory information was withheld from the DMC Defendants until just this week, days before the Court had been scheduled to hear the FTC's motion.  The FTC has provided no excuse for this conduct.

- 7 -

21.     In addition to the seven transcripts provided on September 15, 2005, the FTC recently informed me that they did have additional recordings of calls by the FTC staff to the DMC call center that had not been transcribed or produced.  Transcripts of these calls were just produced to us yesterday, and we have not had time to review those transcripts thoroughly.  However, it now appears that there were at least eleven calls into the DMC call center, and only three transcripts were put before the Court as representative of the overall calls.  We suspect there were even more calls, which may or may not have been recorded.

22.     Because of the strict conditions under which the DMC Defendants agreed to receive and review the transcripts, they are not being submitted with this affidavit.  Of course, if requested or ordered by the Court in connection with this motion, the DMC Defendants will immediately produce the documents.

23.     The documents produced also include correspondence with third party business partners of DMC related to industry autoship practices in general and the DMC Defendants' autoship practices in particular.  None of this information, which is not helpful to the FTC, was produced previously.  In addition, the FTC has produced a limited number of documents with consumer agencies, such as the Better Business Bureau.  These documents are also not helpful to the FTC, as they show only minimal customer complaints.  For example, one such document shows that only eight complaints were received over several months, despite the fact that DMC handles thousands of calls per day.  Any argument that this information, which was never presented to the Court or the DMC Defendants, is not relevant, is simply not credible.

24.     At 9:00 p.m. on September 14, 2005, the FTC faxed a letter to counsel for the DMC Defendants attempting to justify its late production.  A true and accurate copy of the FTC's letter is attached hereto as Exhibit 11.  In that letter, however, the FTC's explanations do

not ring true. For example, the FTC states that the vast majority of the documents produced were documents it received from certain other defendants in June 2005, before the close of discovery. No explanation is provided as to why it took three months to produce these documents. Similarly, the FTC simply ignores a number of documents in the production, such as emails from former employees and defendants in this case, which have been attached hereto as Exhibit 8. Even a cursory review demonstrates the relevance of this information, and the FTC made no serious argument otherwise. Instead, the FTC's only response has been that the failure to produce the documents is somehow not prejudicial.

25.     In addition to the late production of 6,000 pages of admittedly relevant documents, the FTC still has not confirmed that its production is complete. For example, the DMC Defendants requested all correspondence with experts and all materials relied upon by experts. When asked whether all of these documents have been produced, the FTC staff stated that they "believed" so, but could not confirm that belief. Likewise, the FTC has been unable to confirm that all correspondence with former employees, other defendants, business partners and third parties has been produced. We have been provided no assurance that all of the FTC's emails and hard drives have been searched for relevant information.

26.     Finally, the FTC has been unable to confirm or provide any information regarding the total calls made by the FTC staff to the DMC call center. On September 16, 2005, I contacted the FTC by email to confirm this information, which had been requested in June 2005. A copy of this email is attached hereto as Exhibit 12. Obviously, this information, which provides the context of the calls, and transcripts that were provided to the Court is critical to the DMC Defendants' defense of the FTC's motion and allegations of widespread abuses in the DMC call center. Despite receiving other correspondence from the FTC on September 16, the

FTC failed to respond to my request or produce any clarifying information.  The only conclusion is that this information cannot be confirmed, does not exist or has been destroyed.  Ms. Turner has since left the FTC and we have been provided no assurance that her files and notes of these calls have been maintained.  It is quite possible that they have been destroyed, to the extreme prejudice of the DMC Defendants.

27.    If this matter is continued and discovery is reopened, we anticipate at a minimum requesting all of Ms. Turner's files, to the extent they still exist, as well as deposing Ms. Turner and any other FTC investigator who called the DMC sales force.  We also will seek to confirm that all other requested information has been produced, and may take additional depositions of third parties and/or the FTC's experts.  We believe that ninety days should be sufficient to complete this additional discovery, depending on the witnesses schedule and the existence of the documents in the FTC's files.  Of course, if it is discovered that relevant information has been altered or destroyed, we reserve the DMC Defendants' ability to move this Court for more severe sanctions.  Also, in light of the FTC's unwillingness to agree to any continuance, and the fact that this motion should have been unnecessary, the DMC Defendants request their attorneys' fees in bringing this motion.  In addition, the DMC Defendants request that the FTC be ordered to reimburse them for their expenses, including reasonable attorneys' fees, incurred in re-deposing witnesses on information that has just come to light.

Sworn to under the pains and penalties of perjury this 20th day of September 2005.

/s/ Christopher Robertson
Christopher F. Robertson