UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 SEP 28 A 11: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civ. No. 04-11136-GAO |
| DIRECT MARKETING CONCEPTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DMC DEFENDANTS' MOTION FOR CONTINUANCE AND FOR SANCTIONS**

I. **INTRODUCTION**

The motion filed by Defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV"), and Donald W. Barrett ("Barrett") (collectively "Defendants") for a continuance of the October 3, 2005 hearing scheduled on the Federal Trade Commission's ("FTC" or "Commission") motion for a modification of the preliminary injunction is, at its core, an attempt to delay further the Court's scrutiny of health and disease claims made in the Defendants' most recent infomercials. Such scrutiny clearly should result in the removal from the air of those infomercials – in particular, Sea Vegg, which, months after the Commission filed its initial motion, continues to be one of the most frequently run infomercials on cable television. Declaration of Edward Glennon, at ¶ 29 and Attachment 4. And, as explained below, the Defendants do not even suggest that any of the materials recently produced by the Commission relate to the substantive content of the Sea Vegg, Renuva, or Flex Protex infomercials.

The Commission has made its best effort to comply with its obligations to produce materials responsive to all document requests in this (and every other) case; any delay in

Page 1 of 13

producing materials to the Defendants was wholly unintentional.[1] The Defendants should not be allowed to use the delayed production of a relatively small volume of documents as a means of obtaining a wholesale reopening of discovery, especially where, as explained *infra*, they have long had adequate information about the names of potential deponents but have failed to notice even a single deposition. Moreover, in their zeal to bolster their arguments, the Defendants, mischaracterize certain of their communications with the Commission, and fail to mention the multiple steps the Commission has taken to address their concerns.

## II. THE OCTOBER 3, 2003 HEARING SHOULD NOT BE CONTINUED BECAUSE NONE OF THE MATERIALS IN QUESTION RELATES TO THE CLAIMS MADE IN THE DEFENDANTS' SEA VEGG AND RENUVA INFOMERCIALS, OR THEIR MORE RECENT FLEX PROTEX INFOMERCIAL

The primary issue addressed in the Commission's May 2005 motion for modification of the Court's June 23, 2004 Preliminary Injunction was the Defendant's continued dissemination of infomercials – in particular, Sea Vegg and Renuva infomercials – that made false and unsubstantiated health and disease claims, despite Donald Barrett's representation to the court in June 2004 that he no longer planned to run infomercials for ingestible products. Since then, the

---

[1] Similarly, the Defendants just produced to the Commission for the first time documents showing the transactions for a Citibank account that has been open since May 2005. Glennon Dec. at ¶ 28. The Commission is not suggesting that the Defendants deliberately withheld these documents from the Commission. Rather, we assume that they were merely making their best efforts to produce recently-discovered materials.

Nor have we ever suggested that the Defendants improperly attempted to prevent the Commission from deposing former ITV Director of Operations Eileen Barrett (who happens to be the sister of Defendant Donald Barrett and the wife of Defendant Robert Maihos). Defendants' counsel informed the Commission in March 2005 that Ms. Barrett was seven months pregnant, and could not handle a deposition even if it was split over three days of only 2 ½ hours each. In fact, Ms. Barrett gave birth in July – four months later – and the Defendants failed to respond to the Commission's subsequent requests for a date on which she could be deposed. Glennon Dec. at ¶ 4 and Att. 2.

Defendants have also initiated a new infomercial for Flex Protex, that blatantly violates the Preliminary Injunction.[2] Supplemental Memorandum in Support of Plaintiff Federal Trade Commission's Motion for a Modification of the June 23, 2004 Preliminary Injunction as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett and Request for Expedited Treatment, at 4-9 ("Commission Supplemental Memorandum in Support of Modification").

The Defendants' motion for a continuance does not even remotely suggest that any of the materials recently produced by the Commission have any bearing on the truthfulness of the health and disease messages conveyed by these infomercials. Rather, the Defendants focus primarily on documents that purportedly relate to their autoship practices, an issue that merited only 3 pages (beginning at page 20) of the Commission's 32-page memorandum in support of its motion for modification of the Preliminary Injunction.

In doing so, the Defendants not only elevate the autoship issue to undeserved importance – and ignore the primary issue that prompted the Commission to seek modification of the Preliminary Injunction – but also substantially overreach in their portrayal of the Commission's statements concerning the autoship issue. Contrary to the Defendants' assertions that the FTC's motion was "filled with claims of allegedly outrageous behavior by DMC . . . in an effort to paint the DMC sales floor as out of control," and that the FTC contended that Ms. Turner's experience in being put on a Sea Vegg autoship program without her consent was "representative of typical calls" to DMC, Defendants Memorandum at 4, 8 n.7, the Commission was extremely measured

---

[2] During our September 14, 2005 conversation with Defendants' counsel, they indicated that they were preparing a submission to be filed before the September 20 hearing that would rebut the Commission's assertion that the Flex Protex infomercial violates the Preliminary Injunction. Glennon Dec. at ¶ 6. To date, that submission has not been filed.

and fair in its discussion of the autoship issue. In its initial memorandum, the Commission expressly noted that Ms. Turner had declined an autoship option offered by DMC's sales representative in one of her Sea Vegg undercover calls, and had not been offered an autoship option in another. Memorandum in Support of Plaintiff Federal Trade Commission's Motion for a Modification of the June 23, 2004 Preliminary Injunction as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett and Request for Expedited Treatment, at 23 n.14 ("Commission Memorandum In Support of Modification"). The Commission also stated that:

> [it] does not know how widespread the problems are associated with ITV placing consumers on continuity plans without their consent. Thus, the Commission has not alleged contempt of the Preliminary Injunction, and does not seek to ban Defendants' autoship program outright.

*Id.* at 27 n.17. *See also* Reply Memorandum in Support of Plaintiff Federal Trade Commission's Motion for a Modification of the June 23, 2004 Preliminary Injunction as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett and Request for Expedited Treatment, at 15 (noting the Commission's previous acknowledgment that "based on the limited number of calls it made to ITV, [the Commission] could not judge how widespread the problems with Defendants' sales staff were.") ("Commission Reply Memorandum in Support of Modification").

The Commission does not concede that the Defendants have been prejudiced at all on the autoship issue by the delayed production of any of the documents at issue. Nonetheless, if the Court is concerned, the Commission respectfully submits that the public interest in protecting consumers from deceptive health and disease claims requires that the hearing go on as scheduled, and that the Court should simply disregard the autoship issue and focus, instead, on: (1) the

substantive content of the infomercials that the Defendants have put on the air since January 2005, and (2) Barrett's lack of trustworthiness, as detailed on pages 29-30 of the Commission's Memorandum In Support of Modification, on pages 11-14 of the Commission's Reply Memorandum in Support of Modification (concerning the Defendants' representations to the Court concerning, *inter alia*, the status of the ESRP proceedings), and on pages 9-10 of the Commission's Supplemental Memorandum in Support of Modification (concerning the Defendants' refusal to comply with ESRP's recommendations concerning the Sea Vegg infomercial, its representations to ERSP about the Court's July 2005 status conference, and the revocation of its membership in the Electronic Retailing Association).[3]

### III. HAVING FAILED TO NOTICE A SINGLE DEPOSITION TO DATE – EVEN OF THE COMMISSION'S EXPERT WITNESSES – THE DEFENDANTS HAVE NOT DEMONSTRATED THE NEED FOR A WHOLESALE REOPENING OF DISCOVERY

The Defendants' contentions that the documents in issue warrant a 90-day reopening of discovery so that they can, among other things, depose various individuals flies in the face of the fact that up to this point, they have not bothered deposing a single person in this case.

Specifically, the Defendants have had the reports of the Commission's expert on coral calcium (Richard J. Wood, Ph.D. and MaryFran Sowers, Ph.D.) and on Supreme Greens with MSM (Landon King, M.D. and Barrie Cassileth, Ph.D.) since March 2005. Glennon Dec. at ¶ 3 and Att. 1. They have also had expert reports submitted by the Commission pertaining to Sea

---

[3] The Defendants again attempt to fan the flames by asserting – incorrectly and without any basis – that the Commission's intention in seeking a receiver here is to have the receiver can shut DMC and ITV down. Defendants' Memorandum, at 2. To the contrary, as the Commission has stated previously, "the appointment of a receiver will change how Defendants conduct their business. It should not, however, disrupt any legitimate business activity that may exist." Commission Memorandum In Support of Modification, at 31.

Vegg (Christine Skibola, Ph.D) and Renuva (Mary Lee Vance, M.D.) since May 2005, as they were submitted with the Commission's motion for modification of the Preliminary Injunction. Nonetheless, they have not noticed the deposition of a single one of these experts.

Similarly, former Commission investigator Christina Turner filed four declarations in this case, including one in June 2005 in which she clearly stated that "Since the June 23, 2004 entry of the Preliminary Injunction, I have made a total of nine (9) taped, undercover calls to ITV to place product orders. I did make untaped calls to cancel autoships and inquire when I would be getting refunds for returned product." Glennon Dec. at ¶ 27 and Att. 3. Indeed, the Defendants have been aware of the Commission's use of undercover calls for law enforcement since June 2004, when the Commission included a declaration from Ms. Turner discussing her undercover call to the Supreme Greens line in its submission to the Court in support of its request for a temporary restraining order. Until now, however – when they are seeking a four-month delay of the hearing on the Commission's motion – the Defendants have had no interest in deposing Ms. Turner related to her conversations with DMC's sales representatives.[4]

The Commission specifically told counsel for DMC on September 14, 2005 that it would be willing to consider requests for specific reopenings of discovery premised on information contained in particular documents produced by the Commission in September. Glennon Dec. at ¶ 30. In other words, DMC should have to justify any new discovery based on the contents of the relatively small volume of recently-produced documents. The Commission believes that DMC

---

[4] During the September 14, 2005 telephone conversation between the Commission and Defendants' counsel, DMC did not specifically request Ms. Turner's Deposition. Glennon Dec. at ¶ 8. Furthermore, during that conversation, the Commission did not ask that all of DMC's advertising be taken off the air as a condition to our agreeing to a continuance of the October 3rd hearing. Rather, the Commission asked only that DMC take Sea Vegg and Flex Protex off the air. Glennon Dec. at ¶ 7.

will be hard-pressed to do so, given that the bulk of the documents in question are materials that were either already in the Defendants' possession (*i.e.*, correspondence between the Defendants and Defendant Triad ML Marketing) or relate to matters not being challenged by the Commission (*i.e.*, documents relating to retail sales of various products). Glennon Dec. at ¶ 9.

In an effort to argue that they have suffered prejudice from the timing of the Commission's production, the Defendants refer to general categories of documents – such as communications with experts or witnesses later deposed – without detailing the actual nature of the produced documents.[5] For instance, the Defendants make much of documents from a former DMC employee that the FTC did not produce before deposing the employee. The Defendants, in fact, go so far as to brazenly state that "the FTC hid these documents from the DMC Defendants and deprived them of the opportunity to cross-examine this witness on these withheld documents." Defendants Memorandum, at 3. The Defendants appear to be referring to approximately 50 pages of emails and attachments sent to the Commission by Erik Limbaugh on Friday, May 13, 2005. The Defendants fail to note that (1) the Commission received these emails from Mr. Limbaugh one business day before deposing him on Monday, May 16;[6] (2) all of

---

[5] The Defendants cannot credibly argue that they have been unable to fully review the produced documents. Despite their repeated references to "6,000 pages" of produced documents, the fact is that Commission's production amounts to approximately 2.5 boxes, a quantity that can be thoroughly reviewed in the course of a day. The pace of the Defendants' review should be enhanced by the fact that, as noted above, a large percentage of the documents produced to them consisted of their own correspondence. Furthermore, the Defendants' detailed recitations of the contents of the FTC's undercover calls demonstrates that they have had ample time to digest at least this portion of the production.

[6] The Commission received the documents pursuant to a subpoena it issued to Mr. Limbaugh the previous day. The Defendants, and all other parties, were sent copies of the Commission's subpoena the day it was issued.

the produced emails, except one,[7] were introduced as exhibits at Mr. Limbaugh's deposition; and (3) all of the produced emails were themselves forwarding short emails between Mr. Limbaugh and other DMC employees sent or received while Mr. Limbaugh was employed at DMC (thus, Defendants have seen or may have maintained). Glennon Dec. at ¶¶ 10-11. Defendants had the ability to, and indeed did, conduct cross-examination of Mr. Limbaugh at his deposition. To the extent they felt that they did not have time to review the roughly 50 pages of emails introduced as exhibits, they could have reserved the right to cross Mr. Limbaugh on these materials on a later date. Defendants failed to do so, and now seek to remedy that error by blaming the Commission.[8]

Defendants also cite correspondence between the FTC and its experts in the recently produced documents, incorrectly stating that these are the first expert-related documents they had received from the Commission.[9] The Commission, in fact, produced the vast majority of its

---

[7] The one exception was an email containing profane references to DMC and Barrett. Two of the produced documents were portions of email strings that were marked as deposition exhibits.

[8] The Defendants also argue that the production shows that an informant falsely told the FTC that DMC established foreign bank accounts, and that DMC was deprived of an opportunity to depose the informant. They fail to note that the Commission filed a declaration by the informant identified in the produced document, William Tarmey, in 2004 as part of its supplemental submission in support of its motion for a temporary restraining order. Mr. Tarmey made allegations of DMC financial improprieties in his declaration, and the Defendants chose not to depose him.

Furthermore, Defendants would be hard pressed to show prejudice from this document in relation to the upcoming hearing, as the issue of asset dissipation has not been raised since the Court issued its Preliminary Injunction, and the Commission's motion for modification of the preliminary injunction specifically notes that the request for a receiver is not based on the secretion of assets. *See* Memorandum in Support of Motion for Modification, at 26-27.

[9] "Another category of documents *only now produced* relate to correspondence between the FTC and their expert witnesses." Defendants Memorandum, at 3 (emphasis added).

expert-related documents – approximately 350 pages – in July and August. The Commission's most recent document production contained only seven expert-related documents, totaling 21 pages. Furthermore, the Commission has determined that two of these documents (totaling ten pages, including a draft declaration of one expert) previously were produced to the Defendants.[10]

The Defendants also refer to documents showing the FTC's communications with other defendants. The bulk of these documents, however, consists of correspondence among attorneys regarding discovery matters or the FTC's transmissions of the proposed or final complaint to various defendants. It is hard to imagine how the Defendants could have been prejudiced by the unintentionally delayed disclosure of this correspondence. The Defendants' references to documents showing "cooperation" by some defendants with the FTC prior to the case being filed appear to relate to two copies of a three-page letter showing that one party supplied the Commission with the formula for Supreme Greens four days before the Commission filed suit. Glennon Dec. at ¶ 17.

The Defendants also contend they were prejudiced by the Commission's recent production of Better Business Bureau ("BBB") complaints. The Commission, in fact, does not appear to have included any BBB complaints in its recent production. Rather, the Commission produced BBB complaints – along with complaints from the FTC's own database – to DMC in April 2005. Glennon Dec. at ¶ 18. Some of those complaints were then re-produced to the

---

[10] The Commission has discovered that it previously produced a number of documents sent to Defendants in September. This "double production" resulted from the fact that, in ensuring that it had sent Defendants all relevant documents, the Commission in many instances chose to produce documents without doing an exhaustive search of its previous production to determine whether the materials already had been produced. Such erring on the side of production is evidence of the thoroughness of the Commission's document search and of the importance the Commission attaches to fulfilling its discovery obligations.

Defendants in August 2005. *Id.* Moreover, insofar as the BBB routinely attempts to resolve consumer complaints by forwarding them to the company in question, the Defendants should already have had all of these consumer complaints.[11]

The Defendants also mischaracterize, or fail to mention altogether, many of the steps the Commission has taken since its recent production to address the Defendants' concerns about the documents. Initially, as outlined in its letter of September 14th, the Commission pointed out that a large percentage of the produced documents constituted DMC's own correspondence. Glennon Dec. at ¶ 9. Furthermore, the Commission addressed the Defendants' concerns about specific documents referenced in the Defendants' September 13th email. The Commission also offered to spend as much time as the Defendants wished going over the documents to address any specific concerns or answer any questions the Defendants had about the documents, an offer the Defendants unfortunately declined.

To address the Defendants' concerns regarding the redactions made to the produced documents, the Commission promptly reviewed and, where appropriate, produced multiple documents with less redaction to give Defendants a better understanding of the documents' nature. Glennon Dec. at ¶ 20. The FTC also provided the Defendants on September 16th a log detailing the documents that had been redacted, the nature of the redacted information, and the

---

[11] [[Defendants also focus on the Commission's communications with DMC's third party business partners, namely Ideal Health, stating that "none" of the produced materials was helpful to the Commission and implying that they may have sought to depose Ideal Health witnesses had they possessed these documents earlier. The Commission is at a loss to understand how Defendants can claim that this material is "not helpful" to the FTC. Ideal Health sent the Commission a letter on May 19, 2005 indicating that Ideal Health had encountered consumers complaining of DMC's practices with regard to DMC's autoship program. The letter also stated that Donald Barrett had told Ideal Health's vice-president that Barrett had deliberately begun to re-air the original Supreme Greens infomercial in order "to move inventory" after the revised Supreme Greens infomercial had "bombed." Glennon Dec. at ¶ 19.

bases for the redactions.[12] *Id.* at ¶ 21.

Moreover, as acknowledged by Defendants, the Commission immediately produced to Defendants copies of the unredacted (except for credit card information) undercover call transcripts in its possession once Defendants' attorneys agreed to the "attorneys' eyes only" arrangement[13] originally proposed by the Commission on August 31, 2005.[14] *Id.* at ¶ 23. The Commission also provided transcripts of the remaining taped calls on Monday, September 19 once they were transcribed. *Id.* at ¶ 24.

Finally, despite the Defendants' representations to the contrary, the Commission did respond to DMC Counsel's September 16th inquiry about the total number of undercover calls

---

[12] To further address Defendants' concerns over redactions, the Commission contacted the party who had supplied confidential, proprietary information regarding the formula for Supreme Greens. That party informed DMC and the Commission that it would be willing to allow the Commission to disclose the information provided DMC's counsel agreed that it would be reviewed only by DMC's outside counsel. Despite the fact that this proposal was communicated to DMC on September 15, DMC has yet to respond. Glennon Dec. at ¶ 22.

[13] With respect to the transcripts of its undercover calls to DMC, the Commission is interested solely in preventing the Defendants from discovering and revealing – as it did in a public filing earlier in this case – the names and credit card information associated with undercover identities that are used throughout the Bureau of Consumer Protection for purposes of law enforcement investigations. This information is highly confidential. Indeed, during a September 6, 2005 telephone conversation, counsel for DMC stated that given his previous experience with the U.S. Securities and Exchange Commission, he understood the Commission's interest in preserving the integrity of its undercover identities. Glennon Dec. at ¶ 5.

Furthermore, contrary to DMC's suggestion that Commission staff admitted that we had no authority for the law enforcement privilege, Affidavit of Christopher Robertson at ¶ 15, the staff simply was not able to cite specific case law when asked for a citation during the course of our September 14th "meet and confer" conversation. In fact, the law enforcement privilege is well-established. *See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (recognizing existence of common law privilege for law enforcement investigatory files).

[14] Although the Defendants state that this was first proposed in September, the Commission first proposed the arrangement in its August 31, 2005 letter. *See* Affidavit of Christopher Robertson at ¶ 16 and Exh. 9.

made by the FTC. Specifically, Edward Glennon sent Mr. Robertson an email on September 19th stating that the Commission had just had four additional transcripts transcribed, attaching a transcript of an August 2005 undercover call regarding Flex Protex, and informing Mr. Robertson that, in addition, as noted in Christina Turner's June 24, 2005 declaration, the FTC had made additional, non-taped calls to DMC, but was aware of no documents indicating when these non-recorded calls were made. Glennon Dec. at ¶ 25.

In short, the Commission has taken multiple steps to address Defendants' concerns regarding the most recently produced documents. Defendants, however, rather than taking the brief time necessary to actually review the 2.5 boxes of documents at issue, have seized upon the timing of the production to argue for a four-month delay of the upcoming hearing for the modification of the preliminary injunction, and a wholesale, blanket reopening of discovery. The Court should not be persuaded by Defendants' contentions regarding the nature of the produced documents and their allegations of prejudice.[15] Rather, the Court should hear the Commission's motion on the preliminary injunction as scheduled and hold the Defendants liable for their continued flaunting of the law and past misrepresentations to this Court.

---

[15] The Commission, as detailed above, believes that Defendants will not be able to show prejudice from the timing of the Commission's production. Nonetheless, to account for the possibility that DMC may demonstrate its need for limited additional discovery, the Commission would not object to an extension of the current October 17, 2005 deadline for the filing of motions for summary judgment. The Commission believes that the hearing currently set for Oct. 3rd should continue as scheduled.

## IV. CONCLUSION

For the reasons set forth above, the Commission respectfully requests that the Court deny the Defendants' motion in its entirety, and proceed with the hearing on October 3, 2005.

Respectfully submitted,

HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
SHIRA MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-3126/3116 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov or eglennon@ftc.gov
ATTORNEYS FOR PLAINTIFF

Dated September 27, 2005