# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>)<br>Plaintiff, )<br>v. )<br>) Civ. No. 04-11136-GAO<br>DIRECT MARKETING CONCEPTS, INC., et al., )<br>)<br>Defendants. )<br>) | |

### DECLARATION OF EDWARD GLENNON
### PURSUANT TO 28 U.S.C. § 1746

1. My name is Edward Glennon. I am a citizen of the United States and over twenty-one years of age. I am employed by the Federal Trade Commission ("FTC") as a General Attorney in the Division of Advertising Practices of the Bureau of Consumer Protection. My business address is 600 Pennsylvania Ave., N.W., Room NJ-3225, Washington, D.C., 20580.

2. I am assigned to the Federal Trade Commission's litigation in the above-captioned case. I have personal knowledge of the facts stated herein. If called to testify, I could and would competently testify to the facts set forth below.

3. A true and correct copy of a March 9, 2005 cover letter (without the enclosures) from Commission staff to, among others, counsel for Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald Barrett ("Defendants) enclosing the expert reports of Barrie Cassileth, Ph.D., Landon King, M.D. Maryfran Sowers, Ph.D., and Richard Wood, Ph.D. is attached to this Declaration as Attachment 1.

4. True and correct copies of correspondence between Commission staff and counsel for Defendants concerning the deposition of Eileen Barrett are attached to this Declaration as

Attachment 2. That correspondence shows that DMC informed the Commission in March 2005 that Ms. Barrett was 7 months pregnant. The Commission raised the issue of Ms. Barrett's deposition again on June 28, 2005 and, then again on July 8, 2005, at which time the FTC was told that Ms. Barrett had just gotten home from the hospital that day. Counsel for DMC requested that her deposition be pushed back a bit, stated that they would check with Ms. Barrett on dates for her deposition, and get back to the Commission the next week. The Commission never received any proposed dates for that deposition.

5. During a September 6, 2005 telephone conversation with Commission attorneys Heather Hippsley, Shira Modell and myself concerning the transcripts of the Commission's undercover calls to DMC, DMC counsel Christopher Robertson stated that as a former attorney for the U.S. Securities and Exchange Commission, he could understand the Commission's interest in retaining the confidentiality of the undercover identities used by Commission investigators.

6. During a September 14, 2005 telephone conversation among myself, Commission attorney Shira Modell, and attorneys for DMC Defendants Peter Brooks and Chris Robertson, Defendants' counsel indicated they were preparing a submission to be filed before the then-scheduled September 20 hearing that would rebut the Commission's assertion that the Flex Protex infomercial violates the Preliminary Injunction.

7. During that September 14, 2005 telephone conversation, the Commission did not ask that all of DMC's advertising be taken off the air as a condition to the FTC's agreeing to a continuance of the October 3rd hearing. Rather, the Commission asked only that DMC take Sea Vegg and Flex Protex off the air. Upon learning that Flex Protex was not currently running, the Commission asked only that Sea Vegg be taken off the air. Counsel for DMC refused.

8. To the best of my recollection, Counsel for DMC did not specifically request a deposition of former FTC investigator Christina Turner during the September 14, 2005 telephone conversation among myself, Commission attorney Shira Modell, and attorneys for DMC Defendants Peter Brooks and Chris Robertson.

9. As indicated in my September 14th letter to DMC's counsel, attached as Exhibit 11 to the Affidavit of Christopher R. Robinson, roughly 75% of the documents the Commission produced to the DMC Defendants on September 9, 12, and 13 consisted of correspondence to or from DMC or correspondence between defendants Triad Marketing/King Media and third-party retailers. The Commission's has not challenged the retail sales of any product in this case.

10. The Commission served a Rule 45 document subpoena on Erik Limbaugh on May 12, 2005. Pursuant to that subpoena, Mr. Limbaugh electronically produced a series of emails to the Commission on Friday, May 13, 2005. The emails were short emails between Mr. Limbaugh and other DMC employees sent or received while Mr. Limbaugh was employed at DMC.

11. With one exception, copies of all of the above-referenced emails that Mr. Limbaugh forwarded to the Commission were marked as exhibits at Mr. Limbaugh's deposition on Monday, May 16. Two of the produced emails were portions of email strings that were marked as deposition exhibits. The one produced email that was not marked as a deposition exhibit was an email to Mr. Limbaugh containing profane references to Donald Barrett and DMC.

12. Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald Barrett, and Robert Maihos were represented at Mr. Limbaugh's deposition by Christopher Robertson. Michael Sciucco, in-house counsel for Direct Marketing Concepts, Inc., also attended the deposition.

13. Mr. Robertson conducted cross-examination of Mr. Limbaugh during the May 16 deposition. Neither Mr. Robertson nor Mr. Sciucco reserved the right to keep the deposition open to cross-examine Mr. Limbaugh on the emails, or any other documents, marked as exhibits at the deposition.

14. The Commission produced the vast majority of its expert-related documents–approximately 350 pages worth--which Defendants first requested only in June 2005 in their second set of document requests, to Defendants in July and August. The Commission's document production of Sept. 9, 12, and 13 contained only seven expert-related documents, totaling 21 pages.

15. The Commission has determined that two of the seven expert-related documents (totaling ten pages, including a draft declaration of one expert) previously were produced to Defendants.

16. The bulk of the documents produced by the Commission on Sept. 9, 12, and 13 referring to the FTC's communications with other Defendants consists of correspondence among attorneys regarding discovery matters or the FTC's transmissions of the proposed or filed complaint to various defendants.

17. Defendants' references to documents showing "cooperation" by some defendants with the FTC prior to the case being filed appear to relate to two copies of a three-page letter showing that one party supplied the Commission with the formula for Supreme Greens four days before the Commission filed suit.

18. The Commission does not appear to have included any Better Business Bureau ("BBB") complaints in its production of Sept. 9, 12, and 13. Rather, the Commission produced BBB complaints – along with complaints from the FTC's own database – to DMC in April 2005.

-4-

Some of those complaints were then re-produced to the Defendants in August 2005.

19. Ideal Health sent the Commission a letter on May 19, 2005 indicating that Ideal Health had encountered consumers complaining of DMC's practices with regard to DMC's autoship program. The letter also stated that Donald Barrett had told Ideal Health's vice-president that Barrett had deliberately begun to re-air the original Supreme Greens infomercial in order "to move inventory" after the revised Supreme Greens infomercial had "bombed."

20. To address Defendants' concerns regarding the redactions made to the produced documents, the Commission produced multiple documents with less redaction to give Defendants a better understanding of the documents' nature.

21. The FTC provided Defendants on Sept. 16 with a log detailing the documents that had been redacted, the nature of the redacted information, and the bases for the redactions.

22. To further address Defendants' concerns over redactions, the Commission contacted counsel for the party who had supplied confidential, proprietary information regarding the formula for Supreme Greens. That party's counsel informed DMC's counsel and the Commission that the party would be willing to allow the Commission to disclose the information provided DMC's counsel agreed that it would be reviewed only by DMC's outside counsel. Despite the fact that this proposal was communicated to DMC on September 15, DMC has yet to respond.

23. The Commission produced to Defendants copies of the unredacted (save for credit card information) undercover call transcripts in its possession once Defendants' attorneys agreed to the "attorneys' eyes only" arrangement.

24. The Commission also provided transcripts of the remaining undercover taped calls on Monday, Sept. 19 once they were transcribed.

25. I sent Christopher Robertson an email on September 19 stating that the Commission had just had four additional transcripts transcribed, attaching a transcript of an August 2005 undercover call regarding Flex Protex, and informing Mr. Robertson that, in addition, as noted in Christina Turner's June 24, 2005 declaration, the FTC had made additional, non-taped calls to DMC, but that the Commission was aware of no documents indicating when these non-recorded calls were made.

26. During the September 14, 2005 telephone conversation among myself, Commission attorney Shira Modell, and attorneys for DMC Defendants Peter Brooks and Chris Robertson, the Commission staff did not admit that we had no authority for the law enforcement privilege. Rather, we stated that we did not have a case cite in front of us.

27. Attached hereto as Attachment 3 is a true and accurate copy of the Supplemental Declaration of Christina Turner Pursuant to 28 U.S.C. § 1746, filed in conjunction with the Commission's reply to Defendants' opposition to the Commission's motion for a modification of the June 23, 2004 preliminary injunction as to defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett and request for expedited treatment.

28. Defendants appear to have just produced to the Commission for the first time documents showing the transactions for a DMC bank account at Citibank that has been open since at least May 2005.

29. According to IMS's monthly reports of the 100 most frequently aired infomercials, the Sea Vegg infomercial was ranked number 11 in August 2005. Attachment 4 to this Declaration is a true and correct copy of an excerpt from that report.

30. Commission specifically told counsel for DMC on September 14, 2005 that it would be willing to consider requests for specific reopenings of discovery premised on

information contained in particular documents produced by the Commission in September.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in this Declaration are true and correct.

Executed on September 27, 2005

_____
Edward Glennon