claims were actually made by Bob Barefoot and Alejandro Guerrero, respectively[40]; or (2) they were acting in good faith because they assumed that Barefoot and Guerrero had substantiation for their statements.[41] There is no question, however, about their liability.

The Defendants produced the coral calcium infomercial, arranged for its production and dissemination to consumer purchasers, and split the net profits. The DMC/ITV Defendants also provided their sales representatives with materials that reiterated the claims at issue, and distributed Barrett's own cancer cure claims to some coral calcium purchasers. Similarly, the DMC/ITV Defendants produced and aired the Supreme Greens infomercial, prepared the sales representatives' scripts, and posted other deceptive claims on their website. See Sections II.D. and II.E, *supra*. Clearly, they disseminated the challenged claims.

Advertisers are strictly liable for disseminating deceptive claims. *See Patriot Alcohol Testers*, 798 F. Supp. at 855 (neither absence of intent to deceive nor good faith is a defense under Section 5). However, even if the Defendants' good or bad faith was relevant, the record shows that they clearly ignored their responsibility to ensure that the claims they were conveying to consumers were truthful and substantiated. Indeed, insofar as they were on notice that they needed such substantiation – within weeks after the coral calcium infomercial started running and before Supreme Greens started airing – any argument that they just assumed that Barefoot and

---

[40] To the contrary, the Court has already found that the DMC/ITV Defendants made the Supreme Greens disease claims in question. Preliminary Injunction at p. 11, ¶ 24.

[41] For example, the DMC/ITV Defendants' Answer to the Commission's Amended Complaint denies that statements quoted from the coral calcium infomercial "were made by or on [their] behalf." Answer at ¶ 25. Similarly, they deny having "promoted [Supreme Greens] as, among other things, an effective treatment, cure and preventative for cancer, heart disease, arthritis, and diabetes, and as a means of achieving substantial weight loss of up to 80 pounds in 8 months." Answer at ¶ 28. Instead, they contend, the infomercial features Guerrero "discussing his opinions regarding the possible benefits of Supreme Greens." *Id.* at ¶ 30.

Guerrero had such proof is simply a futile attempt to shirk responsibility for their own actions. See Sections II.D. and II.E, *supra*.

Indeed, even after the Commission filed the complaint that initiated this lawsuit, DMC and ITV produced and/or disseminated infomercials for new products – including Sea Vegg and Renuva – that not only made false or unsubstantiated health and disease claims, but also – in the case of Flex Protex – violated the Court's Preliminary Injunction. See Section II.H, *supra*.

          b.      The individual defendants are liable for permanent injunctive relief

The FTC's evidence also demonstrates that Defendants Donald Barrett, Robert Maihos, and Allen Stern are liable for the violations of their respective corporations, as described above. An individual defendant may be held liable for injunctive relief for corporate practices if the individual either participated directly in the unlawful activities at issue or had the authority to control such activities. *FTC v. Publishing Clearing House, Inc.,* 104 F.3d 1168, 1170 (9th Cir. 1997), *citing FTC v. American Standard Credit Sys., Inc.,* 874 F. Supp. 1080, 1087 (C.D.Cal. 1994); *see also Amy Travel,* 875 F.2d 564 at 573; *FTC v. J.K. Pubs.,* 99 F. Supp. 2d at 1203-1204.[42]

          i.      Donald Barrett and Robert Maihos

Barrett and Maihos are the sole owners (each owns 50%), directors, and corporate officers of DMC and ITV. Both were intrinsically vested with the authority to control the actions of those corporations and, as Barrett admits, they are the "ultimate decisionmakers." See Section

---

[42] *Accord Patriot Alcohol Testers,* 798 F. Supp. at 859-60 (an individual is liable for a corporation's deceptive acts if he (1) knew of the material misrepresentations, was recklessly indifferent to their truth or falsity, or was aware of high probability of fraud and intentionally avoided the truth; (2) participated in the acts or had authority to control the conduct; and (3) customers relied on the misrepresentations) (citing *Amy Travel,* 875 F.2d at 573).

II.B., *supra*. By virtue of their positions of authority, as well as their direct participation in activities relating to the marketing of both Coral Calcium Daily and Supreme Greens, Maihos and Barrett participated directly in DMC and ITV's deceptive acts and/or had control over the companies' acts and practices and can be permanently enjoined. See Sections II.B, II.D., II.E and II.F, *supra*. *Publishing Clearing House*, 104 F.3d at 1170-71. Moreover, they had knowledge of, or were at least recklessly indifferent to the falsity of the claims they were disseminating and the harm being caused by their autoship programs.

Barrett hosted the challenged Supreme Greens infomercial, where he personally made some of the challenged claims.[43] *FTC Rule 56.1 Stmt.* ¶ 188. He then made the decision to begin disseminating the Supreme Greens infomercial in the Summer of 2003 based on results of test airings, despite having no substantiation for the claims in hand, and knowing already of the Commission's concerns about unsubstantiated claims in his coral calcium infomercial. *Id.* ¶¶ 176-187. Then, in February 2004, he again decided to continue airing the original version of the infomercial, despite having been informed that it contained false claims <u>and</u> having told the

---

[43] The infomercial transcript belies any assertion that Barrett did not make claims about Supreme Greens:

> BARRETT: "And when you alkalize the body, these -- a lot of these symptoms, a lot of these diseases are going to -- . . . fall by the wayside."
>
> \*\*\*
>
> "And now here's the question: If I alkalize my body, am I going to come up with one of these chronic degenerative diseases?"
>
> \* \* \*
>
> "Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a by-product. How come?"

*Id.*

Commission that he would run a substantially toned-down version. *Id.* ¶¶ 208-230.

Barrett also participated fully in the unlawful advertising and sale of Coral Calcium Daily. See Section II.D., *supra*. He sent the initial letter to Kevin Trudeau, asking if Trudeau would be interested in working on a coral calcium project with him; he received the finished infomercial from Trudeau in December 2001 before it started airing; he wrote one of the first scripts that sales representatives used in their conversations with consumers; and he had the final say on all scripts and power sheets used by his sales representatives. He also failed to act when told expressly of the need for claims substantiation. *FTC Rule 56.1 Stmt.* ¶¶ 68-80, 97, 111-112. His direct participation in and knowledge of the unlawful activities is clear.

Maihos, although not appearing on camera, is equally liable as Barrett. As noted *supra*, Maihos is the equal co-owner of DMC and ITV and is an officer and director of both companies; indeed, he was the President of DMC until approximately October 2002 (*i.e.*, for the first 9 months during which the coral calcium infomercial aired). See Section II.B. Moreover, Maihos is not merely an officer on paper; he is "responsible for day-to-day operations of both [DMC and ITV]" and has contracting and check writing authority for both companies. *Id.* As such, he had authority to control the companies' acts and practices.[44] Documents confirm that Maihos was involved in such varied issues as acquisition of products, merchant accounts, and customer

---

[44] In *FTC v. Medicor, LLC.*, 217 F. Supp. 2d 1048, 1058 (C.D. Cal. 2002), the court granted summary judgment to the Commission and found the corporate and individual defendants jointly and severally liable for $16 million – the full amount lost by consumers – in connection with a work-at-home scam. Much like Mr. Maihos, one of the individual defendants was "aware of misrepresentations" and controlled the "day-to-day operations of" the corporate defendant. *Id.* at 1056-57. *See also FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, (S.D.N.Y. 2000) ("An individual's 'assumption of the role of president . . . and her authority to sign documents on behalf of the corporation demonstrate that she has the requisite control over the corporation to be held liable under the FTC Act.") (citation omitted).

service. *Id.*

In addition, Maihos was personally involved in assessing whether there was scientific evidence to support the Supreme Greens claims, and as such, was directly involved in the challenged activities. *FTC Rule 56.1 Stmt.* ¶¶ 180-182, 186. When the DMC/ITV Defendants were notified in June 2003 of the Commission's initiation of litigation against Kevin Trudeau arising out of Trudeau's own marketing of a coral calcium product, Maihos was on notice of the need for substantiation of claims made in his own companies' infomercials. Section II.D. Furthermore, although he knew from his own counsel as of October 2003 that there were questionable claims in the Supreme Greens infomercial, he acquiesced to the continued running of the deceptive infomercial. *FTC Rule 56.1 Stmt.* ¶¶ 209, 231.

    ii. Allen Stern

Allen Stern's authority to control the activities of both King and Triad is indisputable. Stern admits that he was the president, CEO, and partial owner of both companies, and the ultimate decision-maker for both entities. Stern therefore had the ability to select the clients with whom King Media and Triad did business and possessed the authority to control the nature and scope of the two companies' activities. See Section II.B.

Stern is also liable for injunctive relief due to his direct participation in the actions challenged by the Commission. He and his companies managed the whole coral calcium program. See Section II.D. Stern personally drafted the proposed contract for Trudeau and Barrett, including Triad as a signatory to the proposed pact because of Triad's extensive involvement in the project. *FTC Rule 56.1 Stmt.* ¶¶ 70-71. Once disputes arose between Barrett and Trudeau, Stern actively attempted to resolve those differences in order to protect the income flowing to King Media and Triad from the Coral Calcium Daily infomercial. *Id.* ¶¶ 113-114.

Additionally, Stern personally transmitted the coral calcium infomercial to an attorney for review, although he ultimately was unwilling to spend the money for the attorney's services. *Id.* ¶ 108.

       c.  The corporate defendants are liable for equitable monetary relief

The Court also should grant equitable monetary relief against all four corporate defendants. A corporation is liable for equitable monetary relief for violations of the FTC Act if the corporation "engaged in misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and [] consumer injury resulted." *Pantron I*, 33 F.3d at 1102, *citing Amy Travel*, 875 F.2d at 571. Economic injury qualifies as consumer injury, even when the injury to individual consumers is relatively small, so long as the aggregate amount is substantial. *Id.*

The undisputed facts in this case justify imposing liability for equitable monetary relief on the corporate Defendants. As set forth in Section II above, DMC, ITV, King, and Triad widely disseminated numerous false and deceptive representations regarding Coral Calcium Daily. In reliance on those claims, reasonable consumers spent over $40 million on the product. As such, the four corporate defendants are jointly and severally liable for equitable monetary relief in this amount. *See SlimAmerica*, 77 F. Supp. 2d at 1272, 1276 (finding restitution for consumer redress in the amount of $8.3 million appropriate because Defendants' misrepresentations induced consumers to purchase weight-loss pills, the wide dissemination of the advertisements, and the great number of consumers who bought the products). DMC and ITV are also jointly and severally liable for the additional $14.7 million in consumer injury resulting from their advertising and promotion of Supreme Greens.

d.  The individual defendants are liable for equitable monetary relief

In order to obtain restitution (*i.e.* monetary relief) from individual defendants, the Commission must demonstrate that the individual "'had or should have had knowledge or, awareness of the misrepresentations.'" *FTC v. Think Achievement, Inc.,* 144. F. Supp. 2d 993, 1011 (N.D. Ind. 2000) (citation omitted). *See also Gem Merchandising,* 87 F.3d at 470; *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1234 (9th Cir. 1999); *Publishing Clearing House,* 104 F.3d at 1170; *Amy Travel,* 875 F.2d at 573-74; *Wilcox,* 926 F. Supp. at 1103; *see also U.S. v. Andreadis,* 366 F.2d 423, 430 (2d Cir. 1966), *cert. denied,* 385 U.S. 1001 (1967) (affirming criminal conviction of weight-loss manufacturer's president who reviewed and approved advertising campaign even though he did not know the claims were false, because he had an affirmative duty to insure they were true).

The FTC can satisfy the knowledge requirement by showing (1) actual knowledge of the misrepresentations, (2) reckless indifference to the truth or falsity of the representations, or (3) an awareness of a high probability of fraud coupled with intentional avoidance of the truth. *Affordable Media,* 179 F.3d at 1234; *Amy Travel,* 875 F.2d at 574, *citing FTC v. Kitco of Nevada, Inc.,* 612 F. Supp. 1282, 1292 (D. Minn. 1985); *Publishing Clearing House,* 104 F.3d at 1170-73; *Wilcox,* 926 F. Supp. 2d at 1104. The degree of a defendant's participation in business affairs is probative of that defendant's knowledge, *FTC v. Sharp,* 782 F. Supp. 1445, 1450 (D. Nev. 1991), and control of a corporation can be strong evidence of knowledge, *Affordable Media,* 179 F.3d at 1235. There is no requirement that the individual intended to defraud consumers, *id.* at 1234, and the defendant need not have made direct misrepresentations himself or be the owner of the business. *Amy Travel,* 875 F.2d at 574 (individual may not enjoy benefits of fraudulent activity and then escape liability by contending that he did not participate directly in

fraudulent practices).[45]

                i.      Donald Barrett and Robert Maihos

Ample facts demonstrate that both Barrett and Maihos were, at a minimum, recklessly indifferent to the falsity of their misrepresentations about coral calcium and Supreme Greens, as well as to their companies' unauthorized billing practices, and should therefore be jointly and severally liable for restitution. A few examples suffice.

As set forth in Section II.D and II.E, *supra*, they continued to run the coral calcium infomercial after being told that substantiation was needed for their health claims. Then, they put the Supreme Greens infomercial on the air in August 2003 without having legal counsel or anyone with a medical or science background review it, despite telling the settling defendants they had expertise and would do so. Moreover, they clearly understood the FTC's view that advertising for Coral Calcium Daily made false and/or unsubstantiated claims. Surely, even if they had not previously understood the law, the DMC/ITV Defendants must have realized at this point that if their claims for coral calcium had to be truthful and substantiated, their advertising for Supreme Greens would be held to the same standard.[46]

In February 2004, Barrett sent an email to Maihos and others informing them that the

---

[45] *See also FTC v. Int'l Diamond Corp.*, No. C-82-0878 WAI(JSB), 1983 WL 1911 *5 (N.D. Cal. Nov. 8, 1983) ("[O]ne may not enjoy the benefits of fraudulent activity and then insulate oneself from liability by contending that one did not participate directly in the fraudulent practices."); *Atlantex Assocs.*, 1987 WL 20384 at *13 (sufficient to show that individual defendant had knowledge or "showed reckless indifference to or conscious avoidance of the truth.").

[46] Furthermore, the DMC/ITV Defendants continued to have their sales representatives use sales scripts that stated that coral calcium "is 100% absorbed by the body within 20 minutes of taking the product" more than two months after their counsel informed the Commission that they would withdraw all of their advertising for Coral Calcium Daily.

companies were still to disseminate the original version of the Supreme Greens infomercial. *FTC Rule 56.1 Stmt.* ¶ 229. His directive is striking given that three months earlier (*i.e.*, in October 2003), the Commission had informed counsel for DMC and ITV that there were false claims in the Supreme Greens infomercial, and Maihos had received a facsimile from his own counsel that raised substantial concerns about the claims in the Supreme Greens infomercial. *Id.* ¶ 208-212. "[D]efendants who know of government inquiries or investigations into their own or their associates' behavior may be charged with knowledge for purposes of imposing monetary liability under the FTC Act." *Think Achievement*, 144 F. Supp. 2d at 1011.

Finally, as set forth in Section II.F, *supra*, with respect to the unauthorized billing practices, the overwhelming volume of complaints – and the fact that management had been aware of this issue since early 2002 – make it clear that Maihos and Barrett were at a minimum recklessly indifferent to this pervasive and unfair practice. *See Amy Travel*, 875 F.2d at 574-75 (affirms individual liability and states that if the individual defendants "were unable to see trouble coming by looking at the scripts [which contained misrepresentations], it is unlikely they missed the signals sent by the high volume of consumer complaints and the excessive credit card chargebacks").

        ii.   Allen Stern

The facts related above in Section II.D, *supra*, demonstrate that Allen Stern was also, at a minimum, recklessly indifferent to the falsity of the claims in the coral calcium infomercial. Stern was put on notice early in the infomercial campaign that the program needed to be reviewed by an attorney and that there was no substantiation for the infomercial's claims.[47] He

---

[47] Stern was also aware in January 2002 that Trudeau previously had entered into a consent agreement with the FTC and that Trudeau had been convicted of two felonies.

was unwilling to spend the money for such legal review, however, and was unwilling to address the problematic claims, wrongly believing that it was not his responsibility to do so. *FTC Rule 56.1 Stmt.* ¶¶ 109, 116. Moreover, although he and Barrett tested a "clean" version of the coral calcium infomercial, they did not use it because it performed poorly. *Id.* ¶¶ 117-118. Indeed, Stern acted with reckless indifference, at best, and most probably, actual notice.

    e.  Defendants are jointly and severally liable for equitable monetary relief

Courts routinely hold corporate and individual defendants jointly and severally liable for the full amount of consumer injury in Section 13(b) cases, where, as here, those defendants are directly responsible for the acts or practices violating the FTC Act. *See, e.g., Amy Travel*, 875 F.2d at 570; *Sharp*, 782 F. Supp. at 1452-54; *SlimAmerica*, 77 F. Supp. 2d at 1276; *Windward Mktg.*, 1997 U.S. Dist. LEXIS 17114 at *39; *FTC v. Silueta Distributors, Inc.*, No. 93-3131 SBA, 1995 WL 215313, *8 (N.D. Calif. Feb. 24, 1995); *U.S. Sales*, 785 F. Supp. at 753. In such cases, the amount of each defendant's liability may exceed the amount of money that defendant actually received from consumers or from the scheme. *See FTC v. Int'l Diamond Corp.*, 1983-2 Trade Cas. (CCH) ¶ 65,506, 1983 WL 1851 at *4-5 (N.D. Cal. Jul. 12, 1983) ("[I]f the loss suffered by the victim is greater than the unjust benefit received by the defendant, the proper measure of restitution may be to restore the status quo."); *FTC v. Pacific Medical Clinics Mgmt.*, 1992-1 Trade Cas. (CCH) ¶69,777 at 67,588, 1992 WL 121677 *4 (S.D. Calif. Apr. 8, 1992) (proper remedy is rescission of each of the purchases – *i.e.*, total amount paid by consumers– as none of the purchasers received what he or she bargained for).

In this case, the extent of the joint and several liability is slightly different for each of the two products in question. With respect to Supreme Greens, two corporate defendants (ITV and

DMC) and two individual defendants (Barrett and Maihos) directly violated the FTC Act, so they are each jointly and severally liable for full restitution for the consumer injury caused by their violations. The amount the FTC proffers for judgment, $14.7 million, is the total gross sales of Supreme Greens (including shipping costs) minus money returned to consumers via returns and chargebacks, based on a third-party accounting that was conducted pursuant to the Court's Preliminary Injunction. See Section II.E.4, *supra*.

With respect to Coral Calcium Daily, six of the seven defendants – DMC, Barrett, Maihos, King, Triad, and Allen Stern – directly violated the FTC Act by disseminating false and unsubstantiated claims about Coral Calcium Daily, so they are each jointly and severally liable for full restitution for the consumer injury caused by their violations. The amount the FTC proffers for judgment, $40 million, is the low end of Barrett's estimate of $40 to $50 million in total gross sales of Coral Calcium made pursuant to the infomercial, and in keeping with Triad's assessment of Coral Calcium Daily revenues. See Section II.D.3, *supra*.

> D. **The Proposed Orders Provide Appropriate Permanent Equitable Relief to Remedy the Defendants' Violations of the Law**
>
>> 1. Order Covering DMC, ITV, Barrett, and Maihos
>>
>>> a. Prohibitions against false and unsubstantiated claims and unfair practices

Paragraphs I of the proposed order would prohibit the DMC/ITV Defendants from making any of the specific claims about Coral Calcium Daily or any product containing coral calcium that the Commission has challenged in this case and now proven to be false and/or unsubstantiated. Paragraph II would do the same with respect to the claims for Supreme Greens that the Commission has shown to be false and/or unsubstantiated. Paragraph III would prohibit them from misrepresenting that any food, drug, or dietary supplement can prevent, treat, or cure

any disease. Paragraph IV would provide fencing-in relief, prohibiting the DMC/ITV Defendants from making representations about the performance, efficacy, or safety of any health product, unless the representations are true, non-misleading, and substantiated, at the time they are made, by competent and reliable scientific evidence. Paragraph V would prohibit the misrepresentations of tests and studies; Paragraph VII would prohibit the dissemination of advertising that misrepresents its true nature as paid programming. Paragraph VIII contains provisions designed to ensure that the DMC/ITV Defendants obtain consumers' express informed consent before signing them up for an autoship program.

In effect, the injunctive provisions contained in the Commission's proposed order would simply prohibit the making of false or unsubstantiated representations – practices that already unlawful under Sections 5 and 12 of the FTC Act. *See Goodman v. FTC*, 244 F.2d 584, 595-96, 598-600 (9th Cir. 1957). Moreover, these provisions bear a direct and reasonable relation to the DMC/ITV Defendants' unlawful practices, yet are framed broadly enough to prevent them from engaging in similar illegal practices in the future.

Numerous courts, including the Supreme Court, have confirmed the FTC's authority to obtain broad injunctive relief covering products and claims similar, but not identical, to the product at issue and the challenged claims, when an advertiser has violated the FTC Act. *See, e.g., Colgate-Palmolive Co.*, 380 U.S. 374 at 395 ("The Commission is not limited to prohibiting the illegal practices in the precise form in which it is found to have existed in the past. Having been caught violating the [FTC] Act, respondents must expect some reasonable fencing in."); *Kraft, Inc.*, 970 F.2d at 326 (multi-product orders, known as "fencing-in," are intended to prevent violators from engaging in similar deceptive practices in the future); *Litton Industries, Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982) (reasonable fencing-in provisions serve

to "close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity"); *SlimAmerica*, 77 F. Supp. at 1275 ("Broad injunctive provisions are often necessary to prevent transgressors from violating the law in a new guise.") (citation omitted). In this case, broad injunctions against any misrepresentations relating to any dietary supplement, food, drug, device, cosmetic, program or service are appropriate for the DMC/ITV Defendants, who have also used their marketing experience to promote a variety of other products prior to the filing of the Commission's complaint and, more recently, to promote Sea Vegg, Renuva, and Flex Protex. Where there is a substantial risk that illegal conduct will recur, as there is here, injunctive relief is appropriate.

        b.        The proposed monetary judgment and consumer redress

The proposed order contains a provision for a monetary judgment against the DMC/ITV Defendants, jointly and severally. Specifically, the Commission seeks a judgment for equitable monetary relief in the amount of $54,683,436, the full amount of consumer sales less refunds derived from the DMC/ITV Defendants' deceptive conduct in connection with the marketing and sale of Coral Calcium Daily and Supreme Greens with MSM.

Redress under Section 13(b) of the FTC Act has been described as "the monetary equivalent of rescission." *Kitco*, 612 F. Supp. at 1292-1295. Defendants may be found liable for the full amount required to rescind effectively their contracts with consumers even though this amount may exceed the defendants' unjust enrichment. *See FTC v. Munoz*, No. 0055319, 2001 WL 970352, at *2 (9th Cir. Aug. 27, 2001) (unpublished op.) (finding that "proper measure of restitution is the amount that will restore the victims to status *quo ante*, not what appellants received . . . The district court had the authority to order restitution of the amount lost, not just disgorgement of the amount that was received."); *Kitco*, 612 F. Supp. at 1295-96; *see also FTC*

Page 57 of 61

*v. H.N. Singer, Inc.*, 1982-83 Trade Cas. (CCH) ¶ 65,011, 1982 WL 1907 at *11 (N.D. Cal. 1982) (holding sales manager liable for monetary relief for sales made during his tenure); *FTC v. Publishing Clearing House*, 1995-1 Trade Cas. (CCH) ¶ 71,006, 1995 WL 367901 (D. Nev. 1995) (salesperson found liable for the total amount victims paid to corporate defendants as a result of his solicitations), *aff'd*, 104 F.3d 1168 (9th Cir. 1997).

    c.  Monitoring and other provisions

  Finally, the proposed order also contains various standard provisions to ensure enforceability: a provision requiring the DMC/ITV Defendants to acknowledge receipt of the order (Paragraph X); a provision requiring the DMC/ITV Defendants to distribute the order to resellers and distributors, and to cease doing business with any who continue to disseminate advertising prohibited by the order; (Paragraph XI); a provision restraining the DMC/ITV Defendants from transferring or disclosing any personal information about purchasers or Coral Calcium Daily or Supreme Greens (Paragraph XII); a provision allowing the Commission to monitor Defendants' compliance with the order, including permitting the Commission access to Defendants' offices to inspect records and interview employees, and to pose as consumers to monitor representations (Paragraph XIII); a provision requiring Defendants to notify the Commission of any changes in their corporate, employment, or residential status (Paragraph XIV); a provision requiring maintenance of records for eight years after engaging in a covered activity (Paragraph XV); an order distribution requirement (Paragraph XVI); a provision defining the scope of the order (Paragraph XVIII); and a provision retaining jurisdiction by the Court over the order (Paragraph XIX).

  Courts routinely have included such provisions to ensure compliance with permanent injunctions in FTC cases. *See, e.g.*, *Sharp*, 782 F. Supp. at 1456-57 (judgment included

monitoring provisions); *Think Achievement*, 144 F. Supp. 2d at 1018 (ordering record retention, notification of changed employment or residence, access to premises, and monitoring); *U.S. Sales*, 785 F. Supp. at 753-54 (recognizing need for monitoring by the Commission to ensure adequate compliance).

   2. Order Covering Allen Stern, King, Triad, and Relief Defendants Lisa Stern, Steven Ritchey, and BP International

    a. Prohibitions against false and unsubstantiated claims

Paragraph I of the proposed order would prohibit the Stern Defendants from making the claims challenged here by the Commission. Paragraph II would prohibit them from misrepresenting that any food, drug, or dietary supplement can prevent, treat, or cure any disease. Paragraph III would provide fencing-in relief, prohibiting them from making representations about the performance, efficacy, or safety of any health product, unless the representations are true, non-misleading, and substantiated, at the time they are made, by competent and reliable scientific evidence.

    b. The proposed monetary judgment and consumer redress

The proposed order contains a provision for a monetary judgment against the Stern Defendants, jointly and severally. Specifically, the Commission seeks a judgment for equitable monetary relief in the amount of $40 million, the amount of consumer sales derived from the Stern Defendants' deceptive conduct in connection with the marketing and sale of Coral Calcium Daily. The proposed order also provides for monetary judgement in favor of the Commission and against each of the Relief Defendants in the amount of the ill-gotten gain received from defendant Triad by that Relief Defendant.

c. Monitoring and other provisions

Finally, the proposed order also contains monitoring and other provisions similar to those discussed above in the DMC/ITV proposed order: a provision requiring the Stern Defendants to acknowledge receipt of the order (Paragraph VII); a provision allowing the Commission to monitor their compliance with the order, including permitting the Commission access to the Stern Defendants' offices to inspect records and interview employees, and to pose as consumers to monitor representations (Paragraph VIII); a provision requiring the Stern Defendants to notify the Commission of any changes in their corporate, employment, or residential status (Paragraph IX); a provision requiring maintenance of records for eight years after engaging in a covered activity (Paragraph X); an order distribution requirement (Paragraph XI); a provision defining the scope of the order (Paragraph XIIII); and a provision retaining jurisdiction by the Court over the order (Paragraph XIV).

## IV. CONCLUSION

The uncontroverted record plainly demonstrates that Defendants DMC, ITV, Barrett, Maihos, Stern, King, and Triad have violated Sections 5(a) and 12 of the FTC Act through their dissemination of deceptive claims. That record also plainly demonstrates that relief Defendants Lisa Stern, Steven Ritchey, and BP International received ill-gotten gains from the deceptive practices.

Accordingly, the FTC respectfully requests that this Court grant summary judgment against the seven liability Defendants, and order disgorgement of the relief defendants' ill-gotten gains and enter the two attached proposed Judgments and Orders. The requested relief will

ensure that Defendants do not continue or resume their false and deceptive practices, and will provide relief for injured consumers.

Respectfully submitted,

_____
HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
SHIRA D. MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-3285, -3126 (voice)
(202) 326-3259 (fax)
hhippsley@ftc.gov, kyoung@ftc.gov or eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF

Dated: December 14, 2005