## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 DEC 15  A 9: 12

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civ. No. 04-11136-GAO |
| DIRECT MARKETING CONCEPTS, INC., et al., | ) |
| Defendants. | ) |

(Proposed)

## ORDER AND JUDGMENT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., DONALD W. BARRETT, AND ROBERT MAIHOS

Plaintiff, the Federal Trade Commission's ("FTC" or "Commission") filed an Amended Complaint for permanent injunction motion and other relief against Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, Robert Maihos, Allen Stern, Triad ML Marketing, Inc., King Media, Inc., Health Solutions, Inc., Healthy Solutions, LLC, Alejandro Guerrero, Michael Howell and Greg Geremesz, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging unfair or deceptive acts or practices and false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. The Commission also named as Relief Defendants Lisa Stern, Steven Ritchey, and BP International, Inc.

The Commission has reached settlements with Defendants Alejandro Guerrero, Michael Howell, Greg Geremesz, Health Solutions, Inc. and Healthy Solutions, LLC, and the Court has entered those Stipulated Final Orders.

The FTC has filed a motion for summary judgment against the seven remaining liability

Defendants (Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, Robert

Maihos, Allen Stern, Triad ML Marketing, Inc., and King Media, Inc.,) and the three Relief

Defendants. The Court, having considered the FTC's motion and evidence, and the response

thereto filed by Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett,

and Robert Maihos, hereby GRANTS the FTC's motion for summary judgment as to Defendants

Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos.

## FINDINGS

1.      This Court has jurisdiction over the subject matter of this case and over all parties.
Venue in the District of Massachusetts is proper.

2.      The Commission has the authority to seek the relief it has requested.

3.      The acts and practices of the Defendants Direct Marketing Concepts, Inc., ITV

Direct, Inc., Donald W. Barrett, and Robert Maihos are in or affecting commerce, as defined in

Section 4 of the FTC Act, 15 U.S.C. § 44.

4.      The Amended Complaint states a claim upon which relief may be granted against

Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert

Maihos under Sections 5(a), 12, and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52, and 53(b).

5.      There is no genuine issue as to any material fact concerning the liability of

Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert

Maihos for the illegal acts or practices charged in the Amended Complaint.

6.      Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett,

and Robert Maihos have violated Sections 5(a) and 12 of the FTC Act by making false or

misleading representations to induce the purchase of a dietary supplement known as Coral

2

Calcium Daily, including but not limited to the following:

    a.    That the coral calcium ingredient contained in Coral Calcium Daily is an effective treatment or cure for cancer, autoimmune diseases (including multiple sclerosis and lupus), Parkinson's disease, and heart disease;

    b.    That the body absorbs significantly more – in some cases up to fifty (50) times as much – of the calcium contained in Coral Calcium Daily, and at a rate significantly faster – in some cases up to fifty (50) times faster – than the calcium contained in a commonly available antacid calcium product, and that the body absorbs 100 percent of the calcium contained in Coral Calcium Daily; and

    c.    That scientific research published in the Journal of the American Medical Association and the New England Journal of Medicine proves that calcium supplements are able to prevent, reverse, or cure cancer in humans.

7.    Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos have violated Sections 5(a) and 12 of the FTC Act by making false or misleading representations to induce the purchase of a dietary supplement known as Supreme Greens with MSM, including but not limited to the following:

    a.    That Supreme Greens is an effective treatment, cure, or preventative for cancer, heart disease, diabetes and arthritis; and

    b.    That Supreme Greens will cause significant weight loss of up to 4 pounds per week and up to 80 pounds in 8 months.

8.    Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos have violated Section 5(a) of the FTC Act representing that the Supreme

3

Greens infomercial is an independent television program and not paid commercial advertising.

9.    Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos have violated Section 5(a) of the FTC Act by causing charges for automatic shipments of Coral Calcium Daily, E-8 Daily dietary supplement, and other products to be billed to consumers' credit or debit cards without the consumers' authorization.

10.    Uncontroverted evidence establishes that Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

11.    Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos have violated the Preliminary Injunction issued in this case on June 23, 2004 through their dissemination of an infomercial for Flex Protex.

12.    There is a reasonable likelihood that the Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos would continue to engage in the activities alleged in the complaint unless permanently enjoined from such acts and practices.

13.    Plaintiff is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

14.    Entry of this Order is in the public interest.

15.    Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon the Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald W. Barrett, and Robert Maihos, and their officers, agents, servants, representatives, employees and all other persons or entities in active concern or participation with them, who receive actual notice of this Order by personal service or otherwise.

16.    This action and relief awarded herein are in addition to, and not in lieu of, any

4

other remedies, civil or criminal, that may be provided by law, including any proceedings the
Commission may initiate to enforce this judgment.

## IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

### DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.     Unless otherwise specified, "Defendants" shall mean:

    A.     Direct Marketing Concepts, Inc. ("DMC"), a Massachusetts corporation,
its divisions and subsidiaries, its successors and assigns, and its officers,
agents, representatives, and employees;

    B.     ITV Direct, Inc. ("ITV"), a Massachusetts corporation, its divisions and
subsidiaries, its successors and assigns, and its officers, agents,
representatives, and employees;

    C.     Donald W. Barrett ("Barrett"), individually and in his capacity as an
officer and director of DMC, and as an officer and director of ITV; and

    D.     Robert Maihos ("Maihos"), individually and in his capacity as an officer
and director of DMC, and as an officer and director of ITV.

2.     "Advertising" shall mean any written or verbal statement, illustration or depiction
that is designed to effect a sale or create interest in the purchasing of goods or services, whether
it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert,
free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of
purchase display, packaging, package insert, label, film, slide, radio, television or cable
television, audio program transmitted over a telephone system, program-length commercial

5

("infomercial"), the Internet, email, video news release, press release, or in any other medium.

3.    "Assets" shall mean any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

4.    "Assisting others" shall mean knowingly providing any of the following services to any person or entity: (a) performing customer service functions for any person or entity, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other advertising or marketing material for any person or entity; or (c) performing advertising, marketing or consulting services of any kind for any person or entity.

5.    "Commerce" shall mean as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.    "Competent and reliable scientific evidence" shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

7.    "Continuity program" shall mean any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product.

8.    "Covered product" shall mean any food, drug, dietary supplement, cosmetic, or device.

6

9.     "Distributor or reseller" shall mean any person other than the Defendants who:

(a) sells any dietary supplement through, in accordance with, or by permission of the Defendants;

or (b) refers the names of prospective customers to the Defendants and receives compensation as

a result of the Defendants' sale of any dietary supplement to such customers.

10.     "Endorsement" shall have the meaning set forth in 16 C.F.R. § 255.0(b).

11.     "Food" and "drug" shall mean as defined in Section 15 of the FTC Act, 15 U.S.C.

§ 55.

12.     "FTC" or "Commission" shall mean the Federal Trade Commission.

14.     "Person" or "persons" shall mean all natural persons, corporations, partnerships,

or other business associations and all other legal entities, including all members, officers,

predecessors, assigns, divisions, affiliates and subsidiaries.

15.     A requirement that any defendant "notify," "furnish," "provide," or "submit" to

the Commission shall mean that the defendant shall send the necessary information to:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington D.C.  20580
> Attn: *FTC v. Direct Marketing Concepts, Inc., et al.,* (D. Mass)

16.     The terms "and" and "or" in this Order shall be construed conjunctively or

disjunctively as necessary, to make the applicable sentence or phrase inclusive rather than

exclusive.

17.     The term "including" in this Order shall mean "including without limitation."

7

## PROHIBITED BUSINESS ACTIVITIES

### I.

**IT IS HEREBY ORDERED** that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Coral Calcium Daily or any product containing coral calcium, in or affecting commerce, are hereby enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that:

A.    Such product is an effective treatment or cure for cancer, autoimmmune diseases (including multiple sclerosis and lupus), Parkinson's disease or heart disease;

B.    The body absorbs 100 percent of the calcium contained in such product;

C.    The body absorbs significantly more of the calcium contained in such product than it does the calcium in other commonly available calcium products, or does so at a rate significantly faster than it absorbs the calcium contained in those other calcium products; or

D.    Scientific research published in the Journal of the American Medical Association and the New England Journal of Medicine proves that calcium supplements are able to reverse or cure cancer in humans.

## II.

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in or affecting commerce, are hereby enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that such product:

A.    Is an effective treatment, cure, or preventative for cancer, heart disease, diabetes, or arthritis; or

B.    Will cause significant weight loss of up to 4 pounds per week and up to 80 pounds in 8 months.

## III.

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any food, drug, or dietary supplement, in or affecting commerce, are hereby enjoined from misrepresenting, or assisting others in misrepresenting, directly or by implication, including through the use of endorsements or the product name, that such product can prevent,

9

treat, or cure any disease.

## IV.

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product, in or affecting commerce, are hereby permanently enjoined from making, or assisting others in making, any representation, in any manner, expressly or by implication, including through the use of endorsements or the product name, about the health benefits, performance, or efficacy, of that product unless the representation is true, non-misleading, and, at the time the representation is made, the Defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## MISREPRESENTATION OF TESTS OR STUDIES

## V.

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product, in or affecting commerce, are hereby permanently enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by

10

implication, the existence, contents, validity, results, conclusions, or interpretations of any test or study.

## FDA APPROVED CLAIMS

### VI.

**IT IS FURTHER ORDERED** that:

A.    Nothing in this order shall prohibit the Defendants from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990; and

B.    Nothing in this order shall prohibit the Defendants from making any representation for any drug that is permitted in the labeling for such drug under any tentative final or final standard promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration.

## FORMATTING FOR BROADCAST ADVERTISING

### VII.

**IT IS FURTHER ORDERED** that the Defendants, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, do forthwith cease and desist from creating, producing, selling, or disseminating:

A.    Any advertisement that misrepresents, expressly or by implication, that it is not a paid advertisement; and

11

B.    Any commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and for a length of time sufficient for an ordinary consumer to read, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product or service, the following disclosure:

> "THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."

Provided that, for the purposes of this provision, the oral or visual presentation of a telephone number or address through which viewers may obtain more information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the display of the disclosure provided herein; and

C.    Any radio advertisement fifteen (15) minutes in length or longer or intended to fill a time slot of fifteen (15) minutes in length or longer that does not state in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and in a volume and cadence sufficient for an ordinary consumer to hear, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product, program, or service, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID

ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR

SERVICE]."

Provided that, for the purposes of this provision, the presentation of a telephone

number or address through which listeners may obtain more information or place

an order for the product, program, or service shall be deemed a presentation of

ordering instructions so as to require the stating of the disclosure provided herein.

## CONTINUITY PROGRAM

### VIII.

**IT IS FURTHER ORDERED** that:

    A.    The Defendants, directly or through any corporation, subsidiary, division, trade

name, or other entity, and their officers, agents, servants, employees, and all persons and entities

in active concert with them who receive actual notice of this Order by personal service or

otherwise, including by facsimile, in connection with the manufacturing, labeling, promotion,

offering for sale, sale, or distribution of any product, program, or service, in or affecting

commerce, are hereby enjoined from:

        1.    Selling or distributing or causing to be sold or distributed products

programs, or services, by means of a Continuity Program without first

obtaining the express, informed consent of consumers to participate in that

program before any shipment is made; *Provided*, that the consumer's

consent will be deemed to be informed for the purpose of this Part VIII

only if the Defendants clearly and conspicuously disclose, before the

13

consumer consents to any purchase, all material terms and conditions of the Continuity Program, including but not limited to:

a.    the fact that periodic shipments will occur without further action by the consumer, and that the consumer will automatically be billed or, if the consumer is using a credit or debit card, that the card will automatically be charged for each periodic shipment without further action by the consumer;

b.    a description of each good or type of good to be included in each shipment;

c.    the approximate interval between each shipment;

d.    a description of the billing procedure to be employed, including the total cost to be charged to the consumer's credit or debit card, or otherwise billed to the consumer, for each shipment;

e.    the minimum number of purchases required under the program, if any;

f.    all material terms and conditions of a guarantee, refund, or return policy if any representation is made about such a policy, or, if the Defendants have a policy of not making refunds or accepting returns, a statement that this is the policy of DMC/ITV Defendants DMC, ITV, and Barrett; and

g.    a description of the terms and conditions under which, and the procedures by which, a consumer may cancel further shipments, as set forth in Part VIII.C below.

14

*Provided further*, that the consumer's consent will be deemed to be express for the purpose of this Part VIII only if the Defendants obtained the informed consent in a manner which clearly evidences that the consumer is consenting to the terms of the Continuity Program.

2. Making any representation, in any manner, expressly or by implication, that consumers owe money for Continuity Program merchandise shipped to consumers, unless the Defendants have obtained consumers' express, informed consent to receive and pay for the merchandise.

B. The Defendants shall convey the terms and conditions of the Continuity Program to the consumer in the following manner:

1. For any solicitation initiated or completed by telephone, the terms and conditions set forth in Part VIII.A above shall be disclosed during that conversation in clear and understandable language;

2. For any solicitation by a print advertisement, direct mail, electronic mail, or by the Internet, the terms and conditions set forth in Part VIII.A above shall be disclosed in a clear and prominent manner in close proximity to the ordering instructions, *provided that*, if the advertisement or mailing contains an order form or coupon on a separate page or document from the advertising material, the disclosure shall be made both in the advertising materials and on the order form or coupon.

C. The Defendants shall provide, in conjunction with each shipment made pursuant to any Continuity Program, a clear and conspicuous description of the terms and conditions under which, and the procedures by which, the consumer may cancel future shipments. Such

15

description shall include either a toll-free telephone number the consumer may call or a postage-paid mailing the consumer may return to notify the Defendants of the consumer's cancellation of further shipments. *Provided, however*, that for purposes of this Part, if cancellation is by mail, the Defendants shall be deemed to be notified on the date the consumer mails the postage-paid mailing or other communication canceling further shipments.

      D.      The Defendants shall not ship any product, program, or service to, or mail any bill or dunning communication to, or bill the credit or debit card of any consumer who, having once subscribed to a Continuity Program and having fulfilled any minimum purchase requirement to which the consumer has given express informed consent, notifies the Defendants by the means described in Part VIII.C above, or by any other reasonable means, of the consumer's cancellation of further shipments.

      E.      The Defendants shall not represent that, in order to obtain a refund or credit, consumers must return any products that were shipped to them without the consumers' express informed consent, to receive and pay for the merchandise.

## MONETARY JUDGMENT AND CONSUMER REDRESS

### IX.

**IT IS FURTHER ORDERED** that

      A.      Judgment is hereby entered in favor of the Commission and against the Defendants, jointly and severally, in the amount of fifty-four million, six hundred eighty-three thousand, four hundred and thirty-six dollars ($54,683,436), with post-judgment interest, at the legal rate, for consumer redress.

      B.      All payments shall be made by certified check or other guaranteed funds payable

to and delivered to the Commission, or by wire transfer in accord with instructions provided by the Commission.

C.   All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief.

D.   In the event that the Commission in its sole discretion determines that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. The Defendants shall have no right to challenge the Commission's choice of remedies under this Paragraph or the manner of distribution chosen by the Commission. No portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

E.   In accordance with 31 U.S.C. § 7701, the Defendants are hereby required, unless they have done so already, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or employer identification numbers), which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of the Defendants' relationship with the government.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

### X.

**IT IS FURTHER ORDERED** that within five (5) business days after receipt of this

17

Order as entered by the Court, Defendants DMC and ITV, and Defendants Barrett, and Maihos, individually and as officers of DMC and ITV, must each submit to the Commission a truthful sworn statement in the form shown on Appendix A acknowledging receipt of this Order.

## NOTICE TO RESELLERS AND DISTRIBUTORS

### XI.

**IT IS FURTHER ORDERED** that the Defendants shall:

A.       Send, within twenty (20) days of entry of this Order, by first class mail, postage prepaid and return receipt requested, an exact copy of the notice attached hereto as Exhibit A, showing the date of mailing, to each distributor or reseller.  This mailing will notify each distributor or reseller that the Defendants will stop doing business with that distributor or reseller if it uses any advertisement or promotional material containing any representation prohibited by this Order, in the event the Defendants become aware that the distributor or reseller is using or disseminating any such advertisement or promotional material subsequent to receipt of Exhibit A. The mailing shall not include any other document or enclosure.

B.       For a period of five (5) years following the date of entry of this Order, the Defendants shall send by first class mail, postage prepaid, an exact copy of the notice attached hereto as Exhibit B, showing the date of mailing, to each distributor or reseller with whom the Defendants first do business after the date of entry of this Order.  The Defendants shall send this notice within twenty (20) days after first engaging in any transaction concerning any covered product.  This mailing shall not include any other document or enclosure.

C.       The Defendants, shall, within thirty (30) days of providing notice pursuant to Parts XI. A or B, secure from each distributor or reseller to whom a notice has been sent a signed

18

and dated statement acknowledging receipt of such and, as to any distributor or reseller who has

not provided such a statement, shall not sell or distribute any covered product to any such

distributor or reseller, accept any orders for any covered product submitted by or on behalf of

such distributor or reseller, or pay any commission, bonus or other compensation to any such

distributor or reseller. The Defendants shall retain the original of each acknowledgment for a

period of five (5) years following the date of entry of this Order.

E.    Terminate any distributor or reseller within ten (10) days after the Defendants

become aware that the distributor or reseller has used any advertisement or promotional material

that contains any representation prohibited by this Order after receipt of the notice required by

subparagraph A or B of this Part.

F.    Provide to the Commission, within thirty (30) days of entry of this Order for the

notices required by subparagraph A and within ten (10) days after such notice has been sent for

the notices required by subparagraph B, the name and address of each and every distributor or

reseller to whom the notices attached as Exhibits A and B are sent.

G.    Provide to the Commission, within ten (10) days after it becomes aware that any

distributor or reseller has used any advertisement or promotional material that contains any

representation prohibited by this Order, the name and address of such distributor or reseller.


## CUSTOMER LISTS

## XII.

**IT IS FURTHER ORDERED** that, except as provided in this Order, the Defendants,

and their officers, agents, directors, employees, salespersons, independent contractors,

subsidiaries, affiliates, successors, assigns and all other persons or entities who receive actual

notice of this Order by personal service or otherwise, including by facsimile, are permanently restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who purchased Coral Calcium Daily or Supreme Greens with MSM from the Defendants. *Provided, however,* that the Defendants may disclose such identifying information to a law enforcement agency, or as required by any law, regulation, or court order.

## COMPLIANCE MONITORING

### XIII.

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants DMC, ITV, Barrett, and Maihos shall each submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

> 1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45.

> 2.      posing as consumers and suppliers to Defendants DMC, ITV, Barrett, and Maihos, their employees, or any other entity managed or controlled in

whole or in part by Defendants DMC, ITV, Barrett, or Maihos, without the
necessity of identification or prior notice; and

C.    Defendants DMC, ITV, Barrett, and Maihos shall permit representatives of the
Commission to interview any officer, director, employee, employer, consultant, independent
contractor, representative, or agent who has agreed to such an interview, relating in any way to
any conduct subject to this Order. The person interviewed may have counsel present.

*Provided,* however, that nothing in this Order shall limit the Commission's lawful use of
compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to
obtain any documentary material, tangible things, testimony, or information relevant to unfair or
deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. §
45(a)(1)).

## COMPLIANCE REPORTING

### XIV.

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this
Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order:

    1.    Defendants Barrett and Maihos shall each notify the Commission of the
        following:

        a.    Any change in his residence, mailing address, and telephone
            number, within ten (10) days of the date of such change;

        b.    Any change in his employment status (including self-employment)
            and any change in his ownership of any business entity, within ten

21

(10) days of such change. Such notice shall include the name, address, and telephone number of each business that he is affiliated with, employed by, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

c.    Any change in his names or use of any aliases or fictitious names, within ten (10) days of such change or use; and

2.    Defendants DMC, ITV, Barrett, and Maihos shall notify the Commission of any changes in the corporate structure of DMC or ITV or any business entity that Barrett or Maihos directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change about which Defendants DMC, ITV, Barrett, and Maihos learn less than thirty (30) days prior to the date such action is to take place, Defendants DMC, ITV, Barrett, and Maihos shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.    One hundred eighty (180) days after the date of entry of this Order, Defendants

DMC, ITV, Barrett, and Maihos each shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

    1.    For Barrett and Maihos:

        a.    Their then-current residence addresses, mailing addresses, and telephone numbers;

        b.    Their then-current employment and business addresses and telephone numbers, a description of the business activities of each such employer or business, and their titles and responsibilities for each such employer or business; and

        c.    Any other changes required to be reported under subparagraph A of this part;

    2.    For Defendants DMC, ITV, Barrett, and Maihos:

        a.    A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Parts X and XI above;

        b.    Any other changes required to be reported under subparagraph **A** of this part; and

        c.    Copies of all sales scripts, "power sheets," training materials, advertisements, or other marketing materials relating to any covered product.

    C.    For purposes of the compliance reporting required by this Order, the Commission is authorized to communicate directly with Defendants DMC, ITV, Barrett, and Maihos.

## RECORD KEEPING PROVISIONS

### XV.

**IT IS FURTHER ORDERED** that for a period of eight (8) years from the date of entry

of this Order, the Defendants, and their agents, employees, officers, corporations, successors, and

assigns, and those persons in active concert or participation with them who receive actual notice

of this Order by personal service or otherwise, including by facsimile, in connection with any

business where: (1) DMC, ITV, Barrett, or Maihos owns at least 50% of the business, or directly

or indirectly controls the business, and (2) the business is engaged, participating, or assisting in

any manner whatsoever, directly or indirectly, in the advertising, marketing, promotion, offering

for sale, distribution, or sale of any covered product, are hereby permanently restrained and

enjoined from failing to create and retain the following records:

A.   Accounting records that reflect the cost of goods or services sold, revenues
generated, and the disbursement of such revenues;

B.   Personnel records accurately reflecting: the name, address, and telephone number
of each person employed in any capacity by such business, including as an
independent contractor; that person's job or position; the date upon which the
person commenced work; and the date and reason for the person's termination, if
applicable;

C.   Customer files containing consumers' names, addresses and telephone numbers,
dollar amounts paid, quantity of items or services purchased, and description of
items or services purchased, to the extent such information is obtained in the
ordinary course of business;

D.   Complaints and refund requests (whether received directly, indirectly, or through

24

any third party) and any responses to those complaints or requests;

E.    All documents referring or relating to the advertising, marketing, promotion, offering for sale, distribution or sale of any covered product, including but not limited to infomercials, print ads, product inserts, product labels, sales scripts, "power sheets," and training materials;

F.    All documents upon which Defendants rely to substantiate any representation covered by Part IV above; and

G.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by XVI and all reports submitted to the FTC pursuant to XIV.

## DISTRIBUTION OF ORDER

## XVI.

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants DMC, ITV, Barrett, and Maihos shall deliver copies of the Order as directed below:

A.    Defendants DMC and ITV must deliver copies of this Order to each of their principals, officers, directors, and managers.  Defendants DMC and ITV also must deliver copies of this Order to each of their employees, agents, and representatives who engage in conduct relating to the subject matter of the Order (the manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any covered product) or in recordkeeping within the scope of Part

XV. For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants DMC and ITV, respectively. For new personnel, delivery shall occur prior to them assuming their responsibilities.

B.    Defendant Barrett as Control Person: For any business that Defendant Barrett controls, directly or indirectly, or in which Defendant Barrett has an ownership interest of at least fifty (50) percent, Defendant Barrett must deliver a copy of this Order to all principals, officers, directors, and managers of that business. Barrett must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order (the manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any covered product) or in recordkeeping within the scope of Part XV. For current personnel, delivery shall be within (5) days of service of this Order upon Barrett. For new personnel, delivery shall occur prior to them assuming their responsibilities.

C.    Defendant Barrett as employee or non-control person: For any business where Barrett is not a controlling person of a business but he engages in conduct related to the subject matter of this Order (the manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any covered product), Barrett must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.    Defendant Maihos as Control Person: For any business that Defendant Maihos controls, directly or indirectly, or in which Defendant Maihos has an ownership interest of at least fifty (50) percent, Defendant Maihos must deliver a copy of this

Order to all principals, officers, directors, and managers of that business. Maihos

must also deliver copies of this Order to all employees, agents, and representatives

of that business who engage in conduct related to the subject matter of the Order

(the manufacturing, labeling, advertising, promotion, offering for sale, sale or

distribution of any covered product) or in recordkeeping within the scope of Part

XV. For current personnel, delivery shall be within (5) days of service of this

Order upon Maihos. For new personnel, delivery shall occur prior to them

assuming their responsibilities.

E.    Defendant Maihos as employee or non-control person: For any business where

Maihos is not a controlling person of a business but he engages in conduct related

to the subject matter of this Order (the manufacturing, labeling, advertising,

promotion, offering for sale, sale or distribution of any covered product), Maihos

must deliver a copy of this Order to all principals and managers of such business

before engaging in such conduct.

F.    Defendants DMC, ITV, Barrett, and Maihos must secure a signed and dated

statement acknowledging receipt of the Order, within thirty days of delivery, from

each person receiving a copy of the Order pursuant to this Part.


## SERVICE OF THIS ORDER BY THE COMMISSION

## XVII.

**IT IS FURTHER ORDERED** that copies of this Order and the initial pleadings and

papers filed in this matter may be served by agents and employees of the Commission, including

without limitation private process servers, and by agents or employees of any other law

enforcement agency, upon the Defendants, any agent or employee of the Defendants, or any other person, partnership, corporation, or other entity that may be in possession of any records, assets, property or property rights of the Defendants, or that may be subject to any provision of this Order. Service upon any branch or office of any entity shall effect service upon the entire entity.

## SCOPE OF ORDER

## XVIII.

**IT IS FURTHER ORDERED** that this Order resolves only claims against Defendants DMC, ITV, Barrett, and Maihos as alleged in the Complaint. This Order does not preclude the Commission from initiating further action or seeking any remedy against any other persons or entities, including without limitation persons or entities who may be subject to portions of this Order by virtue of actions taken in concert or participation with the Defendants, and persons or entities in any type of indemnification or contractual relationship with the Defendants.

## RETENTION OF JURISDICTION

## XIX.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED,** this _____ day of _____, 2006, at ___.m.

_____
HON. GEORGE A. O'TOOLE
UNITED STATES DISTRICT JUDGE

Presented by:

_____
HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
Federal Trade Commission
600 Pennsylvania Avenue, NW

NJ-3212
Washington, DC 20580
(202) 326-3285, -3126 (voice)
(202) 326-3259 (fax)
hhippsley@ftc.gov, kyoung@ftc.gov or eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF

**Attachment A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC.,<br>et al.,<br><br>        Defendants. | Hon.<br>Civil Action No.<br>**AFFIDAVIT OF<br>DEFENDANT [insert<br>name]** |

[NAME], being duly sworn, hereby states and affirms as follows:

1.    My name is _____. My current residence address is

_____. I am a citizen of the United States and

am over the age of eighteen. I have personal knowledge of the facts set forth in this Affidavit.

2.    I am a defendant in FTC v. Direct Marketing Concepts, Inc., et al. (United States

District Court for the District of Massachusetts).

3.    On [*date*], I received a copy of the Order and Judgment for Permanent Injunction and

Other Equitable Relief Against Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc.,

Donald W. Barrett, and Robert Maihos, which was signed by the Honorable George O'Toole and

entered by the Court on [*date of entry of Order*].

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct. Executed on [*date*], at [*city and state*].

_____

[*Full name of defendant*]

State of _____, City of _____

Subscribed and sworn to before me this _____ day of _____, 2006.

_____

Notary Public
My Commission Expires: _____

acknowledging receipt of this Order.

## Exhibit A

## By FIRST CLASS MAIL OR EMAIL
## (If mailed, to be printed on company letterhead)

[date]

Dear [distributor or reseller]:

Our records indicate that you have been a distributor or reseller of Direct Marketing Concepts, Inc. ("DMC") or ITV Direct, Inc. ("ITV"). This letter is to inform you that the United States District Court for the District of Massachusetts recently entered an order against DMC and ITV in a case brought by the Federal Trade Commission regarding advertising for Coral Calcium Daily and Supreme Greens with MSM.

Specifically, the Court has ordered DMC and ITV, among other things:

1.    Not to represent (a) that any product containing coral calcium is an effective treatment or cure for cancer, autoimmmune diseases, Parkinson's disease or heart disease; (b) that the body absorbs 100% of the calcium in that product; (c) that the body absorbs significantly more of the calcium in a coral calcium product than in other commonly available calcium products, or does so at a faster rate; or (d) that scientific research published in certain prestigious journal proves that calcium supplements can reverse or cure cancer.

2.    Not to represent that Supreme Greens or any substantially similar product is an effective treatment, cure, or preventative for cancer, heart disease, diabetes or arthritis, or will cause significant weight loss (such as up to 4 pounds per week and up to 80 pounds in 8 months).

3.    Not to misrepresent that any food, drug, or dietary supplement can prevent, treat, or cure any disease.

4.    Not to misrepresent the existence, contents, or conclusions of tests or studies.

The Court also ordered us to notify distributors and resellers of its decision. Accordingly, we must [insist] [request] that you not use or distribute advertising, packaging, or promotional materials containing any of the representations prohibited by the Court's order. If you do, we are required to cease doing business with you, and to provide your name and address to the Commission.

To continue doing business with you, we must receive a signed acknowledgment that you have received this notice. If you wish, you may sign below and fax or mail the form to us, but please keep a copy for your files. If you have discontinued doing business with us, you need not sign or return this letter. If you have any questions or want a copy of the Court's order, please let us know.

Page 1 of 2

Direct Marketing Concepts, Inc.
ITV Direct, Inc.
Donald W. Barrett, President
[insert address and fax number]

    I have received the letter concerning the order entered by the United States District Court for the District of Massachusetts against Direct Marketing Concepts, Inc. and ITV Direct, Inc.

_____
(Signature)

_____
(Print your name, the name of your business and your title)
[insert address and fax number]

**Exhibit B**

**By FIRST CLASS MAIL OR EMAIL**
**(If mailed, to be printed on company letterhead)**

[date]

Dear [distributor or reseller]:

Our records indicate that you recently became a distributor or reseller of Direct Marketing Concepts, Inc. ("DMC") or ITV Direct, Inc. ("ITV"). This letter is to inform you that in [month, year], the United States District Court for the District of Massachusetts entered an order against DMC and ITV in a case brought by the Federal Trade Commission regarding advertising for Coral Calcium Daily and Supreme Greens with MSM.

Specifically, the Court has ordered DMC and ITV, among other things:

1.   Not to represent (a) that any product containing coral calcium is an effective treatment or cure for cancer, autoimmmune diseases, Parkinson's disease or heart disease; (b) that the body absorbs 100% of the calcium in that product; (c) that the body absorbs significantly more of the calcium in a coral calcium product than in other commonly available calcium products, or does so at a faster rate; or (d) that scientific research published in certain prestigious journal proves that calcium supplements can reverse or cure cancer.

2.   Not to represent that Supreme Greens or any substantially similar product is an effective treatment, cure, or preventative for cancer, heart disease, diabetes or arthritis, or will cause significant weight loss (such as up to 4 pounds per week and up to 80 pounds in 8 months).

3.   Not to misrepresent that any food, drug, or dietary supplement can prevent, treat, or cure any disease.

4.   Not to misrepresent the existence, contents, or conclusions of tests or studies.

The Court also ordered us to notify distributors and resellers of its decision. Accordingly, we must [insist] [request] that you not use or distribute advertising, packaging, or promotional materials containing any of the representations prohibited by the Court's order. If you do, we are required to cease doing business with you, and to provide your name and address to the Commission.

To continue doing business with you, we must receive a signed acknowledgment that you have received this notice. If you wish, you may sign below and fax or mail the form to us, but please keep a copy for your files. If you have discontinued doing business with us, you need not sign or return this letter. If you have any questions or want a copy of the Court's order, please let us know.

Page 1 of 2

_____

Direct Marketing Concepts, Inc.
ITV Direct, Inc.
Donald W. Barrett, President
[insert address and fax number]


     I have received the letter concerning the order entered by the United States District Court for the District of Massachusetts against Direct Marketing Concepts, Inc. and ITV Direct, Inc.


_____

(Signature)


_____

(Print your name, the name of your business and your title)
[insert address and fax number]