UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 04-11136-GAO


FEDERAL TRADE COMMISSION,
Plaintiff

v.

DIRECT MARKETING CONCEPTS, INC., et al.,
Defendants.

<u>MEMORANDUM AND ORDER</u>
January 19, 2006


O'TOOLE, D.J.

The Federal Trade Commission (FTC) has moved to modify the preliminary injunction previously entered against the defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett. Specifically, the FTC requests that I modify the existing preliminary injunction by appointing a receiver for Direct Marketing Concepts, Inc. and ITV Direct, Inc. For the reasons set out below, I conclude that the motion ought to be denied. However, I also conclude that the defendants appear to be violating the existing preliminary injunction by at least some of their conduct that has come to light in connection with the consideration of the FTC's motion. Therefore, the defendants are ordered to immediately cease and desist from engaging in that conduct.

## I.    Background

The FTC commenced this action seeking a permanent injunction and other equitable relief against a number of defendants[1] under § 13(b) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b).  The bases for the FTC's complaint were two long "talk show" style infomercials being run by the defendants promoting two ingestible dietary supplements, "Coral Calcium Daily" and "Supreme Greens," and related sales practices.  The FTC alleged that the defendants were violating § 5(a) of the FTC Act, 15 U.S.C. § 45(a), by engaging "in unfair or deceptive acts or practices in or affecting commerce" and § 12(a) of the FTC Act, 15 U.S.C. § 52(a), by disseminating "false advertisement[s]" to induce the purchase of "food, drugs, devices, or cosmetics."[2]  On June 23, 2004, after extensive briefing and oral argument by the parties, I granted the FTC's request for a preliminary

---

[1]    The complaint named the following as defendants: Direct Marketing Concepts, Inc., d/b/a Today's Health and Direct Fulfillment; ITV Direct, Inc., d/b/a Direct Fulfillment; Donald W. Barrett; Healthy Solutions, LLC, d/b/a Direct Business Concepts; Health Solutions, Inc.; Alejandro Guerrero, a/k/a Alex Guerrero; Michael Howell; Greg Geremesz; Triad ML Marketing, Inc.; King Media, Inc.; and Allen Stern.  On April 20, 2005, the FTC filed an amended complaint which added defendant Robert Maihos and relief defendants Lisa Stern, Steven Ritchey, and BP International, Inc.  The amended complaint added an allegation that certain defendants engaged in deceptive billing practices in connection with the two products at issue in the initial complaint.  The FTC has reached a stipulated final order of permanent injunction and settlement of claims with some of the original defendants not covered by the preliminary injunction sought to be modified in this motion.

[2]    Specifically, the FTC Alleged that the defendants were (1)  were making unlawful claims regarding the health benefits of "Coral Calcium Daily," (2) were making unlawful claims regarding the bioavailability and superiority of "Coral Calcium Daily," (3) were making unlawful claims regarding certain scientific studies on calcium, (4) were making unlawful claims regarding the health benefits of "Supreme Greens," (5) making unlawful weight loss claims regarding the health benefits of "Supreme Greens, and (6) making unlawful safety claims regarding "Supreme Greens."  All of these claims are alleged to have been false and/or not substantiated when made and thus to constitute deceptive practices and false advertisements.  Additionally, the FTC alleged that the program format used was "deceptive" because the defendants represented that the program was an independent television program and not paid commercial advertising.  Finally, the FTC alleged that the defendants caused unauthorized charges to occur on customer credit or debit cards in connection with the sale of "Supreme Greens."

injunction. That preliminary injunction, which the FTC now seeks to modify, applied only to defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV") and Donald W. Barrett ("Barrett"). I found that the FTC had a likelihood of success in proving the falsity and/or lack of substantiation for the health and disease claims in the "Coral Calcium Daily" and "Supreme Greens" infomercials based on the uncontradicted declarations of two FTC experts, that injunctive relief was in the public interest, and that the balance of the equities favored the FTC. See Prelim. Inj. Order at 10-14. The preliminary injunction prohibited the defendants from making certain specific disease treatment and safety claims related to "Supreme Greens with MSM" or any "substantially similar product" and also forbade any "representation that ['Supreme Greens with MSM' or any 'substantially similar product'] can prevent, treat, or cure any disease unless, at the time the representation is made, the Defendants possess and rely upon competent and reliable scientific evidence." See id. at 17-18. The preliminary injunction also addressed concerns raised in the complaint regarding the so-called "deceptive format" of the defendants' "faux talk show" by forbidding any advertisement that misrepresents its status as such and by requiring the use of specific disclaimers. See id. at 18-19. The injunction further placed restrictions on the defendants' ability to enroll customers in any billing "Continuity Program." See id. at 20-22. Finally, the preliminary injunction placed restrictions on the dissipation of the defendants' assets and required the defendants to cooperate in a variety of ways with the FTC by maintaining certain records, providing an accounting, furnishing financial statements to the FTC, engaging in expedited discovery, granting the FTC the right of immediate access, and distributing the preliminary injunction order to various affected parties. See id. at 23-32.

3

The FTC had also requested that a receiver be appointed as part of the preliminary injunctive relief. I considered the terms of the injunction requiring an accounting and restricting the dissipation of assets, among others, to be sufficient to ensure the enforceability of any eventual judgment, which was the reason that the FTC gave for seeking appointment of a receiver. I did leave the possibility of appointment of a receiver open, however, stating "should the accounting reveal that the Defendants have, presently are, or are likely to conceal or place assets beyond the Court's reach pending final resolution of this case, the Court will consider additional requests from the Commission for further relief necessary to ensure the enforceability of any judgment, including a freeze of the Defendants' assets and the appointment of a receiver." See id. at 14.

II.    **Appointment of a Receiver is Not Warranted**

The FTC now renews its request that I appoint a receiver. However, it does not contend that such relief is necessary to ensure the enforceability of any judgment or that there has been any dissipation or hiding of assets by the defendants. Instead, the FTC asserts that various conduct by the defendants since the entry of the preliminary injunction warrants the appointment of a receiver because such conduct allegedly undermines the "primary purpose" of the preliminary injunction, which the FTC characterizes broadly as preventing harm to consumers from the defendants' disseminating of false and deceptive advertising, enrolling customers in continuity plans without their informed consent, and engaging in other deceptive practices.[3] The FTC relies primarily on the fact that the defendants have begun to run six new infomercials, five for products that could be viewed

---

[3] Because of a dispute over discovery matters and subsequent agreement of the parties, the FTC has withdrawn any allegations in its briefing and argument regarding alleged noncompliance with the preliminary injunction's restrictions on the use of "continuity" billing programs as a basis underlying its request for appointment of a receiver.

4

as "ingestibles," since the entry of the preliminary injunction. Although the preliminary injunction did not ban the airing of all ingestible product infomercials, the FTC alleges that this conduct is wrongful in part because it breaches a "promise" that Barrett made to the court in an affidavit opposing the preliminary injunction that, at the time, he "[had] no plans to run any such [ingestible products] infomercial in the future." The FTC also alleges that at least two of these new infomercials, for products called "Sea Vegg" and "Renuva," appear to make health and disease claims that are false and/or unsubstantiated. The FTC argues that three other infomercials, two for ingestible products called "RegenaLife" and "Dr. Day's Home Juice Bar" and one for a water filtration system called "Aquasana," demonstrate that the defendants continue to use what the FTC describes as a "deceptive" "faux talk show" format. (However, the FTC does not allege that these three new infomercials failed to comply with the formatting requirements of the preliminary injunction, including the use of disclaimers explaining that the program is a paid advertisement.). The FTC also alleges that an infomercial for "Flex Protex," another ingestible supplement, violates the preliminary injunction because (1) the product, by admission of the marketer of the product in the infomercial, contains MSM, one of the ingredients in the already enjoined "Supreme Greens" product, and therefore is a "substantially similar" product subject to the preliminary injunction and (2) Barrett and his guest (the marketer of the product) make claims regarding the potential of the product to treat arthritis, a claim that is expressly prohibited for any product that is "substantially similar" to "Supreme Greens." The FTC also alleges that the defendants are failing to control their distributor network, which allegedly continues to make suspect health and disease claims for various of the defendants' products. Finally, the FTC also points to various other conduct by the defendants that they allege

demonstrates that the defendants are untrustworthy and justifies the appointment of a receiver in order to ensure compliance with the law and to halt further injury to consumers.

To act on these concerns, the FTC has a variety of enforcement tools at its disposal. For example, the FTC could seek to amend the complaint or file a new complaint challenging the new infomercials as violations of § 5(a) and § 12(a) of the FTC Act, as it has already alleged with respect to the "Supreme Greens" and "Coral Calcium" infomercials. The FTC could then seek to preliminarily enjoin advertisements for these new products in the same manner as it did the original two products. However, at oral argument, the FTC stated that it does not intend to amend the complaint to attack these other infomercials but rather intends to proceed to summary judgment in this case only as to the original two infomercials. Indeed, the closest the FTC comes to an allegation that the new infomercials violate the FTC Act is a footnote in its memorandum stating that the "Sea Vegg" and "Renuva" infomercials "likely violate[] Sections 5 and 12 of the FTC Act." See FTC Mem. Supp. Mot. to Modify Prelim. Inj., at 25 n.16. The FTC states that it has elected not to expand the complaint to seek relief against the new infomercials because "[d]efendants have shown themselves to be incorrigible and incapable of resisting the urge to prey on consumers' fears and vulnerabilities," and the only appropriate way to deal with this problem is to appoint a receiver to ensure that the advertisements that the defendants disseminate are truthful and properly substantiated. See id. at 31 n.21.

As an alternative to amending the complaint, the FTC could seek to enforce the existing preliminary injunction by bringing a contempt motion if it believed that the defendants' actions were violating the injunction. Again, the FTC has expressly disavowed this option. Instead, the Commission states that it brings the present motion for appointment of a receiver to

"comprehensively" address all of the defendants' fraudulent practices. See id. at 18 n.9. Even as to the FTC's allegation of direct violation of the preliminary injunction – regarding the "Flex Protex" infomercial – the FTC does not seek a contempt ruling but instead refers to this putative violation as a reason for having a receiver appointed.

The FTC does not argue that a receiver is necessary to steward the financial affairs of the defendants' business or to prevent dissipation or hiding of assets, purposes for which a receiver is most commonly used. Rather, the FTC argues that a receiver is needed, in effect, to serve as monitor and enforcer because the defendants are untrustworthy and are unwilling or unable to comply with the law or the injunction. I conclude that appointment of a receiver for this purpose in the current posture of the case would not be justified.

A preliminary injunction may be modified because of changes in circumstances occurring since its entry that indicate that the original order has proved faulty in accomplishing its intended results. See United States v. United Shoe Mach. Corp., 391 U.S. 244, 249 (1968); Williams v. Lesiak, 822 F.2d 1223, 1227 (1st Cir. 1987); see also 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2961. Here, the FTC argues that modification is necessary to achieve what it defines as the "primary purposes" of the preliminary injunction, "to prevent Defendants from harming consumers by disseminating false and unsubstantiated advertising claims and enrolling consumers in continuity plans without their informed consent." See FTC Mem. Supp. Mot. to Modify Prelim. Inj., at 26. This conception of the purpose of the injunction sweeps so broadly that it has the potential to become an unmanageable standard. The purposes of the preliminary injunction are more properly defined by reference to the specific violations of law pled in the amended complaint, i.e., the defendants' dissemination of certain health and disease claims as

7

to the particular products "Coral Calcium" and "Supreme Greens" or substantially similar products. Simply because the preliminary injunction is an equitable remedy does not mean it is a springboard to enjoin any other allegedly similar conduct by the defendants without any allegation that such conduct violates the law. The changed facts and circumstances brought to light do not demonstrate that the original preliminary injunction has proved fault in achieving its properly defined goals.

It is possible to evaluate the FTC's request for a receiver in another way, as if it were a new request for preliminary injunctive relief. Under § 13(b) of the FTC Act, the FTC has the power to seek preliminary injunctive relief upon a showing that (1) there is a substantial likelihood of success on the merits, (2) the injunctive relief is in the public interest, and (3) the balance of the equities favors the FTC's position. See 15 U.S.C. § 53(b). The FTC is not required to show irreparable harm in order to obtain preliminary injunctive relief. See FTC v. Crescent Publ'g Group, Inc., 129 F. Supp.2d 311, 319 (S.D.N.Y. 2001); FTC v. Patriot Alcohol Testers, Inc., Civ. A. No. 91-11812-C.1992 WL 27334, *3 (D. Mass. Feb. 13, 1992). Courts have often found that § 13(b) authorizes the exercise of broad equitable powers, including the ordering of ancillary relief deemed necessary to effect the exercise of the statutorily granted powers of the FTC. See FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 572 (7th Cir. 1989); FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984); FTC v. H.N. Singer, Inc. 668 F.2d 1107, 1113 (9th Cir. 1982); FTC v. Southwest Sunsites, Inc., 665 F.2d 711, 718 (5th Cir. 1982); see also Crescent Publ'g, 129 F. Supp.2d at 326; Patriot Alcohol Testers, 1992 WL 27334, at * 3. These broad equitable powers have been interpreted to provide a court with power to appoint a receiver incident to either a permanent or

preliminary injunction.  See, e.g., U.S. Oil & Gas Corp., 748 F.2d at 1434; Crescent Publ'g, 129 F.

Supp.2d at 326.  However, the appointment of a receiver is an extreme remedy, described by some

as "draconian," and is not a course to be cavalierly pursued. See Crescent Publishing, 129 F. Supp.2d

at 326; see also 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983.

Here, I decline to exercise this discretionary equitable power for several reasons.  First, as

stated above, the receiver is not necessary to ensure that the purposes of the existing injunction,

properly defined, are upheld. As to the new alleged wrongful infomercials, the FTC has not formally

alleged that the conduct violates the FTC Act. Indeed, the Commission does not intend to pursue

resolution of such allegations on the merits, but rather seeks the short-cut of relying on the

appointment of a receiver to take over the management of the defendants' business.[4]

This is an unusual use of a receiver, which is an equitable remedy that is traditionally used to

protect a plaintiff's interest in property or to preserve the financial status quo of the defendants in

order to ensure there are assets available for recovery in the event of a judgment in favor of the

plaintiffs. See 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983.

It is also true that receivers may be appointed at the request of government officials acting under

statutory authority.  An example can be found in SEC enforcement actions.  See id.

The FTC has cited an unpublished case from the District of Nevada involving FTC

enforcement against a purveyor of dietary supplements in which the Court issued a temporary

restraining order that included an asset freeze and the appointment of a receiver.  See FTC v.

Seasilver USA, Inc., CV-S-03-00676-RLH (LRL) (D. Nev. 2003).  The court there appointed a

---

[4] The FTC is correct that there is a strong public interest in protecting consumers from fraudulent
health products.  However, there is also a strong public interest in ensuring that the FTC itself turn
square corners in seeking to enforce its important statutory mandate.

receiver but only made conclusory findings of law that, inter alia, there was good cause to believe (1) the defendants have engaged/are likely to engage in violations of the FTC Act, (2) immediate and irreparable harm would result from the defendants ongoing violations unless they are restrained, and (3) the FTC was likely to prevail on the merits.  However, the court also found that there was good cause to believe that there would be irreparable and immediate damage to the court's ability to grant effective final relief to consumers in the form of monetary redress unless the defendants were restrained and enjoined from sale, transfer, disposition, or other concealment of assets.  Thus, this decision does not clearly support the appointment of a receiver in the absence of concern over the financial well-being of the defendants.

Similarly, in other cases where a receiver was considered and either granted or denied, an element of preservation of the financial status quo was a key consideration.  See, e.g., U.S. Oil & Gas Corp., 748 F.2d at 1434 (receiver *and asset freeze* upheld as incident to permanent injunction); Crescent Publ'g 129 F. Supp.2d at 319 (denying receiver as part of preliminary injunction because less restrictive measures would be sufficient to *preserve the financial assets* of the defendants); FTC v. Five-Star Auto Club, 97 F. Supp.2d 502, 533-34 (S.D.N.Y. 2000) (reconfirming appointment of receiver who had been appointed as part of preliminary injunction and ordering him to wind up business because *it could not be operated as a going concern* without engaging in the wrongful misrepresentations and omissions); Patriot Alcohol Testers, Inc., 1992 WL 27334, at *7 (temporary receiver had been appointed, asset freeze then ordered based upon report of said receiver which indicated that *a finding of dissipation of assets is warranted*); cf. H.N. Singer, Inc. 668 F.2d at 1113 (allowing *asset freeze* to effectuate eventual rescission remedy); Southwest Sunsites, 665 F.2d at 718 (district court may order temporary relief *preventing dissipation of funds* that may constitute part of

10

the relief that will eventually be awarded). The FTC has not directed me to authority that supports the proposition it urges here, that a receiver should be appointed solely to ensure compliance with the law without any allegation the receiver is necessary to preserve the financial status quo.

The FTC relies on some SEC precedents in an attempt to show that a defendant's alleged untrustworthiness, mismanagement, and fraud alone constitute sufficient grounds to support a receiver to ensure compliance with the law.[5]   In those cases, however, the SEC was bringing enforcement actions based on specific allegations of violations of the securities laws and the purpose of the receiver was to preserve the integrity of the corporation affected by the wrongdoing of miscreant officers or directors. Those courts' discussions of public interest are inapposite here because the public interest being preserved in those cases involved preservation of the rights and assets of investors, clearly a financial interest calling for a receiver to exercise its traditional role.

For the foregoing reasons, I conclude the FTC's motion to modify the preliminary injunction to appoint a receiver should be denied.

---

[5] The FTC directed the court's attention to <u>SEC v. Bowler</u>, 427 F.2d 190, 198 (4th Cir. 1970) (FTC cites the appellate court's reversal of district court denial of receiver for the proposition that "it is obvious, as here, that those who have inflicted serious detriment in the past must be ousted"); <u>SEC v. Keller Corp.</u>, 323 F.2d 397, 403 (7th Cir. 1963) (quoted by the FTC for the proposition that "The district court was vested with inherent equitable power to appoint a trustee-receiver under the facts of this case. The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court."); and <u>SEC v. S & P Nat'l Corp.</u>, 360 F.2d 741, 750-51 (2d Cir. 1966) (quoted by the FTC for the proposition that "[T]he primary purpose [of the receiver] was promptly to install a responsible officer of the court who could bring the companies into compliance with the law . . . and report thereon to the court and public shareholders and preserve corporate assets.").

**III.    The Defendants Should Immediately Cease and Desist in Making Claims Related to the "Flex Protex" Product that Violate the Preliminary Injunction**

Although I have concluded that the modification of the preliminary injunction requested by the FTC would be inappropriate, I also admonish the defendants that the preliminary injunction prohibits some of their current conduct. The FTC brings to my attention the infomercial the defendants have been running for a product called "Flex Protex," which the FTC alleges violates the express provisions of the preliminary injunction. In Section I of the "Prohibited Business Activities" under the preliminary injunction, the defendants are preliminary enjoined from "making, or assisting others in making, directly or by implication, including through the use of endorsements or trade names, any representation" that "Supreme Greens with MSM *or any substantially similar product*" is, <u>inter alia</u>, "an effective treatment, cure, or preventative for arthritis." <u>See</u> Prelim. Inj. Order, at 17 (emphasis added). The preliminary injunction defines the term "substantially similar product" as "any dietary supplement containing one or more of the ingredients contained in the proprietary blend of Supreme Greens with MSM." <u>See</u> <u>id.</u> at 15. The "Flex Protex" product advertised in the infomercial is a dietary supplement and contains MSM and Ginger Root, according to the proponent of the product appearing in the infomercial along with defendant Barrett. <u>See</u> Decl. of Deborah Kelly, Ex. 2, Tr. of "Flex Protex" Infomercial, at 18, 28-29 (hereinafter "Flex Protex Transcript"). According to the label on the "Supreme Greens with MSM" bottle, its proprietary formula contains both of those ingredients. <u>See</u> <u>id.</u> Ex. 4, "Supreme Greens" Label. There are various statements made throughout the infomercial that are reasonably viewed as claims that the product either treats, cures, or prevents arthritis, especially given the fact that an on screen superscript states at various points "Can The Effects of Arthritis be Relieved Naturally?" In discussing the overlapping ingredient MSM, the

product's promoter, Patty McPeak, touts its anti-inflammatory potential and role as one of the compounds leading to arthritis relief.[6]  Thus, the "Flex Protex" infomercial, by its own terms and regardless of any "substantiation" the defendants purport to provide, appears to violate the terms of the preliminary injunction.  Although the main thrust of the FTC's argument was that the "Flex Protex" infomercial violated the prohibition on claims related to the treatment, cure, or prevention of arthritis, the preliminary injunction also bars the making of any representations that a "substantially similar product," such as "Flex Protex," (1) is an effective "treatment, cure, or preventative" for cancer, heart disease, or diabetes or (2) "can be taken safely by pregnant women, by infants and children, or by any person taking any type of medication." See Prelim. Inj. Order, at 17.  Therefore, the defendants are ordered to conform to the preliminary injunction and immediately cease and desist from making any of the prohibited claims as to the "Flex Protex" product.

It is SO ORDERED.


January 19, 2006                    \s\ George A. O'Toole, Jr.                  
DATE                                            DISTRICT JUDGE

---

[6]  McPeak says "[Yucca] is a pain reliever.  And, again, it's another profound anti-inflammatory, and yucca also enhance something called DHEA, another vital nutrient in the body that is very vital to the overall health of the whole system.  We also have formulated in there MSM, grapeseed.  These are all, again, anti-inflammatories . . . that when taken together in this complex are providing profound relief for arthritic pain" and "[Flex Protex] has MSM, it has grapeseed extract.  All of these are very powerful anti-oxidants and anti-inflammatories." Flex Protex Tr, at 18, 28.