**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 04-CV-11136 GAO |
| v. ) | |
| ) | |
| DIRECT MARKETING CONCEPTS, INC., et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF ANDREW ALDRICH**

I, ANDREW ALDRICH, under oath, declare as follows:

1.      I am a resident of Massachusetts and am currently the scientific adviser for Direct Marketing Concepts, Inc. ("DMC").  I also assist the company's in-house legal counsel, Michael Sciucco, in connection with his legal and compliance duties, and coordinate with outside counsel on various matters.

2.      I received a Bachelor of Science degree in Neuroscience from the University of Rochester.  I have also attended Northeastern University School of Continuing Education, where I received a certificate in paralegal studies.

3.      On September 28, 2005, I submitted an affidavit in connection with this litigation.

4.      I have reviewed the expert reports and affidavits submitted by the Federal Trade Commission in this matter, including the reports and affidavits of Richard J. Wood, Landon S. King, Maryfran Sowers and Barrie Cassileth.

5.      Though I was not employed by DMC at the time of the airing of the coral calcium and Supreme Greens advertising, Mr. Sciucco requested that I compile and organize the materials relating to these products that were in the possession of and reviewed by DMC at the time these shows were aired.

6.      Mr. Sciucco also asked me to compile materials available in the public domain that would provide substantiation for the claims made in each of the subject infomercials, and would speak to the general benefits of the products advertised therein.

7.      In order to pull and compile these materials, I utilized standard document retrieval services, such as PubMed and Elsevier.  Thus, these materials would be readily available to the experts retained by the FTC, as well as to students and others interested in these issues.

8.      True and accurate copies of the materials I was able to compile from these efforts are attached as exhibits to this affidavit.  Attached to my affidavit as Exhibit 1 are 30 numbered binders of these materials.

9.      Appendix A to my affidavit is a comprehensive table of contents identifying the coral calcium related materials in the binders numbered 1 through 16.  The materials related to coral calcium are separated into volumes identifying the specific claims and the scientific support for those claims.

10.     Binders 17 through 19 are a printout of the complete title search results for the words "Calcium and Hypertension" in a PubMed search.  Binders 20 through 24 are a printout of the complete title search results for the words "Calcium and Cancer" in a PubMed search. Binder 25 is a printout of the complete title search results for the words "Calcium and Safety" in a PubMed search.

11.     The volumes for Supreme Greens are organized primarily by chapters titled with the scientific names of the proprietary ingredient of supreme greens (some ingredients have two chapters).  These chapters appear in alphabetical order in the binders numbered 26 through 30. Within each of these chapters the materials are arranged by alphabetical order of the primary author of that material and are separated by numbered tabs.

12.     Though I do not present myself as a qualified expert in connection with these materials, the volume of materials that appear to substantiate the claims relating to coral calcium and the ingredients in Supreme Greens are substantial.  These materials also appear to undermine the FTC's experts when they repeatedly state that "no" such substantiation exists.

3

13.     I also note that at least one of the FTC's experts, Dr. Cassileth, appears to have ignored certain easily accessible databases in conducting his search, failing to uncover certain articles and studies on PubMed.  Based on the materials cited, it appears that Dr. Cassileth searched a different, and less comprehensive, database.

14.     I am currently responsible for reviewing and compiling substantiation for any show that DMC is considering airing.  One of my jobs is to review the show and the substantiation provided, as well as to independently verify the research and ascertain if there is additional substantiation in the public domain.  In consultation with Mr. Sciucco, we have rejected certain prospective shows because in our judgment the show lacks sufficient substantiation.  I have also suggested edits to certain shows to conform to my review of the relevant materials.

15.     DMC takes its compliance obligations seriously, including its obligation to review and edit shows to conform to the available substantiation and scientific literature.  I work closely with Mr. Sciucco to assure that these obligations are met.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of February, 2006 at Beverly, Massachusetts.


                                   /s/Andrew Aldrich
                                   ANDREW ALDRICH

3