# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-11136 GAO<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF EILEEN BARRETT MAIHOS

I, EILEEN BARRETT MAIHOS, under oath, declare as follows:

1. During the period from 2001 through 2004, I served as the office manager of defendants Direct Marketing Concepts, Inc. ("DMC") and ITV Direct, Inc. ("ITV"), and was responsible for the office operations of each company. I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2. DMC and ITV are production companies. They do not manufacture any products themselves and all products are manufactured by third parties.

3. In connection with the coral calcium infomercial, from the beginning of that program through March 2003, DMC acted as a call center in connection with the show. Kevin Trudeau, a popular infomercial figure, produced the show and DMC had no input into the edits or final content of the show. Donald Barrett, my brother, told me several times that the show had been reviewed by Trudeau's experts and lawyers and had been approved for distribution. Allen Stern, and his companies King Media and Triad, purchased all of the media for the show, purchased product in connection with the show, filled all customer orders in connection with the show and received all customer funds. I also heard that Allen Stern had given a copy of the show to his lawyer to review. DMC's role was limited to answering telephone calls and forwarding customer orders to Allen Stern's companies.

4.     In connection with the coral calcium infomercial, we had read Robert Barefoot's books and additional materials he had provided regarding coral calcium. These materials, and the citations in them, appeared to support the opinions he expressed during the program.

5.     In April 2003, ITV signed an agreement with Healthy Solutions to produce an advertisement with Alejandro Guerrero. Between April 2003 and October 2003, I had several conversations with Guerrero in which he stated that he was a doctor who operated a clinic in California. He also stated that he had regular patients and had conducted a study with over 200 of his patients. During this period, Guerrero also provided me with substantiation for the opinions he expressed in the show, including at least one double blind study and a summary of his clinical research. These materials, which I shared with Donald Barrett and others within DMC, are attached as Exhibit 1. When we asked for the backup of this clinical research, Guerrero confirmed that he had these materials, but claimed that he could not provide the material until he obtained advice about California's patient confidentiality requirements. He never indicated he did not have the information or that he could not substantiate every opinion he expressed in the advertisement.

6.     In addition to obtaining substantiation from Guerrero, we consulted with our counsel during 2003 concerning disclaimers in the shows, in any print advertisements, on the Internet and on the labeling for the product. The product always contained a prominent disclaimer stating that the product was not intended to treat, cure or prevent any disease. This disclaimer was also contained in all packaging. Over the course of several months in 2003, we added this disclaimer and others to versions of the show, on the Internet and in print advertising. We also added additional disclaimers to the shows stating that they were paid advertisements, that they expressed only the opinions of the guest, and that some of the opinions might not have scientific support.

7.     We believed that these disclaimers, combined with the content of the show and the materials we had reviewed were sufficient. In October 2003, after discussions with the FTC, our counsel then sent an edited version of the show to the FTC for review. We understood that

3

the show had been reviewed by the FTC, and the FTC was not requiring us to stop airing the show, but we should request that Guerrero provide copies of all of his substantiation materials. I then interacted with Guerrero, and he provided me with additional materials and cited us to other materials. He still delayed providing the patient studies, however, citing confidentiality concerns. This issue was never fully resolved before we made the determination to stop airing the show in early 2004.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this 26th day of January, 2006 at Beverly, Massachusetts.

                                                        /s/Eileen Barrett
                                                        EILEEN BARRETT