# EXHIBIT 1 TO LISA MOUNT AFFIDAVIT

# MARITAL SETTLEMENT AGREEMENT

# MARITAL SETTLEMENT AGREEMENT

**AGREEMENT** made this 2nd day of July, 2003, by and between Allen Stern (hereinafter "Husband") and Lisa Sagett Stern (hereinafter "Wife"), at Chester County, Pennsylvania.

**WHEREAS**, the parties hereto are Husband and Wife, having been married on October 25, 1992.

**WHEREAS**, the parties have two minor children, Rachel Stern and Jeremy Stern.

**WHEREAS**, diverse unhappy differences, disputes and difficulties have arisen between the parties and it is the intention of Wife and Husband to live separate and apart for the rest of their natural lives, the parties hereto are desirous of settling fully and finally their respective financial and property rights and obligations as between each other including, without limitation by specification, the settling of all matters between them relating to the ownership of real and personal property, the equitable distribution of such property; the settling of all matters between them relating to the past, present and future support and/or maintenance of Wife by Husband or of Husband of Wife; and in general the settling of any and all claims and possible claims by one against the other or against their respective estates.

**NOW, THEREFORE**, in consideration of the premises and of the mutual promises, covenants and undertakings hereinafter set forth and for other good and

valuable consideration, receipt of which is hereby acknowledged by each of the parties hereto, Wife and Husband, each intending to be legally bound hereby, covenant and agree as follows:

1. **DIVORCE**

The parties acknowledge that it is Wife's intention to file a Complaint in Divorce in the Court of Common Pleas of Chester County, Pennsylvania. The parties agree and acknowledge that their marriage is irretrievably broken and that they do not desire marriage counseling and that they both consent to the entry of a decree in divorce pursuant to §3301(c) of the Pennsylvania Divorce code, Act 26 of 1980, as amended (herein referred to as "The Code"). Accordingly, both parties agree that they will immediately execute and file their Affidavits of Consent upon expiration of the ninety-day waiting period from service of the Complaint.

2. **EFFECT OF DIVORCE DECREE**

The parties agree that, unless otherwise specifically provided herein, this Agreement shall continue in full force and effect after such time as a final decree in divorce may be entered with respect to the parties. It is the intent of the parties hereto that this Agreement shall create contractual rights and obligations entirely independent of an court Order and that this Agreement may be enforced by contract remedies in addition to any other remedies, which may be available pursuant to the terms of this Agreements or otherwise under law or equity.

3. **AGREEMENT TO BE INCORPORATED IN DIVORCE DECREE**

The parties agree that the terms of this Agreement shall be incorporated but not merged, into any divorce decree that may be entered with respect to them. The parties

2

further agree the Court of Common Pleas that may enter such divorce decree shall retain continuing jurisdiction over the provisions and the subject matter of the Agreement for the purpose of enforcement of any of the provisions thereof.

4. **MEDIATION**

The parties acknowledge that the provisions of the Agreement contained herein have been determined mutually by the parties themselves after participating in mediation with Eve Orlow, Ph.d. The terms of this Agreement as embodied herein conform to the settlement reached between the parties through the mediation process.

5. **DISTRIBUTION DATE**

For the purposes of this Agreement, the term "distribution date" shall be defined as the date of execution of this Agreement, unless otherwise specified herein.

6. **ADVICE OF COUNSEL**

The provisions of this Agreement and their legal effect have been fully explained to Wife by her counsel, Regina M. De Angelis, Esquire. Wife acknowledges that she has received independent legal advice from counsel of her selection and that she fully understands the facts and has been fully informed as to her legal rights and obligations and she acknowledges and accepts that this Agreement is, in the circumstances, fair and equitable and that it is being entered into freely and voluntarily, after having received such knowledge and that the execution of this Agreement is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agreements.

Husband, cognizant of his right to legal representation, declares it is his express, voluntary and knowing intention not to avail himself of his right to counsel, and chooses

3

instead to represent himself with respect to the preparation and execution of this Agreement.

Husband specifically acknowledges that he has voluntarily entered into this Agreement and considering all of the circumstances, considers this Agreement fair and equitable and specifically states that the execution of this Agreement is with full knowledge of his rights and obligations, and is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agreements.

7. **DISCLOSURE**

The parties acknowledge that they have each made to the other a full and complete disclosure of their respective assets, estate, liabilities and sources of income and that they waive any specific enumeration thereof for the purposes of this Agreement. The parties specifically acknowledge that all disclosures between them were made informally through the mediation process, and not through counsel for either party. Each party agrees that he and she shall not at any future time raise as a defense or otherwise the lack of such disclosure in any legal proceedings involving this Agreement, with the exception of disclosure that may have been fraudulently withheld.

8. **PERSONAL RIGHTS**

Wife and Husband may and shall, at all times hereafter, live separate and apart. They shall be free from any control, restraint, interference or authority, direct or indirect, by the other in all respects as fully as if they were unmarried. They may reside at such place or places as they may select. Each may, for his or her separate use or benefit, conduct, carryon and engage in any business, occupation, profession or employment

4

which, to him or her, may seem advisable. Wife and Husband shall not molest harass, disturb or malign each other or the respective families of each other nor compel or attempt to compel the other to cohabit or dwell, by any means or in any manner whatsoever, with him or her.

9. **MUTUAL RELEASES**

Husband and Wife each do hereby mutually remise, release, quitclaim and forever discharge the other and the estate of such other, for all time to come, and for all purposes whatsoever, or any from any and all rights, title and interests, or claims in or against the property (including income and gain from property hereafter accruing) of the other or against the estate of such other, or whatever nature and wheresoever situate, which he or she now has or at any time hereafter may have against the other, the estate of such other or any part thereof, whether arising out of any former acts, contracts, engagements or liabilities of such other or by way of dower or curtesy or claims in the nature of dower or curtesy or widow's or widower's rights, family exemption or similar allowance or under the intestate laws, or the right to take against the spouse's will; or the right to treat a lifetime conveyance by the other as testamentary, or all other rights of a surviving spouse to participate in a deceased spouse's estate, whether arising under the laws of (a) Pennsylvania, (b) any State, Commonwealth or territory of the United States, or (c) any other country, or any rights which either party may have or at any time hereafter shall have for past, present or future support or maintenance, alimony, alimony pendente lite, counsel fees, property division, costs or expenses, whether arising as a result of the marital relation or otherwise, except, all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of

5

any provision thereof. It is the intention of Husband and Wife to give to each other by the execution of this Agreement a full, complete and general release with respect to any and all property of any kind or nature, real personal or mixed, which the other now owns or may hereafter acquire, except and only except all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provision. It is further agreed that this Agreement shall be and constitute a full and final resolution of any and all claims which each of the parties may have against the other for equitable division of property, alimony, counsel fees and expenses, alimony pendente lite or any other claims pursuant to the Pennsylvania Divorce Code of the divorce laws of any other jurisdiction.

It is further agreed that this Agreement shall constitute a full and complete waiver of any and all claims which each party may have against the other outside the scope of the Divorce Code, including, but not limited to, tort claims, contract claims, negligence claims or any claims that either party may have now or in the future against each other.

10. **EQUITABLE DISTRIBUTION**

    a. **BROKERAGE AND INVESTMENT ACCOUNTS**

The parties specifically acknowledge and agree that the assets contained in their various investment and brokerage accounts will be divided according to the schedule set forth herein below. The parties acknowledge and agree that the values contained on the schedule below reflect the actual account balances as of March 30, 2003, and that actual values transferred to each party may vary slightly due to normal market fluctuation. In all instances, the party to receive the account is to receive 100% of the account balance as of the date the account is transferred into the respective party's individual name. To the

extent that the accounts listed herein below are in joint names, the parties will cooperate in immediately completing any documentation required to transfer title of the account to the party whom is to receive it.

The assets are to be divided as follows:

**TO WIFE:**

1) Smith Barney Account # 652-38550-10 154 with a value of $603,858.00

2) PNC CD Account #31900233209 with a value of $17,500.00

**TO HUSBAND:**

1) Merrill Lynch Account #881-32772 with a value of $263,478.00

2) Morgan Stanley Account #526021251012 with a value of $65,888.00

3) Smith Barney Account #2059803 with a value of $40,835.00

4) Stein Roe Account #325-0250005276 with a value of $9,051.00

5) T Rowe Price Account #118380823 with a value of 8,391.00

6) Vanguard Account #9910193684 with a value of $444,225.00

7) Dreyfus Account #259-0971611264 with a value of $4,789.00

Husband specifically acknowledges that he waives all right, title, or interest to the accounts listed above as being distributed to Wife through equitable distribution or otherwise. Wife specifically acknowledges that she waives all right, title, or interest to the accounts listed above as being distributed to Husband through equitable distribution or otherwise.

b.  **RETIREMENT ACCOUNTS**

Husband specifically acknowledges and agrees that he waives all right, title or interest he may have to any pension, 401(k), individual retirement account or other

7

retirement account of any type that may exist in Wife's name alone. Any such accounts that may exist in Wife's name shall be Wife's sole and separate property.

Wife specifically acknowledges and agrees that she waives all right, title, or interest she may have to any pension, 401(k), individual retirement account or other retirement account of any type that may exist in Husband's name alone. Wife specifically acknowledges that Husband's King 401(k) account with an approximate value as of March 30, 2003 of $43,000.00, shall be Husband's sole and separate property.

c.    BANK ACCOUNTS

Husband specifically acknowledges and agrees that Wife shall retain, as her sole and separate property, the entire balance of the PNC Checking account #8551669348 with an approximate balance as of March 30, 2003 of $20,000.00. Husband waives all right, title, or interest he may have to said funds through equitable distribution or otherwise.

The parties specifically acknowledge and agree that all other joint bank accounts have been previously divided to their mutual satisfaction.

The parties further specifically acknowledge and agree that Husband shall become the sole and exclusive owner of the funds contained in any bank account currently in his individual name, possession, or control, and Wife shall become the sole and exclusive owner of the funds contained in any bank account currently in her individual name, possession, or control.

d.    REAL ESTATE

The parties acknowledge and agree that Wife shall retain the former marital residence at 516 Sugartown Road, Devon, Pennsylvania, as her sole and separate

8

property. The parties acknowledge and agree that Wife takes said property subject to the outstanding mortgage balance of approximately $400,000.00. Wife acknowledges that she shall be solely responsible for the payment of all costs and liabilities associated with the former marital residence, including, but not limited to, mortgage, taxes, and insurance. Wife shall refinance said property into her name alone within 90 days of the execution of this Agreement.

The parties acknowledge and agree that for purposes of equitable distribution they have agreed that the approximate equity in the former marital home is $300,000.00. Husband specifically waives all right, title, or interest he may have to the property or the equity therein through equitable distribution or otherwise.

c.  BUSINESS INTERESTS

The parties acknowledge and agree that prior to their marriage they jointly started a business known as King Media with a third partner. The parties acknowledge that they own a 66.67% share of said business, and that for purposes of collecting salaries and distributing profits each party is treated as an equal one-third partner. The parties acknowledge and agree that it is the intention of the parties to continue to maintain their relationship as business partners after the conclusion of the divorce proceedings.

The parties further acknowledge and agree that they will each individually continue to draw a salary from King Media (and/or applicable successor corporations) for so long as they own the business. Should either party wish to end their partnership, the party exiting the partnership will no longer be entitled to an annual salary. Husband specifically acknowledges and agrees that Wife will continue to draw a salary from King Media in an amount equal to his annual salary until such time that Wife ceases to be a

9

partner or the business ceases to exist. Wife and Husband shall receive equal salaries from the business each year.

Wife and Husband shall each be entitled to one-third of all profits to be distributed by the business for so long as the partnership exists. The parties acknowledge that profits are not dispersed on a regular schedule, but rather are dispersed periodically as profits accrue. Husband acknowledges that Wife shall be entitled to one-third of any and all profits for so long as the business operates and Wife remains a one-third owner, and Wife acknowledges that Husband shall be entitled to one-third of any and all profits for so long as the business operates and Husband remains a one-third owner.

f. PERSONAL PROPERTY

Husband and Wife do hereby acknowledge that they have previously divided their tangible personal property including, but without limitation to jewelry, clothes, furniture, furnishings, rugs, carpets, household equipment, household appliances, pictures, books, works of art and other personal property. Except as may otherwise be provided in this Agreement, Wife agrees that all of the property of husband or in his possession shall be the sole and separate property of Husband; and Husband agrees that all of the property of Wife or in her possession shall be the sole and separate property of Wife. The parties do hereby specifically waive, release, renounce and forever abandon whatever claim, if any, he or she may have with respect to the above items, which shall become the sole and separate property of the other.

11. AFTER-ACQUIRED PERSONAL PROPERTY

Each of the parties shall hereafter own and enjoy, independently of any claim or right of the other, all items of personal property, tangible or intangible, hereafter acquired

by him or her, with full power in him or her to dispose of the same as fully and effectively, in all respects and for all purposes, as though he or she were unmarried.

## 12. OTHER ASSETS

To the extent that there are other assets which exist and have been disclosed but not distributed in the various paragraphs of this Agreement, it is hereby understood and agreed by and between the parties that those assets titled in Wife's name shall remain Wife's and those assets titled in Husband's name shall remain Husband's. Those assets titled jointly shall remain jointly owned by the parties. As to untitled assets, which have been disclosed but not distributed in other paragraphs of this Agreement, they shall remain the sole and exclusive property of the person in possession at the time of execution of this Agreement.

The above release is subject to the proviso that it shall be effective only as to those assets disclosed to the other party, although such assets need not be specifically named or disposed of in this Agreement. Neither party intends by the execution hereof to release any claim, which he or she may have in assets, which have not been disclosed.

## 13. LEGAL FEES

The parties acknowledge and agree that they are each responsible for their individual attorney's fees associated with this action.

## 14. ALIMONY AND ALIMONY PENDENTE LITE

Wife hereby waives all claim for alimony pendente lite, alimony and/or spousal support or maintenance of any kind whatsoever. Additionally, Husband hereby waives any claim he may have for alimony, alimony pendente lite, spousal support or maintenance of any kind.

11

15. **CHILD SUPPORT**

The parties acknowledge and agree that, in lieu of a formal child support Order being entered for the support of the parties' minor children, that Wife will continue to draw an annual salary from the parties' business in an amount equal to Husband's annual salary. It is anticipated that, upon execution of this Agreement, Wife's salary with King Media will be $150,000.00 per year. The parties acknowledge and agree that they anticipate that their individual salaries will continue to increase over time.

The parties acknowledge and agree that, should there be a change in circumstances such that the business ceases to exist or Wife's annual income is less than Husbands, that a child support amount will be determined according to the Pennsylvania child support guidelines.

16. **EDUCATION AND CAMP EXPENSES**

The parties specifically acknowledge and agree that it is their intention that their children attend private school until they have graduated from high school. They also intend to send each of their children to Hebrew school and summer camp. The parties specifically acknowledge and agree that they will pay the costs of private school tuition, Hebrew school tuition, and camp on a fifty-fifty basis.

17. **COLLEGE EXPENSES**

The parties acknowledge and agree that it is their intention that each of their children attend a four-year college or appropriate trade school. The parties agree that they will cooperate in obtaining all available scholarship and grant money for each of their children to help defray the costs of college education. After all scholarship and

12

grant money has been applied to the outstanding tuition and room and board invoices, the parties will cooperate in determining the reasonable contribution to be made by each child through part-time employment. Thereafter, the parties will each contribute towards the remaining tuition and room and board expenses in proportion to their incomes at the time the expenses are incurred.

18. **CUSTODY**

The parties acknowledge and agree that they shall have joint legal custody of the parties' two minor children, and that Wife shall have primary physical custody of the parties' two minor children. Husband shall have partial physical custody of the parties' children two evenings per week for dinner. Husband shall pick-up and return the children at such times as the parties mutually agree. Husband shall also have partial physical custody of the children every other weekend from Friday evening at 5:45 PM until Sunday at 3:00 PM. Husband may have other periods of partial custody as the parties mutually agree. The parties further specifically acknowledge and agree that neither will move with the children outside of the greater Philadelphia metropolitan area unless the other party has previously given their consent in writing. The parties agree that they will abide by this provision until their youngest child is eighteen years old.

The parties agree that the holiday schedule will be as follows:

Passover Children will be with Mother for both Sedars each year

Rosh Hashanah—Holiday will alternate from year to year, with Mother having the children in 2003.

Yom Kippur- Holiday will alternate from year to year, with Father having the children in 2003.

13

Hanukah—The children will celebrate Hanukah with each parent individually during the parent's regular weekend of custody closest to the holiday period.

Thanksgiving—Holiday will alternate from year to year with the holiday beginning on Wednesday evening and concluding on Friday evening. Father shall have the children in 2003 and all subsequent odd numbered years, and Mother shall have the children in 2004 and all subsequent even numbered years.

Memorial Day, Fourth of July and Labor Day—Children to be with Mother for Memorial Day 2003 and with Father for Fourth of July and Labor Day. This schedule shall reverse in 2004 and each subsequent year thereafter.

The parties acknowledge and agree that they will be flexible during the summer months in determining Father's partial custody schedule with the children. It is specifically acknowledged that during the summer Father may have additional overnights with the children during the week, as the parties mutually agree.

19. **APPLICABILITY OF TAX LAW TO PROPERTY TRANSFERS**

The parties hereby agree and express their intent that any transfers of property pursuant to this Agreement shall be within the scope and applicability of the Deficit Reduction Act of 1984 (herein the "Act"), specifically, the provisions of said Act pertaining to transfers of property between spouses or former spouses. The parties agree to sign and cause to be filed any elections or other documents required by the Internal Revenue Service to render the Act applicable to the transfers set forth in this Agreement, without recognition of gain on such transfers and subject to the carry-over basis provisions of said Act.

14

20. **WARRANTY AS TO EXISTING OBLIGATIONS**

Each party represents that they have not heretofore incurred or contracted for any debt or liability or obligations for which the estate of the other party may be responsible or liable except as may be provided for in this Agreement. Each party agrees to indemnify and hold the other party harmless for and against any and all such debts, liabilities or obligations of every kind which my have heretofore been incurred by them, including those for necessities, except for the obligations arising out of this Agreement.

21. **WARRANTY AS TO FUTURE OBLIGATIONS**

Wife and Husband each covenant, warrant, represent and agree that with the exception of obligations set forth in this Agreement, neither of them shall hereafter incur any liability whatsoever for which the estate of the other may be liable. Each party shall indemnify and hold harmless the other party for and against any and all debts, charges and liabilities incurred by the other after the execution date of this Agreement, except as may be otherwise specifically provided for by the terms of this Agreement.

22. **WAIVER OR MODIFICATION TO BE IN WRITING**

No modifications or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties or the Court, and no waiver of any breach or default hereof shall be deemed a waiver of any subsequent default of the same or similar nature.

23. **MUTUAL COOPERATION**

Each party shall, at any time and from time to time hereafter, take any and all steps and execute, acknowledge and deliver to the other party any and all further

15

instruments and/or documents that the other party may reasonably require for the purpose of giving full force and effect to the provisions of this Agreement.

24. **LAW OF PENNSYLVANIA APPLICABLE**

This Agreement shall be construed in accordance with the law of the Commonwealth of Pennsylvania, which may from time to time be in effect.

25. **AGREEMENT BINDING ON HEIRS**

This Agreement shall be binding and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

26. **INTEGRATION**

This Agreement constitutes the entire understanding of the parties and supercedes any and all prior agreements and negotiations between them. There are no representations or warranties other than those expressly set forth herein.

27. **OTHER DOCUMENTATION**

Wife and Husband covenant and agree that they will forthwith (and within at least 10 days after demand therefore) execute any and all written instruments, assignments, releases, satisfactions, deeds, notes or such other writings as may be necessary or desirable for the proper effectuation of this Agreement.

28. **NO WAIVER OF DEFAULT**

This Agreement shall remain in full force and effect unless and until terminated under and pursuant to the terms of this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall in no way affect the right of such party hereafter to enforce the same, nor shall the waiver of any default or breach of any provision hereof be construed as a waiver of any subsequent default or

16

breach of the same or similar nature, nor shall it be construed as a waiver of strict performance of any other obligations herein.

## 29. SEVERABILITY

If any term, condition, clause or provision of this Agreement shall be determined or declared to be void or invalid in law of otherwise, then only that term, condition, clause or provision shall be stricken from this Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation. likewise, the failure of any party to meet her or his obligations under any one or more of the paragraphs herein, with the exception of the satisfaction of the conditions precedent, shall in no way void or alter the remaining obligations of the parties.

## 30. ENFORCEMENT

(a) It is expressly understood and agreed by and between the parties hereto that this Agreement may be specifically enforced by either Husband or Wife in a Court of Equity, and the parties hereto agree that if an action to enforce this Agreement is brought in Equity by either party, the other party will make no objection on the alleged ground of lack of jurisdiction of courts in equity over agreements such as this one.

(b) Notwithstanding anything to the contrary herein, Husband and Wife may also proceed with an action at law for redress of any of his or her rights under the terms of this Agreement. In the event that, for any reason whatsoever, either party is obliged to proceed at law for redress of his or her rights under the terms of this Agreement, then it is specifically understood and agreed that for and in specific consideration of the other provisions and covenants of this Agreement, each shall waive any right to jury trial so as to expedite the hearing and disposition of such case and so as to avoid delay.

(c) It is specifically understood and agreed by the parties that, in the event of a default under the terms of this Agreement, the non-defaulting party shall have the right to file a petition for contempt and request such relief and remedies as authorized by law.

(d) Each party further agrees that, should they be held in contempt of court for breaching any provision contained in this Agreement, the party found in contempt will pay the reasonable counsel fees and costs incurred by the other in bringing the action for contempt for enforcement of this Agreement;

(e) All remedies provided by law and all remedies provided for in this Agreement for enforcement of this Agreement shall be deemed to be cumulative and the exercise of one remedy shall not bar or prevent the pursuit of any other remedy and either party may elect to pursue such remedies simultaneously and the exercise of a remedy one or more times shall not exhaust its use or prevent further pursuit of such remedy.

31. HEADINGS NOT PART OF AGREEMENT

Any headings preceding the text of the several paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction or effect.

IN WITNESS WHEREOF, the parties have set their hands and seals this day and year first above written.

_____        _____
LISA STERN                            REGINA M. DE ANGELIS, ESQ.

_____        _____
ALLEN STERN                           WITNESS

COMMONWEALTH OF PENNSYLVANIA :
: SS
COUNTY OF CHESTER :

On this, the 2nd day of July, 2003, before me a Notary Public for the State of Pennsylvania, residing in the County of Chester, the undersigned Officer, personally appeared **Allen Stern**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within Marital Settlement Agreement, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

> Notarial Seal
> Edward J. Richards, Notary Public
> Tredyffrin Twp., Chester County
> My Commission Expires August 30, 2004

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA :
: SS
COUNTY OF CHESTER :

On this, the 2nd day of July, 2003, before me a Notary Public for the State of Pennsylvania, residing in the County of Chester, the undersigned Officer, personally appeared **Lisa Stern**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within Marital Settlement Agreement, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

> Notarial Seal
> Edward J. Richards, Notary Public
> Tredyffrin Twp., Chester County
> My Commission Expires August 30, 2004

_____
Notary Public

19