## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

FEDERAL TRADE COMMISSION,      )
                                   )
        Plaintiff                 )
             v.                 )
                                   )     Civ. No. 04-11136 - GAO
DIRECT MARKETING CONCEPTS, INC., et al.,   )
                                   )
        Defendants.           )
                                   )

---

## REPLY BRIEF OF FEDERAL TRADE COMMISSION IN RESPONSE TO OPPOSITION OF DEFENDANTS DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., DONALD W. BARRETT, AND ROBERT MAIHOS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Table of Contents**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE DEFENDANTS HAVE NOT PUT ANY MATERIAL FACTS INTO
       DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       A.   There is No Question That The Defendants Made the Challenged Claims . . . . . . 3
       B.   The Defendants Have Not Raised Any Valid Disputes Challenging
            the FTC's Proof That Their Claims Are Unsubstantiated and False . . . . . . . . . . . 5
       C.   The Defendants Raise No Real Dispute About the Extent of Consumer
            Injury Resulting From Their Actions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.   THE DEFENDANTS' RAISE NO ISSUES OF MATERIAL FACT
       CONCERNING THE DECEPTIVE FORMAT OF THEIR INFOMERCIALS . . . . . . . . 9

IV.    THE DEFENDANTS RAISE NO ISSUES OF MATERIAL FACT
       CONCERNING THEIR PRACTICES OF ENROLLING CONSUMERS
       IN AUTOSHIP PROGRAMS WITHOUT THEIR CONSENT  . . . . . . . . . . . . . . . . . . 10

V.     THE DEFENDANTS' LEGAL ARGUMENTS ARE WRONG  . . . . . . . . . . . . . . . . . 13
       A.   The Commission's Challenge of the Coral Calcium Infomercial
            is Not Barred by Res Judicata  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       B.   The Court Can Determine What Claims The Infomercials Convey  . . . . . . . . . 14
       C.   The First Amendment and DSHEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.    BARRETT AND MAIHOS ARE BOTH INDIVIDUALLY LIABLE . . . . . . . . . . . . . 17

VII.   FULL CONSUMER REDRESS AND BROAD FENCING-IN
       ARE APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
       A.   Net Consumer Injury is the Appropriate Measure of Monetary Relief.  . . . . . . 21
       B.   Broad Injunctive Relief Is Necessary Given The Defendants' Demonstrated
            Predilection For Marketing Products Using Health and Disease Claims  . . . . . . 22

VIII.  RELIEF DEFENDANT BP MARKETING HAS NOT OPPOSED THE
       COMMISSION'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . 25

IX.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# Table of Authorities

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bristol-Myers Co. v. FTC*, 738 F.2d 554, 562 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002) . . . . . . . . 15

*Central Hudson Gas & Elec. Corp. v. Public Service Comm. of New York*,
    447 U.S. 557, 563, 564 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*
    228 F.3d 24 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*FTC v. American Microtel, Inc.*, No. CV-S-92-178-LDG(RJJ), 1992
    WL 184252, at *1-2 (D. Nev. June 10, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FTC v. American Standard Credit Sys., Inc.*, 874 F. Supp. 1080 (C.D. Cal. 1994) . . . . . . . . . 20

*FTC v. Bay Area Bus. Council, Inc.*, 2004 WL 769388, *1 (N.D. Ill. 2004),
    *aff'd*, 423 F.3d 627 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

*FTC v. Braswell*, CA No. 03-3700 DT(PJWx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35 (D.C. Cir. 1985) . . . . . . . . . . . . . . 15

*FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . 6, 7

*FTC v. Evans Product Co.*, 775 F.2d 1048 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. Febre*, 128 F.3d 530, (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. Freecom Comm., Inc.*, 401 F.3d 1192 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, (S.D.N.Y. 2000) . . . . . . . . . . . . . . . 19, 24

*FTC v. Garvey*, 383 F.3d 891 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*FTC v. Hudson Berkley Corp.*, CV-S-02-0649-PMP (D. Nev. July 1, 2003) . . . . . . . . . . . . . . 22

*FTC v. Kevin Trudeau*, No. 03 C 3904 (N.D. Ill. March 31, 2004) . . . . . . . . . . . . . . . . . . . . . . . 4

*FTC v. Patriot Alcohol Testers, Inc.*, 798 F. Supp. 851 (D. Mass. 1992) . . . . . . . . . . . 14, 18, 20

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 18

*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013 (N.D. Ind. 2000) . . . . . . . . . . . . . . . 22

*FTC v. Slim Down Solution, LLC*, No. 03-80051-CIV (N.D. Fla. May 14, 2004) . . . . . . . . . . 22

*Jay Norris, Inc. v. FTC*, 598 F.2d 1244 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Removatron Int'l Corp. v. FTC*, 884 F.2d 1489 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*SEC v. Lipson*, 278 F.3d 656, 664 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 1100 (2d Cir. 1971) . . . . . . . . . . . . . . . . 24

*Sears, Roebuck & Co. v. FTC*, 676 F.2d 385 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Raymond*, 228 F.3d 804 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Building Inspector of Am., Inc.*, 894 F. Supp 507 (D. Mass. 1995) . . . . . . . . . . . . 17, 21

*Whitaker v. Thompson* 248 F. Supp. 2d 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985) . . . . . . . . . . . . . . . . . . . . . . . 16

## **_STATUTES AND RULES_**

15 U.S.C. § 53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16 C.F.R. § 310.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.     INTRODUCTION

Pursuant to the Court's January 27, 2006 Order, Plaintiff Federal Trade Commission

("FTC" or "Commission") respectfully submits this Reply Brief in support of its motion for

summary judgment against defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct,

Inc. ("ITV"), Donald Barrett ("Barrett"), Robert Maihos ("Maihos"), and BP International, Inc.

("BP").[1]  Summary judgment is appropriate here because DMC, ITV, Barrett, and Maihos  ("the

Defendants") have not put any <u>material</u> <u>facts</u> into dispute.  (BP did not submit an opposition to

the FTC's motion.)  Indeed, the Defendants fail to controvert the vast majority of the facts in the

Commission's Rule 56.1 Statement of Material Facts Not in Dispute ("FTC Rule 56.1 Stmt.") or

to challenge the evidence marshaled by the FTC to support those facts.  Instead, they repeatedly

disavow any responsibility for the Coral Calcium Daily and Supreme Greens marketing

programs, placing blame on everyone else with whom they were associated.

The Commission specifically directs the Court's attention to four techniques employed in

the Defendants' Statement of Material Facts in Dispute ("Def. Stmt.") to create "disputed" facts

where none exist.  First, by grouping together five, ten, or more facts from the FTC's Rule 56.1

Statement and providing a single response, the Defendants obscure the reality that they are

actually controverting only a handful of the FTC's individual facts.[2]  Second, the Defendants

---

[1]  The Commission has filed a separate Memorandum addressing the opposition filed by defendants Allen Stern, King Media, Inc., and Triad ML Marketing, Inc., and relief defendants Lisa Mount (a/k/a Lisa Stern) and Steven Ritchey.

[2]  For example, they aggregate paragraphs 171-179 of the FTC's Rule 56.1 Statement, and claim to dispute that they failed to have anyone review the Supreme Greens infomercial.  The lengthy, self-serving discourse that follows, however, does not specifically address most of the individual paragraphs in that grouping – *e.g.*, ¶¶ 174, 176, 177.  Thus, those paragraphs must be deemed to be admitted.  Similarly, they aggregate FTC paragraphs 305-311 and claim to dispute the FTC's evidence regarding unauthorized autoships.  They do not, however, actually challenge any of the Commission's evidence, and instead submit more than a page of minimally supported argument.

frequently make assertions that have no accompanying citation or only a vague citation to an

entire affidavit, with no specific page or paragraph referenced.[3]  *See also, e.g.,* DMC Defendants'

Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."), at 8 and n.1 (no citations

supporting assertion that ITV began reducing Supreme Greens media purchases in March 2004

with the intent of removing the infomercial from the air by June 2004, or that they investigated

Alex Guerrero in April 2004).   Third, in a number of instances, the Defendants' citations do not

actually support the statements for which they are offered.[4]  Fourth, the Defendants present

inadmissible hearsay evidence by witnesses who also lack personal knowledge of the matters in

question.[5]  Accordingly, the FTC respectfully requests that the Court disregard most of the

Defendants' factual assertions, pursuant to Local Rule 56.1, which states that "[o]pposition to

---

[3]  *See, e.g.*, Def. Stmt., ¶¶ 183-186 (citing generally to Donald Barrett's 2/10/06 Affidavit), ¶ 187 (same), and ¶ 195 (statements about the Today's Health website supported by general reference to Affidavit of Eileen Barrett Maihos who, in fact, referred to the website only in paragraph 6, where she mentioned the addition of a particular disclaimer on the Internet).

[4]  For example, the Defendants cite pages 189 and 192 of Maihos' deposition to support their assertion that the FTC disparaged DMC to Chase Merchant Services.  Def. Stmt., ¶ 65.  Yet Maihos says clearly on page 189 that he is only "speculating" that the FTC contacted Chase.  FTC S.J. Ex. 8, at p. 189.  *See also, e.g.*, Def. Stmt., ¶¶ 108-109 (sources cited support assertion that Kevin Trudeau told Barrett the completed infomercial was "perfect," and that he told Barefoot and Barrett in advance that he had capability to get it reviewed for FTC compliance, but not that he told Barrett that the completed infomercial had actually been approved by his FTC experts and found to be perfect; also source cited for assertion that Stern told Barrett that his attorney had approved the show for airing, FTC S.J. Ex. 15 at Att. 7, does not support that statement); *id.* at ¶¶ 180-182 (none of the sources cited mention Guerrero raising privacy concerns); *id.* at ¶ 187 (Barrett's 2/10/06 Affidavit does not state that he believed the FTC was concerned about the coral calcium infomercial primarily because it featured Trudeau).

[5]  The FTC has also filed a Motion to Strike the admission into evidence of the affidavit and accompanying 30 binders of exhibits submitted by Andrew Aldrich, the admission into evidence of the affidavit of Jason Bernabei, and the admission of specific portions of the affidavits by Donald Barrett, Eileen Barrett Maihos, Wayne Callahan, Simon Mena, and Allen Stern.  As explained in the Commission's Motion, the affidavits at issue contain hearsay, the affiants have not established that they have personal knowledge of the matters in question, or their statements contradict prior sworn testimony.

motions for summary judgment shall include a concise statement of the material facts of *record* as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation" (emphasis added).[6]

## II. THE DEFENDANTS HAVE NOT PUT ANY MATERIAL FACTS INTO DISPUTE

"Disputed facts are material when they might affect the outcome of the suit." *FTC v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2004 WL 769388, *1 (N.D. Ill. April 8, 2004) (granting FTC's motion for summary judgment, and entering judgment against all defendants), *aff'd*, 423 F.3d 627 (7th Cir. 2005). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Here, although the Defendants ostensibly purport to dispute many of the Commission's assertions, they do not actually dispute the fundamental elements of violations of Sections 5 and 12 of the FTC Act, and the facts needed to find each of them liable.

### A. There is No Question That The Defendants Made the Challenged Claims

This Court has already found that the Defendants' Supreme Greens infomercial and Today's Health website made the disease claims challenged by the FTC, and that the disclaimers in the Supreme Greens infomercial were "infrequent and/or inconspicuous." Preliminary Injunction, at p. 11, ¶ 24 [Dkt. No. 32].[7] The Defendants – who did not appeal this or any other

---

[6] For the Court's convenience, the Commission submits as Attachment A to this Reply Memorandum a chart that lists each of the paragraphs in the Commission's Rule 56.1 Statement, and states whether the Defendants admitted, attempted to controvert that paragraph, or, having failed to controvert, have admitted that fact pursuant to Local Rule 56.1.

[7] Deceptive messages in advertisements cannot be cured by inconspicuous disclosures. *See Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently

3

part of the Preliminary Injunction – have introduced no new evidence to refute the factual

findings contained in the Preliminary Injunction.

Nor do the Defendants dispute the accuracy of the FTC's information about the creation

and content of the coral calcium infomercial.  Although the Court has not yet made any findings

about the messages conveyed by that infomercial, the Defendants' contention that it merely

expressed Robert Barefoot's opinions about coral calcium and health, Def. Opp. At 16-17; Def.

Stmt. ¶ 81, and did not make disease cure claims for the product[8] is as preposterous as their

contention – already rejected by this Court – that the Supreme Greens infomercial was simply a

forum in which product developer Alex Guerrero stated his opinions about the product, and they

themselves made no claims.[9]  *See* Defendants' Opposition to Plaintiff's Motion for TRO, at 17-

18 [Dkt. No. 7].

Although the Defendants provide lengthy discourses designed to diminish their own role

---

prominent and unambiguous to change the apparent meaning of the claims and to leave an
accurate impression.  Anything less is only likely to cause confusion by creating contradictory
double meanings") (citation omitted).  The Defendants assert that they added additional
disclaimers to various versions of the infomercial, Affidavit of Eileen Barrett Maihos, ¶ 6, but –
tellingly – fail to submit these supposedly improved versions for the record.

[8]  The fact that the infomercial did not mention a specific brand of calcium is irrelevant.
The infomercial clearly made disease claims for coral calcium and told consumers they could get
a discount on the coral calcium Barefoot mentioned.  FTC S.J. Ex. 2, Att. 2 at pp. 24, 35-36.
Consumers who called the telephone number were then sold the Coral Calcium Daily product by
the Defendants' sales agents.  *See* FTC S.J. Ex. 10, Att. 3 at DMC 039599.

[9]  The Commission also notes that another federal district court found that disease claims
were made in a second coral calcium infomercial created by Trudeau after Trudeau broke off his
business relationship with the Defendants.  *See* Transcript of Proceedings Before the Hon. Robert
W. Gettleman at 11, *FTC v. Kevin Trudeau*, No. 03 C 3904 (N.D. Ill. March 31, 2004) ("this type
of infomercial says what it says, and the message is very clear.  The overall message is coral
calcium cures diseases, particularly the ones that they mention: cancer, lupus, MS, people getting
out of wheelchairs.").  A copy of that transcript is submitted as Attachment A to the Declaration
of Edward Glennon ("Glennon Decl.").

in the marketing of coral calcium and emphasize Stern's, there is no question that the Defendants paid for the "Calcium Factor" infomercial, that they were entitled to half of the profits earned on coral calcium product sales resulting from the infomercial, and that working together with Stern and his companies they disseminated the infomercial widely.  *See* FTC Reply Brief Att. A, at ¶¶ 68, 72, 82, 103.

    With respect to the materials used by their sales agents, the Defendants do not challenge the authenticity of any of the scripts, FAQs, or other documents submitted by the Commission. FTC Reply Brief Att. A at ¶¶ 87-90, 93.  Rather, they contend that they are not responsible for the contents of those materials because in the case of coral calcium, the information in the scripts and power sheets came from Barefoot's books and most of the scripts were prepared by Stern, and in the case of Supreme Greens, the information was provided by, or derived from statements made by, Guerrero.  Def. Stmt., ¶¶ 87, 88-93,196-203.  Even if true, these contentions do not raise a genuine dispute as to whether the Defendants made the claims at issue.

### B.    The Defendants Have Not Raised Any Valid Disputes Challenging the FTC's Proof That Their Claims Are Unsubstantiated and False

    The law requires marketers to have adequate substantiation for the claims they make, and in the case of strong health claims – such as those here – the law requires competent and reliable scientific evidence.  *See* Federal Trade Commission's Memorandum of Points And Authorities in Support of its Motion for Summary Judgment at 36-37 ("FTC S.J. Brief") [Dkt. No. 132].  The Defendants have failed to submit any evidence that they had such substantiation, and the FTC has provided undisputed evidence that the efficacy claims are indeed false or unsubstantiated.

    The Court has previously found that the Commission is likely to prevail based on the uncontradicted declarations of Drs. King and Cassileth that the claims made in the Supreme

Greens infomercial were false or not supported by reliable scientific evidence. PI at pp. 7-8,
¶¶ 7-8, and p. 11, ¶ 25. Again, the Defendants have failed to provide any valid facts to controvert
these findings. Nor do they provide any valid facts to controvert similar findings by the
Commission's experts as to coral calcium. Thus, the Commission has provided ample proof that
the Defendants' efficacy claims are false or unsubstantiated.

As noted *supra*, the Commission is moving to strike the Affidavit of Andrew Aldrich and
all of the materials submitted with that Affidavit. *See* Motion to Strike, at pp. 3-7. Having
previously made a strategic decision not to depose the FTC's experts or proffer any of their own
at the appropriate time, the Defendants cannot now give themselves a "Mulligan" by having a
previously undisclosed lay witness submit 30 looseleaf binders of studies, in order to use those
studies to criticize the Commission's experts in the hopes of creating a disputed issue of material
fact, or to argue that their own claims were substantiated. The Defendants could have questioned
Drs. Wood, Sowers, Cassileth, and King directly about their expertise and the basis for their
opinions, but they chose not to do so. Their arguments now that the experts' reports are flawed
do not rise to the level of actually controverting any of the evidence submitted by the FTC to
prove that the Defendants lacked proper scientific substantiation for their claims. They are
merely unsupported advocacy, with no factual basis whatsoever.

The Defendants also misread the Ninth Circuit's holding in *FTC v. Enforma Natural
Prods., Inc.*, 362 F.3d 1204 (9th Cir. 2004), when they assert that the *Enforma* court reversed the
district court's grant of an injunction because there was a genuine dispute regarding the reliability
of Enforma's purported scientific substantiation. Def. Opp. at 17, 23-24. The Ninth Circuit was
confronted with a preliminary injunction issued (1) by a court that might have improperly relied
on an off-the-record hearing attended by both parties' expert witnesses, during which the court-

6

appointed expert discussed opinions without cross-examination, and (2) without the issuance of proper findings of fact and conclusions of law.  *See* 362 F.3d at 1210, 1213-15.  As the court clearly noted, the appeals "focus[ed] on irregular procedures employed by the district court," and not on a substantive analysis of the purported substantiation.  *Id.* at 1208.[10]

The Defendants contend that the claims made in the coral calcium show mirrored those in Barefoot's books.  Def. Stmt., ¶¶ 72-80.  But their submission makes it clear that the only "substantiation" they had prior to the airing of the infomercial was Barefoot's books.[11]  But a book by the same man who is touting the miraculous powers of coral calcium in the infomercial, who has no medical background, and who stands to make millions of dollars if successful is hardly competent and reliable scientific evidence for those claims.

Similarly, they do not dispute Maihos' admission that the materials the Defendants received from his co-defendants in August 2003 did not substantiate the claims made in the Supreme Greens infomercial.  *See* FTC Reply Brief Att A. at ¶¶ 181-182.  Rather, they assert that Guerrero repeatedly told them he had substantiation, that he saw the completed infomercial and liked it, and that over the course of a number of months after it started running, they received materials "which appeared to provide *some* support" for the claims made in the infomercial.  Def. Stmt., ¶¶ 171-179, 183-186 (emphasis added).

_____

[10]  Indeed, the Defendants' contention that "The Court then rejected any argument that only 'double-blind placebo-controlled clinical testing, can serve to substantiate claims" is plainly wrong.  Def. Opp. at 24.  Rather, the court merely stated in *dicta* that based on the absence of adequate findings of fact, the Commission's position that such clinical studies were required in the circumstances of that case was "not beyond doubt."  362 F.3d at 1217.  However, the court concluded that it "need not engage in speculation," and remanded the matter for "factual findings sufficient to determine the basis on which the district court rejected Enforma's studies."  *Id.*

[11]  The Defendants admit that "at the time of the first call from the FTC [in June 2003, they] contacted Trudeau and requested that he provide additional substantiation, in addition to the books published by Barefoot.  Def. Stmt., ¶¶ 121-126 (emphasis added).

Eileen Barrett Maihos submits some materials that she describes as having been received during the period between April and October 2003, including "a summary of his clinical research"[12] and one preliminary clinical study on a single ingredient in Supreme Greens' 39-ingredient proprietary blend.[13]  However, when Donald Barrett submitted those same documents with his June 4, 2004 Affidavit, he stated definitively that they had been received in October 2003 – after the FTC had told the Defendants that the infomercial was problematic.  Affidavit of Donald Barrett at ¶ 19 and Att. F [Dkt. No. 9].  Indeed, although the Defendants now assert that "scientific materials were provided" prior to the taping of the infomercial, Def. Opp. at 6, the only materials that Barrett mentioned specifically as having been provided prior to taping were "testimonials by fitness celebrity Tony Robbins."  *Id.* at ¶ 13.  Clearly, none of this so-called substantiation was gathered prior to dissemination or was adequate for the Defendants' strong disease and weight loss claims.

Again, the Defendants' exclusive reliance on Guerrero and his business partners – who hoped to make a fortune from their joint venture – cannot be deemed adequate substantiation for the claims made in the advertising.  Even if Guerrero did tell Barrett or other employees of DMC and ITV that he had substantiation for Supreme Greens' efficacy, those self-serving statements cannot be deemed to constitute proper scientific proof that would shield the Defendants from

---

[12]  Eileen Barrett Maihos actually failed to submit that summary of Guerrero's clinical research.  *See* Affidavit of Eileen Barrett Maihos at Ex. 1.  The reason is obvious:  it is worthless.  The FTC urges the Court to read that half-page "summary," which was submitted as Attachment G to Donald Barrett's June 4, 2004 Affidavit [Dkt. No. 9], and was provided to the Defendants on September 29, 2003.

[13]  This study does not support their claims for Supreme Greens.  Not only did it not test the actual Supreme Greens product, but subjects in the test group received 2,250 milligrams of MSM per day.  *See* Affidavit of Eileen Barrett Maihos, Ex. 1 at p. 5 (MSM study).  The recommended daily dose of Supreme Greens provides a total of 3,850 milligrams of the entire 39-ingredient proprietary blend.  FTC S.J. Ex 5, at Att. 5.

liability, as the Court has already found.  PI at p. 12, ¶ 30 (the defendants' "purported reliance

upon co-defendant Alex Guerrero's representations regarding the product – even if true – is not a

valid defense to a violation of the FTC Act").

     In short, the Defendants have not presented any facts or law to dispute the Commission's

factual findings and legal conclusions that the claims for coral calcium and Supreme Greens were

unsubstantiated or false.  Thus, the FTC is entitled to summary judgment on these counts.

     **C.**    **The Defendants Raise No Real Dispute About the Extent of Consumer Injury Resulting From Their Actions**

     The Defendants' attempt to manufacture a disputed factual issue concerning the extent of

consumer injury resulting from their actions does not withstand scrutiny.  They do not directly

challenge the evidence supporting Commission's assertions that the coral calcium infomercial

generated at least $40 million of coral calcium product sales, or that they collected $14.68

million (after refunds) from consumers in connection with the sale of Supreme Greens.  *See* FTC

Reply Brief Att. A, at ¶¶ 162-163, 266-268.

**III.**    **THE DEFENDANTS RAISE NO ISSUES OF MATERIAL FACT CONCERNING THE DECEPTIVE FORMAT OF THEIR INFOMERCIALS**

     The Defendants do not directly controvert any of the Commission's specific facts relating

to the deceptive format of the Supreme Greens infomercial.  *See* FTC Reply Brief Att. A at

¶¶ 190-194.  Instead, they contend that there were different versions of the infomercial with

improved disclaimers, Def. Stmt., ¶¶ 188-194, none of which have been put on the record in this

case.  The fact remains that after viewing the original infomercial – complete with its "limited

disclaimers" – the Court concluded that its format was misleading.  PI at p. 12, ¶ 28.  No new

evidence has been submitted by the Defendants to change that finding.  Thus, the Court should

grant summary judgment on this count.

IV.  **THE DEFENDANTS RAISE NO ISSUES OF MATERIAL FACT CONCERNING THEIR PRACTICES OF ENROLLING CONSUMERS IN AUTOSHIP PROGRAMS WITHOUT THEIR CONSENT**

Despite the Defendants' repeated assertions that they "dispute" the Commission's evidence regarding their practice of unauthorized billing, they in fact fail to contradict the specific facts the Commission asserts to establish their liability on this issue.  The Defendants' opposition makes repeated reference to the company's purported official "policy" to obtain consent from consumers prior to placing them on an autoship program.[14]  Whatever the company's avowed policy may have been, or purportedly is now, however, the Commission's evidence demonstrates that the company's actual *practice* was quite different.

Significantly, the Defendants fail to dispute the Commission's most important evidence regarding their practice of enrolling consumers in autoship programs without authorization: they dispute neither the language of the scripts cited by the Commission (including one written by Donald Barrett himself), nor the fact that consumers who failed to object were enrolled in autoship programs after being read such scripts.[15]  See FTC Reply Brief Att. A at ¶¶ 281-82, 284,

---

[14]  Much of the evidence the Defendants cite in support of their professed policy provides either no support for the proposition or is inadmissible.  For example, they cite on several occasions to page 242 of Erik Limbaugh's deposition transcript as support for such statements.  *See* Def. Stmt., ¶¶ 269-279, 281-83.  Limbaugh, however, never testified to that effect on that page, or on any other page, of his cross-examination by the Defendants' counsel.  *See* FTC S.J. Ex. 10 at 242-49.  The affidavits of Soraida Negron and Matthew Ribaudo, cited as support for the proposition that DMC trained its customer reps to obtain consent before charging consumers for autoships relating to Supreme Greens sales, *see* Def. Stmt., ¶¶ 288-92, also provide no support for that proposition.  The Defendants also cite the affidavit of Simon Mena regarding DMC's policies.  *See, e.g.*, Def. St., ¶¶ 269-79, 281-83.  Portions of Mena's affidavit, however, are inadmissible on the grounds that he fails to establish his personal knowledge of the facts to which he testifies.  *See* Motion to Strike at pp. 27-30, 32-33.

[15]  The Defendants also fail to dispute that their own meeting minutes acknowledge that the E-8 Daily script was "deceiving" and that Barrett admitted in his deposition that the E-8 scripts were confusing.  *See* FTC Reply Brief Att. A at ¶ 302; FTC S.J. Ex. 7 at 199:7-11.  Remarkably, they cite to this same portion of Barrett's testimony as support for their statement

288-92, 297-98.  At least one Supreme Greens script, for example, stated that "Best of all, buy [sic] purchasing this package today you will be able to receive a month's supply of the alkalizing system for the same low price of 49.99 every month."  FTC Rule 56.1 Stmt, ¶ 288.  Consumers purchasing that package would then be placed on the autoship program to receive those same products each month for $49.99.  *Id.*  The Defendants's scripts thus are uncontroverted evidence of their failure to obtain customers' express consent.[16]

Furthermore, the Defendants fail to dispute that there were numerous consumer complaints about unauthorized autoship placement during the challenged advertising campaigns and that they were aware of this fact.  *See* FTC Reply Brief Att. A at ¶¶ 285-87, 299-308, 311. The Defendants attempt to explain the volume of consumer complaints about unauthorized E-8 Daily autoships by referring to a conspiracy between sales reps in search of commissions on autoship sales and consumers who would state they had been placed on the program without their consent when calling to cancel.  Not surprisingly, however, the Defendants cite no first-hand, admissible evidence in support of this theory.  *See* Motion to Strike at p. 12, 30-31.  Moreover, they do not dispute the Commission's evidence showing that they have failed to address their problems regarding unauthorized billing.  *See* FTC Reply Brief Att. A at ¶¶ 313-18.  They do not deny the fact that they have failed to "immediately" fire any sales representative caught placing consumers on autoship without their consent.  *See id.* at ¶¶ 312-18.  Instead, the Defendants

_____

that DMC customers "were told expressly that they would be charged for the program unless they canceled, and their consent was obtained to the entire program, including the free bottle and the reorder." *See* Def. Stmt., ¶¶ 293-304.  Barrett testifies to nothing of the sort.

[16]  The Defendants attempt to argue that FTC law regarding "negative option" programs condones their practice of charging consumers without obtaining authorization.  *See* Def. Stmt., ¶ 284 & n.2.  Nothing could be further from the truth.  The regulation they cite by analogy requires that consumers provide express agreement to be charged.  *See* 16 C.F.R. § 310.4(a)(6). Failure to obtain such agreement constitutes an abusive telemarketing practice.  *See id.*

engage in revisionist history regarding their representations to the Court regarding this

termination policy[17] and set forth a lengthy discourse justifying their endless warnings to their

sales staff.  *See* Def. Stmt., ¶¶ 312-18.

    The Defendants also attempt to refute the Commission's analysis of their database, which

revealed the existence of thousands of consumer complaints relating to unauthorized placement

on the company's autoship program.[18]  They fail, however, to rebut the Commission's central

finding with regard to the specific consumer group relevant to the unauthorized billing charge.[19]

The Commission's analysis revealed that 11.98% of consumers who were placed on autoship for

coral calcium or for any product (such as E-8 Daily) after purchasing Supreme Greens[20]

---

[17]  The Defendants state that that "Barrett stands by his statement that *intentional* violations of the company's policies will lead to immediate termination."  *See* Def. Stmt. ¶¶ 312-18 (emphasis added).  Barrett's June 4, 2004 affidavit – to which they cite –  however, contained no qualification that such violations would have to be "intentional."  *See* FTC S.J. Ex. 7, at 102:16-103:18, 154:18-20, 156:11-17 and Att. 14 at ¶ 21 (ITV-270).  Furthermore, although the Defendants state that it is the company's policy to give representatives guilty of a non-intentional violation a "second chance," the Commission's evidence shows that they in fact give their representatives far more than two chances to comply with the company's purported policy.  *See* FTC Rule 56.1 Stmt. at ¶¶ 313-18.

[18]  The Defendants argue that the testimony of Stefano Sciolli is inadmissible because the Commission did not identify him as an expert witness.  Mr. Sciolli's testimony, however, is not expert in nature.  *See* Motion to Strike at pp. 39-40.

[19]  The Commission charged in its complaint that Defendants DMC, ITV, Barrett and Maihos, in connection with the advertising, promotion, marketing, offering for sale, sale, and/or distribution of (1) Supreme Greens, caused charges for automatic shipments of E-8 Daily dietary supplement or other products to be billed to consumers' credit or debit cards without the consumers' authorization; and (2) Coral Calcium Daily, caused charges for automatic shipments of Coral Calcium Daily to be billed to consumers' credit or debit cards without the consumers' authorization.  See FTC S.J. Ex. 2, at ¶¶ 49-50.

[20]  *See* FTC Rule 56.1 Stmt. ¶ 321 (defining these Relevant Purchasers).  The text of ¶ 321 as filed with the Commission's motion was incomplete.  The text regarding the second subset of purchasers in that paragraph should read as follows: "or (2) purchased a coral calcium product and who also purchased a coral calcium product on an autoship program . . . ."  *See* SJ Ex. 31, ¶ 7(b) (Declaration of Stefano Sciolli) (defining Relevant Customers).

complained about unauthorized autoships. The Commission's evidence also establishes that, remarkably, 85% of the consumers in this group either complained about unauthorized autoships or cancelled their autoships.[21] *See* FTC Rule 56.1 Stmt. at ¶¶ 322, 325.

Finally, although the Defendants attack the Commission's reference to the experience of its own investigator in contacting DMC, they do not dispute that she was placed on autoship without her authorization, or that their sales representative acted improperly in making that sale. *See* FTC Reply Brief Att. A at ¶ 335. The Defendants complain that her experience cannot be used to show a pattern or practice of unauthorized billing practices by their sales representatives. The Commission, however, offers this evidence as further corroboration of what the Defendants' own undisputed sales scripts, internal meeting minutes, disciplinary letters to sales representatives, and database demonstrate: the widespread and persistent nature of their unlawful billing practices. Thus, the Court should grant summary judgment on this count.

## V.    THE DEFENDANTS' LEGAL ARGUMENTS ARE WRONG

### A.    The Commission's Challenge of the Coral Calcium Infomercial is Not Barred by Res Judicata

The Defendants' contention that the Commission's allegations concerning their coral calcium infomercial may be barred by *res judicata* is belied by the simple fact that the FTC's lawsuit in Northern District of Illinois involved a different infomercial – "The Kevin and Debbie Show"[22] – produced and disseminated by a different set of individuals and companies for a

---

[21]   As Brian Middendorf testified, the Defendants' customer service representatives sometimes failed to note the particular reason a consumer would cancel their enrollment in the autoship program. *See* FTC Rule 56.1 Stmt. at ¶ 324. The Defendants attempt to use Mr. Middendorf's testimony to attack the accuracy of the data in their own database, and take issue with Mr. Middendorf's knowledge regarding the data's meaning. Their citation to his testimony, however, provides no support for their contentions. *See* Def. Stmt., ¶¶ 319-29.

[22]   Host Debbie Flett appeared in this infomercial with Trudeau and Barefoot.

different product.  The Defendants in the instant action had nothing whatsoever to do with the

transaction at issue in the Illinois lawsuit, a threshold issue for *res judicata*.  *See* Def. Opp. at

19.[23]

      The Defendants are simply wrong when they state that the Commission's Illinois lawsuit

and settlements "include [Trudeau's and Barefoot's] their liability for the coral calcium

infomercial that is the subject of the present action."  *Id.* at 19, 20.  Conversely, had the

Commission attempted to name these defendants in the Illinois litigation, they would have had

valid arguments for dismissal.

    **B.**    **The Court Can Determine What Claims The Infomercials Convey**

      The FTC's initial memorandum reviews the case law that clearly establishes the Court's

ability to find that the challenged claims were made, without resorting to extrinsic evidence:

> Courts routinely determine the existence of express and implied claims on
> summary judgment motions, even where defendants argue that there are issues of
> fact as to whether they made the representations or not.  *See [FTC v.] Gill*, 71 F.
> Supp. 2d at 1043 (granting summary judgment to the FTC in an action
> challenging implied claims after determining the ads' "overall net impression");
> *FTC v. U.S. Sales Corp.*, 785 F. Supp. 737, 745 (N.D. Ill. 1992) (granting
> summary judgment to the FTC after reviewing ads and determining their overall
> "net impression").

FTC S.J. Brief at 35.  *See also id.* at n.29 (citing numerous cases affirming district court's ability

to determine an ad's net impression).  Indeed, this Court did precisely that in *FTC v. Patriot*

*Alcohol Testers, Inc.,* 798 F. Supp. 851 (D. Mass. 1992), when, after noting that it "must focus

on '[t]he impression created by the advertisement, not its literal truth or falsity,'" it went on to

---

    [23]  Moreover, because they did not participate in the transaction that gave rise to the
Commission's lawsuit – *i.e.*, "The Kevin and Debbie Show" – the Defendants cannot be "co-
conspirators" with Trudeau and Barefoot,  and thus do not meet the *res judicata* privity
requirement.  *Cf. FTC v. Garvey*, 383 F.3d 891, 897-98 (9th Cir. 2004) (district court's grant of
summary judgment on *res judicata* grounds reversed, because Ninth Circuit found no privity
even between product developer and producer of infomercial used to promote that product).

determine the claims that would be conveyed to consumers by the challenged advertising. *Id.* at

855, 857 (quoting *Removatron*, 884 F.2d at 1496).

The Defendants' reliance on *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35

(D.C. Cir. 1985), is misplaced because – as the language they quote acknowledges, Def. Opp. at

14 n.4 – that case preceded the FTC's now well-established district court practice, which has

generated clear precedent on the issue of a court's ability to read for itself ads such as those at

issue here.  Thus, this Court acted completely properly when, after viewing the Supreme Greens

infomercial, it found that the Defendants had made cancer, arthritis, and heart disease prevention,

treatment, and cure, claims , and it can do the same with the coral calcium infomercial.[24]

### C.    The First Amendment and DSHEA

The Commission's challenge to the Defendants' marketing of coral calcium and Supreme

Greens in no way conflicts with the Dietary Supplement Health and Education Act ("DSHEA").

First, the FTC does not enforce DSHEA; it is an FDA statute.  More important, the FTC's law

enforcement actions <u>further</u> DSHEA's goal of enabling consumers to make educated decisions

about dietary supplements based on truthful information about those products.[25]  To this end, the

---

[24]  Even assuming *arguendo* that Lanham Act precedent applied to cases brought under
the FTC Act, the Defendants' argument fails.  The First Circuit recognizes that a claim may be
considered literally false, even if it is not stated expressly, when it is conveyed by "necessary
implication." *E.g., Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F.3d 302, 315 (1st
Cir. 2002), ("'[a] claim is conveyed by necessary implication when, considering the
advertisement in its entirety, the audience would recognize the claim as readily as if it had been
explicitly stated.'") (quoting *Clorox Co. Puerto Rico v. Proctor & Gamble Commer. Co.,* 228
F.3d 24, 35 (1st Cir. 2000)).  The claims made in the Defendants' coral calcium and Supreme
Greens infomercials are express or virtually express.

[25]  Defendants fail to mention that DSHEA prohibits the making of disease claims for
dietary supplements.  *See* 65 Fed. Reg. 1000, 1001 (Jan. 6, 1999) (in issuing final rule on
statements made for dietary supplements concerning the effect on the body's structure or
function, FDA stated that DSHEA specifically provides that the statements permitted "may not
claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases. . . .").

Commission has brought numerous other cases challenging the misleading marketing of dietary supplements.[26]

Nor do the Defendants' First Amendment arguments withstand scrutiny. It is well-established that commercial speech receives protection under the First Amendment only if it concerns lawful activity and is not misleading, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563-64 (1980); *see Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive or misleading.") (citation omitted). The representations challenged here – made primarily in television advertising – are quintessential commercial speech. Accordingly, under *Central Hudson*, if the Defendants' claims communicate false or misleading messages, they have no constitutional protection. *See United States v. Raymond*, 228 F.3d 804, 815 (7th Cir. 2000) ("It is permissible for the government to prevent the dissemination of false or misleading commercial speech."). Notably, the Commission's advertising substantiation requirements have withstood three separate First Amendment challenges in the circuit courts over the past 20 years.[27]

---

Furthermore, supplement manufacturers who make claims permitted under DSHEA "must possess substantiation that the statement is truthful and not misleading. . .." *Id.*

[26]  *See* Glennon Decl. at ¶ 4 and Att. 2 (July 10, 2003 FTC press release entitled "Federal Trade Commission Attacks $1 Billion In Deceptive Health Marketing since December," and the related report entitled "FTC Enforcement Activities – Dietary Supplement and Health Fraud Actions – December 2002 - July 2003").

[27]  In *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 399-400 (9th Cir. 1982), Sears challenged an FTC order requiring that it have substantiation for its claims prior to disseminating them, arguing that it chilled its First Amendment rights. The Ninth Circuit rejected these arguments: "The Commission may require prior reasonable substantiation of product performance claims after finding violations of the [FTC] Act, without offending the first amendment." *Id.* The court similarly rejected Sears' argument that the order "chilled" its ability to engage in lawful advertising. *Id.* The Second Circuit has also twice rejected First Amendment

The Commission is using its law enforcement authority in this action to challenge advertising that has already been disseminated for specific products by individual advertisers – it is not imposing a broad *prior* blanket ban on an *entire category* of claims by all would-be speakers[28] – and the question is whether those challenged ads convey misleading messages to consumers. Moreover, the speech remedy sought here is specifically tailored to prevent future misleading advertising by *these* specific defendants. As such, the Commission's action is fully consistent with the First Amendment. *See Central Hudson*, 447 U.S. at 563-64.

## VI. BARRETT AND MAIHOS ARE BOTH INDIVIDUALLY LIABLE

Barrett and Maihos are individually liable if (1) they actually participated in the practices at issue, or (2) they "had the authority to control them." *U.S. v. Building Inspector of Am., Inc.*, 894 F. Supp 507, 518 (D. Mass. 1995) (citing *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). The FTC establishes a corporate officer's individual liability by showing that he or she had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id*. at 518 (citing *Amy Travel*, 875 F.2d at 574) (other

---

challenges to FTC orders requiring advertisers to have substantiation prior to disseminating advertisements. *See Bristol-Myers Co. v. FTC*, 738 F.2d 554, 562 (2d Cir. 1984) ("Nor is the prior substantiation doctrine as applied here in violation of the First Amendment."); *Jay Norris, Inc. v. FTC*, 598 F.2d 1244, 1252 (2d Cir. 1979) ("[W]e hold only that because the FTC here imposes the requirements of prior substantiation as a reasonable remedy for past violations of the Act, there is no constitutional prior restraint of petitioners' protected speech.").

[28] Defendants' reliance on *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999), is thus misplaced. *Pearson* challenged the FDA's prohibition of all health claims for dietary supplements, except when the agency determined *a priori* that there was "significant scientific agreement" that evidence supported a particular claim. Similarly, *Whitaker v. Thompson* 248 F. Supp. 2d 1 (D.D.C. 2002), involved a challenge to FDA's decision that a claim about antioxidants reducing the risk of some cancers was so inherently misleading that no disclaimer that supplement manufacturers might use would be adequate to correct the damage.

17

citations omitted).[29]  Barrett and Maihos meet these standards.

Both men participated directly in the primary practice challenged by the Commission:  the dissemination of false and misleading infomercials.  Barrett created the coral calcium infomercial – using Trudeau and Barefoot to sell coral calcium was his idea.  *See* FTC Reply Brief Att. A at ¶ 68; FTC S.J. Ex. 6, at Att. 1.  He then wrote the "President's Handshake" (which made a strong cancer cure claim for coral calcium) and one of the first coral calcium scripts used by DMC's sales representatives.  *See* FTC Reply Brief Att. A at ¶¶ 97, 281.  Barrett  appeared with Guerrero in the Supreme Greens infomercial, and he gave the go-ahead to run that infomercial.  *See id.* at ¶¶ 171-176.  Maihos also participated in the Supreme Greens infomercial project:  he knew the content of the infomercial, that Guerrero had been asked to provide substantiation of Supreme Greens' efficacy, and he himself was the recipient of the paltry documentation that was provided in response.  FTC Reply Brief Att. A at ¶¶ 180-82, 185; FTC S.J. Ex. 13 at ¶ 4.  The Defendants' airing of the Supreme Greens infomercial without that substantiation is at the heart of this case.

With respect to the second basis for individual liability, the Defendants do not dispute that Barrett and Maihos are the sole owners and officers and the ultimate decisionmakers of DMC and ITV, *see* FTC Reply Brief Att. A at ¶¶ 81, 24, 26, 27, 29, 30, 32, 38; that Maihos was the President of DMC for the first nine months of the coral calcium program, at which time he was succeeded by Barrett, *id.* at ¶ 33; that Barrett had the final say on all matters involving the sales room, *id.* at ¶ 28; and that Maihos is responsible for day to day operations, including

---

[29]  *See also FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997); *Patriot Alcohol Testers*, 798 F. Supp. at 859-60 (individual is liable for a corporation's deceptive acts if he (1) knew of the material misrepresentations, was recklessly indifferent to their truth or falsity, or was aware of high probability of fraud and intentionally avoided the truth; (2) participated in the acts or had authority to control the conduct; and (3) customers relied on the misrepresentations) (citing *Amy Travel*, 875 F.2d at 573-74).

customer service, and for the company's merchant account, *id.* at ¶¶ 36-38.  Clearly, both men

had the authority to control the companies and were responsible for the unlawful activities.[30]

Finally, both Barrett and Maihos clearly have the requisite scienter to establish individual

liability for monetary relief.  Specifically, the Defendants do not dispute that the coral calcium

infomercial began airing within a week after Barrett received a copy of the finished product from

Trudeau, that they did not have it reviewed by an attorney before running it, and that they did not

pause their marketing efforts when Barrett was told directly in January 2002 of the need for

claims substantiation.  *Id.* at ¶¶ 74, 75, 111, 112.  Furthermore, the only "substantiation" they had

prior to putting the infomercial on the air was Barefoot's books, *see* note 11, *supra*.  Given the

extraordinarily serious nature of the claims made in the infomercial, Barrett and Maihos were

recklessly indifferent about the truth or falsity of the claims they were making – if not actually

aware of the material misrepresentations.

With respect to Supreme Greens, the Defendants do not dispute that they produced and

aired the Supreme Greens infomercial without any compliance review other than by co-defendant

Guerrero, despite being aware of the FTC's concerns about false and unsubstantiated advertising

for coral calcium.  *See* FTC Reply Brief Att. A at ¶¶ 177-179.  Indeed, the Defendants – through

both Barrett (*see* FTC Reply Brief Att. A at ¶¶ 183-184) and Maihos – sought substantiation, and

---

[30]  The Defendants argue that there are disputed issues as to Maihos' individual liability , just as there were with one of the defendants in *Building Inspectors*.  Def. Opp. at 35-36.  But the extent of involvement in a closely-held corporation is highly fact specific.  Here, Maihos is a 50% owner, and he admits day-to-day management, direct conversations with Guerrero about claims substantiation, and responsibility for the merchant account (so he must known about the charge back problems).  *See FTC v. Freecom Comm., Inc.*, 401 F.3d 1192 (10th Cir. 2005); *FTC v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 539 (S.D.N.Y. 2000) (owner's wife, who only performed ministerial tasks, found liable for monetary relief because her participation in preparing filings for state regulators gave her more than minimal knowledge of misrepresentations).

Guerrero's failure to provide what he claimed to have should have been a "red flag."  Finally,

while in negotiations with the FTC, the Defendants allowed multiple versions of the Supreme

Greens infomercial to air, including the original one they knew was violative.  *See* Def. Stmt. at

209-231(acknowledging that the original version might have run but asserting that if it did, it was

not intentional).  Barrett's and Maihos' conduct at a minimum constitutes reckless indifference to

the truth or falsity of the  claims, or an "awareness of a high probability of fraud along with an

intentional avoidance of the truth."[31]

In a last-ditch effort, the Defendants attempt to rely on the Ninth Circuit's decision in

*FTC v. Garvey*, 383 F.3d 891 (9th Cir. 2004), to escape liability , arguing that Barrett's and

Maihos' reliance on their business partners Guerrero and Barefoot was not unreasonable and thus

they lacked the requisite scienter for liability.  Def. Opp. at 34.  The *Garvey* case is clearly

inapposite.[32]  *Garvey* involved the liability of a celebrity spokesperson – hired solely to

participate in the infomercial – for making alleged unsubstantiated claims.  *See id.* at 902 & n.12.

In that limited role, former baseball player Steve Garvey – who was merely a hired spokesperson

---

[31]  *See FTC v. American Microtel, Inc.,* No. CV-S-92-178-LDG (RJJ), 1992 WL 184252,
at *1-2 (D. Nev. June 10, 1992) (striking affirmative defense of two defendants that their co-
defendants had created the challenged representations and assured the two defendants that the
representations were lawful, as the defense "would not extinguish the defendants' liability even if
the facts alleged therein were proven"); *FTC v. American Standard Credit Sys., Inc.,* 874 F.
Supp. 1080, 1088 (C.D. Cal. 1994) ("it is no defense for Defendants to argue that the advertising
was sanctioned by" a third party; blessing by another party cannot sanction something
Defendants should have known was wrong).

[32]  To the extent that the Defendants also suggest that *Garvey* shields DMC and ITV from
liability, Def. Opp. at 2, 18, they are clearly wrong.  As discussed *infra*, Garvey dealt with the
liability of a hired celebrity pitchman.  Advertisers themselves are strictly liable for violations of
the FTC Act.  *See, e.g.*, *Patriot Alcohol Testers*, 798 F. Supp. at 855 (once FTC establishes there
a material misrepresentation likely to mislead consumers, "the fact that an advertiser may have
acted without an intent to deceive is not a defense. . . . Nor is an advertiser's good faith") (citing
*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988)).

and not a principal of the advertiser – was found not to be liable for restitution.  Here, however,

Barrett and Maihos are not mere hired spokespersons in the challenged infomercials.  They are

principals of the corporate defendants marketing these products, controlling all of DMC and

ITV's business activities, including the advertising activities challenged here.[33]  The *Garvey*

decision is completely inapplicable to them.

## VII.    FULL CONSUMER REDRESS AND BROAD FENCING-IN ARE APPROPRIATE

The Defendants' assertion that the Commission cannot use Section 13(b) of the FTC Act,

15 U.S.C. § 53(b), to remedy past law violations is based on a clear misreading of case law.  In

*FTC v. Evans Product Co.*, 775 F.2d 1048 (9th Cir. 1985), the FTC was appealing the denial of its

motion for a <u>preliminary</u> injunction, which it sought in order to preserve equitable relief at the

end of the lawsuit.  Indeed, the *Evans Products* court noted that Section 13(b) explicitly

authorizes permanent injunctions.  *Id.* at 1086.

### A.    Net Consumer Injury is the Appropriate Measure of Monetary Relief

The appropriate measure of equitable monetary relief is the net consumer injury (*i.e.*, the

amount paid by consumers minus refunds or other amounts previously returned to them)

–whether this relief is ordered after a full trial or on summary judgment makes no difference.[34]

*See FTC v. Febre*, 128 F.3d 530, 536-37 (7th Cir. 1997) (affirming district court's award at

_____

[33]  Indeed, *Garvey* was recently found to be inapplicable to an defendant who had written ad copy, although he was not a principal of the advertiser; the court found that he "cannot seriously contend that he was 'merely a spokesperson.'" *FTC v. Braswell*, CA No. 03-3700 DT(PJWx), Order Denying Defendant Chase Revel's Motion for Summary Judgment or Partial Summary Judgment (C.D. Cal. Sep. 27, 2005).  Glennon Decl. at ¶ 5 and Att. 3.

[34]  The materiality of the claims to consumers, and thus consumers' reliance on them are presumed.  *See* FTC S.J. Brief at 38.  *See also Freecom*, 401 F.3d at 1203 (proof of consumer reliance not necessary).  At this point the burden shifts to the Defendants to rebut that presumption.  *See Building Inspector*, 894 F. Supp at 552.  They have failed, however, to offer any evidence to controvert the materiality of their representations to consumers.

summary judgment, $16.1 million, the amount calculated by the Commission as total consumer

losses); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1019-21 (N.D. Ind. 2000)

(citing *Febre* and other FTC cases, and entering summary judgment against corporate and

individual defendants for net consumer injury of $28.1 million), *aff'd in part and rev'd in part on

other grounds*, 312 F.3d 259 (7th Cir. 2002).[35]  The fact that the FTC may enter into settlements

that provide for less than full consumer redress – based upon, among other things, detailed

information about the defendants' finances – has no bearing on the appropriate remedy in a

litigated case.[36]  *See FTC v. Slim Down Solution, LLC*, No. 03-80051-CIV (N.D. Fla. May 14,

2004 (granting FTC's motion for summary judgment and entering judgment for $30.1 million);

*FTC v. Hudson Berkley Corp.*, CV-S-02-0649-PMP (D. Nev. July 1, 2003) (granting summary

judgment for FTC and entering judgment for $83.8 million).[37]

### B. Broad Injunctive Relief Is Necessary Given The Defendants' Demonstrated Predilection For Marketing Products Using Health and Disease Claims

The Defendants' actions since the filing of the Commission's complaint[38] show that they

---

[35]  *See also Bay Area Bus. Council*, 2004 WL at *14-15 (granting FTC's motion for summary judgment, stating that consumer redress is appropriate remedy under Section 13(b), and awarding $12.5 million – the amount of net sales verified by the FTC).  "To determine the proper amount of redress, the FTC is required to 'show that its calculations reasonably approximated the amount of customers' net losses, and then the burden shifts to the defendants to show that those figures were inaccurate.'"  *Id.* at *14 (quoting *Febre*, 128 F.3d at 535).

[36]  The Defendants fail to mention that the Commission's settlements with Trudeau and with the other Supreme Greens defendants provide that if the defendants misrepresented their finances during negotiations, the court will enter judgment in a substantially greater amount: *e.g.*, $20 million for Trudeau.  *Cf.* Def. Opp. at 42 n.28 *with* Affidavit of Christopher F. Robertson, Ex. 4 at p. 20.  *See also* Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Defendants Healthy Solutions, LLC, Gregory Geremesz, and Michael Howell ($2.7 million judgment to be entered if financial condition misrepresented) [Dkt No. 116].

[37]  See Glennon Decl. at ¶¶ 6-7 and Att. 4 and 5.

[38]  The Defendants did not controvert the Commission's assertions that they had

are likely to continue marketing products with strong disease prevention and treatment claims,
and that a broad permanent injunction is needed to ensure that consumers are protected from
future misleading claims.  First, having told the Court in June 2004 that they had no intention of
producing any more dietary supplement infomercials, the Defendants were disseminating ads
making strong health claims for Renuva and Sea Vegg by early 2005.  The Defendants' contend
that in June 2005, Barrett testified that he had made the decision to stop running infomercials for
ingestibles in part because he could not determine the FTC's standard for competent and reliable
evidence.  Def. Opp. at 69.  But Barrett's June 7, 2005 affidavit gave no such explanation for his
prior promise to the Court, and actually made it clear that the Commission's substantiation
standard presented no problem for the Defendants:

> With respect to my [June 2004 affidavit] regarding the business decision not to
> produce infomercials for ingestible products, that was a true and accurate
> statement at the time I submitted that affidavit.  As of June 2004, I had made the
> decision to stop running infomercials for ingestible products.
> 
>                                              ***
> "We have produced a few other infomercials for dietary supplements this year.
> These infomercials were only produced after Mr. Sciucco and others within the
> company reviewed substantiation about the product and ingredients.  If the
> product and or the ingredients of the product does not have competent and reliable
> scientific evidence then we will not air the infomercial."

Affidavit of Donald Barrett at ¶¶ 5, 15 [Dkt. No. 80].

Second, despite their new and highly touted advertising compliance procedures, they
violated the Preliminary Injunction by running the Flex Protex infomercial.  Memorandum and
Order, at 12-13 [Dkt. No. 137].

Third, their repeated denials of responsibility and attempts to blame others for every
practice challenged by the Commission confirm the need for broad injunctive relief.  *See SEC v.*

---

previously participated in the marketing of Stress Shield, Alka Slim, UroCaps, Femerex, and
7DMC.  *See* FTC Reply Brief Att. A, at ¶¶ 336, 339, 341-343.

*Lipson*, 278 F.3d 656, 664 (7th Cir. 2002) ("The criminal who in the teeth of the evidence insists that he is innocent, that indeed not the victims of his crime but he himself is the injured party, demonstrates by his obduracy the likelihood that he will repeat his crime, and this justifies the imposition of a harsher penalty on him.")[39]

The Defendants' demonstrated propensity for making disease prevention and cure claims (for products with widely varying ingredients) for diseases such as cancer, heart disease, arthritis, Parkinson's, multiple sclerosis, and diabetes requires broad order coverage in order to ensure that their future marketing claims are truthful and substantiated. Narrower coverage – encompassing, for example, only coral calcium, Supreme Greens and similar products – although appropriate at the Preliminary Injunction stage, will not adequately protect consumers.[40]

The Commission's proposed order provides the appropriate relief, by (1) prohibiting misrepresentations that a food, drug, or dietary supplement can prevent, treat, or cure any disease, and (2) requiring that they have competent and reliable scientific evidence substantiating any claims they make about a product's health benefits, performance, or efficacy. And insofar as the Defendants claim to have put enhanced compliance procedures in place since the Commission filed this lawsuit, neither of these provisions should pose a problem, since they simply require the Defendants to follow existing law by not making false or unsubstantiated claims.[41]

---

[39] *See also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1971) (inference that past violations will recur is particularly appropriate where defendants did not attempt to cease or undo effects of unlawful activity until the institution of an investigation).

[40] Broad product coverage is needed to ensure that the Defendants cannot evade the order simply by tinkering with a product's formula. *See* Def. Opp. at p. 40 n.24 (ingredients of Flex Protex are being modified to avoid further violations of Preliminary Injunction). *See also Five-Star Auto*, 97 F. Supp. 2d at 536 ("'[b]road injunctive provisions are often necessary to prevent transgressors from violating the law in a new guise.'") (citation omitted).

[41] The Defendants' attempt to controvert the FTC's expert opinions concerning Sea Vegg

24

## VIII.  RELIEF DEFENDANT BP MARKETING HAS NOT OPPOSED THE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

Relief Defendant BP Marketing did not file an opposition to the Commission's motion. Nor did BP's sole executive, Steve Paris, submit an affidavit.  Instead, his cousin Donald Barrett purports to explain BP's role in the marketing of coral calcium and its entitlement to the $574,274 that Barrett directed Stern to wire to BP.[42]  Barrett's hearsay statements cannot shield BP from the entry of summary judgment.

## IX.  CONCLUSION

Defendants DMC, ITV, Barrett and Maihos have not put into dispute any of the material facts established by Commission's prior evidentiary submission.  Summary judgment in favor of the Commission is thus appropriate against these defendants for their violations of Sections 5(a) and 12 of the FTC Act.  Accordingly, the FTC respectfully requests that this Court grant summary judgment against for DMC, ITV, Barrett, Maihos and enter the order previously submitted by the Commission for these four defendants.

---

and Renuva does not prevent the Court from fashioning an appropriate remedy.  If the Defendants have competent and reliable scientific evidence supporting the specific claims they make – and not just supporting general health benefits of ingredients in those products – they will be complying with the law and the Commission's proposed order.

[42]  Barrett does not deny that he is a signatory to BP's account or that he directed Stern to send BP that money.  *See* FTC Reply Brief Att. A at ¶¶ 66, 379.

Similarly, summary judgment against relief defendant BP in the amount of $574,274 is

proper, and the Commission respectfully requests that the Court enter such an order.

Respectfully submitted,

  /s/ Edward Glennon
EDWARD GLENNON
HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
SHIRA D. MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC  20580
(202) 326-3285,  -3126 (voice)
(202) 326-3259 (fax)
hhippsley@ftc.gov, kyoung@ftc.gov, or eglennon@ftc.gov

ATTORNEYS FOR PLAINTIFF

Dated: March 3, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non-registered participants on March 3, 2006.

/s/ Edward Glennon
Edward Glennon