# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

FEDERAL TRADE COMMISSION,                    )
                                             )
    Plaintiff                            )
                              v.             )
                                             )        Civ. No. 04-11136-GAO
DIRECT MARKETING CONCEPTS, INC., et al.      )
                                             )
    Defendants.                          )
_____)

**PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE AFFIDAVITS
SUBMITTED BY DEFENDANTS IN SUPPORT OF THEIR OPPOSITIONS TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S RESPONSES TO DEFENDANTS' EVIDENTIARY OBJECTIONS**

Pursuant to Federal Rule of Civil Procedure 56(e), Plaintiff Federal Trade Commission ("FTC" or "Commission") respectfully objects to and moves to strike from the record the Affidavits of Andrew Aldrich and Jason Bernabei and portions of the Supplemental Affidavit of Donald Barrett and the Affidavits of Wayne Callahan, Simon Mena, and Eileen Barrett Maihos, all of which Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald Barrett, and Robert Maihos (collectively referred to as the "DMC/ITV Defendants") filed on February 10, 2006, and portions of the Affidavit of Allen Stern, which Defendants Triad ML Marketing, Inc., King Media, Inc., and Allen Stern and Relief Defendants Lisa Mount and Steven Ritchey (collectively referred to as the "Stern Defendants") filed on the same date, in support of Defendants' respective oppositions to the FTC's Motion for Summary Judgment. As explained below, the Court should strike Mr. Aldrich's and Mr. Bernabei's affidavits in their entirety and substantial portions of the other affidavits due to their noncompliance with Rule 56(e) and the

Federal Rules of Evidence.[1]

The Commission also submits below its response to the DMC/ITV Defendants' objections to a portion of the Erik Limbaugh's sworn deposition testimony and the affidavit of Commission employee Stefano Sciolli.

## I.    **APPLICABLE LEGAL STANDARDS**

When resolving a motion for summary judgment, a court must consider only those portions of affidavits that would be admissible in evidence. *Casas Office Machs., Inc. v. Myta Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994). Consequently, the Court must not consider statements that are not made on the basis of an affiant's personal knowledge. *Id. See also* Fed. R. Civ. P. 56(e); Fed. R. Evid. 602. An affidavit must provide sufficient details to demonstrate that the affiant possesses the requisite personal knowledge to proffer the testimony. *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315-16 (1st Cir. 2001). "Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant." *Id.* at 316. Similarly, statements made merely upon an affiant's "belief" do not satisfy the personal knowledge requirement. *Cadle Co. v. Hayes*, 116 F.3d 957, 961 (1st Cir. 1997). Similarly, conclusory statements and legal conclusions are patently inadmissible. *Perez*, 247 F.3d at 316 ("Of course, the requisite personal knowledge must contain facts as opposed to

---

[1]    The DMC/ITV and Stern Defendants' affidavits are replete with inadmissible testimony. Given the large volume of affidavit testimony in the record to date and the fact that Defendants have proffered a substantial amount of affidavit testimony that they have not relied upon in their attempt to demonstrate that there are material facts in dispute, the Commission has not endeavored to include in this document a complete list of all valid objections to Defendants' affidavit testimony. The Commission reserves its right to raise additional objections to and move to strike additional portions of Defendants' affidavits in the future.

conclusions, assumptions or surmise."); *Color Leasing 3, L.P. v. F.D.I.C.*, 975 F. Supp. 177, 191 (D.R.I. 1997); *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 225 (D. Mass. 1990).

The Court must not consider an affiant's statements that contradict the affiant's previous deposition testimony or the affiant's answer to the complaint. *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 277 n.5 (1st Cir. 2002) ("A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that clearly contradicts the affiant's previous deposition testimony."); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." (internal quotation marks and citation omitted)).

Finally, the Court must not consider inadmissible hearsay when resolving a motion for summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990); *Campanelli Assocs. Constr. Corp. v. MR&D LLC*, Civ. Act. No. 02-10902-GAO, 2004 U.S. Dist. LEXIS 11701, at *5 (D. Mass. June 25, 2004) (O'Toole, G.).

## II.    PLAINTIFF'S OBJECTIONS TO AFFIDAVITS SUBMITTED BY THE DMC/ITV DEFENDANTS

### 1.    Objections to Affidavit of Andrew Aldrich (Docket No. 145)

The Commission moves to strike the Affidavit of Andrew Aldrich.  As a threshold matter, Mr. Aldrich's affidavit does not state that it is based upon his personal knowledge.  That deficiency alone provides ample basis for the Court to strike the affidavit.  *E.g., Bolduc v. National Semiconductor Corp.*, 35 F. Supp. 2d 106, 111 n.4 (D. Me. 1998); *Velazquez v. Figueroa Gomez*, 783 F. Supp. 31, 34 (D.P.R. 1991); *In re Molten Medal Tech., Inc.*, 244 B.R.

515, 528 (Bankr. D. Mass. 2000).[2]  Alternatively, the Commission requests that the Court strike

paragraphs 5-13 of Mr. Aldrich's affidavit for the reasons explained below.

        A.    **Proffered Testimony:**  Paragraphs 5-8 of Mr. Aldrich's affidavit state that

Mr. Aldrich "utilized standard document retrieval services, such as PubMed and Elsevier" to

compile materials "that would provide substantiation for the claims made in each of the subject

infomercials, and would speak to the general benefits of the products advertised therein,"

including "materials relating to these [coral calcium and Supreme Greens] products that were in

the possession of and reviewed by DMC at the time these shows were aired," and that Mr.

Aldrich attached as Exhibit 1 to his affidavit 30 binders of materials that he "was able to compile

from these efforts."  In addition, paragraphs 9-11 of Mr. Aldrich's affidavit and Appendix A

thereto further describe the contents of the binders attached as Exhibit 1 to his affidavit.

        **Bases for Objection:**  The Commission moves to strike paragraphs 5-11

of and Exhibit 1 and Appendix A to Mr. Aldrich's affidavit on multiple grounds.

        First, the hearsay rule precludes the admission of any of the Exhibit 1 materials to prove

the truth of the statements contained within them.  Fed. R. Evid. 801.  The "learned treatise"

exception to the hearsay rule cannot render the materials admissible because that exception

requires an expert witness to establish the reliability of the materials.  Fed. R. Evid. 803(18).  The

DMC/ITV Defendants have not proffered testimony from any expert witness.  Indeed, in

paragraph 12 of his affidavit, Mr. Aldrich states explicitly that he "do[es] not present [him]self as

---

[2]     As demonstrated below, the only portions of Mr. Aldrich's affidavit that properly are based upon Mr. Aldrich's personal knowledge are paragraphs 1-4.  Those paragraphs provide mere background information about Mr. Aldrich that is wholly irrelevant to this lawsuit.  The fact that Mr. Aldrich's affidavit establishes only that he is competent to provide irrelevant testimony provides another basis for the Court to strike his affidavit from the record.

a qualified expert in connection with these materials."

Second, the DMC/ITV Defendants have failed to establish that any of the materials are admissible for some purpose other than proving their truth. The materials are not admissible to demonstrate the DMC/ITV Defendants' state of mind regarding the level of substantiation that supported the infomercials' claims when the DMC/ITV Defendants participated in the dissemination and airing of the infomercials because Mr. Aldrich does not state in his affidavit, or in Exhibit 1 or Appendix A thereto, that DMC reviewed or possessed *any* of the Exhibit 1 materials before the infomercials aired. Even if Mr. Aldrich had testified that DMC possessed and reviewed certain of the Exhibit 1 materials when the infomercials were aired, his testimony regarding that issue would be wholly inadmissible because Mr. Aldrich lacks the personal knowledge necessary to provide such testimony. Mr. Aldrich testified that he "was not employed by DMC at the time of the airing" of the infomercials. Consequently, Mr. Aldrich lacks the personal knowledge necessary to testify as to the contents of DMC's files at that time. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316. Donald Barrett and Eileen Barrett Maihos, the witnesses who do have personal knowledge regarding whether DMC possessed and reviewed substantiation materials before the infomercials were aired, testified to that issue in their affidavits and did not identify the materials that Mr. Aldrich attached to his affidavit.

Finally, Exhibit 1 appears to be replete with materials that the DMC/ITV Defendants did not identify for or produce to the Commission when they responded to the Commission's interrogatories and document requests that asked the DMC/ITV Defendants the steps they took to evaluate the accuracy of the claims made in the infomercials before the infomercials were disseminated. *See, e.g.*, Pl. Interrogatory Nos. 8-9 to Defs. DMC and ITV (Attached hereto as

5

Ex. A); Pl. Req. to Defs. DMC, ITV, and Donald W. Barrett for Production of Docs. and Things

Nos. 16-18. (Attached hereto as Ex. B). The DMC/ITV Defendants cannot avoid summary

judgment by relying upon materials that they failed to identify or produce during discovery even

though the Commission requested the materials. *See* Fed. R. Civ. P. 37(c)(1) ("A party that

without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1),

or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure

is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or

information not so disclosed.").

      **B.**    **Proffered Testimony:** In paragraph 12, Mr. Aldrich states: "Though I do

not present myself as a qualified expert in connection with these materials, the volume of

materials that appear to substantiate the claims relating to coral calcium and the ingredients in

Supreme Greens are substantial. These materials also appear to undermine the FTC's experts

when they repeatedly state that 'no' substantiation exists."

      **Bases for Objection:** The Commission moves to strike paragraph 12 on

multiple grounds. As explained above, the materials to which Mr. Aldrich refers in paragraph 12

are inadmissible for multiple reasons. Even if the materials were admissible, Mr. Aldrich's

statements about the materials in paragraph 12 would still be inadmissible opinions by a lay

witness. Fed. R. Evid. 701.

      **C.**    **Proffered Testimony:** In paragraph 13, Mr. Aldrich states: "I also note

that at least one of the FTC's experts, Dr. Cassileth, appears to have ignored easily accessible

databases in conducting his search, failing to uncover certain articles and studies on PubMed.

Based on the materials cited, it appears that Dr. Cassileth searched a different, and less

comprehensive database."

        **Bases for Objection:**  The Commission moves to strike the proffered

testimony on the grounds that Mr. Aldrich does not possess the personal knowledge necessary to

proffer it and on the alternative grounds that it includes improper opinions by a lay witness.  Fed.

R. Evid. 602, 701.

       2.      **Objections to Supplemental Affidavit of Donald Barrett (Docket No. 142)**

       A.     **Proffered Testimony:**  In paragraph 3, Mr. Barrett states:  "BP Marketing

was established to coordinate relationships with independent distributors, who would buy

product and media from Triad and King Media.  I believe that all payments made to BP

Marketing by Triad were made in connection with these distributor relationships."

        **Basis for Objection:**  The Commission moves to strike the proffered

testimony on the grounds that Mr. Barrett has not established that he possesses the personal

knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Cadle*, 116 F.3d at

961 ("Statements made upon information and belief, as opposed to personal knowledge are not

entitled to weight in the summary judgment balance.").  Mr. Barrett has testified that he was not

an officer of BP Marketing.  He has not testified as to any involvement with BP Marketing that

would have provided him with personal knowledge regarding its functions or the basis for its

receipt of payments from Triad.

       B.     **Proffered Testimony:**  In paragraph 5, Mr. Barrett states:  (1) "I was told

by Stern that his employees had prepared [scripts and power sheets for Coral Calcium Daily]

based upon consultation with materials provided by Robert Barefoot"; and (2) "Allen told me

that the scripts conformed to Barefoot's books and the infomercial."

**Bases for Objection:**  To the extent that the DMC/ITV Defendants are offering it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  Although the DMC/ITV Defendants had an opportunity to examine Mr. Stern regarding the preparation of the Coral Calcium Daily scripts and power sheets during his July 15, 2005 deposition, they failed to do so.

C.    **Proffered Testimony:**  In paragraph 6, Mr. Barrett states:  "Stern also advised me concerning the data that he believed we should collect from consumers for informational purposes" and Stern "advised that customers would often disclose information that would be useful to know if they called customer service or made repeat sales calls."

**Basis for Objection:**  To the extent that the DMC/ITV Defendants are offering it for its truth, the Commission moves to strike the proffered testimony on the grounds it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  Although the DMC/ITV Defendants had an opportunity to examine Mr. Stern regarding the collection of data from consumers during his July 15, 2005 deposition, they failed to do so.

D.    **Proffered Testimony:**  In paragraph 7, Mr. Barrett makes statements regarding the manufacturing of the coral calcium sold by Triad and general statements regarding the sales of coral calcium as a dietary supplement in the United States.

**Basis for Objection:**  The Commission moves to strike all of paragraph 7 on the grounds that Mr. Barrett has not established that he possesses the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Barrett states in

paragraph 4 of his affidavit that he and DMC had no role in Triad's purchase of products.

        E.    **Proffered Testimony:**  In paragraph 9, Mr. Barrett states:  (1) "Both Kevin Trudeau and Allen Stern told me on several occasions that they had provided the A Closer Look show to counsel for review, and had also worked with Robert Barefoot to obtain and review his substantiation for the show;" (2) "They confirmed to me that the show was compliant"; (3) "I was also told that the FTC had been provided a copy of the tape in April 2002 by Trudeau's attorneys, and that the FTC had not raised any concerns or requested that the show be removed from the air"; and (4) "I was also told that the stations would review the show and would not air it if they believed there were any issues."

        **Bases for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801- 02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  Although the DMC/ITV Defendants had an opportunity to examine Mr. Stern regarding actions he might have taken to ensure that the coral calcium infomercial was lawful during his July 15, 2005 deposition, they failed to do so.

        F.    **Proffered Testimony:**  In paragraph 12, Mr. Barrett states:  "The FTC has spent years keeping beneficial studies and health information from consumers, based upon the misguided belief that consumers cannot think for themselves."

        **Bases for Objection:** The Commission moves to strike the proffered testimony on the grounds that it is conclusory rather than factual and that Mr. Barrett lacks the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Bolen*, 754 F. Supp. at 225.

     **G.**   **Proffered Testimony:**  In paragraph 13, Mr. Barrett states:  (1) "In connection with the Supreme Green infomercial, I was told repeatedly by Alejandro Guerrero that he possessed significant scientific support and studies concerning his Supreme Greens product"; and (2) "Guerrero also reviewed the tape and stated that he had no concerns or edits, commenting that he though it was 'fantastic' and he thought it presented well."  Mr. Barrett also states:  (3) "Although I personally did not review each and every page of the materials he provided, I was aware that materials had been provided to my employees and they had been reviewed by them prior to filming."

     **Bases for Objection:**  To the extent that Defendant offer them for their truth, the Commission moves to strike statements (1) and (2) on the grounds that they are inadmissible hearsay.  Fed. R. Evid. 801- 02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  The Commission moves to strike statement (3) on the grounds that Mr. Barrett has not established that he has the personal knowledge necessary to make the statement.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Barrett has not stated how he knows that employees received and reviewed materials and has not identified the employees or the materials they reviewed.

     **H.**   **Proffered Testimony:**  In paragraph 14, Mr. Barrett states:  (1) "Barefoot's books contained dozens of citations to scientific literature and I was told that he had provided additional materials to Trudeau and his advisers"; and (2) "The FTC was also provided an edited copy of the Supreme Greens show in October 2003, and appeared to bless that show by stating it was a 'substantial improvement.'"  Mr. Barrett also states:  (3) "I was also comforted in both cases by the fact that the FTC was provided a copy of the coral calcium show in April 2002

and did not raise concerns for over a year"; and (4) "Because of these communications with

Trudeau's lawyers in 2002, and our lawyers in 2003, we felt that both shows were compliant."

> **Bases for Objection:**  To the extent that the DMC/ITV Defendants offer

them for their truth, the Commission moves to strike statements (1), (2), and (4) on the grounds

that they are inadmissible hearsay.  Fed. R. Evid. 801- 02; *Garside*, 895 F.2d at 50; *Campanelli*

*Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  The Commission moves to strike statements (1)-

(4) on the grounds that Mr. Barrett has not provided sufficient details to establish that he has the

personal knowledge necessary to proffer them.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  For

example, Mr. Barrett has not stated who provided the FTC with copies of the infomercials, when

he learned the FTC had received a copy, or how he knows whether the FTC raised concerns

about them.

> **I.**    **Proffered Testimony:**  In paragraph 15, Mr. Barrett states: (1) "Similar to

the coral calcium product, the quality and safety of the Supreme Greens product has never been

questioned by the FTC or the FDA"; (2) "The FDA conducted a comprehensive review of the

product, concluding only that certain literature sent with the product should be modified.  *See*

Exhibit 4"; and (3) "Like coral calcium, greens products are very popular and may be found at a

variety of health and convenience stores, as well as on the Internet."

> **Basis for Objection:**  The Commission moves to strike the proffered

testimony on the grounds that it is conclusory rather than factual and that Mr. Barrett has not

established that he has the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*,

247 F.3d at 316; *Bolen*, 754 F. Supp. at 225.

> **J.**    **Proffered Testimony:**  In paragraph 20, Mr. Barrett states:  "I later

learned that the sales staff were manipulating the [E8] program."

      **Basis for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  In addition, the Commission moves to strike the proffered testimony on the grounds that, by failing to state how he learned what the sales staff were doing, Mr. Barrett has provided insufficient details to establish personal knowledge.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.

      **K.**    **Proffered Testimony:**  In paragraph 23, Mr. Barrett states:  "We have asked the FTC to provide a proposal, but the FTC has repeatedly refused."

      **Basis for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

      **3.**    **Objections to Affidavit of Jason Bernabei (Docket No. 146)**

      The Commission moves to strike the Affidavit of Jason Bernabei because the affidavit does not state that it is based upon Mr. Bernabei's personal knowledge.  That deficiency alone provides ample basis for the Court to strike the affidavit.  *E.g.*, *Bolduc*, 35 F. Supp. 2d at 111 n.4; *Velazquez*, 783 F. Supp. at 34; *In re Molten Medal*, 244 B.R. at 528.  Alternatively, the Commission raises below objections to specific portions of Mr. Bernabei's affidavit.

      **A.**    **Proffered Testimony:**  In paragraph 4, Mr. Bernabei states:  "It has always been DMC's policy to never make any claim to a customer that any dietary supplement

12

product will treat, prevent or cure any disease."

**Basis for Objection:** The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316. The DMC/ITV Defendants do not dispute that DMC began its operations in June 2001, but Mr. Bernabei testified in paragraph 1 that he did not commence his employment with DMC until July 2002. Because Mr. Bernabei has not been affiliated with DMC throughout its existence, Mr. Bernabei is not competent to testify to the policies that DMC has "always" maintained. *Perez*, 247 F.3d at 316 (refusing to consider on summary judgment an affiant's statements regarding conduct that his employer engaged in before the affiant commenced his job). Moreover, Mr. Bernabei testified in paragraphs 3 and 8 of his affidavit that his only positions at DMC have been sales representative from July 2002 to late 2002 and marketing/business development employee since late 2002. Mr. Bernabei testified in paragraph 8 that his responsibility as a marketing/business development employee has been to assist Donald Barrett in identifying business opportunities for DMC. Setting aside the fact that Mr. Bernabei did not commence his DMC employment until July 2002, Mr. Bernabei's description of his job responsibilities provides no basis for the Court to conclude that he possesses personal knowledge regarding whether DMC had a policy never to claim that any dietary supplement product will treat, prevent or cure any disease.

**B.    Proffered Testimony:** In paragraph 5, Mr. Bernabei states: (1) "With regard to purchase continuity programs, it has always been DMC's policy to fully inform the customer regarding the terms of any such program and to obtain their express consent to the program before assessing any charges"; and (2) "It has never been the policy of DMC to charge a

customer without their consent."

> **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  As explained above, Mr. Bernabei is not competent to testify to the policies that DMC has "always" or "never" maintained because he did not join DMC until it had operated for more than a year.  *Perez*, 247 F.3d at 316.  In addition, Mr. Bernabei's testimony regarding his DMC job responsibilities as a sales representative and marketing/business development employee provides no basis for the Court to conclude that he possesses personal knowledge regarding DMC's purchase continuity program policies.

> C.    **Proffered Testimony:**  In paragraph 6, Mr. Bernabei states:  (1) "DMC's policy has always been to offer customers money-back guarantees, and the opportunity to cancel any long-term purchase plan at any time"; and (2) "During my employment at DMC, I am not aware of any time where this guarantee has not been honored."

> **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  With respect to statement (1), Mr. Bernabei is not competent to testify to the policies that DMC has "always" maintained because Mr. Bernabei did not join DMC until it had operated for more than a year.  With respect to statements (1) and (2), there is no reason that Mr. Bernabei, who testified that he has worked at DMC only as a sales representative or as a marketing/business development employee, would know whether DMC offered and honored a guarantee that customers could cancel long-term purchase plans at any time.

    **D.**   **Proffered Testimony:**  In paragraph 7, Mr. Bernabei states:  (1) "I am not aware of any widespread complaints by customers claiming that they were placed on autoship without their consent."

    **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  There is no reason that Mr. Bernabei, who has worked at DMC only as a sales representative or as a marketing/business development employee, would know whether customers have claimed that DMC placed them on autoship without their consent.

    **E.**   **Proffered Testimony:**  In paragraph 11, Mr. Bernabei states:  Guerrero "claimed that he needed to check with his counsel regarding whether he could provide the clinical data from his patient study, which he repeatedly explained involved 200 terminally ill patients in California."

    **Basis for Objection:**  To the extent the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

    **F.**   **Proffered Testimony:**  In paragraph 14, Mr. Bernabei states:  (1) "It is my understanding that Guerrero made himself available to the sales managers to review and edit the sales scripts"; (2) "I believe that all of the sales scripts were provided to Guerrero for his review and he often suggested changes to the scripts"; and (3) "Sales staff were regularly told that they must not deviate from the scripts, because the scripts had been reviewed and approved by

Guerrero and conformed to his statements on the infomercial, his clinical studies and his scientific research."

**Bases for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei has not established that he possesses the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Cadle*, 116 F.3d at 961 ("Statements made upon information and belief, as opposed to personal knowledge are not entitled to weight in the summary judgment balance.").  Mr. Bernabei testified that he ceased working in DMC's sales department in late 2002, which is eight months before the airing of the Supreme Greens infomercials that involved Mr. Guerrero.  Consequently, Mr. Bernabei has not provided a basis for the Court to conclude that he possesses personal knowledge regarding Mr. Guerrero's interactions with sales managers or instructions that sales staff received regarding the Green Supreme sales scripts.  Moreover, to the extent that it is offered for its truth, the Commission moves to strike statement (3) on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

**G.**    **Proffered Testimony:**  In paragraph 16, Mr. Bernabei states:  (1) "In addition to seeking additional materials from Guerrero, the Supreme Greens infomercial was edited for content in conjunction with our outside counsel and modified to address the FTC's concerns"; (2) "This edited version of the show was then sent to media outlets, which were directed to replace the old show with the edited show"; (3) "I have no knowledge of any effort by DMC to subsequently go back to the old show from the edited version"; and (4) "My understanding was that multiple versions of the edited show ran, but the original unedited show was permanently removed from circulation."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei has not provided sufficient detail to establish that he has the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 315-16. According to Mr. Bernabei's affidavit, the events described in paragraph 16 occurred in late 2003.  By that time, Mr. Bernabei had been working as a marketing/business development employee for a year.  *See* Bernabei Aff. dated Jan. 25, 2006, at ¶ 8 (Docket No. 146).  Mr. Bernabei's affidavit provides no basis for the Court to conclude that his work as a marketing/business development employee would have provided him with personal knowledge regarding the editing of the Supreme Greens infomercial, circulation of an edited version of the infomercial, or communications to media outlets regarding an edited version of the infomercial.

> **H.** **Proffered Testimony:**  In paragraph 17, Mr. Bernabei states:  (1) "I often heard Donald Barrett refer to the daytime backdrop as the 'new' or 'second' show, and all of the various versions of the nighttime backdrop as the 'original' show or 'old' version"; and (2) "I know he also referred to this show, and all versions of the nighttime backdrop as the 'SGRN' show."

**Bases for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  In addition, the Commission moves to strike the proffered testimony on the grounds that Mr. Bernabei has not established that his service as a marketing/business development employee during the airing of the Supreme Greens infomercial would have provided him with the personal knowledge necessary to testify regarding the ways in

which Donald Barrett referred to versions of the Supreme Greens infomercial.  Fed. R. Evid. 602;

*Perez*, 247 F.3d at 315-16.

   **I.**  <u>**Proffered Testimony**</u>:  In paragraph 18, Mr. Bernabei testifies regarding

(1) DMC's purported belief in late 2003 and early 2004 that the FTC was satisfied with the

Supreme Greens infomercial; (2) the FTC's communications with DMC's counsel in the Spring

of 2004 regarding the infomercial; (3) DMC's purported response to those communications; (4)

DMC's "suspicions" about Alejandro Guerrero; and (5) DMC's purported decision not to run the

Supreme Greens infomercial after May 2004.

   <u>**Basis for Objection**</u>:  The Commission moves to strike paragraph 18 in

its entirety on the grounds that Mr. Bernabei has not established that his service as a

marketing/business development employee in 2003 and 2004 would have provided him with the

personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 315-16.

   **J.**  <u>**Proffered Testimony**</u>:  In paragraph 19, Mr. Bernabei states:  (1) "In May

and June 2004, I had several discussions with Donald Barrett about the direction that he wished

to take the company in light of continuing FTC concerns"; (2) "He told me during this period that

he believed the company should no longer advertise or market ingestible products, but should

focus on books and other consumer products, such as electronics, self-help programs, and finance

products, among others"; (3) "I also heard from several distributors that our merchant accounts

had been contacted by the FTC"; and (4) "However, I was also frustrated, because many of these

opportunities, such as the one with a very large electronics manufacturer, fell through because of

the FTC action and contacts by the FTC with certain of our vendors, distributors and others."

**Bases for Objection:**  The FTC moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  In addition, the Commission moves to strike statements (3) and (4) on the grounds that Mr. Bernabei has not provided sufficient details to establish that he possesses the personal knowledge necessary to proffer them.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Bernabei has not identified any distributors that he talked to or any business opportunities that fell through due to the FTC's alleged contacts with vendors, distributors or others.

K.    **Proffered Testimony:**  In paragraph 20, Mr. Bernabei states:  (1) "At many of these events [trade shows and similar events], prospects would inquire whether we were ready to discuss a new dietary supplement show"; (2) "In response, I would explain that I would not bring any proposal to Mr. Barrett unless I had assurances that there was valid and significant substantiation for the product and any claims made about the product"; (3) "With each of these, however, I also conferred with our counsel and assured [sic] that there was significant substantiation for the show."

**Bases for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

L.    **Proffered Testimony:**  In paragraph 21, Mr. Bernabei states:  (1) "Every prospect with whom we meet is advised up front that they must provide substantiation for their product before we will move forward"; and (2) "They are also advised that the materials must be

reviewed by counsel and verified before discussions will commence."

   **Basis for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

   **M.** **Proffered Testimony:**  In paragraph 24, Mr. Bernabei states that he has heard Donald Barrett say that DMC has always sought to comply with the law.

   **Basis for Objection:**  To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

   **4.** **Objections to Affidavit of Wayne Callahan (Docket No. 143)**

   **A.** **Proffered Testimony:**  In paragraph 2, Mr. Callahan states:  "Direct Fulfillment, LLC is a separate corporation that is not owned by either Donald Barrett or Robert Maihos, but by a third party unrelated to either Barrett or Maihos."

   **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Callahan has not established that he possesses the personal knowledge necessary to proffer it.  Fed. R. Evid. 602.  Mr. Callahan states in paragraph 1 of his current affidavit and in his previous affidavits that his basis for knowing facts that are relevant to this lawsuit is his service as DMC's outside accountant.  *See* Callahan Aff. dated 6/5/2004, at ¶¶ 1-2 (Docket No. 17); Callahan Aff. dated 6/9/2005, at ¶¶ 1-2 (Docket No. 81); Callahan Aff. dated Jan. 26, 2006, at ¶ 1 (Docket No. 143).  He has not established that he is Direct Fulfillment,

LLC's accountant or Donald Barrett's or Robert Maihos's personal accountant or that he has any other basis for knowing who owns Direct Fulfillment, LLC.

        **B.**    <u>**Proffered Testimony**</u>:  In paragraph 3, Mr. Callahan states:  "Both ITV and DMC have complied in all respects with this Court's prior orders, maintaining accurate books and records and financial controls."

        <u>**Basis for Objection**</u>:  The Commission moves to strike the proffered testimony on the grounds that it is an inadmissible legal conclusion.  *Perez*, 247 F.3d at 316; *Color Leasing*, 975 F. Supp. at 191.

        **C.**    <u>**Proffered Testimony**</u>:  In paragraph 5, Mr. Callahan states:  (1) "DMC did not have an excessive number of customer complaints related to unauthorized orders"; and (2) "We have had an excellent chargeback record with our merchant accounts and customer disputes have been infrequent."  Mr. Callahan also states:  (3) "Donald Barrett stressed that the relationships with our merchant accounts were critical and we should do whatever necessary to assure that these relationships were maintained on good terms, which meant making sure our customers were satisfied"; (4) "For that reason, we constantly monitor customer complaints and seek to keep them as low as possible"; (5) "We also resolve customer issues at the company level quickly and efficiently, almost always in the customer's favor, resulting in an extremely low chargeback rate"; and (6) "That has been the case throughout the time I have been associated with the company."

        <u>**Bases for Objection**</u>:  The Commission moves to strike statements (1), (2), and (5) on the grounds that they contain inadmissible opinions by a lay witness and are conclusory rather than factual.  Fed. R. Evid. 602, 701; *Bolen*, 754 F. Supp. at 225.  As an

"outside accountant" whose duties include reviewing DMC's financial books, documents, and records and preparing financial statements, *see* Callahan Aff. dated 6/5/2004, at ¶ 2 (Docket No. 17); Callahan Aff. dated 6/9/2005, at ¶ 2 (Docket No. 81); Callahan Aff. dated Jan. 26, 2006, at ¶ 1 (Docket No. 143), Mr. Callahan has not provided any explanation of his competence to characterize DMC's chargeback record as "excellent" or "extremely low" or to characterize DMC's customer disputes as "infrequent."

The Commission also moves to strike statements (1), (2), and (4)-(6) on the additional grounds that Mr. Callahan has provided no basis for the Court to conclude that his service as an outside accountant provided him with personal knowledge regarding DMC's customer complaints or customer service practices and policies.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 315-16.

To the extent that the DMC/ITV Defendants offer it for its truth, the Commission moves to strike statement (3) on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

D.    **Proffered Testimony:**  Paragraph 6 states that (1) customers commonly claim that their autoship order was not authorized when the customers did actually place and confirm an order; (2) customers believe that they must claim that their autoship order was not authorized to receive refunds for their orders; and (3) "DMC customer service is directed to reflect the content of the customer complaint, regardless of whether it is ultimately proven to be true or untrue."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Callahan has not established that his service as DMC's outside

22

accountant (*see* Callahan Aff. dated Jan. 26, 2006, at ¶ 1 (Docket No. 143)) provided him with the personal knowledge necessary to testify regarding customers' actions or beliefs or regarding directions that customer service employees might have received from unnamed persons. Fed. R. Evid. 602; *Perez*, 247 F.3d at 315-16.

       **E.**    **Proffered Testimony**: In paragraph 8, Mr. Callahan testifies regarding the practices of DMC sales representatives, including the practice of recording customer telephone calls.

       **Basis for Objection**: The Commission moves to strike the proffered testimony on the grounds that Mr. Callahan has not established that his service as DMC's outside accountant (*see* Callahan Aff. dated Jan. 26, 2006, at ¶ 1 (Docket No. 143)) has provided him with the personal knowledge necessary regarding the practices of DMC sales representatives. Fed. R. Evid. 602; *Perez*, 247 F.3d at 315-16. In addition, to the extent that the DMC/ITV Defendants offer Mr. Callahan's summary of the contents of the recorded calls for its truth, the Commission moves to strike the summary on the grounds that it is inadmissible hearsay. Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

       **F.**    **Proffered Testimony**: In paragraph 9, Mr. Callahan states: "I was told that the FTC contacted the merchant accounts directly and informed them of the present lawsuit, and that this may have negatively impacted our relationship with these accounts."

       **Bases for Objection**: To the extent that the DMC/ITV Defendants are offering it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay. Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5. In addition, the Commission moves to strike the

proffered testimony on the ground that Mr. Callahan has not provided sufficient details to demonstrate that he has the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  For example, he has not identified who provided him the information or any of the merchant accounts.

     **5.**     **Objections to Affidavit of Eileen Barrett Maihos (Docket No. 149)**

     **A.**     **Proffered Testimony:**  In paragraph 3, Ms. Maihos states:  (1) "Donald Barrett, [her] brother, told [her] several times that [the coral calcium infomercial] had been reviewed by [Kevin] Trudeau's experts and lawyers and had been approved for distribution"; and (2) she "also heard that Allen Stern had given a copy of the [infomercial] to his lawyer for review."

     **Bases for Objection:**  To the extent that the DMC/ITV Defendants are offering any of it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  In addition, the Commission moves to strike statement (2) on the grounds that Ms. Maihos has not provided sufficient details to demonstrate that she possesses the personal knowledge necessary to proffer it.  *Perez*, 247 F.3d at 316.  For example, she does not identify how, when, or from whom she heard that Allen Stern had given the infomercial to his lawyer.

     **B.**     **Proffered Testimony:**  In paragraph 4, Ms. Maihos states:  "In connection with the coral calcium infomercial, we had read Robert Barefoot's books and additional materials he had provided regarding coral calcium."

     **Basis for Objection:**  The Commission moves to strike the proffered

testimony on the grounds that it is not sufficiently specific to demonstrate that Ms. Maihos has

the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Ms.

Maihos has not identified the materials, who read them, or how she knows that someone read the

materials.  Moreover, Ms. Maihos's use of the term "we" is too vague to be admissible.  The

testimony goes to the DMC/ITV Defendants' state of mind.  Ms. Maihos is only competent to

testify regarding her own state of mind.  *See generally Bolen*, 754 F. Supp. at 225.

        C.     **Proffered Testimony:**  In paragraph 6, Ms. Maihos states:  "(1) In

addition to obtaining substantiation from Guerrero, we consulted with our counsel during 2003

concerning disclaimers in the shows, in any print advertisements, on the Internet and on the

labeling for the product"; (2) Over the course of several months in 2003, we added this

disclaimer and others to versions of the show, on the Internet and in print advertising"; and (3)

"We also added additional disclaimers to the shows stating that they were paid advertisements,

that they expressed only the opinions of the guest, and that some of the opinions might not have

had scientific support."

        **Basis for Objection:**  The Commission moves to strike the proffered

testimony on the grounds that it is not sufficiently specific to demonstrate that Ms. Maihos has

the personal knowledge necessary to proffer it.  Fed. R. Evid. 602, *Perez*, 247 F.3d at 316.  Ms.

Maihos's use of the term "we" is too vague to be admissible.  Ms. Maihos has not identified who

took the actions or how she knows that someone took the actions.

        D.     **Proffered Testimony:**  In paragraph 7, Ms. Maihos states: (1) "We

believed that these disclaimers, combined with the content of the show and the materials we had

received were sufficient"; (2) "We understood that the show had been reviewed by the FTC, and

the FTC was not requiring us to stop airing the show, but we should request that Guerrero provide copies of all of his substantiation materials"; and (3) "He [Mr. Guerrero] still delayed providing the patient studies, however, citing confidentiality concerns."

**Basis for Objection:**  The Commission moves to strike statements (1) and (2) on the grounds that Ms. Maihos has not demonstrated the personal knowledge necessary to proffer them.  Fed. R. Evid. 602, *Perez*, 247 F.3d at 316.  Ms. Maihos's use of the term "we" is too vague to be admissible.  In addition, Ms. Maihos's statements go to the DMC/ITV Defendants' state of mind.  Ms. Maihos is only competent to testify regarding her own state of mind.  *See generally Bolen*, 754 F. Supp. at 225.

In addition, to the extent that the DMC/ITV Defendants are offering statement (3) for its truth, the Commission moves to strike it on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

6.    **Objections to Affidavit of Simon Mena (Docket No. 144)**

A.    **Proffered Testimony:**  In paragraph 4, Mr. Mena states:  "DMC's only function during this period [while DMC was acting as a call center for the coral calcium infomercial] in connection with the [coral calcium] infomercial was to answer the telephones."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena has not established that he has the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena testified in paragraphs 1 and 2 of his affidavit that he commenced his employment with DMC in September 2002 as a sale person and that he subsequently became a sales manager with responsibility for supervising, coaching, training, and disciplining sales employees, monitoring sales calls, and

developing and writing scripts for infomercials.  Mr. Mena has not established that his service as a sales person or sales manager provided him with personal knowledge regarding the scope of DMC's work in connection with the coral calcium infomercial.

**B.    Proffered Testimony:**  In paragraph 5, Mr. Mena states:  "During this period [while DMC was acting as a call center for the coral calcium infomercial], I do not believe that DMC purchased any media time for the coral calcium show, nor did DMC purchase product, fill customer orders, accept customer funds or ship product."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena has not established that he has the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Cadle*, 116 F.3d at 961 ("Statements made upon information and belief, as opposed to personal knowledge are not entitled to weight in the summary judgment balance.").  Mr. Mena has not established that his service as a sales person or sales manager (*see* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1-2 (Docket No. 144)) provided him with personal knowledge regarding whether DMC purchased product or media time for the coral calcium infomercial.

**C.    Proffered Testimony:**  In paragraph 6, Mr. Mena states:  (1) "I believe that all of the coral calcium scripts provided to the DMC salespeople were originally prepared by the third party distribution and media purchasing company"; (2) "I do not believe that Donald Barrett wrote, reviewed, and approved the scripts for the coral calcium infomercial"; (3) "My understanding was that the scripts were prepared by the media buyer and fulfillment house in consultation with Robert Barefoot and were derived from the information in his books"; and (4) "All salespeople were required to read [Robert Barefoot's] books as part of their training."  Mr.

Mena also states: (5) "We were always told that the first product that we were selling and discussing with customers were the books"; and (6) "We were also explicitly told and trained that we were to adhere to the content of the books and the infomercial, and were not to make any statements to customers that deviated from the content of the books."

**Bases for Objection:** The Commission moves to strike statements (1)-(4) on the grounds that Mr. Mena has not provided sufficient details to demonstrate that he has the personal knowledge necessary to proffer them. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Cadle*, 116 F.3d at 961 (holding that an affiant's statements based upon information and belief are not admissible). Mr. Mena has not established that his service as a sales person or sales manager (*see* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1-2 (Docket No. 144)) provided him with personal knowledge regarding the preparation of the coral calcium scripts or whether Donald Barrett wrote, reviewed, or approved them. In addition, Mr. Mena lacks the personal knowledge to testify regarding "all" coral calcium scripts or the training that "all" sales employees received because Mr. Mena did not commence his employment with DMC until September 2002. *See* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1 (Docket No. 144); *Perez*, 247 F.3d at 316.

To the extent that the DMC/ITV Defendants are offering them for their truth, the Commission moves to strike statements (5)-(6) on the grounds that they are inadmissible hearsay. Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.

      **D.**   **Proffered Testimony:** In paragraph 7, Mr. Mena states: "It has always been DMC's policy to never make any claim to a customer that any dietary supplement product will treat, prevent or cure any disease."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify to the policies that DMC has "always" maintained because Mr. Mena did not commence his employment with DMC until September 2002.  *See* Mena Aff. dated Jan. 25, 2006, at ¶ 1 (Docket No. 144); *Perez*, 247 F.3d at 316.

E.    **Proffered Testimony:**  In paragraph 8, Mr. Mena states:  (1) "With regard to programs such as continuity programs, it has always been DMC's policy to fully inform the customer regarding the terms of any such [continuity] program and to obtain their express consent to the program before assessing any charges"; (2) "It has never been the policy of DMC to charge a customer without their consent"; and (3) "Donald Barrett and the sales managers have always communicated to the sales floor that the only means of survival in a customer driven business is to keep the customer happy."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify to the policies that DMC has "always" or "never" maintained because Mr. Mena did not commence his employment with DMC until September 2002.  *See* Mena Aff. dated Jan. 25, 2006, at ¶ 1 (Docket No. 144); *Perez*, 247 F.3d at 316.

F.    **Proffered Testimony:**  In paragraph 9, Mr. Mena states:  "(1) DMC's continuity sales program "has never translated into overly aggressive or unlawful sales practices or placing customers on any purchase plan without their consent"; and (2) "I understand that

29

DMC's return rates are actually below industry averages."

**Bases for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify that DMC has "never" engaged in certain conduct because he did not commence his employment with DMC until September 2002.  *See* Mena Aff. dated Jan. 25, 2006, at ¶ 1 (Docket No. 144); *Perez*, 247 F.3d at 316.  In addition, the Commission moves to strike statement (2) on the grounds that Mr. Mena's employment as a sales representative and sales manager did not provide him with personal knowledge regarding DMC's or other companies' return rates.

Finally, the FTC also moves to strike statement (1) on the grounds that it is a conclusory legal opinion rather than a fact.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Color Leasing*, 975 F. Supp. at 191; *Bolen*, 754 F. Supp. at 225.

G.    **Proffered Testimony:**  In paragraph 10, Mr. Mena states:  "DMC's policy has always been to offer customers money-back guarantees, and the opportunity to cancel any long-term purchase plan at any time."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify to policies that DMC maintained before he commenced his employment at DMC in September 2002.  *Perez*, 247 F.3d at 316.  In addition, there is no basis for the Court to conclude that Mr. Mena's employment as a sales representative and sales manager provided him with personal knowledge regarding DMC's cancellation practices.

      **H.**   **Proffered Testimony:**  In paragraph 11, Mr. Mena states: (1) "We came to learn that many salespeople were offering the free bottle of E-8 to customers and telling them that they could get the free bottle and then cancel their continuity program order with no requirement to return the product and no penalty." In addition, he states: (2) "As a result, DMC lost a significant amount of money on the promotion and it was quickly ended"; (3) "In addition, customer service noticed a spike in cancellations by customers, who were calling at the direction of the salespeople to cancel and claiming that they were improperly placed on autoship"; and (4) "These calls were often reflected as unauthorized autoships in the customer files."

      **Bases for Objection:**  To the extent that it is offered for its truth, the Commission moves to strike statement (1) on the grounds that it is inadmissible hearsay. Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5. In addition, the Commission moves to strike statements (1)-(4) on the grounds that Mr. Mena has not established that he possesses the personal knowledge necessary to proffer them. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316. For example, Mr. Mena has not stated who learned what sales people were telling customers or how they learned it. Moreover, there is no basis for the Court to conclude that Mr. Mena's employment as a sales representative and sales manager, *see* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1-2 (Docket No. 144), provided him with personal knowledge regarding DMC's profits and losses from promotions or trends noticed by or records kept by DMC customer service employees.

      **I.**   **Proffered Testimony:**  In paragraph 12, Mr. Mena states: (1) "Individual complaints have occurred from time to time, but they are handled by customer service and resolved"; and (2) "In many cases, the customer remains on the plan."

**Bases for Objection:**  The Commission moves to strike the proffered testimony on the grounds there is no basis for the Court to conclude that Mr. Mena's employment as a sales representative and sales manager, *see* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1-2 (Docket No. 144), provided him with personal knowledge regarding customer complaints or customer service employees' resolutions of such complaints.

J.     **Proffered Testimony:**  In paragraph 16, Mr. Mena states:  "It has always been and remains the policy at DMC to require sales representatives to explain, confirm, and record any transaction in which a customer is sold an auto-ship/continuity package."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify to policies that DMC maintained before Mr. Mena commenced his employment at DMC in September 2002. *Perez*, 247 F.3d at 316.

K.     **Proffered Testimony:**  In paragraph 21, Mr. Mena states:  "Furthermore, through our customer service department, we have issued refunds to customers who may have been unclear about the terms of their continuity packages."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Mena lacks the personal knowledge necessary to proffer it. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  There is no basis for the Court to conclude that Mr. Mena's employment as a sales representative and sales manager, *see* Mena Aff. dated Jan. 25, 2006, at ¶¶ 1-2 (Docket No. 144), provided him with personal knowledge regarding the circumstances under which DMC's customer service employees have issued refunds.

      **L.**    **Proffered Testimony:**  In paragraph 31, Mr. Mena states:  "DMC's management, including Donald Barrett, has always been clear in discussions with sales staff that DMC does not want people who push products on customers, sell something to a person that they don't want, misrepresent our products, treat people with disrespect, or rush a caller off the phone when no order is imminent."

      **Basis for Objection:**  To the extent Defendants offer it for its truth, the Commission moves to strike the proffered testimony on the grounds that it is inadmissible hearsay.  Fed. R. Evid. 801-02; *Garside*, 895 F.2d at 50; *Campanelli Assocs.*, 2004 U.S. Dist. LEXIS 11701, at *5.  The Commission further moves to strike the proffered testimony on the grounds that Mr. Barrett lacks the personal knowledge necessary to proffer it.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  Mr. Mena is not competent to testify to discussions at DMC that occurred before he commenced his employment at DMC in September 2002.  *See* Mena Aff. dated Jan. 25, 2006, at ¶ 1(Docket No. 144); *Perez*, 247 F.3d at 316. *Perez*, 247 F.3d at 316.

      **M.**    **Proffered Testimony:**  In paragraph 33, Mr. Mena states:  "In conclusion, the FTC's allegation that DMC's sales department has been lax and non-compliant with our auto-ships/continuity sales, or that the company has failed to continue to improve its sales practice is not true."

      **Basis for Objection:** The Commission moves to strike the proffered testimony on the grounds that it is a conclusory legal opinion rather than factual testimony.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Color Leasing*, 975 F. Supp. at 191; *Bolen*, 754 F. Supp. at 225.

### III.    PLAINTIFF'S OBJECTIONS TO AFFIDAVITS SUBMITTED BY STERN DEFENDANTS

**1.    Objections to Affidavit of Allen Stern (Docket No. 152)**

**A.    Proffered Testimony:**  In paragraph D, Mr. Stern states:  "King Media and Triad are no different from numerous other companies that provide the same [media placement and back end/project management] services, from a media placement standpoint and from a project management standpoint."

**Basis for Objection:** The Commission moves to strike the proffered testimony on the grounds that Mr. Stern has not established that he has the personal knowledge necessary to compare King Media and Triad to other media placement companies.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.  In addition, the Commission moves to strike the proffered testimony on the grounds that it is a conclusory opinion rather than factual testimony.  *Bolen*, 754 F. Supp. at 225.

**B.    Proffered Testimony:**  In paragraph F, Mr. Stern states:  (1) "Because the companies [King Media and Triad] did not have the money, the Bank sought to collect from Lisa Mount, on her personal guaranty"; and (2) "Lisa Mount paid approximately $750,000 of the Bank's loan."

**Basis for Objection:** The Commission moves to strike the proffered testimony on the grounds that Mr. Stern has not established that he has personal knowledge regarding the bank's or Lisa Mount's actions.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.

**C.    Proffered Testimony:**  In paragraph 50, Mr. Stern states:  (1) "FTC's statement that Triad handled 'all management of the coral calcium infomercial' is false and misleading.  Triad had no involvement with the infomercial"; and (2) "[A]ll Triad's activities

were subject to DMC's control and decisionmaking."

**Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Stern's sworn deposition testimony squarely contradicts it. *Melanson*, 281 F.3d at 277 n.5.  Mr. Stern testified under oath in his deposition that Triad handled "all management of the Coral Calcium infomercial."  *See* S.J. Ex. 16, Att. 1.  *See also* FTC's Response to Stern Defendants' Opp'n. to FTC's Mot. for Summ. Judg. at 4-5.

**D.    Proffered Testimony:**  In paragraph 51, Mr. Stern states:  "However, it [the FTC's statement that the acts and practices alleged in the Complaint are or have been in or affecting commerce] is not true with respect to Steven [Ritchey] and I personally, as any involvement that I or Steven Ritchey had was solely in our capacities as officers and employees of King Media and Triad."

**Basis for Objection:**  The Commission moves to strike the proffered testimony.  Mr. Stern's statement regarding himself is inadmissible because it contradicts his Answer.  Mr. Stern admitted in his Answer that the acts and practices alleged in the Complaint are or have been in or affecting commerce.  *See* Answer of Defs. Triad ML Marketing, Inc., King Media, Inc., and Allen Stern at ¶ 17 (Docket No. 60).  He is bound by that admission.  *See* FTC's Response to Stern Defendants' Opp'n. to FTC's Mot. for Summ. Judg. at 8 n. 11.  *See also*, *e.g.*, *Schott*, 976 F.2d at 61; *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990) ("[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions."); *Stefanik v. Friendly Ice Cream Corp.*, 183 F.R.D. 52, 54 (D. Mass. 1998) (party "is bound by the averments of his pleadings and may not . . .

simply contradict them to avoid summary judgment").

Mr. Stern's statement regarding Steven Ritchey is inadmissible because Mr. Stern does not have personal knowledge regarding all of Mr. Ritchey's acts and practices. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.

E.    **Proffered Testimony**:    In paragraph 52, Mr. Stern states: "However, it [the FTC's statement that the Court has subject matter jurisdiction over this case and that venue in this district is proper] is not true with respect to Steven [Ritchey] and I personally, as neither I nor Steven Ritchey had any contacts in Massachusetts other than in our capacities as officers and employees of King Media and Triad."

**Basis for Objection:** The Commission moves to strike the proffered testimony. Mr. Stern's statement regarding himself is inadmissible because it contradicts his Answer. *See* Answer of Defs. Triad ML Marketing, Inc., King Media, Inc., and Allen Stern at ¶ 3 (Docket No. 60). He is bound by that admission. *See* FTC's Response to Stern Defendants' Opp'n. to FTC's Mot. for Summ. Judg. at 8 n. 11. *See also*, *e.g.*, *Schott*, 976 F.2d at 61; *Missouri Hous. Dev. Comm'n*, 919 F.2d at 1315; *Stefanik*, 183 F.R.D. at 54. Mr. Stern's statement regarding Steven Ritchey is inadmissible because Mr. Stern does not have personal knowledge regarding all of Mr. Ritchey's contacts with Massachusetts. Fed. R. Evid. 602; *Perez*, 247 F.3d at 316. In addition, the FTC objects to the proffered testimony on the grounds that the testimony is irrelevant. Defendants waived any potential objections to the Court's personal jurisdiction over them by failing to raise such objections in their Answers. *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 42 (1st Cir. 2003).

F.    **Proffered Testimony**:    In paragraphs 78-80, Mr. Stern states that "neither

King Media nor Triad 'disseminated' the [coral calcium] infomercial and, in fact, never shipped any infomercials from their office."

   **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that it is a conclusory legal opinion rather than factual testimony.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316; *Color Leasing*, 975 F. Supp. at 191; *Bolen*, 754 F. Supp. at 225.

   G. **Proffered Testimony**:  In paragraph 99, Mr. Stern states:  "FTC's statement in paragraph 99 that Triad 'handled the management of the coral calcium infomercial' is false."

   **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Stern's sworn deposition testimony squarely contradicts it. Mr. Stern testified under oath in his deposition that Triad handled "all management of the Coral Calcium infomercial."  *See* S.J. Ex. 16, Att. 1.  *See also* FTC's Response to Stern Defendants' Opp'n. to FTC's Mot. for Summ. Judg. at 4-5.  Statements in an affidavit that contradicts the affiant's previous deposition testimony are inadmissible.  *Melanson*, 281 F.3d at 277 n.5.

   H. **Proffered Testimony**:  In paragraph 118, Mr. Stern states:  "FTC's statement that 'we tested' an edited version of the infomercial is misleading insofar as it implies that King Media or Triad had any control over decisions relating to the infomercial."

   **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Stern's sworn deposition testimony squarely contradicts it. Mr. Stern testified under oath in his deposition that "*we tested* probably a few stations where the other show ran . . ."  *See* S.J. Ex. 15 at 97:5 to 98:6 (emphasis added).  Statements in an affidavit

that contradicts the affiant's previous deposition testimony are inadmissible. *Melanson*, 281 F.3d at 277 n.5.

      **I.**    **Proffered Testimony:**  In paragraphs 375-76, Mr. Stern makes statements regarding the FTC's allegation that Lisa Mount "received $1.5 million in 2002 Triad profit."  Mr. Stern states that Ms. Mount was charged with earnings for tax purposes even though she did not receive them.

      **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Stern has not established that he has personal knowledge regarding whether Ms. Mount received funds from Triad or Ms. Mount's taxes.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.

      **J.**    **Proffered Testimony:**  In paragraph 377, Mr. Stern makes statements regarding the FTC's allegation that Steven Ritchey "received" $772,652 in Subchapter S distributions.  Mr. Stern states that Mr. Ritchey was charged with earnings for tax purposes even though he either did not receive them or did not retain them.

      **Basis for Objection:**  The Commission moves to strike the proffered testimony on the grounds that Mr. Stern has not established that he has personal knowledge regarding whether Mr. Ritchey received or retained funds he received from Triad.  Fed. R. Evid. 602; *Perez*, 247 F.3d at 316.

## IV.    FTC's RESPONSES TO DFENDANTS' EVIDENTIARY OBJECTIONS[3]

### 1.    Erik Limbaugh's Testimony is Not Hearsay.

Paragraph 186 of the FTC's Statement of Material Facts Not in Dispute cites sworn

deposition testimony in which former DMC employee Erik Limbaugh testified that he informed

other DMC managers in August or September 2003 that he had been told that the study of 200

terminal cancer patients described in the Supreme Greens infomercial was not "a well-

documented study."  *See* FTC Statement of Material Facts Not in Dispute at 36 (Docket No. 131

(citing S.J. Ex. 10 , at 84-9-85:3)).  The DMC/ITV Defendants have objected to the

Commission's use of Mr. Limbaugh's deposition testimony on the grounds that it "is clearly

hearsay and is not admissible for any purpose."  *See* DMC/ITV Defendants' Statement of

Material Facts in Dispute at 37 (Docket No. 150).

The DMC/ITV Defendants' objection is meritless.  Mr. Limbaugh's testimony regarding

what he told DMC managers in the Fall of 2003 is not hearsay because the Commission has not

proffered the testimony to prove the truth of what Mr. Limbaugh told the managers.  The

Commission has proffered Mr. Limbaugh's testimony merely to prove that Mr. Limbaugh

reported to DMC managers that he had been told that the cancer study was not well-documented.

The Commission has not proffered the testimony to prove that the study, in fact, was not well-

---

[3]    The DMC/ITV Defendants buried their objections to the Commission's evidence within their Statement of Material Facts in Dispute and their February 23, 2006 letter to the Court (*see* Docket No. 153) rather than moving to strike the evidence as Rule 56(e) required them to do.  Because the DMC/ITV Defendants did not move to strike the evidence, they have effectively waived their objections.  *Casas*, 42 F.3d at 682 ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are waived and a court may consider the affidavit.").  Nevertheless, out of an abundance of caution, the Commission responds below to Defendants' meritless objections.

documented.

### 2.    **Stefano Sciolli's Affidavit is Admissible Lay Testimony.**

On December 15, 2005, the FTC submitted an affidavit from FTC Program Analyst
Stefano Sciolli in support of the FTC's motion for summary judgment.  *See* S.J. Ex. 31.  Mr.
Sciolli's affidavit states the results that Mr. Sciolli obtained by running a series of computer
queries on certain DMC database tables to identify records associated with DMC customers who
had been placed on DMC's autoship without their consent.  *See id.*  The FTC cited Mr. Sciolli's
affidavit in paragraphs 319-329 of the FTC's Statement of Material Facts Not in Dispute.  *See*
FTC Statement of Material Facts Not in Dispute at 66-67 (Docket No. 131 (citing S.J. Ex. 31)).

The DMC/ITV Defendants have twice objected to Mr. Sciolli's affidavit.  First, they
objected on the false grounds that the Commission did not identify Mr. Sciolli as a witness in this
lawsuit.  *See* DMC/ITV Defendants' Statement of Material Facts in Dispute at 66-67 (Docket
No. 150).  By letter dated February 23, 2006, the DMC/ITV Defendants have subsequently
withdrawn that plainly invalid objection and have admitted that the Commission did timely
identify Mr. Sciolli as a lay witness more than a year ago.  *See* Letter from Christopher F.
Robertson to Hon. George A. O'Toole (Feb. 23, 2006 (Docket No. 153)).

Second, in their February 23, 2006 letter to the Court, the DMC/ITV Defendants objected
to Mr. Sciolli's testimony on the grounds that the Commission was required to identify him as an
expert witness because his testimony allegedly is "based on his technical and specialized
knowledge as an economist."  Like their initial objection, the DMC/ITV Defendants' new
objection is completely without basis.  An examination of Mr. Sciolli's testimony reveals that it
merely summarizes the contents of the DMC/ITV Defendants' database.  Mr. Sciolli's testimony

does not include any analysis or interpretation of the DMC/ITV Defendants' data or of his search results.[4]  Consequently, Mr. Sciolli's testimony is not expert testimony.

## CONCLUSION

For the foregoing reasons, the Court should strike the Affidavits of Andrew Aldrich (Docket No. 145) and Jason Bernabei (Docket No. 146) and substantial portions of the Supplemental Affidavit of Donald Barrett (Docket No. 142) and the Affidavits of Wayne Callahan (Docket No. 143), Simon Mena (Docket No. 144), Eileen Barrett Maihos (Docket No. 149), and Allen Stern (Docket No. 152).  In addition, the Court should reject the DMC/ITV Defendants' objections to Erik Limbaugh's deposition testimony and Stefano Sciolli's affidavit.


Respectfully submitted,


/s/ Edward Glennon
HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
EDWARD GLENNON
SHIRA D. MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW; Suite NJ-3212
Washington, DC  20580
(202) 326-3285, -3126, -3116 (voice); (202) 326-3259 (fax)
eglennon@ftc.gov
ATTORNEYS FOR PLAINTIFF

DATE:  March 3, 2006

---

[4]        The DMC/ITV Defendants' reference to "specialized knowledge as an economist" appears to be based on the fact that, at the time Mr. Sciolli ran the computer queries, he was employed as an Economic Research Analyst with the FTC's Bureau of Economics.  Mr. Sciolli currently is employed as a Program Analyst with the FTC's Bureau of Competition.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 3, 2006.

/s/ Edward Glennon
Edward Glennon