UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
FEDERAL TRADE COMMISSION,              )
                                       )
      Plaintiff,                       )
        v.                             )
                                       )     Civ. No. 04-11136 - GAO
DIRECT MARKETING CONCEPTS, INC., et al.,)
                                       )
      Defendants.                      )
_____)

**PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM OF LAW IN RESPONSE TO THE OPPOSITION OF DEFENDANTS TRIAD ML MARKETING, INC., KING MEDIA, INC., AND ALLEN STERN AND RELIEF DEFENDANTS STEVEN RITCHEY AND LISA MOUNT TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT**

      Defendants Triad ML Marketing, Inc. ("Triad"), King Media, Inc. ("King Media"), and Allen Stern ("Stern") (collectively, "Liability Defendants") oppose the Federal Trade Commission's motion for summary judgment with a mixture of creative spin regarding their involvement in the coral calcium scheme and flawed legal arguments attempting to shift the blame for the challenged advertising to anyone but themselves. Liability Defendants, however, have failed to raise any dispute of material fact regarding the core elements of the Commission's claims against them: that they were extensively involved in the marketing and sales of the coral calcium product at issue, that the challenged claims are unsupported by any credible scientific evidence, that there were significant consumer sales of the coral calcium product, and that they, as well as Relief Defendants Steven Ritchey ("Ritchey") and Lisa Mount (nee Stern) ("Mount") received proceeds from such sales. Based on the lack of any dispute regarding material facts, and the well-established law holding that Defendants' actions in this matter are more than sufficient for the imposition of liability, the Commission requests the Court grant its motion for summary

judgment.

I.  **TRIAD, KING MEDIA, AND STERN ARE LIABLE UNDER THE FTC ACT**

Liability Defendants argue that it would be "unfair" for the Court to hold them liable under the FTC Act because (1) the coral calcium infomercial at issue did not make product claims, but rather only discussed books written by one of the infomercial co-hosts; (2) they did not "disseminate" the coral calcium infomercial; (3) they were mere service providers to DMC in the coral calcium scheme; and (4) they bore no responsibility for the content of the coral calcium infomercial.[1]  The Liability Defendants, however, fail to effectively dispute the facts as established in the Commission's summary judgment motion and their legal arguments regarding responsibility are fatally flawed.

   A.  **Coral Calcium Infomercial**

The Liability Defendants' attempt to characterize the coral calcium infomercial challenged in the Commission's suit as promoting "only [Robert] Barefoot's books and information" is contradicted by their Answer and undermined by the content of the infomercial itself.  The Liability Defendants admit in their Answer that "an infomercial advertising 'Coral Calcium' has aired on national cable networks, including those specified in paragraph 20 of the Complaint."  *See* Answer of Defendants Triad ML Marketing, Inc., King Media, Inc., and Allen Stern ("Answer"), ¶ 20 (Docket No. 60).  Furthermore, the infomercial makes strong disease

---

[1]  Defendants also extend certain of these arguments to Mount and Ritchey.  As the Commission has named these two individuals only as relief defendants, however, these arguments do not apply to them.  The Commission addresses its ability to collect from these two individuals *infra* at 10-15.

claims for coral calcium[2] and informs consumers they can get a discount on the coral calcium mentioned by Barefoot, one of the infomercial's hosts. The infomercial, for example, contains the following language:

> But call the number on your screen if you want information on his books, The Calcium Factor and Death by Diet or if you want information on the coral calcium that he's mentioning, which Bob says is an excellent form of calcium that you can actually consume and it has a lot of other potential benefits as well, and try it for yourself.
>
> Mention A Closer Look and get a substantial discount off the books as well as the coral calcium, or we can send you some information if you have any questions. So, give us a call.

Federal Trade Commission's Memorandum of Points And Authorities in Support of its Motion for Summary Judgment at 36-37 ("FTC SJ Brief") Ex. 2, Att. 2, at 35-36.

Thus, the infomercial is clearly an advertisement for a coral calcium product. The fact that the infomercial did not mention a specific brand of calcium is irrelevant. Defendants' attempt to characterize their ad as a neutral, general discussion of coral calcium must fail in light of the express language and purpose of the ad.[3] This Court has the ability to view the ad itself to

---

[2] The Commission notes that another federal district court has found that a second coral calcium infomercial created by Kevin Trudeau after Trudeau broke off his business relationship with the Defendants containing similar language made cure claims. *See* Transcript of Proceedings Before the Hon. Robert W. Gettleman at 11, *FTC v. Kevin Trudeau*, No. 03 C 3904 (N.D. Ill. March 31, 2004) ("this type of infomercial says what it says, and the message is very clear. The overall message is coral calcium cures diseases, particularly the ones that they mention: cancer, lupus, MS, people getting out of wheelchairs.") (attached as Ex. 3 to Glennon Dec.). *Cf.* Illinois infomercial, Exhibit 23 to the Affidavit of Christopher Robertson (Dkt. No. 147), *with* FTC S.J. Ex. 2 at Att. 2.

[3] A footnote in Defendants' memorandum states that the Commission consistently has failed to differentiate between the coral calcium infomercial with which Defendants were involved and a subsequent infomercial featuring Trudeau and Barefoot. *See* Triad ML Marketing, Inc., King Media, Inc., Lisa Mount, Allen Stern and Steven Ritchey's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Triad Def. Opp.") (Dkt. No. 152) at 2 n.1. Defendants fail, however, to articulate how exactly the Commission has failed in this

determine the messages conveyed.[4]  Most tellingly, the Liability Defendants have not disputed the Commission's contention that 90% of King Media and Triad's revenue in 2002, and 60% of the companies' revenue in 2003, were attributable to sales of coral calcium product.  *See* Triad ML Marketing, Inc., King Media, Inc., Allen Stern, Lisa Mount, and Steven Ritchey's Response to Federal Trade Commissions's Rule 56.1 Statement of Material Facts in Dispute ("Triad Def. Stmt.") (Docket No. 152, Att. 1) ¶ 378.

B.     **Role of King Media and Triad**

King Media and Triad attempt to creatively recast their roles in the coral calcium scheme as mere service providers with respect to the advertising and sales of the coral calcium supplement.  King Media and Triad fail to submit any evidence in support of their arguments, however, other than a self-serving, conclusory affidavit.

Triad's attempt to distance itself from substantive involvement in the coral calcium scheme is contradicted by Stern's sworn deposition testimony confirming that Triad handled "all management of the Coral Calcium infomercial":

> Q.     I would just like to read what that says, pursuant to DMC's agreement with Triad ML Marketing, Triad handled all management of the Coral

---

regard.  In fact, to the contrary, the Commission was careful in its depositions of both Stern and Ritchey to distinguish between the two programs and address only the infomercial with which Defendants were involved.  *See* FTC Rule 56.1 Stmt. Ex. 15 at 25:9-23; FTC SJ Brief Ex. 16 at 20:23 to 21:10.

[4] Furthermore, as stated in the Commission's memorandum in support of the instant motion, courts routinely determine the existence of express and implied claims on summary judgment motions, even where defendants argue that there are issues of fact as to whether they made the representations or not.  *See FTC v. Gill*, 71 F. Supp. 2d 1030, 1043 (C.D. Cal. 1999) (granting summary judgment to the FTC in an action challenging implied claims after determining the ads' "overall net impression"); *FTC v. U.S. Sales Corp.*, 785 F. Supp. 737, 745 (N.D. Ill. 1992) (granting summary judgment to the FTC after reviewing ads and determining their overall "net impression").

        Calcium infomercial, including purchasing the product from a manufacturer, the processing of customer orders, packaging and shipping of the product to customers. Any sales, i.e., the processing of credit card purchases, are performed by Triad. Triad also handles the payment of any royalties for the show.
        Do you agree with the statements in that paragraph?
A.    Yes.
Q.    Okay. Anything in that paragraph you don't agree with?
A.    No.
\*\*\*
Q.    Okay. Who has the decision-making power with respect to all of these activities mentioned [above]?
A.    Mostly Triad.
Q.    Are there instances in which Mr. Barrett or DMC has decision-making authority?
A.    He has input, but I–I would venture to say that ultimately the final decision with respect to who we buy product from, how we package the product, how we manage the program, an ongoing program, in generally he would defer to us on that.

*See* FTC SJ Brief Ex. 15, Att. 6, at 12:14-13:8; 15:2-17.[5] Indeed, the true nature of Triad's arrangement with DMC is reflected in a memo from Stern to Barrett that provided:

> Subject to the terms of the proposal we sent over last Friday, it is our understanding that we (Triad/HBA/DMC/DFI) recognize that the customers and sales resulting from the programs and products *we have developed together* are for our mutual benefit and that the net profits (past, present and future) on retail business, reorders, continuities, etc., whether conducted through DMC, DFI, Triad, HBA or any other business entity, are to be shared 50/50.

FTC SJ Brief Ex. 16, Att. 1 (emphasis added).[6]

Triad freely acknowledges that it stood to gain 50% of the net profit from the coral calcium sales. Thus, even if Triad were not involved in "every" aspect of the infomercial–such

---

[5] The statements in Stern's affidavit submitted in opposition to the Commission's motion that take issue with the Commission's contentions regarding Triad's management of the infomercial are inadmissible. *See* Commission's Motion to Strike Defendants' Evidence ("Motion to Strike"), pp. 34-35 (filed concurrently herewith).

[6] Stern confirmed that the memo accurately reflected his understanding of the business agreement between DMC and Triad. *See* FTC SJ Brief Ex. 15 at 32:5-33:10.

as its filming–Triad has failed to contradict the Commission's evidence establishing the extensive scope of its involvement in the coral calcium scheme and resulting liability under the FTC Act.  Given the uncontested facts regarding Triad's actions and its arrangement to share equally in the proceeds of the sales generated by the contested advertising, Triad cannot be heard to argue that it would be "unfair" to hold it liable in this matter.

King Media also tries to position itself as a mere provider of services to DMC, claiming that its function "was simply to locate appropriate TV outlets to run the infomercial and to arrange for the dub house to provide the TV outlet with a copy of the infomercial." *See* Triad Def. Opp. at 7.  Any attempt to portray King Media as merely a service provider rather than a joint business partner of the DMC/ITV Defendants divvying up duties based on their areas of expertise, however, is undermined by Stern's own sworn deposition testimony:

> Q.   ***
>      Who makes the decision of where or from whom to purchase media time?
> A.   King Media.
> Q.   Okay.  If Mr. Barrett asked you to purchase media time from a certain outlet in a certain market, would you comply with that request?
> A.   No.
> Q.   Why not?
> A.   Because Mr. Barrett is not–is not a media guy and King Media is a very well-respected media agency in this business, so it would be foolhardy for Mr. Barrett to try to determine where and how and when King Media should buy advertising time.
>      ***

FTC SJ Brief Ex. 15, Att. 6 at 19:3-19.[7]

---

[7] King Media's attempt to avoid liability also fails in light of the Commission's evidence showing that King Media, Triad and Stern operated as a common business enterprise in carrying out the coral calcium scheme.  *See* Complaint for Permanent Injunction and Other Equitable Relief, ¶ 17.  King Media and Triad shared the same officers and owners and were located in the same offices.  *See* Commission's Rule 56.1 Statement of Material Facts Not in Dispute ("FTC Rule 56.1 Stmt.") ¶¶ 39-41, 43-44, 57-60.  Additionally, despite Stern's contention that King Media was only a media purchaser, the roles of King Media and Triad in fact were blurred.

### C. Allen Stern

Defendants argue that it would be unfair to hold Stern liable in this matter, citing the fact that he didn't pay for the production of the infomercial and had no history of legal problems. Defendants fail to dispute, however, that as the president of both King Media and Triad, Stern had the ability to control both corporations, and thus bears responsibility for the extensive involvement of the two entities in the coral calcium campaign. *See* Triad Def. Stmt., ¶¶ 41-43. Defendants also fail to dispute any of the facts established in the Commission's motion regarding Stern's personal involvement in the coral calcium scheme. For example, they fail to dispute that, acting in his capacity as the president of King Media, Stern played a key role in facilitating the production of the infomercial and mediating disputes between Barrett and Trudeau in an effort to move the project forward. *See* Triad Def. Stmt., ¶¶ 69-71, 113-14.[8] Also undisputed is Stern's

---

Stern, for example, used King Media letterhead in carrying out tasks–such as facilitating the infomercial production, mediating disputes between Barrett and Trudeau, and obtaining legal review of the infomercial – that presumably would have been the responsibilities of Triad, given that corporation's purported role of general program manager and procurer of services. *See* FTC SJ Brief Ex. 15, Atts. 4, 5, 7. As participants in a common business enterprise, King Media, Triad, and Stern are jointly and severally liable for their actions. *See FTC v. Wolf*, No. 94-8119-CIV-FERGUSON, 1996 WL 812940, *7-8 (S.D. Fla. Jan. 31, 1996) (courts examine a number of factors in determining the existence of a common enterprise, including common control, the sharing of office space and officers, and failure to maintain separation of companies; finding corporate defendants jointly and severally liable as common enterprise); *cf. Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1173 & n.1 (1st Cir. 1973) (citing similar factors in upholding FTC's treatment of multiple corporations as a single economic entity).

[8] Defendants' Response to the Commission's Statement of Material Facts Not in Dispute denies, without citation to any evidence, the Commission's statement that Stern drafted a proposed contract between Donald Barrett and Kevin Trudeau that included Triad as a signatory. *See* Triad Def. Stmt. ¶ 70. Stern's affidavit, in fact, however, does not "deny" the Commission's contention, but states only that the Commission's statement is "misleading." *See* Affidavit of Allen Stern filed 2/10/06 ("Stern Affidavit") ¶ 70. Stern then apparently attempts to "clarify" the FTC's statement by adding certain facts. *See id.* Stern's additions, however, do not create a dispute regarding the Commission's stated fact.

knowledge during the advertising campaign of problems with substantiation for the infomercial claims, or his failure to address such problems given his belief that it simply was not his obligation to do so.[9] *See id.*, ¶¶ 108-09, 115-16; Triad Def. Stmt., ¶¶ 108-09, 115-16; Stern Aff. ¶¶ 108-09, 115-16. Under the facts established in the Commission's motion, therefore, Stern is liable for both injunctive and monetary relief under the FTC Act.[10]

### D. Liability Defendants' Legal Arguments Are Fundamentally Flawed

The Liability Defendants also advance a number of meritless legal arguments in their effort to avoid liability. These defendants, for example, claim that, because they are not TV stations, they did not actually "disseminate" any of the challenged advertising. Sections 5 and 12 of the FTC Act, however, prohibit parties from disseminating, or *causing the dissemination* of, false or deceptive advertising, *see* 15 U.S.C. §§ 45, 52, and well-established case law rejects the Liability Defendants' narrow view of the term "dissemination." *See Mueller v. United States*, 262 F.2d 443, 445-47 (5th Cir. 1958) (rejecting defendant's argument that he was not liable under

---

[9] Defendants' Response to the Commission's Statement of Material Facts Not in Dispute denies that "the Stern defendants" sent the coral calcium infomercial to the Venable law firm for review, noting that it "certainly was only one person" that actually mailed the infomercial. *See* Triad Def. Stmt., ¶ 117. In his affidavit, however, Stern states that he "did not object" to sending Venable the program. *See* Stern Affidavit, ¶ 117. Stern thus does not dispute the Commission's main point – that he was aware a request had been made for legal review of the infomercial. Stern also does not dispute the Commission's contention that he personally sent the infomercial to another attorney for review months earlier, but that the review was not performed. *See* Triad Def. Stmt., ¶ 108; Stern Affidavit, ¶ 108.

[10] In his attempt to avoid liability, Stern also attempts to dispute certain facts as set forth in the FTC Statement of Material Facts Not in Dispute. Stern, for example, attempts to deny that he engaged in acts in or affecting commerce, that the Court has subject matter jurisdiction, or that venue in this district is proper. *See* Defs. Resp. Facts ¶¶ 51-52. Stern, however, previously admitted to all of these facts in his Answer to the Commission's Complaint. *See* Answer (Docket No. 60), ¶¶ 2-3, 17. Stern therefore is bound by the admissions in his Answer and cannot attempt to contradict them now to avoid summary judgment. *See* Motion to Strike, pp. 35-36.

8

the FTC Act because newspapers had actually disseminated the advertisements at issue, and holding that "[n]or is it necessary that the false advertising be directly disseminated by the respondents. The statute makes it unlawful for the respondents to cause such false advertising to be disseminated. Under these plain, unambiguous provisions of the statute, petitioners' contention[] that they . . . did not personally disseminate any false advertisement do[es] not constitute a defense to the action."). The Commission's evidence in support of its motion establishes that the acts of the Liability Defendants thus fall within the ambit of conduct prohibited by Section 5.

The Liability Defendants also argue that they should not be held liable because it was not their responsibility to ensure the accuracy of the claims made in the infomercial. Indeed, rather than dispute the Commission's contentions that they failed to research the truth of, or obtain scientific substantiation for, the infomercial claims, the Liability Defendants openly acknowledge as much. *See* FTC Rule 56.1 Stmt., ¶¶ 79-80; Triad Def. Stmt., ¶¶ 79-80. Instead, these defendants assert that, despite the fact they were earning commissions from purchasing air time and stood to make 50% of net profit from product sales, it was the responsibility of everyone but themselves – their co-defendants, the infomercial producer, and TV stations–to ensure that the program complied with the law.

Their arguments have no basis in the law. Even if the Liability Defendants did rely on information from Barefoot, the product developer, as a basis for believing the claims were substantiated, such reliance is no defense to liability under the FTC Act. Indeed, this Court has recognized as much in rejecting the same arguments posited by the DMC/ITV defendants

concerning reliance on information supplied by Guerrero regarding Supreme Greens.[11]  *See also FTC v. American Microtel, Inc.,* No. CV-S-92-178-LDG(RJJ), 1992 WL 184252, at *1-2 (D. Nev. June 10, 1992) (striking affirmative defense of two defendants that their co-defendants had created the challenged representations and assured the two defendants that the representations were lawful, as the defense "would not extinguish the defendants' liability even if the facts alleged therein were proven"); *FTC v. American Standard Credit Systems, Inc.,* 874 F. Supp. 1080, 1088  (C.D. Cal. 1994) ("it is no defense for Defendants to argue that the advertising was sanctioned by" a third party).

In sum, the Liability Defendants' arguments regarding "dissemination" and responsibility for advertising content raise no disputes of material fact but rather involve legal issues appropriate for resolution via summary judgment.  As outlined above, the Liability Defendants' arguments are without legal basis and pose no obstacle to the Commission's motion.

## II.   LISA MOUNT AND STEVEN RITCHEY ARE LIABLE AS RELIEF DEFENDANTS

To recover against relief defendants Ritchey and Mount, the Commission must show that they were "enriched and that 'the circumstances dictate that, in equity and good conscience, [they] should be required to turn over [their] money to the plaintiff.'"  *FTC v. Think Achievement Corp.*, 144 F. Supp.2d 1013, 1020 n.4 (N.D. Ind. 2000) (quoting *SEC v. Antar*, 831 F. Supp. 380, 402 (D.N.J. 1993)) (itself quoting *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir. 1986)).  The government bears the burden of establishing that the disgorgement figure is

---

[11] "Defendants' purported reliance upon co-defendant Alex Guerrero's representations – even if true – is not a valid defense to a violation of the FTC Act." Preliminary Injunction Order as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald W. Barrett, at ¶ 30.

a reasonable approximation of the amount of unjust enrichment. *See SEC v. Antar*, 97 F. Supp.2d 576, 578 (D.N.J. 2000). In doing so, it "is not required to trace every dollar of proceeds misappropriated by the defendants . . . nor is [it] required to identify monies which have been commingled by them." *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 n.22 (E.D. Mich. 1991) (liability defendants). Once the government has established that the disgorgement figure is a reasonable approximation of unlawful profits, the burden shifts to defendants to demonstrate the unreasonableness of the approximation. *See Antar*, 97 F. Supp.2d at 578. Subsequent loss or squandering of unlawful gains does not preclude an order of disgorgement. *See SEC v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987) (liability defendant) ("The manner in which [defendant] chose to spend his misappropriations is irrelevant as to his objection to disgorge."); *SEC v. Hughes*, 917 F. Supp. 1080, 1086 (D.N.J. 1996) (liability defendants) ("[E]ven if [defendant's] testimony were admissible, what happened to the funds after they were paid into the SLID account is irrelevant."). Additionally, financial hardship will not prevent an order of disgorgement. *See SEC v. Mohn*, No. 02-74634, 2005 WL 2179340, at *5 (E.D. Mich. Sept. 9, 2005) (liability defendant).

Defendants have failed to raise any dispute of material fact regarding Mount and Ritchey's receipt of proceeds from sales of the coral calcium product at issue.[12] The Commission thus is entitled to summary judgment with regard to both defendants.

---

[12] Defendants acknowledge that, at a minimum, the Relief Defendants were charged for tax purposes with receipt of such funds, although they attempt to argue that they were unable to "retain" the earnings. Defendants also fail to dispute the Commission's contentions, based on Defendants' own documents, that approximately 90% of Triad's income in 2002 came from sales of the coral calcium product. *See* Triad Def. Stmt., ¶ 378.

### a.     Steven Ritchey

Defendants attempt to dispute the fact that Ritchey received any monetary distribution from Triad in 2002.[13] Defendants fail to submit any admissible evidence in support of their argument, however, and their contention is contradicted by Ritchey's own deposition testimony. The only "evidence" Defendants submit in support of their contention consists of a paragraph in Stern's affidavit in which Stern states that Ritchey was charged with earning $772,652 for tax purposes, but was not able to retain those funds as he returned money to the companies in the form of loans.[14] Notably, however, Ritchey himself has not submitted an affidavit testifying to the same facts.[15] Furthermore, any contention that Ritchey did not actually "receive" the $772,652 fails in light of Ritchey's own deposition testimony:

> Q:  Then if you turn to the following page, again, we're still on Schedule K-1, Triad 25, Item 20 . . . . The monetary value there reads $772,652.
> Does that number represent–refresh your recollection as to the amount of the distribution you received from Triad in 2002?
> A:  I'm actually having my accountants review that against loans made to the corporation to see if it actually reflects true distributions.
> Q:  I understand. In terms of the distribution itself, though, at the time, is that an accurate indication of the distribution that was made to you?
> A:  The funds that came from the company, yes.
> Q:  And was that distribution in addition to any salary you received from Triad that year?
> A:  Yes. But I'm not sure there was any salary from Triad that year.

---

[13] In their memorandum opposing the Commission's motion, Defendants appear to argue that Ritchey, along with Stern, should not be held liable for violating the FTC Act. *See* Defendants' Memorandum in Opposition to Federal Trade Commission's Motion for Summary Judgment at 10. The Commission, however, has named Ritchey only as a relief defendant.

[14] Stern's testimony on this issue is inadmissible. Nowhere in Stern's affidavit does he state that he is making this statement regarding a third party on the basis of first-hand knowledge. *See* Motion to Strike, p. 38.

[15] Additionally, even if Ritchey did make such loans, that fact would not preclude the Court from ordering disgorgement of the $772,652. *See Benson*, 657 F. Supp. at 1134; *Hughes*, 917 F. Supp. at 1086.

FTC SJ Brief Ex. 16 at 163:3 to 163:25.

In light of the above, there is no dispute of material fact regarding Ritchey's receipt of funds from the sale of the coral calcium product at issue in the suit.

Ritchey also has filed a "Suggestion of Bankruptcy," in which he "suggests" that his filing for bankruptcy in another district has stayed the Commission's action against him. The Commission's action, however, is not stayed by 11 U.S.C. § 362(a) because it is an exercise of the Commission's police or regulatory power as a governmental unit pursuant to 11 U.S.C. § 362(b)(4) and thus falls within an exception to the automatic stay.[16] *See*, *e.g.*, *FTC v. Ameridebt, Inc.*, 343 F. Supp.2d 451, 457-59 (D. Md. 2004) (rejecting corporate defendant's argument that its bankruptcy filing stayed FTC's enforcement action under Section 13(b) of the FTC Act); *FTC v. American Standard Credit Sys.*, 874 F. Supp. 1080, 1083 (C.D. Cal. 1994) (Baird, J.) (FTC's action to enforce consumer protection laws not subject to automatic stay).[17]

---

[16] As provided in 11 U.S.C. § 362(b)(4), the Commission acknowledges that *enforcement* of any money judgment that it obtains in its action would be subject to the automatic stay. The bankruptcy filing, however, has no effect on the Commission's ability to proceed with regard to Ritchey's *liability* as a relief defendant.

[17] Defendants deny that Ritchey personally engaged in acts in or affecting interstate commerce, that the Court has subject matter jurisdiction over Ritchey, and that venue is proper as to Ritchey. *See* Triad Def. Stmt., ¶¶ 51-52. The supporting "evidence" cited in support of these denials, however–Stern's affidavit–is inadmissible, as Stern fails to establish that he is making these assertions relating to Ritchey on the basis of first-hand knowledge. *See* Motion to Strike, pp. 35-36. Furthermore, since this Court undisputedly has subject matter jurisdiction over the litigation concerning the conduct that produced the funds in question, it need not separately obtain subject matter jurisdiction over the Commission's claim to the funds held by Ritchey. *Cf. CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002) (holding that court had subject matter jurisdiction over "nominal defendant"); *see also FTC v. Ameridebt, Inc.*, 343 F. Supp.2d 451, 464 (D. Md. 2004) (denying relief defendant's motion to dismiss for lack of subject matter jurisdiction; citing *Kimberlynn Creek* in holding that "Section 13(b) of the FTC Act invests the Court with equitable powers over 'innocent persons' in order to accomplish such relief as repayment, restitution, rescission or disgorgement of any unjust enrichment").

### b. Lisa Mount

Defendants similarly try to dispute the fact that Mount received $1,545,305 in distributions from Triad in 2002. Once again, however, Defendants have failed to submit admissible evidence contradicting the Commission's assertions.

Defendants assert that Mount never received the $1,545,305 distribution from Triad. Mount's affidavit, as it addresses only her involvement with *King Media*, however, fails to dispute this fact. Mount begins her affidavit by reciting the history of her involvement with King Media, including the fact that she received no salary from the company from 1996 until 2003. *See* Aff. of Lisa Mount filed 2/10/06 ("Mount Affidavit"), ¶¶ 4, 6-7. Her subsequent statements regarding distributions also relate solely to King Media, rather than Triad.[18] Nowhere does she deny that she received distributions from *Triad*, as alleged and established by the Commission in its motion.[19] Furthermore, even if Mount was unable to "retain" the funds she received because she loaned the money back to the company,[20] the Court still may order disgorgement in the full amount of her unlawful gain, $1,545,305. *See Benson*, 657 F. Supp. at 1134; *Hughes*, 917 F.

---

[18] Specifically, Mount states:

> "As noted above, I did not receive any salary at any time during the period January 1996 until July 2003. I did remain as a shareholder of King Media, a subchapter-S corporation. However, there were no distributions made to me any time during the period that King Media and Triad ML Marketing were working on behalf of Direct Marketing Concepts, Inc."

Mount Affidavit, ¶ 14.

[19] The statements in Allen Stern's affidavit relating to these events involving a third party are inadmissible. *See* Motion to Strike, p. 38.

[20] Notably, Defendants have failed to submit any documentary evidence of such loans to the companies. Defendants also have failed to submit any documentary evidence showing that Mount paid off the companies' loans, the current level of her savings, or the extent of any other assets.

Supp. at 1086.

Defendants' extensive discussion of the marital agreement between Mount and Allen Stern is wholly irrelevant to the issue of Mount's liability as a relief defendant. To hold Mount liable in this capacity, the Commission must prove that she received proceeds from the sale of coral calcium. The Commission has done so, and the disposition of the Sterns' assets pursuant to their divorce subsequent to the 2002 transfer at issue simply has no bearing on the issue.[21] Defendants' statement that requiring Mount to repay any money "would upset the divorce settlement agreement and require probate proceedings" is therefore without any legal basis.

---

[21] Indeed, the fact that Mount may have transferred some unlawful proceeds to Allen Stern has no effect on the Court's ability to order disgorgement from her of the entire $1,545,305. *See Benson*, 657 F. Supp. at 1134; *Hughes*, 917 F. Supp. at 1086.

In sum, the Commission has established Mount's liability as a relief defendant in its motion and, as described above, Defendants have failed to raise any dispute of material fact as to the issue.[22]

Respectfully submitted,


/s/ Edward Glennon
EDWARD GLENNON
HEATHER HIPPSLEY
KIAL S. YOUNG (BBO # 633515)
SHIRA D. MODELL
Federal Trade Commission
600 Pennsylvania Avenue, NW; Suite NJ-3212
Washington, DC  20580
(202) 326-3285, -3126, -3116 (voice); (202) 326-3259 (fax)
hhippsley@ftc.gov or eglennon@ftc.gov
ATTORNEYS FOR PLAINTIFF

DATE: March 3, 2006



CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 3, 2006.

/s/ Edward Glennon
Edward Glennon

---

[22] As the Commission has named Mount only as a relief defendant and has not asserted a cause of action against her, her objections regarding the Court's subject matter jurisdiction, her participation in acts in or affecting interstate commerce, and venue fail for the same reasons cited *supra* in note 17 with regard to relief defendant Ritchey.