```
                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

FEDERAL TRADE COMMISSION,         )
                                  )
            Plaintiff,            )
                                  )  No. 03 C 3904
       vs.                        )  Chicago, Illinois
                                  )  March 31, 2004
KEVIN TRUDEAU, SHOP AMERICA       )  10:00 o'clock a.m.
(USA) LLC, ROBERT BAREFOOT,       )
and DEONNA ENTERPRISES, INC.,     )
                                  )
            Defendants.           )

           TRANSCRIPT OF PROCEEDINGS - MOTION

        BEFORE THE HONORABLE ROBERT W. GETTLEMAN
```

APPEARANCES:

For the Plaintiff:        FEDERAL TRADE COMMISSION
                          600 Pennsylvania Avenue, NW, NJ-3212
                          Washington, DC 20580
                          BY:  MR. DANIEL KAUFMAN


For Defendant Trudeau and   JENNER & BLOCK, LLC
Shop America:               One IBM Plaza
                            Chicago, Illinois 60611
                            BY:  MR. DAVID J. BRADFORD
                                 MR. DANIEL J. HURTADO







Official Court Reporter:   JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
                           Room 1706
                           Chicago, Illinois 60604
                           (312) 427-5351

         (Proceedings in open court.)
             THE CLERK:  03 C 3904, FTC versus Trudeau.
             MR. BRADFORD:  Good morning, Your Honor.
             David Bradford and Daniel Hurtado on behalf of Mr. Trudeau.
             MR. KAUFMAN:  Good morning.
             Daniel Kaufman on behalf of the Federal Trade Commission.
             THE COURT:  All right.  This is here on the defendant's motion to strike the expert, the FTC expert, and the defendant's motion for relief from the order.
             Now, I just want to review briefly why we're here today.  This had been set for a pretrial schedule and trial date.  And the defendants informed me that they wanted to supersede that, those dates and those proceedings with these motions that are before the Court today stating that the resolution of these issues might well lead to a full resolution of the case.  So that's why we're here today in this somewhat unusual procedural setting.
             Let me deal first with the issue of the Michael Mazis matter.  First of all, the defendants complain that Michael Mazis, the disclosure of his retention and his report were untimely, because the order that we did enter didn't specifically mention rebuttal experts.  According to the defendants, he's really more of a case-in-chief expert than a rebuttal expert;

1  and, therefore, it was untimely and violated Rule 26 as well as
2  the order of the Court and the standing order of the Court.
3         There is some truth to the notion that Mr. -- it's
4  really Doctor. You say doctor, and you say mister.
5         MR. KAUFMAN: It's Dr. Mazis.
6         THE COURT: I read his resume. It's doctor, is it not?
7         MR. KAUFMAN: He is a doctor.
8         THE COURT: Mr. Bradford, isn't he a doctor?
9         MR. BRADFORD: He is a doctor, yes.
10        THE COURT: He's a Ph.D. doctor.
11        I think there is some truth to the notion that he is
12 someone who could have been tendered by the FTC to support their
13 case in chief. But the FTC's position is that you don't need an
14 expert of any kind here, that it's pretty clear on its face what
15 the infomercial says; and, therefore, they were prepared to
16 submit their prima facie case without an expert.
17        The defendants then chose to submit an expert and,
18 therefore, they chose to rebut that expert with their own.
19        If this were the eve of trial as we had originally
20 planned, I think that the defendant would be right, that they
21 would have been, that the FTC would have been untimely in
22 disclosing it at least without leave of Court. I think from a
23 practice matter and a case management perspective, it probably
24 would have been best if the FTC had come in and sought leave of
25 Court before just tendering the witness.

However, there is no prejudice to the defendants by the way it was done. They're responding to an expert report that they consider superfluous, but as a matter of caution, they wanted to have their own expert rebut that expert. And I think it does fall into the normal category of rebuttal evidence. And we didn't deal with it specifically. The rule does deal with it specifically. We don't have a trial date. I think it would be prejudicial to the defendant -- I'm sorry -- to the plaintiff and frankly to the Court if I were to need the advice of these people about this infomercial.

So I think that there is really no procedural bar to Dr. Mazis. And the FTC has said you can take his deposition any time you want out of order, it doesn't really matter to them.

So the motion to strike his testimony is denied.

There is another reason that it's denied, too. I've read Mr. Burger's affidavit -- I've got so many papers up here, it's hard to find anything -- with some interest. And I just don't put any real stock into Mr. Burger's affidavit here or his, I guess it's his report attached to the declaration. There is just some total inaccuracies and opinions that he submits that are just unbelievable.

Well, I'm just going to give you an example. In paragraph 14, where he's talking about the AMA issue or the Journal issue, we'll call it, because it was more than just the Journal of the American Medical Association, he's just wrong

about the way he describes what Barefoot says about those things and about what those articles say.

I've read the articles. I've gone back to the June submission that we've had, and I've read those articles. There is nothing about cures. There is nothing that could lead any reasonable person to opine about what those articles say. They say what they say. And they certainly don't even mention the word "cure" or, you know, "reversal of disease" or any of that stuff.

I'm looking at the June 11th submission. These are actually Exhibit B to the Zeed declaration. That's where I found them. They may have been submitted elsewhere.

But we read these with some care to see whether or not Burger was correct in saying that "Barefoot fairly reported on the facts from these articles by expressing an opinion." And even then, the actual quote that I'm looking at here from Burger's paragraph 14, "whether Mr. Barefoot has fairly reported on the facts from these articles is a matter of opinion that might require a consumer survey." He doesn't even say it does require a consumer survey.

And these articles, even Burger says that the articles that they're quoting from, of course, these are like quotes of quotes, found, in quotes, "that calcium supplements may have an effect on some forms of cancer."

And let's just cut right to the chase here, the quote

from the infomercial, I think that is so clearly violative, not just of the order, but of any standard of truthfulness here as when Trudeau asks him -- let me see if I can find it. I know you've all quoted these things a lot to me. I'm trying to find the one that I flagged. I think it's on page 17 maybe. Barefoot says, "I'm quoting from the Journal of the AMA." He's talked about the AMA before this.

And Trudeau says: "The American Medical Association."

"Yes, they said this."

You know something, I'm reading from the wrong part. Here it is. Right before that on page 16 going over to 17, Trudeau says:

"Every medical doctor is glued right now to the television watching, waiting for your answer. Is calcium, taking calcium a cure for cancer?"

Answer by doctor -- doctor? Please -- by Robert Barefoot: "According to the Journal of the AMA, yes."

That's just a lie. You know, you can stop right there. I mean, frankly, Mr. Bradford is looking at me like -- you know where I am on this. You can almost stop right there and say that this infomercial, everything else from this infomercial sort of builds on that line.

And you have to remember that the consent order that you signed says that you agreed to this, that the defendants were enjoined from making or assisting others in making directly or by

implication any representation that, and then it goes through the list of six things. The first is: Is such product an effective treatment or cure for any form of cancer? I think whether you quote the AMA or not, the answer to the question that he was asked is "yes," and that clearly violates that, because, remember, even under the terms of this, it doesn't have to be express. It can be by implication under the terms of the order that you guys worked out, certainly by implication, but I think that's express.

       Treatment for multiple sclerosis, lupus, or other autoimmune diseases, I've noted pages 5 and 16 mention those as well, again, in the context of a cure.

       I have a question for Mr. Bradford and company. I actually have a couple of questions. Are these infomercials scripted?

       MR. BRADFORD: They are not.

       THE COURT: Are they rehearsed?

       MR. BRADFORD: They are not.

       THE COURT: Okay. Are the callers legitimate?

       MR. BRADFORD: I believe that the --

       THE COURT: By "legitimate," I mean are they real people from the outside unscripted?

       MR. BRADFORD: I don't believe so. I think that that part is somehow worked out in the studio.

       THE COURT: Okay. I mean, it is a commercial, and

1  you're responsible for all the representations regardless of
2  that. But I obviously was curious about that.
3         MR. HURTADO: I think to be clear though, I believe that
4  they are actual consumers that have been contacted, but the calls
5  have been arranged.
6         THE COURT: They know what they're going to say?
7         MR. HURTADO: Right.
8         THE COURT: I mean, it's an advertisement. Everybody
9  knows it's an advertisement. And I guess you have to take
10 everything with a grain of, I was going to say "salt," but maybe
11 "calcium" is the word I should use.
12        But paragraph C of the order says "such products as an
13 effective treatment or cure for heart disease," and there is not
14 a lot about heart disease in there, but then it says, "and/or
15 chronic high blood pressure." Of course, that's what that caller
16 says on page 34.
17        The two gallons of milk is clearly in there and the
18 absorption rate, a hundred times. I mean, you can quibble about
19 mathematics, but on page 20 of the transcript, when I first heard
20 it -- by the way, you invited me to look at it. I have now seen
21 this thing two or three times.
22        MR. BRADFORD: Sorry about that.
23        THE COURT: No. That's okay. Thank you. I appreciate
24 your sympathy.
25        But there on lines 18 and 19, where he talks about, you

know, "That means 20 hours after you take your Tums where you get a 1 percent absorption rate," he had just said, "you get 4 milligrams of calcium. But if you take the coral, you get 400 in 10 minutes."

I mean, the impression there, the clear impression, you would have to think about, you would have to really pull those words apart in a written form to say that they mean anything other than 4 to 400 is a hundred times faster. I mean, that's the impression he gives. And you could obviously diagram that sentence any way you want, but you are talking about an oral presentation here. And that's the impression I got when I first saw it many months ago, and then this is the impression I got when I saw it before reading the transcript that you provided me.

So, you know, I think that the ad violates all of these things.

I also want to point something out to you. If I had the time, I'd write on this, because it would be kind of interesting to write on, but I think particularly because you tell me that you are trying to reach an amicable resolution, I think that I wanted to give you my impressions today, and you can take this back to your client and obviously use it hopefully to reach something that everybody can be comfortable with.

But the way I read paragraph 23 of the agreed preliminary injunction order, it puts the burden I think on the defendants to seek relief. And, therefore, a lot of the case law

1  that you've talked about about the burden of the plaintiff, which
2  would be the FTC here, really doesn't apply, because you're
3  saying the FTC has to have a consumer survey to meet a burden
4  that I think in effect the defendant has here, because the
5  defendant is seeking relief from an injunction that's already in
6  place.
7           So I think even if you look at the Burger report and
8  give it any kind of weight at all to say, well, we really need a
9  consumer report, well, where is the consumer report?  It really
10 is the defendant's burden.
11          If you had tendered a consumer survey of some sort, not
12 a satisfaction survey, a satisfaction survey may show that you're
13 just really good at convincing people this stuff is good for
14 them, but if you had actually done a consumer report, then the
15 burden might have shifted back to the FTC to say:  Wait a minute.
16 Here is a flaw in the report, or here is another report or
17 whatever, and to convince me or any I think reasonable trier of
18 fact that this ad says something other than it does to me,
19 because I think it's very clear.
20          You say "nearly express" or you use words like that, you
21 know, we don't see those in the case law very much, but if you
22 look at some of the cases that you folks have cited, the Kraft
23 case, it was a little different because it involved some FTC fact
24 finding, which, of course, was criticized by the Court sort of in
25 a left-handed kind of way citing an old Judge Posner Law Review

1  article as I recall.  But Judge Flaum in that case said the
2  overall -- let me see.  Wait a minute.  I've got too many cases
3  in front of me.  Let me find what I was looking for.
4        That certainly you do defer to the FTC somewhat with
5  implied claims.  Again, I don't find that these claims are
6  particularly implied.  And he even talks about a continuum of
7  implication from the non-obvious to the pretty close to obvious.
8  I think we're pretty close to obvious.
9        Judge Flaum also says in his opinion or, actually, the
10 quote I just was referring to, "Implied claims fall in a
11 continuum ranging from the obvious to the barely discernable."
12 This is the obvious we're talking about here.
13       He also says we have to apply common sense as well as
14 administrative experience.  And I think that common sense here
15 tells us that these cases, that this type of infomercial says
16 what it says, and the message is very clear.  The overall message
17 is coral calcium cures diseases, particularly the ones that they
18 mention:  Cancer, lupus, MS, people getting out of wheelchairs.
19       I wish it were true.  I mean, we've all taken, I hope,
20 people of my age anyway, and maybe I could speak for
21 Mr. Bradford, we all took calcium as a supplement in a certain
22 sense when we were told to drink our milk when we were kids.  So,
23 I mean, the benefits of calcium are obvious, but not as a cure
24 for these diseases.
25       And then there is another quote from the Zauderer case,

1  Z-a-u-d-e-r-e-r case from Judge Flaum's opinion, where he says,
2  "When the possibility of deception is as self evident as it is in
3  this case, we need not require the state to conduct a survey of
4  the public before it may determine that the advertisement has a
5  tendency to mislead." And that was a case involving a state,
6  not the FTC, going after a lawyer who said you don't have to pay
7  any fees, but he didn't mention costs. To me, that's a tougher
8  case than this one here, because you didn't mention costs at all.
9  Costs are obviously part of any case.
10          And then in the Gill case, which I found very
11  persuasive, a Central District of California 1999 case, quoting I
12  believe a Northern District case, FTC versus Sales, U.S. Sales,
13  excuse me, you say "The Court looks at the overall net impression
14  made by the advertisement in determining what message may
15  reasonably be ascribed to it."
16          So applying any of these standards it seems to me that
17  this ad doesn't live up to the requirements of honesty and is
18  likely, highly likely to be found at the end of the day to be
19  deceptive.
20          I don't see that -- you know, you're asking in a sense
21  in the nature of relief from an agreed judgment order, you're
22  asking me to sort of tell you how I feel about this and having
23  looked at it from probably all the arguments. You know, the
24  argument is well done. And you're all good lawyers, and you know
25  how to make these arguments about as well as they can be made.

1          I don't know absent a survey of some sort what would
2   convince me to ever go the other way here.  So I think you have
3   the benefit of my thinking on that.  And if that helps you, all
4   the better.  But, again, you know, if you came in with a survey,
5   I would have an absolutely open mind to say:  Gee, I didn't, you
6   know, I didn't look at it the way they did.  And then maybe we
7   need to go a bit further.
8          But right now the injunction is in place.  It applies to
9   this infomercial as far as I'm concerned.
10          MR. BRADFORD:  I do have good news for the Court.  I
11  appreciate all the work that you have invested here.  We have
12  reached an agreement in principle, which has a couple --
13          THE COURT:  Maybe I should have asked you to tell me
14  that first.
15          MR. BRADFORD:  No, no.  It has a couple of conditions in
16  it, one of which specifically related to Your Honor's ruling and
17  certain anticipations about Your Honor's ruling.  So that that's
18  really helpful I think in moving us forward.  And the other
19  conditions or condition simply related to confirmatory discovery
20  regarding the defendant's financial condition, which we have been
21  engaged in at a pretty healthy pace.
22          And I think we can agree to report that we expect within
23  30 days to be able to present a definitive agreement to Your
24  Honor for resolution of the case.
25          MR. KAUFMAN:  If I could just clarify that?

1      MR. BRADFORD: Sure.

2      MR. KAUFMAN: In 30 days we could probably have
3 defendant Trudeau sign an agreement. It would then take an
4 additional four to eight weeks for the FTC's Commission to act
5 upon it and authorize me to file it in this Court. But within 30
6 days we could have the agreement. That does need to be approved
7 by the five commissioners who we generally can anticipate whether
8 they'll accept a settlement, but ultimately it is up to them.

9      I'm sorry, David.

10     MR. BRADFORD: And I would have told you that at the
11 outset if, in fact --

12     THE COURT: No, actually, it's better that it happened
13 that way.

14     MR. BRADFORD: -- inconsequential to it, but the ruling
15 really wasn't a condition expressly identified in the order and
16 has consequences in terms of the resolution between the parties.
17 So we greatly appreciate that and do think, as we indicated, that
18 it should be instrumental in helping us to resolve the case,
19 unless there are surprises in the next 30 days here.

20     MR. KAUFMAN: And what the FTC would like is to come
21 back, you know, something, you know, 30 days from now and tell
22 the Court whether there is a signed agreement. If there isn't
23 for whatever reason, we would then seek to --

24     THE COURT: Well, can you sign the agreement before it
25 goes through your administrative process?

1            MR. KAUFMAN:  Defendant Trudeau can sign it.  I cannot
2   sign it for the Commission until I get authorization.
3            THE COURT:  That's fine.  That's absolutely fine.
4            I'm going to be away the last week or so of -- can you
5   come back on the 4th of May?  Come back on May 5th.  That's my
6   birthday.
7            MR. BRADFORD:  That's terrific.
8            THE COURT:  It's also Cinco de Mayo.  We can crack open
9   a Corona --
10           MR. BRADFORD:  Hopefully so.
11           THE COURT:  -- or two.  All right.
12           Well, it's been interesting.  We don't have these types
13  of cases too often, so it was an interesting exercise.
14           MR. BRADFORD:  We really do appreciate and we believe it
15  as I said would be very helpful.  Perhaps to just anticipate a
16  little bit on the 5th, and I guess this could be done on the 5th
17  or done at a later time, there are some areas where we have
18  reached agreement in principle and where we have tried to apply
19  those principles to a wide variety of factual scenarios to make
20  sure we're both comfortable with the way that that would work
21  itself out.
22           Part of our agreement contemplates making a record of
23  our intent and understanding with respect to those particular
24  applications of the order to minimize the opportunities for
25  disagreement.  And if Your Honor is agreeable, we were hopeful of

1  making something of a record as to both the intent and
2  application of some of the language so that both sides are
3  comfortable with the language knowing how it will work.
4        THE COURT:  Do you anticipate more than just telling me
5  that you've signed off on something, now it's going to be
6  approved by the Commission?  I mean, do you think on May 5th that
7  you are going to need more time than that, because if you do, I
8  have a trial, I'm on trial that day.
9        MR. KAUFMAN:  On May 5th I would anticipate we can just
10 tell you that we've reached the agreement.
11       THE COURT:  Fine.
12       MR. KAUFMAN:  Then come back at a later date.
13       THE COURT:  Fine.
14       MR. KAUFMAN:  And then go through the whole
15 interpretation of the order.
16       THE COURT:  I mean, I don't really want to get into any
17 of the details until everybody signed off on it.
18       MR. BRADFORD:  Right.
19       MR. KAUFMAN:  Right.
20       THE COURT:  It seems not appropriate otherwise.
21       MR. KAUFMAN:  We just want to have a date so that --
22       THE COURT:  Fine, okay.  Well, let's leave it at that.
23 And I thank you all.
24       MR. KAUFMAN:  Thank you very much.
25       MR. BRADFORD:  We look forward to seeing you on the 5th.

1  Thank you, Your Honor.

2          THE COURT: Okay.

3      (Proceedings concluded.)

                    C E R T I F I C A T E

        I, Jennifer S. Costales, do hereby certify that the
foregoing is a complete, true, and accurate transcript of the
proceedings had in the above-entitled case before the Honorable
ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,
Illinois, on March 31, 2004.

                    _____
                    Official Court Reporter
                    United States District Court
                    Northern District of Illinois
                    Eastern Division