

```
Priority   X
Send       X
Enter      X
Closed     __
JS-5/JS-6  __
JS-2/JS-3  __
Scan Only  __
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> A. GLENN BRASWELL, et al., <br><br> Defendants. | CASE NO. CV 03-3700 DT (PJWx) <br><br> ORDER **DENYING** DEFENDANT CHASE REVEL'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT |

## I.  BACKGROUND

### A.  Factual Summary

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. It brings this action against Defendants A. Glenn Braswell ("Braswell"), JOL Management Co. ("JOL"), G.B. Data Systems, Inc. ("G.B. Data"), Gero Vita International, Inc. ("Gero Vita"), Theraceuticals, Inc. ("Theraceuticals"), Halsey Holdings LLC ("Halsey"), Health Quest Publications, Inc. ("Health Quest"), G.B. Data Systems, Inc. (Canada), Ron Tepper ("Tepper"),

594

Ronald M. Lawrence, M.D., Ph.D. ("Lawrence"), Hans Kugler, Ph.D. ("Kugler"), Chase Revel a/k/a Marcus Welbourne, John Wellburn, James Wellburn, Martin Wellner, John Meggenhorn, and John Burke ("Revel").

The following facts are found to be undisputed[1]:

On or about May 27, 2003, the FTC filed its original complaint against Defendants for violations of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"). On or about March 30, 2004, the FTC sought leave to add Revel as a defendant. On or about July 26, 2004, the FTC filed its Second Corrected First Amended Complaint for Permanent Injunction and Other Equitable Relief ("FAC").

The FTC alleges that Braswell, Tepper, JOL, G.B. Data, Canada, Gero Vita, Theraceuticals, Health Quest, and Halsey are part of the "Braswell Common Enterprise." The FTC does not allege that Revel is part of the Braswell Common Enterprise. It alleges that the Braswell Common Enterprise "advertised, labeled, offered for sale, sold, and distributed a variety of dietary supplements and other health-related products to the public, and that its total sales exceeded $798 million." Among the products that Defendants are alleged to have advertised, labeled, offered for sale, sold and distributed in recent years are: Lung Support Formula, Gero Vita G.H.3, and Testerex, all marketed since at least 1998; ChitoPlex, marketed since at least 1999; AntiBetic Pancreas Tonic, marketed since at least 2000; and Theraceuticals G.H.3 Romanian Youth Formula, marketed since

---

[1] The Court sets forth these facts based on its review of Revel's Statement of Uncontroverted Facts and Conclusions of Law, the FTC's Statement of Genuine Issues and Revel's Reply Statement. While many facts were set forth in Revel's Separate Statement in support of his Motion for Summary Judgment, the Court sets forth only those undisputed facts relevant to the analysis set forth herein. Other disputed facts are discussed within the analysis portion or were not relevant based on the Court's determinations of the issues presented in this Motion.

2

at least 2001. The FTC has settled with all of the entities comprising the Braswell Common Enterprise with the exception of Braswell individually.

Revel drafted advertising copy for the Gero Vita companies pursuant to the contract between his company, Campaign Media Corporation ("CMC")[2] and Vita Industries ("Contract"). CMC agreed to create advertising material for direct mail or space advertising to promote Gero Vita's products. Under this Contract, CMC was to receive royalty payments based on a percentage of the sales generated by the advertising material created by CMC. Revel ceased working for the Gero Vita companies in early 2001.

The FAC alleges three counts against Revel for the advertising he wrote for Lung Support Formula, AntiBetic Pancreas Tonic and Gero Vita GH3. Revel does not dispute that he wrote advertising for these products. The FAC alleges that Revel made claims that Gero Vita products will "cure, treat, or alleviate" certain conditions; and that they have been "scientifically tested and proven to be effective;" and that these representations violation Sections 5(a) and 12 of the FTC Act.

More specifically, with respect to the three product claims at issue here, the FTC alleges the following in its FAC:

(1) Revel "represented, expressly or by implication, that Lung Support: a. Cures or significantly alleviates lung diseases and respiratory problems, including asthma, colds, influenza, bronchitis, chest congestion, emphysema, smoking damage, and shortness of breath; b. Reverses existing lung damage in persons with emphysema and significantly improves their breathing; c. Prevents breathing problems for many persons who do not have existing respiratory problems; and

---

[2] CMC later became Admax, Inc.

3

   d. Is clinically proven to eliminate or cure allergies, asthma, colds, influenza, bronchitis, sinus problems, chest congestions, emphysema, smoking damage, and shortness of breath."

(2) Revel "represented, expressly or by implication, that AntiBetic: a. Can cure Type I and Type II diabetes; b. is an effective or superior alternative to insulin or other diabetes medications for the treatment of Type I and Type II diabetes; and c. is clinically proven to regenerate or repair the pancreatic cells that produce insulin and to lower blood sugar levels in persons with diabetes."

(3) Revel "represented, expressly or by implication, that: a. GH3 reverses and prevents age-related memory loss, dementia, and Alzheimer's disease; b. Persons who use GH3 or Theraceuticals GH3 can live 29% longer; and c. GH3 is clinically proven to prevent and reverse age-related memory loss, dementia and Alzheimer's disease."

The FTC alleges that the above-stated representations regarding Lung Support, Antibetic and the GH3 Products ("Representations") were made "expressly or by implication" and that they were "false or were not substantiated at the time [they] were made." The FTC contends that the "overall net impression" of Revel's advertisements convey such Representations.

**B.** **Procedural Summary**

  The procedural history in this case is lengthy, as the original Complaint was filed on May 27, 2003, and it has been set out in previous orders of this Court. This Court hereby incorporates by reference the Procedural Histories set forth in prior Orders of this Court.

  Currently before this Court is Defendant Chase Revel's Motion for Summary Judgment or Partial Summary Judgment, filed on August 29, 2005.

## II.   DISCUSSION

### A.   Standard

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. See id.; Fed. R. Civ. P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. See Anderson, 477 U.S. at 250-51, 106 S. Ct. at 2511. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. See Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989); California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

If the moving party seeks summary judgment on a claim or defense on which it bears the burden of proof at trial, it must satisfy its burden by showing affirmative, admissible evidence.

Unauthenticated documents cannot be considered on a motion for summary judgment. See Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. See Fed. R. Civ. P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B. Analysis**

Revel seeks judgment or partial judgment as a matter of law on the following bases:

(1) The FTC cannot meet its burden of proving that any advertisements drafted by Revel contained statements that were expressly false or deceptive or created a net impression that was false or deceptive;

(2) The FTC cannot meet its burden of proving that Revel lacked a reasonable basis for all statements made in advertising copy drafted by him regarding the products at issue in this case;

(3) The FTC cannot meet its burden of demonstrating the proper calculation of any restitution award against Revel regarding Lung Support Formula;

(4) The FTC cannot meet its burden of demonstrating that Revel should be subject to any injunctive relief;

(5) Revel has demonstrated that he acted in good faith in drafting the advertisements for Lung Support Formula, GH3 and AntiBetic.

### 1. Applicable standards for Sections 5 and 12 of the FTC Act

As set forth above, the FTC alleges that the advertisements drafted by Revel with respect to Lung Support Formula, GH3 and Antibetic contain representations which are false or were not substantiated at the time they were made, constituting a deceptive practice, and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

Section 5 of the FTC Act declares unlawful "unfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce."

In support of his Motion, Revel argues that the FTC must meet its burden of demonstrating "substantial consumer injury" as set forth in 15 U.S.C. § 45(n).[3] However, the FTC responds that such a showing is the liability standard for "unfair practices," and it alleges "deceptive", not "unfair" practices. See Complaint at ¶¶ 36, 38, 40, 44 ("Therefore, the making of the representations . . . constitutes a deceptive practice, and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.") This Court agrees with the FTC.

"[T]he 'cardinal factor' in determining whether an act or practice is deceptive under § 5 is the likely effect the promoter's handiwork will have on the

---

[3] Under § 45(n), an act or practice cannot be declared unlawful on the grounds that such act or practice is unfair unless the act or practice "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

7

mind of the ordinary consumer." <u>Federal Trade Comm'n v. Sterling Drug, Inc.</u>, 317 F.2d 669, 674 (2d Cir. 1963). Under Section 5, the FTC must show that the business entity made material representations likely to mislead ordinary consumers to their detriment. <u>F.T.C. v. Freecom Communications, Inc.</u>, 401 F.3d 1192, 1203 (10th Cir. 2005); see also <u>Southwest Sunsites, Inc. v. Federal Trade Comm'n</u>, 785 F.2d 1431, 1436 (9th Cir. 1986). Proof of consumer reliance or consumer injury is not necessary to establish a Section 5 violation. <u>Freecom</u>, 401 F.3d at 1203. As such, the FTC's burden of proof does not include "substantial consumer injury."[4]

Section 12 of the Act makes it unlawful "to disseminate, or cause to be disseminated, any false advertisement (1) by United States mails, in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, services, or cosmetics; or (2) by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a). A "false advertisement" is any advertisement that is misleading in a material respect. 15 U.S.C. § 55; see also <u>F.T.C. v. Pantron I Corp.</u>, 33 F.3d 1088, 1099 (9th Cir. 1994)("Indeed, a 'false advertisement' need not be 'false'; it need only be 'misleading in a material respect.'"). In determining whether any advertisement is false or misleading, the Court must take "into account, among other things, not

---

[4] In his Reply, Revel admits that "the Commission is correct that it may establish a technical violation of the FTC Act without proof of consumer injury." However, he contends "the consequences of such a showing are virtually meaningless for the purposes of the FTC's case against Revel." He argues that because the only monetary relief that the FTC seeks from Revel is restitution based on injury to consumers, then the FTC still needs to prove "injury to consumers." However, as explained hereinbelow, triable issues of fact exist with respect to the issue of restitution.

only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations." 15 U.S.C. § 55.

### 2. Summary judgment is not warranted on the basis of the net impressions of the advertisements

The FTC's allegations against Revel are based on claims derived from the net impressions created by the challenged advertisements written by Revel for Defendant Braswell and his companies. Based on the FTC's allegations, then, the question is whether the net impression of the representation is such that the representation would be likely to mislead reasonable consumers. FTC v. Gill, 71 F. Supp. 2d 1030, 1046 (C.D. Cal. 1999).

In seeking summary judgment, Revel argues that the FTC cannot meet its burden of proving that any advertisements drafted by him contained statements that created a net impression that was false or deceptive. He contends that his drafted advertisements contain appropriate qualifying language, and that the ads clearly describe the type of studies that are being relied on. In opposition, the FTC argues that there are genuine issues of fact regarding the falsity of the net impression claims conveyed by Revel's advertisements. This Court agrees with the FTC. In other words, a reasonable trier of fact could determine that the net impression of the representations in Revel's advertisements is such that the representations would be likely to mislead reasonable consumers.

At the outset, this Court notes that contrary to Revel's arguments, individual statements need not be false or misleading to render a net impression false or misleading. See Sterling Drug, 317 F.2d at 675 ("The courts are no longer content to insist simply upon the 'most literal truthfulness' for we have increasingly come to recognize that 'Advertisements as a whole may be

completely misleading although every sentence separately considered is literally true.'" (citations omitted)); FTC v. Arlington Press, Inc., 1999 WL 33562452 *9 (C.D. Cal. 1999)("Even if literally true, a representation will be found to be deceptive and in violation of Section 5 of the FTCA is its net impression is likely to mislead consumers."). As such, this Court views the representations alleged to be made by the advertisements and determines whether the fact finder could determine that its net impression is likely to mislead consumers.

### a.    Lung Support Formula advertisement

The claims that the FTC alleges are made by this advertisement (see Koehler Decl., Exh. 1) are that Lung Support Formula: (1) cures or significantly alleviates lung diseases and respiratory problems, including asthma, colds, influenza, bronchitis, chest congestion, emphysema, smoking damage, and shortness of breath; (2) reverses existing lung damage in persons with emphysema and significantly improves their breathing; (3) prevents breathing problems for many persons who do not have existing respiratory problems; and (4) is clinically proven to eliminate or cure asthma, colds, influenza, bronchitis, and emphysema. (FAC at ¶¶ 35-36.)

A review of the ad shows that the fact finder could determine that these claims are conveyed, either expressly or impliedly. The ad claims on the cover page that "Scientists Find Amazing Remedy for: Asthma, Bronchitis, Emphysema and Smoking Damage." The word "remedy" can communicate a "significant alleviation" for those diseases. The majority of the ad concerns how individual ingredients have been proven to cure or alleviate the symptoms of these conditions and others, including colds, flu and shortness of breath. The claims are reinforced by expert endorsements touting Lung Support as "scientifically proven

to rejuvenate the important lung function" (Weissman) and "proven" to rejuvenate lungs (Kugler).

Regarding the claim that Lung Support reverses existing lung damage in persons with emphysema and significantly improves their breathing, the ad reports on a study where researchers reported that they "were able to reverse . . . damage to the alveoli of animals . . . ." and emphasizes that "They actually reversed emphysema!" In a conclusion, the ad claims: "It is obvious that asthma, bronchitis, and now, even emphysema, are reversible or avoidable, if you feed the body [Lung Support]."

Regarding the claim that Lung Support prevents breathing problems for many persons who do not have existing respiratory problems, the ad conveys this message through its discussion of the extreme dangers that air pollutants pose to the respiratory system, particularly the destruction of fibers in the lungs. According to the ad, the ingredients in Lung Support deter damage to the lung, thereby implying that Lung Support will prevent the development of breathing problems.

The ad represents that Lung Support is clinically proven to eliminate or cure asthma, colds, influenza, bronchitis, emphysema, and smoking damage. In addition to the express representations on the cover page and the expert endorsements, the ad develops this claim through the discussion of at least nine scientific or clinical tests that purportedly support the efficacy of the ingredients found in Lung Support.

Thus, this Court concludes that a fact finder could determine that the express statements and the reasonable inference therefrom, in the context of the advertisement as a whole, convey to reasonable consumers the claims regarding Lung Support alleged by the FTC.

11

SCANNED

### b. AntiBetic Pancreas Tonic advertisement

The claims that the FTC alleges are made by this advertisement (see Koehler Decl., Exh. 2) are that AntiBetic Pancreas Tonic: (1) can cure Type I and Type II diabetes; (2) is an effective or superior alternative to insulin or other diabetes medications for the treatment of Type I and Type II diabetes; and (3) is clinically proven to regenerate or repair the pancreatic cells that produce insulin and to lower blood sugar levels in persons with diabetes. (FAC at ¶¶ 37-38.)

A review of the ad shows that the fact finder could determine that these claims are conveyed, either expressly or impliedly. The substance of the ad is that the various ingredients in AntiBetic have been demonstrated through purported scientific tests to be effective in the regeneration of pancreatic cells that produce insulin or regulation of blood sugar levels. Regarding the implication that AntiBetic cures Type I and Type II diabetes, the ad states "Formula Can Eliminate the Need for Drugs"; "treatment can be discontinued after between about four and twelve months, for type I and type II diabetes"; "the formula will cure diabetes"; "clinical tests show that we've finally found the answer" (expert endorsement); and "wipe one of the worst diseases off the list"(expert endorsement).

Regarding the claim that AntiBetic is an effective or superior alternative to insulin or other diabetes medications for the treatment of Type I and Type II diabetes, the ad asserts that unlike AntiBetic, conventional treatments are dangerous and do not provide a cure for diabetes. The ad states:

> Whether you are type I or type II diabetic, you know the
> drugs your doctor gives you aren't curing the disease;
> they are only trying to keep your system in balance so
> you can function and live. {bold subline: you never get
> better on drugs} Unfortunately, you never get better