using drugs. The longer you have the disease, the worse it gets because it is almost impossible to keep your blood sugar perfectly balanced with drugs .... Now, thanks to the wonders of nature and an ancient but very wise old doctor, you can stop the awful pillaging of your body ...

Regarding the claim that AntiBetic is clinically proven to regenerate or repair the pancreatic cells that produce insulin and to lower blood sugar levels in persons with diabetes, the ad references at least nine tests or studies relating to the regeneration or repair of pancreatic cells, the lowering of blood sugar levels, or the alleviation of the symptoms of diabetes. The express statement is made that "Clinical tests show that a minimum of four months is required for those with newly acquired adult-onset blood sugar problems and that it could take up to 15 months before those dependent on drugs can stop the need for injections."

Thus, this Court concludes that a fact finder could determine that the express statements and the reasonable inference therefrom, in the context of the advertisement as a whole, convey to reasonable consumers the claims regarding AntiBetic alleged by the FTC.

        c.    **Gero Vita GH3 advertisement**

The claims that the FTC alleges are made by this advertisement (see Koehler Decl., Exh. 3) are that: (1) GH3 reverses and prevents age-related memory loss, dementia, and Alzheimer's disease; (2) Persons who use GH3 can live 29% longer; and (3) GH3 is clinically proven to prevent and reverse age-related memory loss, dementia and Alzheimer's disease. (FAC at ¶¶ 39-40.)

A review of the ad shows that the fact finder could determine that these claims are conveyed, either expressly or impliedly. Revel's ad informs

consumers that age-related memory loss, dementia, and Alzheimer's disease are the result of brown slime or lipofuscin (age spots) on brain neurons, which is caused by an excess of an enzyme called monoamine oxidase (MAO), among other things. The ad reveals that excessive MAO can be reduced significantly by paraminobenzoic acid (PABA) and dimethylaminoethanol (DMAE), ingredients contained in Gero Vita GH3.

Regarding the clinically proven claim, the ad states, on page one in bold: "IF YOU HAVE AGE SPOTS . . . Don't Wait Until Your Memory Gets Worse! Clinical Tests Show The Condition Can Be Reversed!" In addition, throughout the ad there are references to scientific research linking age-related memory loss, dementia and Alzheimer's disease to excess lipofuscin and MAO levels and implying that the studies prove that PABA and DMAE reduce MAO levels.

Regarding the claim that "persons who use G.H.3. can live 29% longer," the front page headlines proclaims "STOP THE CLOCK! Scientists Say: You Can Live 29% Longer". A bold subheadline in the text of the advertisement declares, "Patients Lived 29% Longer!" The text describes the results of a purported "test" of a procaine product reporting "that the test group lived an average of 29% longer than the normal life expectancy." In addition, the ad includes a discussion of a study involving DMAE (an ingredient in Gero Vita G.H.3) where mice fed DMAE "extended their life spans by 30% to 40%, even though they were very old when given [the] nutrient." The ad connects this test on mice to humans by stating that the report's apparent author "concluded that those results suggest that humans' life spans may also be increased by taking DMAE regularly."

14

Thus, this Court concludes that a fact finder could determine that the express statements and the reasonable inference therefrom, in the context of the advertisement as a whole, convey to reasonable consumers the claims regarding Gero Vita GH3 alleged by the FTC.

In light of the above, then, this Court concludes as a matter of law that the FTC has shown the existence of triable issues of fact. Therefore, summary judgment in favor of Revel is not warranted on the basis that Revel's advertisements do not create a net impression that was false or deceptive.[5]

### 3. Summary judgment is not warranted on the ground that Revel had a reasonable basis for the advertisements

Revel argues that the FTC cannot prove that Revel lacked a reasonable basis for his advertising copy. In response, the FTC argues that genuine issues of fact regarding whether Revel had a reasonable basis for his advertising copy preclude summary judgment. As explained below, this Court agrees with the FTC.

---

[5] In his Reply, Revel urges this Court to make a determination as to the net impression claims upon this Motion for Summary Judgment since the Court will be the trier of fact at the bench trial. However, this Court declines to do so. Instead, the Court believes that the proper way to proceed it to allow the parties to establish a complete record on this issue at the time of trial and then render findings and conclusions at that time. In addition, Federal Rule of Civil Procedure 52(c) (Judgement on Partial Findings) provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.

15

In Section 12 cases involving objective product claims, the FTC can rely on a "reasonable basis" theory. FTC v. Garvey, 383 F.3d 891, 901 (9th Cir. 2004)(quoting Pantron I, 33 F.3d at 1096). Under the reasonable basis theory, the FTC must show that the advertiser lacked a reasonable basis for asserting that the message was true. Id. (quoting Pantron I, 33 F.3d at 1096). "In determining whether an advertiser has satisfied the reasonable basis requirement, the Commission or court must first determine what level of substantiation the advertiser is required to have for his advertising claims. Then, the adjudicator must determine whether the advertiser possessed that level of substantiation." Pantron I, 33 F.3d at 1096.

With respect to determining the level of substantiation required, at issue are objective product claims. Objective product claims contain affirmative information about a product's attributes, performance or efficacy and require some level of substantiation in support. In re Removatron, 111 F.T.C. 206 (1988). In other words, objective product claims imply support by a reasonable basis. In the Matter of Thompson Medical Co., 104 F.T.C. 648, 813 (1984), aff'd, 791 F.2d 189 (D.C.Cir. 1986), cert. denied, 107 S. Ct. 1289 (1987). If the ad contains express representations regarding the particular level of support that the advertiser has for the claim or implies a particular level of substantiation to reasonable consumers, then the reasonable basis consists of the amount and type of substantiation the advertiser claimed to have. Id. Typically, advertising that expressly or impliedly represents support by a scientific level of substantiation contains such words as "tested," "established," "here's proof" or "medically proven." Removatron, 111 F.T.C. 206. If such advertisement represents that a particular claim has been scientifically established, then the advertiser must possess a level of proof sufficient to satisfy the relevant scientific community of the claim's truth. Thompson, 104 F.T.C. at 821-22 n. 59.

16

In this case, this Court concludes that the Revel ads expressly or impliedly represent support by a scientific level of substantiation. For example:

The GH3 advertisement contains the following statements: "Clinical Tests Show . . ."; "Scientists have found . . ."; "American Scientists Confirm . . ."; "Considerable clinical evidence is showing . . ."; in addition, as detailed above in subsection 2(c), the ad discusses scientific research and tests. (Koehler Decl., Exh. 3.)

The AntiBetic ad contains the following statements: "World-Renowned Clinic Involved in Tests"; "clinical tests have shown . . ."; in addition, as detailed above in subsection 2(c), the ad references expert endorsements and tests. (Id. at Exh. 2.)

The Lung Support ad contains the following statements: "Scientists Find Amazing New Remedy"; "scientists have recently found . . . "; "clinical tests reveal"; in addition, as detailed above in subsection 2(c), the ad discusses expert endorsements as wells as scientific and clinical tests. (Id. at Exh. 1.) As such, these are claims that the representations are supported by scientific evidence. The question presented is, then, is what level of scientific substantiation is needed.

In seeking summary judgment, Revel first asserts that he should not be considered a "full service 'advertising agency'", and that instead, he should be considered akin to a commercial "spokesperson", relying on F.T.C. v. Garvey, 383 F.3d 891 (9th Cir. 2004), and therefore be subject to the substantiation requirement in that capacity. This Court concludes that Garvey is inapplicable. In Garvey, Steve Garvey, retired first baseman for the L.A. Dodgers, was hired by Enforma Natural Products, Inc., creator of a weight loss system, to promote its system through infomercials and radio and television appearances. The FTC filed a complaint against Garvey alleging that in marketing the Enforma System, Garvey

17

violated Sections 5(a) and 12 of the FTCA. After a bench trial, the district court entered judgment in favor of Garvey concluding that Garvey could not be held liable under a "participant" theory of liability or as an "endorser." Id. at 896. Importantly, in making its determination, the Ninth Circuit noted:

> The Garvey defendants note that there is no settled standard for the level of inquiry to which a commercial spokesperson is held when he or she is hired to participate in a television advertisement. In the context of the knowledge requirement, we find that the fact that the individual is merely a spokesperson is relevant.

Id. at 902-903 n. 12. Here, Revel cannot seriously contend that he was "merely a spokesperson."

Indeed, Revel does not dispute that he was responsible for conceiving and drafting advertisements for Lung Support Formula, AntiBetic Pancreas Tonic and Gero Vita GH3. The FTC offers examples of instances where Revel exercised control over things such as specific font types, font sizes, and the ages of models in the photographs. (See Koehler Decl., Exhs. 14-16.) Revel's correspondence and the written "guidelines for handling [his] work" demonstrate the control he asserted over the advertising he drafted: "There will be NO changes or additions to my copy other than the normal proofing and editing . . . . A copy of the typeset piece must be faxed or [sent] to me for my approval before being sent to the printer." (Id. at Exh. 15; see also id. at Exh. 16.) According to Revel: "[F]rom the onset, in fact, . . . I wrote all of the advertisements that would go out to acquire new customers" from 1990 to 1998. (Id. at Exh. 33 at 132-133.) As such, Revel is not comparable to Steve Garvey in Garvey who was hired merely as a celebrity spokesperson. To the contrary, Revel's actions and duties reflect his role as an advertiser.

18

Revel asserts next that even if Revel/Admax is considered to be an advertising agency, he was entitled to rely on the studies provided by the client to satisfy the reasonable basis requirement. In response, the FTC contends that the reasonable basis standard for the claims at issue here consist of double-blind, placebo-controlled, randomized clinical studies. This Court concludes that the FTC has set forth sufficient evidence to establish a genuine issue for trial as to the applicable standard.

In support of its claim regarding the need for double-blind, placebo-controlled, randomized clinical studies, the FTC relies on its expert witnesses who each have opined that the adequate substantiation required by qualified experts in the relevant fields for the efficacy claims at issue in the Complaint for Lung Support Formula, AntiBetic Pancreas Tonic and GH3 would include at least one double-blind, placebo-controlled, randomized clinical study. (Koehler Decl., Exh. 6 at 13-16; 7 at 7-13; 8 at 13-16.) The Court can look to what experts in the relevant area of study would consider to be adequate in determining the amount of and type of evidence that is sufficient. See Thompson Medical, 104 F.T.C. at 821. The FTC also points to other courts which have found or upheld that double-blind, placebo controlled studies are required to provide adequate substantiation for various efficacy claims, including claims for dietary supplements. See, e.g., Pantron I, 33 F.3d at 1097-98 (placebo control required for hair growth product); FTC v. SlimAmerica, Inc., 77 D. Supp. 2d 1263, 1274 (S.D. Fla. 1999)("Scientific validation of the defendants' product claims requires a double blind study of the combination of ingredients used in [the product formula]."); FTC v. Sabal, 32 F. Supp. 2d 1004, 1008-09 (N.D. Ill. 1998)(rejecting study as valid substantiation, in part, because it was not blinded or placebo controlled); FTC v. California Pacific Research, Inc., 1991 U.S. Dist. LEXIS 12967 at *12-13 (D. Nev. Aug. 27,

19

1991)(only placebo-controlled, double-blind clinical studies meet "the most basic and fundamental requirements for scientific validity and reliability").

Finally, the FTC points out that Revel himself acknowledges the importance of a double-blind, placebo controlled, randomized clinical study. In the opening paragraphs of a 1999 book he co-authored, he acknowledges the importance of double-blind, placebo controlled testing because "[u]nfortunately, most [stories about the benefits of nutritional supplements] are written by vitamin companies or herbalists who are touting their own products, often stretching the truth." He states:

> Today we live in a scientific world where technology has reached a point that we can test the use of a medicine or nutritional supplement and carefully evaluate its effects in an unbiased way. The accepted method of evaluating a substance by scientists worldwide is called a 'double blind' study. A scientist must eliminate the possibility of bias and the placebo effect.

(Hans Kugler and Chase Revel, Amazing Medicines the Drug Companies Don't Want You to Discover at vii (1999), excerpts attached as Exh. 25 to Koehler Decl.) Similarly, at his deposition, when Revel testified regarding his "concept of an appropriate clinical study" that he "would want to rely on in making a claim," he addressed the importance of "choosing the participants randomly," as well as "a double blind situation . . . and placebo controlled, of course." (Koehler Decl., Exh. 33 at 126-128.)

Revel cites to Federal Trade v. Enforma Natural Products, 362 F.3d 1204 (9th Cir. 2004), for the proposition that "the Ninth Circuit has not adopted such a rigid standard [double blind, placebo controlled clinical tests] when adjudicating whether an individual or entity had a reasonable basis for making a

20

claim." This Court does not disagree. In Enforma, the defendant appealed the district court's issuance of a preliminary injunction against it, restricting the sale and marketing of its diet supplement products. Id. at 1208. The Ninth Circuit, however, was unable to make any determinations because of the insufficiency of the district court's findings of fact. Id. at 1215. It acknowledged that "[t]here are genuine disputes about the scientific requirements underlying [the defendant's] substantiation claims." Id. at 1217. It therefore remanded to the district court for "factual findings sufficient to determine the basis on which the district court rejected [the defendant's] studies." Id. Thus, the only guidance that Enforma offers is that the scientific requirements underlying substantiation claims depend on the facts of the case and the evidence presented.[6]

       Thus, in sum, Revel seeks summary judgment on the basis that the FTC cannot establish that he lacked a reasonable basis for the advertisements. However, by offering unrefuted evidence that the standard should be double-blind, placebo-controlled tests, the FTC has offered sufficient evidence to withstand summary judgment. Further, because the legal determination of the level of substantiation required will be determined by the Court based upon the evidence at trial, this Court cannot presently address whether Revel has met the standard. The Court, as the trier of fact, will determine that issue at the time of trial once the standard is determined. Revel is therefore not entitled to summary judgment on the ground that the FTC cannot prove that he lacked a reasonable basis.

---

[6] Revel also cites Litton Indus., Inc. v. FTC, 676 F.2d 364 (9th Cir. 1982). However, Litton addresses findings concerning comparison advertising of "independent microwave oven service technicians'" preferences and not the efficacy of health claims. Further, the Ninth Circuit noted that "[t]he order covered only microwave ovens." Id. at 368.

### 4. Summary judgment is not warranted on the issue of restitution

Revel argues that the FTC cannot meet its burden of demonstrating any proper restitution award against Revel regarding Lung Support Formula. This Court construes this argument as Revel seeking partial summary judgment on the issue of restitution.[7]

In support of his argument, Revel asserts that the FTC's reliance on the database from former defendant JOL is insufficient to provide a reasonable calculation of a restitution award against him. Revel relies on testimony from JOL's director of information who testified that for the period of time before 2000, there are no back-up tapes of the data; one can search the accounts payable system only back to 2000; he (JOL's director of information) cannot testify whether the information in the database is true, complete and accurate; and there were corruption problems with the database during the period of 1998-2000. Revel also asserts that there are no available financial documents that show that Admax received any payments for Lung Support Formula.

In response, the FTC contends that it is undisputed that the Gero Vita Companies had total sales of $35,786,574.73 for Lung Support Formula during the relevant period from 1998 through 2001; Revel was paid a royalty of 5% on every sale made (less refunds) of Lung Support Formula attributable to the advertisements he drafted; and Revel was paid approximately $5 million for advertising copy he wrote for the Gero Vita Companies during the relevant period from 1998 through 2001. The FTC also points out that Revel has not provided

---

[7] This argument is insufficient for Revel to seek summary judgment as to Count I because the FTC seeks not only restitution but also a finding of liability, injunctive relief, the costs of bringing this action and any other discretionary equitable relief. (See FAC at 44-45.)

22

any financial information in response to the FTC's discovery requests, and that the FTC's motion to compel production of this financial information is currently pending before Magistrate Judge Walsh.

Based on the foregoing, this Court concludes that summary adjudication on the issue of restitution is not warranted. Triable issues of fact exist regarding, at a minimum, the existence of records and the adequacy of those records.

### 5. Summary judgment is not warranted on the issue of injunctive relief

Finally, Revel seeks summary judgment on the basis that the FTC cannot meet its burden of proof to show that Revel should be subject to any injunctive relief. More specifically, he argues that he acted in good faith, and therefore there is no basis to subject him to a permanent injunction.

As the FTC cites, good faith is not a defense to relief sought under Section 13(b) for violation of Section 5 of the FTC Act. See Federal Trade Commission v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir. 1988)("An advertiser's good faith does not immunize it from responsibility for its misrepresentations."); Beneficial Corp. v. Federal Trade Commission, 542 F.2d 611, 617 (3d Cir. 1976). Instead, good faith may be offered as an affirmative defense to the granting of a permanent injunction. See FTC v. Medicor, LLC, 2001 WL 765628, **2-3 (C.D. Cal. 2001); FTC v. Hang-Ups Art Enterprises, Inc., 1995 WL 914179, *3 (C.D. Cal. 1995).

As such, in asserting the affirmative defense of "good faith," Revel bears the burden of proving said defense. Here, this Court concludes that Revel has not established he is entitled to such a determination as a matter of law. The granting of a permanent injunction requires that "there exist some cognizable danger of recurrent violation." See Hang-Ups, 1995 WL 914179 at *3 (citing

23

United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). The determination of whether the alleged violations are likely to recur requires the Court to look at: (1) the deliberateness ... of the present violation, and (2) the violator's past record." Id. (citing Sears, Roebuck & Co. v. FTC, 676 F.2d 385, 392 (9th Cir. 1982)). The FTC provides evidence that Revel was aware of, and knew or should have known, the appropriate standard for making the kinds of claims at issue in the Complaint. More specifically, Revel had prior experience with the FTC through a Stipulated Final Judgment and Order signed by him in FTC v. LaserVision, Inc., 94-CV-1961 WJT (C.D. Cal. March 23, 1994). Among other things, this Order put Revel on notice that it was a violation to "misrepresent[], in any manner, directly or by implication, the existence, contents, validity, results, conclusions or interpretations of any test or study." (Koehler Decl., Exh. 12 at 8.) Thus, Revel is not entitled to summary adjudication with respect to injunctive relief.

### III. CONCLUSION

Accordingly, this Court **DENIES** Defendant Chase Revel's Motion for Summary Judgment or Partial Summary Judgment.

IT IS SO ORDERED.

DATED: 9/26/05

**DICKRAN TEVRIZIAN**

Dickran Tevrizian, Judge
United States District Court