FILED ENTERED    RECEIVED SERVED ON
COUNSEL/PARTIES OF RECORD

2003 JUN 30 P 2: 30

**JUL - 1 2003**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

1  DAVID P. FRANKEL
   EDWARD GLENNON
2  KIAL YOUNG
   Attorneys for Plaintiff,
3  FEDERAL TRADE COMMISSION
   601 New Jersey Ave., N.W.
4  Mail Drop NJ-3212
   Washington, D.C. 20580
5  Tel: (202) 326-3126/3525/2812
   Fax: (202) 326-3259
6
   **LOCAL COUNSEL:**
7  DANIEL G. BOGDEN
   United States Attorney
8  District of Nevada
   By: BLAINE WELSH
9  Nevada Bar # 4790
   Assistant U.S. Attorney
10 333 Las Vegas Boulevard, South, Suite 5000
   Las Vegas, Nevada 89101
11 Tel: (702) 388-6534
   Fax: (702) 388-6787
12

13                UNITED STATES DISTRICT COURT
14                   DISTRICT OF NEVADA

15  _____
    FEDERAL TRADE COMMISSION,            )
16                                       )
                                         )
17            Plaintiff,                 )
                                         )
18        v.                             )   Docket No. CV-S-02-0649-PMP (RJJ)
                                         )
19  HUDSON BERKLEY CORPORATION, d/b/a    )
        HUDSON BERKELEY, INC.,           )
20  MATTHIAS GRANIC,                     )
    BISMARCK LABS CORPORATION, d/b/a     )
21      BLC BISMARCK LABS CORPORATION,   )
    TMI TRICOM MARKETING, INC.,          )
22  CCI CAD CAM INDUSTRIES LTD., INC.,   )
    BERND EBERT, and                     )
23  OLIVER BRAUN,                        )
                                         )
24            Defendants.                )
                                         )
25  _____
         [~~PROPOSED~~] JUDGMENT AND ORDER FOR
26   PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

116

**AGAINST DEFENDANTS HUDSON BERKLEY CORPORATION,
MATTHIAS GRANIC, BISMARCK LABS CORPORATION,
TMI TRICOM MARKETING, INC., AND BERND EBERT
AS TO COUNTS ONE THROUGH SIX OF
PLAINTIFF'S FIRST AMENDED COMPLAINT**

WHEREAS, plaintiff Federal Trade Commission ("Commission") commenced this action on May 7, 2002, by filing a complaint for a permanent injunction and other equitable relief in this matter against defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Matthias Granic, Bismarck Labs Corporation, d/b/a BLC Bismarck Labs Corporation, TMI Tricom Marketing, Inc., CCI Cad Cam Industries Ltd., Inc., and Bernd Ebert, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b);

WHEREAS, on November 6, 2002, the Commission filed a First Amended Complaint that named as additional defendant Oliver Braun;

WHEREAS, the First Amended Complaint alleges that defendants have engaged in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. § 45(a) and 52, and the Mail or Telephone Merchandise Order Rule, 16 C.F.R. § 435.1.;

WHEREAS, the Commission has moved for summary judgment as to defendants Hudson Berkley Corporation, Matthias Granic, Bismarck Labs Corporation, TMI Tricom Marketing, Inc., and Bernd Ebert ("Defendants") as to Counts One through Six of the First Amended Complaint;

THEREFORE, the Court, being advised in the premises, now finds:

## FINDINGS

1.       This is an action by the Commission instituted under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). The First Amended Complaint alleges that defendants have engaged in unfair or deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. § 45(a) and 52, and in violation of the Mail or Telephone Merchandise Order Rule, 16 C.F.R. § 435.1, in connection with the advertising, marketing, and sale of the AbTronic

1  Electronic Fitness System (the "AbTronic"). The First Amended Complaint seeks both permanent

2  injunctive relief, monetary relief in the form of consumer redress and/or disgorgement, and other

3  equitable relief.

4      2.    This Court has jurisdiction over the subject matter of this case and over the

5  Commission and Defendants, and venue in the District of Nevada is proper.

6      3.    The Commission's First Amended Complaint states claims upon which relief may be

7  granted against Defendants.

8      4.    The Commission has the authority under Section 13(b) of the FTC Act to seek the

9  relief it has requested.

10     5.    The acts and practices of Defendants as alleged in the First Amended Complaint

11 were and are "in or affecting commerce," as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

12     6.    Entry of this Order is in the public interest.

13     7.    Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are

14 binding upon Defendants, and their officers, agents, servants, representatives, employees, and all

15 other persons or entities in active concert or participation with them, who receive actual notice of

16 this Order by personal service or otherwise.

17

18                                    **DEFINITIONS**

19     For the purposes of this Order, the following definitions shall apply:

20     1.    "AbTronic" means the AbTronic electronic muscle stimulation device challenged in

21 the First Amended Complaint and any related accessories or supplies.

22     2.    "Assets" means any legal or equitable interest in, right to, or claim to, any real or

23 personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures,

24 general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits,

25 contracts, receivables, shares of stock, and all cash, wherever located.

26     3.    "Assisting others" means knowingly providing any of the following services to any

1   person or entity: (a) performing customer service functions for any person or entity, including, but

2   not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or

3   arranging for the formulation or provision of, any telephone sales script or any other advertising or

4   marketing material for any person or entity; or (c) performing advertising or marketing services of

5   any kind for any person or entity.

6       4.   "Clearly and prominently" means as follows:

7           A.   In an advertisement communicated through an electronic medium (such as

8                television, video, radio, and interactive media such as the Internet, online

9                services and software), the disclosure must be presented simultaneously in

10                both the audio and visual portions of the advertisement. *Provided, however,*

11                that in any advertisement presented solely through visual or audio means, the

12                disclosure may be made through the same means in which the ad is

13                presented. *Provided further,* that in any advertisement communicated

14                through interactive media that is presented predominantly through visual or

15                audio means, the disclosure may be made through the same means in which

16                the ad is predominantly presented. The audio disclosure must be delivered in

17                a volume and cadence sufficient for an ordinary consumer to hear and

18                comprehend it. The visual disclosure must be of a size and shade, with a

19                degree of contrast to the background against which it appears, and must

20                appear on the screen for a duration and in a location, sufficiently noticeable

21                for an ordinary consumer to read and comprehend it.

22           B.   In a print advertisement, promotional material, or instructional manual, the

23                disclosure must be in a type size and location sufficiently noticeable for an

24                ordinary consumer to read and comprehend it, in print that contrasts with the

25                background against which it appears.

26           C.   On a product label, the disclosure must be in a type size and location

1   sufficiently noticeable for an ordinary consumer to read and comprehend it

2   and in print that contrasts with the background against which it appears.

3   *Provided, however,* if a disclosure on a bottle label or package label is made

4   in a location other than the principal display panel, the bottle label or

5   package label must (i) include the statement, "**See important safety**

6   **warning(s) on [insert disclosure location],**" in a type size and location on

7   the principal display panel sufficiently noticeable for an ordinary consumer

8   to read and comprehend it and in print that contrasts with the background

9   against which it appears; *and* (ii) place the disclosure on the bottle label and,

10  if applicable, the package label, within a border that is a color or shade that

11  contrasts with the background against which it appears. *Provided further,*

12  that in a multi-page insert, the disclosure must appear on the cover page or

13  first page.

14  D.  The disclosure must be in understandable language and syntax. Nothing

15      contrary to, inconsistent with, or in mitigation of the disclosure can be used

16      in any advertisement or on any label.

17  E.  In the case of advertisements disseminated by means of an interactive

18      electronic medium, such as software, the Internet, or online services, "in

19      close proximity" means on the same Web page, online service page, or other

20      electronic page, and proximate to the triggering representation, and does not

21      include disclosures accessed or displayed through hyperlinks, pop-ups,

22      interstitials or other means.

23  5.  "Competent and reliable scientific evidence" means tests, analyses, research,

24  studies, or other evidence based on the expertise of professionals in the relevant area, that has been

25  conducted and evaluated in an objective manner by persons qualified to do so, using procedures

26  generally accepted in the profession to yield accurate and reliable results.

6. "Defendants" means Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Matthias Granic, Bismarck Labs Corporation, d/b/a BLC Bismarck Labs Corporation, TMI Tricom Marketing, Inc., and Bernd Ebert.

7. "EMS device" means an electrically powered device that repeatedly contracts muscles by passing electrical currents through electrodes contacting the affected body area.

8. "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

9. "Food," "Drug," "Device," and "Cosmetic" mean as defined by Section 15 of the FTC Act, 15 U.S.C. § 55.

10. "FTC" or "Commission" means the Federal Trade Commission.

11. A requirement that any defendant "notify," "furnish," "submit to," or "provide to" the Commission means that the defendant must send the necessary information via first-class mail, costs pre-paid, to: Associate Director for Advertising Practices, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C., 20580, Attn: FTC v. Hudson Berkley Corp. (D. Nev.)

12. The term "including" in this Order shall mean "without limitation."

13. The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively as necessary, to make the applicable phrase or sentence inclusive rather than exclusive.

## PROHIBITED REPRESENTATIONS

### I.

THEREFORE, IT IS HEREBY ORDERED that Defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Matthias Granic, Bismarck Labs Corporation, d/b/a BLC Bismarck Labs Corporation, TMI Tricom Marketing, Inc., and Bernd Ebert ("Defendants"), directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation

1  with them who receive actual notice of this Order by personal service or otherwise, in connection
2  with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of
3  the AbTronic or any substantially similar device, in or affecting commerce, are hereby permanently
4  restrained and enjoined from representing, in any manner, expressly or by implication, including
5  through the use of endorsements, that:

6      A.    any such device causes or promotes loss of inches, fat, or cellulite;

7      B.    any such device causes or promotes muscle growth or hypertrophy;

8      C.    any such device causes or promotes well-defined abdominal muscles, including
9          through the use of terms such as "six-pack abs, " "washboard abs," and/or any other
10         terms with substantially similar meaning;

11     D.    use of any such device for any period of time is equivalent to or superior to
12         abdominal exercises such as sit-ups, crunches, or any substantially similar exercises;

13     E.    use of any such device for any period of time is equivalent or superior to thigh
14         exercises such as squats, leg lifts, or any substantially similar exercises;

15     F.    any such device makes a material contribution to any system, program, or plan that
16         produces the results referenced in Subparts I.A through I.E;

17     G.    the scientific study authored by G. Alon *et al.* and entitled *Comparison of the Effects*
18         *of Electrical Stimulation and Exercise on Abdominal Musculature*, 8 J. ORTHOP.
19         SPORTS PHYSICAL THERAPY 567 (1987), proves that use of any such device
20         increases abdominal strength better than exercise alone; or

21     H.    any such device is safe for use over the chest and/or pectoral area.
22
23                               **II.**

24     **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,
25 partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,
26 employees, and all persons and entities in active concert or participation with them who receive

1  actual notice of this Order by personal service or otherwise, in connection with the manufacturing,

2  labeling, advertising, promotion, offering for sale, sale, or distribution of any EMS device not

3  covered by Part 1 of this Order, in or affecting commerce, are hereby permanently restrained and

4  enjoined from misrepresenting, in any manner, expressly or by implication, including through the

5  use of endorsements, that:

6      A.    any such device causes or promotes loss of inches, fat, weight, or cellulite;

7      B.    any such device causes or promotes well-defined abdominal muscles, including

8            through the use of terms such as "rock-hard abs," "six-pack abs, " "washboard abs,"

9            "ripped abs," "chiseled abs," "cut abs," "well-developed abs," and/or any other

10           terms with substantially similar meaning;

11     C.    any such device makes a material contribution to any system, program, or plan that

12           produces the results referenced in Subparts II.A through II.B; or

13     D.    any such device is safe for use over the chest and/or pectoral area.

14

15  **III.**

16  **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,

17  partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,

18  employees, and all persons and entities in active concert or participation with them who receive

19  actual notice of this Order by personal service or otherwise, in connection with the manufacturing,

20  labeling, advertising, promotion, offering for sale, sale, or distribution of any food, drug, device,

21  cosmetic, or dietary supplement, in or affecting commerce, are hereby permanently restrained and

22  enjoined from making any representation, in any manner, expressly or by implication, including

23  through the use of endorsements, about the performance, efficacy, or safety of such food, drug,

24  device, cosmetic, or dietary supplement, unless the representation is true, non-misleading, and, at

25  the time it is made, Defendants possess and rely upon competent and reliable scientific evidence

26  that substantiates the representation.

**IV.**

1
2    **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,
3    partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,
4    employees, and all persons and entities in active concert or participation with them who receive
5    actual notice of this Order by personal service or otherwise, in connection with the manufacturing,
6    labeling, advertising, promotion, offering for sale, sale, or distribution of the AbTronic or any other
7    EMS device, or any food, drug, device, cosmetic, or dietary supplement, in or affecting commerce,
8    are hereby permanently restrained and enjoined from misrepresenting, in any manner, expressly or
9    by implication, including through the use of endorsements, the contents, validity, results,
10    conclusions, or interpretations of any test or study.

11

12                   **REQUIRED DISCLOSURES**

13                          **V.**

14    **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,
15    partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,
16    employees, and all persons and entities in active concert or participation with them who receive
17    actual notice of this Order by personal service or otherwise, in connection with the manufacturing,
18    labeling, advertising, promotion, offering for sale, sale, or distribution of the AbTronic or any other
19    EMS device, in or affecting commerce, must disclose, clearly and prominently:

20    A.    (1) in any external packaging or labeling; and (2) in close proximity to any safety
21            representation about the EMS device in any advertisement (other than television or
22            radio advertisements), promotional material, or telephone, or electronic
23            communication; the following:

24                **WARNING**: This product uses electrical muscle stimulation. Do not
                    use this device if you have a cardiac pacemaker, implanted
25                defibrillator, or other implanted metallic or electronic device. This
                    device could cause lethal rhythm disturbances to the heart in
26                susceptible individuals.  Apply stimulation only to normal, intact,

1
2
3

> clean skin. Do not apply stimulation over open wounds or over swollen, infected, or inflamed areas or skin eruptions, *e.g.*, phlebitis, thrombophlebitis, varicose veins, etc. Do not apply stimulation over, or in close proximity to, cancerous lesions. The safety of electrical stimulation during pregnancy has not been established.

4  unless, at the time the representation is made, Defendants possess and rely upon

5  competent and reliable scientific evidence that such device is safe for all users and

6  produces no adverse side effects.

7  *Provided, however,* that, if Defendants possess competent and reliable scientific

8  evidence that the EMS device is safe for users with a particular condition,

9  Defendants may remove that particular condition from the disclosure required by

10  this Order. *Provided further,* that if Defendants have reason to believe other uses of

11  the EMS device or health conditions may pose health risks, those uses or conditions

12  may be added to the warning.

13  *Provided further,* that in the event the U.S. Food and Drug Administration ("FDA")

14  issues a final rule for EMS devices that requires a labeling disclosure regarding

15  contraindications or health risks, Defendants must substitute that labeling disclosure

16  for the disclosure required in this Sub-Part A. Similarly, in the event the FDA clears

17  or approves the language of a labeling disclosure regarding contraindications or

18  health risks for an EMS device submitted by Defendants to FDA for premarket

19  approval, Defendants must modify the disclosure required in this Sub-Part A to

20  conform to that language.

21  B.  in close proximity to any safety representation about the EMS device in any

22  television or radio advertisement, the following:

23
24
25

> **WARNING:** This product uses electronic muscle stimulation and is not safe for all users, particularly those with implanted metallic or electronic devices. Review the health and safety warnings on our website, [domain name of website], or call us toll-free at [toll-free telephone number], before buying this product.

26  unless, at the time the representation is made, Defendants possess and rely upon

Page 10 of 21

competent and reliable scientific evidence that the EMS device is safe for all users and produces no adverse side effects.

*Provided that* for a period of time beginning with the date of the first broadcast of any such television or radio advertisement for any EMS device that contains a safety representation about the device and ending no sooner than thirty days after the last broadcast, Defendants must maintain both a toll-free telephone number consumers can call to obtain the warning set forth in Subpart V.A, above, and a website that clearly and prominently sets forth the full text of such warning on the home page or teaser page of the website, i.e., the first page that appears when the consumer visits the website.

## MONETARY JUDGMENT AND CONSUMER REDRESS

### VI.

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered in favor of the Commission and against Defendants, jointly and severally, in the amount of Eighty-three million, seven hundred fifty-four thousand, six hundred sixty-nine dollars ($83,754,669), with post-judgment interest at the legal rate, for consumer redress.

B.    All payments shall be made by certified check or other guaranteed funds payable to and delivered to the Commission, or by wire transfer in accord with instructions provided by the Commission.

C.    All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply

1    any remaining funds for such other equitable relief (including consumer information
2    remedies) as it determines to be reasonably related to Defendants' practices alleged
3    in the First Amended Complaint. Any funds not used for such equitable relief shall
4    be deposited to the United States Treasury as disgorgement. Defendants shall have
5    no right to challenge the Commission's choice of remedies under this Paragraph.
6    Defendants shall have no right to contest the manner of distribution chosen by the
7    Commission.

8    D.    In accordance with 31 U.S.C. § 7701, Defendants are hereby required to furnish to
9    the Commission their respective taxpayer identifying numbers (social security
10    numbers or employer identification numbers) which shall be used for the purposes
11    of collecting and reporting on any delinquent amount arising out of Defendants'
12    relationship with the government.

## ASSET REPATRIATION

### VII.

IT IS FURTHER ORDERED that, in order partially to satisfy the monetary judgment set forth in Paragraph VI above, each of the Defendants shall provide an accounting of, and repatriate and turn over to the Commission, within ten (10) business days following the entry of this Order, all assets in foreign countries held, jointly or singly, (a) by any of the Defendants, (b) for the benefit of any of the Defendants, or (c) under the direct or indirect control of any of the Defendants.

## NOTICE OF ORDER BY DEFENDANTS

### VIII.

IT IS FURTHER ORDERED that within five (5) business days of receipt of this Order as entered by the Court, Defendants shall serve a copy of this Order on all entities, including financial institutions, suppliers, distributors, and manufacturers that hold or have held assets derived from

the manufacture or sale of the AbTronic.

## DUTIES OF THIRD PARTIES

### IX.

**IT IS FURTHER ORDERED** that, in order partially to satisfy the monetary judgment set forth in Paragraph VI above, any law firm, financial or brokerage institution, escrow agent, title company, commodity trading company, supplier, distributor, manufacturer, business entity, or person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any of the Defendants, shall turn over such account or asset to the Commission within ten (10) business days of receiving notice of this Order by any means, including by not limited to via facsimile.

## COMPLIANCE MONITORING

### X.

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A.    Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control to inspect the business operation;

B.    In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.    obtaining discovery from any person, without further leave of court, using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.      posing as consumers and suppliers to: Defendants, their employees, or any
other entity managed or controlled in whole or in part by any of the
Defendants, without the necessity of identification or prior notice;

Provided that nothing in this Order shall limit the Commission's lawful use of
compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49,
57b-1, to obtain any documentary material, tangible things, testimony, or
information relevant to unfair or deceptive acts or practices in or affecting
commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

C.      Defendants shall permit representatives of the Commission to interview any
employer, consultant, independent contractor, representative, agent, or employee
who has agreed to such an interview, relating in any way to any conduct subject to
this Order.  The person interviewed may have counsel present.

## COMPLIANCE REPORTING

### XI.

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this
Order may be monitored:

A.      For a period of ten (10) years from the date of entry of this Order,

1.      Defendants Granic and Ebert shall notify the Commission of the following:

(a)     Any changes in the Defendant's residence, mailing addresses, and
telephone numbers, within ten (10) days of the date of such change;

(b)     Any changes in the Defendant's employment status (including self-
employment) within ten (10) days of the date of such change.  Such notice shall
include the name and address of each business that the Defendant is affiliated with,
employed by, or performs services for; a statement of the nature of the business; and
a statement of the Defendant's duties and responsibilities in connection with the

Page 14 of 21

business;

      (c)    Any changes in the Defendant's name or use of any aliases or fictitious names; and

    2.    Defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Bismarck Labs Corporation, d/b/a BLC Bismarck Labs Corporation, and TMI Tricom Marketing, Inc., shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which the Defendant learns less than thirty (30) days prior to the date such action is to take place, the Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.    One hundred eighty (180) days after the date of entry of this Order, Defendants each shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

    1.    Any changes required to be reported pursuant to subparagraph (A) above;

    2.    A copy of each acknowledgment of receipt of this Order obtained by each of the Defendants pursuant to Paragraph XIV.

C.    For purposes of the compliance reporting required by this Paragraph, the Commission is authorized to communicate directly with Defendants.

## RECORD KEEPING PROVISIONS

### XII.

IT IS FURTHER ORDERED that, for a period of ten (10) years from the date of entry of this Order, Defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Bismarck Labs Corporation, d/b/a BLC Bismarck Labs Corporation, and TMI Tricom Marketing, Inc., if engaging or assisting others engaged in the advertising, marketing, promotion, offering for sale, distribution or sale of any food, drug, device, cosmetic, or dietary supplement, and any business where (1) Defendants Granic or Ebert is the majority owner or an officer or director of the business, or directly or indirectly manages or controls the business and where (2) the business engages, or assists others engaged in, the advertising, marketing, promotion, offering for sale, distribution or sale of any food, drug, device, cosmetic, or dietary supplement, and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

    A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

    B.    Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

    C.    Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

    D.    Complaints and refund requests (whether received directly, indirectly or through any

1    third party), and any response to those complaints or requests; and

2    E.    Copies of all sales scripts, training materials, advertisements, or other marketing

3    materials.

4

5    **DISTRIBUTION OF ORDER BY DEFENDANTS**

6    **XIII.**

7    **IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of

8    this Order,

9    A.    Defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Bismarck

10    Labs Corporation, d/b/a BLC Bismarck Labs Corporation, and TMI Tricom

11    Marketing, Inc., shall deliver a copy of this Order to all principals, officers,

12    directors, managers, employees, agents, and representatives having responsibilities

13    with respect to the subject matter of this Order, and shall secure from each such

14    person a signed and dated statement acknowledging receipt of the Order.

15    Defendants Hudson Berkley Corporation, d/b/a Hudson Berkeley, Inc., Bismarck

16    Labs Corporation, d/b/a BLC Bismarck Labs Corporation, and TMI Tricom

17    Marketing, Inc., shall deliver this Order to current personnel within thirty (30) days

18    after the date of service of this Order, and to new personnel within thirty (30) days

19    after the person assumes such position or responsibilities.

20    B.    Defendants Granic and Ebert shall deliver a copy of this Order to the principals,

21    officers, directors, managers and employees under Defendant Granic's and/or

22    Ebert's control for any business that (a) employs or contracts for personal services

23    from Defendant Granic and/or Ebert and (b) has responsibilities with respect to the

24    subject matter of this Order. Defendants Granic and Ebert shall secure from each

25    such person a signed and dated statement acknowledging receipt of the Order within

26    thirty (30) days after the date of service of the Order or the commencement of the

1      employment relationship.

2

3          **ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT**

4                           **XIV.**

5      **IT IS FURTHER ORDERED** that each of the Defendants, within five (5) business days of

6 receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn

7 statement acknowledging receipt of this Order.

8

9                 **SERVICE OF ORDER BY THE COMMISSION**

10                         **XV.**

11      **IT IS FURTHER ORDERED** that copies of this Order and the initial pleadings and papers

12 filed in this matter may be served by employees or agents of the Commission, including without

13 limitation private process servers, and by employees or agents of any other law enforcement

14 agency, upon Defendants, any agent or employee of the Defendants, or any other person,

15 partnership, corporation, or other entity that may be in possession of any records, assets, property,

16 or property right of the Defendants, or that may be subject to any provision of this Order.

17

18                         **SCOPE OF ORDER**

19                         **XVI.**

20      **IT IS FURTHER ORDERED** that this Order resolves only claims against Defendants as

21 alleged in the First Amended Complaint. This Order does not preclude the Commission from

22 initiating further action or seeking any remedy against any other persons or entities, including

23 without limitation persons or entities who may be subject to portions of this Order by virtue of

24 actions taken in concert or participation with any of the Defendants, and persons or entities in any

25 type of indemnification or contractual relationship with any of the Defendants; nor does this Order

26 preclude the Commission from continuing to pursue its claims against defendants CCI Cad Cam

1 | Industries Ltd., Inc. and Oliver Braun.

2

## RETENTION OF JURISDICTION

### XVII.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

IT IS SO ORDERED:

UNITED STATES DISTRICT JUDGE

Date: 6-30-07

Presented by:

DAVID P. FRANKEL
EDWARD GLENNON
KIAL YOUNG
Federal Trade Commission
601 New Jersey Ave., N.W.
Mail Drop NJ-3212
Washington, D.C. 20580
Tel: (202) 326-3126/3525/2812
Fax: (202) 326-3259

Attorneys for Plaintiff

DANIEL G. BOGDEN
United States Attorney
District of Nevada
By: BLAINE WELSH
Nevada Bar # 4790
Assistant U.S. Attorney
333 Las Vegas Boulevard, South, Suite 5000
Las Vegas, Nevada 89101

Tel: (702) 388-6534
Fax: (702) 388-6787

1   DAVID P. FRANKEL
    EDWARD GLENNON
2   KIAL YOUNG
    Attorneys for Plaintiff,
3   FEDERAL TRADE COMMISSION
    601 New Jersey Ave., N.W.
4   Mail Drop NJ-3212
    Washington, D.C. 20580
5   Tel: (202) 326-3126/3525/2812
    Fax: (202) 326-3259
6
    **LOCAL COUNSEL:**
7   DANIEL G. BOGDEN
    United States Attorney
8   District of Nevada
    By: BLAINE WELSH
9   Nevada Bar # 4790
    Assistant U.S. Attorney
10  333 Las Vegas Boulevard, South, Suite 5000
    Las Vegas, Nevada 89101
11  Tel: (702) 388-6534
    Fax: (702) 388-6787
12

13
                UNITED STATES DISTRICT COURT
14                  DISTRICT OF NEVADA

15  _____
                                    )
16  FEDERAL TRADE COMMISSION,       )
                                    )
17                                  )
                Plaintiff,          )
18                                  )
        v.                          )   Docket No. CV-S-02-0649-PMP (RJJ)
19                                  )
    HUDSON BERKLEY CORPORATION, d/b/a )
20      HUDSON BERKELEY, INC.,      )
    MATTHIAS GRANIC,                )
21  BISMARCK LABS CORPORATION, d/b/a )
        BLC BISMARCK LABS CORPORATION, )
22  TMI TRICOM MARKETING, INC.,     )
    CCI CAD CAM INDUSTRIES LTD., INC., )
23  BERND EBERT, and                )
    OLIVER BRAUN,                   )
24                                  )
                Defendants.         )
25  _____)

26  **AFFIDAVIT OF DEFENDANT** _____

                    Page 20 of 21

[*Name of defendant*], being duly sworn, hereby states and affirms as follows:

    1.    My name is_____. My current residence address is

_____. I am a citizen of the United

States and am over the age of eighteen. I have personal knowledge of the facts set forth in this

Affidavit.

    2.    I am a defendant in <u>FTC v. Hudson Berkley Corp., et al.</u> (United States District

Court for the District of Nevada).

    3.    On [*date*], I received a copy of the [*state full name of the Order as it appears on the*

*Order itself*], which was signed by the Honorable [*name of U.S. District Judge*] and entered by the

Court on [*date of entry of Order*]. A true and correct copy of the Order I received is appended to

this Affidavit.

    I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct. Executed on [*date*], at [*city and state*].


_____

[*Full name of defendant*]

State of _____, City of _____

Subscribed and sworn to before me
this _____ day of _____, 2003___.


_____
Notary Public
My Commission Expires:

_____

Page 21 of 21