## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRECT MARKETING CONCEPTS, INC., et al., )<br><br>Defendants. ) | CIVIL ACTION NO. 04-CV-11136-GAO |

### DMC DEFENDANTS' OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION TO STRIKE AFFIDAVITS SUBMITTED BY DMC DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV"), Donald Barrett and Robert Maihos (collectively, the "DMC Defendants") hereby oppose the Federal Trade Commission's ("FTC") Motion to Strike Affidavits Submitted by Defendants in Support of Their Oppositions to Plaintiff's Motion for Summary Judgment.

The FTC seeks to strike the affidavits of Andrew Aldrich and Jason Bernabei in their entirety, as well as portions of the affidavits of Donald Barrett, Wayne Callahan, Simon Mena and Eileen Barrett Maihos, on the basis that they contain inadmissible hearsay and conclusory legal opinions, or that the affiant does not have the requisite personal knowledge to proffer the statement. As set forth below, the affidavits submitted by the DMC Defendants in opposition to the FTC's motion for summary judgment conform to Fed. R. Civ. P. 56(e), as it is clear from their face that they are made upon the personal knowledge of each affiant and do not contain hearsay or otherwise inadmissible statements. These affidavits, which must be construed in the light most favorable to the DMC Defendants and treated with more indulgence than those of the moving party, establish that numerous issues of disputed fact exist that preclude the entry of

summary judgment in favor of the FTC in this case.  See 6 Moore's Federal Practice ¶ 56.22 at 1333-34 (affidavits filed by party opposing summary judgment may be treated with more indulgence than those of the moving party).  The FTC's attempt to avoid these obvious and material disputed facts by seeking to strike portions of the affidavits submitted by the DMC Defendants is without any merit, and its motion to strike must be denied.  The appropriate forum for the resolution of the FTC's claims is not summary judgment, but trial.

## ARGUMENT

To be considered on a motion for summary judgment, an affidavit must be based upon personal knowledge, must set forth facts that would be admissible at the time of trial, and must establish the affiant's competence to testify.  Fed. R. Civ. P. 56(e).  It is well settled that an affidavit is not defective because it does not affirmatively state that it is based on personal knowledge and that the affiant is competent to testify as to the matters stated therein.  Rather, the personal knowledge and competence of the affiant may be inferred from the affiant's position and the nature of his participation in the matters to which he attests.  See, e.g., Ondis v. Barrows, 538 F.2d 904, 907 (1st Cir. 1976); DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 135 n. 9 (4th Cir. 2002); Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990).

Further, "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'"  J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3rd Cir. 1990) (citing Williams v. Borough of West Chester, 891 F.2d 458 (3rd Cir. 1989)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (Supreme Court rejected the view that the non-moving party must produce evidence in a form that would be admissible at

trial in order to avoid summary judgment.); <u>H. Sand & Co. v. Airtemp Corp.</u>, 934 F.2d 450, 454-55 (2d Cir. 1991) ("The Rule 56(e) requirement means only that "'[h]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.'").

As set forth below, all of the FTC's objections to the affidavits submitted by the DMC Defendants are without merit and its motion to strike must be denied in its entirety.

**A.**    <u>**The Affidavits Submitted By The DMC Defendants Satisfy Fed. Rule Civ. P. 56(e)**</u>

      **1.**    <u>**The FTC's Objections To The Affidavit Of Andrew Aldrich Are Without Merit**</u>.

The FTC moves to strike the Affidavit of Andrew Aldrich ("Aldrich Affidavit") because it does not contain an express statement that it is made upon personal knowledge.  Fed. R. Civ. P. 56(e), however, does not require such an express statement in order to establish personal knowledge.  <u>Bryant</u>, 288 F.3d at 135 n. 9 (Court squarely rejected the argument that affidavits are defective because they do not state they are made on personal knowledge and do not affirmatively state that affiants are competent to testify to matters stated therein.).  Rather, as set forth above, the personal knowledge of an affiant can be inferred from the affidavit itself, such as when the testimony concerns actions taken or statements made by the affiant.  In addition, personal knowledge can be inferred where it was reasonably within affiant's position to be familiar with the matters stated in the affidavit, or based on the affiant's participation in the matters to which he attests.  <u>Ondis</u>, 538 F.2d at 907 n. 3 (finding personal knowledge requirement met based on the affiant's position in the company); <u>DIRECTV, Inc.</u>, 420 F.3d at 530 (personal knowledge requirement met where it was reasonably within affiant's position and sphere of responsibility to be familiar with matters described in affidavit); <u>Barthelemy</u>, 897 F.2d at 1018 (affiants' personal knowledge and competence could be inferred from their positions

with the company and their involvement in the matters to which they swore); see also Teragram Corp. v. Marketwatch.com, Inc., 2004 WL 3086883, *13 (D. Mass, December 29, 2004) (personal knowledge of affiant can be implied for testimony regarding actions taken or statements made by the affiant.).

Here, Aldrich testifies as to his position as a scientific advisor at DMC, his educational background, and the actions that he took to search certain databases for studies and materials regarding the health benefits of Supreme Greens and coral calcium.  (Aldrich Aff., ¶¶ 1-7.) According to his affidavit, Aldrich compiled materials that were available in the public domain regarding the general benefits of coral calcium and Supreme Greens, and explains the search that he undertook and the documents he retrieved.  (Id., ¶¶5-11.)  Clearly, Aldrich has the requisite personal knowledge to testify as to his own actions and the FTC's objection to the Aldrich Affidavit is without merit.  In the exercise of caution, however, the DMC Defendants are submitting herewith an Amended Affidavit of Andrew Aldrich, which has been amended solely to include the statement that the affidavit is made upon Aldrich's "personal knowledge" of the facts stated therein.[1]

A.    **Paragraphs 5-11, Exhibit 1**.

The FTC moves to strike paragraphs 5-11 of the Aldrich Affidavit, which describe the search Aldrich undertook and the documents that he retrieved as a result of that search, as well as Appendix A and Exhibit 1 to the Aldrich Affidavit, which are the documents that Aldrich retrieved, based on hearsay grounds.  Hearsay is defined as an oral or written assertion, other than one made by the declarant, offered to prove the truth of the matter asserted therein.  Fed. R.

---

[1] Due to the voluminous nature of Appendix A and Exhibit 1 to the Aldrich Affidavit, they are not being re-submitted by the DMC Defendants.  The DMC Defendants refer the Court to Appendix A and Exhibit 1 of the Aldrich Affidavit and incorporate them into the Amended Aldrich Affidavit.

Evid. 801.  A statement is not hearsay if it is offered to prove something other than the truth of the statement.  Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 225 (D. Mass. 1990); see also Best v. Rome, 858 F. Supp. 271, 277 (D. Mass. 1994) (statement not hearsay if offered to prove affiant's state of mind); Doe v. D'Agostino, 367 F. Supp. 2d 157, 165 (D. Mass. 2005) (affiant's statements concerning witness' knowledge may be considered where they are not offered to prove the truth of the matter asserted).  Paragraphs 5 through 11 of the Aldrich Affidavit are not hearsay, as Aldrich can certainly testify as to the search he was asked to undertake and his own actions in utilizing document retrieval services, and he can describe the results of the search he undertook.  In addition, the materials attached as Exhibit 1 to the Aldrich Affidavit are not hearsay, as they are not being offered for the truth of the matters asserted therein regarding the beneficial effects of coral calcium and Supreme Greens.  Rather, the materials are being offered for the purpose of showing that these studies and documents concerning the benefits of coral calcium and Supreme Greens exist in the public domain and are retrievable by using standard document retrieval services.

In this case, the FTC has the burden of proving that the infomercials produced by the DMC Defendants for coral calcium and Supreme Greens were actually misleading to consumers, based upon the statements made in the infomercials and the available research in the public domain concerning the ingredients of the products advertised.  In order to meet that burden, the FTC submitted affidavits and reports of purported expert witnesses, who testified to their opinion that no competent and reliable scientific evidence or literature exists concerning the health benefits of the ingredients of coral calcium or Supreme Greens.  For example, Barrie R. Cassileth testified that his assistant conducted a search of particular databases, and based on this search, he concluded that there is no reliable scientific evidence regarding the health benefits of Supreme

Greens.  (See FTC's Exhibit 27.)  The DMC Defendants are submitting the documents set forth in Exhibit 1, which Aldrich testified were true and accurate results of his search, to dispute the statements by the FTC's expert that no substantiation exists to support the health benefits of the ingredients of the product.  For this non-hearsay purpose, the documents are undoubtedly admissible.  See Young v. I.N.S., 355 F.3d 27, 32 (1st Cir. 2004) (asylum application admitted for non-hearsay use of contradicting statement that plaintiff never sought asylum).  As such, Exhibit 1 to the Aldrich Affidavit is not hearsay and is admissible.

Next, the FTC seeks to strike Exhibit 1 by asserting that the DMC Defendants failed to produce these materials in response to discovery requests concerning the steps that the DMC Defendants took to evaluate and substantiate the accuracy of the claims made in the infomercials before the infomercials were disseminated.  As Aldrich makes clear in his affidavit, he undertook his search and discovered these documents after the infomercials had aired.  Aldrich testified that he was not employed by DMC at the time of the airing of the infomercials, but compiled these materials after the advertising was removed from the air in order to rebut the FTC's expert's present contention that no such evidence did exist at the time or exists now to support the statements in the advertising.  (Aldrich Aff., ¶¶ 4-6).  Thus, these documents are not the subject of any of the FTC's discovery requests, which only sought previously obtained information, and there is no merit to the FTC's assertion that the DMC Defendants somehow violated a rule of discovery in submitting these studies in opposition to their motion for summary judgment.  Accordingly, the FTC's request to strike paragraphs 5-11 and Appendix A and Exhibit 1 to the Aldrich Affidavit must be denied.

**B-C.    Paragraphs 12 - 13.**

The FTC also seeks to strike paragraphs 12 and 13 of the Aldrich Affidavit, arguing that the statements are inadmissible opinions by a lay witness, and that Aldrich does not have personal knowledge to make the statements. First, Aldrich is merely testifying as to his observation about the number of documents that he retrieved in his search, which are attached to his affidavit as Exhibit 1. He is also testifying that, based on the fact that he retrieved these documents on a search of the PubMed database, and the fact that Dr. Cassileth did not find these documents, it appears that Dr. Cassileth did not search the PubMed database, despite making the sweeping statement that no competent and reliable scientific evidence exists concerning the ingredients in Supreme Greens. A witness may testify as to his own inferences and observations, and may offer opinion testimony that is rationally based on his own perceptions. See Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998) (court noted that affidavits may include inferences, but those inferences must be substantiated by specific facts); Davis v. Valley Hospitality Services, LLC, 372 F. Supp. 2d 641, 653 (M.D. Ga. 2005). Aldrich may testify as to his inferences that are based on his own search of particular databases and his personal observations regarding the results of that search. This statement is admissible, and it is substantiated by the fact that Aldrich easily was able to find the documents attached as Exhibit 1 that the FTC's expert apparently did not discover. This evidence goes to the heart of the credibility and veracity of the FTC's evidence in support of summary judgment. The FTC's motion to strike paragraphs 12 and 13 of the Aldrich Affidavit must be denied.

**2.    The FTC's Objections To The Supplemental Affidavit Donald Barrett Are Without Merit.**

Secondly, the FTC attacks certain paragraphs of the Supplemental Affidavit of Donald Barrett ("Barrett Affidavit") on the grounds that Barrett lacks personal knowledge to make

certain statements and that they contain inadmissible hearsay.  As set forth below, neither of these arguments has any merit and the FTC's motion to strike must be denied.  Moreover, as the central figure in the FTC's motion for summary judgment, the FTC's efforts to strike Barrett's testimony is particularly notable.  By seeking to strike this testimony, it is clear that Barrett's affidavit raises numerous issues of disputed fact that cannot be resolved at this stage of the proceedings, defeating the FTC's motion for summary judgment.

### A.    **Paragraph 3.**

The FTC first moves to strike portions of paragraph 3 of the Barrett Affidavit, claiming that Barrett does not have personal knowledge to testify as to BP Marketing.  This argument is curious at best.  The main contention of the FTC throughout this litigation has been that Barrett was involved with BP Marketing.  Yet now the FTC argues that he has no personal knowledge of its operations.  Regardless, the issue is irrelevant to the testimony that is offered.  Specifically, Barrett testified that he is a principal shareholder of ITV and DMC and is responsible for the management and operations of both companies.  Barrett also incorporated all of the testimony of his prior affidavits that have been filed in this case.  In his affidavit of June 4, 2004, Barrett testified as to DMC's relationship with Triad in connection with Triad's sale of coral calcium products to consumers.  (See Docket No. 9.)  All of the processing of credit cards for these sales was done by Triad and all distributor relationships were handled by Triad.  Thus, to the extent that Triad interacted with BP Marketing in connection with these distributor relationships, Barrett would be in a position to testify as to the purpose of BP Marketing as it relates to Triad. See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.

### B, C.   Paragraphs 5 - 6.

The FTC also seeks to strike portions of paragraph 5 and 6 of the Barrett Affidavit regarding statements that were made to Barrett by Defendant Allen Stern ("Stern") regarding the coral calcium scripts, whether the scripts conformed to Robert Barefoot's ("Barefoot") books and infomercial, and the data that DMC should collect from consumers, on the grounds that they are inadmissible hearsay.  The statements the FTC seeks to strike, however, are not being offered for their truth, and are not hearsay.   Rather, these statements are being offered to prove operative facts that give rise to legal consequences, such as Barrett's reasonable beliefs at the time the advertising was disseminated, his knowledge of the efforts undertaken to substantiate and review the advertising before it was disseminated, and his state of mind concerning the legal review and substantiation undertaken by Stern concerning the advertising and scripts.  Bolen, 754 F. Supp. at 225, citing U.S. v. Porter, 482 F.2d 933, 934 n.5 (5th Cir. 1973); Best, 858 F. Supp. at 277.

Whether or not the scripts actually conformed to Barefoot's book is not the fact sought to be proved by this testimony.  Rather, this testimony is being offered to prove that Stern made these statements to Barrett, true or not, and therefore Barrett believed and had obtained reasonable assurances that the scripts for coral calcium were substantiated by and conformed with materials provided by Barefoot, the proponent and producer of coral calcium.  These statements also show Barrett's state of mind, that he reasonably relied upon these express representations from Stern regarding the marketing and sale of coral calcium.  Likewise, the statements in paragraph 6 are being offered to show why the DMC Defendants collected certain information from customers, not for the truth of the matter asserted therein.  All of these challenged statements go to Barrett's state of mind and the course of conduct that he took in reliance on such statements, and are not hearsay.  See Bolen, 754 F. Supp. at 225 (statement

should not be stricken from affidavit where it is not offered for the truth, but demonstrates

actions the plaintiff took in reliance on defendant's promise); see also Best, 858 F. Supp. at 277

(statement not hearsay if offered to prove affiant's state of mind).

### D.    Paragraph 7.

The FTC challenges paragraph 7 of the Barrett Affidavit regarding the manufacturing of

coral calcium and its sale in the United States on the basis that Barrett does not have the personal

knowledge necessary to proffer it. Barrett, who is responsible for the management and

operations of both DMC and ITV, testified that DMC acted as a call center for the coral calcium

product. In this capacity, Barrett has testified that DMC received marketing information,

postcards and other materials concerning the product and its ingredients from King Media and

Triad. Barrett attaches one such postcard provided by Triad to his affidavit, which describes the

coral calcium that is used in the product sold by Triad. (Barrett Supp. Aff., ¶4 and Exhibit 2.)

Thus, in this capacity, DMC was required to know what ingredients were contained within the

product and the derivation and origin of those ingredients. In addition, Barrett testified in his

affidavit of June 4, 2004 (Docket No. 9), which was incorporated into his affidavit of February

10, 2006, that he personally read Barefoot's book "The Calcuim Factor," which discusses coral

calcium, its origin and manufacture in depth. DMC also entered into a distribution agreement

with Barefoot for the marketing and distribution of coral calcium, based upon the statements and

support provided by Barefoot for the product contained within "The Calcium Factor". (See

Docket No. 9, ¶¶5, 6.) Barrett is competent to testify as to the coral calcium promoted by

Barefoot and sold by Triad, the channels for its sale in the United States, and the supplement's

popularity with consumers. See In re Kaypro, 218 F.3d 1070, 1074 (9th Cir. 2000) (declarant's

five years of experience as credit manager adequately supported his personal knowledge of

industry practice).  See also Ondis, 538 F.2d at 907 n. 3 (finding personal knowledge

requirement met based on the affiant's position in the company); DIRECTV, Inc., 420 F.3d at

530 (personal knowledge requirement met where it was reasonably within affiant's position or

sphere of responsibility to be familiar with matters described in affidavit); Barthelemy, 897 F.2d

at 1018 (same).

### E.    **Paragraph 9**.

The FTC seeks to strike four sentences of paragraph 9 of the Barrett Affidavit on hearsay

grounds, to the extent they are being offered for their truth.  The statements the FTC seeks to

strike concern representations that Stern and Kevin Trudeau ("Trudeau") made to Barrett

regarding the coral calcium infomercial, to the effect that the infomercial had been provided to

counsel and the FTC for review, that the FTC had not raised any concerns, and that it was

compliant with the requirements for content and substantiation.  These statements are not being

offered for the truth of the matter asserted therein.  Rather, the statements are being offered to

show the knowledge and state of mind of Barrett, and the actions and course of conduct he took

in reliance on those statements.  See Bolen, 754 F. Supp. at 225 (statement should not be stricken

from affidavit where it is not offered for the truth, but demonstrates actions the plaintiff took in

reliance on defendant's promise).

The DMC Defendants dispute the FTC's contention that their reliance on the scientific

evidence provided by Barefoot regarding the health benefits of coral calcium was unreasonable,

and assert that they acted reasonably under the circumstances.  See FTC v. Garvey, 383 F.3d

891, 902 (9th Cir. 2004) (Participant in allegedly misleading advertising may provide a complete

defense to the FTC's claims if the participant could demonstrate that he or she relied upon "some

relevant substantiation for the advertising claims made."); FTC v. Enforma Natural Prods., Inc.,

362 F.3d 1204, 1208 (9th Cir. 2004) (reversing district court's grant of injunction where FTC misapplied its own standard and a genuine dispute existed as to the substantiation for the product and the reasonableness of the defendants' reliance).  Because these statements are being offered to prove the legally operative fact of reasonable reliance, they are not offered for the truth and are not hearsay.  In addition, the statements also are relevant for the non-hearsay purpose of showing the level of involvement of the DMC Defendants regarding the production of the advertising, the substantiation of that advertising, the review of that advertising for legal compliance, and the limited role that DMC played in the distribution of the advertising and the sale of the product.  See FTC v. P.M.C.S., Inc., 21 F. Supp. 2d 187, 191 (E.D.N.Y. 1998) (issues of fact concerning the level of involvement of the various defendants preclude summary judgment).  Because the FTC has no other objection to the statements, they should be considered by this Court.

### F.    Paragraph 13.

Next, "to the extent they are being offered for their truth," the FTC seeks to strike two sentences in paragraph 13 of the Barrett Affidavit based on hearsay grounds.  Again, the FTC's objection has no basis. These statements, which concern what Barrett was told by defendant Alejandro Guerrero ("Guerrero") regarding the scientific support and studies for the Supreme Greens product, and the fact that Guerrero reviewed the Supreme Greens infomercial and had no concerns or edits, are not being offered for their truth.  Instead, these statements are being offered to show the knowledge and state of mind of Barrett, whether his reliance on Guerrero was reasonable, and the actions and course of conduct he took on behalf of DMC in reliance on Guerrero's statements.  See Bolen, 754 F. Supp. at 225 (statement should not be stricken from affidavit where it is not offered for the truth, but demonstrates actions the plaintiff took in

reliance on defendant's promise).  These facts are relevant because the DMC Defendants dispute

the FTC's contention that their reliance on the assurances and scientific evidence provided by

Guerrero was unreasonable, and assert that they acted reasonably under the circumstances.  See

Garvey, 383 F.3d at 902; see also P.M.C.S., Inc., 21 F. Supp. 2d at 191 (denying motion for

summary judgment where issues of fact existed concerning reasonable reliance based upon level

of involvement in advertising).  Thus, because these statements are being offered to prove the

legally operative fact of reasonable reliance, they are admissible and should be considered by

this Court.

The FTC also seeks to strike the second sentence in paragraph 13, stating that Barrett was

aware that materials had been provided by Guerrero to his employees and that they had reviewed

them prior to filming the infomercial, on the grounds that Barrett has not established the personal

knowledge necessary to make the statement.  This objection is also without any merit.  Barrett is

the principal shareholder of DMC and ITV, and during the relevant period was responsible for

the management and daily operations of both companies.  In his affidavit of June 4, 2004

(Docket No. 9), which was incorporated into his recent affidavit of February 2006, Barrett

testified that ITV entered into a Distribution Agreement with Healthy Solutions, LLC for the

production of an infomercial featuring Guerrero, and that he had several direct conversations

with Guerrero regarding the scientific evidence and studies that Guerrero possessed regarding the

health benefits of Supreme Greens.  Barrett also testified that he personally attended a sales

presentation given by Guerrero to ITV's employees, in which Guerrero reconfirmed his

background as a doctor, stated he operated a clinic, discussed his medical studies and confirmed

that he possessed medical and scientific support for his product.  Based on his position in ITV

and DMC, and his involvement in these matters as to which he swears in his affidavit, it can be

13

inferred that Barrett had the requisite personal knowledge as to whether Guerrero had provided materials to his employees prior to filming the infomercial.  Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.

### G.    Paragraph 14.

The FTC moves to strike three sentences in paragraph 14 of the Barrett Affidavit as hearsay, to the extent that these statements are being offered for their truth.  These statements are not being offered for their truth, but are being offered to show Barrett's state of mind.  Specifically, as Barrett states in the very first sentence of paragraph 14, the steps the DMC Defendants took to substantiate the claims regarding coral calcium and Supreme Greens, including their reliance on Barefoot and Guerrero and the materials they provided, were reasonable.  Because the statements are being offered to prove a legally operative fact regarding the reasonableness of the DMC Defendants' reliance and actions, they are not hearsay.  See Bolen, 754 F. Supp. at 225 (statement should not be stricken from affidavit where it is not offered for the truth, but demonstrates actions the plaintiff took in reliance on defendant's promise); see also Best, 858 F. Supp. 271 (statement not hearsay if offered to prove affiant's state of mind).

The FTC also moves to strike these same three sentences and one other sentence in paragraph 14 based on the grounds that Barrett has not established that he has personal knowledge to proffer the statements.  First, Barrett states that he is testifying as to his own personal knowledge about the facts set forth therein.  Clearly, Barrett has the personal knowledge to testify as to his own state of mind and actions taken by DMC and ITV, such as the steps they took in connection with the coral calcium and Supreme Greens infomercials to substantiate the statements of opinion made in the shows by Barefoot and Guerrero.  Barrett also testifies in

paragraph 9 of his affidavit as to the basis for his knowledge that the FTC had received a copy of

the coral calcium show, which he states that the FTC received from Trudeau's attorneys.  He also

states in paragraph 13 of his affidavit that the DMC Defendants, including himself, through

counsel, were having continuing discussions with the FTC attorneys, which he describes in more

detail in paragraph 17 of his affidavit.  In paragraph 14, Barrett states that DMC Defendants,

through counsel, were having conversations with the FTC regarding the Supreme Greens

infomercial.  (Barrett Supp. Aff., February 10, 2006, ¶¶ 9,13, 14 & 17.)  Further, in paragraph 18

of his affidavit of June 4, 2004, which is incorporated into his most recent affidavit, Barrett

describes in detail the DMC Defendants' and their counsel's discussions with the FTC, which

resulted in their sending an edited tape to the FTC to address their concerns.  (Docket No. 9,

¶¶18.)  It is clear that Barrett has the requisite personal knowledge to testify as to the matters

sought to be stricken by the FTC regarding the DMC Defendants' actions, conversations with the

FTC, and their provision of a copy of the infomercial to the FTC.

### H.    Paragraph 15.

The FTC objects to three sentences in paragraph 15 of the Barrett Affidavit regarding the

FTC's and the FDA's concerns with Supreme Greens, on the basis that the statements are

conclusory and that Barrett has not established that he has the personal knowledge necessary to

offer the statements.  As set forth above, Barrett states in his affidavit that he is testifying as to

his own personal knowledge about the facts set forth therein, and his knowledge can be inferred

from his position at DMC and ITV and his involvement with the Supreme Greens advertising.

The statements that are challenged as conclusions are supported by the facts within Barrett's

knowledge, and are therefore admissible.  See Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154,

162-163 (D. Mass. 1999) (court denied plaintiff's motion to strike portions of affidavit as

15

conclusory and speculative where court found the statements were relevant to show review and testing procedure generally used by defendant); Hare v. Zitek, -- F. Supp. 2d --, 2005 WL 3470307, *13-14 (N.D. Ill., December 15, 2005) (court denied motion to strike statements in affidavit as conclusory because they were supported by other specific facts in the affidavit).

For example, in paragraphs 18 and 24 of his affidavit of June 4, 2004, which is incorporated into his most recent affidavit, Barrett describes in detail the DMC Defendants' and their counsel's discussions with the FTC regarding the Supreme Greens infomercial.  (See Docket No. 9, ¶¶18, 24.)  In paragraph 20 of that same affidavit, Barrett also describes in detail the FDA's inspection of ITV and the Supreme Greens product, as well as the results of that investigation.  (Id., ¶ 20.)  Further, Barrett, as the officer in charge of the daily management and operations of ITV and DMC, would certainly have knowledge of the investigations undertaken by the FDA and FTC with regard to the Supreme Greens infomercial and the DMC Defendants' sale of Supreme Greens, including concerns that were expressed to their counsel.  Common sense dictates that Barrett would have knowledge of these events that occurred at the company within his sphere of observation.  See, e.g., Davis, 372 F. Supp. 2d at 653 (personal knowledge and competency to testify may be inferred from the affidavits themselves, such as where it can be inferred that an employee of a company has personal knowledge of events that occurred at the company within her sphere of observation).  Because the FTC has not objected on any other ground, its motion should be denied.

## I.      Paragraph 20.

Next, the FTC seeks to strike a sentence from paragraph 20 of the Barrett Affidavit stating "I later learned that the sales staff were manipulating the [E8] program," on the grounds that it is hearsay and that Barrett has not established his personal knowledge.  A witness may

testify as to his own observations and may offer an opinion that is rationally based on his own perceptions. Fed. R. Evid. 701; see also Davis, 372 F. Supp. 2d at 653; Drake, 134 F.3d at 887 (court noted that affidavits may include inferences, but those inferences must be substantiated by specific facts). Here, where Barrett was responsible during the relevant period for the daily operations and management of DMC and ITV, he clearly can testify as to personal observations he made regarding the performance of his sales staff. The statement also goes to Barrett's state of mind and reasons behind his taking certain remedial actions, and is not hearsay. See Best, 858 F. Supp. 271 (statement not hearsay if offered to prove affiant's state of mind.); see also Bolen, 754 F. Supp. at 225 (same).

### J.     Paragraph 23.

Lastly, the FTC moves to strike as hearsay the statement from paragraph 23 of the Barrett Affidavit stating, "[W]e have asked the FTC to provide a proposal, but the FTC has repeatedly refused." FTC's refusal to provide a proposal to the DMC Defendants is a statement of a party opponent, which is admissible against the FTC on this motion. See Fed. R. Evid. 801(d)(2).

### 3.     The FTC's Objections To The Affidavit Of Jason Bernabei Are Without Merit.

The FTC first moves to strike the entire Affidavit of Jason Bernabei ("Bernabei Affidavit") because it does not contain an express statement that it is made upon personal knowledge. Rule 56, however, does not require such an express statement to establish personal knowledge. Bryant, 288 F.3d at 135 n. 9 (Rule 56(e) does not require a set of magic words in order to show the requisite personal knowledge). Rather, the personal knowledge of an affiant can be inferred from the affidavit itself, such as when the testimony concerns actions taken or statements made by the affiant himself. In addition, personal knowledge can be inferred where it was reasonably within affiant's position to be familiar with the matters stated in the affidavit, or

based on his involvement in these matters as to which he swears in his affidavit. <u>Ondis</u>, 538 F.2d at 907 n. 3; <u>DIRECTV, Inc.</u>, 420 F.3d at 530; <u>Barthelemy</u>, 897 F.2d at 1018; <u>Davis,</u> 372 F. Supp. 2d at 653; <u>Teragram Corp.</u>, 2004 WL 3086883 (D. Mass, December 29, 2004).  .

Here, Bernabei testifies as to his current position as a Vice President of DMC and his past positions with the company, the length of his employment, and his training and responsibilities at DMC.  (Bernabei Aff., ¶¶ 1-4, 8, 22.)  Bernabei also explains in detail several actions that he performed for DMC and ITV in his various positions at the company, his personal observations and interactions that he had during his employment.  (<u>Id.</u>, ¶¶ 5-7, 10-12, 15, 19-20, 24.)  As an employee and Vice President of DMC, Bernabei would have knowledge of events and circumstances that occurred at the company within his sphere of observation.  In addition, Bernabei clearly has the requisite personal knowledge to testify as to his own actions and personal observations, and there is no basis for striking the Bernabei Affidavit on the basis of personal knowledge, as the affidavit meets this requirement of Rule 56(e).  In the exercise of caution, however, the DMC Defendants are submitting herewith an Amended Affidavit of Jason Bernabei, which is has been amended to include the statement that the affidavit is made "upon personal knowledge" of the facts stated therein during the time of his employment with DMC, as well as including description of Bernabei's training as a sales representative.

### A -D.   Paragraphs 4-7.

The FTC seeks to strike the following statements from the Bernabei Affidavit based on the grounds that Bernabei lacks the personal knowledge necessary to proffer the statements: (1) the first sentence of paragraph 4, which states that "[i]t has always been DMC's policy to never make any claim to a customer that any dietary supplement product will treat, prevent or cure any disease;" (2) all of paragraph 5, which also concerns DMC's policies with regard to purchase

programs; (3) all of paragraph 6 concerning DMC's policies to offer money back guaranties and its cancellation policy; and (4) paragraph 7 stating that Bernabei is not aware of any widespread complaints by customers concerning the autoship program.  (FTC's Motion, pp. 12-15).  First, the Amended Affidavit of Bernabei qualifies these statements with the phrase "during the time that I have been employed at DMC."   Thus, Bernabei's testimony is clearly limited to the period that he was employed by DMC, and the FTC's argument that Bernabei could not testify to policies of DMC that existed or that did not exist prior to his employment is a red herring.

In addition, Bernabei testifies in the second sentence of paragraph 4 that he was trained on the very policies of DMC that are described in the challenged statements during the period that he was employed as a sales representative.  He also personally witnessed employees being disciplined for disobeying DMC's policies with regard to its purchase or continuity programs. (Bernabei Aff., ¶¶ 4-5.)  Bernabei then became the Vice President of Business Development at DMC, and began working directly with its principal shareholder, Donald Barrett.  Thus, Bernabei's personal knowledge to make these statements can be inferred because he was trained on the policies to which he swears in his affidavit, it was reasonably within the scope of his position as a sales representative and then a Vice President of DMC to be familiar with the sales policies of DMC.  Moreover, he personally observed some of the matters as to which he attests. Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653.

### E.    Paragraph 11.

The FTC seeks to strike one sentence from paragraph 11 of the Bernabei Affidavit based on hearsay grounds, where Bernabei states that Guerrero claimed that he needed to check with his counsel before he could provide clinical data from his study involving 200 terminally ill

patients in California.  The DMC Defendants are not offering the statement for the truth of the

matters asserted therein, as they are not offering it to prove that Guerrero actually conducted a

clinical study of 200 patients or whether he was checking with counsel to see if he could provide

the study to DMC.  Rather, the DMC Defendants proffered the testimony merely to prove that

Guerrero informed Bernabei/DMC that he had conducted such a clinical study.  This fact is

relevant as to the DMC Defendants' state of mind and the reasonableness of their reliance on

Guerrero that he could substantiate the claims he made regarding the health benefits of Supreme

Greens, and the actions and course of conduct they took in reliance on such statements.  See

Bolen, 754 F. Supp. at 225 (statement should not be stricken from affidavit where it is not

offered for the truth, but demonstrates actions the plaintiff took in reliance on defendant's

promise); see also Best, 858 F. Supp. 271 (statement not hearsay if offered to prove affiant's

state of mind).  As a result, the statement is not hearsay and it should be considered by this

Court.

## F.    Paragraph 14.

The FTC seeks to strike paragraph 14 of the Bernabei Affidavit, which concerns the sales

scripts for Supreme Greens, Guerrero's involvement in the review of the sales scripts, and

instructions that were given to sales staff regarding the sales scripts, based on the grounds that

Bernabei lacks the personal knowledge necessary to proffer the statements.  As set forth above,

by virtue of his position as a sales representative and then a Vice President at DMC, and his

involvement as the original contact person with Guerrero and the Supreme Greens distribution

agreement, it can be inferred that Bernabei has knowledge of events and circumstances at the

company within his sphere of observation.  (Bernabei Aff., ¶¶3-4, 8, 10, 23.)  See Davis, 372 F.

Supp. 2d at 653 (Personal knowledge and competency to testify may be inferred from the

affidavits themselves, such as where it can be inferred that an employee of a company has personal knowledge of events that occurred at the company within her sphere of observation). See also Ondis, 538 F.2d at 907 n. 3 (same); DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.

The FTC also seeks to strike the third sentence of paragraph 14 as hearsay, to the extent it is offered for its truth.  In the third sentence, Bernabei testifies that "[s]ales staff were regularly told that they must not deviate from the scripts, because the scripts had been reviewed and approved by Guerrero and conformed to his statements on the infomercial, his clinical studies and his scientific research."  (Bernabei Aff., ¶ 14.)  The DMC Defendants are not proffering the this testimony for the truth that the scripts were actually reviewed by Guerrero and were approved by him, but they are offering it for the fact that the statements were made to the sales staff that the sales scripts conformed to Guerrero's infomercial and studies and that they were not to deviate from the scripts.  See Noviello, 398 F.3d at 85 (statements not hearsay where they were not offered for the truth, but to show that the words were spoken).

### G.    Paragraph 16.

The FTC seeks to strike paragraph 16 of the Bernabei Affidavit on the grounds that Bernabei did not have the requisite personal knowledge to proffer the statements regarding the editing of the Supreme Greens infomercial, circulation of the edited version of the infomercial or communications with media outlets regarding the edited infomercial.  (Bernabei Aff., ¶ 16.) Bernabei testified that as part of his responsibilities as the Vice President of Business Development he was to ascertain the credibility of the spokesperson concerning the merits of the product he or she is seeking to sell through direct marketing.  He also testified that he was present for part of the filming of the first Supreme Greens infomercial and that he had

discussions with Guerrero regarding its content.  He testified that he was aware that the FTC had raised concerns about the content of the infomercial, that he sought additional material from Guerrero to substantiate the opinions expressed in the infomercial, and was involved in the decision to cease airing the Supreme Greens infomercial.  (Bernabei Aff., ¶¶ 8, 10-11, 15, 23.) Based on these facts regarding Bernabei's position in the company and the actions he undertook, it can be inferred that Bernabei had the requisite personal knowledge to testify as to statements in paragraph 16 regarding the edited version of the Supreme Greens infomercial.  See Davis, 372 F. Supp. 2d at 653 (Personal knowledge and competency to testify may be inferred from the affidavits themselves, such as where it can be inferred that an employee of a company has personal knowledge of events that occurred at the company within her sphere of observation.) See also Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.  Ofering no other objection to this testimony, it should be considered by the Court in opposition to the FTC's motion for summary judgment.

### H.    Paragraph 17.

The FTC seeks to strike paragraph 17 of the Bernabei Affidavit regarding Bernabei's personal observations as to how Donald Barrett referred to the second Supreme Greens infomercial, on the grounds that it is hearsay and that Bernabei lacks the personal knowledge necessary to proffer the statement.  Clearly, Bernabei can testify as to his own personal observations of Barrett, with whom he testified he worked directly and with whom he had several discussions regarding the FTC's concerns with the Supreme Greens infomercials. (Bernabei Aff., ¶¶ 8, 19.)  See Davis, 372 F. Supp. 2d at 653; Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.

In addition, the testimony is not hearsay because it is a non-hearsay statement under Rule 801(d)(1) as a prior consistent statement of a witness.  Under Rule 801, a prior statement of a declarant that is consistent with the declarant's testimony at trial is admissible if offered "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive," so long as the prior consistent statement is made before the charged recent fabrication.  Fed. R. Evid. 801(d)(1)(B); U.S. v. Piva, 870 F.2d 753, 758-759 (1st Cir. 1989) (testimony by police officer recounting statements made to him by informant were not hearsay as they were offered in order to rehabilitate informant's credibility where defendants' sought to suggest informant had an improper motive); see also U.S. v. Wilson, 355 F.3d 358 (5th Cir. 2003).

Here, the FTC has accused Donald Barrett of knowingly running the "original" Supreme Greens infomercial rather than the version edited for compliance after the FTC first raised concerns with the program in 2003.  In sworn testimony and interrogatories signed by Barrett, he has categorically denied this allegation and provided the FTC with a comprehensive explanation of certain documents the FTC contends demonstrate that their version of events is the correct one.  The FTC has also challenged these recent statements by Barrett as untrue.  Thus, Bernabei's testimony about what was said by Barrett during 2003, well prior to his current statements, falls squarely within Fed. R. Evid. 801(d)(1)(B) as a prior consistent statement offered to rebut a charge of recent fabrication.  Moreover, this clear dispute over the circumstances surrounding these events demonstrates why there are simply too many disputed material facts to warrant summary judgment prior to trial.

## I.    Paragraph 18.

The FTC seeks to strike paragraph 18 of the Bernabei Affidavit on the grounds that Bernabei does not have the requisite personal knowledge to make the statements, in which

Bernabei testifies as to DMC's belief that the FTC was satisfied with the edited Supreme Greens infomercial, the FTC's communications with DMC's counsel, and DMC's response to those communications, as well as DMC's growing suspicions about Guerrero in 2004 and its decision not to run the Supreme Greens infomercial after May of 2004. Again, Bernabei is testifying as to actions he undertook as an employee of DMC regarding matters that occurred at the company within his sphere of observation. He also testified that he personally had discussions with Barrett regarding the FTC's concerns with the Supreme Greens infomercial, and the efforts by DMC to address those concerns. (Bernabei Aff., ¶ 19.) Based on the facts in his affidavit establishing Bernabei's position in the company, job responsibilities, personal interactions with Barrett and others, and the actions he undertook in furtherance of his responsibilities, it can be inferred that Bernabei had the requisite personal knowledge to testify as to statements he made in paragraph 18. See Davis, 372 F. Supp. 2d at 653 (it can be inferred that an employee of a company has personal knowledge of events that occurred at the company within her sphere of observation.) See also Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018. Offering no other objection to the testimony, the FTC's motion should be denied.

**J.    Paragraph 19**.

The FTC seeks to strike four sentences in paragraph 19 regarding discussions Bernabei had with Barrett about the FTC's concerns and the direction of DMC, and regarding the contacts made by the FTC with DMC's vendors and distributors, on the grounds that these statements are hearsay. (FTC's Motion, p. 18, ¶ J(1)-(4).) The FTC also seeks to strike two of the sentences that concern the FTC's contact of DMC's merchant accounts and the effect that the FTC's investigation had on opportunities for DMC on the grounds that Bernabei does not have the requisite personal knowledge to make the statements. The first and fourth sentences that the

FTC seeks to strike are not hearsay statements at all, as they are not an out of court statements made by someone other than Bernabei.  (Id., ¶ J(1) and (4).)  Bernabei is testifying that he had discussions with Barrett regarding the direction of that Barrett wanted to take company, and as to his own impressions as to why DMC lost certain opportunities.  Neither statement contains inadmissible hearsay.

The second sentence that the FTC seeks to strike, regarding Mr. Barrett's statement to Bernabei, is admissible under the exception to the hearsay rule as a statement of the declarant's then existing state of mind.  Fed. R. Evid. 803(3); U.S. v. Ouimette, 753 F.2d 188, 191-192 (1st Cir. 1985); see also U.S. v. Houlihan, 871 F. Supp. 1495 (D. Mass. 1994) (statement of intent to meet defendant was admissible as circumstantial evidence that victim actually met defendant).  Barrett's state of mind concerning whether he intended DMC to continue advertising and marketing ingestible products after the FTC started their investigation of Supreme Greens is relevant, and has been challenged by the FTC.  The third sentence that the FTC seeks to strike, that Bernabei heard from several distributors that DMC's merchant accounts had been contacted by the FTC, is admissible as non-hearsay, because it is not offered for the truth, but rather to show the fact that the statements were made and to demonstrate the state of mind of these merchant accounts.  Contrary to the argument advanced by the FTC, the only fact that is offered for the truth is that certain opportunities existed and then failed to materialize.  The testimony is also admissible under the residual hearsay exception set forth in Federal Rule of Evidence 807.  Bernabei's testimony was given under the penalties of perjury, he is testifying as to statements of which he has personal knowledge, and the statements can be corroborated by the other facts set forth in paragraph 19.  U.S. v. Sposito, 106 F.3d 1042 (1st Cir. 1997).

Further, in the statements that the FTC is challenging on the basis of Bernabei's personal knowledge, Bernabei is testifying as to his communications with DMC's distributors regarding the FTC, and his own impressions as to the effects of the FTC's investigation on DMC's opportunities to market other consumer products and books.  (FTC's Motion, p. 18-19, ¶ J (3) and (4).)  Bernabei was responsible for communicating with DMC's distributors and with bringing new business opportunities to DMC, and this testimony is clearly within Bernabei's personal knowledge.

### K.    Paragraph 20.

The FTC seeks to strike particular sentences of paragraph 20 based on hearsay grounds. (FTC's Motion, p. 19, ¶ K (1)-(3)).  The first statement made by Bernabei, that at trade shows "prospects would inquire whether we were ready to discuss a new dietary supplement show," is not hearsay.  "According to the very definition of hearsay, an inquiry is not an assertion, and therefore does not constitute hearsay."  Bolen, 754 F. Supp. at 225.  The second statement the FTC seeks to strike regarding Bernabei's response to prospects is not hearsay because it is not being offered for the truth of the matter asserted therein, but rather to show that Bernabei made this statement to DMC's prospects, and informed them that he would not bring any proposal to Barrett unless their was significant substantiation for the products.  As for the third sentence that the FTC seeks to strike, Bernabei's statement that he conferred with counsel is not hearsay, and his statement regarding the assurances he made to counsel is not being offered for the truth of the matter asserted therein.  Accordingly, the Court should consider all of paragraph 20 of Bernabei's affidavit.

26

L.      **Paragraph 21**.

The FTC seeks to strike the second and third sentences of paragraph 21 to the extent they are being offered for their truth, which concern the matters that new prospects of DMC are advised by the company.  (FTC's Motion, p. 19-20, ¶ L; Bernabei Aff., ¶ 21.)  These statements are not being offered for the truth of the matters asserted therein, i.e., whether or not the materials of prospects will be reviewed by counsel and verified before discussions will commence, but are being offered for the fact that the statements are being made by DMC to prospects of the company.  See Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005) (statements in affidavit did not create hearsay problems were they were not offered for their truth, but rater, to show that the words were spoken).  Moreover, these statements are not statements by others, but statements made by Bernabei himself to all prospects.  Finally, to the extent the FTC challenges the DMC Defendants' current testimony regarding the steps taken to require and obtain substantiation for the advertising produced by the DMC Defendants, the testimony falls within the exception for prior consistent statements offered to rebut the FTC's claim of recent fabrication.  Fed. R. Evid. 802.  Because the FTC does not have any other objection to these statements, they may be considered by this Court.

4.      **The FTC's Objections To The Affidavit
Of Wayne Callahan Are Without Merit.**

A.      **Paragraph 2.**

The FTC moves to strike the last sentence of paragraph 2 of the Affidavit of Wayne Callahan ("Callahan Affidavit") regarding Direct Fulfillment, LLC on the grounds that Callahan does not have the personal knowledge necessary to proffer it.  Callahan testifies that he has been both DMC's and ITV's accountant since DMC's inception in 2001 and ITV's inception in 2003.  He also testifies that he is responsible for all of the accounting and financial management,

reporting and compliance of the two companies, and that he is making the affidavit based on his own personal knowledge of the facts set forth therein.  In this position, Callahan testified that he is aware of the dates of incorporation of the two companies and the tax returns they file, and works with their bank accounts, accounting systems and general ledgers.  Callahan is also responsible for interacting with the merchant accounts of DMC and ITV and for addressing any issues or concerns relating to these accounts.  (Callahan Aff., ¶¶ 1-2, 4.)  Based on his position and the work he performs for DMC and ITV, and his familiarity with the accounts, finances and tax returns of the two companies, Callahan has the requisite personal knowledge to testify to the fact that ITV's and DMC's principals, Barrett and Robert Maihos, do not own Direct Fulfillment, LLC.  See Davis, 372 F. Supp. 2d at 653 (it can be inferred that an employee of a company has personal knowledge of events that occurred at the company within her sphere of observation.)  See also Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018.  In addition, the records filed with the Massachusetts Secretary of State make clear that neither Barrett nor Maihos are owners of Direct Fulfillment LLC.  As such, these records fall within the public records exception to the hearsay rule, and likely could also be judicially noticed by the Court as governmental records the authenticity of which is easily determined.

### B.    Paragraph 3.

The FTC seeks to strike one sentence from paragraph 3 of the Callahan Affidavit regarding DMC's and ITV's compliance with orders of this Court as an inadmissible legal conclusion.  Callahan is not testifying to a legal conclusion, but he is testifying to the fact that these Defendants have maintained accurate books and records and financial controls, as ordered by this Court.  This is a statement of fact that is clearly within the personal knowledge of Callahan, as he is responsible for maintaining those books and records, and monitoring

28

compliance with the Court's prior orders as they relate to financial matters.  Thus, to the extent that Callahan is testifying to DMC's and ITV's maintenance of books and records, the statement is admissible and can be considered by this Court.

### C.    Paragraph 5.

The FTC seeks to strike three sentences in paragraph 5 of the Callahan Affidavit regarding the number of complaints that DMC received for unauthorized orders, DMC's chargeback record with its merchant accounts, the number of customer complaints it receives, and that those complaints are resolved at the company level quickly and efficiently, on the grounds that they contain inadmissible opinions by a lay witness and are conclusory rather than factual.  The FTC also seeks to strike these sentences, as well as two others in paragraph 5, on the grounds that Callahan does not have the personal knowledge necessary to proffer the statements.  (FTC's Motion, p. 21, ¶ C(1) – (6)).

Callahan may testify as to his own observations, experience and opinions and he may offer testimony that is rationally based upon his own observations.  See Fed.R.Evid. 701; Davis, 372 F. Supp. 2d at 653; see also Drake, 134 F.3d at 887 (statements in affidavits can include inferences and opinions, where those inferences are based on personal knowledge and have a factual foundation.); Hare v. Zitek, -- F. Supp. 2d --, 2005 WL 3470307 (N.D. Ill. December 15, 2005) ("Personal knowledge may consist of opinions and inferences.")  As Callahan was responsible for maintaining the financial records and general ledgers of the companies, as well as interacting with all of DMC's and ITV's merchant accounts, he would be personally aware of any aberrations in the chargeback rates, excessive refund requests due to customer complaints, or particular financial strains on the company from customer returns or similar issues.  Mr. Callahan was also personally responsible for addressing any issues or complaints with the companies'

merchant accounts, including addressing any concerns of excessive chargebacks by customers. His involvement is demonstrated clearly by the exhibit to his affidavit, which was an email to the merchant account, and to which he was copied.  That email is not objected to by the FTc and would fall within the business records exception to the hearsay rule regardless.  Thus, it is clearly within Mr. Callahan's personal knowledge to make the observations he testifies to in paragraph 5 regarding DMC's customer disputes, relationship with the merchant accounts, chargebacks, and record in resolving customer disputes.  See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653.  This testimony, which is relevant to show the company's general record with their merchant accounts and with their resolution of customer complaints, is supported by specific facts in the affidavit relating to one such merchant account and Callahan's actions in attempting to resolve a specific question raised by that account.  See Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154, 162-163 (D. Mass. 1999) (court denied plaintiff's motion to strike portions of affidavit as conclusory and speculative where court found the statements were relevant to show review and testing procedure generally used by defendant); Hare, 2005 WL 3470307, *13-14 (court denied motion to strike statements in affidavit as conclusory because they were supported by other specific facts in the affidavit).

The FTC also seeks to strike one sentence in paragraph 5 regarding statements by Donald Barrett as hearsay, to the extent it is being offered for its truth.  (FTC's Motion, p.22, ¶ C(3)). The DMC Defendants are not offering the statement to prove the truth of the matter asserted, i.e., that DMC did whatever was necessary to maintain its merchant accounts on good terms and made its customers happy, but for the fact that Barrett made the statement to his employees. Thus, the statement may be considered by this Court for this non-hearsay purpose.  Even if the

matter were offered for its truth, however, it would be admissible as a prior consistent statement by Barrett, offered to rebut the FTC's contention that his current statements regarding DMC's sales practices and customer complaint resolution procedures are not credible.  See Fed.R.Evid. 802 (statement offered to rebut present claim of fabrication excepted from hearsay rule).

### D-E.    Paragraph 6, 8.

The FTC seeks to strike paragraph 6 and paragraph 8 of the Callahan Affidavit regarding customer complaints with autoship orders, the way in which DMC's customer service representatives are supposed to record customer complaints and obtain the customer's consent to any purchases, and the Contract Genie system installed by DMC to ensure compliance with the company's policies, on the grounds that Callahan does not have the requisite personal knowledge to make the statements.  This assertion by the FTC is meritless.  Callahan testified that he was responsible for interacting with all of DMC's and ITV's merchant accounts and addressing any issues or complaints with those accounts.  Because of his necessary personal involvement with the merchant accounts and customer issues, it can be inferred that it is within his sphere of responsibility to make the observations he testifies to in paragraphs 6 and 8 regarding DMC's customer disputes and the way in which DMC attempts to resolve those disputes.  This includes the specific instructions given to the company's sales representatives and the use of the Contract Genie.  See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653.  This testimony is supported by specific facts in the affidavit relating to DMC's interactions with merchant account and Callahan's own actions in attempting to resolve a customer complaint, establishing that Callahan has personal knowledge of the facts he testifies to in paragraphs 6 and 8.

31

The FTC also seeks to strike one sentence in paragraph 8 regarding the content of customer complaints as hearsay, to the extent the DMC Defendants are offering it for its truth. The DMC Defendants are not offering this statement to prove the truth of whether or not the customer's complaint about an unauthorized order is true, but rather for the purpose of establishing the fact of the stated reason for the customer complaint, true or not.  Similarly, the fact that customers have expressed a belief that they must claim a sale is unauthorized to warrant a refund is not offered for the truth, but simply to establish the fact of the communication and the customer's state of mind in connection with seeking a refund.  Because the statement is being offered for a non-hearsay purpose, it is admissible.  Likewise, the statement by Mr. Callahan regarding the direction provided to the customer service staff is offered solely for the purpose of establishing that the direction was made, not for its truth.  It is therefore not hearsay.

### F.    **Paragraph 9**.

The FTC moves to strike one sentence in paragraph 9 of the Callahan Affidavit, regarding what Callahan was told about the FTC's contact with DMC's merchant accounts and the negative impact the FTC has had on DMC's relationship with these accounts, on the grounds that it is hearsay and that Callahan does not have the requisite personal knowledge to proffer the statement.  In paragraph 9, Callahan is testifying as to his own conversations with the merchant accounts, as one of his responsibilities at DMC was to interact with these accounts and address any of their concerns or complaints, and he clearly has the personal knowledge to make the statement about his own actions.  (Callahan Aff., ¶¶ 4, 5, 9.)

Further, the statement is offered to establish the stated reasons, true or not, given by the merchant accounts for why they were taking adverse action against DMC.  As such, the statements are not hearsay.  Moreover, this one statement by Callahan is admissible under the

32

residual hearsay exception set forth in Federal Rule of Evidence 807.  Callahan's testimony was given under the penalties of perjury, he is testifying as to conversations in which he participated and has personal knowledge, and the statements can be corroborated by the other facts set forth in the first sentence of paragraph 9.  Sposito, 106 F.3d 1042 (1st Cir. 1997); Fed. R. Evid. 807.

> **5.    The FTC's Objections To The Affidavit Of Eileen Barrett Maihos Are Without Merit.**
>
> **A.    Paragraph 3.**

The FTC seeks to strike two statements in paragraph 3 of the affidavit of Eileen Barrett Maihos ("Eileen Affidavit") regarding statements made to her by her brother Donald Barrett on the grounds that they are inadmissible hearsay, and that Ms. Barrett Maihos has not demonstrated that she has the requisite personal knowledge to make the statements.  (FTC's Motion, p. 24, ¶A.)  First, the statements the FTC seeks to strike are not being offered for their truth, but rather, they are being offered to show Eileen's and Donald Barrett's knowledge and state of mind regarding whether the coral calcium infomercial had been reviewed and approved by Trudeau, his scientific advisors and his attorneys.  Because these statements are not offered for the truth, they are not hearsay.  Bolen, 754 F. Supp. at 225, citing U.S. v. Porter, 482 F.2d 933, 934 n.5 (5th Cir. 1973); Best, 858 F. Supp. at 277.  This fact is relevant to the reasonableness of Barrett's and/or DMC's reliance on Trudeau and Stern that substantiation existed for the claims that were made in the infomercial regarding the health benefits of coral calcium and that the infomercial was complaint.  See Garvey, 383 F.3d at 902; Enforma Natural Prods., Inc., 362 F.3d at 1208 (reversing district court's grant of injunction where FTC misapplied its own standard and a genuine dispute existed as to the substantiation for the product and the reasonableness of the defendants' reliance). This reliance is particularly relevant given the limited level of involvement of the DMC Defendants with the production and dissemination of the coral calcium infomercial.

See P.M.C.S., Inc., 21 F. Supp. 2d at 191 (issues of fact concerning the level of involvement of the various defendants preclude summary judgment).  Further, Ms. Barrett Maihos has the requisite personal knowledge to testify as to her personal observations during the course of her employment as the office manager for DMC and ITV.  She also has the requisite knowledge of conversations she personally had with her brother.  She also specifically testifies that the statements made in her affidavit are made upon her own personal knowledge.

### B.-D.    Paragraphs 4, 6 and 7.

The FTC is seeking to strike portions of paragraphs 4, 6 and 7 of Ms. Barrett Maihos' Affidavit on the grounds that the testimony is not sufficiently specific to show that she has the personal knowledge necessary to proffer the statements, and that her use of the term "we" is too vague to be admissible.  In paragraphs 4 and 6, Ms. Barrett Maihos is testifying as to actions she personally took as an employee of DMC and ITV with regard to the coral calcium and Supreme Greens infomercials.  These are also described in paragraph 5 of her affidavit with respect to her direct personal interactions with Guerrero.  (Eileen Aff., ¶¶ 4-6.)  Clearly, Ms. Barrett Maihos has the requisite personal knowledge to testify as to her own actions.  Barthelemy, 897 F.2d at 1018 (affiants' personal knowledge and competence could be inferred from position with the company and their participation in the matters to which they swore).  In addition, the FTC takes issue with Eileen's use of the editorial term "we" in paragraphs 4, 6 and 7 rather than the term "I".  This is merely a matter of semantics.  Clearly, Ms. Barrett Maihos is referring to herself in her position as an employee of DMC and ITV, and she is competent to testify as to her own personal observations, actions she personally took, and knowledge she personally acquired during the course of her employment by DMC and ITV.

34

The FTC also seeks to strike one statement in paragraph 7 of Ms. Barrett Maihos'
Affidavit that Guerrero "delayed in providing the patient studies, however, citing confidentiality
concerns," on the grounds that it is inadmissible hearsay.  (FTC's Motion, p. 26, ¶ D.)  First, only
a portion of this sentence – regarding what Guerrero "cited" as his concerns – raises any hearsay
issue.  As to that one statement, the statement is not offered for its truth.  Rather, the DMC
Defendants are offering this statement not for its truth, but for the purpose of showing Ms.
Barrett Maihos' knowledge and state of mind as an employee of DMC and ITV regarding her
efforts to obtain substantiation for the opinions expressed by Guerrero in the Supreme Greens
infomercial.  This statement, true or not, is relevant to the issue of whether the DMC Defendants'
efforts to obtain substantiation and reliance on Guerrero was reasonable under the circumstances.
Bolen, 754 F. Supp. at 225, citing U.S. v. Porter, 482 F.2d 933, 934 n.5 (5th Cir. 1973); Best, 858
F. Supp. at 277.  Because it is not hearsay, it may be considered by the Court.

      6.      **The FTC's Objections To the Affidavit of Simon Mena Are Without Merit**.

           **A.-C.**   **Paragraphs 4-6.**

The FTC moves to strike paragraphs 4-6 of the Affidavit of Simon Mena ("Mena
Affidavit"), on the grounds that Mena has not established that he has the personal knowledge
necessary to make the statements.  (FTC's Motion, pp. 26-27, ¶¶ A –C.)  This contention is
particularly specious.  Mena testified in his affidavit that he has been employed at DMC since
September 2002, first as a sales representative and then as the Senior Sales Manager.  Mena
describes his numerous responsibilities as a Senior Sales Manager at the company, which include
supervising and training the sales department and monitoring the customer phone calls of DMC's
sales representatives.  He testified that, as part of his responsibilities, he is responsible for
ensuring that sales personnel are following company policies and procedures and disciplining

those who are not complying.  He also testified that he is personally responsible for developing and writing sales scripts for infomercials.  (Mena Aff., ¶¶1-2).  Mena testified that he was working as a sales representative at DMC during the time that DMC acted as a call center for the coral calcium infomercial, and that he directly participated and/or personally observed the matters that he testified to in paragraphs 4 through 6.  (Id., ¶ 4.)  Thus, Mena is competent and has the personal knowledge to testify as to observations he made regarding circumstances and events at DMC while working as a sales representative and a senior sales manager, such as DMC's role as a call center for the coral calcium infomercial (paragraphs 4 and 5), and the circumstances surrounding the creation of the scripts for coral calcium that the sales representatives were provided (paragraph 6).

Further, the FTC takes issue with the fact that Mena testifies (i) as to training, that "all" sales representatives received such training, or (ii) as to the coral calcium scripts, that his testimony relates to "all" such scripts provided to the representatives, when Mena did not start working for DMC until September of 2002.  (FTC's Motion, p. 28, ¶C.)  Mena's testimony is obviously qualified by the dates he was employed at DMC, and the Court can consider Mena's testimony to relate to facts, events and observations during the time of his employment at DMC, from September 2002 through the present.

The FTC also seeks to strike the fifth and sixth sentence of paragraph 6 describing the training that DMC sales representatives received regarding the sale of Barefoot's books and coral calcium on the grounds that they contain hearsay.  (FTC's Motion, p. 28, ¶ C.)  First, the sixth sentence is not hearsay to the extent it describes the training that sales representatives at DMC received.  Secondly, to the extent these sentences contain statements by DMC, they are not being offered for the truth of the matter asserted therein, but for the fact that DMC sales representatives

36

were given the particular instructions described therein by Mena with regard to the sale of coral

calcium.  As such, they are not hearsay and may be considered by this Court.

### D-E.     Paragraphs 7 & 8.

The FTC seeks to strike the first sentence of paragraph 7 of the Mena Affidavit, in which

Mena testifies that it has "always been DMC's policy to never make any claim to a customer that

any dietary supplement product will treat, prevent or cure any disease," on the grounds the Mena

is not competent to testify to policies that DMC has maintained prior to his employment at DMC.

In the second sentence of paragraph 7, Mena testifies as to the training he received as a sales

representative at DMC, so his statement is obviously qualified as applying to the time period that

he was employed at DMC.  (Mena Aff., ¶ 7.)  Likewise, the FTC seeks to strike portions of

paragraph 8 of  the Mena Affidavit where Mena again testifies as to policies DMC has "always"

or "never" maintained because Mena did not begin his employment with DMC until September

2002.  Mena was trained on DMC's policies when he worked as a sales representative for DMC,

and now he trains other sales people and enforces those policies, so the affidavit makes clear that

Mena has the requisite personal knowledge to make the challenged statement set forth in

paragraphs 7-8 with regard to DMC's policies that have existed since Mena has been employed

with the company.[2]  Thus, this Court need not strike the statements in their entirety, but merely

consider that these statements refer to DMC's policies since September 2002, of which Mena

had knowledge and personally observed.

---

[2] To the extent that the FTC's seeks prospective relief for its allegations of ongoing consumer injury, the testimony of Mena concerning recent practices policies, as well as the efforts to improve sales practices and compliance since 2002, are the most relevant.  As to this testimony, the FTC does not, and cannot, question his competence to testify.

BO1 15768766.2

F.     **Paragraph 9**.

The FTC also seeks to strike the fourth sentence of paragraph 9 of the Mena Affidavit regarding DMC's sales practices with regarding to continuity sales, which Mena testified were not "overly aggressive" or "unlawful" and done without the customer's consent, on the grounds that it is a conclusory legal opinion.  (FTC's Motion, p. 30, ¶F.)  If the Court strikes the word "unlawful" from this statement, Mena's statement is admissible.  Mena testifies in detail as to DMC's purchase programs, such as the continuity program, in paragraph 8 of his affidavit, including the training that the DMC sales representatives receive regarding these programs. (Mena Aff., ¶8.)  He has the personal knowledge to testify as to the statements in paragraph 9 regarding DMC's sales practices based on his position as a Senior Sales Manager, in which he trains sales representatives and reviews their sales calls.  (Id., ¶9.)  The statement the FTC seeks to strike as conclusory is supported by the specific facts set forth in paragraphs 8 and 9 of the Mena Affidavit and is admissible.  See Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154, 162-163 (D. Mass. 1999) (court denied plaintiff's motion to strike portions of affidavit as conclusory and speculative where court found the statements were relevant to show review and testing procedure generally used by defendant.); Hare, 2005 WL 3470307, *13-14 (court denied motion to strike statements in affidavit as conclusory because they were supported by other specific facts in the affidavit).   Moreover, Mena's opinion as to what constitutes "lawful" practices is borne from his close work with DMC's General Counsel Michael Sciucco, and his role in assisting in sales compliance efforts.  Thus, his opinion in this context is also admissible, notwithstanding the use of the term "lawful."

G. **Paragraph 10**.

The FTC seeks to strike the first sentence of paragraph 10 regarding a policy that DMC has "always" maintained on the grounds the Mena is not competent to testify as to policies that DMC maintained prior to his employment, and he lacks personal knowledge of DMC's cancellation policy to proffer the statement. As stated above, Mena was trained on DMC's policies when he worked as a sales representative for DMC, and now he trains other sales people and enforces those policies, so the affidavit makes clear that Mena has the requisite personal knowledge to make the challenged statement set forth in paragraph 10 with regard to DMC's cancellation policies that have existed since Mena has been employed with the company. Thus, this Court need not strike the statement, but merely consider that this statement refers to DMC's policies since September 2002.

I. **Paragraph 11**.

The FTC seeks to strike the third sentence of paragraph 11 of the Mena Affidavit on hearsay grounds, to the extent it is being offered for its truth, and seeks to strike the last three sentence of paragraph 11 on the grounds that Mena has not established that he has the requisite personal knowledge to proffer the statements. (FTC's Motion, p. 31, ¶H.)

The third sentence of paragraph 11, regarding what Mena and DMC came to learn about representations that DMC's sales representatives made to customers, is not offered for the truth of the matter asserted therein, i.e., whether salespeople would give customers a free bottle of E-8 Daily and then cancel their continuity order with no penalty, but to show that the statements were made and the actions that DMC took as a result of its awareness of these statements by its sales representatives. Bolen, 754 F. Supp. at 225. Further, it is clear that Mena has personal knowledge to testify as to the statements made in paragraph 11, as Mena states that he was aware

of the E-8 Daily promotion based on his personal observations on the sales floor of DMC during this period.  (Mena Aff., ¶11.)  Further, during this time period, Mena was a Senior Sales Manager and was monitoring sales calls, and his personal knowledge can be inferred from his position in the company.  See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653.

### I - K.    Paragraphs 12, 16 and 21.

The FTC moves to strike the last two sentences of paragraph 12 and the first sentence of paragraph 21 on the grounds that Mena does not have the personal knowledge to testify as to customer complaints or the resolution of such complaints as set forth in those statements.  (FTC's Motion, p. 31-32, ¶¶ I, K.)  The FTC also seeks to strike paragraph 16 regarding sales policies that DMC has "always" maintained on the grounds that Mena does not have personal knowledge of policies prior to his employment at DMC in September 2002.  (Id., ¶J.)  As stated previously, Mena is employed as a Senior Sales Manager, and his responsibilities include training and monitoring sales representatives and ensuring that all of the company policies and procedures are followed.  It can be inferred that, based on his position and responsibilities at DMC, Mena would be aware that customer complaints have occurred regarding the sales of certain products, as this directly relates to the performance of the department that he supervises, and he would be aware of how such complaints are handled and resolved at the company.  See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653.  Likewise, Mena has the personal knowledge to testify as to DMC's sales policy since he has been employed at the company in September 2002, and paragraph 16 can be qualified to reflect this.  As such, Mena is competent to testify as to the statements that the FTC challenges in paragraph 12, 16 and 21 of the Mena Affidavit.

40

**L.    Paragraph 31.**

The FTC moves to strike the first sentence of paragraph 31, which concerns the policies of DMC's management and discussions they have "always" had with sales staff, on the grounds that it is inadmissible hearsay and that Mena lacks the personal knowledge necessary to proffer it. First, the DMC Defendants are not offering the statement to prove the truth of the matter asserted, but to prove the DMC management has made these statements to sales staff, which is relevant to show the actions DMC has taken to ensure that its sales people do not mislead consumers, and it is admissible as non-hearsay. See Noviello, 398 F.3d 85 (statements are admissible where not offered for the truth, but to show that the words were spoken.) Even if the DMC Defendants were offering the statement for its truth, the statements could be considered because Mena can testify as to the statement during the trial in this matter. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (10th Cir., 1990) ("hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony.") citing Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989); see also Gore v. GTE South, Inc., 917 F. Supp. 1564, 1570 (M.D. Ala. 1996) (same).

Secondly, Mena clearly has the personal knowledge to testify as to the sales policies of DMC and the discussions that its management has had with sales staff *during the time period that Mena has been employed with DMC*, given that he is the Senior Sales Manager at DMC. See Ondis, 538 F.2d at 907 n. 3; DIRECTV, Inc., 420 F.3d at 530; Barthelemy, 897 F.2d at 1018; Davis, 372 F. Supp. 2d at 653. The FTC's challenge to the statements in paragraph 31 must be denied, and the Court can consider this testimony to the extent it relates to facts, observations and actions during the time that Mena has been employed at DMC.

**M.**    **Paragraph 33**.

Lastly, the FTC seeks to strike paragraph 33 of the Mena Affidavit, which states that "the FTC's allegation that DMC's sales department has been lax and non-compliant with our autoships/continuity sales, or that the company has failed to continue to improve its sales practices is not true," on the grounds that it is a conclusory legal opinion.  There is no merit to the FTC's assertion, as Mena is not offering a legal opinion but is offering his own opinion regarding the sales practices of DMC, which is rationally based on his own perceptions while working as a senior sales manager in the sales department of DMC.  Mena is  responsible for ensuring that DMC's sales policies are adhered to by the sales representatives, and he is clearly competent to offer an opinion regarding DMC's compliance with those policies and its improvement of its sales practices.  See Davis, 372 F. Supp. 2d at 653.  Moreover, this statement is not inadmissible due to its conclusory nature, as it can be supported by the detailed facts set forth throughout the Mena affidavit describing DMC's autoship program and its sales practices. See Quiles, 84 F. Supp. 2d at 162-163; see also Hare, 2005 WL 3470307, *13-14 (court denied motion to strike statements in affidavit as conclusory because they were supported by other specific facts in the affidavit).

## CONCLUSION

The FTC's motion to strike must be denied for the reasons set forth herein.  This Court may consider all of the testimony set forth in the affidavits submitted by the DMC Defendants in support of their opposition to the FTC's Motion for Summary Judgment, which establish that there are numerous issues of material fact in dispute in this case.

Respectfully submitted,
DIRECT MARKETING CONCEPTS, INC.,
ITV DIRECT, INC., AND DONALD W.
BARRETT

By their attorney(s),

/s/ Christopher F. Robertson
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Dated: March 28, 2006                    Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on 3/28/06.

/s/  Christopher Robertson

43

BO1 15768766.2